IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) | No. 04-0074C, into which has been consolidated No. 04-0075C (Judge Hewitt) |

DEFENDANT'S RESPONSE TO PG&E'S MOTION FOR ENTRY OF AN ORDER GOVERNING CONFIDENTIAL AND PRIVILEGED OR PROTECTED MATERIALS

Defendant, the United States, hereby responds to plaintiff Pacific Gas and Electric Company's ("PG&E") motion for entry of an order governing confidential and privileged or protected materials.

**INTRODUCTION**

We agree that a protective order should be issued by the Court regarding the treatment of confidential and privileged information disclosed during the discovery process in this case. However, we strongly oppose the entry of a protective order that differs in substance from the orders entered in the other spent nuclear fuel ("SNF") cases pending before this Court. To require us to abide by different and unique protective orders in SNF cases that involve identical issues and largely identical documents is unduly burdensome and, potentially, prejudicial. Moreover, other than claiming that its order "clarifies" the prior protective order, PG&E's argument in support of this order is devoid of any identifiable reason why this unique order should be entered here. Instead, PG&E focuses the majority of its argument upon the Government's alleged failure to identify problems with its proposed protective order. Contrary to PG&E's contentions, the Government expressed significant concerns with the proposed

protective order that modifies certain language within the protective order originally issued in the coordinated discovery proceedings for SNF cases and that adds six new paragraphs dealing with privileged information. Any differences in the protective orders in the various SNF cases, all of which govern and control dissemination of the very same documents and very same information, affects our ability to manage and litigate the 60 pending SNF cases. We respectfully request that the Court enter the protective order attached hereto as Exhibit 1 that the Court has entered in 33 other SNF cases[1] in the coordinated discovery proceedings (entered September 26, 2001) and, more recently, in other SNF cases filed in late 2003 or early 2004.[2]

**ARGUMENT**

The Government currently is defending 60 cases brought by nuclear utilities based upon the Department of Energy's allege partial breach of the Standard Contract. Many of these cases are currently proceeding through discovery, and several of them have been scheduled for trial. Coordinating these cases is a complex undertaking, with the bulk of the burden being borne

---

[1] The Court has not yet entered protective orders in 26 of the SNF cases. In one other SNF case, which we will discuss below, the trial judge unilaterally added terms to the protective order that the parties had jointly proposed.

[2] The protective order that the Court has entered in the more recently filed SNF cases is identical to the protective order that the Court entered on September 26, 2001 in those cases subject to the coordinated discovery proceedings, with one exception. The original September 26, 2001 protective order was a single order, captioned in the name of all of the SNF cases subject to the coordinated discovery proceedings. Based upon the language of the protective order, information produced in one SNF case could be used in another SNF case under the provisions of the protective order entered in both cases. In the more recently filed protective orders, which have all been entered only in individual SNF cases, the words "this case" were changed to "these cases" to ensure that documents produced under a protective order in one SNF case could still be used in another SNF case. That is the only difference between the September 26, 2001 protective order and the protective orders that parties in more recently filed SNF cases have jointly requested that the Court enter.

solely by the Government. In contrast to the Department of Justice's active defense of all of the pending SNF cases and its obligations to comply with the Court's orders in every one of those 60 cases, PG&E's counsel currently is prosecuting this SNF case and is counsel of record only in eight others, including the three cases that recently concluded a consolidated trial in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.). As a result, the burden of entering unique protective orders in these SNF cases falls squarely upon the Government and not upon PG&E and its attorneys. Barring a showing that the protective order proposed by the Government materially is deficient – a showing that PG&E has not even attempted to make – this Court should enter the Government's proposed protective order in an effort to maintain as much consistency as possible in the substantive and administrative issues present in these SNF cases.

In its motion, PG&E asks this Court to enter a protective order that differs in substance from the orders governing the vast majority of the SNF cases – including orders entered in 18 cases during the coordinated discovery proceedings, some of which involved PG&E's counsel. However, it has failed to provide any reason justifying the entry of its unique protective order here. In support of its motion, PG&E appears to make three arguments. First, PG&E argues that there already are unique orders in certain SNF cases, impliedly mitigating the burden upon the Government of entering yet another unique order. Second, PG&E contends that its proposed order is consistent with the prior orders entered by this Court and that its proposed order simply seeks to clarify certain provisions. Finally, PG&E points to the Government's alleged failure to identify any inconsistencies between its proposed order and the order which the Government now asks this Court to enter here. Upon examination, each of these arguments fails.

First, PG&E asserts that four of these SNF cases, the three Yankee cases and Systems Fuels, Inc. v. United States, No. 03-2624C (Fed. Cl.) (Braden, J.), are governed by unique protective orders that differ from the September 26, 2001 protective order entered in those cases subject to the coordinated discovery proceedings and in all of the other SNF cases in which protective orders have been issued. However, with regard to the Yankee Atomic cases, although a protective order was originally issued in 1999 by Senior Judge Merow in those cases that differs from the September 26, 2001 protective order issued as part of the coordinated discovery proceedings, the September 26, 2001 protective order was also issued as part of the three Yankee Atomic cases, and the Government produced its documents to the Yankee Atomic plaintiffs and all other SNF plaintiffs with cases pending at that time pursuant to the September 26, 2001 protective order. Accordingly, PG&E's reference to a different protective order in the three Yankee Atomic cases, which was later supplemented by a protective order that applied the same terms to parties and documents in the SNF cases, does not support its position that a different and unique protective order should issue here.

The only other case to which PG&E refers in which a differing protective order has been issued in an SNF case is Systems Fuels, Inc. v. United States, No. 03-2624C (Fed. Cl.) (Braden, J.). See Motion, at 2. Although PG&E asserts that the Government "agreed" to that modified order, PG&E is mistaken. In the SFI case, the parties both requested that the Court enter a protective order containing the same terms as the proposed protective order that accompanies this pleading. However, the judge assigned to the SFI case unilaterally modified the protective order upon which the parties had agreed, creating another set of obligations with which the Government (but not other SNF plaintiffs outside of the SFI case) must now comply and that it

must continually attempt to monitor. Significantly, in our response to Systems Fuels' motion for the entry of the agreed-upon order, we articulated our concern regarding the entry of any modified version of that agreed-upon order. Specifically, we advised the Court that "[w]e do not object to the entry of those two orders [the protective order and an e-mail discovery order] in this case, with the caveat that, if other judges of this Court modify the language of either of these orders in other cases, the Government may be required to return to this Court to seek modification of the orders." Government's Response to Plaintiff's Motion for Entry of Protective Order and Email Preservation Order, dated August 30, 2004, at 1.

The Court's modification of the proposed protective order in SFI creates a potentially significant problem for the Government in its efforts continually to attempt to comply with all of the protective orders issued in the SNF cases. We are still evaluating the most appropriate means of dealing with the Court's modification of the proposed order in SFI. However, PG&E's suggestion that, because the Court issued a modified protective order in SFI, the Court can simply issue yet another and different modified protective order in this case is not the appropriate solution. The most appropriate means of assisting the Government in best ensuring compliance with protective orders issued in the SNF cases is to issue uniform orders that can never create conflicting obligations and that preserves the Government's, as well as plaintiffs', abilities to use documents obtained in one SNF case in other SNF cases. PG&E's implicit suggestion that the Court need not worry that different protective orders issued in different SNF cases might create in some situation a conflict in the Government's rights and obligations and that the Court need not worry that the Government will have devote additional time and energy

in attempting to ensure compliance with a multitude of different protective orders, all applicable to the same documents and information, is wholly unfair to the Government.

Second, PG&E criticizes the Government's alleged failure to identify "any provision of PG&E's proposed order [that] was inconsistent with any other protective order in the spent fuel cases in this Court." Motion, at 3. PG&E then argues that it "believes there is no such inconsistency." Id. If, in fact, this order is consistent with the uniform orders that govern the majority of these cases, there is no reason justifying the entry of this "consistent" order. If the proposed protective order is inconsistent with the Government's proposed order, as the Government contends, it should not be entered because it may impose inconsistent obligations upon the Government in identical cases involving largely identical documents. Indeed, the Government's document production has been the same in each of these cases and should be treated the same for the purpose of any protective order. Yet, PG&E's proposed order differs in substance from the Government's proposed order and the protective orders issued in the other SNF cases. Although the effect of those differences upon the parties is unclear, it is clear is that PG&E strongly desires to modify the Government's obligations in this litigation. The reason continues to evade explanation.

PG&E's proposed order begins by dividing paragraph 6 of the Government's proposed protective order into three separate paragraphs, concluding with the new additional phrase "[a]ny Confidential Material in question shall be treated as Confidential Material until resolution of the dispute by the Court and shall be treated thereafter in accordance with any Court order direction resolving the matter." PG&E's Proposed Protective Order, at ¶ 8. The manner in which this phrase alters the treatment of confidential materials is unknown. Likewise, paragraph 11 of

PG&E's proposed order adds the following language to one of the paragraphs from the Government's proposed order: "[d]ocuments and materials address in any such motion shall be treated as Confidential Material until resolution of the motion, and thereafter shall be treated in accordance with the Court's disposition of the motion." Id. at ¶ 11. Although these additions appear to constitute nothing more than attorney word-smithing, PG&E, in proposing this unique language, must believe that it affects the parties' obligations in some manner. Since the proposed modification likely changes the Government's obligations, PG&E's proposed protective order – and the unique obligations it imposes upon the Government – should not be entered. If, in fact, it does not change the parties' obligations, it is unnecessary and presents no reason for adding new provisions to the existing SNF protective orders.

Next, paragraph 12 of PG&E's proposed order alters the parties' obligation with respect to Confidential Material at the conclusion of the litigation. Compare PG&E's Proposed Protective Order, at ¶ 12 with Government's Proposed Protective Order, at ¶ 10. Among other things, PG&E seeks to require the parties to destroy all copies of Confidential Material, rather than simply returning such material to the designating party. Moreover, PG&E's proposed order omits language concerning the manner in which notes or summaries of Confidential Material are to be designated in each party's files. The reason that these changes from the existing protective orders that have been entered in numerous other SNF cases are necessary is inexplicable, and PG&E has not attempted to identify any basis for these modifications solely in this case.

In addition to the modifications to existing paragraphs of the Government's proposed order, PG&E's proposed order contains six new paragraphs relating to the treatment of privileged material. In the protective order entered in those cases subject to the SNF coordinated

discovery proceedings, privileged material is handled in a single concise paragraph. See Government's Proposed Protective Order, at ¶ 8. Here, PG&E has added six new paragraphs concerning privilege beginning with an obviously superfluous provision at paragraph 14 that restates general privilege rules. Additionally, PG&E has added a requirement that a privilege log be delivered within 60 days after the production of documents. PG&E's Proposed Protective Order, at ¶ 15. The Government has agreed to timely provide a privilege log in this litigation. As a result, we do not understand the need for this provision, particularly when it will then force the Government to produce a privilege log to all SNF plaintiffs in this Court within 60 days even though the only SNF plaintiff that will have that obligation is the one in this case.[3] Moreover, we are concerned that it places an artificial – and, given the manner in which the Government documents now are produced to plaintiffs, indefinable – deadline upon the production of a privilege log. If PG&E is concerned that it has not received a privilege log, that issue can be raised separately with the Government and with this Court, if necessary. There is no need to alter the Government's obligations under the protective order simply for this term.

Paragraph 16 of PG&E's proposed order also appears to be superfluous. Implicit in any privilege analysis is the reservation of each party's rights to challenge that claim of privilege. The need for the entry of this unique term is inexplicable. Indeed, PG&E does not even try to

---

[3] As previously mentioned, when we produce documents to one SNF plaintiff, we generally produce them to all SNF plaintiffs. Although we have attempted to produce timely privilege logs in these cases, we should not be held to a specific time requirement for production unless all SNF parties in this Court are held to the same requirement. Although we understand that the plaintiff in this particular case will be subject to such a 60-day requirement, an order from this Court instituting a 60-day requirement here will, in essence, benefit all SNF plaintiffs in other SNF cases, even though they will not have the same obligation unless the Court modifies the existing protective orders in all the pending SNF cases.

explain it. Paragraphs 17 through 19 appear to modify the unlimited and immediate clawback rights of each party. This right is clearly and simply stated in the Government's proposed order, which is consistent with the orders issued in the other SNF cases. See Government's Proposed Protective Order, at ¶ 8. To the extent that PG&E claims that the paragraphs are consistent with the Government's proposed order, the additional language is unnecessary and should be rejected on that basis. To the extent that PG&E's proposed order would create new and different obligations, the proposed order should not be entered as the Government's clawback rights should not be different where the documents produced to the plaintiffs in all of the SNF cases by the Government are identical.[4] Instead, identical clawback provisions should apply.

PG&E has provided no good cause for why this Court should enter a modified protective order in this case. Other than raising questions about the Government's alleged unwillingness to negotiate the protective order, PG&E has failed to explain why its proposed order should be entered over the order entered in the other SNF cases in which protective orders have been issued. In contrast, we have identified the hardship that we face if this Court requires us to litigate identical cases, with identical Government documents, under different protective orders with unique obligations. It is difficult enough to manage the 60 pending SNF cases. PG&E has identified no reason for adding an additional layer of complexity, and this Court should reject

[4] Again, if the Court restricts or modifies the Government's clawback rights in one SNF case, it has effectively limited or modified them in all of the SNF cases. If the Government is unable to clawback a document in one SNF case, the plaintiffs in other SNF cases, all of which have been sharing documents and information developed in other SNF cases, will clearly argue that the Government, having waived its right to clawback the otherwise privileged document in Case A, has waived its right to clawback the otherwise privileged document in total, including Cases B, C, and D. Yet, the plaintiffs in the other SNF cases would not have the same clawback modifications or limitations, absent replacement of all existing protective orders with a uniform order that imposed the same rights and obligations upon all of those SNF plaintiffs.

PG&E's proposed order. Instead, the Court should enter the draft order attached hereto at Exhibit 1.

**CONCLUSION**

For the foregoing reasons, we respectfully request that the Court enter the protective order attached hereto as Exhibit 1.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ John C. Ekman
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

April 15, 2005

CERTIFICATE OF FILING

I hereby certify that on this 15th day of April 2005, a copy of foregoing "DEFENDANT'S RESPONSE TO PG&E'S MOTION FOR ENTRY OF AN ORDER GOVERNING CONFIDENTIAL AND PRIVILEGED OR PROTECTED MATERIALS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ John C. Ekman