IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0074C, into which has been |
| | ) | consolidated No. 04-0075C |
| UNITED STATES OF AMERICA, | ) | (Judge Hewitt) |
| | ) | |
| Defendant. | ) | |

PACIFIC GAS & ELECTRIC COMPANY'S MOTION TO COMPEL DISCOVERY AND REQUEST FOR EXPEDITED HEARING

Plaintiff Pacific Gas & Electric Company ("PG&E") respectfully moves this Court pursuant to RCFC 37(a)(2) to compel the government to produce documents requested in Plaintiff's First Request for Production of Documents. In particular, PG&E seeks to compel production of documents responsive to Request Nos. 15, 19, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33 and 36. PG&E further moves to compel the government to produce a privilege log showing what documents have been withheld from production in response to or as a result of PG&E's First Request for Production of Documents. Finally, PG&E moves pursuant to RCFC 37(a)(2) to compel the government to designate a witness or witnesses for deposition pursuant to PG&E's Rule 30(b)(6) deposition notice, which seeks testimony regarding the government's search for and production of documents responsive to PG&E's First Request for Production of Documents.

Because fact discovery in this case is scheduled to close on October 21, 2005, PG&E respectfully requests an expedited hearing and decision on the present motion so PG&E will be afforded a full and fair opportunity to pursue discovery from the government once these issues are resolved.

## I. BACKGROUND

On June 3, 2005, PG&E served its First Request for Production of Documents ("PG&E's Requests") on the government. Exhibit ("Ex.") 1.[1] PG&E's Requests specifically instructed the government to produce all documents that have not been produced previously, noting that many of the requests are similar to specific document requests made to the government in other spent nuclear fuel cases. *Id.*, Instruction No. 2. The Requests further instructed the government that responsive documents should be produced in conformance with RCFC 34, either as they are kept in the usual course of business identifying the source of each produced document or labeled to correspond to each request in the order the requests are presented. *Id.*, Instruction No. 3. The government served its written responses to PG&E's Requests on July 15, 2005. Ex. 2.

On July 28, 2005, consistent with its obligation under RCFC 37(a)(2)(B) to confer with opposing counsel on discovery disputes, PG&E's counsel wrote to government's counsel raising numerous issues with and objections to the government's responses to PG&E's Requests and offering to narrow several of the disputed requests. Ex. 3. On August 10, 2005, government counsel responded to PG&E counsel's July 28 letter. Ex. 4. While the government's response resolved a few of the discovery issues raised in PG&E's letter, the government refused to alter its position on most of its responses to PG&E's Requests. On August 16, 2005, PG&E counsel wrote to government counsel in a final attempt to resolve the remaining disputes. Ex. 5. Government counsel responded on August 18, 2005, but failed to satisfactorily address any of PG&E's issues. Ex. 6.

In addition to the numerous deficiencies with the government's specific responses to PG&E's Requests, the government has not produced, and has made it clear to PG&E

[1] All exhibits referenced herein are attached to this motion.

that it does not intend to produce, any documents specifically responsive to PG&E's Requests. Rather, the government has instead directed PG&E to search for documents responsive to its requests on a document production website the government has set up for all SNF cases. This website consists of postings of various large "containers" of documents that the government has produced over time in response to various document requests and disclosure requirements in the various SNF cases. *See* Ex. 7. These document containers are only labeled generically, apparently based upon the source of the documents. The government's website does not disclose what types of documents are contained in the containers and the containers do not reference any particular document requests or disclose whether the documents contained therein are being produced as they are kept in the usual course of business.

The government's chosen method of document production, to which PG&E never consented, is not in compliance with the government's obligations under RCFC 34(b). Moreover, it is unduly burdensome to PG&E, and has made it difficult, if not impossible, for PG&E to determine what, if any, searches for responsive documents were conducted by the government and what, if any, documents have been produced in response to PG&E's Requests. Nevertheless, PG&E has tried to work within the improper constraints unilaterally imposed by the government by downloading thousands of documents randomly posted on the website and reviewing them in an attempt to determine whether the government has actually properly responded to any of PG&E's Requests. PG&E has also been required to obtain government documents from other SNF plaintiffs.

In order to determine what searches were actually conducted for documents responsive to PG&E's Requests and where the results of these searches can be found on the government's document production website, on July 25, 2005, PG&E noticed a 30(b)(6) deposition of the government for August 11, 2005. Ex. 8. On August 8, 2005, government counsel informed PG&E counsel that it objected to the potential scope of the subjects listed in the notice and that, in any event, its witnesses were not available to be deposed on August 11. Ex. 9. On August 10, 2005, consistent with its obligation under RCFC 37(a)(2)(B) to confer with opposing counsel on discovery disputes, PG&E counsel wrote to government counsel to clarify and narrow the scope of the deposition subjects so the government could identify the proper witness(es) to testify. Ex. 10. PG&E counsel also requested that the government provide PG&E with alternative deposition dates by no later than August 12. *Id.*

After the government failed to respond by August 12, PG&E issued an Amended Rule 30(b)(6) Notice of Deposition ("Amended 30(b)(6) Notice") that rescheduled the deposition for August 23, 2005. Ex. 11. The Amended 30(b)(6) Notice revised the deposition subjects in accordance with PG&E counsel's August 10 letter. On August 18, 2005, government counsel informed PG&E counsel that it was not in a position to produce any witnesses for deposition on August 23 because it would take at least three more weeks for the government to complete its search efforts for documents responsive to PG&E's Requests. Ex. 12. In addition, the government asserted that the revised deposition subjects in the Amended 30(b)(6) Notice were still not narrow enough. *Id.*

Because the government's most recent response seeks to put off scheduling the 30(b)(6) deposition for "at least three weeks" and the passage of time is not going to

resolve the government's objections to the deposition notice and PG&E's Requests, PG&E is bringing the present Motion to Compel.[2]

## II. THE DISPUTED RESPONSES

### A. Requests for Production

Although PG&E could at this juncture lodge a wholesale objection to the government's responses to PG&E's Requests, it is not doing so, but instead is limiting the present motion to compel to only the following truly unacceptable responses "received" from the government. PG&E reserves the right to supplement this motion or file additional motions to compel based upon any information obtained from the 30(b)(6) deposition and its review of the government documents that have been posted to date on its production website.

1. Document Request No. 15: PG&E Request No. 15 seeks "Documents related to the order or sequence among utilities in which DOE will accept spent fuel from utilities, including but not limited to the order in which DOE would have accepted spent fuel if it had started accepting such spent fuel on or before January 31, 1998, the order in which DOE will accept spent fuel from utilities when DOE begins accepting spent fuel from utilities, and any plans, projections or estimates by DOE of the order or sequence in which DOE would have accepted or will accept spent fuel from utilities."

In response to Request No. 15, the government has only agreed to produce documents relating to "the order in which DOE will accept [SNF] . . . as set forth in the Annual Capacity Reports and Acceptance Priority Rankings published by DOE." Ex. 2

---

[2] As recounted above, in compliance with its obligations under RCFC 37(a)(2)(B), PG&E has made a good faith attempt to confer with the government to resolve these discovery disputes without court action.

(emphasis added). The latter clause is an unacceptable qualification placed on this request, as it impermissibly limits the documents produced to only those consistent with the government's theory of how the sequence of acceptance is determined, and thereby excludes, for example, documents pertaining to swaps, the need for an efficient schedule or the use and desirability of acceptance campaigns. The government cannot so limit its response, particularly considering that this Court has previously rejected the government's position that forms the basis of its qualified response in the *Commonwealth Edison* case. Further, although the government asserts that it has previously produced documents responsive to this request, it has refused to affirmatively represent that it either has produced or will produce all documents responsive to Request No. 15 without qualification.

2. Document Request No. 19: PG&E Request No. 19 seeks "Communications between DOE and any other part of the Executive Branch, and between DOE and any part of the Legislative Branch, or between the Legislative and Executive Branches that are related to the NWPA." In response to the government's objections, PG&E narrowed this request to "DOE intra-governmental communications related to the government's duties, obligations and performance under the NWPA and the Standard Contracts." *See* Exs. 3, 5. The government maintains that PG&E's narrowed request is still unreasonably broad and it has refused to search for and produce any additional responsive documents. *See* Ex. 4. The government's argument is untenable because PG&E's narrowed request is obviously relevant and the government admits it has previously produced "scores of non-responsive documents" responsive to this request. Accordingly, PG&E requests that the government be compelled to search for

and produce all documents responsive to narrowed Request No. 19, to the extent not previously produced.

3. Document Request No. 22: PG&E Request No. 22 seeks "Communications between PG&E and either DOE or the United States Nuclear Regulatory Commission related to spent fuel." The government has agreed to produce responsive documents "from the files of the Department of Energy," but has refused to produce any documents from the NRC's files. *See* Exs. 2, 4. The government asserts that it is not obligated to search NRC's files because this request seeks communications with PG&E and, therefore, PG&E should already have copies of the responsive documents in its possession. However, the fact that PG&E may already have copies of some of the requested documents in its possession does not relieve the government of its obligation to search for and produce responsive documents. PG&E is entitled to discover whether the NRC has in its possession any additional communications with PG&E that are not in PG&E's files and to confirm that the NRC actually received various communications from PG&E. The government's refusal to search for and produce responsive documents from NRC is particularly baseless given that it has already agreed to produce responsive documents from DOE's files.

4. Document Request No. 23: PG&E Request No. 23 seeks "Documents related to the storage or disposal of spent fuel at sites other than civilian nuclear reactors." In response to the government's objections, PG&E has narrowed this request to "Documents relating to the feasibility of on-going storage of non-commercial SNF (*e.g.*, Navy fuel, research reactor fuel) at non-civilian nuclear reactors." Exs. 3, 5. The government has refused to produce documents responsive to this narrowed request.

Because these documents could lead to the discovery of admissible evidence that bears upon the reasonableness of PG&E's SNF storage decisions and the costs associated with such storage as well as evidence relevant to the government's performance of its obligations under PG&E's Contract, the government should be compelled to produce documents responsive to Request No. 23, as narrowed.

5. Document Request No. 24: PG&E Request No. 24 seeks "Documents related to the casks, canisters, systems or similar devices in which spent fuel from civilian nuclear reactors has been or could be stored and/or transported." In response to the government's objections, PG&E agreed to narrow this request to "Documents showing that Yucca Mountain is being designed to handle canistered fuel." Exs. 3, 5. The government has refused to produce documents responsive to this narrowed request. Request No. 24, as narrowed, is directly relevant to the government's current contention that the placement of spent fuel in multi-element sealed canisters ("MESCs") by utilities has rendered it impossible or impracticable for DOE to perform its obligations under the Standard Contracts.

6. Document Request No. 25: PG&E Request No. 25 seeks "Documents related to the costs or expenses that have been or may be incurred by any person to store spent fuel at commercial nuclear reactors." In response to the government's objections, PG&E agreed to narrow this request to "Any studies or analyses conducted by the government relating to the costs of at-reactor storage." Exs. 3, 5. The government contends that it has previously produced "various documents" responsive to this request and that, to the extent additional documents not previously produced exist, each and every one was created as a part of and for this litigation. The

government, however, has not produced a privilege log disclosing these or any other documents that have been withheld on privilege or work-product grounds in this litigation. *See* pp. 12-13, *infra*. Absent production of a privilege log that identifies these withheld documents, the government should be compelled to produce documents responsive to Request No. 25, as narrowed.

7. Document Request Nos. 26, 28: PG&E Request No. 26 seeks "Documents related to the storage, disposal, transportation, preparation, packaging, inspection, and pickup of GTCC waste." PG&E Request No. 28 seeks "Documents related to the storage, disposal, transportation, preparation, packaging, inspection, and pickup of failed fuel." The government has refused to search for documents responsive to these requests, contending that it has already produced large quantities of responsive documents and that the requests are overly broad and unduly burdensome. However, PG&E has merely requested that the government undertake a reasonable search for and produce any additional documents that have not been previously produced. The government's burden objections are not well-founded; it certainly knows where to search for documents responsive to these requests, as they encompass issues that have been raised previously in other SNF cases (by the government, no less), and the government, by its own admission, has previously produced documents responsive to these requests.

8. Document Request No. 27: PG&E Request No. 27 seeks "Documents related to the storage, disposal, transportation, preparation, packaging, inspection, and pickup of spent fuel placed in canisters, multi-element sealed canisters or other containers however described." In response to the government's objections, PG&E narrowed this request to "All documents (to the extent not already produced) concerning

DOE's own program to develop multi-purpose canisters ("MPCs") in the early 1990s." Exs. 3, 5. The government has refused to search for and produce additional documents responsive to this narrowed request. Like Request No. 24, narrowed Request No. 27 is directly relevant to the government's current contention that the placement of spent fuel in canisters by utilities has rendered it impossible or impracticable for DOE to perform its obligations under the Standard Contracts.

9. Document Request No. 29: PG&E Request No. 29 seeks "Documents related to the storage, disposal, transportation, preparation, packaging, inspection, and pickup of nonstandard fuel, failed fuel or other than standard spent fuel." In response to the government's objections, PG&E narrowed this request to "All documents pertaining to Yucca Mountain design considerations for failed fuel and non-standard fuel." Exs. 3, 5. The government has refused to search for and produce additional documents responsive to this narrowed request. The government should be compelled to produce responsive documents because this request is directly relevant to the government's contention that it is not obligated under PG&E's Contract to store utilities' failed fuel and non-standard fuel.

10. Document Request No. 30: PG&E Request No. 30 seeks "Documents related to the decommissioning of PG&E's Humboldt Bay Power Plant Unit 3." The government's response to PG&E's Requests states that it will only produce documents from the Department of Energy's files responsive to this request, claiming that it is not obligated to search the NRC's files because responsive documents contained in these files "should be publicly available or within PG&E's possession, custody or control." *See* Exs. 2, 4. As with Request No. 22, the fact that PG&E may already have

copies of some of the requested documents already in its possession does not relieve the government of its obligation to search for and produce responsive documents. Unless the government confirms that all responsive documents in NRC's possession, custody or control that are responsive to Request No. 30 have been previously produced, it should be compelled to search the NRC's files and produce documents responsive to this request.

11. Document Request Nos. 31, 32: PG&E Request No. 31 seeks "Documents related to the date by which DOE will begin accepting spent fuel from utilities, including but not limited to any milestone schedules, critical path activities or sensitivity analyses conduced by or on behalf of DOE. PG&E Request No. 32 seeks "Documents related to any estimate or projection that DOE will begin accepting spent fuel from utilities later than 2010. While the government has represented that it has produced all documents responsive to these requests that could be located following a reasonable search of its records, it has also stated that it is working with DOE to determine whether any further responses to these requests are warranted. *See* Ex. 4. Accordingly, unless the government can affirmatively represent that it has already produced all responsive documents, it should be compelled to search for and produce all documents responsive to these requests to the extent not already produced.

12. Document Request Nos. 33, 36: PG&E Request No. 33 seeks "Documents related to the needs or requirements (whether current, estimated or projected) for storage or disposal of spent fuel from domestic commercial nuclear reactors." PG&E Request No. 36 seeks "Documents related to the ability of DOE to perform its obligations under the Standard Contract and PG&E's Contract, including but not limited to DOE's past and present intentions to perform these obligations and

estimates of when and how DOE will be able to perform these obligations." The government represents that it already produced documents that "appear to be responsive" to these requests and has objected to conducting any further searches for responsive documents on grounds that the requests are overly broad and unduly burdensome. PG&E does not believe that either of these requests require further narrowing, as they both concern specific issues in this case to which the government has previously produced responsive documents. The government should be compelled to undertake a reasonable search for and produce any documents responsive to these requests that have not been previously produced.

* * * *

To the extent the Court compels production of additional documents, PG&E respectfully requests that the Court direct the government to produce the documents directly to PG&E in accordance with the requirements of RCFC 34(b), *i.e.,* the documents should be produced as they are kept in the usual course of business or organized and labeled to correspond to each individual document request. While the government can post responsive documents on its production website if it so chooses, it should not be allowed to disregard its obligations under the rules and unfairly burden PG&E with the time and expense of searching for and downloading these documents from the website.

**B. Privilege Log**: PG&E has requested that the government promptly produce a privilege log reflecting all responsive documents that have been withheld in this litigation on privilege or work-product grounds. In response, the government has stated that additional privilege logs will be posted on its document production website "in

due course" but has refused to provide a timetable for such postings or assurance that, when posted, these logs will enable PG&E to determine what documents have been withheld on privilege grounds in response to or as a result of PG&E's Requests.[3] This Court previously advised the government to produce its privilege log in this case no later than 60 days after its production of responsive non-privileged documents and that, if it failed to do so, it would order such production. PG&E needs this information promptly so it can determine the propriety of the government's privilege assertions and, if necessary, file any motions to compel before the close of fact discovery on October 21, 2005.

### C. 30(b)(6) Deposition

Due to the government's refusal to search for and produce significant categories of documents responsive to PG&E's Requests and its refusal to produce documents in accordance with its obligations under RCFC 34, PG&E has noticed a 30(b)(6) deposition of the government to determine what searches were conducted for responsive documents and where the results of these searches can be found on the government's document production website. The government has refused to designate witnesses or agree to reasonable date for this deposition, claiming that it is premature to schedule a deposition because "it appears that it will take at least three [more] weeks" for the government to complete its search efforts for responsive documents. *See* Ex. 12. The government, however, was served with PG&E's Requests on June 3, 2005, over two and a half months ago. There is simply no legitimate excuse for the government to need more than three

[3] In its August 18, 2005 letter (Ex. 7), the government represented that a privilege log relating to more recent document productions (but not productions relating to PG&E's Requests) would be posted on its document production website by the end of the week. As of this filing, this new privilege log had not yet been posted.

months to respond to document requests which, for the most part, simply mirror requests that the government has previously responded to in other SNF cases.[4]

The government also claims that the deposition subjects in PG&E's Amended 30(b)(6) Notice are too broad to enable it to designate witnesses for the deposition. The noticed deposition subjects are as follows:

> 1. Defendant's search for documents responsive to Plaintiff's First Request for Production of Documents.
>
> 2. Results of defendant's searches for documents responsive to Plaintiff's First Request for Production of Documents.
>
> 3. The groupings and categories of documents produced on the government's document production website.
>
> 4. Documents that have been produced on the government's document production website in response to or as a result of Plaintiff's First Request for Production of Documents.
>
> 5. Documents that have been withheld from production by the government on privilege and/or work-product grounds in response to or as a result of Plaintiff's First Request for Production of Documents.

Ex. 8. As PG&E has already explained to the government (Ex. 10), with regard to the first two subjects, PG&E does not wish to use this deposition to duplicate prior depositions taken in other SNF cases. However, because the government has not complied with its obligations under RCFC 34, PG&E needs a deposition in order to determine what the government has done to search for documents responsive to PG&E's Requests and what were the results of these searches.

With regard to the third and fourth subjects, the government has represented that all documents responsive to PG&E's Requests are being produced or have already been produced on its document production website. However, as discussed above, there is no way to verify that this is in fact the case based upon PG&E's review of the website.

---

[4] Of course, by the time this motion is resolved, the three additional weeks requested by the government may have already passed, so this objection will be mooted.

Therefore, PG&E needs a government witness to explain the various groupings and organization of the documents posted on the production website in the context of PG&E's Requests in order to determine what, if any, documents have been produced by the government in response to PG&E's Requests. Similarly, with regard to the fifth deposition subject, PG&E is entitled to ask questions of an appropriate 30(b)(6) witness about what responsive documents have been withheld on privilege and/or work-product grounds in response to or as a result of PG&E's Requests to determine the propriety of the government's privilege assertions.

In sum, contrary to the government's assertions, PG&E's 30(b)(6) deposition subjects are quite specific and narrowly targeted. PG&E submits that the only reason the government is purportedly unable to identify witnesses who can testify to these subjects is because it has failed to comply with its fundamental discovery obligations under the rules.

## IV. CONCLUSION

For the foregoing reasons, PG&E respectfully requests that the Court grant its Motion to Compel and order the government to fully respond to PG&E's Requests, produce a privilege log directly related to its responses to PG&E's Requests and designate a witness or witnesses to testify on the subjects listed in PG&E's Amended Rule 30(b)(6) Notice of Deposition.

Dated: August 19, 2005

Respectfully submitted,

s/ Jerry Stouck
Jerry Stouck
Greenberg Traurig, LLP

800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173
(202) 261-4751
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:

Robert L. Shapiro
Greenberg Traurig, LLP