RESPONSE

Subject to its stated objections, PG&E will produce all responsive, non-privileged documents.

REQUEST NO. 29

All documents relating to priority for the acceptance of SNF and/or HLW from shutdown reactors.

OBJECTION

PG&E objects that the phrase "priority for the acceptance" is vague.

RESPONSE

Subject to its stated objections, PG&E will produce all responsive, non-privileged documents.

REQUEST NO. 30

All documents relating to the exchange of delivery commitment schedules among utilities.

RESPONSE

Subject to its stated objections, PG&E will produce all responsive, non-privileged documents.

REQUEST NO. 31

All documents relating to DOE's obligation to accept GTCC waste.

RESPONSE

Subject to its stated objections, PG&E will produce all responsive, non-privileged documents.

REQUEST NO. 32

All documents relating to DOE's responsibilities with respect to the timing, rate, and scheduling of acceptance of SNF and/or HLW from utilities under the Standard Contract and the Nuclear Waste Policy Act.

OBJECTION

PG&E objects that the phrase "DOE's responsibilities with respect to the timing, rate, and scheduling of acceptance of SNF and/or HLW from utilities under the Standard Contract and the Nuclear Waste Policy Act" is vague.

RESPONSE

Subject to its stated objections, PG&E will produce all responsive, non-privileged documents.

REQUEST NO. 33

All documents relating to, referring to, or associated with the promulgation and/or formation of the Standard Contract, including all documents prepared by or upon behalf of PG&E concerning the promulgation and/or formation of the Standard Contract.

OBJECTION

PG&E objects that the phrase "or associated with" is vague.

RESPONSE

Subject to its stated objections, PG&E will produce all responsive, non-privileged documents.

REQUEST NO. 34

All drafts of the Standard Contract.

RESPONSE

Subject to its stated objections, PG&E will produce all responsive, non-privileged documents.

REQUEST NO. 35

All comments regarding the Standard Contract or proposed changes to the Standard Contract to or from nuclear industry groups or other third parties.

RESPONSE

Subject to its stated objections, PG&E will produce all responsive, non-privileged documents.

Respectfully submitted,

Dated: June 13, 2005

JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
(202) 898-5800 (Telephone)
(202) 682-1639 (Facsimile)
Counsel for Plaintiff
PACIFIC GAS AND ELECTRIC COMPANY

Of Counsel:
Robert L. Shapiro
SPRIGGS & HOLLINGSWORTH

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing PG&E's Objections and Responses to the Government's First Set of Requests for the Production of Documents was served by facsimile and mail this 13th day of June 2005, upon the following:

John C. Ekman
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Eighth Floor
1100 L. Street, N.W.
Washington, D.C. 20530

Robert L. Shapiro

From: Yocom, Thor (CIV)
Sent: Friday, August 19, 2005 12:22 PM
To: 'shapiror@gtlaw.com'
Subject: Privilege Log Available

The government's supplemental privilege log for August, 2005 is available at the SNF Document Production Website.

Thank you,

IT Services

# DECLARATION OF STEVEN BAGGETT

I hereby declare that the following statements are true and correct to the best of my ability under penalty of perjury to the best of my ability.

1. My name is Steven Baggett and I make the following statements based on my own personal knowledge or upon knowledge obtained in the course of my employment and relied upon by me for the performance of my duties.

2. I am the technical assistant to the Director, Spent Fuel Project Office, in the Office of Nuclear Materials Safety and Safeguards, at the U.S. Nuclear Regulatory Commission.

3. I am responsible for coordination production of documents from the Office of Nuclear Safety and Safeguards in response to the document production request by Pacific Gas & Electric Company in Case No. 04-74C.

4. I have conducted searches for documents in response to document production requests from PG&E. In conducting my review of the requests, I have determined that, as written or subsequently limited, it would constitute an overwhelming burden to require the NRC to respond to Request Nos. 22, 23 (as recently narrowed by PG&E from its original request), 28, and 30 of those production requests.

5. The initial NRC staff search for the Office of Nuclear Materials Safety and Safeguards, which is only one office within the NRC, indicates that we will have to review about 80,000 official agency documents to satisfy those four document production requests from PG&E in this case. This is without asking staff from the NRC regional offices or other offices and divisions within the NRC to review their own files for possibly responsive documents.

6. The NRC's documents are not organized in a manner that makes it simple to respond to any of these production requests, in that the NRC cannot simply go to specific easily-searchable files to locate all potentially responsive information.

7. Instead, the NRC must perform a key-word computer search of its various electronic libraries, retrieve those documents that contain the keywords used, and then review each individual document to see if it meets the requirements of the request.

8. In addition, the NRC must review this group of documents to respond to the other PG&E requests that are applicable to the NRC, so this burden extends to them as well.

9. Further, one of the NRC's primary missions is to ensure adequate protection of public health and safety of spent fuel storage and transportation. Accordingly, when PG&E requests all documents "related to" various matters associated with spent fuel, it is targeting potentially massive quantities of documents relating to technical issues, regulatory issues, licensing matters, and safety evaluations.

10. For example, the NRC's response to such a request would include many volumes of supporting material for transportation Certificates of Compliance. These materials would be devoid of information about costs of spent nuclear fuel storage or casks.

11. To the extent that any of these NRC's documents might contain any cost information, that information would be irrelevant to the NRC's primary mission and tangential to other information in the NRC's documents.

12. The large number of documents and the resources associated with review and or redaction of just these documents will require over 45 people assigned on a full-time basis and take several months.

13. Developing responses to the very broad requests will involve copying and review of almost every document generated by NRC in the conduct of its spent fuel storage and transportation programs. For example, Request No. 22 requests "all communications between PG&E and . . . the NRC related to spent fuel" without any date limitation, which will certainly include documents from the 1970's, if not the 1960's.

14. Similar undated (and broadly-worded) requests can be found in PG&E Request Nos. 28, and 30. For example, Request No. 30 involves over 9000 pages (non-public) in the ADAMS Main Library and in the Legacy Library. The NRC estimates it will need at least 120 man-hours to collect, copy, and review the documents responsive to Request No. 30 to determine if any of the documents should be protected from public disclosure or be produced subject to a protective order .

15. Because the majority of the 80,000 documents are contained in the non-public section of ADAMS (the Legacy Library), electronic searches cannot distinguish between those items that are responsive to the Document Production Request and those items that are not. Therefore, the NRC staff must physically collect (via computer or microfiche), copy, and then review each document to determine whether any of the documents should be protected from public disclosure, either in whole or in part.

16. In order to actually produce documents, we would have print out all the documents themselves, see which ones are responsive to the particular requests, and then review them for privilege, proprietary information, safeguards information, and/or sensitive security information (which, in the wake of 9-11, we will not willingly release to the public without a court order).

17. In the alternative, the NRC can print out a digest of these 80,000 documents (i.e, a listing with document title, author, and a brief description), but it will run either 8,000 pages or 4,000 pages, depending on who does it and what format is used. This option will take about three (3) weeks.

18. A significant portion of the 80,000 documents relates to a technical demonstration and the resulting NRC technical determination that the spent fuel storage installation and the storage cask design complies with safety requirements in 10 CFR Part 72.

19. In addition, another significant portion of the 80,000 documents relates to the technical demonstration and NRC technical determination that the spent fuel transportation package design meets the NRC's transportation requirements in 10 CFR Part 71. Part 71 does not require an applicant to provide any cost estimates.

20. In each case, the NRC reviews demonstrations by the manufacturers of the installation and storage casks that their products meet the NRC's general design criteria, physical

protection requirements, quality assurance requirements and siting factors and makes determinations as to whether the demonstrations meet the NRC's requirements.

21. In order to comply fully in a timely manner with the Document Production Request, the NRC will have to remove personnel and resources from our primary mission of ensuring adequate protection of public health and safety of spent fuel storage and transportation.

22. However, removing NRC staff resources from the NRC's primary safety mission is unacceptable.

Steven Baggett

Dated at Rockville, Maryland
this 15 day of September, 2005.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) | No. 04-0074C, into which has been consolidated No. 04-0075C (Judge Hewitt) |

DECLARATION OF THOMAS E. POLLOG

I, Thomas E. Pollog, hereby declare the following:

1. Since 1988, I have held several positions within the Office of Civilian Radioactive Waste Management ("OCRWM") at the United States Department of Energy ("DOE"). From 1996 until the present time, I have been a nuclear engineer in the Office of Waste Acceptance/Office of Systems Analysis and Strategy Development with duties that include implementing the Standard Contract, and from June 2002 to the present time, acting as the Contracting Officer's Technical Representative ("COTR") .

2. I have been asked to determine what efforts OCRWM employees and OCRWM contractors' employees would have to expend to locate, retrieve, and review all "DOE intra-governmental communications related to the government's duties, obligations and performance under the [Nuclear Waste Policy Act ('NWPA')] and the Standard Contracts," as set forth in Request No. 19 of plaintiff's document production requests. The files and file indexes in OCRWM are not organized in a manner that would permit personnel to readily retrieve all such documents. The first step would be to search the over 800,000 records stored on OCRWM's Record Information System ("RIS"), which I understand has also been made available to plaintiff's counsel. The next step would require us to search a multitude of offices within the

Department of Energy, any of which could have some communication "related to" the NWPA. However, any search for all documents "related to the government's duties, obligations and performance" under any aspect of the NWPA and the Standard Contracts would involve virtually every activity in which OCRWM and its contractors engage. Although the request here is only for "DOE intra-governmental communications," that limitation would not lessen the scope of the search or make it easier to produce documents. OCRWM would essentially have to review every file within OCWRM's Department of Energy Headquarters office, the Yucca Mountain Site Characterization Office ("YMSCO") in Nevada, and the Management and Operating Contractor offices at YMSCO and Washington, D.C. These searches would involve the files of approximately 160 Federal employees and approximately 2,300 contractor employees. I estimate that this review would take many months, if not years, to complete; require thousands of manhours; and disrupt the currently scheduled activities for OCRWM.

3. I have also been asked been asked to consider the efforts that the Department of Energy, its employees, and its contractor employees would have to expend to locate all documents "related to the storage, disposal, transportation, preparation, packaging, inspection, and pickup" of Greater-Than-Class-C radioactive waste ("GTCC waste") and failed fuel. To the extent that these requests were limited to the acceptance of GTCC waste and failed fuel under the Standard Contract, our office has already searched for and produced all documents that we were able to locate. However, to the extent that the request is broader than that and entails all documents relating to GTCC waste and failed fuel, the Department (outside of OCWRM) may very well have tens of thousands of documents that in some way "relate to" GTCC waste or failed fuel, including technical information about various types of GTCC waste or sealed source GTTC.

4. Finally, I have been asked to consider the plaintiff's request for all "[d]ocuments relating to the feasibility of on-going storage of non-commercial SNF (*e.g.*, Navy fuel, research reactor fuel) at non-civilian nuclear reactors." There are approximately 41 non-research reactors at 38 sites that could generate this type of SNF. Because the physical and radiological characteristics of non-commercial SNF differ from SNF discharged from commercial reactors, documents regarding storage of the non-commercial SNF at sites, such as national labs or naval installations, is not relevant. Additionally, documents regarding storage of Navy SNF would be very difficult, if not impossible to produce because of national security concerns. Finally, unlike commercial SNF, the government material is not regulated by the Nuclear Regulatory Commission so that comparison of feasibility of storage options would be meaningless.

I hereby declare, under penalty of perjury, that the foregoing information is true and correct, to the best of my knowledge.

Thomas E. Pollog

THOMAS E. POLLOG
Nuclear Engineer
Office of Civilian Radioactive Waste Management
United States Department of Energy

Dated: 9/15/05

CERTIFICATE OF FILING

I hereby certify that on this 15th day of September 2005, a copy of foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.