IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, Plaintiff, v. UNITED STATES OF AMERICA, Defendant. | No. 04-0074C, into which has been consolidated No. 04-0075C (Judge Hewitt) |

# PACIFIC GAS & ELECTRIC COMPANY'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY AND RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Plaintiff Pacific Gas & Electric Company ("PG&E") respectfully submits this reply memorandum in support of its Motion to Compel Discovery and Request for Expedited Hearing and responds to the government's motion for a protective order.

The tone of the government's response to PG&E's Motion to Compel is near-hysterical, but its message is clear: the government refuses to be accountable in any way for its conduct in responding to PG&E's document requests. The government apparently believes that, because it is the government and it has already produced a large volume of responsive documents in the spent fuel cases – most of that production being <u>over four years ago</u> in the spent fuel coordinated discovery proceedings and the *Yankee* cases – it should now be allowed to ignore PG&E's requests and the government's obligations under RCFC 34, and instead only be obligated to search for and produce documents that it unilaterally deems to be relevant in this case in whatever manner and at whatever time it chooses.

The discovery rules do not permit this kind of lack of accountability, and the Court shouldn't permit it either. To the contrary, in those specific areas where the

government's document production has been inadequate, the Court should hold the government accountable like any other party would be and order it to produce the requested documents in accordance with PG&E's particular, and narrowed, requests.

Further, just because PG&E has been willing to tolerate the government's "website" document production technique – despite the fact that it fails to comply with the requirements of Rule 34 – does not mean that the government can completely avoid answering any questions regarding what specific actions it took (if any) to respond to PG&E's document requests in this action, what offices and files it searched, what were the results of these searches, and where these results can be found on the government's document production website. The government's claim that PG&E's requested 30(b)(6) deposition will merely duplicate prior 30(b)(6) depositions is simply wrong: the government's document production website did not even exist when those prior depositions were taken, and those prior depositions – the most recent taken over three and a half years ago – certainly did not address what, if anything, the government did in response to PG&E's specific document requests.

The government is not above the law governing its discovery obligations any more than it is with respect to breach of contract liability. For that reason, and the additional reasons set forth below, the Court should grant PG&E's Motion to Compel and require the government to produce the additional documents described in the motion and submit to a Rule 30(b)(6) deposition.

### A. The Government's Claim That *Indiana Michigan* Renders All Documents Concerning "Future Events" Irrelevant is Wrong.

The government contends that the Federal Circuit's recent decision in *Indiana Michigan Power Co. v. United States,* No. 04-5122, 2005 WL 2173563 (Fed. Cir. Sept. 9,

2005), renders irrelevant any PG&E document request that relates to "possible future events." Gov't Resp. at 11. The Court already rejected this exact argument at a telephone conference during the September 22 deposition of Mr. John Arthur. Moreover, the government's argument is nonsense. PG&E is not seeking documents concerning the government's future plans and performance under its and the other utilities' spent fuel contracts merely to prove its future damages. It is seeking these documents because they are also highly relevant to PG&E's current claim for partial breach damages. For example, documents (and testimony for that matter) outlining DOE's future plans for its spent fuel program and/or the rate at which it plans on accepting spent fuel (Request Nos. 15 and 33), are highly probative on the issue of what would have been a reasonable spent fuel acceptance schedule in the "but for" world. Documents (and testimony) indicating that DOE has abandoned 2010 as the start date for acceptance of spent fuel and performance of its obligations under the utilities' contracts, and will not commence performance until much later (Request Nos. 31, 32, 33 and 36), are highly probative in showing the reasonableness of the actions taken in response by PG&E and other utilities to mitigate the effects of DOE's long-term breach.

Thus, as the Court has already recognized, the government should not be allowed to use *Indiana Michigan* as a shield to arbitrarily withhold responsive relevant documents simply because it has determined that the documents only concern "the future" (whatever that means). Just because these documents might also be relevant to a claim for future damages does not render them irrelevant to PG&E's present claim for damages. By the government's own admission, it has produced thousands of these kinds of documents in the past and it is readily apparent, based upon its response, that it has already searched for

and collected these additional responsive documents and is now withholding them simply because it has come up with a new, last minute excuse.[1]

**B. The RIS-Web Is Not An Adequate Vehicle for Responding to PG&E's Requests.**

With regard to PG&E Request Nos. 24, 25 and 27, as narrowed, the government has now apparently agreed to produce all responsive documents. *See* Gov't Resp. at 12-13. While PG&E agrees that there no longer appears to be any dispute about the scope of the government's response to these requests, there still remains a dispute about the how the government intends to produce documents responsive to Request Nos. 24 and 27.[2] Rather than produce these documents in conformance with Rule 34, the government states that it will only make documents responsive to these requests available to PG&E via its Record Information System database ("RIS-Web") maintained by the Office of Civilian Radioactive Waste Management ("OCRWM"). This is unacceptable.

The government's claim that the burden to search for responsive documents on the OCRWM RIS-Web is the same for PG&E as it is for the government is ludicrous on its face. PG&E has no firsthand knowledge of the specific categories of documents that have been posted on the RIS-Web or any idea how to search the site sufficiently to ensure that all potentially relevant documents have been located and identified. The

---

[1] The government complains that PG&E's requests should also be denied because they are further burdening the government with the "extensive work" necessary to invoke the deliberative process privilege for some of the responsive documents. *See* Gov't Resp. at 23. The fact that the government may have to engage in the appropriately burdensome efforts required under the law to properly invoke the deliberative process privilege – a narrow privilege that is available only to the government – has no bearing on whether it should be required to comply with PG&E's requests. More importantly, in eight years of litigation, the government has never once engaged in the "extensive work necessary" to invoke the deliberative process privilege by submitting a proper affidavit from the head of DOE in support of the privilege claims. PG&E will be shortly filing a motion to compel with the Court challenging the government's improper invocation of the deliberative process privilege for hundreds of relevant documents.

[2] PG&E also agrees with the government that there no longer appears to be a dispute over the government's production of a privilege log.

government, on the other hand, does have this knowledge – it designed and set up the website and it knows precisely what documents are posted there. It therefore should not be allowed to satisfy its discovery obligations by pointing PG&E to the RIS-Web haystack and telling it to search for the needles.[3]

**C. The Remaining Disputed Requests are Narrow, Specific and Relevant.**

1. Request No. 19.

The government devotes several paragraphs of its response to arguing why it should not have to respond to PG&E Request No. 19, as narrowed. The government's entire response is nothing more than a red herring. As the government points out, PG&E narrowed Request No. 19 to "DOE intra-governmental communications related to the government's duties, obligations and performance under the NWPA and the Standard Contracts." (emphasis added) Yet the government complains that this narrowed request somehow "seeks production of every internal DOE communication relating to the NWPA." Gov't Resp. at 15. The narrowed request, on its face, does no such thing, and PG&E is no longer requesting such a broad category of documents.[4] To the contrary, PG&E is now only seeking under Request No. 19 DOE internal communications concerning DOE's duties, obligations and performance under the Standard Contracts.[5] These documents – concerning DOE 's own understanding of its contract obligations –

[3] Moreover, PG&E has recently learned through the taking of the deposition of John Arthur, the Deputy Director of OCRWM, that because the Licensing Support Network (LSN), which the RIS-Web is part of, has been decertified for not being complete, the public does not currently have access to any documents that have been added to the LSN from the date of decertification until the future date on which it is again certified.

[4] The fact that the government is still resisting responding to PG&E's disputed requests even after PG&E, at the government's insistence, voluntarily narrowed most of its requests, also shows that the government's initial response was disingenuous.

[5] To the extent the phrase "under the NWPA" is now the problematic phrase in narrowed Request No. 19, PG&E is willing to narrow this request further to "DOE intra-governmental communications related to the government's duties, obligations and performance under the Standard Contracts."

are particularly probative with regard to multiple issues in this case, including, but not limited to, scheduling and acceptance. Because the government has not articulated a legitimate basis for refusing to respond to Request No. 19, as narrowed, it should compelled to respond.

2. Request No. 22.

PG&E has requested that the government produce all "[c]ommunications between PG&E and either DOE or the [NRC] related to spent fuel." The government has already agreed to produce all documents responsive to this request from DOE's files. *See* Motion to Compel, Exh. 2 at 18-19 ("Without waiving these objections, defendant will produce all non-privileged documents within its control responsive to this request from the files of the Department of Energy, . . ."). Therefore, the only apparent dispute is whether the government must produce responsive documents from the NRC's files.[6] The government continues to argue that it should not have any obligation to search for or produce these documents because PG&E should already have copies of all of these documents already in its possession. That is simply no excuse for refusing a proper discovery request – and the fact is, PG&E may not have some or all of these documents in its files. Moreover, as PG&E has now told the government several times, PG&E is entitled to discover whether the NRC has in its possession any additional communications with PG&E that are not currently in PG&E's files (for whatever reason) and to confirm that the NRC actually received various communications from PG&E.

---

[6] It should be noted, however, that in its Response, the government appears to have backtracked on its commitment to produce all documents responsive to this request from DOE's files. *See* Gov't's Resp. at 23 ("To the extent that PG&E wants a wider-ranging search for documents, it should be required to identify the specific documents or categories of documents it recalls having sent to DOE and/or the NRC and to explain the relevance of those documents and PG&E's need for production of those documents. Otherwise, this request seems intended merely to keep the Government busy with a useless and time-consuming search of the files of two separate agencies.") (emphasis added). The government should not be allowed to refuse to produce documents once it has agreed to produce them.

The government also argues for the first time that this request is overbroad because the term "related to spent fuel" potentially encompasses communications "potentially dealing with the chemical makeup of spent fuel." Gov't Resp. at 22. To the extent this is a legitimate concern, PG&E agrees with the government that it does not need PG&E communications concerning the chemical makeup of spent fuel. While it is nonsense for the government to contend that PG&E should be required to identify "the specific documents or categories of documents that it recalls having sent to DOE and/or the NRC and to explain both the relevance of those documents and PG&E's need for production of those documents" (Gov't Resp. at 23), PG&E is willing to agree that the government need only search for and produce from NRC's files PG&E communications relating to scheduling, pace, capacity, acceptance, and removal of spent fuel, to the extent not already produced, provided that the government also produce, as it has already agreed, <u>all</u> communications from DOE's files.

3. <u>Request Nos. 26, 28 and 29</u>.

The government's persistent refusal to comply with these requests is perplexing. As stated in PG&E's Motion to Compel, all PG&E is requesting is that government undertake a <u>reasonable</u> search for and produce any responsive documents <u>that have not been previously produced</u>. As the government concedes, it has previously searched for and produced documents responsive to these requests, but it apparently has not undertaken any subsequent searches for these types of documents since receiving PG&E's requests. Thus, the government should, at a minimum, be compelled to search for and produce any documents not previously produced relating to (1) whether GTCC waste is covered by the Standard Contract; (2) the schedule upon which utilities' GTCC

waste could have been accepted; and (3) the schedule upon which failed fuel, nonstandard fuel, and "other than standard fuel" could have been accepted. *See* Gov't Resp. at 23.

Further, with regard to Request No. 29, PG&E is now requesting "All documents pertaining to Yucca Mountain design considerations for failed fuel and non-standard fuel." These documents, as the government acknowledges, are highly relevant to a key government defense: that the government is not obligated under PG&E's contract to accept failed fuel or other than standard fuel on the same schedule that applies to standard fuel. *See id.* at 23, n. 11. In response, the government says that the responsive documents are available on its RIS-Web database. As discussed above, this is an unacceptable form of document production. The government, not PG&E, should be required to search the RIS-Web database and produce these documents.

4. Request No. 30.

In sharp contrast to the government's stonewalling on producing other documents that PG&E created or received, the government has stated that it is willing, in response to Request No. 30, to produce documents that relate to the decommissioning of PG&E's Humboldt Bay Power Plant Unit 3 "to the extent that such documents deal with scheduling or related matters involving PG&E's SNF acceptance and the scheduling of that acceptance." Gov't Resp. at 17-18. The government, however, contends that it should not have to produce Humboldt Bay decommissioning documents that do not touch on schedule issues. The government should not be allowed to cherry pick in such fashion. The government's assertion that Judge Merow similarly limited the government's production obligation for decommissioning documents in *Yankee Atomic* is

wrong. Decommissioning issues beyond DOE's breach-world acceptance schedule were litigated in *Yankee Atomic*. Thus, to the extent that non-schedule related Humboldt Bay decommissioning documents have already been collected by the government they must be produced, and to the extent they haven't, they need to be collected and produced.[7]

### D. A 30(b)(6) Deposition is Necessary Because the Government Refuses to Comply With Its Discovery Obligations.

The government's long-winded objection to PG&E's 30(b)(6) deposition topics are nothing more than a smokescreen designed to obscure what is now plainly obvious: the government does not want to answer any questions about what it has done in response to PG&E's document requests because it knows what it did was inadequate and it does not want that to be exposed. Thus, instead of agreeing to submit to basic questions about its "search for documents responsive to [PG&E's] First Request for Production of Documents" (Amended 30(b)(6) Notice, Subject No. 1) and the results of these searches (Amended 30(b)(6) Notice, Subject No. 2), the government goes to great lengths to describe the efforts it made in 1999, 2001 and 2002 to comply with other spent fuel plaintiffs' document requests. Other than proudly pointing out that it has very recently, seven years after the commencement of the first spent fuel cases, produced the contract files for the various Standard Contract holders, the government does not disclose what, if any, efforts it has made to search for documents since 2002, or what efforts it has made in response to PG&E's specific requests.[8]

---

[7] PG&E is no longer seeking to compel production of documents responsive to modified Request No. 23, "Documents relating to the feasibility of on-going storage of non-commercial SNF (e.g., Navy fuel, research reactor fuel) at non-civilian reactors."

[8] The fact that it has taken the government seven years to produce the contract files shows how important it is for the Court to police the government's discovery efforts and push the government to do what it is obligated to do.

The government asserts that PG&E is seeking through the deposition to have the government "go through the entirety of the Government's past document production and identify . . . which documents related to which of PG&E's document production requests" and worries that PG&E wants to ask government witnesses about the "contents of these documents." Gov't Resp. at 31-32, 35. These are simply more red herrings. PG&E has never made such demands and the government knows it. As PG&E has now explained to the government on several occasions, what PG&E simply wants is a government witness to explain, under oath, what the government has done to ensure that it has fully and completely responded to PG&E's document requests. This necessarily requires answering questions about (i) what the government did to search for documents responsive to PG&E's requests (or to ascertain that prior searches were responsive), after receiving PG&E's requests on June 3, 2005 (Subject No. 1); (ii) what were the results of the government's searches (if any) and other efforts conducted after receiving PG&E's requests (Subject No. 2); (iii) what documents have been produced on the government's document production website as a result of the government's searches for documents responsive to PG&E's requests and how those documents can be located on the website (Subject Nos. 3 and 4); and (iv) what, if any, responsive documents has the government withheld from production on privilege and/or work product grounds as a result of the government's search for documents responsive to PG&E's requests (Subject No. 5). In other words, PG&E is not interested, nor has it even been interested, in finding out what the government did back in 1999-2002 to produce documents in response to other document requests.[9]

---

[9] It is certainly possible, however, that upon receiving and reviewing PG&E's requests, the government decided that, with regard to several of the requests, it did not need to search for or produce any

Of course, had the government made a good faith attempt to comply with its discovery obligations, a 30(b)(6) deposition would most likely be unnecessary. But it is not sufficient under Rule 34 for the government merely to point PG&E in the direction of its document production website and say, without much further explanation, "Your requested documents are probably all there." It bears emphasis that, apart from pointing to the government's production website, the government has not produced one single piece of paper to PG&E in response to its document requests in this case. That is the situation PG&E presently finds itself in. The government further insists that the document organization on its document production website complies with Rule 34 because "the files were scanned in the order and manner that they were received from each Federal employee," But that does not constitute production of documents "as they are kept in the usual course of business."[10]

The government also suggests that a 30(b)(6) deposition is not really necessary because PG&E's counsel previously took Rule 30(b)(6) depositions of DOE regarding its prior search efforts in response to other document requests. However, the government's document production website did not even exist when these depositions were taken, and the most recent of those depositions were taken over three and a half years ago, on February 19, 2002. The prior depositions obviously could not and did not address what the government did in response to PG&E's specific document requests.

---

additional documents because it determined that all responsive documents had already been previously produced. PG&E should be allowed to learn whether this is in fact the case.

[10] The government claims that its method of production is no different from how PG&E has produced its documents. But PG&E has electronically scanned and produced its documents as they were kept in the ordinary course of business, including providing file folder information, and not in the order and manner in which the documents were received from its employees.

The government must be held accountable for its continual stonewalling and the obvious, blatant deficiencies with its responses to PG&E's requests. The only fair and proper way to accomplish this is to require the government to submit to a 30(b)(6) deposition on the subjects PG&E has noticed.[11]

## IV. <u>CONCLUSION</u>

For the foregoing reasons, PG&E respectfully requests that the Court grant its Motion to Compel and order the government to fully respond to PG&E's Requests in accordance with RCFC 34 and designate a witness or witnesses to testify on the subjects listed in PG&E's Amended Rule 30(b)(6) Notice of Deposition, and that the government's request for a protective order be denied. PG&E further requests expedited resolution of its Motion and oral argument if the Court would find that helpful.

Dated: September 29, 2005

Respectfully submitted,

s/ Jerry Stouck
Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173
(202) 261-4751
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:

Robert L. Shapiro
Kevin E. Stern
Greenberg Traurig, LLP

---

[11] The government's proposed "solution" of having PG&E instead submit written questions to the government about its document search efforts in lieu of a 30(b)(6) deposition is nothing more than a further delay tactic, a further effort to avoid any real accountability, and an invitation for more stonewalling by the government. It also will cause PG&E to incur the additional expense of drafting questions, reviewing answers and formulating follow up. Rule 30(b)(6) entitles PG&E to take a deposition on issues concerning the government's discovery efforts, and the Court should order that deposition to proceed.