DEPARTMENT OF ENERGY
REDELEGATION ORDER NO. 00-002.03
TO THE
ASSISTANT SECRETARY FOR ENVIRONMENTAL MANAGEMENT

1. DELEGATION. Pursuant to section 202(b) of the Department of Energy Organization Act (Public Law 95-91, 42 U.S.C. 7132(b)) and Secretary of Energy Delegation Order 00-002 provided to the Under Secretary for Energy, Science and Environment to perform the function and duties related to Environmental Management, I delegate to the Assistant Secretary for Environmental Management authority to take the following actions:

1.1 On a nonexclusive basis, assert the Federal Government's deliberative process privilege with respect to any matters arising under his or her cognizance. This delegation is made to protect internal predecisional Department of Energy documents in judicial or administrative proceedings in situations where the court may require the claim to be formally asserted by an affidavit from an agency official.

1.2 Under section 624 of the Department of Energy Organization Act (42 U.S.C. 7234) and in accordance with the Federal Advisory Committee Act (5 U.S.C. App. 2), nominate, appoint, renew the term of, and terminate the service of members of the Environmental Management Site Specific Advisory Board.

1.3 Establish, alter, consolidate or discontinue such organizational units or components within assigned organizational elements as deemed to be necessary or appropriate.

A. In exercising this authority, or as redelegated pursuant thereto, delegates will be limited by approved budgets, staffing level allocations, and Senior Executive Service and other executive resource position allocations. Organizational changes shall not be announced or implemented until appropriate union coordination and other pre-release clearances have been obtained.

B. This authority does not include approval of additional, deletion, or transfer of mission and functions of or between Departmental Headquarters or Field Elements, which authority is reserved to the Secretary.

C. Heads of Departmental Headquarters Elements may delegate the authority to alter or consolidate organizational elements further, in whole or in part, consistent with the terms of the Department of Energy Organization Act, to an official or officials one level below the Head of the Departmental Headquarters or Field Element.

D. The authority to establish or discontinue organizational elements at the first or second level below the Head of Departmental Headquarters or Field Element may not be redelegated.

E. Acting Heads of Departmental Headquarters or Field Elements may not redelegate these authorities and may only establish, alter, consolidate or discontinue organizational units at the third level and below. During the tenure of an acting Head of a Departmental Headquarters or Field Element, organizational units below the Head of Departmental Headquarters and Field Elements may not exercise redelegations granting the authority to alter or consolidate units.

2. RESCISSION. Delegation Order Nos. 0204-153 and 0204-167 are hereby rescinded.

3. LIMITATION.

3.1 In exercising the authority delegated in this Order, a delegate shall be governed by the rules and regulations of the Department of Energy and the policies and procedures prescribed by the Secretary or delegate(s).

3.2 Nothing in this Order precludes the Secretary or the Under Secretary for Energy, Science and Environment from exercising any of the authority delegated by this Order.

3.3 Any amendments to this Order shall be in consultation with the Department of Energy General Counsel.

4. AUTHORITY TO REDELEGATE.

4.1 Except as prohibited by law, regulation, or this Order, the Assistant Secretary for Environmental Management may delegate this authority further, in whole or in part.

4.2 Copies of redelegations and any subsequent redelegations shall be provided to the Office of Management and Operations Support, which manages the Secretarial Delegations of Authority system.

5. DURATION AND EFFECTIVE DATE.

5.1 All actions pursuant to any authority delegated prior to this Order or pursuant to any authority delegated by this Order taken prior to and in effect on the date of this Order are ratified and remain in force as if taken under this Order, unless or until rescinded, amended or superseded.

5.2 This Order is effective January 8, 2002.

Robert G. Card
Under Secretary for Energy,
Science and Environment

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY | ) | |
| CONNECTICUT YANKEE ATOMIC POWER COMPANY | ) | |
| MAINE YANKEE ATOMIC POWER COMPANY | ) | |
| FLORIDA POWER & LIGHT COMPANY | ) | |
| NORTHERN STATES POWER COMPANY | ) | Case Nos. 98-126C, |
| DUKE POWER, A Division of DUKE ENERGY CORP. | ) | 98-154C, 98-474C, |
| INDIANA MICHIGAN POWER COMPANY | ) | 98-483C, 98-484C, |
| SACRAMENTO MUNICIPAL UTILITY DISTRICT | ) | 98-485C, 98-486C, |
| SOUTHERN NUCLEAR OPERATING COMPANY, et al. | ) | 98-488C, 98-614C, |
| COMMONWEALTH EDISON COMPANY | ) | 98-621C, 99-447C, |
| BOSTON EDISON COMPANY | ) | 00-440C, 00-697C, |
| GPU NUCLEAR, INCORPORATED | ) | 00-703C, 01-115C, |
| WISCONSIN ELECTRIC POWER COMPANY | ) | 01-116C, 01-249C |
| POWER AUTHORITY OF THE STATE OF NEW YORK | ) | 01-551C |
| OMAHA PUBLIC POWER DISTRICT | ) | |
| NEBRASKA PUBLIC POWER DISTRICT | ) | Judge Sypolt |
| TENNESSEE VALLEY AUTHORITY | ) | (Discovery Judge) |
| PSEG NUCLEAR LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

ASSERTION OF DELIBERATIVE PROCESS PRIVILEGE

1. In response to discovery requests from the utility plaintiffs, the Department of Energy (DOE) has reviewed and produced thousands of documents referring or relating to DOE's delay in beginning acceptance of spent nuclear fuel or high level waste by January 31, 1998 and the schedule by which DOE should have begun acceptance. In that process, DOE's attorneys have withheld a small number of documents that involve and/or reflect the Department's deliberative processes. DOE has a policy of protecting its deliberative processes in order to assure free flow of ideas and candid discussion of alternatives, which are essential to its efficient operation.

2. Pursuant to a formal delegation by the Secretary of Energy to the Under Secretary of Energy, Science and Environment, and a subsequent formal redelegation from the Under Secretary to the Director, Office of Civilian Radioactive Waste Management, the Director or her delegate has responsibility for asserting the Government's deliberative process privilege within the cognizance of her Office.

3. Accordingly, because the delay in spent nuclear fuel acceptance controversy is within the cognizance of the Office of Civilian Radioactive Waste Management ("OCRWM"), I, Ronald A. Milner, delegate of Director Dr. Margaret S.Y. Chu, hereby assert the deliberative process privilege on behalf of the Department of Energy for the following described documents:

A. The document Bates-Stamped CTR191370 - CTR191383 is addressed to the Office of the Secretary from an individual in DOE's office of Fissile Materials Assurance Working Group ("FMAWG"). The specific policy decision at issue was the methods through which the Department would safeguard irradiated nuclear materials. The document seeks Secretary-level approval of the attached Program Directions for Safeguarding Irradiated Nuclear Materials. The document also includes a communication from the Acting Deputy Assistant Secretary for Nuclear Material and Facility Stabilization to AMEM field managers regarding the FMAWG drafted program direction, and seeks comments and estimated costs to implement the proposed Program Directions. The document was part of DOE's policy deliberations that led to the Department's decision, and includes a recommendation from FMAWG to the Office of the Secretary relating to that decision.

B. The document Bates-Stamped CTR0451252 - CTR0451269 is a draft of a presentation from the acting director of OCRWM to the Under Secretary of Energy regarding DOE's FY2003 budget request. The specific policy decision at issue was the amount of money DOE would budget for fiscal year 2003 for OCRWM, and the document was part of DOE's policy deliberations that led to DOE's decision.

C. The document Bates-Stamped HQR0380108 - HQR0380111 is a lraft document that includes the Department's considerations and recommendations regarding how DOE should improve its interaction with the State of Nevada. The document is part of an ongoing policy deliberation within the DOE regarding its continuing interaction with Nevada as it relates to the storage of spent nuclear fuel at Yucca Mountain.

D. The document Bates-Stamped HQR0950014 - HQR0950025 is a draft memorandum for the Under Secretary of Energy from Assistant Secretary of Energy Huntoon regarding the Department's Decision on Acceptance of Spent Nuclear Fuel from General Atomic's facility. The specific policy decision at issue was how DOE would accept spent nuclear fuel from General Atomic's facility. and the document lists a series of options to be decided upon and a recommendation for a specific option. The document reflects the Department's policy deliberations relating to that decision.

E. The document Bates-Stamped HQR0390447 - HQR0390454 is a legal memorandum from DOE's General Counsel to the Executive Assistant to the

Deputy Secretary of Energy regarding options for the receipt of Cintichem fuel. The specific decision at issue was how DOE would accept Cintichem fuel, and this document reflects DOE's deliberations regarding different methods for accepting the fuel, and provides options, discusses advantages and disadvantages of the options, and makes recommendations regarding the acceptance of Cintichem fuel.

F. The document Bates-Stamped HQR0510001 - HQR0510007 is a briefing memorandum to the Secretary of Energy from Mary Louise Wagner, special advisor to the Secretary of Energy, regarding a meeting with utility executives that provides recommendations and analysis of issues prior to a meeting with executives of PECO and ComEd. The specific decision at issue in this document was whether DOE could settle the utilities' lawsuits, and upon what terms DOE could settle the lawsuits. The document reflects part of the Department's deliberations that led to its decision, and also includes materials prepared at the direction of counsel and attorney-client communications.

G. The document Bates-Stamped HQR0510008 - HQR0510011 is a briefing memorandum for the Secretary of Energy from Mary Louise Wagner and Mary Anne Sullivan, General Counsel of the Department of Energy, regarding a meeting with Northern States Utility. The specific decision at issue in this document was whether DOE could settle the utilities' lawsuits, and upon what terms DOE could settle the lawsuits. The document reflects part of the Department's deliberations that led to its decision, and also includes materials

prepared at the direction of counsel and attorney-client communications.

H. The document Bates-Stamped HQR0510018 is a summary regarding spent fuel storage costs. The document is part of DOE's ongoing deliberations that involve the possibility of settling the nuclear utilities' lawsuits, and upon what terms DOE could settle the lawsuits. The document includes materials prepared at the direction of counsel and attorney-client communications, and provides the estimated costs associated with pursuing a number of options and scenarios regarding DOE's delay in SNF acceptance.

I. The document Bates-Stamped HQR0292342-HQR0292353 is a memorandum from Lake Barrett to Thomas Grumbly regarding the advantages and disadvantages of several litigation options as they relate to the Department's acceptance of spent nuclear fuel. The specific decision at issue in this document was whether DOE could settle the utilities' lawsuits, and upon what terms DOE could settle the lawsuits. The document reflects part of the Department's deliberations that led to its decision, and also includes materials prepared at the direction of counsel and attorney-client communications.

J. The document Bates-Stamped HQR0392003-HQR0392005 is a draft of talking points for a telephone call to the Office of Management and Budget ("OMB") regarding a particular settlement option relating to the spent nuclear fuel lawsuits that DOE proposed to OMB. The specific decision at issue in this document was whether DOE could settle the utilities' lawsuits, and upon what terms DOE could settle the lawsuits. The document reflects part of the Department's deliberations

that led to its decision, and also includes materials prepared at the direction of counsel and attorney-client communications.

K. The documents numbered HQR0283563-HQR0283588 and HQR290966-HQR290970 are duplicate memoranda to TJ Glauthier from Holstein and Mary Anne Sullivan, Deputy General Counsel, regarding the Department's response to Indiana Michigan Power Co. v. DOE. The document provides recommendations that the DOE take certain actions in response to the court decision, and requests concurrence with the proposed approach. The document also attaches a draft of a sample letter to contract holders, and includes a draft attachment of the contracting officer's preliminary determination.

L. The documents Bates-Stamped CTR0400568-CTR0400583 and HQR0320182-HQR0320197 are duplicates or different versions of an OMB memorandum from TJ Glauthier, Associate Director Natural Resources, and Charles Curtis, Under Secretary of Energy, requesting comments from various offices, including the Department of Justice, regarding an options paper upon the question of interim storage of high-level radioactive waste. The specific decision at issue was whether DOE would elect to store spent nuclear fuel in an interim storage facility, and this document reflects DOE's considerations and deliberations that relate to that decision. The document discusses issues and options relating to that decision, and the advantages and disadvantages of each option.

M. The document Bates-Stamped HQR0381321 is a March 23, 2000 email message from D. Kim to Mary Louise Wagner at DOE that contains draft language for the

President regarding the President's intent to veto S. 1287, the Nuclear Waste Policy Act ("NWPA") of 2000. The specific decision at issue was the Department's recommendation to the Administration concerning S. 1287, and the document reflects DOE's policy considerations that relate to that decision, including proposed reasons for vetoing the 2000 NWPA.

N. The document Bates-Stamped HQR0240155-HQR0240182 is a set of presentations and cost estimates created in approximately March 2000 that discuss the rate at which DOE considered the pick-up of spent nuclear fuel, and the cost estimates to DOE if Congress passed S.1287. The specific policy deliberation at issue is DOE's ongoing deliberation regarding the rate that it will accept spent nuclear fuel. This document reflects some of DOE's policy considerations as it relates to this deliberation. The presentations include cost estimates and cost assumptions if DOE were to take title of the SNF, and discuss various proposals for the President's budget for a site characterization program, repository development, and waste acceptance.

O. The documents Bates-Stamped HQR0290177-HQR0290190, HQR04214.52-HQR04214.64, and HQR0320231-HQR0320245 are different versions or duplicates of a draft memorandum regarding DOE's policy options for the interim storage of nuclear waste. The documents outline DOE's options for interim storage, and DOE's perceived advantages and disadvantages of each option. The specific decision at issue was whether DOE would accept spent nuclear fuel at an interim storage facility, and these documents reflect DOE's policy deliberations as

they related to DOE's decision.

P. The documents numbered HQR0290044-HQR0290051, HQR0292365-HQR0292368 and HQR0292428-HQRH292434 are different versions or duplicates of a memorandum dated January 31, 1997 from Charles Curtis, Acting Secretary of Energy, and Thomas Grumbly, Under Secretary, regarding DOE's proposed position on interim storage written in preparation for the Senate Energy Committee's February 5, 1997 hearing on interim storage. The specific decisions at issue were whether DOE would accept spent nuclear fuel at an interim storage facility, and whether DOE could offer relief to the utilities involved in the lawsuits. The memorandum discusses whether DOE can offer relief to the utilities involved in lawsuits, and outlines DOE's perceived advantages and disadvantages for this proposed relief. The documents reflect DOE's policy deliberations as they related to these decisions.

Q. The documents Bates-Stamped HQR0320151-HQR0320156, HQR0320213-HQR0320220, HQR0320221-HQR0320227, HQR0320176-HQR0320181, and HQR0320207-HQR0320212 are different versions or drafts of a memorandum entitled "Proposed Presidential Position Regarding Interim Storage of Spent Nuclear Fuel" that discuss the Administration's current position regarding interim storage, and proposed recommendations for the Administration's position. The specific decision at issue was whether DOE would accept spent nuclear fuel at an interim storage facility. The document reflects DOE's policy deliberations as they relate to DOE's position, and provides analysis supporting the proposed

recommendations, including the possibility of expedited acceptance of SNF, legislative implications, costs, and various options regarding interim storage and options for compensating utilities for Federal delays in waste acceptance.

R. The document Bates-Stamped HQR0320199-HQR0320206 is a May 13, 1995 draft memorandum from TJ Glauthier of OMB to Kathleen Peroff; Gary L. Bennethum and Robert L. Civiak discussing the Administration's policy and guidance to DOE regarding the interim storage of SNF. The specific decision at issue was whether DOE would accept spent nuclear fuel at an interim storage facility. The document reflects DOE's policy deliberations as they relate to this decision, and discusses options available to DOE regarding interim storage, a cost analysis involving paying utilities that experience delays from scheduled shipment dates under various assumptions, and a list of principles to consider for interim storage.

S. The documents Bates-Stamped HQR0284037-HQR0284045, HQR320166-HQR320174, HQR0320280-HQR0320288, and HQR03203.21-HQR03203.27 are different versions or duplicates of an August 31, 1995 memorandum for the President from Alice Rivlin and Hazel O'Leary asking for President's decision on an Administration position for the storage of spent nuclear fuel and high level waste. The document reflects DOE's policy deliberations as they relate to how the Department will begin acceptance and storage of spent nuclear fuel and high level waste. The memorandum recommends a Presidential position, and includes recommendations to the President regarding various options of storing SNF, and

discusses the advantages and disadvantages of each option.

T. The document Bates-Stamped HQR0290820-HQR0290832 consists of three drafts of a memorandum entitled "Talking Points for OMB-White House involving the Release of the Department of Energy letter stating the anticipated delay in 1998." The memorandum also includes talking points regarding the Administration's position on S.1936, radiation standards, environmental protection, and interim storage. The document reflects DOE's policy deliberations as they relate to DOE's response to the delay in its acceptance of spent nuclear fuel.

U. The document Bates Stamped HQR0290839-HQR0290841 is a September 4, 1996 email from BJ Johnson to Fidler, Holstein, and TJ Glauthier providing draft policy guidance to DOE regarding when and where DOE will begin to accept spent nuclear fuel. The document reflects DOE's policy deliberations regarding the time and place in which DOE intends to begin acceptance of spent nuclear fuel.

V. The document Bates Stamped HQR0290308-HQR0290325 is a March 31, 1997 predecisional memorandum to TJ Glauthier from Holstein and Thomas Grumbly regarding DOE's 1997 policy options and alternatives involving DOE's acceptance of spent nuclear fuel. The memorandum was prepared for Secretary Pena's meeting with the nuclear utilities on April 3, 1997, and discusses potential proposals that DOE could offer to the utilities for the acceptance of spent nuclear fuel, and the advantages and disadvantages of each of the proposals. The

document also contains potential questions that DOE could pose to utilities, the expected answers from the utilities, potential questions from utilities, and proposed DOE answers to the utilities' questions. The document reflects DOE's policy deliberations as they relate to DOE's response to the utilities' dissatisfaction with the Department's inability to begin acceptance of commercial spent nuclear fuel.

W. The document Bates Stamped HQR0430019 is a predecisional memorandum from Lake Barrett's files regarding the Administration's policy on nuclear waste, and includes options for the path forward once the Yucca Mountain Viability Assessment is released to the public. The document reflects DOE's policy deliberations as they relate to DOE's response to accepting spent nuclear fuel once Yucca Mountain's Viability Assessment is released.

X. The document Bates Stamped CTR0193318-CTR0193319 is an undated draft paper entitled, "Proposal: White Paper on Sabotage Issues Supporting the EIS's Covering Spent Fuel Shipments" that involves discussion of analyses to be performed that relate to the possible sabotage of spent nuclear fuel shipments to Yucca Mountain. The document reflects DOE's policy deliberations regarding how it will address potential sabotage issues in the transportation of spent nuclear fuel.

After personally reviewing each of the above described documents, I conclude that they all reflect DOE's deliberative processes and should be protected from disclosure.

I declare under the penalty of perjury, this 13th day of May, 2002, that the foregoing is true and correct to the best of my knowledge and belief.

Ronald A. Milner
Chief Operating Officer
Office of Civilian Radioactive Waste Management

UNITED STATES
NUCLEAR REGULATORY COMMISSION
WASHINGTON, D.C. 20555-0001

CHAIRMAN

July 24, 2002

MEMORANDUM TO: Martin J. Virgilio, Director
Office of Nuclear Materials Safety and Safeguards

FROM: Richard A. Meserve
Chairman

SUBJECT: DELEGATION OF AUTHORITY

In accordance with section 4 of the Reorganization Plan No. 1 of 1980 (5 U.S.C. Appendix 1), and the Nuclear Regulatory Commission's Standards for Delegation of Authority (Management Directive 9.1, Appendix, Part IV), you are hereby delegated the authority to assert the deliberative process privilege on behalf of the Nuclear Regulatory Commission in the cases involving the standard contract for the disposal of spent nuclear fuel published at 10 C.F.R. § 961.11 pending before the United States Court of Federal Claims. This authority may be further delegated only with my approval. Please keep me informed concerning your action in this matter.

cc: W. Travers, OEDO
K. Cyr, OGC
J. Cordes, OGC

UNITED STATES
NUCLEAR REGULATORY COMMISSION
WASHINGTON, D.C. 20555-0001

CHAIRMAN

September 5, 2002

MEMORANDUM TO: Martin J. Virgilio, Director
Office of Nuclear Materials Safety and Safeguards

FROM: Richard A. Meserve

SUBJECT: ASSERTION OF THE DELIBERATIVE PROCESS PRIVILEGE ON BEHALF OF THE COMMISSION

By memorandum dated July 24, 2002, I delegated to you the authority to review documents which the Commission proposes to protect from disclosure in cases involving the standard contract for the disposal of spent nuclear fuel published at 10 C.F.R. § 961.11 pending before the U.S. Court of Federal Claims. In that memorandum, I delegated to you the authority to assert the claim of the deliberative process privilege because these documents could contain information that is recommendatory and predecisional, or part of the agency decisionmaking process, and thus a privilege is necessary in order to protect and promote the frank and open discussion within the agency that is essential to effective decisionmaking.

There has recently been an increase of discovery in civil litigation involving the Department of Energy and the Nuclear Regulatory Commission. Some discovery requests are directed generally at the internal deliberations concerning the functions of the Office of Nuclear Materials Safety and Safeguards and the Nuclear Regulatory Commission. I am aware ~~that~~ some courts have developed a requirement that the "head" of the agency personally review all such assertions on behalf of the agency or department.

It is obvious that the time of the Chairman cannot be devoted to the personal review of hundreds of privileged documents sought by litigants. Accordingly, I have delegated to you the authority to conduct that review and, if you determine it to be appropriate, to assert the government's deliberative process privilege for recommendatory and deliberative documents, release of which would in your judgment threaten the free flow of communication which is necessary for the effective functioning of the agency.

In general, documents will be presented to you or your delegate by the attorneys representing the Commission in the particular litigation in which discovery is sought. The attorneys will have made a preliminary decision that these materials may be privileged, and will advise you of the nature of the action, the scope of the discovery request at issue and other pertinent information. Any review of the documents pursuant to this delegation and any redelegation that I might authorize should be in accord with the following guidelines.

1. Each document must be personally examined, and careful consideration must be given as to whether the release of a document, or of a related set of documents, would seriously inhibit the frank and open discussion of legal or policy matters among agency personnel. Directives from superiors to subordinates explaining a decision already made should not be withheld pursuant to this privilege. However, drafts of substantive documents or documents reflecting discussions, analyses, recommendations, advice or other deliberations leading to a possible decision on a legal or policy matter should, consistent with advice of counsel and other instructions herein, be withheld.

2. If only certain portions of particular documents should be protected and those segments are reasonably segregable, the remaining portions should be released. For example, purely factual portions of memoranda generally should not be withheld pursuant to this privilege, but drafts should be withheld in their entirety.

3. The degree of harm to the public interest resulting from release of a given document should be carefully weighed against any public benefits or individual need for the information contained in that document.

4. Decisions in various civil actions as to whether the privilege is to be asserted should be consistent. In addition, all similar or related documents in a particular case should be treated consistently. Consistency is also important because the requesting party may later argue waiver, i.e., that release of one document concerning a particular issue or rulemaking has waived the privilege as to all documents regarding the same subject.

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-126C |
| UNITED STATES OF AMERICA, | ) | (Senior Judge Merow) |
| | ) | |
| Defendant. | ) | |

## ASSERTION OF DELIBERATIVE PROCESS PRIVILEGE

1. I understand that, in response to discovery requests from the utility plaintiffs, the Department of Energy ("DOE") and the Nuclear Regulatory Commission ("NRC") has reviewed and produced thousands of documents referring or relating to DOE's delay in beginning acceptance of spent nuclear fuel ("SNF") and/or high level radioactive waste ("HLW") by January 31, 1998, and the schedule by which DOE was obligated to accept SNF and/or HLW. In that process, the United States' attorneys have withheld a small number of documents that involve and/or reflect the NRC's deliberative processes.

2. The NRC has a policy of protecting its deliberative processes in order to assure the free flow of ideas and candid discussion of alternatives, which are essential to its efficient operation.

3. I have determined that disclosure of any of the deliberative process contents of the documents discussed in this affidavit would impair the NRC's efficient operations by interfering with the flow of confidential communications within the agency. If these drafts were publicized now, agency personnel would, in my opinion, be reluctant to set forth their positions. Thus, release would hamper the future intra-agency exchange of opinions and ideas, and would

have a "chilling effect" on the give-and-take involved in agency decisionmaking. It is in the public interest to insure that opinions and recommendations are expressed openly within the agency. Disclosure of the foregoing documents would be injurious to the Federal Government's decision-making functions because such disclosure would tend to inhibit the frank and candid discussion necessary to effective government.

4. Pursuant to a formal delegation from Chairman Richard A. Meserve of the NRC, pursuant to section 4 of the Reorganization Plan No. 1 of 1980 (5 U.S.C. Appendix 1), the Director of NRC's Office of Nuclear Materials Safety and Safeguards ("NMSS") has responsibility for asserting the NRC's deliberative process privilege in cases involving the standard contract for the disposal of spent nuclear fuel (10 C.F.R. § 961.11) that are pending before the United States Court of Federal Claims. Copies of these delegations accompany this declaration.

5. I, Martin J. Virgilio, am the Director of NMSS. One of the divisions within NMSS is the Division of Waste Management. As Director, I have management and oversight responsibilities for the NRC's Division of Waste Management, which has among its duties the responsibility for regulating the storage and disposal of GTCC in a manner consistent with protecting the public health and safety.

6. Accordingly, because questions concerning the NRC's regulation of GTCC are within the cognizance of NMSS, and as the delegate of Chairman Richard A. Meserve, I, Martin J. Virgilio, hereby assert the deliberative process privilege upon behalf of the NRC for the following described documents:

A. The document Bates-Stamped HQR1710167-HQR1710171 is an undated draft response from Chairman Meserve to Dr. Andrew Kadak in response to Dr. Kadak's October 24, 2000 letter requesting that the NRC redefine Greater Than Class C low-level radioactive waste ("GTCC") as high-level radioactive waste ("HLW"). The document Bates-Stamped NRC0030013-NRC0030017 is an exchange of e-mails between Keith McConnell and Neil Jensen, NRC Office of General Counsel, requesting legal review of NRC's draft response to Dr. Kadak's request and legal advice provided in response to the review. Attached to the e-mail is a substantially similar draft of the letter from Chairman Meserve to Dr. Kadak, which contains handwritten edits by Jensen concerning recommended changes to the letter. The document Bates-Stamped NRC0030021-NRC0030024 are an exchange of e-mails between McConnell and Jensen also requesting and providing legal review of NRC's draft response to Dr. Kadak's request. Attached to the e-mail is a substantially similar draft of the letter from Chairman Meserve to Dr. Kadak, which contains electronic edits by Jensen concerning recommended changes to the letter. The documents Bates-Stamped NRC0030039-NRC0030042 and NRC0030025-NRC0030026 are e-mails from James Kennedy forwarding substantially similar versions of the letter from Chairman Meserve to Dr. Kadak. The documents Bates-Stamped NRC0030055-NRC0030057, NRC0030029-NRC0030030, NRC0040138-NRC0040139, NRC0040140-NRC0040141, NRC0040149-NRC0040152, NRC0040153-NRC0040154 and NRC0100099-NRC0100101 are substantially similar versions of the undated draft response from Chairman Meserve. The document Bates-Stamped NRC0030087-NRC0030087 is a substantially similar abridged version of the undated draft response

from Chairman Meserve. The specific decision at issue within the documents was the NRC's response to Dr. Kadak's request that the NRC redefine GTCC as HLW. The documents reflect the deliberations of the NRC on how to respond to Dr. Kadak's request, and comprised part of the process by which the NRC formulated its decision. The NRC's assertion of deliberative process over other draft versions of the NRC's response to Dr. Kadak's request was upheld by Judge Sypolt's October 9, 2002 order on the utility plaintiffs' motions to compel.[1]

B. The document Bates-Stamped NRC0030036-NRC0030038 contains background information relating to NRC's response to Dr. Kadak's request that the NRC redefine GTCC as HLW. The document reflects, and is part of, the deliberations of the NRC on how to respond to Dr. Kadak's request, and comprised part of the process by which the NRC formulated its decision. The NRC's assertion of deliberative process over documents of the same character generated in its deliberations over its response to Dr. Kadak's request was upheld by Judge Sypolt's October 9, 2002 order on the utility plaintiffs' motions to compel.

C. The documents Bates-Stamped NRC0030045-NRC0030047, NRC0030064-NRC0030067, NRC0040146-NRC0040148, and HQR1210011-HQR1210014 are copies of a letter from DOE pursuant to the NRC's request that DOE provide a summary of DOE's concerns regarding possible NRC promulgation of rules defining HLW to include GTCC. The documents Bates-Stamped NRC0030068-NRC0030071 and NRC0040142-

---

[1] The substantially similar draft versions of these documents in which deliberative process was upheld by court order are HQR0540015-HQR0540019, HQR0540023-HQR0540026, HQR0540012, HQR0540446, and NRC0020005-NRC0020010.

NRC0040145 are substantially similar draft versions of the documents. The specific decision at issue was the NRC's response to Dr. Kadak's request that the NRC redefine GTCC as HLW. The documents are a part of the deliberations of the NRC and DOE, provide DOE's input into the NRC's deliberations on how to respond to Dr. Kadak's request, and comprised part of the process by which the NRC formulated its decision.[2]

D. The document Bates-Stamped NRC0030054-NRC0030054 is the letter from Dr. Andrew Kadak to Chairman Meserve requesting that the NRC redefine GTCC as HLW. The document contains handwritten notes by Neil Jensen, an attorney with the NRC, reflecting legal analysis by Mr. Jensen in furtherance of the NRC formulating a response to Dr. Kadak's request. The document reflects, and is part of, the deliberations of the NRC on how to respond to Dr. Kadak's request, and comprised part of the process by which the NRC formulated its decision. A copy of the letter from Dr. Kadak, without Mr. Jensen's handwritten notes, has previously been produced.

E. The document Bates-Stamped NRC0030058-NRC0030058 is an e-mail from Bill Reamer to Neil Jensen seeking legal advice and providing information in conjunction with the NRC's deliberations concerning how to respond to Dr. Kadak's request that the NRC redefine GTCC as HLW. The document reflects, and is part of, the deliberations of the NRC on how to respond to Dr. Kadak's request, and comprised part of the process by which the NRC formulated its decision.

---

2 These documents are copies of documents that were described in ¶ B of my previous affidavit asserting deliberative process. I have been informed that this assertion was upheld by court orders issued October 9, 2002 and October 11, 2002.

F. The document Bates-Stamped NRC0030072-NRC0030072 is an e-mail from James Kennedy to Neil Jensen seeking legal advice and providing information in conjunction with the NRC's deliberations concerning how to respond to Dr. Kadak's request that the NRC redefine GTCC as HLW. The document reflects, and is part of, the deliberations of the NRC on how to respond to Dr. Kadak's request, and comprised part of the process by which the NRC formulated its decision.

G. The document Bates-Stamped NRC0030073-NRC0030073 is an e-mail from Neil Jensen to James Kennedy concerning the NRC's response to Dr. Kadak's request that the NRC redefine GTCC as HLW. The document reflects, and is part of, the deliberations of the NRC on how to respond to Dr. Kadak's request, and comprised part of the process by which the NRC formulated its decision.

H. The document Bates-Stamped NRC0030075-NRC0030075 is an exchange of e-mails between Neil Jensen and Bill Reamer in which Mr. Jensen provides legal advice regarding the NRC's response to Dr. Kadak's request that the NRC redefine GTCC as HLW. The document reflects, and is part of, the deliberations of the NRC on how to respond to Dr. Kadak's request, and comprised part of the process by which the NRC formulated its decision.

I. The document Bates-Stamped NRC0030076-NRC0030080 is a memo, titled "Pre-Decisional Draft," prepared for the purpose of deciding how to respond to Dr. Kadak's October 24, 2000 letter requesting that the NRC redefine GTCC as HLW. The documents Bates-Stamped NRC0040121-NRC0040124 and NRC0040125-NRC0040128 are substantially similar versions of the document. The documents reflect, and are part

of, the deliberations of the NRC on how to respond to Dr. Kadak's request, and comprise part of the process by which the NRC formulated its decision.

J. The document Bates-Stamped NRC0040106-NRC0040107 is a memorandum discussing a possible NRC response to Dr. Kadak's October 24, 2000 letter requesting that the NRC redefine GTCC as HLW. The document reflects, and is part of, the deliberations of the NRC on how to respond to Dr. Kadak's request, and comprised part of the process by which the NRC formulated its decision.

K. The document Bates-Stamped NRC0040108-NRC0040108 is a memorandum discussing a possible NRC response to Dr. Kadak's October 24, 2000 letter requesting that the NRC redefine GTCC as HLW. The document reflects, and is part of, the deliberations of the NRC on how to respond to Dr. Kadak's request, and comprised part of the process by which the NRC formulated its decision.

L. The document Bates-Stamped NRC0040109-NRC0040110 is an undated draft letter from William D. Travers to Dr. Kadak in response to Dr. Kadak's October 24, 2000 letter requesting that the NRC redefine GTCC as HLW. The document contains handwritten edits for suggested changes and additions to the letter. The document reflects, and is part of, the deliberations of the NRC on how to respond to Dr. Kadak's request, and comprised part of the process by which the NRC formulated its decision.

M. The document Bates-Stamped NRC0040111-NRC0040111 is a memorandum discussing an analysis, potential conclusions, and relevant statutes relating to Dr. Kadak's October 24, 2000 request that the NRC redefine GTCC as HLW. The document reflects, and is

part of, the deliberations of the NRC on how to respond to Dr. Kadak's request, and comprised part of the process by which the NRC formulated its decision.

N. The document Bates-Stamped NRC0040120-NRC0040120 is a memorandum identifying issues to be discussed at a December 6, 2000 meeting regarding the NRC's response to Dr. Kadak's October 24, 2000 letter. The document reflects, and is part of, the deliberations of the NRC on how to respond to Dr. Kadak's request, and comprised part of the process by which the NRC formulated its decision.

O. The document Bates-Stamped NRC0040155-NRC0040155 is an e-mail exchange between Patricia Tressler and Catherine Poland regarding dates for finalizing the NRC's response to Dr. Kadak's October 24, 2000 letter. The document reflects, and is part of, the deliberations of the NRC on how to respond to Dr. Kadak's request, and comprised part of the process by which the NRC formulated its decision.

P. The document Bates-Stamped NRC0040204-NRC0040204 is a summary of letters to be discussed at an internal NRC meeting, including Governor King's October 1, 2001 letter. The summary charts the status of the NRC responses to letters addressing GTCC and SNF removal, security measures at Maine Yankee, and comments regarding those letters. The document reveals the NRC's policy deliberations regarding how to respond to those letters and forms part of the deliberative process.

Q. The document Bates-Stamped NRC0050010-NRC0050012 is a memorandum prepared by William Parler, General Counsel of NRC, for Eric Beckjord, Director of NRC Office of Nuclear Regulatory Research and contains legal advice for revision to staff paper on "10 CFR 61 - Land Disposal of Radioactive Waste." Attached to the document is a

concurrence sheet for the Office of General Counsel. The document was created prior to the publication of the final rule and forms part of the NRC's deliberative process.

R. The document Bates-Stamped NRC0060007-NRC0060009 is a memorandum requesting review and comments on the draft of the "Final Rule: Interim Storage for Greater Than Class C Waste." The document reveals the deliberations of the NRC regarding the content of the final rule and forms part of the deliberative process.

S. The document Bates-Stamped NRC0060010-NRC0060014 is a memorandum requesting approval to release the "Final Rule: Interim Storage for Greater Than Class C Waste." The document reveals the deliberations of the NRC regarding the content of the final rule and forms part of the deliberative process.

T. The document Bates-Stamped NRC0060015-NRC0060090 is a draft version of the "Final Rule: Interim Storage for Greater Than Class C Waste." The document indicates where the draft is incomplete and reveals the deliberations of the NRC regarding the content of the final rule and forms part of the deliberative process.

U. The document Bates-Stamped NRC0060091-NRC0060101 is a memo titled "Regulatory Analysis For Rulemaking On Interim Storage for Greater Than Class C Waste." The document analyzes the basis for rulemaking, discusses options for proceeding with rulemaking, makes recommendations regarding rulemaking, and forms part of the deliberative process. The document Bates-Stamped NRC0060207-NRC0060212 is a substantially similar version of this document.

V. The document Bates-Stamped NRC0060106-NRC0060131 is a draft proposed rule for the interim storage of GTCC with handwritten notes and edits. Attached to the draft are:

a draft letter to DOE from the NRC requesting comments from DOE regarding the proposed rule; draft environmental assessment for the proposed rule with suggested changes; and draft regulatory analysis with suggested changes. The document reveals the deliberations of the NRC regarding the content of the final rule and forms part of the deliberative process.

W. The document Bates-Stamped NRC0060135-NRC0060140 contains comments and suggested changes to the proposed rule for interim storage of GTCC. The document reveals the deliberations of the NRC regarding the content of the final rule and forms part of the deliberative process.

X. The document Bates-Stamped NRC0060192-NRC0060206 is a draft environmental assessment report for the proposed rule for interim storage of GTCC. The document discusses options for proceeding with rulemaking and contains recommendations. The document reveals the deliberations of the NRC regarding the content of the final rule and forms part of the deliberative process.

Y. The document Bates-Stamped NRC0100096-NRC0100098 contains comments and suggested changes to the proposed rule for interim storage of GTCC. The document reveals the deliberations of the NRC regarding the content of the final rule and forms part of the deliberative process.

Z. The document Bates-Stamped NRC0030027-NRC0030027 contains NRC briefing materials from a April 4, 2001 meeting between counsel for both NRC and DOE regarding NRC's response to Dr. Kadak's October 24, 2000 letter.