No. 04-0074C
into which has been consolidated No 04-0075C
Judge Hewitt

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# PACIFIC GAS & ELECTRIC COMPANY'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD UNDER THE "DELIBERATIVE PROCESS" PRIVILEGE

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173
(202) 261-4751
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:

ROBERT L. SHAPIRO
Greenberg Traurig, LLP

October 11, 2005

TABLE OF CONTENTS

PAGE

I. BACKGROUND ........................................ 2

II. ARGUMENT ........................................ 13

A. The government has not met the strict requirements for invoking the privilege. ..... 13

B. The government cannot satisfy the legal requirements to protect documents under the deliberative process privilege ........................................ 17

C. In any event, the balance of interests overwhelmingly favors disclosure of the allegedly privileged documents. ........................................ 21

D. Prior rulings by Judges Sypolt and Merow addressing the deliberative process privilege in spent fuel cases are not controlling here. ........................................ 23

III. CONCLUSION ........................................ 25

# TABLE OF AUTHORITIES

CASES PAGE(S)

*Cetron Elec. Corp. v. United States*
207 Ct. Cl. 985 (1975) .......... 3, 13

*Coastal Corp. v. Duncan*
86 F.R.D. 514 (D. Del. 1980) .......... 14

*In re Sealed Case*
21 F.3d 729 (D.C. Cir. 1997) .......... 21

*Jade Trading, LLC v. United States*
65 Fed. Cl. 487 (2005) .......... 6, 13, 17

*Kaiser Aluminum & Chem. Corp. v. United States*
141 Ct. Cl. 38, 157 F. Supp. 939 (1958) .......... passim

*Marriott Int'l Resorts L.P. v. United States*
61 Fed Cl. 411 (2004) .......... passim

*State of Alaska v. United States*
16 Cl. Ct. 5 (1988) .......... 21

*Texaco Puerto Rico, Inc. v. Dept. of Consumer Affairs*
60 F.3d 867 (1st Cir. 1995) .......... 21, 23

*Vaughn v. Rosen*
523 F.2d 1136 (D.C. Cir. 1975) .......... 16, 17

*Vons Cos. v. United States*
51 Fed. Cl. 1 (2001) .......... 17

*Walsky Constr. Co. v. United States*
20 Cl. Ct. 317 (1990) .......... passim

*Weiss v. United States*
180 Ct. Cl. 863 (1967) .......... 8, 21

*Yankee Atomic Elec. Co. v. United States*
54 Fed. Cl. 306 (2002) .......... 6

# INDEX OF PLAINTIFF'S APPENDIX


DOCUMENT PAGE

Table of Challenges ....................................................1

May 13, 2002 Delegation of Authority to Assert the Deliberative Process Privilege to Ronald Milner ....................................................41

May 12, 2002, Affidavit of Ronald Milner - Assertion Of Deliberative Process Privilege .......60

July 24, 2002, Delegation of Authority to Assert the Deliberative Process Privilege to Martin Virgilio ....................................................72

June 9, 2003, Affidavit of Martin J. Virgilio - Assertion Of Deliberative Process Privilege.....75

June 10, 2003, Affidavit of Gregory Friedman - Assertion Of Deliberative Process Privilege .86

June 13, 2003 Affidavit of Ronald Milner - Assertion Of Deliberative Process Privilege Regarding Fiscal Year 2003 Budget Documents ....................................................89

June 13, 2003 Affidavit of Ronald Milner - Assertion Of Deliberative Process Privilege Regarding Other Than Fiscal Year 2003 Budget Documents ....................................................95

June 11, 2003, Delegation of Authority to Assert the Deliberative Process Privilege to Patrice Bubar ....................................................103

June 12, 2003 Affidavit of Patrice Bubar - Assertion Of Deliberative Process Privilege ........104

June 12, 2003 August 25, 2003 Order of Senior Judge Merow, *Yankee Atomic v. United States,* No. 98-126C ....................................................114

Letter from Kevin Stern to John Ekman, Department of Justice, dated September 12, 2005, regarding government's deliberative process privilege claims...............118

Undated Draft Letter to Governor King, Version 1 ....................................................120

Undated Draft Letter to Governor King, Version 2 ....................................................122

Email from Robert Campbell regarding activities for the week of Oct. 29 to Nov. 2 .............124

Email from Robert Campbell regarding activities for the week of Oct. 22 -26........................126

Talking Points: John Grieves, NRC, wishes to discuss Gov. King response with Dave Huizenga....................................................128

INDEX OF PLAINTIFF'S APPENDIX (continued)

Talking Points: Greater than Class C Waste and Maine Yankee ............................................129

Email from Dan Kane regarding proposed rule on Part 72 – GTCC Waste,
dated July 21, 2000 ........................................................................................................130

September 21, 2005 Letter from Scott Damelin, Department of Justice to Kevin Stern
regarding his September 12, 2005 letter ......................................................................131

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04-0074C, into which has been |
| | ) | consolidated No. 04-0075C |
| v. | ) | (Judge Hewitt) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Filed Electronically: October 7, 2005 |
| | ) | |
| Defendant. | ) | |

PACIFIC GAS & ELECTRIC COMPANY'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD UNDER THE "DELIBERATIVE PROCESS" PRIVILEGE

Plaintiff Pacific Gas & Electric Company ("PG&E") respectfully moves this Court pursuant to RCFC 37(a)(2) to compel the government to produce the large number of responsive documents that the government has withheld from disclosure under the "deliberative process" privilege.. The 465 documents that are the subject of this motion are listed and described in the accompanying Table of Challenges contained in the accompanying Appendix at A1-40. The government has attempted to support the withholding of 145 documents with affidavits from subordinate government employees (A41-113) submitted by the government in response to similar motions to compel brought by the plaintiffs in *Yankee Atomic Elec. Co. v. United States,* No. 98-126C (Merow, J.) and in the spent fuel litigation common discovery proceedings before Judge Sypolt. The government has not submitted any affidavit, from any official, supporting the withholding of the other 320 documents.

The government should be compelled to produce these documents because the government has failed to satisfy the fundamental prerequisites for asserting the executive/deliberative process privilege, which require the government to (1) submit an affidavit from the *head* of the relevant department or agency that (2) sets forth the "precise and certain

reasons" for withholding the documents in question and (3) explains why disclosure of each particular document would be detrimental to agency decision-making. In addition, the largely routine internal agency documents that the government is withholding are not "predecisional" and "deliberative" in the narrow sense necessary to invoke this privilege, a fact clearly shown by many of the government's own descriptions of the documents on its privilege log (descriptions reproduced in the accompanying Table of Challenges, A1-40).

Further, even if the requirements for asserting the deliberative process privilege had been or could be satisfied here – and they cannot be – this privilege is only a qualified one, and the documents in question should still be produced because PG&E's and the Court's substantial evidentiary need for these documents is overriding. Here again, the government's own privilege log descriptions show that many of the withheld documents are likely highly probative on key disputed issues – like the rate of spent fuel acceptance and other "schedule" issues. The probative value of such documents far outweighs any possible agency harm from disclosure, particularly since disclosure would occur under the protective order governing this case, the terms of which both assure continued confidentiality and strictly limit use of the disclosed documents.

## I. BACKGROUND

The executive/deliberative process privilege is an extremely narrow privilege. As set forth by the Court of Claims in the seminal case in this jurisdiction, *Kaiser Aluminum & Chem. Corp. v. United States*, 141 Ct. Cl. 38, 157 F. Supp. 939 (1958), this privilege does not apply to documents reflecting factual data or involvement by their authors in "operative events," but is "confined" at most to formal "recommendations and advice on program policy." 157 F. Supp. at 944. Established precedent requires that the executive/deliberative process privilege may be upheld only if (1) the head of the relevant agency submits an affidavit that (2) sets forth the

"precise and certain reasons" for withholding the documents in question and (3) explains how disclosure of the documents would be detrimental or cause specific harm to future agency decision-making. *Cetron Elec. Corp. v. United States,* 207 Ct. Cl. 985, 989-90 (1975); *Walsky Constr. Co. v. United States,* 20 Cl. Ct. 317, 320 (1990); *see also Kaiser,* 157 F. Supp. at 947. Here, the government has not met *any* of these requirements for *any* of the 465 documents that are the subject of this motion.

The propriety of the government's assertion of the deliberative process privilege for responsive documents has been litigated in other spent fuel cases and proceedings but has never been fully resolved.[1] Indeed, those prior proceedings have exposed how the government has misused and continues to misuse this narrow privilege to shield a large number of highly probative documents from disclosure. The government's misuse of the privilege continues in this case, as virtually all the documents involved in the prior proceedings and discussed below (as well as scores of additional documents) are being withheld in this case on a claim of deliberative process privilege.

The government first asserted the deliberative process privilege for 37 documents in a privilege log served on those spent fuel plaintiffs that participated in the common discovery proceedings before Judge Sypolt. (PG&E did not participate there, because this case was not filed until several years after the common discovery proceedings concluded). After those spent fuel plaintiffs moved to compel, the government sought to justify its privilege assertion with an affidavit executed May 13, 2002, by Ronald Milner, the Chief Operating Officer of DOE's OCRWM spent fuel office (the "5/13/02 Milner affidavit"). As recited in that affidavit (A41-71)

authority to assert the privilege had purportedly been delegated by the Secretary of Energy to the Undersecretary of Energy for Science and Environment (skipping over the Deputy Secretary), and from that DOE Undersecretary to the Director of OCRWM, and from the OCRWM Director to Mr. Milner (skipping over OCRWM's Deputy Director). The delegation to Mr. Milner took place just before his affidavit was signed, obviously for the specific purpose of attempting to facilitate the use of Mr. Milner's affidavit in the privilege dispute before Judge Sypolt.

The 5/13/02 Milner affidavit states that DOE had produced numerous documents in discovery, and acknowledges that "[i]n that process, *DOE's attorneys* have withheld a small number of documents that involve and/or reflect [DOE]'s deliberative processes" (emphasis added). 5/13/02 Milner affidavit, ¶ 1 (A60). The 5/13/02 Milner affidavit then purports to justify the assertion of deliberative process privilege on behalf of DOE as to 37 described documents. Those descriptions make clear that the documents in question are primarily factual, were written by or to DOE personnel who have played a part in the operative events, and are not remotely confined to the type of formal recommendations and policy advice that may properly be subject to the protections afforded by the executive/deliberative process privilege. For example, in the 5/13/02 Milner affidavit:

- document "C" is described as "a draft document that includes the Department's considerations and recommendations regarding how DOE should improve its interaction with the State of Nevada." (A62)

- document "N" is "a set of presentations and cost estimates . . . that discuss the rate at which DOE considered the pick-up of spent nuclear fuel, and the cost estimates to DOE if Congress passed S. 1287. The specific policy deliberation at issue is DOE's ongoing deliberation regarding the rate at which it will accept spent nuclear fuel." (A66)

---

[1] As discussed further below, to the limited extent that other Judges in this Court have upheld a small fraction of the government's deliberative process privilege claims, those rulings are not controlling or even persuasive, because PG&E was not a party to any of the prior proceedings, and because the prior rulings on their face are incomplete or simply incorrect. *See* pp. 23 below.

- documents "O" "are different versions or duplicates of a draft memorandum regarding DOE's policy options for the interim storage of nuclear waste. The documents outline DOE's options for interim storage, and DOE's perceived advantages and disadvantages of each option. The specific decision at issue was whether DOE would accept spent nuclear fuel at an interim storage facility." (A66)

- document "U" is an email "providing draft policy guidance to DOE regarding when and where DOE will begin to accept spent nuclear fuel." (A69)

By definition, all of these documents are relevant and responsive to discovery requests from the spent fuel plaintiffs; otherwise they would not have been listed on the government's privilege log. But beyond that truism, the descriptions quoted above show that these documents likely contain highly probative evidence on *crucial* disputed issues in the spent fuel litigation – the "rate" of spent fuel acceptance, options for "interim" spent fuel storage (prior to the availability of Yucca Mountain), and "when and where" DOE will begin to accept spent nuclear fuel. Although these documents may touch on some policy issues, they do not involve the sort of formal, detailed policy analysis and recommendations that could legitimately trigger concern that their disclosure would seriously harm DOE decision-making. *See Walsky,* 20 Cl. Ct. at 320. Rather, according to the government's own descriptions, these documents primarily involve simple *facts* concerning how DOE is planning to operate its spent fuel program. Under *Kaiser* and its progeny, such factual material is not within the privilege. 157 F. Supp. at 944.

The sole basis for Mr. Milner's agreement that the DOJ attorneys properly withheld these relevant documents is set forth in the following penultimate sentence of his affidavit: "After personally reviewing each of the above described documents, I conclude that they all reflect DOE's deliberative processes and should be protected from disclosure." (A71) Incredibly, neither this sentence nor any other part of the Milner affidavit even *mentions*, much less details, specific harm that might result from disclosure of the documents described in the affidavit. *See*

*id.* at 322-33. Yet, as explained above, a showing that such harm is threatened is a fundamental prerequisite for this privilege to apply.

Judge Sypolt nevertheless upheld the government's "deliberative process" privilege claim for all the documents addressed in the 5/13/02 Milner affidavit. She ruled first – and for the first and only time in this jurisdiction – that the delegation to Mr. Milner of authority to assert the privilege was proper. *Yankee Atomic Elec. Co. v. United States,* 54 Fed. Cl. 306, 311 (2002). Further disregarding the requirements to assert this privilege, Judge Sypolt also ruled that "[t]o the extent the Government needs to offer 'precise and certain reasons' for invoking the privilege, . . . it has done so by providing descriptions of the documents and averring that continued confidentiality is necessary. . . ." *Id.* at 312.

In other words, Judge Sypolt upheld the government's deliberative process privilege claims merely on Mr. Milner's "say so" – his "averring that continued confidentiality is necessary." Judge Sypolt completely ignored the established requirement that the government affiant establish that disclosure would cause specific harm to the agency. As a result of Judge Sypolt's palpably flawed ruling, the 37 documents addressed in the Milner 5/13/02 affidavit – documents that demonstrably contain relevant and probative evidence concerning DOE's spent fuel program plans – have to date been unavailable to the spent fuel plaintiffs and to the Court in these important cases. Notably, however, Judge Sypolt's ruling that an agency head could delegate his authority to assert the deliberative process privilege has been expressly rejected in two subsequent Court of Federal Claims cases, *Marriott Int'l Resorts, L.P. v. United States,* 61 Fed. Cl. 411, 418-19 (2004) (Lettow, J.), and *Jade Trading, LLC v. United States,* 65 Fed. Cl. 487, 496 (2005) (Williams, J.), which are discussed further below.

Apparently emboldened by Judge Sypolt's ruling, the government subsequently served a privilege log in the *Yankee* spent fuel cases in January, 2003, claiming (among other things) the "deliberative process" privilege with regard to more than 250 responsive documents that had been withheld from discovery. The *Yankee* plaintiffs moved to compel on March 6, 2003. The government responded, but not until June 16 (after multiple motions for enlargement), and only at that time did the government proffer affidavits in support of its "deliberative process" privilege claims.

The affidavits accompanying the government's response to the motion to compel consisted of two new ones from Mr. Milner (A89-94, A95-102), one from Patrice Bubar (another DOE subordinate who testified for the government at the *Yankee* trial last summer) (A104-13), one from another subordinate DOE official, Gregory H. Friedman (A86-88), and one from Martin J. Virgilio, a subordinate official at the Nuclear Regulatory Commission (NRC) (A75-85). All five affidavits were executed the same week the government filed its belated response brief. Moreover, delegations and re-delegations from department or agency heads down to these subordinate officials were executed long after DOJ attorneys had selected and logged the documents as privileged. In fact, the final re-delegation to Ms. Bubar was executed the day before she signed her affidavit, in which she swore that had personally reviewed the eighty-nine documents described in the affidavit. Plainly it was again the government's Justice Department ("DOJ") attorneys who first selected the 250 documents withheld in the *Yankee* cases, and then procured affidavits from subordinate DOE and NRC employees in a post hoc effort to justify the attorneys' selections.

The *Yankee* plaintiffs' motion to compel argued that the government's claim of "deliberative process" privilege was invalid for lack of an affidavit from the department head and

also that, in any event, the documents in question did not qualify for withholding because they were merely factual and/or authored by DOE employees involved in the "operative events." *See Kaiser*, 157 F. Supp. 944. Like the document descriptions in the 5/13/02 Milner affidavit, those in the five additional affidavits the government submitted in the *Yankee* cases cover routine DOE operational documents, including numerous draft letters and memos. And also similar to the 5/13/02 Milner affidavit accepted by Judge Sypolt, these affidavits from subordinate employees describe the potential harm to DOE and the NRC only in conclusory, rote terms. They do not set forth "precise and certain" reasons for withholding the documents.

In the *Yankee* cases, Judge Merow noted the parties' dispute over "the extent to which the decision to claim such privilege may be delegated," *Yankee Atomic,* Order of Aug. 25, 2003 at 1, but he also explained that "there is no dispute that the deliberative process privilege, even if correctly invoked, is not absolute." *Id.*, citing *Weiss v. United States*, 180 Ct. Cl. 863, 870 (1967) (A114-17). Judge Merow then declined to rule on the delegation issue, explaining:

> In the circumstance of this case and given the consolidated discovery ruling, it is concluded that no valid purpose would be served in again resolving the procedural aspect of claiming privilege. The essential issue with respect to moving this matter to trial is whether plaintiff has shown necessity for the material withheld which would require its disclosure despite the invocation of deliberative process privilege.

*Yankee Atomic,* Order of Aug. 25, 2003, at 2 (A115).

Judge Merow held that the *Yankee* plaintiffs had made the necessary showing to overcome the qualified executive/deliberative process privilege. In particular, he found that, because the government has contended in the spent fuel cases that DOE would have left Greater Than Class C ("GTCC") waste at the site of shutdown nuclear reactors indefinitely, even after all of the spent fuel was removed by DOE, the *Yankee* plaintiffs had a compelling interest in obtaining documents relating to the government's plans with respect to disposal of GTCC waste.

(A115-16) He therefore ordered the government to produce 50 documents relating to GTCC waste. Most of those documents were used by the *Yankee* plaintiffs as probative evidence (*e.g.*, of DOE's plans for GTCC waste) at their damages trial last summer.

But Judge Merow addressed the necessity issue only with respect to the withheld documents described in the Bubar affidavit, concerning GTCC waste issues, and not the documents described in the four other affidavits from subordinates that the government proffered in *Yankee* to justify its privilege claims. Those other affidavits, however, also cover documents containing primarily routine factual material concerning DOE's spent fuel program and GTCC plans, as well as other facts and "operative events" not remotely within the scope of this narrow privilege. For example, one of the new Milner affidavits ("Milner I affidavit") (A89-94) addresses certain documents relating to the spent fuel program's 2003 budget request. The other new Milner affidavit ("Milner II affidavit") (A95-102) addresses documents relating to the government's acceptance rate for the spent fuel waste acceptance program. As shown by the government's own descriptions, many of the documents described in these two affidavits address DOE's "acceptance rates and system costs" (*e.g*. doc nos. 343, 344, 345, 347, 350 on A29-30) or the "OCRWM transportation and waste acceptance system" (*e.g.*, doc. no. 295 A26) or other matters "regarding waste acceptance and transportation" (*e.g.*, doc. no. 325 at A28). While as noted above such documents perhaps touch on policy matters, the government's descriptions make clear that few if any of these documents contain formal recommendations or advice on program policy. Indeed, the only "policy" mentioned in the government's descriptions is DOE budget policy, but if that were enough to invoke the deliberative process privilege it would be the ultimate bootstrap, because presumably whenever DOE seeks to implement its program plans it seeks budget authority to do so. The bottom line is that DOE's program plans are "operative

events" that are not within this privilege, *Kaiser,* 157 F. Supp. At 944, even if such plans are reflected into DOE's budget requests.

Documents described in the Virgilio affidavit (A75-85) that the government submitted long after DOJ attorneys identified those documents for withholding are even more clearly outside the narrow scope of the deliberative process privilege. Of the 43 documents described in that affidavit, at least 27 concern purported "deliberations" inside NRC "regarding how to respond to [a] letter" from a university professor inquiring about GTCC waste. Four of those documents (nos. 403-406, on A34) appear to contain legal advice that may be separately privileged, but the remaining 23 documents, containing staff level discussion of how to respond to a letter, cannot possibly be within the executive/deliberative process privilege. Nor does the Virgilio affidavit even attempt to describe what specific harm disclosure of these documents would cause NRC. Most of the remaining documents described in the Virgilio affidavit discuss a proposed NRC rule for interim storage of GTCC waste – staff discussions that also are neither within this narrow privilege nor potentially harmful if disclosed, particularly under the protective order in place in this case. Similarly, the Friedman affidavit submitted in the *Yankee* cases (A86-88) covers three withheld documents generated by the DOE Office of Inspector General (OIG) concerning an OIG audit report on the Yucca Mountain surface facilities. Those documents do not involve a "policy" or a "decision" or "deliberations" and cannot be within the narrow executive/deliberative process privilege.

Clearly documents described in these four other affidavits submitted to Judge Merow are no more deserving of deliberative process protection than the documents from the Bubar affidavit that he ordered released. And even if they were, they still should be released – just as Judge Merow ordered the Bubar documents released – because this is a qualified privilege, and

PG&E's and the Court's need for these probative documents outweighs any possible harm from disclosure.

Subsequent to Judge Merow's Order, the government has produced additional privilege logs that identify *hundreds* of additional responsive documents that it has now elected to withhold on deliberative process privilege grounds. As it has done previously, the government has not proffered any affidavits in support of its deliberative process privilege claims for these documents. Indeed, the government has expressly taken the position that no affidavit is required until *after* a motion to compel is made, making perfectly obvious once again that the government's DOJ attorneys – and not even a subordinate agency official – have invoked this privilege over these documents. And once again, the government's own descriptions of these additionally-withheld documents show both that they are likely highly probative and that they are not within the narrow deliberative process privilege. For example:

-- doc. no. 108 at A8 (on the accompanying Table of Challenges) addresses "the market driven acquisition approach for OCRWM"'s fulfillment of the NWPA's provisions related to the acceptance, transportation & storage of SNF."

-- doc. no. 115 at A9 addresses "options regarding the design and operation of a repository at Yucca Mountain."

-- doc. no. 121 at A10 addresses "the pro's and con's of storage options for receipt of SNF at Yucca Mountain."

-- doc. no. 128 at A10 addresses "accelerated receipt studies."

-- doc. no. 132 at A11 contains "analysis of acceptance and shipment scenarios for repository."

-- doc. nos.133, 134 and 135 at A11 address "impacts of accelerated waste acceptance."

-- doc. no. 138 at A11 addresses "the effect of options regarding the rate of SNF acceptance."

-- doc. no. 145 at A12 contains "information and analysis regarding acceptance rates and system costs."

-- doc. no. 199 at A16 contains "spreadsheets analyzing the costs of various options relating to Yucca Mountain."

-- doc. no. 214 at A18 contains "tables showing the effect and cost of various options potentially available to DOE for SNF acceptance at a repository."

-- doc. no. 223 at A19 contains a "[s]eries of spreadsheets analyzing the costs of various options relating to acceptance at a repository."

-- doc no. 234 at A20 addresses "options regarding the design and operation of a repository at Yucca Mountain and the effect of those options upon SNF inventories."

-- doc. no. 240 at A21 contains "spreadsheets analyzing various options that DOE might have for accepting SNF at a repository."

-- doc. nos. 244 and 145 at A21 are documents "analyzing the potential effect of an option for SNF acceptance."

-- doc no. 249 at A22 is a draft "presentation entitled 'OCRWM transportation &waste acceptance project status, issues & plans' dealing with an option for SNF acceptance."

-- doc. no. 255 at A22 is an "[i]nternal checklist discussing the pros and cons of various concepts relating to an option for SNF acceptance."

-- doc no. 270 at A24 is a "[s]eries of e-mails and internal memoranda analyzing methods for increasing efficiency and DOE's reducing costs in SNF acceptance for purposes of budget requests."

Contrary to *Kaiser*, these documents are not "confined" to formal "recommendations and advice on program policy." 157 F. Supp. at 944. Indeed, even an affidavit from the DOE Secretary could not make these routine internal agency documents subject to the narrow executive/deliberative process privilege. At the same time, the government's descriptions (quoted above) show that these documents *are* highly probative on key disputed issues.

On September 12, 2005, counsel for PG&E wrote to government counsel in an attempt to resolve this privilege dispute. *See* A118. On September 21, 2005, the government informed PG&E that it was unwilling to abandon any of its privilege claims. *See* A131**.**

PG&E now moves this Court to compel production of the withheld documents described in the 5/13/02 Milner affidavit and in the Virgilio, Friedman and two ADDITIONAL Milner affidavits that were before Judge Merow. In addition, PG&E moves to compel the government to produce the additional documents that have been withheld by the government on deliberative process privilege grounds subsequent to the proceedings before Judge Merow. All of these 465 documents are listed and described in the accompanying Table of Challenges (A1 - 40).[2]

II. ARGUMENT

A. The government has not met the strict requirements for invoking the privilege.

The executive/deliberative process privilege may be upheld only if the head of the relevant agency personally attests that disclosure would be detrimental to agency decision-making. *Cetron,* 207 Ct. Cl. at 989-90; *Walsky,* 20 Cl. Ct. at 320 n. 3. The mandatory requirement of an affidavit from the agency head has been recently affirmed in this Court by Judges Lettow and Williams. *See Marriott Int'l Resorts L.P. v. United States*, 61 Fed Cl. 411,

419 (2004) (Lettow, J.); *Jade Trading, LLC v. United States,* 65 Fed. Cl. 487, 493 (2005) (Williams, J.). Both *Marriott Int'l* and *Jade Trading* explicitly reject (and criticize) Judge Sypolt's ruling in *Yankee* accepting affidavits from subordinate government officials. [3]

As both Judges Lettow and Williams concluded, the requirement of an affidavit or sworn declaration from the head of the relevant government agency is not a mere procedural formality, but is an essential feature of this narrow privilege. The heart of the privilege is a showing of serious harm to agency decision-making if the documents in question are disclosed. *See Marriott Int'l*, 61 Fed Cl. at 419 (executive privilege may apply to documents if "their release would significantly impede the agency's operations"). Only the department or agency head can and should be entrusted with assessing whether the potential for serious harm to agency decision-making is sufficiently likely and serious to justify invoking this narrow privilege. Subordinate government employees, who are not themselves decision-makers, are not in a position to make reliable assessments of potential harm to ultimate agency decision-making, because subordinate employees lack both responsibility for agency decision-making as a whole and perspective beyond narrow litigation objectives. Moreover, as Judge Lettow noted in *Marriott Int'l*, "[r]equiring the head of the agency personally to assert executive privilege . . . serves the important function of ensuring that the privilege is invoked only when absolutely necessary." 61 Fed Cl. at 419; *see also Coastal Corp. v. Duncan,* 86 F.R.D. 514, 517 (D. Del. 1980) (having

---

[2] It should be noted that, based upon the descriptions provided by the government, several of the 465 documents are duplicates or substantially similar versions of each other. In addition, to the extent all or part of some of these documents are protected by the attorney-client or work product privileges, PG&E does not challenge that here, but requests production of the documents with only such otherwise privileged material redacted.

[3] The Federal Circuit has accepted an interlocutory appeal of *Marriott Int'l* on the question of whether only the head of an agency can assert the deliberative process privilege. 122 Fed. Appx. 490 (Fed. Cir. 2005). That appeal is fully briefed but oral argument has not yet been scheduled.

agency head personally invoke deliberative process privilege advances important policy of "deter[ing] governmental units from too freely claiming a privilege that is not to be lightly invoked").

Here, it is undisputed that the government has not submitted a single affidavit from an agency head in support of its deliberative process privilege claims. The affidavits that were submitted in the proceedings before Judge Merow and Judge Sypolt are from subordinate government officials whose purported authority to assert the deliberative process privilege is derived from multiple delegations and sub-delegations of authority from the respective agency heads. *See* A41, A72, A103. For the hundreds of additional documents that the government has withheld on deliberative process privilege grounds since Judge Merow's ruling, the government has not provided *any* affidavit from *any* agency official. Thus, under this Court's well-established precedents, the government's deliberative process privilege claims with regard to each and every challenged document withheld on these grounds are legally deficient and must be rejected out of hand.[4]

An affidavit from the agency or department head is not the only requirement for invoking the deliberative process privilege. Even when such an affidavit is obtained it must, as Judge Rader explained in *Walsky*, 20 Cl. Ct. at 320 (citation omitted), set forth "precise and certain reasons" for withholding the documents in question. In other words, the affidavit must *specify* in

---

[4] Judge Sypolt's decision in *Yankee Atomic*, which as noted above is the only instance where this Court has allowed delegation of the authority to invoke the executive/deliberative process privilege, is not binding here. *See Charter Fed. Savings Bank v. United States,* 54 Fed. Cl. 120, 122 (2002) (Sypolt, J.) ("in a disagreement over an issue of law, one trial court is not bound by the prior rulings of a coordinate court, either in the same case (or cases) or in a different case including the same legal issues. . . ."). PG&E also respectfully submits that because Judge Sypolt's decision erroneously broke with longstanding precedent, it does not warrant any deference.

detail exactly *how* release of the documents will "significantly impede the agency's operations." *Marriott Int'l,* 61 Fed. Cl. at 419

Here, in addition to not being submitted by the appropriate agency heads, the affidavits that have been previously submitted by the government are further deficient in that none of them set forth the "precise and certain reasons" for maintaining the confidentiality of the withheld documents. Instead, the government has simply asked the Court to accept the "say so" of the government's declarants. For example, Mr. Milner states "*I have determined* that disclosure of any of the deliberative process contents of the [following] documents . . . would be injurious to the Federal Government's decision-making functions." A90 (emphasis added). This conclusory, boilerplate formulation, which is repeated essentially verbatim in the other affidavits, *see, e.g.,* A76, A96, A104, does nothing to explain *how or why* disclosure of these documents would harm or inhibit agency decision-making and deliberations and provides no basis for making an independent determination into whether each individual withheld document qualifies for protection. *See Vaughn v. Rosen,* 523 F.2d 1136, 1146 (D.C. Cir. 1975) ("The affidavits relied on by the Government not only fail because they are conclusory; the affidavits fail to carry the Government's burden of proof here because at no place do they define, explain or limit the 'deliberative process' which the Government seeks to protect."); *Walsky,* 20 Cl. Ct. at 323 ("In his affidavit, Secretary Rice asserts the privilege 'to preserve the evaluation process. . . .' . . . This sweeping characterization does not define or identify the deliberative process subject to the privilege."). Moreover, the affidavits inherently lack credibility: each of them were executed by a subordinate official long after the decision to withhold the documents was made by

government litigation counsel, and only in response to a motion to compel challenging the propriety of the privilege assertions.

The government cannot justify shielding hundreds of highly relevant documents from PG&E on such a flimsy basis. The government's complete failure to provide "precise and certain reasons" why the confidentiality of the documents must be maintained requires rejection of the government's conclusory assertions. If the government were able to withhold internal agency documents such as those involved here merely on its own say so, "an enormous share of administrative action would disappear from public view," *Walsky,* 20 Cl. Ct. at 322-23, and such spurious claims of "privilege" "would swallow up a substantial part of the administrative process, and virtually foreclose all public knowledge regarding the implementation of . . . policies in any given agency." *Id.* (quoting *Vaughn,* 523 F.2d at 1145).

B. The government cannot satisfy the legal requirements to protect documents under the deliberative process privilege

The government's deliberative process privilege claims are further deficient in that they do not satisfy two fundamental substantive requirements underlying the privilege. For a document to fall within the protections of the executive/deliberative process privilege, it must be both "pre-decisional" and "deliberative." *Jade Trading,* 65 Fed. Cl. at 493 (citing *Vons Cos. v. United States,* 51 Fed. Cl. 1, 22 (2001)). To qualify as pre-decisional, the information must address matters "antecedent to the adoption of agency policy." *Id.* (quoting *Walsky,* 20 Cl. Ct. at 320) (internal citation and quotation omitted). To be deliberative, a document "must address a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Walsky,* 20 Cl. Ct. at 320 (internal citation and quotation omitted).

The documents that Judge Merow ordered released, which were described in the Bubar affidavit, demonstrate vividly how the government is misusing the deliberative process privilege

to withhold documents, particularly draft letters and memos, whose only distinguishing characteristic (from similar draft letters and documents that the government did not attempt to withhold) is that their content is contrary to the government's current litigation position. None of those documents came close to satisfying the "pre-decisional" or "deliberative" requirements for this privilege. A brief discussion of the context in which those documents were withheld will make the government's misuse of this privilege clear.

One major disputed issue in the spent fuel cases, including the present case, concerns DOE's plans for disposition of GTCC waste. PG&E and other spent fuel plaintiffs rely on substantial documentary evidence showing that DOE has long planned to take their GTCC waste at the same time as it removed their spent fuel. The government argues, however, that DOE's plans for disposition of GTCC waste have recently become unclear or unformed. It was in support of that argument that the government blatantly misused the deliberative process privilege to withhold routine DOE documents that (1) contradicted the government's *litigation* position (not its long-standing policy position), (2) reflected the influence that the spent fuel litigation and DOJ attorneys were exerting on DOE decision-making concerning GTCC waste, or (3) otherwise constituted probative evidence outside any legitimate use of this privilege.

In the first category – documents contradicting the government's litigation position – the government withheld, with the concurrence of Ms. Bubar's affidavit, numerous internal DOE documents pertaining to a response to a letter to DOE from Maine Governor Angus King requesting information on DOE's plans for the disposition of GTCC waste. (These internal DOE documents are distinct from the internal NRC documents, discussed above, though both sets of documents concern agency responses to incoming letter.) Among the withheld DOE documents were numerous draft responses for Secretary of Energy Abraham's signature, stating "It is my

intention that nuclear utilities would not have to store GTCC waste beyond the time that they will have to store spent nuclear fuel." *See* A120, A122 (same statement in another draft of letter).

The government's attorneys sought to suppress that evidence of DOE's current plans, and Ms. Bubar readily supported that attempt. Indeed, the government's attorneys sought to suppress (and Ms. Bubar again concurred) all documents mentioning or pertaining to DOE's response to Governor King, such as "correspondence tracking sheets" and assorted internal memos. *See, e.g.,* A124 (internal DOE memo, "Subject: Activities for the week of Oct 29-Nov 2 . . . Major Activities: . . . GTCC PROGRAM – Discussion with NRC on King response. . . ."); A128 (internal DOE memo concerning DOE response letter: "NRC staff has reviewed response and has no policy comments, but does believe there are areas for improvement, [including] . . . Answer is vague.").

Plainly, the proposed DOE response letter to Governor King, and the other related internal DOE documents described in the Bubar affidavit, do not involve advice or recommendations concerning any policy change or any deliberation of what DOE policy should be; instead, the draft response simply purported to articulate DOE policy. Under Judge Merow's ruling that these probative documents be released, because of the qualified nature of the deliberative process privilege, the *Yankee* plaintiffs were able to use this evidence at their damages trial last summer – and PG&E will also be able to present these documents at its damages trial next year. But absent Judge Merow's ruling, Ms. Bubar's assertions may have succeeded in erasing this probative evidence from the record.

In the second category noted above – documents reflecting the influence that the spent fuel litigation and DOJ attorneys were exerting on DOE decision-making concerning GTCC

waste – the government's attorneys withheld, again with the ready concurrence of Ms. Bubar's affidavit, various internal DOE documents stating explicitly that litigation concerns, alone, were causing DOE to make statements and take positions it otherwise would not make or take. For example, an undated DOE memo apparently from late 2000 or early 2001 states: "The current position taken by DOE is that GTCC is not covered under the NWPA [Nuclear Waste Policy Act of 1982], and although it is covered under [a separate 1985 statute], since we do not have a disposal facility we cannot work with the utilities and observe GTCC packaging. EM [the Office of Environmental Management, a DOE component] *took this position because GC [DOE General Counsel] urged us to due to current litigation between DOE and Maine Yankee.*" A129 (emphasis added). Certainly, this evidence of the influence this litigation has had on DOE conduct is relevant to an evaluation of the government's current position that DOE has "no plans" for GTCC waste, which position is consistent with the government's litigation position but is flatly contrary to historical documentary evidence showing that DOE has long planned to take GTCC waste to the Yucca Mountain repository along with utility spent fuel.

The third group of documents withheld pursuant to the Bubar affidavit, and ordered released by Judge Merow as probative evidence, defy ready characterization – they are a hodge-podge of internal DOE documents best defined by the obvious fact that they also fall outside the parameters of *Kaiser* and its progeny, because they are merely factual or because they otherwise have nothing to do with sensitive policy advice and recommendations. For example, a DOE email referring to NRC's request for DOE input on proposed revisions to certain NRC regulations on spent fuel storage, states, "As far as the proposed Part 72 modification goes, I don't see where DOE has a dog in this race." A130. In other words, Ms. Bubar's affidavit claimed executive/deliberative process privilege over a document that specifically stated DOE

had *no interest* in the subject matter. Obviously this is not "recommendations and advice on program policy," *Kaiser,* 157 F. Supp. at 939, within the scope of this privilege, the disclosure of which could seriously harm DOE decision-making.

Based upon the Bubar affidavit documents that Judge Merow ordered released, PG&E has every reason to believe similar misuse of the privilege by the government and its affiants to withhold relevant documents that are neither "pre-decisional" nor "deliberative." Indeed, as noted above, the Virgilio affidavit (A75-85) mainly covers draft documents relating to NRC's response to a letter from a university professor concerning GTCC waste, and draft documents relating to a proposed rule for interim storage of GTCC waste. The government cannot demonstrate how these documents are any different in substance from the released Bubar affidavit documents.

C. In any event, the balance of interests overwhelmingly favors disclosure of the allegedly privileged documents.

Even where (unlike here) the government can substantiate its deliberative process assertions, the deliberative process privilege is qualified and – as Judge Merow recognized – must yield if the interest in full disclosure outweighs the harm that would occur if the information is disclosed. *Walsky,* 20 Cl. Ct. at 320; *State of Alaska v. United States,* 16 Cl. Ct. 5, 11 (1988) (the privilege "may also be defeated by a showing of evidentiary need by plaintiffs that outweighs the harm that disclosure of such information may cause the defendant"); *Weiss,* 180 Ct. Cl. at 870; *Texaco Puerto Rico, Inc. v. Dept. of Consumer Affairs,* 60 F.3d 867, 885 (1st Cir. 1995) ("a court *must* weigh competing interests") (emphasis added). This balancing test is flexible, *ad hoc*, and made on a case-by-case basis, and the Court can and should consider numerous factors. *See In re Sealed Case,* 121 F.3d 729, 737-38 (D.C. Cir. 1997) (listing

"relevance of the evidence," "seriousness of the litigation" and "role of the government" in the litigation as amongst the principal factors that should be considered).

Judge Merow's Order recognized that the spent fuel plaintiffs' interest in discovery of the withheld information is substantial. By definition, all of the withheld documents are relevant to this dispute. Moreover, this is a case of national importance, the government is a party to the litigation and its actions are at issue. It is impossible to imagine a case where "the seriousness of the litigation" and "the role of the government" factors, *In re Sealed Case, supra,* 121 F.3d at 737-38, could more strongly demand disclosure of the evidence. Similarly, the Court and the public have a compelling interest in having available the best possible evidence in reaching its decisions. *See Texaco Puerto Rico,* 60 F.3d at 885 (the court should consider "society's interest in the accuracy and integrity of fact finding").

Additionally, many of the withheld documents concern the government's current planning or intentions for spent fuel or GTCC waste, including the DOE's planned acceptance rate for the spent fuel acceptance program. As Judge Merow found, so long as the government continues to maintain its defense and arguments against damages claims based on GTCC waste, "there exists a compelling necessity for production of *all* documentation which can contribute to an evidentiary finding as to whether GTCC material will be left on a reactor site after spent nuclear fuel and/or high level waste is removed." A115-16 (emphasis added). Likewise, because the government continues to maintain its defenses and arguments based on a slow and inefficient spent fuel acceptance rate, there exists a compelling need for discovery of all withheld documentation relating to this issue.

In contrast, the government cannot offer any persuasive argument favoring non-disclosure of the contested documents. The withheld documents Judge Merow ordered to be

produced based upon a finding of compelling need were freely used by the *Yankee* plaintiffs at their damages trial with no discernible harm to agency decision-making. Moreover, the submitted declarations in the prior proceedings contain only blanket conclusory assertions that disclosure will harm future agency decision-making, as opposed to its present litigation position. Finally, neither the government nor its declarants explain why the Court's Protective Order in this case is inadequate to prevent any putative harm from disclosure or from any purported public "confusion" over DOE's policies. Under these circumstances, there is no potential harm from disclosure of these 465 documents, and therefore no reason whatsoever to uphold the government's claim of deliberative process privilege over them.

D. Prior rulings by Judges Sypolt and Merow addressing the deliberative process privilege in spent fuel cases are not controlling here.

Judge Sypolt's ruling on the deliberative process privilege in the common discovery proceedings is not controlling here, *see* note 1 above, and in any event only addressed the 37 documents the government was then withholding on deliberative process grounds. The required "precise and certain reasons" for withholding are necessarily document-specific, and Judge Sypolt never considered the overwhelming majority of the privilege claims the government is now asserting here. Judge Sypolt's ruling also merits no deference, given its stark departure from the requirement that the agency head must provide a supporting affidavit for this privilege, and its failure to adhere to the additional requirement that the government show that disclosure of the documents in question would cause specific, serious harm to the agency. Moreover, Judge Sypolt never reached the balancing of interests that the qualified nature of this privilege requires. The common discovery proceeding she was overseeing was not focused on the kind of factual issues and disputes that must be considered in determining whether the privilege, even if it exists, should be overcome by the evidentiary need for the documents.

Judge Merow's rulings on the deliberative process privilege are persuasive as far as they go, but they did not go very far. Judge Merow never ruled on the fundamental requirements for this privilege to apply – the need for an affidavit from the head of the relevant agency, the need for that affidavit to specify "precise and certain " reasons for withholding, and the need for the affidavit to outline specific harm to the agency that would result from disclosure of the documents in question. Judge Merow's recognition that the executive/deliberative process privilege is a qualified privilege, and his conclusion that the *Yankee* plaintiffs had shown an overriding need for the documents described in the Bubar affidavit, are entirely correct and should be followed here even if the basic requirements for the privilege to apply were not present.

But the best and most persuasive way to resolve this motion is to conclude that the executive/deliberative process does not apply in the first instance, because the government has not presented an affidavit from the head of the relevant agency, because the government has not shown "precise and certain" reasons for withholding, and because the government has not established that disclosure of any of the 465 documents it is now withholding would cause specific, serious harm to agency decision-making. Those issues were not addressed or resolved by Judge Sypolt or Judge Merow, and certainly not with respect to all 465 documents the government is now withholding on the basis of deliberative process privilege. This Court can and should address those issues once and for all, and should reject decisively the government's overbroad, overreaching and wholly inappropriate use of this very narrow – and qualified – privilege.

## III. CONCLUSION

This Court has before it a very fulsome record, showing (1) the sweeping breadth of the government's assertion of the deliberative process privilege, (2) the lack of basis for those assertions, which is apparent from the government's own privilege log descriptions of the withheld documents, and (3) the government's previous misuse of the privilege as shown by the documents Judge Merow ordered released. PG&E therefore respectfully requests that the Court address the government's sweeping and baseless privilege claims fully – and reject them in accordance with established law.

Specifically, PG&E respectfully requests that the Court:

1) reject the government's claims of executive/deliberative process privilege; and

2) order the government to produce all of the documents identified on PG&E's Table of Challenges.

Respectfully submitted,

Dated: October 11, 2005

s/ Jerry Stouck________
Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173
(202) 261-4751
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:

Robert L. Shapiro
Greenberg Traurig, LLP