# EXHIBIT C

U.S. Department of Justice

Civil Division

PDK:DMC:HDL:SASnyder
154-04-074

Telephone: (202) 616-0347
Fax: (202) 307-2503

*Washington, D.C. 20530*

September 27, 2005

**VIA FACSIMILE AND UNITED STATES MAIL**

Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

Re: Pacific Gas & Electric v. United States, Nos. 04-074C, 04-075C (Fed. Cl.)

Dear Mr. Stouck:

We are writing to confer with you regarding plaintiff's 231 page, 901 document privilege log.[1] We believe, for the reasons stated below, that you have included many documents on the log in error, specifically that you have taken an overly expansive view of the attorney-client privilege and work product doctrine. To assist in resolving this matter, we have articulated below the categories of documents to which we believe we are entitled. We would like the opportunity to discuss the production of those documents with you before we address the matter with the Court.

The first broad category of documents that we believe have been wrongly withheld are all documents related to public proceedings, including, but not limited to, PG&E's rate proceedings, proceedings before the California Coastal Commission, and licensing proceedings before the Nuclear Regulatory Commission. What is your basis for withholding these documents? The work product doctrine does not protect "materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation." See United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982) (quoting Advisory Committee's Explanatory Statement Concerning Amendments of the Discovery Rules, 48 F.R.D. 487, 501 (1969, 1970). To justify protection under the work product doctrine, the Federal Circuit requires a showing that litigation was the "primary motivating factor" for the preparation of the document. Cabot v. United States, 35 Fed. Cl. 442, 445 (1996); Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 485 (2000). This is clearly not the case with the documents you have identified in this category. The

[1] To the extent that PG&E has clawed back many documents from its production on the basis of attorney-client or work product, and failed to provide a privilege log for those documents, we request that you immediately provide that information so that we may include it for inspection by the Court, in the event that we do not reach an agreement.

COPY

documents in this category that have been wrongly withheld number in the hundreds and are, thus, too numerous to list here. However, they include the following representative entries on your privilege log: 4, 9, 10, 11, 12, 13, 14, 76, 77, 78,79, 80, 81, 83, 86, 88, 89, 92, 93, 94, 95, 96, 97,98, 99, 100, 101, 102, 103-109, 110, 111, 112 113, 114, 134-156, 158-192, 193, 181, 182, 183, 184, 185, 186, 187, 195-239 (NRC), 240-41 (Coastal), 243-246, 254-56, 258, 260-286, 289, 291-297, 588 - 591, 593, 607, 608, 609, 610, 612, 620, 685, 686, 688, 692, 696, 701, 706-710, 712-714, 761-774, etc. This list includes items prepared by TLG Engineering for the PG&E rate proceedings. See e.g., 9-11, 13, 150, 151. Those documents are clearly not protected, even within the context of litigation. See Energy Capital Corp., 45 Fed. Cl. at 494. To the extent that these documents may contain some attorney-client protected "marginalia", and not communications from PG&E's attorneys that are business or regulatory work, which would not be protected, that information can be redacted from the document. Otherwise, these documents addressing regulatory proceedings, in which PG&E participates in the ordinary course of its highly regulated business, should be produced.

The next broad category of documents includes memoranda apparently prepared for PG&E's Board of Directors or other management level committee. See, e.g., 92-101, 193, 290, 677 (PG&E Management Committee), 678, 679 (PG&E Utility Policy Committee), 681, 682, etc. Many of the entries on plaintiff's privilege log do not include any author making it impossible for us to make an assessment of plaintiff's claims for attorney-client privilege. In any event, as you know, Mr. Christopher Warner testified that he wears two hats in his position as counsel for PG&E. In addition to providing legal advice, he also provides business advice. See, e.g., Warner Dep. Vol.11 at 217:15-218:1; 238:3-4. It appears that many of the Board of Directors documents you have withheld on attorney-client grounds, are documents in which Mr. Warner, or other PG&E in-house attorneys, provided business advice relating to regulatory proceedings. See also 114 (document sent to NRC), 177 (document sent to the CPUC). Thus, those documents should be produced, or at the very least, if legal advice is included produced with appropriate redactions.

A third category of documents includes memoranda, correspondence, and reports drafted by non-lawyer PG&E employees sent to non-lawyer PG&E employees which happen to cc PG&E lawyers, among others. See,e.g.,50, 51, 57. We see no reason to withhold such documents based on any attorney-client privilege or work product doctrine. Mr. Warner testified that engineering groups at PG&E would cc lawyers on documents that contained technical, business, and economic feasibility information to keep them informed about a project as it moved forward. See Warner Dep., vol. 11 at 228:15-229:2. It appears that many of the documents you have withheld based on attorney-client privilege, fall into this category and have been improperly withheld.

Another category of documents, like the previous category, includes memoranda, correspondence, and reports drafted by non-lawyer PG&E employees sent to non-lawyer PG&E employees which in the description indicates that the document was "provided at request of counsel." This includes documents 62, 63, 67, 68, 69, 74, etc. As you know, the attorney-client privilege shields documents from discovery that indicate the client has requested legal advice. The description of these documents seems to clearly indicate not that the client has requested advice but that the attorney has asked to see the documents. Under the circumstances, these documents are not protected by the attorney-client privilege. As Mr. Warner explained during

his deposition, he was kept apprised of technical and business developments with many projects at PG&E. Just because a PG&E attorney asked for a document, certainly does not protect its disclosure. It appears this is another category of documents that you are misusing the privilege.

Another category of documents which appear not to warrant protection were drafted by Mr. Jay Silberg, an attorney with Pillsbury Winthrop Shaw Pittman LLP. See, e.g., 25, 26, 27, 32, 33, 46, 47, 129, 130, 133, etc. The recipient of many of these letters is the Nuclear Utility Group. See also 600 (Participants in Uranium Enrichment D&D Fund Matter). Without an explanation as to who this group is and what its purpose is, we cannot assess the viability of your privilege assertion.

Another broad category of documents, some of which fall within the categories already listed, are documents that purport to be attorney-client protected but contain no author or recipient, for example, numbers 37, 41, 64, 76, 77, 78, 79, 80, 81, 87, 88, 89, 115, 120, 576-80, 669, 670, 671, 672, 696, 701. Please explain the basis for your belief that these documents are protected by the attorney-client privilege. Without such an explanation it appears to us that those documents are missing a fundamental element of the attorney-client privilege test.

Finally, it appears that PG&E has also withheld documents that PG&E sent to third parties. See, e.g., 356, 385, 390, etc. (Virginia Strom-Martin, Redwood Alliance), 564,-566. It appears inconsistent to claim protection over documents PG&E has previously released. In addition, these documents fall into the first category we identified above because they are related to regulatory proceedings and should be produced on that basis, as well.

Please let us know whether you intend to produce the documents described above by Friday, September 30, 2005.

If you have any questions, please do not hesitate to call.

Sincerely,

Sharon Snyder

SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch

**TO:** **Jerry Stouck**

**FROM:** **Sharon Snyder**

**3 Page Letter**
**Pacific Gas & Electric v. U.S.**

**4 pages including the cover sheet**

***************** -COMM. JOURNAL- ******************** DATE SEP-27-2005 ***** TIME 13:43 *********

MODE = MEMORY TRANSMISSION START=SEP-27 13:39 END=SEP-27 13:43

FILE NO.=616

| STN NO. | COMM. | ABBR NO. | STATION NAME/TEL NO. | PAGES | DURATION |
| --- | --- | --- | --- | --- | --- |
| 001 | OK | ☎ | 92023313101 | 004/004 | 00:03:15 |

-US DEPT OF JUSTICE-CLB -

************************************* - - ***** - 202 514 8640- *********

**TO:** Jerry Stouck

**FROM:** Sharon Snyder

**3 Page Letter**
**Pacific Gas & Electric v. U.S.**

**4 pages including the cover sheet**

# EXHIBIT D

Greenberg
Traurig

Robert L. Shapiro
Tel. 202.331.3174
Fax 202.331.3101
shapiroi@gtlaw.com

October 7, 2005

**VIA FACSIMILE**

Sharon A. Snyder
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street N.W.
Washington, D.C. 20530

Re: Pacific Gas & Electric v. United States

Dear Sharon:

We are writing in response to your September 27, 2005 letter in which you challenge some of PG&E's claims of privilege.

First, you claim that documents relating to regulatory and licensing actions before the California Public Utilities Commission ("CPUC"), California Coastal Commission ("CCC") and the Nuclear Regulatory Commission ("NRC") are not protected by the work product doctrine. We disagree with your position that "communications from PG&E's attorneys that are business or regulatory work" are not protected by the work product doctrine. Your reliance *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982) is misplaced. Although *El Paso* that "[t]he work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation." *Id.* at 542, it also "concede[s] that determining whether a document is prepared in anticipation of litigation is a slippery task." *Id.* at 542 (citing as authority *In Re Grand Jury Investigation*, 599 F.2d 1224, 1229 (3d Cir. 1979)).

It appears that our difference here arises from the government's narrow definition of "litigation," clearly excluding from it, NRC, CPUC and CCC proceedings. We cannot conceive of any reasonable rationale for treating differently, attorney-client communications and work-product solely on the basis of one being prepared in anticipation of regulatory actions while the other may have been prepared in anticipation of a civil action. The character of these actions are similar, both in preparation and execution. Regulatory proceedings include commissioners and administrative law judges appointed under federal and state constitutional authority. The CPUC is subject to California's Code of Civil

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
CHICAGO
DALLAS
DENVER
FORT LAUDERDALE
LOS ANGELES
MIAMI
NEW JERSEY
NEW YORK
ORANGE COUNTY, CA
ORLANDO
PHILADELPHIA
PHOENIX
SILICON VALLEY
TALLAHASSEE
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
WILMINGTON
ZURICH

COPY

---

Procedure and the California Public Utilities Code. The Code confers jurisdiction upon the California state court of appeals and its Supreme Court to "review, reverse...an order or decision of the commission." Cal. Pub. Util. Code §1759 (2005). Third parties are entitled to and often choose to intervene, creating contentious, adversarial proceedings. Interveners may submit interrogatories and data requests, requiring PG&E to prepare extensive and detailed responses. The privilege log entry numbered 243 is one example of a draft response to these data requests. If we had included on the privilege log a draft copy of our interrogatory responses in this case, it would be indisputable that it was properly withheld as work-product. Furthermore, privileges such as the protection of attorney-client communication are required to be applied in CPUC proceedings. *In re Southern California Gas Co.*, 27 CPUC2d 253. PG&E documents prepared in anticipation of regulatory actions should be treated no differently and accorded the same treatment.

PG&E creates hundreds of documents and communications in its preparation for the frequent rate cases and licensing applications inherent in operating a regulated coastal utility. However, simply because these documents are prepared in the "normal course of business" does not make them either routine or a public requirement, especially when they are prepared in anticipation of litigation. For example, prior to the court's decision in *El Paso*, it held that an attorney-prepared annual tax return was not entitled to protection under the work-product doctrine because its primary purpose was other than to assist in future litigation. Similarly, in *El Paso*, it declined to apply the privilege to the "tax pool analysis" as it was prepared in support of other company financial documents, for purposes of financial reporting and to assist in the company's annual, routine audit. *El Paso*, 682 F.2d at 540. There is nothing routine or standard about any of the documents or communications prepared for PG&E's regulatory actions. While regulation may require particular licensing proceedings or rate cases in order to operate the business, those applications and regulatory actions arise not out of a mandated public requirement, but rather are initiated by PG&E.

The documents that you allege deserve no protection, must be withheld in order to "shelter the mental processes...providing a privileged area within which [an attorney] can analyze and prepare his client's case." *Id.* at 542, *quoting United States v. Noble*, 422 U.S. 225, 238 (1975). Recognizing the importance of the work-product privilege, the Second Circuit in *United States v. Monroe*, 143 F. 3d 1194, (2d Cir. 1998) rejected a strict ("primarily or exclusively to assist in litigation") construction of the doctrine. Instead, it adopted a formulation that includes "documents containing analysis of expected litigation, if their primary, ultimate, or exclusive purpose is to assist in making the business decision." *Id.* at 1198. The presentations to the board, among many other documents are included in this formulation. You reference Mr. Warner's deposition in your letter, writing that he "wears two hats in his position as counsel for PG&E,...also provid[ing] business advice." The documents and communications we have withheld may in part, reflect some business advice. However, the character of this advice is such that it is directly influenced and crafted by or at the direction of counsel,

specifically to assist in making the business decision of if, when and how to proceed in regulatory actions. Many of the documents, including the numerous drafts included on our privilege log were created in anticipation and in support of adversarial regulatory actions. If not for these regulatory actions, the documents likely would not have been prepared. As materials prepared in anticipation of litigation, they are protected from disclosure. *See Id.* at 1995.

Second, you challenge the withholding of documents prepared explicitly for the presentation of various recommendations and options to PG&E's Board of Directors prior to and in anticipation of litigation. As you note in your letter, the issue of attorneys providing legal versus business advice was covered in the government's deposition of Mr. Warner. Mr. Ekman asked specifically about entries 92 and 93 on PG&E's privilege. These two documents, among others, note that they contain "legal analysis and recommendations submitted to the Board of Directors of PG&E for approval." It is noted also that they were prepared in preparation of regulatory proceedings. As Mr. Warner explained in his deposition testimony, these presentations are "similar to preparing a draft rate case filing, the recommendation[s] would be pursuant to the supervision or directly [prepared] by the attorneys involved in preparing that filing." Warner Dep. 275:25-276:3. Characterization of this advise as primarily business or legal is not the sole determination of whether the document should be accorded protection. We agree that not all attorney communications are entitled to protection, but certain communications must be protected, even though they may also include business advice. This is principally important when those communications relate to business decisions leading to or supporting litigation and regulatory proceedings. In an effort to provide as much information as is reasonable, we will review the descriptions for those documents in which you take issue to ensure they adequately describe the basis for the privilege.

Third, you claim that documents that are described as "drafted by non-lawyer PG&E employees and sent to non-lawyer PG&E employees are likely not privileged." We have performed a cursory review of the documents listed and recognize that some of the descriptions could be improved and that some documents should be disclosed. It is our intent to provide a revised log by October 19, and we will produce any released documents shortly thereafter.

Fourth, you challenge the withholding of documents where the recipient is listed as the "Nuclear Utility Group." This group is more accurately described as the Nuclear Utility Joint Privilege Group and includes a number of similarly situated utilities, like PG&E, with a common interest in obtaining and sharing legal advice and strategy regarding the on-going and anticipated spent fuel litigation. Legal and litigation-oriented communications to the group, originating from counsel, including Mr. Silberg, are protected as attorney-client communications and work-product and will not be produced.

Finally, in a footnote on the first page of your letter, you mention documents clawed-back subsequent to our initial production of documents. The documents that were clawed back

on July 15 and August 8, 15, and 18 were initially produced in response to the government's first request for production of documents.[1] We have produced supplemental documents in response to this request as recently as September 9, 2005. The log from which your current questions arise is limited to productions through April 22, 2005. A privilege log including those documents withheld or clawed back subsequent to that date is currently being refined and will be provided to the government by October 14, 2005.

Please contact me with any questions about there issues.

Sincerely,

Robert L. Shapiro

[1] As of this writing, we have not received as requested, notification that the clawed-back documents have been deleted from the governments database, nor have the documents been returned to us as required under the April 21, 2005 protective order entered in this case.

# Greenberg Traurig

Transmittal Cover Sheet

| From: | Tel: | E-Mail: |
|---|---|---|
| Robert Shapiro | 202.331.3174 | ShapiroR@gtlaw.com |

| To: | Fax No: | Company: | Phone No.: |
|---|---|---|---|
| Sharon A. Snyder | 202-307-2503 | Department of Justice | |

**File No.:** 89676.010100

**Re:** PG&E

**Date:** October 7, 2005 4:05 PM

**No. Pages:** Including Cover Sheet 5

If you do not receive all pages properly, please call (202) 331-3142.

**Notes:** Please see attached.

Also sent via: ☐ US Mail ☐ Overnight ☐ Messenger ☐ Email ☒ No Other