privilege within the cognizance of her Office.

III. Because the delay in spent nuclear fuel acceptance controversy is within the cognizance of OCRWM, I, Ronald A. Milner, delegate of Director Dr. Margaret S.Y. Chu, hereby assert the deliberative process privilege upon behalf of the Department of Energy for the documents listed below. I have determined that disclosure of any of the deliberative process contents of the documents disclosed in the following list would be injurious to the Federal Government's decision-making functions because such disclosure would tend to inhibit the frank and candid discussion necessary to effective government. Indeed, disclosure would have a chilling effect on many future discussions at DOE. I hereby assert the deliberative process privilege upon behalf of DOE for the following described documents:

1. The document Bates-Stamped HQR2500021 - HQR2500025 (E2, App. 97)[1] is an e-mail regarding the FY 2002 budget for the Office of Management and Budget ("OMB"). The document provides advice and recommendations regarding DOE's response to OMB regarding policy matters related to OCRWM's FY 2002 budget request, prepared as part of the budgetary process and briefing for OMB. The document reflects the Department's policy deliberations relating to the amount of the DOE's budget request and forms part of the deliberative process.

[1] In the appendix to its motion to compel, Yankee Atomic Electric Company renumbered documents listed in the Government's privilege log. The references in this declaration to "E __" refer to the number that Yankee has assigned to the document at issue, and "App. __" refers to the page of Yankee's appendix upon which the privilege log entry for that document is found.

2. The documents Bates-Stamped HQR2500026 - HQR2500028 (E3, App. 97) are two e-mails regarding a briefing for OMB on budgetary matters. These documents provide advice and recommendations regarding DOE's formulation of policy matters related to a FY budget request. The documents reflect the Department's policy deliberations relating to the amount of the DOE's budget request and form part of the deliberative process.

3. The documents Bates-Stamped HQR2500168 - HQR2500180 (E8, App. 99), HQR2500001 - HQR2500020 (E1, App. 97), HQR2500044 - HQR2500062 (E5, App. 98), HQR2502102 (E141, App. 145) are internal draft memoranda, copies of slides for group presentation, and e-mails regarding potential legislative proposals related to the OCRWM program. These documents reflect the Department's policy deliberations relating to the decision regarding the manner in which OCRWM might request that legislation, were prepared for consideration of continuing policy matters, and form part of the deliberative process.

4. The document Bates-Stamped HQR250212 - HQR2500213 (E13, App. 101) is an e-mail forwarding a draft response to questions posed to Secretary Abraham during a February 8, 2001 congressional hearing regarding the disposal of low-level radioactive waste. This document provides advice and recommendations regarding the Department's policy on that issue. The document reflects the Department's policy deliberations

regarding the manner in which the Secretary would respond to Congress, and forms part of the deliberative process.

5. The documents Bates-Stamped HQR2500214 - HQR2500215.4 (E14, App. 101), HQR2500216 - HQR2500217 (E15, App. 102) are a series of e-mails discussing DOE's comments to the Nuclear Regulatory Agency's ("NRC") proposed revisions to its rule regarding Greater-Than-Class-C waste. These documents provide advice and recommendations regarding the Department's policy on that issue. The documents reflect the Department's policy deliberations relating to the decision regarding the manner in which DOE should respond to the NRC's proposed revision to the NRC's rule and form part of the deliberative process.

6. The document Bates-Stamped HQR2500226 (E17, App. 103) is an e-mail regarding OCRWM activities and its budget requirements for FY 2001. These documents provide advice and recommendations regarding the policy matters related to the FY 2001 budget request. These documents provide advice and recommendations regarding the Department's policy relating to the budget request. The documents reflect the Department's policy deliberations relating to DOE's budget request and forms part of the deliberative process.

7. The documents Bates-Stamped HQR2500218 - HQR2500225 (E16, App. 102) and HQR2500227 - HQR2500234 (E18, App. 103) are two draft memoranda for the Under Secretary of Energy from Assistant Secretary of

Energy Huntoon regarding the storage of DOE-owned SNF and the Department's decision on acceptance of SNF from General Atomic's facility. The specific policy decision at issue was how DOE would accept SNF from General Atomic's facility, and the document lists a series of options to be decided upon and a recommendation for a specific option. The document reflects the Department's policy deliberations relating to that decision and forms part of the deliberative process.

8. The documents Bates-Stamped HQR2500407 - HQR2500421 (E48, App. 113), HQR2500440 - HQR2500445 (E53, App. 115), HQR2500511 - HQR2500511.6 (E58, App. 117), HQR2500565 - HQR2500609 (E63, E64, E65, App. 118 - 119), HQR2500611 - HQR2500623 (E67, App. 120), HQR2500655 - HQR2500656 (E70, App. 121) and HQR2500982 - HQR2501050 (E86, E87, E88, E89, App. 126) are a series of e-mails with attached draft responses to questions posed by Members of Congress, and draft testimony for Lake Barrett, Acting Director of OCRWM dealing with DOE's program for the acceptance of SNF. These documents provide advice and recommendations regarding the proper presentation of the Department's policies with regard to those issues. The documents reflect policy deliberations regarding the manner in which DOE should respond to questions posed to representatives of DOE and form part of the deliberative process.

9. The documents Bates-Stamped HQR2502017 - HQR2502080 (E126,

E127, E128, E129, E130, E131, E132, E133, E134, App. 140 - 143) are a series of e-mails dealing with DOE's response to a statement regarding the efficacy of the repository at Yucca Mountain in light of the fact that electric utilities are building dry storage facilities at their plant sites. These documents provide advice and recommendations regarding the proper manner in which to explain the Department's policy regarding the need for a permanent repository, as part of the Secretary's preparation of support for his site recommendation for Yucca Mountain. The documents reflect the Department's policy deliberations relating to the appropriate manner in which to explain that policy and form part of the deliberative process.

10. The document Bates-Stamped HQR2500657 - HQR2500660 (E71, App. 121) is an internal draft memorandum discussing options for approaching waste acceptance and transportation strategies for inclusion in DOE's Strategic Plan, the final version of which was recently published as Publication DOE/RW-0558. These documents provide advice and recommendations regarding the Department's development of that plan and form part of the deliberative process.

11. The document Bates-Stamped HQR2502100 - HQR2502101 (E140, App. 145) is a draft response to a question posed by Congress regarding the repository at Yucca Mountain and the effect that its operation would have upon the amount of SNF held in storage by commercial nuclear utilities.

These documents provide advice and recommendations regarding the appropriate manner for the Department to respond. The documents reflect the Department's policy deliberations relating to the manner in which DOE should respond to the question and form part of the deliberative process.

12. The document Bates-Stamped HQR2502103 - HQR2502115 (E142, App. 146) is a draft of an internal memorandum to be included in the Secretary's briefing book regarding the site recommendation and budgetary issues relating to the OCRWM program. These documents provide advice and recommendations regarding the Department's policies. The document reflects the Department's deliberations relating to the Secretary's determination regarding whether to make a site recommendation for Yucca Mountain and forms part of the deliberative process.

13. The documents Bates-Stamped HQR2500235 - HQR2500239 (E19, E20, E21, App. 104), HQR2500247 - HQR2500260 (E22, E23, E24, App. 105), and HQR2500266 - HQR2502500359 (E25, E26, E27, E28, E29, E30, E31, E32, E33, E34, E35, E36, E37, E38, App. 106 - 109) are a series of e-mails discussing an audit report by DOE Inspector General. These e-mails provide advice and recommendations regarding a possible OCRWM response to the Office of Inspector General report. The e-mails reflect the Department's policy deliberations relating to the proper response and form part of the deliberative process.

14. The documents Bates-Stamped HQR2502096 - HQR2502099 (E138,

E139, App. 144 - 145) are e-mails forwarding a spreadsheet presenting an analysis of rates over time prepared at the request of Mary Ann Sullivan, Office of the General Counsel, for use in litigation and negotiations to settle cases currently pending before the Court of Federal Claims. These documents provide advice and recommendations regarding the proper utilization of these rates in litigation and settlement negotiations. These documents reflect the Department's policy deliberations relating to the proper use of these potential waste acceptance schedules in litigation and settlement negotiations and form part of the deliberative process.

I declare under the penalty of perjury, this 13th day of June, 2003, that the foregoing is true and correct to the best of my knowledge and belief.

Ronald A. Milner 6/13/03

Ronald A. Milner
Chief Operating Officer
Office of Civilian Radioactive Waste Management

**Department of Energy**
Washington, DC 20585

JUN 1 1 2003

MEMORANDUM FOR PATRICE M. BUBAR,
ASSOCIATE DEPUTY ASSISTANT SECRETARY
FOR INTEGRATION AND DISPOSITION

FROM: JESSIE H. ROBERSON
ASSISTANT SECRETARY FOR
ENVIRONMENTAL MANAGEMENT

SUBJECT: Delegation of Authority

Pursuant to Sections 1.1 and 4.1 of Redelegation Order No. 00-002.03, dated January 8, 2002, I hereby delegate to you the authority to assert the deliberative process privilege over documents specific to the Department of Energy response to Governor King's letter dated October 1, 2001, regarding Greater-Than-Class-C radioactive waste within the cognizance of the Office of Environmental Management.

In general, documents will be presented to you by the attorneys representing the DOE in the particular litigation in which discovery is sought. The attorneys will have made a preliminary decision that these materials may be privileged and will advise you of the nature of the action, the scope of the discovery request at issue and other pertinent information. Your review of the documents pursuant to this delegation should be in accordance with the following guidelines:

1. Each document must be personally examined by you, and careful consideration must be given as to whether the release of a document, or of a related set of documents, would seriously inhibit frank and open discussion of policies among the staff which is involved. If only certain portions of particular documents should be protected and are segregable, the remaining portions should be released.

2. Decisions in various civil actions as to whether the privilege is to be asserted should be consistent. In addition, all similar or related documents in a particular case should be treated consistently. Consistency is also important because the requesting party may later argue waiver, i.e., that if one document concerning a particular issue or rulemaking is released in discovery, it may be argued that the agency has waived its privilege as to all documents regarding the same subject.

3. Finally, your decision as to whether privilege should be asserted should be based on your experience as Associate Deputy Assistant Secretary and your expertise in environmental policy and analysis.

If you have any further questions, please call me at (202) 586-7709.



Printed with soy ink on recycled paper

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 98-126C<br>(Senior Judge Merow) |

## ASSERTION OF DELIBERATIVE PROCESS PRIVILEGE

1. I have been informed that, in response to discovery requests from the utility plaintiffs, the Department of Energy ("DOE") has reviewed and produced thousands of documents referring or relating to DOE's delay in beginning acceptance of spent nuclear fuel ("SNF") and/or high-level radioactive waste ("HLW") by January 31, 1998, and the schedule by which DOE was obligated to accept SNF and/or HLW. In that process, DOE's attorneys have withheld a small number of documents that involve and/or reflect the Department's deliberative processes. DOE has a policy of protecting its deliberative processes in order to assure free flow of ideas and candid discussion of alternatives, which are essential to its efficient operation.

2. I have determined that disclosure of any of the deliberative process contents of the documents discussed in this affidavit would impair the Office of Environmental Management's ("EM") efficient operations by interfering with the flow of confidential communications within the agency. If these drafts were publicized now, agency personnel would, in my opinion, be reluctant to set forth their positions. Thus, release would hamper the future intra-agency exchange of opinions and ideas, and would have a "chilling effect" on the

give-and-take involved in agency decisionmaking. It is in the public interest to insure that opinions and recommendations are expressed openly within the agency.

3. Pursuant to a formal delegation by the Secretary of Energy to the Under Secretary of Energy, Science and Environment, and a subsequent formal redelegation from the Under Secretary to the Director, Office of Environmental Management, the Director or her delegate has responsibility for asserting the Government's deliberative process privilege within the cognizance of her Office. Copies of those delegations accompany this declaration.

4. Accordingly, because decisions regarding response to incoming correspondence from Governor King and associated development of Department of Energy policy regarding Greater-Than-Class-C ("GTCC") radioactive waste acceptance matters pursuant to the Low-Level Radioactive Waste Amendments Act of 1985, 42 U.S.C. §§ 2021b-2021i, are within the cognizance of EM, I, Patrice M. Bubar, delegate of Jessie H. Roberson, Assistant Secretary for Environmental Management, hereby assert the deliberative process privilege upon behalf of the Department of Energy for the following described documents:

A. The document Bates-Stamped HQR1650197-HQR1650197 contains draft language for possible inclusion in Secretary Abraham's response to a October 1, 2001 letter from Governor King, the Governor of the State of Maine, concerning GTCC waste. The document reveals the deliberations of DOE regarding the manner in which the agency would respond to the Governor of Maine's letter regarding DOE's plans for the removal of GTCC waste. The draft forms part of the deliberative process.

B. The documents Bates-Stamped HQR0920100-HQR0920101, HQR0920102-HQR0920103, HQR1650209-HQR1650222, HQR1660022-HQR1660022,

HQR1660023-HQR1660023, HQR1660024-HQR1660024, HQR1660025-HQR1660031, HQR1660032-HQR1660045, HQR1670001-HQR1670010, HQR1670011-HQR1670020, HQR1670022-HQR1670023, HQR1670024-HQR1670025, HQR1670027-HQR1670030, HQR1670032-HQR1670033, HQR1670035-HQR1670037, HQR1670044-HQR1670047, HQR1670048-HQR1670053, HQR1670054-HQR1670054, HQR1670057-HQR1670067, HQR1670068-HQR1670082, HQR1670087-HQR1670090, HQR1670100-HQR1670103, HQR1670104-HQR1670105, HQR1670106-HQR1670107, HQR1670108-HQR1670112, HQR1670113-HQR1670113, HQR1670114-HQR1670114, HQR1670115-HQR1670115, HQR1670116-HQR1670118, HQR1670119-HQR1670120, HQR1670121-HQR1670122, HQR1670123-HQR1670126, HQR1670127-HQR1670129, HQR1670130-HQR1670133, HQR1690001-HQR1690013, HQR1690014-HQR1690017, HQR1690018-HQR1690018, HQR1690019-HQR1690025, HQR2500360-HQR2500366, HQR2500367-HQR2500373, HQR2500374-HQR2500376, HQR2500377-HQR2500389, HQR2500390-HQR2500396, HQR2500397-HQR2500399, HQR2500401-HQR2500402, HQR2510117-HQR2510119, HQR2510130-HQR2510130, HQR2510160-HQR2510173, HQR2510174-HQR2510174, HQR2510175-HQR2510175, HQR2510176-HQR2510184, HQR2520001-HQR2520008, HQR2520009-HQR2520018, HQR2520019-HQR2520028, HQR2520029-HQR2520063, NRC0040212-NRC0040213, NRC0040244-NRC0040244, NRC0040251-NRC0040251, NRC0040275-NRC0040277, NRC0040279-NRC0040280, NRC0040293-NRC0040295, NRC0040296-NRC0040298 are substantially similar versions of one or more of the following:

(i) an informal memorandum addressed to Jessie H. Roberson, Assistant Secretary for Environmental Management, from Lake H. Barrett, Acting Director of Office of Civilian Radioactive Waste Management (OCRWM), dated December 13, 2001, or an undated version, regarding a draft response to the October 1, 2001 letter from Governor King of Maine;

(ii) an undated draft response from Secretary Abraham to Governor King;

(iii) a draft memorandum dated January 10, 2002, or an undated version, for the Secretary from Lake H. Barrett regarding the response to Governor King's letter;

(iv) undated draft memorandum for the Secretary from Jessie Roberson regarding the response to Governor King's letter;

(v) undated draft memorandum from Matt Urie to Susan Klein and Dave Zabransky;

(vi) OCRWM correspondence tracking system ticket that tracks DOE's response to Governor King's October 1, 2001 letter;

(vii) Office Of Environmental Management correspondence tracking system log that tracks DOE's response to Governor King's October 1, 2001 letter; and

(viii) e-mails forwarding one or more versions of (i) - (vii)

Various documents include handwritten notes and/or edits. The specific policy decision at issue was the manner in which DOE would respond to Governor King's request to the Secretary to reconsider providing centralized interim storage for GTCC waste. The documents reflect the Department's policy deliberations relating to that decision and form part of the deliberative process.

C. The document Bates-Stamped HQR1670038-HQR1670039 is an e-mail regarding the tracking of DOE's response to Governor King's letter. The document reveals DOE's deliberative process in deciding how to respond to Governor King's letter.

D. The document Bates-Stamped HQR1670055-HQR1670056 is comprised of an

e-mail addressed to Elissa Turner, OCRWM, and Adella Thompson, OCRWM, from Shirley Davis, OCRWM, regarding the status of the response to Governor King's October 1, 2001 letter and a page from OCRWM Correspondence Tracking System tracking DOE's response to the October 1, 2001 letter from Governor King. The specific policy decision at issue was the manner in which to respond to Governor King's request to the Secretary to reconsider providing centralized interim storage for GTCC waste. The document reflects the Department's policy deliberations relating to that decision and forms part of the deliberative process.

E. The document Bates-Stamped HQR1670083-HQR1670083 is an e-mail addressed to Darius Smith, OCRWM, from Susan Klein. The e-mail forwarded one page of DOE's Correspondence Tracking System. The specific policy decision at issue was the manner in which to respond to Governor King's request to the Secretary to reconsider providing centralized interim storage for GTCC waste. The document reflects the Department's policy deliberations relating to that decision and forms part of the deliberative process.

F. The documents Bates-Stamped HQR1670084-HQR1670084 and HQR2510159-HQR2510159 are copies of a DOE correspondence tracking system log. The documents track DOE's response to Governor King's October 1, 2001 letter. The documents reveal DOE's deliberative process in deciding the manner in which DOE would respond to Governor King's letter.

G. The document Bates-Stamped HQR1670085-HQR1670086 is a correspondence tracking system log from the Office of the Executive Secretariat. The document tracks DOE's development of a response to Governor King's October 1, 2001 letter. The document

reveals DOE's deliberative process in deciding the manner in which DOE would respond to Governor King's letter.

H. The document Bates-Stamped HQR1670091-HQR1670092 is a draft memorandum from Dr. Margaret Chu, Director of the Office of Civilian Radioactive Waste Management, to the Secretary regarding DOE's response to Governor King's October 1, 2001 letter. The documents Bates-Stamped HQR1670098-HQR1670099 and HQR2510112-HQR2510114 are substantially similar versions of the document. The document Bates-Stamped HQR1670093-HQR1670095 is a substantially similar version of the document with handwritten notes and edits. The documents provide recommendations to the Secretary, reveal the deliberations of DOE regarding the manner in which DOE should respond to Governor King's letter, and form part of the deliberative process.

I. The document Bates-Stamped HQR1670096-HQR1670097 is a concurrence sheet for the draft memorandum from Dr. Margaret Chu, Director of the Office of Civilian Radioactive Waste Management, to the Secretary regarding DOE's response to Governor King's October 1, 2001 letter. The document contains handwritten notes. The document reveals the deliberations of DOE regarding the manner in which DOE should respond to Governor King's letter and forms part of the deliberative process.

J. The document Bates-Stamped HQR1680027-HQR1680028 is comprised of three e-mail exchanges among Ellen Livingston, Patrice M. Bubar, and Ken Chacey regarding DOE's potential response to the October 1, 2001 letter from Governor King. The specific policy decision at issue was the manner in which DOE should respond to Governor King's request to the Secretary to reconsider providing centralized interim storage for

GTCC waste. The document reflects the Department's policy deliberations relating to that decision and forms part of the deliberative process.

K. The document Bates-Stamped HQR1680033-HQR1680035 is comprised of e-mail exchanges among Christi Sullivan, Patrice M. Bubar (EM), Ellen Livingston, and Matt Urie regarding DOE's response to the October 1, 2001 letter from Governor King. The specific policy decision at issue was the manner in which DOE should respond to Governor King's request to the Secretary to reconsider providing centralized interim storage for GTCC waste. The document reflects the Department's policy deliberations relating to that decision and forms part of the deliberative process.

L. The document Bates-Stamped HQR1690026-HQR1690028 is a DOE correspondence tracking system log that tracks DOE's response to Governor King's October 1, 2001 letter. The document reveals the deliberations of DOE regarding the manner in which DOE should respond to Governor King's letter and forms part of the deliberative process.

M. The document Bates-Stamped HQR2510080-HQR2510083 are e-mails providing weekly reports to Karen Guevara from Robert Campbell. The e-mails identify actions taken in connection with the preparation of DOE's possible response to Governor King's letter. The document reveals the deliberations of DOE regarding the manner in which DOE should respond to Governor King's letter and forms part of the deliberative process.

N. The document Bates-Stamped HQR2510207-HQR2510207 is a memorandum outlining the history of correspondence between Governor King and DOE regarding GTCC and detailing the NRC's input. The document reveals the deliberations of DOE regarding the

manner in which DOE should respond to Governor King's letter and forms part of the deliberative process.

O. The document Bates-Stamped NRC0040204-NRC0040204 is a summary of letters to be discussed at an internal NRC meeting, including Governor King's October 1, 2001 letter. The summary charts the status of DOE's responses to letters addressing GTCC and SNF removal, the security measures at Maine Yankee, and comments regarding those letters. The document reveals DOE's policy deliberations regarding the manner in which DOE should respond to those letters and forms part of the deliberative process.

P. The document Bates-Stamped NRC0040243-NRC0040243 is an e-mail from James Kennedy (NRC-OGC) addressed to Bill Reamer (NRC), E. Neil Jensen (NRC), M. Wayne Hodges (NRC), Michael Webb (NRC), and Thomas Essig (NRC) describing proposed responses from DOE and the NRC to Governor King's October 1, 2001 letter. The document Bates-Stamped NRC0040250-NRC004250 is a duplicate of this document. The documents reflect DOE's policy deliberations regarding the manner in which DOE should respond to Governor King's letter and form part of the deliberative process.

Q. The document Bates-Stamped NRC0040245-NRC0040245 contains the NRC's proposed revision to DOE's draft response to Governor King's October 1, 2001 letter. The document Bates-Stamped NRC0040252-NRC0040252 is a duplicate of this document. The documents reveal DOE's policy deliberations regarding the manner in which DOE should respond to Governor King's letter and form part of the deliberative process.

R. The document Bates-Stamped NRC0040257-NRC0040262 is a presentation titled "Coordination of Responses to Maine on SNF and GTCC and GTCC Options for the Future." The document contains DOE's comments and draft responses to Governor King's October 1, 2001 and October 4, 2001 letters. The document reveals DOE's policy deliberations regarding the manner in which DOE should respond to Governor King's letters and forms part of the deliberative process.

S. The document Bates-Stamped NRC0040263-NRC0040264 is an e-mail regarding the NRC's review and comments on DOE's proposed response to Governor King's October 1, 2001 letter. The document reveals the NRC's policy deliberations regarding the manner in which DOE should respond to Governor King's letter and forms part of the deliberative process.

T. The document Bates-Stamped NRC0040274-NRC0040274 is an e-mail from James Kennedy addressed to E. Neil Jensen and Robert Temps requesting review of DOE's proposed response to Governor King's October 1, 2001 letter. The document Bates-Stamped NRC0040278-NRC0040278 is a substantially similar version of this document. The documents reveal DOE's policy deliberations regarding the manner in which DOE should respond to Governor King's letter and form part of the deliberative process.

U. The document Bates-Stamped HQR2501138-HQR2501139 is an e-mail providing information regarding concurrence on the attached draft memorandum from Margaret Chu to the Secretary concerning a proposed response to Governor King's letter. The draft provides background information and recommendations to the Secretary. The document

reveals DOE's policy deliberations regarding the manner in which DOE should respond to Governor King's letter and forms part of the deliberative process.

After personally reviewing each of the above described documents, I conclude that they all reflect DOE's deliberative processes and should be protected from disclosure.

I declare under the penalty of perjury, this 12th day of June, 2003, that the foregoing is true and correct to the best of my knowledge and belief.

Patrice M. Bubar

Patrice M. Bubar
Deputy Assistant Secretary for
Integration and Disposition
Office of Environmental Management

# In the United States Court of Federal Claims

No. 98-126 C
(Filed August 25, 2003)

******************************
YANKEE ATOMIC ELECTRIC COMPANY, *

Plaintiff, *

v. *

THE UNITED STATES, *

Defendant. *
******************************

## ORDER [1/]

By motion, filed March 6, 2003, plaintiff seeks to compel production of documents and testimony withheld by defendant as privileged in 2003. Plaintiff's motion comprised 476 pages, including preface and appendix. Defendant's opposition, filed June 20, 2003, comprised 144 pages, including preface and appendix. Plaintiff's reply, filed August 5, 2003, comprised 116 pages, including preface and appendix. Thus, analysis of the briefing in this matter has required preparation and study of 736 pages of material dealing with well over 250 claims of privilege. Counsel are encouraged to resolve discovery issues by agreement, when at all possible, to obviate this time consuming and expensive allocation of resources by all concerned.

The parties have devoted substantial briefing effort to the procedural requirements for claiming deliberative process privilege. The main area of dispute is the extent to which the decision to claim such privilege may be delegated below the head of the agency concerned. Plaintiff contests the ruling in this regard made during

---

[1/] This should also be deemed applicable in *Connecticut Yankee v. United States*, No. 98-154 C and *Maine Yankee v. United States*, No. 98-474 C.

the consolidated discovery proceedings involving spent nuclear fuel cases, and seeks a more restrictive determination based on precedent such as *Cetron Electronic Corp. v. United States*, 207 Ct. Cl. 985 (1975). *See also Kaiser Aluminum & Chemical Corp. v. United States*, 141 Ct. Cl. 38, 157 F. Supp. 939 (1958) (Opinion by Justice Reed, sitting by designation). However, there is no dispute that the deliberative process privilege, even if correctly invoked, is not absolute. For example, in *Weiss v. United States*, 180 Ct. Cl. 863, 870 (1967), the court ruled as follows:

> The Secretary of the Navy says the document is staff advice of a subordinate to a superior, and no doubt, it is. *Kaiser Aluminum & Chemical Corp. v. United States*, 141 Ct. Cl. 38, 157 F. Supp. 939 (1958). However, before we allowed the claim of privilege in that case we also considered whether it was necessary to obtain the document to avoid a miscarriage of justice. We held that it was not in the case then at bar, and accordingly the claim of privilege was successful. Here we have the opposite side of the coin. We are not concerned with military and diplomatic secrets, which are in a class by themselves. The privilege here is not absolute and must yield to compelling necessity.

In the circumstance of this case and given the consolidated discovery ruling, it is concluded that no valid purpose would be served in again resolving the procedural aspect of claiming privilege. The essential issue with respect to moving this matter to trial is whether plaintiff has shown necessity for the material withheld which would require its disclosure despite the invocation of deliberative process privilege.

As noted in the Order, filed June 26, 2003, defendant has indicated a litigation position that the continued presence of Greater than Class C Waste ("GTCC") on a reactor site, requiring storage and security costs, would obviate or reduce damages, such as storage or security costs, that are claimed based on the failure of the government to commence removal of spent nuclear fuel by January 31, 1988. Thus, the Government's plans with respect to its obligation, pursuant to the Low-Level Radioactive Waste Policy Amendments Act of 1985, 42 U.S.C. §§ 2021b-2021i, to dispose of GTCC, must be fully disclosed to enable the court to make a finding(s) on the validity of this defense defendant asserts. It appears that there may only be inchoate plans, or recommended plans, but it is concluded that unless defendant abandons its GTCC defense against monetary claims in this matter, there exists a

compelling necessity for the production of all documentation which can contribute to an evidentiary finding as to whether GTCC material will be left on a reactor site after spent nuclear fuel and/or high level waste is removed. If a fee must be assessed for GTCC removal this fact also must receive consideration in damage considerations, particularly as to quantification issues.

Accordingly, the claims of privilege and the opposition thereto have been individually reviewed and, on the basis of compelling necessity, it is concluded that the following documents, using the numbers assigned in plaintiff's March 6, 2003 motion, must be produced: 58, 61, 69, 74, 76, 77, 88, 89, 90, 92, 93, 94, 95, 96, 97, 98, 99, 102, 103, 104, 111, 112, 120, 136, 138, 139, 146, 149, 154, 155, 156, 157, 203, 206, 209, 211, 212, 214, 216, 219, 220, E14, E15, E39, E40, E41, E42, E43, E44 (minus DOJ E-mail), and E95.

With respect to the opposition plaintiff also addressed to attorney-client or work product privilege claims, the descriptions in the logs have each been examined and it is concluded that the following documents do not, in their entirety, meet the necessary requirements for the privilege claimed and must be modified and produced as noted: 3 ("legal" notes redacted and document then produced), 9 (only if, as plaintiff alleges, the document is the same as one produced), 61 (produce after redacting substance of legal communications, Urie memo, and correspondence tracking sheet), 66 (produce after redacting handwritten notes from Urie), 67 (produce after redacting substance of legal communications, note by Urie), 70 (produce after redacting substance of legal communications, Urie memo, correspondence tracking sheet), 100 (produce after redacting substance of legal communications), 106 (produce after redacting substance of legal advice), 113 (produce after redacting substance of legal communications), 115 (produce after redacting substance of legal communications, Urie memo), 135 (produce after redacting legal discussions), 137 (produce after redacting legal advice and discussions), 142 (produce after redacting substance of legal communications, Urie memo, correspondence tracking sheet), 145 (same as 142), 202 (summary of letters for a meeting does not meet criteria for attorney-client claim and compelling necessity obviates deliberative process assertion), 204 (produce after redacting legal notes), 205 (produce after redacting description of legal advice), 208 (same as 205), E44 (produce after redacting DOJ material and legal advice), E46 (produce after redacting legal advice portion).

With the exception of the above-listed production, it is concluded that the assertions of privilege by defendant are otherwise, sustained.

Accordingly, it is **ORDERED**:

(1) That plaintiff's motion, filed March 6, 2003, shall be **GRANTED** to the extent of the production called for above and, otherwise, **DENIED**;

(2) That to the extent testimony was withheld on the subject matter of the production ordered herein, that testimony shall now be taken.

James F. Merow
Senior Judge

**Greenberg Traurig**

Kevin E. Stern
Tel. 202-452-4878
Fax 202-261-0107
sternk@gtlaw.com

September 12, 2005

**VIA FACSIMILE AND HAND DELIVERY**

John C. Ekman
Trial Attorney
Department of Justice
Commercial Litigation Branch
Civil Division -- Classification Unit
8th Floor Mailroom
1100 L Street, NW
Washington, D.C. 20530

Re: Pacific Gas & Electric Co. v. United States

Dear John:

I am writing to confer with you regarding the government's deliberative process privilege claims for 484 documents logged on the government's privilege logs to date. For your convenience, I have enclosed a table that separately identifies and describes each of these deliberative process documents.

From our careful review of the government's privilege logs, as well as based upon information gained from litigating deliberative process privilege claims in the common discovery proceedings and the *Yankee Atomic* cases, it is clear that the government's privilege claims lack merit for several reasons. First, the government has not supported its deliberative process privilege claims for any of these documents with an affidavit from the head of the relevant agency. This mandatory requirement for invoking the privilege has been recently reaffirmed by two Court of Federal Claims judges. *See Marriott Int'l Resorts, L.P. v. United States,* 61 Fed. Cl. 411, 418-19 (2004) (Lettow, J.); *Jade Trading, LLC v. United States,* 65 Fed. Cl. 487, 496 (2005) (Williams, J.). Secondly, none of the affidavits from subordinate agency officials that the government submitted in support of its deliberative process privilege claims in prior proceedings set forth the "precise and certain reasons" for the need to withhold these documents, *Walsky Constr. Co. v. United States,* 20 Cl. Ct. 317, 320 (1990), nor do they show that any of the withheld documents at issue are in fact both "pre-decisional" and "deliberative." *Jade Trading,* 65 Fed. Cl. at 493.

Finally, even if the government had satisfied these requirements for asserting the deliberative process privilege, the withheld documents should still be produced because, given their clear relevance to important issues in this case, PG&E's need for the documents

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
CHICAGO
DALLAS
DENVER
FORT LAUDERDALE
LOS ANGELES
MIAMI
NEW JERSEY
NEW YORK
ORANGE COUNTY, CA
ORLANDO
PHILADELPHIA
PHOENIX
SILICON VALLEY
TALLAHASSEE
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
WILMINGTON
ZURICH

www.gtlaw.com

outweighs the government interest, if any, in keeping the material confidential. *See Weiss v. United States,* 180 Cl. Ct. 863, 870 (1967). This is particularly so because the Court's protective order is available to limit disclosure of the material to this litigation.

Accordingly, the government should produce its "deliberative process" documents immediately. If, as we expect, the government refuses to produce the documents and intends to maintain its deliberative process privilege claims, then we will proceed with a motion to compel. We would ask that you inform us of your position as soon as possible and no later than Monday, September 19, so we can promptly bring this to the Court's attention if necessary.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Kevin E. Stern

Enclosure

The Honorable Angus King, Jr.
Governor of Maine
1 State House Station
Augusta, Maine 04333-0001

Dear Governor King:

This is in response to your October 1, 2001, letter regarding the Greater-Than-Class C (GTCC) waste at the Maine Yankee Atomic Power Company. I understand the importance of the issues you have raised in this letter and in your letter with your fellow New England Governors.

As I stated in my letter to you on July 6, 2001, the Department of Energy is preparing to begin an Environmental Impact Statement to address the responsibility for disposal of GTCC waste under the Low-Level Radioactive Waste Policy Act, as amended. Until we complete the analysis of reasonable alternatives as required by the National Environmental Policy Act, we will continue with our current policy. Since interim storage falls under the realm of reasonable alternatives, it will likely be analyzed in the Environmental Impact Statement. At this time, the Department has no plans to develop interim storage for spent nuclear fuel or GTCC waste.

Unfortunately, I cannot provide you an exact date by which the Department will accept the Maine Yankee GTCC waste. It is my intention that nuclear utilities would not have to store GTCC waste beyond the time that they will have to store spent nuclear fuel.

In light of recent events, all agencies are re-evaluating a wide variety of policies and issues. I will work closely with the U.S. Nuclear Regulatory Commission, and other appropriate agencies, to monitor this very important issue and ensure that appropriate actions are taken and policies revised when necessary. I look forward to working with you to develop solutions to these issues.

If you have any further questions, please contact me or have your staff contact Mr. Dan R. Brouillette, Assistant Secretary, Congressional and Intergovernment Affairs, at (202) 586-5450.

Sincerely,

HQR250 0370

Spencer Abraham

cc:
Richard Meserve, Chairman
Nuclear Regulatory Commission

HQR250 0371

The Honorable Angus King, Jr.
Governor of Maine
Augusta, ME 04333-0001

Dear Governor King:

This letter is in reply to your letter of October 1, 2001, concerning the Greater-Than-Class C (GTCC) waste at the Maine Yankee Atomic Power Company. I understand the importance of the issues you have raised in this letter and in your letter with your fellow New England Governors.

As I stated in my letter to you on July 6, 2001, the Department is preparing to begin an Environmental Impact Statement to address the responsibility for disposal of GTCC waste under the Low-Level Radioactive Waste Policy Act, as amended. Until we complete the analysis of reasonable alternatives as required by the National Environmental Policy Act, we must continue with our current policy. Since interim storage falls under the realm of reasonable alternatives, it will likely be analyzed in the Environmental Impact Statement. At this time, the Department has no plans to develop interim storage for spent nuclear fuel or GTCC waste.

Unfortunately, I cannot provide you an exact date by which the Department will accept the Maine Yankee GTCC waste. It is my intention that nuclear utilities would not have to store GTCC waste beyond the time that they will have to store spent nuclear fuel.

The Nuclear Regulatory Commission (NRC) has determined that commercially owned spent nuclear fuel and GTCC waste can be safely and securely stored at reactor sites. Any security issues you feel that need to be addressed in light of current events should be addressed to the NRC and the Office of Homeland Security. In addition, the NRC supports the storage of spent nuclear fuel and GTCC waste until appropriate facilities are available.

I will continue to monitor these very important issues and work with the NRC, the Office of Homeland Security, and others to ensure that appropriate actions are taken and policies revised when necessary. I look forward to working with you to develop solutions to these issues. If you need additional information, please contact me or have a member of your staff contact Ms. Jessie Roberson, Assistant Secretary for Environmental Management, at (202) 586-7709.

Sincerely,

Spencer Abraham

cc:
Richard Meserve
Chairman
Nuclear Regulatory Commission

Tom Ridge
Director
Office of Homeland Security

**From:** Campbell, Robert
**Sent:** Monday, November 05, 2001 11:35 AM
**To:** Guevara, Karen
**Subject:** Activities for the Week of Oct. 29 - Nov. 2

Karen,

Schedule: Monday, Oct. 29, Sick Leave
Tuesday, Oct. 30, Sick Leave
Friday, Nov. 2, Sick Leave

Upcoming travel or leave:

Cancelled trip to Albuquerque, Nov. 5-7, due to Air Force unable to attend.

Dec. 3-5, AL Year End Review, also plan to have RTG EA meeting with Air Force.

Major Activities:

SOURCE PROGRAM -

-Provided Huizenga with additional budget information on accelerated recovery of sources per NRC draft request.

-Provided guidance to AL on smoke detector foils after consulation with NRC. Smoke detector foils removed from detectors and never used in a retail product classify as GTCC sources and can be managed by OSRP as such.

-Discussion with S. Glick of NRD on sealed sources, including smoke detector foils.

-Provided C. Head info on sealed sources for Rapid Consolidation briefing.

RTG EA -

-DOE/AF call.

-Planned trip to AL for meeting on preferred alternative. Cancelled meeting due to Air Force unable to attend.

CRCPD LIAISON -

-CRCPD has formally announced their unwanted source program. Funding from DOE and NRC is now available to CRCPD. They are going after class A, B, C and NORM sources which pose a threat to public health and safety.

-Review of draft letter from CRCPD to Gov. Ridge, Homeland Security. No comments.

-Review of CRCPD documents on mail irradiation.

OTHER -

-Performance review.

GTCC PROGRAM -

-Discussion with NRC on King response, provided Huizenga talking points for discussion with John Grieves of NRC.

ORPHAN WASTE INTEGRATION -

-None.

HQR251 0080

HQR251 0081

**From:** Campbell, Robert
**Sent:** Wednesday, October 31, 2001 1:45 PM
**To:** Guevara, Karen
**Subject:** Activities for week of Oct. 22-26

Karen,

(sorry this is late).

Schedule: Monday, Oct. 22, 4 hours sick leave
Wednesday, Oct. 24, 2 hours sick leave
Friday, Oct. 26, AWS Day

Upcoming travel or leave:

Trip to Albuquerque, Nov. 5-7 to discuss Sandia as preferred alternative.

Possible Trip to DC/Germantown, October, 2001
-to meet with NNSA or SO on termination of safeguards
-to have meeting with P. Bubar and John Lehr (per Tom Longo request)
-Brief EM-1 and AF on RTG EA

Possible trip to meet to review draft EA, October, 2001 (likely in DC or Atlanta)

Major Activities:

SOURCE PROGRAM -

-Prepared response to Blake questions from unsigned draft NRC letter faxed to DOE. Updated and revised.

-Prepared requested information on DOE held GTCC, which is sealed sources under source program. Submitted.

-Call with AL/LANL

RTG EA -

-Prepared talking points for Dave Huizenga to discuss selecting Sandia as preferred alternative with NNSA.

-AF/DOE Call

-Reviewed EA Appendixes A-F, provided comments.

-Updated fact sheet for Scott VanCamp

CRCPD LIAISON -

-None

OTHER -

-Updated 30/60/90.

-Review of IAEA statement to UN General Assembly.

-Review of Spencer Abraham speech.

-Prepared and submitted IDP.

HQR251 0082

-Revised Framatome action from EM-1 signature to EM-20 signature, resubmitted action for EM-20 approval.

GTCC PROGRAM -

-Revised Gov. King response, coordinated with NRC.

ORPHAN WASTE INTEGRATION -

-None.

HQR251 0083

Talking Points: John Grieves, NRC, wishes to discuss Gov. King response with Dave Huizenga.

John Grieves phone is (301) 415-7437

Background:

Governor King of Maine was one of five governors to write a letter to Secretary Abraham about Spent Nuclear Fuel (SNF) and Greater-Than-Class C (GTCC) waste (Attachment 1).

Secretary Abraham responded with letter of July 6, 2001 (Attachment 2), stating that the Department is working toward recommending Yucca Mountain for SNF repository and is going to begin GTCC Environmental Impact Statement (EIS). Department is not pursuing interim storage.

Governor King wrote Secretary in response to July 6 letter (Attachment 3) requesting the Secretary to make arrangements to take SNF and GTCC by 2005, when the Maine Yankee decommissioning is to be complete.

Discussion:

In preparing response to Gov. King letter, sent draft to NRC staff for review. Initially stated that storage of SNF and GTCC at utilities is NRC responsibility. NRC has determined that it is safe.

NRC staff said in light of Sept. 11, that they are re-examining previous policies and were not able to say unequivocally that previous policy still remained 100% intact. NRC staff said they could not provide definitive comments prior to the due date of our action, therefore, response was changed to remove any reference to NRC determining storage was safe (response Attachment 4).

NRC staff has reviewed response and has no policy comments, but does believe there are areas for improvement, some of which are below:

- SNF not adequately addressed.
- Answer is vague.
- Could add that storage of SNF and GTCC is NRC responsibility, and NRC has taken steps to improve security.
- Provide more specific information on EIS.

Response Status:

Response is overdue. Due date was 10/19/01. Response is currently with GC and RW.

HQR251 0207

**Talking Points: Greater Than Class C Waste and Maine Yankee**

Meeting with GC-1, RW, and EM on the latest letter from Maine Yankee on the Greater Than Class C (GTCC) waste issue.

Issue 1: To determine a Department of Energy position regarding interaction by EM with nuclear utilities regarding their GTCC waste packaging, storage, and eventual acceptance by EM.

Discussion: There are two pieces of legislation at issue.

A. The Nuclear Waste Policy Act (NWPA) makes DOE responsible for accepting spent nuclear fuel and high level waste. The utilities believe that GTCC is covered under the NWPA. RW's position is that it is not. This issue does not affect EM and EM should have no argument with this aspect of the issue.

B. The Low-Level Radioactive Waste Policy Amendments Act of 1985 (Public Law 99-240) makes DOE responsible for the disposal of GTCC waste. DOE, in the report to Congress required by this act, stated that it would begin acceptance of GTCC for storage by 1989. EM, in implementing these responsibilities, needs to begin to work with the utilities and develop acceptance criteria and determine what type of storage and disposal facilities will be required for future acceptance.

The current position taken by DOE is that GTCC is not covered under the NWPA, and although it is covered under Public Law 99-240, since we do not currently have a disposal facility we cannot work with the utilities and observe GTCC packaging. EM took this position because GC urged us to due to current litigation between DOE and Maine Yankee.

The recommended EM position is that we work with the utilities to the greatest extent possible as long as we do not damage the DOE position in the current litigation between Maine Yankee and DOE. Maine Yankee has offered to hold DOE harmless and not use any interaction and observance of activities by DOE in court. Based on this, EM should begin working with Maine Yankee and other utilities.

Issue 2: Meeting with the U.S. Nuclear Regulatory Commission (NRC). Once the above issue is determined and a DOE position developed, a meeting needs to be scheduled with NRC to include EM, RW, and GC to discuss the DOE position with regards to GTCC with the NRC.

References: Correspondance between Maine Yankee, State of Maine, and DOE
1. 9/7/00, Maine Yankee to RW, invitation to observe packaging of GTCC waste.
2. 9/29/00, RW to Maine Yankee, statement that DOE is not interested in observing packaging.
3. 10/17/00, State of Maine to RW, request that DOE observe or waive future rights.
4. 11/17/00, EM to State of Maine, declining to observe packaging again.
5. 11/30/00, Maine Yankee to EM, asking EM to work with Maine Yankee in a constructive manner.

FROM : Dan Kane <"Dan Kane" <ejohnson-conv>>
TO : Nancy Slater <"Nancy Slater" <ejohnson-conv>>
CC : Lake Barrett <"Lake Barrett" <ejohnson-conv>>, Alan Brownstein <"Alan Brownstein" <ejohnson-conv>>, Tim Sullivan <"Tim Sullivan" <ejohnson-conv>>
DATE = 07/21/2000
TIME : 13:55:00 GMT
SUBJECT : Proposed Rule on Part 72 - GTCC Waste
BODY : Doctor,

Let me call your attention to item # 1 under "Request for Public Input on Specific Issues." It reads " ... the Commission is separately requesting information from DOE regarding DOE's position on the final disposal of commingled spent fuel and GTCC waste."

I checked around and couldn't find anyone who was talking with the NRC about this except Mr. Barrett. He told me that a Mr. Brock mentioned the matter to him several months ago and that he told Mr. Brock that DOE would be glad to comment on anything the NRC put together proposing that GTCC waste be commingled with SNF for disposal. Please note that this is not the subject of the proposed rulemaking. However, it appears that something might have fallen through the cracks concerning DOE responding to NRC's request on whether we have any ideas about the commingled approach.

I suggested to Mr. Barrett that you guys might want to follow up on this and he said fine.

As far as the proposed Part 72 modification goes, I don't see where DOE has a dog in this race. Moreover, I certainly hope that we are not going to look into placing GTCC waste in the first repository, wherever, if ever, it might be located.

Thank you.

Big Dan The Man

U.S. Department of Justice

Civil Division

PDK:DMC:HDL:SDamelm
154-04-074

Telephone: (202) 305-2312
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

September 21, 2005

VIA FACSIMILE AND UNITED STATES MAIL

Kevin E. Stern
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

Re: Pacific Gas & Electric Co. v. United States, Nos. 04-074C, 04-075C (Fed. Cl.)

Dear Mr. Stern:

We are writing in response to your letter dated September 12, 2005, concerning the Government's deliberative process privilege claims for 484 documents entered on the Government's privilege logs in the spent nuclear fuel ("SNF") cases.

We disagree with your assertion that the Government's privilege claims lack merit. First, the Government's assertion of deliberative process privilege for at least 145 of the 484 documents has been upheld by two prior orders issued in the United States Court of Federal Claims. The first order was issued by Judge Sypolt during the SNF coordinated discovery proceedings. Yankee Atomic Electric Co. v. United States, 54 Fed. Cl. 306 (2002). The second order was issued by Judge Merow during the Yankee Atomic, Connecticut Yankee and Maine Yankee litigation. Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl. Aug. 25, 2003).

Of the remaining documents on your list, over 60 documents are duplicates, different versions and/or substantially similar versions of documents already subject to the above-referenced court orders. This information was included in the description section of the Government's privilege logs.

Based upon our review, the following documents on your list appear to be duplicates: 303/444, 304/445, 305/446, 306/447, 307/448, 308/449, 309/451, 310/452, 311/453, 312/454, 313/455, 314/456, 315/457, 316/458, and 317/459. All of these documents are identified with the "NRC" Bates numbers and appear on pages 31 to 33 and pages 43 to 45 of your document list. The Government's assertion of deliberative process privilege for these documents was upheld by the prior court orders

2·

Second, your position that the Government's deliberative process privilege claims must be supported with an affidavit from the head of the relevant agency is incorrect. The predominant and prevailing view upon this issue is that the head of the agency does not need to invoke the deliberative process privilege personally. U.S. Dep't of Energy v. Brett, 659 F.2d 154, 155 (Temp. Emer. Ct. App. 1981), cert. denied, 456 U.S. 936 (1982); Landry v. Federal Deposit Insurance Corp., 204 F.3d 1125, 1135 (D.C.Cir. 2000); Branch v. Phillips Petroleum Co., 638 F.2d 873, 882-83 (5th Cir. 1981).

Third, the affidavits that were submitted in support of the Government's assertion of the deliberative process privilege in the coordinated discovery and Yankee Atomic proceedings set forth precise and certain reasons for the Government's need to withhold the documents from production, and established that the documents at issue were pre-decisional and deliberative.

Fourth, your claim that, even if the Government had satisfied the requirements for the deliberative process privilege, the documents should still be produced given their relevance to the issues of the case, and that PG&E's need for the documents outweighs the Government's interest in keeping the material confidential, is unsupported by legal authority and the facts of this case. You have not identified any basis upon which PG&E's interest in production of these documents outweigh the Government's invocation of the deliberative process privilege.

In addition, although your letter only addresses the Government's deliberative process privilege claims, approximately 70 documents on your list are also covered by the Government's assertions of the attorney-client privilege and/or attorney work product doctrine.

Your demand that the Government provide a response to your letter by Monday, September 19, 2005, is unacceptable, given the circumstances of this case. A copy of your September 12, 2005 letter was faxed to the Government's office on that same date. As you were aware, John Ekman and I were taking the deposition of Larry Womack on September 12 and 13 in San Francisco, California. With a full day of travel on September 14, we did not return to the office until Thursday, September 15. Although we continue to work with you in a good faith effort to resolve our discovery-related disagreements without court involvement, your demand that the Government respond by an arbitrary deadline concerning privilege issues for 484 documents is simply unreasonable.

If you have any questions, please call.

Sincerely,

SCOTT R. DAMELIN
Trial Attorney
Commercial Litigation Branch