**CORRECTED**

NO. 04-0075C
(Judge Hewitt)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND DEPOSITION TESTIMONY IMPROPERLY WITHHELD ON THE BASIS PRIVILEGE

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 307-0282
Fax: (202) 514-8624

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT DAMELIN
SHARON A. SNYDER
Civil Division
Department of Justice
1100 L Street N.W.
Washington, DC 20530

October 26, 2005

Attorneys for Defendant

## TABLE OF CONTENTS

BACKGROUND . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . 3

I. THE GOVERNMENT HAS SATISFIED ITS MEET AND CONFER REQUIREMENT . . . . . . . . . . 3

II. PG&E'S ASSERTION OF WORK PRODUCT PRIVILEGE FAILS BECAUSE THE DOCUMENTS AT ISSUE WERE NOT CREATED IN ANTICIPATION OF LITIGATION . . . . . . . . . . 5

A. The Work Product Privilege Is Applicable Only If The Materials Sought To Be Protected From Disclosure Were "Primarily Motivated" By Litigation . . . . . . . . . . 5

B. Documents Prepared By Experts For Regulatory Proceedings Enjoy No Work Product Protection . . . . . . . . . . 9

III. PG&E'S ASSERTION OF ATTORNEY-CLIENT PRIVILEGE SHOULD FAIL BECAUSE ITS PRIVILEGE LOG DOES NOT IDENTIFY THE RECIPIENTS OF MANY DOCUMENTS AND FAILS TO ESTABLISH THAT DOCUMENTS PREPARED BY ATTORNEYS CONTAIN CONFIDENTIAL CLIENT COMMUNICATIONS . . . . . . . . . . 10

A. The Attorney-Client Privilege Protects Only Confidential Client Communications . . . . . . . . . . 11

B. As A Matter Of Law, PG&E's Assertion Of Attorney-Client Privilege Fails With Respect To Documents Whose Recipients Are Unidentified In Plaintiffs' Privilege Logs . . . . . . . . . . 12

C. Documents Generated By, And Distributed To, Non-Attorneys Are Not Subject To The Attorney-Client Privilege . . . . . . . . . . 13

D. Communications To The Board of Directors Have Been Improperly Withheld On Attorney-Client And Work Product Grounds . . . . . . . . . . 14

IV. DOCUMENTS SENT TO REGULATORY AGENCIES ARE NOT PROTECTED BY ATTORNEY-CLIENT PRIVILEGE OR WORK PRODUCT DOCTRINE . . . . . . . . . . 15

V. PG&E COUNSEL HAS IMPROPERLY INSTRUCTED WITNESSES NOT TO RESPOND TO QUESTIONS DURING THEIR DEPOSITIONS . . . 16

A. PG&E Has Placed The Damages Claim At Issue In This Litigation, Therefore, It Has Waived Any Attorney-Client Privilege Regarding The Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

B. Communications Between PG&E Employees and Experts Are Not Protected By Either The Attorney-Client or Work Product Privileges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

### CASES

Abruzzo v. United States,
21 Cl. Ct. 351 (Ct. Cl. 1990) . . . . . . . . . . 10, 19

Afro-Lecon, Inc. v. United States,
820 F.2d 1198 (Fed. Cir. 1987) . . . . . . . . . . 16

American Standard, Inc. v. Pfizer, Inc.,
828 F.2d 734 (Fed. Cir. 1987) . . . . . . . . . . 11, 12, 13, 14

In re Baimco Sec. Litig.,
148 F.R.D. 91 (S.D.N.Y. 1993) . . . . . . . . . . 6

Bernard v. Secretary of Health and Human Servs.,
1996 WL 499018 (Fed. Cl. 1996) . . . . . . . . . . 10, 19

Binks Mfg. Co. v. Nat'l Presto Indus., Inc.,
709 F.2d 1109 (7th Cir. 1983) . . . . . . . . . . 6, 7

Cabot v. United States,
35 Fed. Cl. 442 (1996) . . . . . . . . . . 7, 8, 12

Carter v. Gibbs,
909 F.2d 1450 (Fed. Cir. 1990) . . . . . . . . . . 5

Cavallaro v. United States,
284 F.3d 236 (1st Cir. 2002) . . . . . . . . . . 11

Energy Capital Corp. v. United States,
45 Fed. Cl. 481 (2000) . . . . . . . . . . 7, 10, 12, 19

Genentech, Inc. v. U.S. Int'l Trade Comm'n,
122 F.3d 1409 (Fed. Cir. 1997) . . . . . . . . . . 5

Gutter v. E.I. DuPont de Nemours and Co.,
1998 WL 2017926 (S.D. Fla. May 18, 1998) . . . . . . . . . . 6

Hearn v. Rhay,
68 F.R.D. 574 (E.D. Wash, 1975) . . . . . . . . . . 16, 17
Hickman v. Taylor,

329 U.S. 495 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Montgomery v. Leftwich, Moore & Douglas,
161 F.R.D. 224 (D.D.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Occidental Chemical v. OHM Remediation Services,
175 F.R.D. 431, 435, (W. D. N. Y. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Oneida, Ltd. v. United States,
43 Fed. Cl. 611 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19

Shearing v. Iolab Corp.,
975 F.2d 1541 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Simon v. G.D. Searle & Co.,
816 F.2d 397 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Spalding Sports Worldwide, Inc.,
203 F.3d 800 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 14

Tayler v. Travelers Ins. Co.,
183 F.R.D. 67 (N. D. N. Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Adlman,
134 F.3d 1194 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

United States v. El Paso Co.,
682 F.2d 530 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Gulf Oil Corp.,
760 F.2d 292 (Temp. Emer. Ct. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Nobles,
422 U.S. 225 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Upjohn Co. v. United States,
449 U.S. 383 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Zenith Radio Corp. v. United States,
764 F.2d 1577 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**STATUTES**

Cal.Pub.Util.Code § 451 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C.§ 2021 (c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# INDEX OF EXHIBITS

| **Exhibit** | **Document** |
| --- | --- |
| A | Defendant's List of Documents Withheld by Plaintiff in Categories |
| B | Plaintiff's Privilege Log, dated June 21, 2005 |
| C | Correspondence from Sharon Snyder to Jerry Stouck, dated September 27, 2005 |
| D | Correspondence from Robert Shapiro to Sharon Snyder, dated October 7, 2005 |
| E | Excerpts from the Deposition of Chris Warner, August 3 and 4, 2005 |
| F | Excerpts from the Deposition of Lawrence Pulley, July 27, 2005 |
| G | Excerpts from the Deposition of Larry Womack, September 12, 2005 |
| H | Excerpts from the Deposition of Robert Kapus, September 28, 2005 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 04-0074C, into which has been consolidated No. 04-0075C (Judge Hewitt) |

**DEFENDANT'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND DEPOSITION TESTIMONY IMPROPERLY WITHHELD ON THE BASIS OF PRIVILEGE**

Pursuant to Rule 37 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully moves to compel the production of documents and deposition testimony improperly withheld by plaintiff, Pacific Gas & Electric ("PG&E") on the basis of the attorney-client privilege and the work product doctrine.

**BACKGROUND**

PG&E provided to the Government a 231 page privilege log containing 901 documents that it had either withheld completely or redacted in part. Since that submission on June 21, 2005, PG&E has "clawed back" many additional documents but has not yet provided a privilege log explaining the basis for those additional assertions of privilege.[1] PG&E has taken an overly expansive view of the attorney-client privilege and work-product doctrine and has withheld many documents improperly.

[1] PG&E counsel indicated in correspondence dated October 7, 2005, that it would provide a privilege log to the Government for the documents that have been "clawed back" by October 14, 2005. See Exhibit D.

The Government seeks to compel the production of over three hundred documents identified within the privilege log attached to this motion as Exhibit B.[2] The documents in question fall into the following six categories: (1) documents related to public regulatory proceedings, including, but not limited to, PG&E's rate proceedings before the California Public Utilities Commission ("CPUC"), proceedings before the California Coastal Commission ("CCC"), and licensing proceedings before the Nuclear Regulatory Commission ("NRC"); (2) memoranda prepared for the Board of Directors which contain business and regulatory information related to the public regulatory proceedings; (3) memoranda, correspondence, and reports drafted by non-lawyer PG&E employees sent to non-lawyer PG&E employees which happen to cc PG&E lawyers, among others; (4) memoranda, correspondence, and reports drafted by non-lawyer PG&E employees sent to non-lawyer PG&E employees, as well as counsel, which in the description indicates that the document was "provided at request of counsel";

(5) documents that purport to be attorney-client protected but contain no author or recipient; and (6) documents sent to regulatory entities. In addition, PG&E counsel improperly instructed its deponents not to answer questions regarding its damages claim and whether the deponent had discussion with PG&E's experts, during their depositions.

PG&E has withheld these documents and testimony on the basis of attorney-client privilege and work product doctrine. However, as discussed below, PG&E has failed to meet its burden of establishing the applicability of the protection. Therefore, the Court should order the

---

[2] Attached as Exhibit A is a list, by category, of the document numbers that the Government asserts have been improperly withheld. Attached as Exhibit B is a complete copy of plaintiff's privilege log.

immediate production of the documents and testimony.

## DISCUSSION

### I. THE GOVERNMENT HAS SATISFIED ITS MEET AND CONFER REQUIREMENT

RCFC 37(a)(2)(A) provides that the party moving to compel the production of documents must certify that it "has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." RCFC 37(a)(2)(A). The Government has satisfied this requirement. PG&E has withheld the production of over nine hundred documents upon the basis of privilege. The Government has attempted in good faith to secure the production of many of these documents by requesting that PG&E revise its privilege log and produce documents improperly withheld on the basis of privilege.

On September 27, 2005, the Government sent a letter to PG&E objecting to the designation of many of the documents as privileged or objecting to the inadequate description of documents in their privilege logs. Exhibit C. On October 7, 2005, PG&E responded and suggested that four categories of documents challenged by the Government were indeed protected either on the basis of work product doctrine or attorney-client privilege. Exhibit D. Specifically, PG&E argued that those documents prepared for rate proceedings were somehow also prepared in anticipation of litigation, and, therefore, protected.[3] PG&E further stated that documents prepared for the Board of Directors were also prepared prior to and in anticipation of

---

[3] For example, several descriptions on the privilege log state that the documents were prepared for the “Diablo Canyon General Rate Case Regulatory Proceeding,” (no. 9), or “General Rate Case Filing,” (no. 10).

litigation, again arguing that the Government's view of "litigation" was too narrow. PG&E stated that it would revise its privilege log to improve on the description of some of the documents to and from PG&E employees. Finally, PG&E explained that the Nuclear Utility Group was more properly called the Nuclear Utility Joint Privilege Group. PG&E asserts that this group shares a common interest in obtaining and sharing legal advice, and, therefore, those documents are protected.[4] PG&E did not address the documents on its privilege log that show no author or recipient; those documents that are to and from non-lawyer PG&E employees which may be cc'd to counsel; and those documents that were produced to third parties, primarily to regulatory agencies. PG&E states in its correspondence that it will prepare a revised privilege log by October 19, 2005. While a revised privilege log may address a few of our concerns, PG&E has made clear that it will not produce documents related to regulatory proceedings, which represent the majority of the documents withheld. Thus, the Government files this motion. PG&E's continuing assertion of privilege lacks merit with respect to the hundreds of documents enumerated in Exhibit A.

As explained below, PG&E has failed to establish the applicability of attorney-client privilege or the work product doctrine with respect to the other documents enumerated in Exhibit A. Indeed, the description of these documents in PG&E's privilege log does not constitute *prima facie* grounds for invoking a claim of privilege. Therefore, the Government respectfully requests the Court to order the production of these documents immediately.

---

[4] After reviewing the October 7, 2005 correspondence from plaintiff, the Government has decided to forego its privilege challenge to the documents authored by Jay Silberg, attorney at Pillsbury, Winthorp, Shaw, Pittman LLP, and sent to the Nuclear Utility Group, based on representations made by PG&E counsel that the group has a common interest and shares legal advice, which is protected by the attorney-client privilege.

## II. PG&E'S ASSERTION OF WORK PRODUCT PRIVILEGE FAILS BECAUSE THE DOCUMENTS AT ISSUE WERE NOT CREATED IN ANTICIPATION OF LITIGATION

### A. The Work Product Privilege Is Applicable Only If The Materials Sought To Be Protected From Disclosure Were "Primarily Motivated" By Litigation

PG&E has improperly asserted work product privilege over more than two hundred documents that were prepared for presentation before one of several regulatory agencies that are charged with overseeing the operations at PG&E – the CPUC, the NRC and the CCC.[5]

The work product doctrine, first recognized by the Supreme Court in Hickman v. Taylor, 329 U.S. 495 (1947), provides "a qualified privilege for certain materials prepared by an attorney acting for his client in anticipation of litigation." United States v. Nobles, 422 U.S. 225, 237-38 (1975) (internal quotations and citations omitted). Its purpose is to prevent the disclosure of an attorney's mental impressions and thought processes to an opposing party. Carter v. Gibbs, 909 F.2d 1450, 1451 (Fed. Cir. 1990). To this end, the privilege protects the attorney's "thought processes and legal recommendations." Genentech, Inc. v. U.S. Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997).

However, the work product privilege "is not absolute." Nobles, 422 U.S. at 239-40. It may be waived through testimonial use of work product material by the party asserting the

---

[5] PG&E has asserted work product privilege over the following documents: Document Nos. 10-4, 76-81, 83, 86, 88-9, 92-114, 134-56, 158-93, 195-239, 240-41, 243-46, 254-56, 258, 260-86, 289, 291-97, 588-591, 593, 607-10, 612, 620, 685-86, 692, 696, 701, 706-10, 712-14, 761-774. See attached privilege log, Exhibit B.

privilege, id., or through inadvertent disclosure of material to an opposing party in litigation, Genentech, 122 F.3d at 1415-18. Moreover, work product material is discoverable "upon a showing that the party seeking discovery has substantial need of the materials . . . [and] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." RCFC 26(b)(3). Furthermore, "[d]ocuments created for business reasons which contain neither a request for legal advice nor rendition of legal advice, or were not intended to assisting prosecution or defense of a lawsuit, are not protected from discovery by the attorney-client or the work product doctrine." Gutter v. E.I. DuPont de Nemours and Co., 1998 WL 2017926 at * 3 (S.D. Fla. May 18, 1998), citing In re Baimco Sec. Litig., 148 F.R.D. 91 (S.D.N.Y. 1993). The work product doctrine does not protect "materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation." See United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982) (quoting Advisory Committee's Explanatory Statement Concerning Amendments of the Discovery Rules, 48 F.R.D. 487, 501 (1969, 1970); Tayler v. Travelers Ins. Co., 183 F.R.D. 67, 69-70 (N.D. NY. 1998) (no work product protection for documents prepared in ordinary course of business); United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998) (there is no work product privilege for "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation."); Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987) ("even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.") (citations omitted).

The central inquiry in determining whether the work product doctrine may be invoked is

"whether the materials sought to be protected from disclosure were in fact prepared in anticipation of litigation." Binks Mfg. Co. v. Nat'l Presto Indus., Inc., 709 F.2d 1109, 1118 (7th Cir. 1983). "If the primary motivating purpose behind the creation of the document is not to assist in pending or impending litigation, then a finding that the document enjoys work product immunity is not mandated." Cabot v. United States, 35 Fed. Cl. 442, 445 (1996) (quoting United States v. Gulf Oil Corp., 760 F.2d 292, 296 (Temp. Emer. Ct. App. 1985); see also Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 485 (2000). "[I]f a party or its attorney prepares a document in the ordinary course of business, it will not be protected even if the party is aware that the document may also be useful in the event of litigation." Energy Capital, 45 Fed. Cl. at 485 (quoting Occidental Chemical v. OHM Remediation Services, 175 F.R.D. 431, 435 (W.D.N.Y. 1997)).

PG&E argues that the United States Court of Appeals for the Second Circuit rejected the stricter formulation of "in anticipation of litigation." See Correspondence, Exhibit D. Under the Second Circuit's approach, a document is prepared "because of" the prospect of litigation if it would not have been prepared "but for" the anticipated litigation. Adlman, 134 F.3d at 1204. This standard permits invocation of work product privilege more freely than that adopted by the United States Courts of Appeal for the Fifth, Seventh, and Eighth Circuits which require that "the primary motivating purpose" behind the creation of the document be to aid in possible future litigation. Binks Mfg. Co., 709 F.2d at 1119. Significantly, this Court has rejected the language put forth by plaintiff and adopted "the primary motivating purpose" standard to analyze whether a document was prepared in anticipation of litigation. See Energy Capital, 45 Fed. Cl. at 485; Cabot, 35 Fed. Cl. at 445.

A large number of documents identified on PG&Es privilege log as protected by work product, in fact over two hundred, are documents that were prepared for regulatory proceedings. Those proceedings include rate proceedings before the CPUC, licensing proceedings before the NRC, and proceedings before the CCC. Because PG&E is a highly regulated industry, it frequently must appear in regulatory proceedings, for example to set rates before the CPUC and to propose license amendments to its operating licenses before the NRC. PG&E's preparation for these proceedings is necessarily part of the ordinary course of its business. The "primary motivating purpose" behind the creation of the documents for these proceedings is not to assist in pending or impending litigation but rather to further PG&Es business, whether it be setting rates at the CPUC or licensing high-density racks for its Diablo Canyon facility at NRC.[6] See Cabot, 35 Fed. Cl. at 445. Because the preparation of these documents was clearly necessary based on public requirements, they are not protected by the work product doctrine and must be produced. PG&E asserted that there is always, or nearly always, litigation associated with proceedings before the CPUC. However, PG&E cannot meet the standard used by this Court in

---

[6] Many of the documents withheld on work product grounds are decommissioning studies or relate to decommissioning proceedings. See, e.g., Document Nos. 103-09, 134-56, 160-66, Ex. B. When asked to define decommissioning study, PG&E counsel, Mr. Warner, testified during his deposition that there were two aspects:

> [O]ne is a periodic update on decommissioning costs and sufficiency for the NRC as part of the licenses conditions; and the second is a rate-making concept which is a decommissioning study submitted to the California Public Utilities Commission in support of the current rates we charge to fund the decommissioning funds for both Humboldt and Diablo Canyon.

Warner Dep. Vol. 1 at 179:12-19, Ex. E. He explained that decommissioning studies were ultimately used in PG&E's rate filings. Id. at 181.

determining whether a document has been prepared in anticipation of litigation. PG&E must demonstrate that the "primary motivating factor" in preparing the challenged documents for submission to the CPUC, the NRC, and the CCC is litigation, and not some regulatory purpose, which it cannot do.

Of the two hundred documents that PG&E seeks to withhold on the basis of work product doctrine, many of those were created specifically in response to state or Federal regulatory requirements. See, e.g., Document Nos. 9-13, 92-102, 260-86, 761-774 (CPUC general rate case); 134-156, 158-193, (decommissioning cost triennial proceeding); 14, 196-233, 289-90 (NRC licensing amendment proceedings); 195-96 and 240-41 (permit application for ISFSI before the CCC) None of those documents are protected by the work product doctrine because each of them was created in the ordinary course of business in response to specific regulatory requirements. See, e.g., 42 U.S.C.§ 2021 (c)(1) (NRC regulates construction and operation of production or utilization facility); Cal.Pub.Util.Code § 451 (Just and reasonable charges, services and rules).

Even if an adversarial proceeding followed the rate or licensing proceedings, the "ultimate or primary objective" of the PG&E submissions to the CPUC, the California Coastal Commission and the NRC was to set rates, or to license its operations, or to deal with its coastal property. The primary objective was not anticipated litigation. The submissions of all of these documents to state and Federal regulatory entities was pursuant to "public requirements" in the ordinary course of PG&Es business. All such documents should be produced.

### B. Documents Prepared By Experts For Regulatory Proceedings Enjoy No Work Product Protection

PG&E has withheld many documents prepared by experts and consultants for its rate

proceedings and other regulatory hearings. For example, TLG Engineering assisted PG&E with its filings before the CPUC. See Document Nos. 9-11; 13; 143; 150 - 151, 303, Ex. B. PG&E has mistakenly identified those draft documents as protected by both work product and attorney-client privilege. However, those documents are provided no such protection.

There is no attorney-client or work product protection afforded draft expert reports or information provided to experts from PG&E attorneys. Energy Capital, 45 Fed. Cl. at 494; Abruzzo v. United States, 21 Cl. Ct. 351, 357 (Ct. Cl. 1990); Bernard v. Secretary of Health and Human Servs., 1996 WL 499018 at *14 (Fed. Cl. 1996). Indeed, this Court has adopted a bright line rule that provides for the discovery of "[c]ore work product information provided to a testifying witness." Oneida, Ltd. v. United States, 43 Fed. Cl. 611, 620 (1999).

In this instance, when testifying experts are assisting PG&E in its preparation for regulatory proceedings before the CPUC, or other regulatory agencies, any materials that they prepare is not protected and should be produced.

## III. PG&E'S ASSERTION OF ATTORNEY-CLIENT PRIVILEGE SHOULD FAIL BECAUSE ITS PRIVILEGE LOG DOES NOT IDENTIFY THE RECIPIENTS OF MANY DOCUMENTS AND FAILS TO ESTABLISH THAT DOCUMENTS PREPARED BY ATTORNEYS CONTAIN CONFIDENTIAL CLIENT COMMUNICATIONS

PG&E has asserted attorney-client privilege over many of the documents identified on its privilege log. However, PG&E's assertion of attorney-client privilege should fail because PG&Es privilege log does not establish a *prima facie* case for assertion of attorney-client privilege over many of these documents. For example, many of the documents are from non-lawyer PG&E employees to non-lawyer PG&E employees, other documents are from non-lawyer PG&E employees to non-lawyer PG&E employees and indicate in the cc column that

those particular documents were provided to counsel at counsel's request, still many other documents have no indication of either an author, or a recipient.

### A. The Attorney-Client Privilege Protects Only Confidential Client Communications

The attorney-client privilege "protects communications made in confidence by clients to their lawyers for the purpose of obtaining legal advice" or services. American Standard, Inc. v. Pfizer, Inc., 828 F.2d 734, 745 (Fed. Cir. 1987). Its purpose is to "encourage full and frank communication between attorneys and their clients" by assuring clients that their disclosures to counsel will be held in confidence. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). The attorney-client privilege protects only the disclosure of communications, not the underlying facts by those who communicated them to their attorney. Id. at 395-96. Further, the privilege belongs to the client, not to the attorney. Pfizer, 828 F.2d at 745.

The essential elements of the attorney-client privilege are, as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002).

The attorney-client privilege is to be narrowly construed to further the investigation of truth and the enforcement of testimonial duty. Cavallaro, 284 F.3d at 246. Therefore, in determining the applicability of the attorney-client privilege, "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services." In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 805 (Fed. Cir. 2000) (holding that an invention record "constitutes a privileged communication, as long as it is

provided to an attorney for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding.") (internal quotations and citations omitted). This Court has been careful to exclude from attorney-client privilege protection communications from a lawyer when he acts as a business or economic advisor. Energy Capital Corp., 45 Fed. Cl. at 485. Furthermore, "[a]n attorney's work in drafting 'by-laws, promissory notes, security agreements, incorporation documents, partnership documents, and tax information' concerns business - not legal – matters and therefore is not privileged." Id. (quoting Montgomery v. Leftwich, Moore & Douglas, 161 F.R.D. 224, 227 (D.D.C. 1995). Thus, communications from attorneys to clients are not automatically protected, "and when documents or conversations are created pursuant to business matters, they must be disclosed." Cabot, 35 Fed.Cl. at 445. As we will demonstrate, many of the documents on plaintiff's privilege log relate to business matters, and not legal opinion or legal services, and, thus, should not be protected by the attorney-client privilege.

**B. As A Matter Of Law, PG&E's Assertion Of Attorney-Client Privilege Fails With Respect To Documents Whose Recipients Are Unidentified In Plaintiffs' Privilege Logs**

PG&E has asserted attorney-client privilege over document Nos. 37, 41, 64, 76, 77, 78, 79, 80, 81, 87, 88, 89, 115, 120, 576-80, 669, 670, 671, 672, 696, 701, Exhibit B. Neither the author nor the recipient of these documents has been identified. Instead, plaintiff characterizes the authors and recipients of these documents as "NONE". Id. PG&E's failure to identify the recipients of these documents amounts to a failure to establish a *prima facie* case for applicability of the attorney-client privilege.

As the Federal Circuit held in Pfizer, the attorney-client privilege "is that of the client, not that of the attorney." Pfizer, 828 F.2d at 745. Clearly, a communication made by an

unknown person to an unknown person is not subject to the attorney-client privilege because the privilege belongs only to the *client* and protects the *client's* disclosure of confidential communications to his attorney. See id. at 745-46; In re Spalding, 203 F.3d at 805-06. The privilege log fails to establish any privilege with respect to these documents, and, as a matter of law, any assertion of attorney-client privilege over these documents fails. See Pfizer, 828 F.2d at 745-46. The Court should thus reject attorney-client privilege claims for all documents listed on Exhibit B for which PG&E has failed to identify the author and recipient, and order the documents produced immediately.

### C. Documents Generated By, And Distributed To, Non-Attorneys Are Not Subject To The Attorney-Client Privilege

PG&E has also asserted attorney-client privilege over documents that were both generated by, and distributed to, non-attorneys. These include document Nos. 50, 51, 57 on Exhibit B. In addition, another group of documents is included on PG&Es privilege log apparently because the documents were "provided at request of counsel." See, e.g., Document Nos.62-3, 67-9, 74, Exhibit B. These documents were sent from non-lawyer employees to other non-lawyer employees. The attorney-client privilege only protects communications made by a client to his attorney and communications made by an attorney to his client if they contained confidential disclosures of the client. Pfizer, 828 F.2d at 745-46. Clearly, because the privilege protects communications seeking legal advice, the attorney-client privilege does not extend to communications made by a non-lawyer to another non-lawyer that do not contain attorney-client confidential communications. See id. Copying a document to counsel, at his request, does not

protect that document from disclosure.[7] It would appear instead to demonstrate that the document was not created to seek legal advice but rather in the ordinary course of business. Therefore, the Court should order the production of these documents.

**D. Communications To The Board of Directors Have Been Improperly Withheld On Attorney-Client And Work Product Grounds**

It is axiomatic that communications by an attorney to his or her client are protected by the attorney-client privilege if they reveal the substance of a confidential client communication. In Pfizer, the Federal Circuit held that because the attorney-client privilege belongs to the client, communications *made by an attorney* to his *client* are protected by the attorney-client privilege if the communications "reveal, directly or indirectly, the substance of a confidential communication by the client." Pfizer, 828 F.2d at 745. Therefore, communications made by an attorney to his client (rather than vice-versa) are privileged only if they reveal *confidential client communications*. Id.; see also In re Spalding, 203 F.3d at 805 (quoting Shearing v. Iolab Corp., 975 F.2d 1541, 1546 (Fed. Cir. 1992) ("The privilege protects a client's confidential communications to an attorney necessary to obtain legal counseling.") (internal quotations and citation omitted)).

It appears that many documents that were sent to PG&E's Board of Directors or other management-level committees, which have been withheld on both attorney-client and work product grounds, have been improperly withheld. These documents do not designate an author

---

[7] Mr. Warner testified that engineering groups at PG&E would cc lawyers on documents that contained technical, business, and economic feasibility information to keep them informed about a project as it moved forward. See Warner Dep., vol. 11 at 228:15-229:2, Ex. E. It appears that many of the documents you have withheld based on attorney-client privilege, fall into this category and have been improperly withheld.

and further all relate to CPUC filings. See Document Nos. 92-101, 193, 290, 333-34, 677-79, 681-83. Thus, while the description of the document indicates legal analysis, there is with many of the documents no indication as to the author of the document. Further, each of the documents was prepared in the context of a CPUC rate proceeding. Thus, these withholdings suffer from the same flaws as those described above.[8] See supra at pps. 4-9. There is no indication that any of these documents should be protected because they reveal confidential client communications or because they are communications that resulted from the client seeking legal advice. Further, because they relate to rate proceedings, or other proceedings before a regulatory agency, they should not be protected by the work-product doctrine because the primary motivating purpose of the document was not litigation.

## IV. DOCUMENTS SENT TO REGULATORY AGENCIES ARE NOT PROTECTED BY ATTORNEY-CLIENT PRIVILEGE OR WORK PRODUCT DOCTRINE

Interestingly, PG&E also withheld documents from production that it actually sent to third parties such as the CPUC and the NRC.[9] See, e.g., Document Nos. 103-109, 114, 177, 195-96, 229, 231-33, 244, 271-75, 296-97, 321, 328, 356, 385, 389, 390, 405, 419-20, 722, Ex. B. In fact, at least 24 documents that were sent to the CPUC and at least six documents that were sent to the NRC were withheld from the Government, asserting attorney-client or work product as the

[8] In addition, Mr. Warner testified that he wore two hats in his position as counsel for PG&E. In addition to providing legal advice, he also provides business advice. See, e.g., Warner Dep. Vol.11 at 217:15-218:1; 238:3-4, Ex. E. It appears that many of the Board of Directors documents withheld on attorney-client grounds are documents in which Mr. Warner, or other PG&E in-house attorneys, provided business advice relating to regulatory proceedings. See also 114 (document sent to NRC), 177 (document sent to the CPUC).

[9] See, e.g., Document Nos. 103-109, 114, 229, 177, 195-96, 229, 231-33, 244, 271-75, 296-97, 321, 328, 356, 385, 389-90, 405, 419-20, 564-66, 722.

rationale. Id. Counsel for PG&E suggested "over zealous" associates may have improperly identified such documents as protected. However, such "over zealousness" concerns the Government and possibly calls into question the identification of many, if not all, of the documents on plaintiff's privilege log. In any event, these documents produced to regulatory agencies must be produced immediately.

## V. PG&E COUNSEL HAS IMPROPERLY INSTRUCTED WITNESSES NOT TO RESPOND TO QUESTIONS DURING THEIR DEPOSITIONS

In addition to inappropriately withholding documents, PG&E's counsel has also, throughout discovery in this matter, repeatedly prevented the Government from fully deposing many of PG&E employees and former employees by unjustified and disruptive tactics. Counsel have instructed deponents not to answer questions regarding the preparation of the damages claim provided to the Government[10] and whether the deponent had discussions with PG&E's expert witnesses and the substance of those discussions.[11] Such a withholding of relevant information regarding subjects that plaintiff itself has put at issue in this litigation is improper and an inappropriate use of the attorney-client privilege and work product doctrine.

### A. PG&E Has Placed The Damages Claim At Issue In This Litigation, Therefore, It Has Waived Any Attorney-Client Privilege Regarding The Claim

This Circuit has adopted the test set forth in Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash, 1975), to determine if a party has waived the attorney-client or work product privileges in putting the matter subject to the privilege at issue. Afro-Lecon, Inc. v. United States, 820 F.2d

[10] See, e.g., Pulley Dep. at 86-90, Ex. F; Womack Dep. at 14-26, 159-162, Ex. G.

[11] See, e.g., Pulley Dep. at 88-90, Ex. F; Womack Dep. at 38:7-19, Ex. G.

1198, 1204-05 (Fed. Cir. 1987). The party has waived the attorney-client privilege when:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

Zenith Radio Corp. v. United States, 764 F.2d 1577, 1579 (Fed. Cir. 1985) (quoting Hearn, 68 F.R.D. at 581). Several examples of counsel's instructions not to answer are instructive:

> Q: [to Larry Womack] Did you have any involvement in determining which costs PG&E incurred associated with the vent stack removal were caused or incremental or caused by or incremental to the Department of Energy's breach of the Standard Contract?
>
> Mr. Stouck: Yeah, that's work product. That calls for work product, and I'll object and instruct him not to answer.

Womack Dep. at 23:16 - 24:24, Ex. G.

Another example is, as follows:

> Q: [to Lawrence Pulley] Now, did you have any involvement in the preparation of PG&E's damages claim against the government in this case?
>
> Mr. Shapiro: Going to instruct Mr. Pulley not to answer that question. Calls for information protected by the work product doctrine.

Pulley Dep. at 86: 3-8, Ex. F.

Analyzing these assertions of privilege using the analysis set forth in Hearn, it is clear that they fall within the first two factors articulated in that case. The key inquiry is whether application of the work product doctrine would place a hardship on the development of our case – has it denied the Government from discovering information vital to the defense of the case. Indeed, counsel's instructions not to answer questions regarding the damages claim does deny us information key to the defense here. It appears that counsel is attempting to cloak information

about the damages calculations that may lead to relevant information about the basis for the costs, including how the costs were calculated, who had input into the process of determining what categories of costs were recoverable. These inquiries are necessary to a full understanding of PG&E's damages claim. Without the information, the Government is not able to adequately defend against costs that may be arguably specious or at least questionable. The Court should order plaintiff to produce the witnesses so that they can be questioned thoroughly about the damages claim.

**B. Communications Between PG&E Employees and Experts Are Not Protected By Either The Attorney-Client or Work Product Privileges**

Counsel has also instructed deponents not to answer questions regarding communications with PG&E's experts. See Exhibit G. Such instructions are inappropriate and incorrect. For example:

Q: Do you know who prepared Exhibit 2?

A: [Robert Kapus] Charles River.

Q: Who is Mr. River?

A: It is a company. Charles River Associates, I believe.

Q: And who are they?

A: An independent company that's providing these kinds of documents.

. . . . . .

Q: Have you spoken with folks at Charles River Associates?

A: Yes.

Q: How many times?

A: Often, I mean, 20, 30 times.

Q: What are the – I don't want to know 20, 30 .... conversations, obviously, but what in general do you all talk about?

Mr. Shapiro: I am going to instruct Mr. Kapus not to answer that on the work product privilege.

Kapus Dep. at 110:7-112:6, Ex. H.

As we explained supra, no attorney-client or work product privilege attaches to communications with testifying experts. Energy Capital, 45 Fed. Cl. at 494; Abruzzo, 21 Cl. Ct. at 357; Bernard, 1996 WL 499018 at *14. Thus, if a deponent had discussions with PG&E's testifying experts, those communications are both relevant, and discoverable. RCFC 26 (2)(B). PG&E may argue that identities of its experts is not due until the expert reports are due in early November. However, we did not inquire as to the identity of the experts, we merely asked if the deponents had communications with the expert. See Exhibit G. The fact of any communication and the substance of the communication is fully discoverable. Oneida, 43 Fed. Cl. at 620 (bright line rule that provides for the discovery of "[c]ore work product information provided to a testifying witness").

The Government respectfully requests that it be permitted to re-open the depositions of Messrs. Pulley, Womack and Kapus, who clearly had direct communications regarding damages issues with PG&Es experts. Such a remedy is clearly appropriate as a result of counsel's improper instructions not to answer questions regarding PG&E's experts.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
(by Todd Hughes)
HAROLD D. LESTER, JR.
Assistant Director

s/ John C. Ekman
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT DAMELIN
SHARON A. SNYDER
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

October 26, 2005

CERTIFICATE OF FILING

I hereby certify that on October 26, 2005, a copy of the foregoing "DEFENDANT'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND DEPOSITION TESTIMONY IMPROPERLY WITHHELD ON THE BASIS OF PRIVILEGE" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Sharon A. Snyder