# EXHIBIT 1

# UNITED STATES COURT OF FEDERAL CLAIMS

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Plaintiff,**

**v.**

**UNITED STATES,**

**Defendant.**

**SUBPOENA**

**No. 04-074C, into which has been consolidated 04-075C (Judge Hewitt)**

To: **Frank Bongrazio, CFO**
**HOLTEC INTERNATIONAL**
**555 Lincoln Drive West**
**Marlton, NJ 08503**

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above case

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| **Offices of the U.S. Attorney**<br>**615 Chestnut Street, Suite 1250**<br>**Philadelphia, PA 19106** | **October 21, 2005, at 9:30 a.m.** |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**See Attachment A**

| PLACE | DATE AND TIME: |
|---|---|
| **Offices of the U.S. Attorney**<br>**615 Chestnut Street, Suite 1250**<br>**Philadelphia, PA 19106** | **Subject to RCFC 34 or to mutual agreement** |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the dated and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. U.S. Court of Federal Claims rule (RUSCFC) 30(b)(6). **See Attachment B**

| ISSUING OFFICER SIGNATURE AND TITLE (Indicate if Attorney for Plaintiff or Defendant) | DATE |
|---|---|
| **Attorney for the Defendant** [signature] | **October 12, 2005** |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER:

[signature]

**Scott R. Damelin, USDOJ, Civil Division, 1100 L Street N.W. Room 12020, Washington, D.C. 20005, (202) 305-2312**

NOTE: If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of deposition is more than 100 miles from the place where the deponent resides, is employed or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the Court requiring his/her appearance, notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law.

## PROOF OF SERVICE

Date 10-14-05 Place Lincoln Drive, West, Marlton, NJ 08503

SERVED Holtec International

SERVED ON (Print Name) Mike Johnson

MANNER OF SERVICE Authorized to Accept

SERVED BY (Print Name) Howard Stills

TITLE Private Process Server

☐ Fees tendered for one day's attendance and mileage allowed by law.

(Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 10-18-05
Date

Howard Stills
Signature of Server

CAPITOL PROCESS SERVICES
1827 18TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 667-0050
Address of Server

RUSCFC 45, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph of (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iii) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party,

the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**ATTACHMENT A**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-0074C, into which has been |
| v. | ) | consolidated No. 04-0075C |
| | ) | (Judge Hewitt) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant, the United States, requests that Holtec International, Inc. ("Holtec"), produce the following requested documents for inspection and copying at the offices of the United States Attorney, as described in the attached subpoena:

I. DEFINITIONS AND INSTRUCTIONS

A. The following definitions apply in responding to these document production requests, and to the statement of subject matter set forth in Attachment B:

1. The term "document" means any document in the possession, custody, or control of Holtec or its counsel, or any document known to Holtec or its counsel, and is defined under Rule 34 of the Rules of the United States Court of Federal Claims ("RCFC") to include "writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, . . . through data detection devices into reasonably usable form." That definition is applicable in complying with this subpoena, and should be construed in its broadest sense possible, and shall include any and all originals or duplicates of materials containing letters, words, numbers, or images, or their

equivalent, set down by handwriting, typewriting, printing, photostating, magnetic impulse, mechanical or electronic recording, or other form of data compilation. Federal Rule of Evidence 1001. The definition of "document" applicable to this subpoena shall include all writings, tapes, recordings, graphic representations, drawings or printed materials of any kind whatsoever, specifically including electronic media of any kind, however produced or reproduced, and, for the purpose of illustration, is meant to include the following items: correspondence; letters; electronic messages or mail; any form of non-verbal communications (including the internal and external communications of persons employed by or acting on behalf of a particular entity, such as intra- or inter-departmental communications, or intra- or inter-company communications); notes (whether of visits, meetings, telephone calls, or otherwise); memoranda (whether of visits, meetings, telephone calls, or otherwise); appointment calendars; schedules; telegrams; telexes; facsimiles; electronic mail; files; file jackets; press releases; notices; circulars; brochures; pamphlets; guidelines; manuals; instructions; expressions or statements of policy; summaries or abstracts; diaries; notebooks; minutes or other records of meetings or conferences; lists of persons attending meetings or conferences; computer printouts or information stored in a computer-readable form; tests; reports; analyses; studies; working papers; forecasts; statistical statements; testimony; speeches; worksheets; invoices; bills; commercial or negotiable instruments; accounts; written estimates; contracts; agreements of any kind; shipping or receiving documents; purchase orders; change orders; proposed changes; schedules; plans; charts; diagrams; drawings; graphs; designs; blueprints; tables; conclusions, opinions or reports of consultants or experts, or notes made in or for the preparation of any such conclusions, opinions or reports; opinions of counsel; reports or summaries of interviews, investigations, or

negotiations, or notes made in or for the preparation of any such reports or summaries; digital images and graphics; digital or analog audio tapes and files; and digital or analog video tapes and files; photographs; books; articles; any drafts of or extracts from any of the foregoing; and any other tangible things containing information. (The definition of "document" also shall include each copy that is not identical to the original or to any other produced copy, and any preliminary drafts of any documents.)

2. "Holtec" means Holtec International, Inc., or any other affiliated entity involved in any contract between Holtec and Pacific Gas & Electric Company, including all present and past employees, agents, partners, and/or representatives of Holtec, including counsel, who could reasonably be expected to have personal knowledge that would affect the completeness and accuracy of responses made to this request, as well as, where applicable in context, its parent, subsidiary, or other related or affiliated organizations, and its officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act upon Holtec's behalf.

3. "Official," "director," "officer," "employee," "representative," "agency," or "agent" shall include any person, natural, corporate, or otherwise, including any attorney, serving or acting in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves or acts in such capacity.

4. "Relating to" means containing, constituting, concerning, discussing, describing, identifying, referring to, supporting, explaining, contradicting, and/or pertaining to the subject specified.

5. "Reracking" means the process by which spent fuel storage racks are

installed in or added to the spent fuel pool at a nuclear power generation facility as a means of increasing spent nuclear fuel storage capacity. The term "reracking" should be interpreted to include any partial or total reracking efforts and any additions of racks to a spent fuel pool.

B. To bring within the scope of these discovery requests all information and documents that might otherwise be construed to be outside their scope:

1. The singular of each word shall be construed to include its plural and vice versa, and the root word and all forms thereof (*i.e.*, participles and infinitives, etc.) shall be construed to include each other;

2. "And" as well as "or" shall be construed both conjunctively as well as disjunctively;

3. "Each" shall be construed to include "all," and vice versa;

4. "Any" shall be construed to include "all," and vice versa;

5. The present tense shall be construed to include the past tense, and vice versa;

6. "Knowledge," "information," "possession," "custody," and "control" possessed or exercised by a person shall be construed to include "knowledge," "information," "possession," "custody," and "control" possessed or exercised by such person's agents, representatives, and attorneys;

7. "Include" and "including" shall have their ordinary meaning and shall mean "including, but not limited to;"

8. In general, all terms used herein shall be construed in an ordinary, common-sense manner, and not in a technical, strained, overly-literal, or otherwise restrictive

manner.

9. "Diablo Canyon" means the Diablo Canyon Power Plant.

10. "Humboldt Bay" means the Humboldt Bay Power Plant.

C. In responding to these document requests, please furnish all documents, however obtained, including hearsay, that are within your possession, custody, and/or control, including documents in the possession, custody, or control of, yourself, or any of your officials, directors, officers, employees, agents, investigators, consultants, or attorneys.

D. If you cannot respond to the following document production requests in full after exercising due diligence to secure the documents, so state, and respond to the extent possible. Explain in detail the reasons for your inability to fully respond, and identify whatever responsive documents you may have.

E. Provide separate responses for each document production request.

F. To the extent that you consider any of the following discovery requests, or their subparts, to be objectionable, answer that portion of the request, or subpart, to which you have no objection and separately state the portion of the document request, or subpart, to which you object and state with specificity all grounds for your objection. If you object to a request upon the ground that to provide the requested documents would constitute an undue burden, provide all requested documents that can be supplied without undertaking an undue burden. For those portions of a request to which you object or otherwise decline to answer, state the reason for such objection or declination.

G. Each request herein constitutes a request that each document referred to, or a true, complete, and legible copy thereof, be produced, during business hours and upon appropriate

notice, to defendant's undersigned counsel, at the offices of the United States' Attorney, 615 Chestnut Street, Suite 1250, Philadelphia, PA, 19106, within the time provided in RCFC 34, or at such other time or place as may be agreed upon by Holtec and the United States, for the purpose of inspection and copying in accordance with RCFC 34. Each document request seeks documents that are in any way in your possession, custody, or control, including the possession, custody, or control of your attorneys, or to which any of your attorneys have, or have had, access. If a requested document was, but no longer is, in your possession, custody, or control, identify the document and identify the present location and custodian of the document, or if such information is unavailable, identify the last known location and custodian of the document, and explain the circumstances under which the document left your possession, custody, or control.

DOCUMENT REQUESTS

REQUEST NO. 1:

All documents relating to the evaluation of the spent fuel pools and/or spent fuel storage racks at Diablo Canyon from 1990 to the present including, but not limited to, all work performed pursuant to Holtec Contract No. Z78-0059-95.

REQUEST NO. 2:

All documents relating to the design, licensing, procurement, fabrication, installation, testing, and operation of a spent fuel storage system by PG&E for use at Humboldt Bay.

REQUEST NO. 3:

All documents relating to work performed pursuant to Holtec Contract No. 3500120394.

<u>REQUEST NO. 4</u>:

All documents relating to the design, licensing, procurement, fabrication, installation, testing, and operation of a spent fuel storage system by PG&E for use at Diablo Canyon.

<u>REQUEST NO. 5</u>:

All documents relating to work performed pursuant to Holtec Contract No. 3100813919.

**ATTACHMENT B**

Pursuant to Rule 30(b)(6) of the Rules of the Court of Federal Claims, defendant, the United States, will take the deposition of Holtec International, Inc. on the date and beginning at the time listed, regarding the following matters:

1. The design, licensing, procurement, fabrication, installation, testing, and operation of a spent fuel storage system by or upon behalf of PG&E from 1990 to the present time for use at Diablo Canyon.
2. The design, licensing, procurement, fabrication, installation, testing, and operation of a spent fuel storage system by or upon behalf of PG&E from 1990 to the present time for use at Humboldt Bay.
3. Analyses, studies and assessments of the possibility of reracking of the spent fuel pools at Diablo Canyon.

The deposition will take place at the offices of the United States' Attorney, 615 Chestnut Street, Suite 1250, Philadelphia, PA, 19106, at 9:30 a.m. on Friday, October 21, 2005. Rule 30(b)(6) of the Rules of the United States Court of Federal Claims requires the deponent to designate one or more officers, directors, managing agents, or other persons to testify upon its behalf as to matters known or reasonably available to the deponent. The deponent may set forth, for each person designated, the matters upon which the person will testify.

# EXHIBIT 2

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | NO. 04-074C, into which has been consolidated 04-075C<br>(Judge Hewitt) |

**OBJECTIONS AND RESPONSES OF NON-PARTY, HOLTEC INTERNATIONAL, INC., TO SUBPOENA SERVED BY THE DEFENDANT, THE UNITED STATES OF AMERICA**

Holtec International, Inc. (**"Holtec"**), hereby serves its Objection and Responses to the Subpoena dated October 12, 2005 (**"Subpoena"**) served by the Defendant, The United States of America, in connection with the above-captioned matter.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1. Objection is hereby made to the definition of "document" since it is overly broad and unduly burdensome. Also, the definition of "document" includes a request for opinions of counsel and therefore requests documents which are subject to the attorney-client privilege or documents which are subject to the attorney work-product doctrine.

2. Objection is made to the definition of "Holtec" since it is overly broad and includes counsel for Holtec.

**GENERAL OBJECTIONS**

1. As a condition of responding to the Subpoena, both with the respect to the document requests and deposition, Holtec intends to seek costs for responding to the Subpoena.

See Tutor-Saliba Corp. v. United States, 32 Fed. Cl. 609, 610 (Ct. Cl. 1995); Compaq Computer Corp. v. Packard Bell Electronics, 163 F.R.D. 329 (N.D. Cal. 1995) (court ordered that the non-party was entitled to be compensated at a reasonable hourly rate for its employees, including in-house time for searching for, reviewing and producing documents, and in sitting for the deposition).

2. Holtec objects to the Subpoena since the Defendant has not allowed Holtec sufficient time to review and respond to the Subpoena. In particular, the Subpoena is dated October 12, 2005, was not served upon Holtec until October 14, 2005 and requires Holtec to search for and produce voluminous documents within seven (7) days of service and also requires Holtec to produce a corporate designee within seven days of the date of service. Holtec's corporate designee for the Subpoena, Mr. Eric Lewis, is out of state on the date scheduled in the Subpoena for the deposition.

3. Holtec objects to the Defendant's document requests attached as Attachment "A" to the Subpoena (the "**Requests**"), to the extent the Requests are overly broad and are not reasonably calculated to lead to the production of relevant or admissible evidence.

4. Holtec objects to the Requests to the extent that an attempt to comply with the Requests would be unduly burdensome, expensive and disruptive to Holtec's ongoing business operations.

5. Holtec objects to the Requests upon the grounds that, to the extent that the documents it seeks exist, and are relevant to a litigation issue, the Defendant should first be required to seek the documents from the Plaintiff. The Plaintiff should be the first resort for the documents which the Defendant seeks. See Haworth, Inc. v. Herman Miller, 998 F. 2d 975 978 (Fed. Cir. 1998).



PAGE 3/7 * RCVD AT 10/24/2005 1:02:32 PM [Eastern Daylight Time] * SVR:WDC-PS1/4 * DNIS:5 * CSID: * DURATION (mm-ss):02-12

6. Consistent with objection number 5, Holtec hereby requests that the Defendant provide counsel for Holtec with a list of the documents produced by the Plaintiff to the Defendant or which are otherwise in the possession of the Defendant which fall within the scope of the Subpoena to lessen Holtec's burden in searching for the documents requested in the Subpoena and to reduce Holtec's costs in responding to the Subpoena.

7. Holtec objects to the Requests to the extent that they seek confidential and proprietary information regarding Holtec's business practices and methods.

8. Holtec objects to the Requests to the extent they require Holtec to produce documents reflecting internal analysis, designs or evaluations and thus require Holtec to involuntarily act as an expert on behalf of the Defendant.

7. Holtec reserves the right to raise any additional objections to the Requests based on relevance, materiality, burdensomeness or other grounds.



PAGE 4/7 * RCVD AT 10/24/2005 1:02:32 PM [Eastern Daylight Time] * SVR:WDC-PS1/4 * DNIS:5 * CSID: * DURATION (mm-ss):02-12

## OBJECTIONS AND RESPONSES TO THE DOCUMENT REQUESTS

REQUEST NO. 1:

All documents relating to the evaluation of the spent fuel pools and/or spent fuel storage racks at Diablo Canyon from 1990 to the present including, but not limited to, all work performed pursuant to Holtec Contract No. Z78-0059-95.

**Objection and Response:**

**See the General Objections which are incorporated herein by reference. Holtec reserves the right to amend this response once it has sufficient time to review the Subpoena and to determine whether it has documents responsive to the Subpoena which are not subject to its objections.**

REQUEST NO. 2:

All documents relating to the design, licensing, procurement, fabrication, installation, testing, and operation of a spent fuel storage system by PG&E for use at Humboldt Bay.

**Objection and Response:**

**See the General Objections which are incorporated herein by reference. Holtec reserves the right to amend this response once it has sufficient time to review the Subpoena and to determine whether it has documents responsive to the Subpoena which are not subject to its objections.**

REQUEST NO. 3:

All documents relating to work performed pursuant to Holtec Contract No. 3500120394.

**Objection and Response:**

**See the General Objections which are incorporated herein by reference. Holtec reserves the right to amend this response once it has sufficient time to review the Subpoena and to determine whether it has documents responsive to the Subpoena which are not subject to its objections.**

REQUEST NO. 4:

All documents relating to the design, licensing, procurement, fabrication, installation, testing, and operation of a spent fuel storage system by PG&E for use at Diablo Canyon.

**Objection and Response:**

**See the General Objections which are incorporated herein by reference. Holtec reserves the right to amend this response once it has sufficient time to review the Subpoena and to determine whether it has documents responsive to the Subpoena which are not subject to its objections.**

REQUEST NO. 5:

All documents relating to work performed pursuant to Holtec Contract No. 3100813919.

**Objection and Response:**

**See the General Objections which are incorporated herein by reference. Holtec reserves the right to amend this response once it has sufficient time to review the Subpoena and to determine whether it has documents responsive to the Subpoena which are not subject to its objections.**

**OBJECTIONS TO THE NOTICE OF DEPOSITION**
**ATTACHED AS ATTACHMENT B TO THE SUBPOENA**

Holtec incorporated the General Objections and Responses set forth in response to Attachment A to the Subpoena as if more fully set forth at length herein. Without waiving the objections, and without waiving the right to assert appropriate objections at the time of the deposition, Holtec designates Eric Lewis as its corporate designee for the matters listed on Attachment B to the Subpoena.

Respectfully submitted,

DILWORTH PAXSON LLP
Attorneys for Holtec International

Dated: October 19, 2005

By: Francis P. Maneri
Francis P. Maneri, Esquire
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
(215) 575-7000
(215) 575-7200 (fax)

622553_1



PAGE 7/7 * RCVD AT 10/24/2005 1:02:32 PM [Eastern Daylight Time] * SVR:WDC-PS1/4 * DNIS:5 * CSID: * DURATION (mm-ss):02-12

# EXHIBIT 3

# In the United States Court of Federal Claims

No. 98-614C
(Filed August 19, 2005)

***********************************
SOUTHERN NUCLEAR OPERATING *
COMPANY, ALABAMA POWER *
COMPANY, and GEORGIA POWER *
COMPANY, *
Plaintiffs, *
*
v. *
*
THE UNITED STATES, *
Defendant. *
***********************************

**ORDER**

This matter is before the court on defendant's Motion to Compel Third Party Production of Documents Pursuant to Subpoena *Duces Tecum* and nonparty Holtec International's Cross-Motion for Protective Order and to Quash/Modify the Subpoena.

This is one of the several pending SNF cases in which plaintiffs are seeking damages for breach of contract due to the government's failure to commence performance of acceptance, transportation and disposal of SNF pursuant to the Standard Contract between the parties. Plaintiffs' alleged damages include the cost of building dry storage facilities for SNF the government would have accepted, transported and disposed of in the non-breach world – an Independent Spent Fuel Storage Installation ("ISFSI"). One of the possible defenses is that the plaintiffs' mitigation expenses were not reasonable. Indeed, the government states that it is entitled to discovery to explore whether these dry storage facilities were necessary and incremental to DOE's breach. Particularly, the government points out, there are two

pools at plaintiffs' Vogtle plant – one was reracked[1/] and the other was not to the same capacity. Defendant seeks discovery to ascertain if similar racking of the two pools would have resulted in reduced expense.

Apparently towards that end, on April 1, 2005, the government served a subpoena *duces tecum* on nonparty Holtec International ("Holtec") with a RCFC 30(b)(6) deposition notice for a designated corporate representative to testify concerning the documents subpoened. In subsequent discussions between counsel, the government admirably agreed to narrow the terms of the subpoena and postponed the Rule 30(b)(6) deposition pending further discussions and the accommodation of several scheduling conflicts. In narrowing the subpoena, the government wrote Holtec on May 3, 2005 that the subpoena *duces tecum* was limited to only the Hatch, Vogtle and Farley plants, specifically the capacity of the wet pools at those three plants. Also, Holtec need not produce invoices or correspondence, except to the extent such correspondence contained substantive analysis of pool capacity. Def. Mot., App. pp. 13-14. Verbal discourse between counsel included Holtec's concern about confidentiality. Acknowledging that concern, the government agreed in the May 3, 2005 letter to "work with Holtec to redact information that Holtec may be particularly concerned about revealing, provided it is not related to the issue of pool capacity at Hatch, Vogtle, or Farley." *Id.* at 14.

Pointing out that there was a protective order in place in this case which should alleviate concerns about disclosure, the government also noted that Holtec's confidentiality objections were not well-taken as the 14-day time for filing objections had expired. RCFC 45(c)(2)(B). The government's offer to send an attorney to Holtec's facilities to cull through documents was declined. Finally, the government balked at Holtec's demand for compensation at $386.10 per hour for time spent searching for responsive documents. That amount is Holtec's engineering hourly rate for "legal consulting." Holtec's Opp. & Cross-Mot. App., at HA 72. The government does not contend it has been denied full discovery regarding pool capacity from plaintiffs, nor does the government assert plaintiffs have been less than forthcoming in this regard.

---

[1/] The government defined reracking as "the process by which spent fuel storage racks are installed in or added to the spent fuel pool at a nuclear power generation facility as a means of increasing spent nuclear fuel storage capacity. The term 'reracking' should be interpreted to include any partial or total reracking efforts and any additions of racks to a spent fuel pool." Gov't Mot., App. p. 6.

Holtec served its objections on May 6, 2005, 35 days after service of the subpoena *duces tecum*. Too late, the government states. However, despite the outstanding issue of compensation, Holtec produced a witness for the Rule 30(b)(6) examination. The government asserts Eric Lewis, the designee, was not familiar with the issue of pool capacity studies at the three plants, and was unable to identify Holtec documents concerning such that the government apparently received from plaintiffs in discovery. Specifically, Mr. Lewis was shown a 1992 letter from Southern Nuclear Operating Company requesting that Holtec prepare a budgetary estimate for a possible rerack of the Hatch plant pool. Mr. Lewis had not found that letter in his "cursory review" search (15-20 minutes a "couple of times") for documents in preparation for his deposition, nor was he aware if such a budget estimate was ever prepared. Also, Mr. Lewis was not aware of a 1994 evaluation presentation Holtec did for plaintiffs that included two possible reracking approaches. When questioned about the Vogtle plant, Mr. Lewis testified he believed a marketing plan had been performed to determine the physical capacity of the pool at that plant, but he had not seen the analysis. Holtec files concerning the Hatch plant are stored electronically; files on the other two plants are not.

The government cites to this court's order in *Maine Yankee Atomic Power Co. v. United States*, No. 98-474C (February 20, 2004) allowing reasonable discovery from Holtec as to "any contracts actually entered into by Holtec for projects or material of some similarity to those undertaken or received by plaintiff." Requested discovery here is more limited the government points out, to projects actually performed at Hatch, Vogtle and Farley, the three plants at issue in this case.

The government states that it "has attempted to obtain the necessary documents and information from plaintiff [sic], through document requests and depositions. However, it is quite possible that Holtec possesses materials to which plaintiff [sic] has [sic] never had access." Def. Mot., p. 10. That Holtec may indeed have documents that were never communicated to plaintiffs raises a question whether the discovery sought is overly broad.

As for timeliness (or the lack thereof), Holtec points out that counsel were negotiating the narrowing of the original subpoena which was "[s]ubject to RCFC 34 or to mutual agreement." Gov't Mot., App. p. 1. Thus the scope of the subpoena was somewhat elastic and counsel were narrowing its scope. Absent that limitation, Holtec asserts, Holtec would be put in the "untenable position of attempting to respond to an overly broad subpoena which the Defendant had substantially narrowed and

essentially had withdrawn." Holtec's Opp. & Cross Mot., p. 7, citing Holtec's May 6, 2005 letter to the government, Att. 15 to Gov't Mot.

Holtec also points out that its objections to the subpoena were filed within 14 days of receipt of the May 3, 2005 letter from government counsel that narrowed the scope of the subpoena, and the government waived its right to object to Holtec's tardiness by not complaining earlier. Secondly, Holtec says, regardless of whether the objections are considered or not, Holtec does not have any documents responsive to the amended subpoena despite a reasonable search and inquiry. In contrast to the selected portions of Mr. Lewis' deposition cited by the government, Holtec proffers:

> Mr. Lewis interviewed Holtec employees to determine what occurred at each of the projects, and also reviewed documents and Holtec's electronic files, and determined that Holtec simply did not perform the technical, engineering analyses which are the subject of the Defendant's May 3, 2005 letter which amended the scope of the Subpoena.

Holtec Opp. at 3. A summary of Mr. Lewis' deposition testimony as to those efforts was provided. *Id.*, pp. 8-11. His efforts do not comprise the cursory glance characterized by the government nor the exertion that may be needed to provide a complete discovery response. Holtec also points out that the government is essentially asking for involuntary expert testimony through use of the third-party subpoena and corporate designation rules, and Holtec is also presumably concerned about its relationship with the government, particularly in providing equipment, services, systems incident to DOE's statutory and contractual obligation for transportation and disposal of SNF. Timeliness of objections relating to disclosure of an unretained expert's opinion may not be an issue. RCFC 45(c)(3)(B)(ii). In its cross-motion Holtec asks for $1,900.50 representing two hours of search time by Mr. Lewis and three hours of deposition time (at a re-calculated hourly rate of $380.10).

To produce recoverable results, plaintiffs' mitigation efforts must have been "fair and reasonable under the circumstances." *First Heights Bank v. United States*, _ F.3d _, 2005 WL 1962989 (Fed. Cir. Aug. 17, 2005), citing *Home Sav. of Am. v. United States*, 399 F.3d 1341, 1353 (Fed. Cir. 2005). *See generally* 24 Richard A. Lord, *Williston on Contracts* § 64:27 at 191-200 (4th ed. 2004) (injured party is required to take reasonable steps to mitigate its losses from a breach). In *Tennessee*

*Valley Authority v. United States,* 60 Fed. Cl. 665 (2004), another SNF case, the court held that the utility was

> justified, indeed obligated, to take steps to minimize its losses in light of DOE's imminent non-performance. "Once a party has reason to know that performance by the other party will not be forthcoming, he is expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise." *Restatement (Second) Contracts* § 350 cmt. b. *See also Robinson v. United States,* 305 F.3d 1330, 1334 (Fed. Cir. 2002) ("Reasonable efforts in the form of affirmative steps are required to mitigate damages.") (citing *Restatement (Second) Contracts* § 350).

60 Fed. Cl. at 674 (ellipsis omitted).

Damages are not recoverable for matters that should have been foreseen and avoided by reasonable effort without undue risk, expense, or humiliation. *See Restatement (Second) of Contracts* § 350, cmt. b (1981) ("'As a general rule, a party cannot recover damages for loss that he could have avoided by *reasonable efforts.*'") (cited in *Robinson v. United States*, 305 F.3d 1330, 1333 (Fed. Cir. 2002)(emphasis in original)).

In *Chain Belt Co. v. United States*, 127 Ct. Cl. 38, 115 F. Supp. 701 (1953), prior to, but in anticipation of the government's impending partial breach, the nonbreaching party arranged for substitute performance, a response the court endorsed as not only appropriate, but obligatory, judging mitigation expenditures by the "reasonableness" standard.

> [P]laintiff was under an obligation to avoid by a reasonable effort any damages which it should have foreseen and, having done so, it may recover as damages the expense incurred in such reasonable effort to avoid harm .... It makes no difference whether the breach has already occurred, or where ... it is merely impending under circumstances such that it was not reasonable for plaintiff to expect defendant to prevent the harm.

127 Ct. Cl. 57-58; 115 F. Supp. 714.

Furthermore, mitigation does not require clairvoyance. Reasonable expenses are recoverable regardless of whether the economics were realized. *See* 3 Dan B.

Dobbs, *Law of Remedies* § 12.6(1)(6), at 127 (2d ed. 1993) ("[T]he plaintiff's damages are adjusted upwards to reflect all the reasonable costs he incurs in attempting to avoid losses, whether or not he was successful in doing so."); *Restatement (Second) Contracts* § 347, cmt. c (costs incurred in reasonable efforts to avoid loss are recoverable "whether successful or not"); *Cienega Gardens v. United States*, 38 Fed. Cl. 64, 79 (1997) ("[w]hether or not an attempt to mitigate damages is successful, the non-breaching party may recover for injury incurred during such mitigation as long as the attempt was reasonable"), *rev'd on other grounds,* 194 F.3d 1231 (Fed. Cir. 1998).

Pursuant to RCFC 26(c), one seeking to shield itself from discovery bears the burden of demonstrating "good cause" for a protective order. "'Good cause' requires a showing that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." *Sparton Corp. v. United States*, 44 Fed. Cl. 557, 561 (1993). *See also Truswal Systems Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1209-10 (Fed. Cir. 1987) (explaining that discovery limits including protection from undue burden apply to non-parties). Specifically, the court may quash or modify a subpoena which "subjects a person to undue burden." RCFC 45(c)(3)(A)(iv). Holtec has made an undue burden showing.

> Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on nonparties. Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party.

*United States v. Columbia Broad. System, Inc.*, 666 F.2d 364, 371 (9th Cir. 1982) (footnote omitted). *See also Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[The nonparties] have no dog in [the] fight. Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.").

The government is entitled to discovery directed to whether plaintiffs' mitigation expenses were reasonable. However, the government gives no basis for discovery of matters not communicated to plaintiffs. Absent such communication it

is unlikely that the documents would have relevance on the issue of reasonable cost recovery by plaintiffs. Expert testimony by Holtec for defendant, which could involve matters not communicated to plaintiffs, would require financial arrangements not here addressed. Documents sought in the government's May 3, 2005 letter are those related to the **capacity** of the spent nuclear fuel pool, not simply engineering analyses Holtec states it does not have. Spatial analyses which Mr. Lewis testified could be done by other than an engineer presumably directly "relates" to the capacity of the pools, understanding that physical space in the pool is not the end of the inquiry – other technical analysis is required.

Accordingly, the court grants in part and denies in part these pending motions. Discovery is limited to documents as defined in the government's subpoena as modified on May 3, 2005, that relate to the capacity of the pools at the Hatch, Vogtle and/or Farley nuclear plants, and were communicated to plaintiffs, or, to Holtec's knowledge, plaintiffs' agents, representatives or contractors. Presumably, administrative or clerical personnel could locate, and if necessary copy relevant documentation. The requirement for an engineer is not evident. As Holtec is not a party, it should be paid for such individual's time at the rate that individual would or could be charging to a client, assuming such time is customarily billed to a client. The court notes a charge of $75.00 an hour for support staff on Holtec's legal consulting fee schedule, but questions whether Holtec's document search effort is equivalent to "consulting," or whether a lesser hourly rate would reflect Holtec's actual cost including overhead. The government and Holtec must consult and agree to a reasonable rate for clerical or administrative staff work and for Mr. Lewis' time at an appropriate "administrative" search rate and as a corporate official for testimony. If agreement cannot be reached, the government and/or Holtec shall file motions with supporting affidavits as to the rates discussed, the reason(s) for disagreement and the rationale for the rate(s) asserted. Upon completion of the foregoing additional search, the government may file a motion for another RCFC 30(b)(6) deposition of Holtec, if required.

**Accordingly,** IT IS HEREBY ORDERED that

(1) The government's Motion to Compel Third Party Production of Documents Pursuant to Subpoena *Duces Tecum* is **granted in part and denied in part** as set forth hereinabove;

(2) Holtec's Cross-Motion for Protective Order and to Quash/Modify the Subpoena is **granted in part and denied in part** as set forth hereinabove;

(3) The defendant shall promptly furnish Holtec with copies or a descriptive list, of all Holtec documents it has obtained concerning the Hatch, Vogtle, and Farley plants to aid in the document search and to obviate the need for Holtec to produce them to the extent Holtec's file copies comprise the exact same documents;

(4) Upon the assumption that documents in the Nuclear Regulatory Commission files are available to defendant, Holtec need not produce its copy of such documents, *e.g.,* license proposals.

s/ James F. Merow
James F. Merow
Senior Judge