No. 04-0074C
into which has been consolidated No 04-0075C
Judge Hewitt

**CORRECTED**
(Filed Electronically, November 15, 2005)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# PG&E'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND TESTIMONY WITHHELD AS PRIVILEGED

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173
(202) 261-4751
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:
ROBERT L. SHAPIRO
Greenberg Traurig, LLP

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................ 2

A. The Attorney-Client Privilege and Work Product Doctrine Protect Documents Prepared in Anticipation of Regulatory Proceedings. ....................2

1. The Work Product Doctrine Applies to Administrative Proceedings ...........................................................................3

2. Documents Withheld by PG&E Were Prepared in Anticipation of Litigation ...........................................................................7

B. Drafts of Documents Disclosed in Final to the Public Are Protected by the Attorney-Client Privilege and Work Product Doctrine.............................10

C. PG&E Properly Asserted Privilege Over Documents Even When the Authors or Recipients Are Not Specified. ......................................................11

D. PG&E Properly Withheld Documents Prepared by Experts and Instructed Witnesses Not to Answer Questions Concerning Communications with Experts. ..........................................................................13

E. PG&E Has Not Waived Its Attorney-Client Privilege Concerning Damages. ..........................................................................................14

CONCLUSION ..................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Federal Bureau of Investigation*, 198 F.R.D. 306 (D.D.C. 2000) ........................... 11

*Carey-Canada, Inc. v. California Union Ins. Co.*, 118 F.R.D. 242 (D.D.C. 1986) ........................ 11

*Carter v. Gibbs*, 909 F.2d 1450 (Fed. Cir. 1990) ................................................................ 2

*Duplan Corp. v. Deering Milliken, Inc.*, 61 F.R.D. 127 (D.S.C. 1973) ........................................ 3

*Glanton v. Tudor Ins. Co.*, 2000 WL 377818 (E.D. Pa. Mar. 28, 2000) ...................................... 15

*Great Plains Mutual Ins. Co., Inc. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193 (D. Kan. 1993) ................................................................ 13

*Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975) ........................................................ 14

*Hickman v. Taylor,* 329 U.S. 495 (1947) ........................................................................ 2

*Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573 (9th Cir. 1992) .................................. 2

*In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 513 (N.D. Ill. 1990) ........................... 11

*In re Grand Jury Investigation (Sun Co.)*, 599 F.2d 1226 (3d Cir. 1979) ...................................... 3

*In re Grand Jury Proceedings*, 604 F.2d 798 (3d Cir. 1979) ........................................................ 4

*In re Megan-Racine Assocs., Inc.*, 189 B.R. 562 (Bankr. N.D.N.Y. 1995) ...................................... 4

*In re Natta*, 410 F.2d 187 (3d Cir. 1969) ........................................................................... 4

*In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982) .................................................................. 3

*Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578586 (N.D.N.Y. 1989) ................................................................ 4

*Oneida Ltd. v. United States*, 43 Fed. Cl. 611 (1999) ................................................................ 14

*Pound v. United States*, 63 Fed. Appx. 499 (Fed. Cir. 2003) ........................................................ 5

*Shriver v. Baskin-Robins Ice Cream Co., Inc.*, 145 F.R.D. 112 (D. Colo. 1992) ........................... 13

*Union of Concerned Scientists v. United States Nuclear Regulatory Commission*, 35 F.2d 1437 (D.C.Cir.1984)………………………………………………………………………7

*United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) ................................................................ 3

*United States v. American Tel. & Tel. Co.*, 642 F.2d 1285 (D.C. Cir. 1980) ................................ 2

*United States v. American Tel. & Tel. Co.*, 86 F.R.D. 628 (D.D.C. 1980) ...................................... 8

*United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982) ........................................................ 9

*United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) ............................. 3

*United States v. Utah Constr. and Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) ................................................................ 5

*Zenith Radio Corp. v. United States*, 764 F.2d 1577 (Fed. Cir. 1980) ......................................... 15

**Administrative Decisions**

*Application of Pacific Gas and Electric Company for Authority, Among Other Things, To Increase Revenue Requirements for Electric and Gas Service and to Increase Rates and Charges for Gas Service Effective on January 1, 2003*, 2004 WL 1376593 (Cal. P.U.C. May 27, 2004) .....5

*Application of San Gabriel Valley Water Company*, 2005 WL 2101464 (Cal. P.U.C. Aug. 25, 2005) .....5

*Southern California Edison Company*, 2003 WL 22426989 (Cal. P.U.C. Oct. 2, 2003) .....6

**Regulations**

10 C.F.R. § 2.101(f)(1) .....6

10 C.F.R. § 2.314 .....7

10 C.F.R. § 2.315 .....6

10 C.F.R. § 2.321 .....7

10 C.F.R. § 2.705(b)(1) .....7

10 C.F.R. § 2.705(b)(3) .....7

10 C.F.R. § 2.711 .....7

Cal. Code Regs. tit. 20, § 54 .....6

Cal. Code Regs. tit. 14, § 13066 .....7

**Rules**

RCFC 26(b)(3) .....3, 13

**Other Authorities**

*Federal Practice and Procedure* § 2024 .....4

*Federal Practice and Procedure* § 2053 .....15

## APPENDIX

| Exhibit | Description |
| --- | --- |
| A ………………………..... | Revised Privilege Log, November 10, 2005 |
| B ………………………... | May 22, 1995 transcript of direct and cross-examination testimony of Thomas LaGuardia, PG&E 1996 GRC |
| C …………………………. | March 27, 1998 Data Request of The Redwood Alliance |
| D …………………………. | August 4, 2005 Deposition Transcript of Chris Warner 272-279 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PACIFIC GAS & ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 04-0074C, into which has been consolidated No. 04-0075C<br>(Judge Hewitt) |

**PACIFIC GAS & ELECTRIC COMPANY'S RESPONSE**
**TO DEFENDANT'S MOTION TO COMPEL DISCOVERY**

The government's motion to compel misstates the scope of the attorney-client privilege and work product protection and misconstrues the nature of the documents and testimony being withheld. Indeed, for several documents, the government incorrectly identifies the protection asserted by Pacific Gas & Electric Company ("PG&E"). As such, the Motion to Compel lacks merit and should be denied.

PG&E provided the government with a privilege log on June 21, 2005, related to documents withheld from the group of documents initially produced on April 22, 2005, as part of PG&E's Initial Disclosures. On September 27, 2005, more than three months after receiving PG&E's privilege log, the government sent PG&E a letter challenging some of PG&E's claims of privilege on the log, as well assertions of privilege at depositions (some of which dated back to July 2005). PG&E responded to the government's letter on October 7, 2005. In the October 7, 2005, letter, PG&E indicated that it would review certain privilege log entries, release any unprivileged documents, and provide the government a revised privilege log. The revised privilege log is attached as Exhibit A. PG&E is releasing 232 documents from its June 21, 2005

privilege log, including 29 documents with redactions, based upon a substantive review of each document and the sufficiency of its corresponding claim.

## ARGUMENT

### A. The Attorney-Client Privilege and Work Product Doctrine Protect Documents Prepared in Anticipation of Regulatory Proceedings.

The basis for the majority of the government's challenges to PG&E's privilege assertions is that documents prepared in anticipation of administrative proceedings are not protected by the attorney-client privilege or the work product doctrine. The government incorrectly asserts that the administrative proceedings cited in PG&E's privilege log do not constitute "litigation" for purposes of claiming work product protection. The government also applies an improperly narrow interpretation of the "anticipation of litigation" requirement of work product protection. Moreover, the government wrongly contends that certain documents were disclosed to an administrative agency when they were not. Finally, the government's assertion that attorneys' communications with PG&E's board of directors about administrative proceedings are not protected by attorney-client privilege or the work product doctrine is wrong.

"The primary purpose of the work product rule is to 'prevent exploitation of a party's efforts in preparing for litigation.'" *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (quotation omitted). The work product doctrine "protect[s] against the disclosure of an attorney's mental impressions and thought processes either to an opponent in the litigation for which the attorney generated and recorded those impressions, or to a third party with interests not 'common' to those of the party asserting the privilege." *Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990 (citing *Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947) and *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1298 (D.C. Cir. 1980)). The work product doctrine also protects against disclosure of the mental impressions, conclusions,

opinions, or legal theories of representatives of a party concerning the litigation. *See* RCFC 26(b)(3). The work product doctrine should be broadly construed to effectuate these purposes. *United States v. Nobles*, 422 U.S. 225, 238 n.11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *In re Grand Jury Investigation (Sun Co.)*, 599 F.2d 1226, 1232 (3d Cir. 1979). Indeed, opinion work product, involving the mental impressions or conclusions of an attorney, enjoys an almost absolute protection against discovery. *See In re Sealed Case*, 676 F.2d 793, 810 (D.C. Cir. 1982) ("opinion work product [i]s nearly as absolute as the attorney-client privilege and more extensive in its reach."). Moreover, the text of Federal Rule of Civil Procedure 26(b)(3), which codifies the work product doctrine (and is virtually identical to the text of RCFC 26(b)(3)) "does not limit its protection to materials prepared to assist at trial." *United States v. Adlman*, 134 F.3d 1194, 1198 (2d Cir. 1998). Rather, Rule 26(b)(3) "expressly states that work-product privilege applies not only to documents 'prepared ... for trial' but also to those prepared 'in anticipation of litigation.'" *Id.* The documents withheld by PG&E were prepared in anticipation of contested administrative proceedings, and in several cases, actually initiated such proceedings. Therefore, the work product doctrine protects them from disclosure.

1. <u>The Work Product Doctrine Applies to Administrative Proceedings</u>

Throughout the Motion to Compel, the government states that the challenged documents are not protected from disclosure because they relate to proceedings before a regulatory agency, and as such were not prepared in anticipation of litigation. *See*, *e.g.*, Motion to Compel, at 5, 9, 15. The government's argument assumes, incorrectly, that work product protection does not apply to documents prepared in anticipation of regulatory proceedings.

"[T]he work product privilege may be claimed for material prepared for administrative proceedings … *as well* as for proceedings before courts of record." *Duplan Corp. v. Deering

*Milliken, Inc.*, 61 F.R.D. 127, 131 (D.S.C. 1973) (emphasis in original); *see also In re Grand Jury Proceedings*, 604 F.2d 798, 803-04 (3d Cir. 1979) (documents concerning an administrative proceedings before the Environmental Protection Agency were subject to the work product privilege). The leading federal procedure treatise confirms that work product protection applies in administrative proceedings – which alone disposes of most of the government's complaints about PG&E's privilege assertions. *See* 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure* § 2024 ("The work product privilege applies not only to litigation in courts, but also to litigation before administrative tribunals."). Indeed, the work product doctrine is regularly held to protect documents prepared in anticipation of an administrative proceeding before a public utility commission. *See Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578586 (N.D.N.Y. 1989); *see also In re Megan-Racine Assocs., Inc.*, 189 B.R. 562, 574 (Bankr. N.D.N.Y. 1995) ("[M]aterials prepared for administrative litigation or judicial proceedings may be protected under Fed. R. Civ. P. 26(b)(3) … ."). Moreover, contrary to another government assertion, documents prepared especially for administrative proceedings are not the ordinary business records of a corporate legal department. *See In re Natta*, 410 F.2d 187, 192 (3d Cir. 1969) (court refused to construe the work product doctrine "so tightly as to confine it to proceedings in a court of record").

The PG&E documents at issue were prepared in connection with general rate case proceedings and decommissioning cost triennial proceedings before the California Public Utilities Commission ("CPUC") (Exh. A, No. 134, 155, 179-192), licensing proceedings before the Nuclear Regulatory Commission ("NRC") ( Exh. A, No. 83, 87, 197, 199-202, 204-210), and licensing proceedings before the California Coastal Commission ("CCC") (Exh. A, No. 240-241, 415-416). The proceedings conducted by these agencies are overseen by commissioners

and administrative law judges appointed under federal and state constitutional authority. As described below, each of these proceedings provides an opportunity for interested parties to intervene and participate in hearings concerning PG&E's filings before the commission. Moreover, such intervention is routine – as are contentious administrative proceedings – in the controversial area of nuclear power plant operations and licensing that is relevant here. Indeed, the agencies themselves consider their proceedings to be adjudicatory in nature. The administrative proceedings before the CPUC, NRC, and CCC also require the relevant agency to adjudicate facts. For example, in the CPUC's rate and cost proceedings, the CPUC must "develop and adopt sound, informed estimates of the reasonable costs to be incurred in the test year." *See, e.g.*, *Application of San Gabriel Valley Water Company*, 2005 WL 2101464 (Cal. P.U.C. Aug. 25, 2005). Similarly, the NRC and CCC must determine whether PG&E meets the requirements for obtaining a license or permit, respectively. Administrative proceedings that resolve issues of fact constitute litigation. *See Pound v. United States*, 63 Fed. Appx. 499, 502 (Fed. Cir. 2003) (unreported) ("When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.") (quoting *United States v. Utah Constr. and Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)).

PG&E has withheld documents related to two types of CPUC proceedings: general rate cases and decommissioning cost triennial proceedings. The CPUC has characterized general rate proceedings as litigation. *See, e.g., Application of Pacific Gas and Electric Company for Authority, Among Other Things, To Increase Revenue Requirements for Electric and Gas Service and to Increase Rates and Charges for Gas Service Effective on January 1, 2003*, 2004 WL

1376593 (Cal. P.U.C. May 27, 2004) (refers to issues "litigated" in a general rate case). Moreover, in rate proceedings before the CPUC, PG&E submits written testimony and relevant exhibits specific to a particular witness prior to the hearing. The witness supporting that testimony is then subject to cross-examination at the hearing. Indeed, there are numerous instances of PG&E witnesses being cross-examined by interested parties at general rate case hearings. *See* Exh. B, at PPGE0032391, (Thomas LaGuardia being cross-examined by Armando Alvarez, representing the "consumer interests of the Federal Executive Agencies"). The CPUC's decommissioning triennial cost proceedings also constitute litigation in that the CPUC issues findings of fact and conclusions of law after reviewing briefs and conducting hearings that includes the presentation of testimony and exhibits and the cross-examination of witnesses. *See* *Southern California Edison Company*, 2003 WL 22426989 (Cal. P.U.C. Oct. 2, 2003).

Finally, third parties to CPUC proceedings are entitled to and often choose to intervene, creating contentious, adversarial proceedings. *See* Cal. Code Regs. tit. 20, § 54. Interveners often submit interrogatories and data requests, requiring PG&E to prepare extensive and detailed responses. *See* Exh. C (First data request of The Redwood Alliance, an intervener in the PG&E 1999 GRC). The privilege log entry numbered 243 is one example of a draft response to these data requests. Draft documents such as this relating to general rate case and decommissioning cost triennial proceedings were prepared in anticipation of those litigation matters, and as such, are protected from disclosure by the work product doctrine.

Licensing proceedings before the NRC also constitute administrative litigation to which the work product doctrine applies. PG&E's submission of an application to amend its license initiates an adjudicatory proceeding that provides interested parties with the opportunity to participate in a hearing. *See* 10 C.F.R. §§ 2.101(f)(1) and 2.315; *see generally* 10 C.F.R. Part 2,

Subpart C (detailing procedures for hearing). The licensing proceedings relevant to the documents withheld by PG&E are handled by the Atomic Safety and Licensing Boards, which act in a quasi-judicial capacity and perform adjudicatory functions. *See* 10 C.F.R. §§ 2.314 and 2.321; *see also Union of Concerned Scientists v. United States Nuclear Regulatory Commission*, 735 F.2d 1437, 1444 & n.12 (D.C. Cir. 1984) (when a hearing is required "in an adjudicatory matter, such as licensing, the agency must generally provide an opportunity for submission and challenge of evidence as to any and all issues of material fact."). At a hearing concerning a licensee-initiated application to amend its license, the applicant has the right to present evidence and rebuttal testimony and to cross-examine witnesses. *See* 10 C.F.R. § 2.711. Moreover, the NRC specifically recognizes the applicability of the work product doctrine and privileges to its proceedings. *See* 10 C.F.R. § 2.705(b)(1) and (3).

CCC permit proceedings, like the NRC's licensing proceedings, provide for a public hearing on the permit application. *See* Cal. Code Regs. tit. 14, § 13066. The order of proceedings at the hearing contemplates testimony by interested parties and rebuttal testimony. In addition, the commissioners may ask questions of any person who testifies. *Id.* Thus, PG&E's decision to file a permit application, initiates a hearing process that is adversarial. As such, the work product doctrine applies to documents prepared for a CCC permit proceeding. In fact, the CCC proceedings relevant to this case involved contentious litigation with interveners.

2. Documents Withheld by PG&E Were Prepared in Anticipation of Litigation

The government claims that PG&E cannot prove that any document prepared for a regulatory proceeding was prepared in anticipation of litigation. The government attempts to confine applicability of the work product doctrine to these documents by arguing that a Circuit split is relevant to the issue. *See* Motion to Compel, at 8-9. The government correctly notes that

the courts of appeal use two formulations of the "in anticipation of litigation" part of the work product doctrine to determine its applicability to documents prepared for multiple purposes. But the difference between the formulations is irrelevant to the resolution of PG&E's privilege claims because the documents at issue here are not multiple purpose documents. They were prepared solely in anticipation of the various administrative proceedings. The government argues that these documents had multiple purpose documents because PG&E's real interest was the underlying rates or licenses that are the subjects of the proceedings. *See* Motion to Compel, at 8-9. But this argument is too broad. No plaintiff engages in litigation for the litigation itself. Even here, PG&E's ultimate objective is obtaining a damages recovery, not engaging in litigation. Nor can the government properly distinguish between a public utilities commission rate case filing or licensing application and the administrative litigation over such filings and applications. Those filings are akin to complaints in litigation before this Court. The subsequent litigation is all part of a single litigation proceeding.

PG&E is routinely engaged in litigation concerning its rate cases and licensing applications inherent in operating a regulated coastal utility. The documents challenged by the government were prepared in anticipation of that litigation. The documents do not lose their privileged status simply because such litigation is routine for PG&E. As stated in *United States v. American Tel. & Tel. Co.*, in which the court approved and accepted Special Masters' substantive and procedural guidelines, "[t]here is no authority for the Government's suggestion that the [work product] privilege is inapplicable to litigation in which a party participates 'in the regular course of its business.'" 86 F.R.D. 603, 628 (D.D.C. 1980). The Special Masters' guidelines, approved by the court in *American Tel. & Tel. Co.*, noted that Federal Rule of Civil Procedure 26(b)(3) "expressly confers the work product privilege on 'surety, indemnitor, insurer'

a category that includes what might be termed litigants by vocation." *Id.* The work product protection provided by Rule 26(b)(3) covers documents prepared in anticipation of litigation; it does not set any limits concerning the frequency of that litigation. Any such limitation would unfairly discriminate against entities that routinely participate in litigation due to the nature of their business.

The government's reference to Mr. Warner's deposition in its Motion to Compel, noting that he "wore two hats in his position as counsel for PG&E, … also provid[ing] business advice," (Motion to Compel, at 15 n.8) is irrelevant to the documents for which PG&E has withheld. The documents and communications PG&E has withheld reflect advice as to how to proceed in regulatory actions. *See, e.g.*, Document Nos. 92-96, 268, 299-301. Many of the documents, including the numerous drafts included on PG&E's privilege log, were created in anticipation and in support of adversarial regulatory actions. *See e.g.*, Document Nos. 86, 110, 195, 197, 669-672. If not for these regulatory actions, the documents would not have been prepared. Indeed, the entire purpose for the preparation of those documents is the anticipation of the contested regulatory proceedings in which PG&E participates – proceedings covered by the work product doctrine.

The government's claim that the documents are not protected by the work product doctrine because they were created in response to specific regulatory requirements misstates the law and the nature of the documents at issue. First, as stated in *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982), the work product doctrine does not protect material assembled "… pursuant to public requirements *unrelated to litigation*…." (quotation omitted) (emphasis added). Thus, the existence of regulations concerning documents related to administrative litigation does not prevent a document from being protected by the work product doctrine. Second, as

explained above, the documents for which PG&E claims work product protection relate to administrative regulatory proceedings that constitute litigation. Moreover, many of the documents concern legal strategy related to applications to the relevant agencies for approval of rates or grant of licenses or permits, or are drafts of such documents. Such documents were not prepared in the ordinary course of business; they either initiated an administrative proceeding or were prepared in anticipation of the proceeding. Furthermore, as explained above, the fact that a regulated company routinely engages in administrative proceedings does not deny that company the protection afforded by the work product doctrine.

### B. Drafts of Documents Disclosed in Final to the Public Are Protected by the Attorney-Client Privilege and Work Product Doctrine.

The government's position that documents sent to regulatory agencies are not protected by the attorney-client privilege or work product doctrine is flawed because none of the challenged documents were actually sent to a regulatory agency. *See* Document Nos. 195-96, 229, 722 (Motion to Compel, Ex. B). All of the challenged documents are drafts of documents that were ultimately sent to regulatory agencies in final form for purposes of PG&E's participation in a proceeding. However, there is no indication from the privilege log entries or otherwise that the drafts were disclosed to anyone outside of PG&E.[1] Thus, the government's insistence that documents produced to regulatory agencies must be provided immediately is unjustified. The government does not otherwise challenge the protected nature of these draft

---

[1] The government's conclusion that PG&E withheld documents sent to third parties appears to be based on entries noting recipients such as the California Public Utilities Commission. *See* Motion to Compel, Ex. B, No. 103. The description for this document clearly states the document is a draft. In fact, all of the documents cited in Category 6 on Exhibit A of the Motion to Compel were identified as such. PG&E is releasing 11 of the documents cited by the government as they appear to be final yet unsigned versions of documents that may have been sent to agencies previously identified as the recipient. To eliminate any further confusion, PG&E has revised the entries for the remaining draft documents in question, removing the addressee to which the final document will be provided and in general, replacing it with the name of the person from which the document was collected.

documents on any other basis besides the fact that they relate to regulatory proceedings. *See* Motion to Compel, Ex. A, Category (1) (challenging work product protection asserted regarding the following documents that the government claims were sent to regulatory agencies: Document Nos. 103-09, 114, 177, 195-96, 229, 231-33, 244, and 296-97). As explained above, the work product doctrine encompasses documents that were prepared in anticipation of a regulatory proceeding.

Although both the attorney-client privilege and work product protection may be waived, "simply because a final document is disclosed to the public (or a third person), an underlying privilege attaching to drafts of the final product is not destroyed." *In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 513, 518 (N.D. Ill. 1990). Moreover, "[d]rafts of a documents that are prepared with the assistance of counsel for release to a third party are protected under attorney-client privilege." *Alexander v. Federal Bureau of Investigation*, 198 F.R.D. 306, 312 (D.D.C. 2000). As one court noted:

> The fact that the final drafts were intended to be disclosed to the public does not render the privilege inapplicable. Surely the defendants would not argue that prior drafts of the pleadings it has submitted to this court and filed in the public record are not protected from disclosure by the work-product privilege.

*Carey-Canada, Inc. v. California Union Ins. Co.*, 118 F.R.D. 242, 246 (D.D.C. 1986). Similarly, drafts of documents ultimately filed with a regulatory agency are protected from disclosure.

### C. PG&E Properly Asserted Privilege Over Documents Even When the Authors or Recipients Are Not Specified.

The government notes that several documents listed in the privilege log do not include an author, recipient, or both, and as such, they may not be protected by attorney-client privilege. First, the government misstates the privilege claims asserted by PG&E regarding those documents. PG&E asserted either work product protection alone or work product protection and attorney-client privilege for each of the documents challenged by the government. The

government appropriately is not challenging the work product claims related to documents for which an author or recipient is not identified on the log. *See* Document Nos. 76-77, 79-80, 576-578, 580, 696 (Motion to Compel, Ex. B). Therefore, the government is not ultimately challenging the withholding of those documents.

Second, the government also challenges the withholding of documents reflecting communications with PG&E's Board of Directors and its management committees, for which an author is not specified.[2] In preparing the privilege log produced on June 21, 2005, PG&E listed authors and recipients only when there are individuals listed on the face of the document. But the lack of such a listing on the document does not mean that the document is not privileged. An otherwise clearly privileged memorandum reflecting legal advice from the general counsel's office to the Board of Directors does not lose its privileged status simply because the name of the lawyer and Board member are not listed on the document. The description field of PG&E's privilege log clearly states that those documents do reflect communications between lawyers and the Board or management committee. *See, e.g.*, Document Nos. 92 and 93. The government asserts that the relevant privilege log entries do not indicate whether the documents reveal confidential client communications.[3] But courts routinely "have upheld the assertion of the

---

[2] The government admits that the description of the document indicates that it contains legal analysis, but then concludes that the documents should not be protected by the work product doctrine because they relate to a proceeding before a regulatory agency, not litigation. As explained above, documents prepared in anticipation of a regulatory proceeding are protected by the work product doctrine.

[3] PG&E has reviewed the privilege log entries for all documents for which an author or recipient is not provided. Where possible, the author and recipient was generally determined by examining adjacent documents. However, when a particular name could not be found, the person from which the document was collected was added to the "recipient" field as appropriate. Where other documents are a collaborative effort among or within PG&E departments, the company itself may be noted as the author. The revised privilege log included as Exhibit A reflects these changes, in addition to reworked descriptions that further describe the document and the claim of privilege. *See* Exh.A.

attorney-client privilege and denied discovery of legal advice or information conveyed by a corporation's attorney to its board of directors." *See, e.g., Great Plains Mutual Ins. Co., Inc. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 198 (D. Kan. 1993); *Shriver v. Baskin-Robins Ice Cream Co., Inc.*, 145 F.R.D. 112, 114 (D. Colo. 1992) (communications between corporate counsel and personnel do not lose their protected status if an agent conveys the attorney's opinion to a corporate committee).

Government counsel asked specifically about entries 92 and 93 on PG&E's privilege log during Chris Warner's deposition. The privilege log entries for these two documents, among others, explicitly state that they contain "legal analysis and recommendations submitted to the Board of Directors of PG&E for approval." It is noted also that they were prepared in preparation of regulatory proceedings. As Mr. Warner explained in his deposition testimony, these presentations are "similar to preparing a draft rate case filing, the recommendation[s] would be pursuant to the supervision or directly [prepared] by the attorneys involved in preparing that filing." Warner Dep. 275:25-276:3 (*See* Exhibit D). But even if no attorney were involved, work product protection would apply under RCFC 26(b)(3).

**D. PG&E Properly Withheld Documents Prepared by Experts and Instructed Witnesses Not to Answer Questions Concerning Communications with Experts.**

The government contends that PG&E improperly refused to produce draft documents prepared by experts for regulatory proceedings or documents provided by PG&E attorneys.[4] The government further claims that communications between an expert and PG&E employees are not protected from disclosure by attorney-client privilege or the work product doctrine. *See* Motion

---

[4] The government also states that any material experts prepare for regulatory proceedings is not protected. For the reasons stated in Section A of this Response, such material is protected from disclosure.

to Compel, at 18-19. In support of its contentions the government relies on cases in this Court concerning discovery related to testifying experts.[5] However, PG&E is not required to identify its testifying experts until November 10. PG&E is just identifying its testifying, as opposed to consulting, experts today, and PG&E's employees could not have known if they have had a conversation with a testifying expert. The identification of testifying experts is not a mere formality. Just in the past week PG&E has been required to use an expert witness different from one it had intended to use after the first witness determined that he was too busy to serve as an expert witness in this case. Ultimately, the government can ask PG&E's identified experts at their depositions about any communications they may have had with PG&E personnel that may have influenced their opinions. The government's request for discovery concerning testifying experts is premature and should be denied.

**E. PG&E Has Not Waived Its Attorney-Client Privilege Concerning Damages.**

PG&E counsel has appropriately instructed witnesses not to answer questions at depositions concerning the preparation of PG&E's damages claim. Furthermore, contrary to the government's mischaracterization, PG&E counsel have not engaged in unjustified and disruptive tactics during depositions. The government claims that PG&E waived attorney-client privilege by putting the matter of damages at issue. In particular, the government states that by filing suit against the government, PG&E put information about damages at issue by making it relevant to the case. *See* Motion to Compel, at 16-17. The government relies on a three part test set forth in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975) to support its assertion that PG&E waived any attorney-client privilege concerning its damages claim. The government summarily and

[5] The government misquotes *Oneida Ltd. v. United States*, 43 Fed. Cl. 611, 620 (1999). *See* Motion to Compel, at 11. The court clearly stated that work product provided to a "testifying *expert* witness" is discoverable not that work product provided to any testifying witness is discoverable.

incorrectly concludes, without any argument, that the first two parts of the test have been met, *i.e.*, that (1) the assertion of the privilege was the result of an affirmative act, such as filing suit and (2) through the act, the asserting party put the protected information at issue by making it relevant to the case. *See* Motion to Compel, at 17. However, "[a] party does not automatically waive . . . privileges, which protect the formulation of legal opinions or litigation strategy, simply by bringing suit." *Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1580 (Fed. Cir. 1980). The government contends that the "key inquiry" is whether the third-part of the *Hearn* test is met, *i.e.*, application of the privilege would deny the opposing party access to information vital to its defense. *See* Motion to Compel, at 17 and *Hearn*, 68 F.R.D. at 581. As is explained below, the government has not demonstrated that it needs the withheld documents for the defense of this case.

PG&E has disclosed it damages claim to the government in accordance with Rule 26(a)(1)(C) of the Rules of the Court of Federal Claims. In fact, RCFC 26(a)(1)(C) contemplates explicitly that documents concerning damages calculations may be subject to privilege assertions.[6] Thus, "[a] party may withhold documents which support a claim of damages if those documents are subject to the attorney-client privilege." *Glanton v. Tudor Ins. Co.*, 2000 WL 377818, at *2 (E.D. Pa. Mar. 28, 2000) (unreported) (citing 8 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2053 at 641 (2d ed. 1994)). While damages are certainly relevant to the case, PG&E's filing of a complaint does not waive any privileges, nor does PG&E's service of a damages computation in accordance with the Court's rules. *See Glanton*, 2000 WL 377818, at *2 ("A party does not waive the attorney-client privilege regarding all

---

[6] *See* RCFC 26(a)(1)(C) (a party must provide "a computation of any category of damages claimed by the disclosing party, making available . . . the documents or other evidentiary material, *not privileged or protected from disclosure* … .") (emphasis added).

documents supporting a claimed element of damages.")

Notably, the government does not claim that the information it seeks is not protected by the work product doctrine. Rather, the government asserts that application of the work product doctrine would deny the government "information key to the defense," such as "the basis for the costs, including how the costs were calculated, who had input into the process of determining what categories of costs were recoverable." Motion to Compel, at 17-18. PG&E counsel specifically limited its objections to questions that concerned the preparation of PG&E's formal damages claim, as set out in its initial disclosures, which was a document prepared for this litigation and served on the government. PG&E counsel has not prevented the government from answering questions concerning costs it has incurred due to the breach. The following example of PG&E counsel's statements demonstrate that the government was permitted to pursue questions regarding costs:

> Mr. Shapiro: I don't know all the questions you intend to ask and certainly you can pursue questions regarding what costs PG&E has incurred – you can find out whether Mr. Pulley has knowledge of those, but in terms of the specific preparation of a document filed with the court, the instruction's going to stand.

Pulley Dep. at 87:18-24 (Motion to Compel, Ex. F). PG&E counsel did not object to questions concerning preparation of cost summaries. *See* Womack Dep. at 19-24 (Motion to Compel, Ex. G). Indeed, the government has walked PG&E's witnesses line-by-line through spreadsheets summarizing its costs. Thus, the government had access to information concerning costs, and has not suffered any hardship on the development of its case. "Under … *Hearn,* the party seeking the information must make a strong showing of need in order to breach the privilege." *Zenith Radio Corp.*, 764 F.2d at 1580. The government has not made a sufficient showing that it needs the withheld information to warrant release of privileged material. The government, like

PG&E, can make its own argument as to whether certain costs should be included in the damages claim.

Finally, in no event should the government be permitted to call PG&E witnesses to pose such questions. *See* Motion to Compel, at 15-16. First, the government has not demonstrated a compelling need for such extraordinary relief; it is just fishing. Second, the fact that the government did not attempt to raise this issue with the Court until now should count strongly against the government's request. PG&E has consistently been invoking the work product protection at the depositions of its witnesses starting in July. The government made no attempt to contact the Court during any of the depositions; nor did it file a written motion until discovery was about to close.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's motion to compel.

Dated: November 15, 2005

Respectfully submitted,

s/ Jerry Stouck
Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 Phone
(202) 261-4751 Fax
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:
Robert L. Shapiro
Greenberg Traurig, LLP