No. 04-0074C, into which has been
consolidated No. 04-0075C
(Judge Hewitt)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT UPON COUNTS II AND III OF PLAINTIFF'S COMPLAINTS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
100 L Street N.W.
Washington, DC 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT DAMELIN
SHARON SNYDER
JOSHUA E. GARDNER
TODD J. COCHRAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

November 15, 2005

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . ii

DEFENDANT'S BRIEF . . . . . . . . . . 2

STATEMENT OF ISSUES . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . 2

I. THE STANDARD OF REVIEW . . . . . . . . . . 2

II. PG&E'S CLAIM FOR RESTITUTION DAMAGES FAILS BECAUSE IT HAS ELECTED TO VIEW DOE'S DELAY AS A PARTIAL BREACH OF CONTRACT . . . . . . . . . . 3

III. PG&E'S ALLEGATION IN ITS COMPLAINT THAT IT HAS BEEN "DEPRIVED OF THE EFFECTIVE USE AND VALUE OF PROPERTY ON WHICH THE SNF FROM" ITS HUMBOLDT REACTOR IS LOCATED FAILS TO STATE A VIABLE CLAIM FOR A TAKING UNDER THE FIFTH AMENDMENT . . . . . . . . . . 5

A. PG&E Has Failed To State A Claim For A Taking Of Any Expectations Arising From Its Standard Contract . . . . . . . . . . 5

C. PG&E Cannot Assert A Physical Taking Of Its Property . . . . . . . . . . 10

D. PG&E Has Not Identified Any Viable Regulatory Taking Of Its Property . . . . . . . . . . 12

E. PG&E Has Failed To Set Forth Any Evidence Concerning The Value Of The Property That Was Allegedly Taken . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

Ambase Corp. v. United States,
58 Fed. Cl. 32 (2003) ........ 12, 13

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ........ 2, 3

Andrus v. Allard,
444 U.S. 51 (1979) ........ 14

Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,
853 F.2d 1557 (Fed. Cir. 1988) ........ 3

Bailey v. United States,
53 Fed. Cl. 251 (2002), aff'd, 341 F.3d 1342 (Fed. Cir. 2003) ........ 9

Branch v. United States,
69 F.3d 1571 (Fed. Cir. 1995) ........ 5

Canal Electric Co. v. United States,
65 Fed. Cl. 650 (2005) ........ 7

Castle v. United States,
48 Fed. Cl. 187 (2000) ........ 8, 9

Castle v. United States,
301 F.3d 1328 (Fed. Cir. 2002) ........ 5, 8, 9

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ........ 2

Consumers Energy Co. v. United States,
57 Fed. Cl. 278 (2003) ........ 7

Commonwealth Edison Co. v. United States,
56 Fed. Cl. 652 (2003) ........ 6, 7, 10

Coughlin v. Blair,
41 Cal. 2d 587, 262 P.2d 305 (1953) .......... 4

Cuyahoga Metro. Housing Auth. v. United States,
65 Fed. Cl. 534 (2005) .......... 3

Detroit Edison Co. v. United States,
56 Fed. Cl. 299 (2003) .......... 8

Forest Props., Inc. v. United States,
177 F.3d 1360 (Fed. Cir. 1999) .......... 11

Hansen Bancorp, Inc. v. United States,
367 F.3d 1297 (Fed. Cir. 2004) .......... 3

Hughes Communications Galaxy, Inc. v. United States,
271 F.3d 1060 (Fed. Cir. 2001) .......... 6

Indiana Michigan Power Co. v. Department of Energy,
88 F.3d 1272 (D.C. Cir. 1996) .......... 10, 12

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) .......... 4

Integrated Logistics Support Sys. Int'l, Inc. v. United States,
42 Fed. Cl. 30 (1998) .......... 9

J.J. Henry Co. v. United States,
188 Ct. C 411 F.2d 1246 (1969) .......... 5

Klamath Irrigation District v. United States,
67 Fed. Cl. 504 (2005) .......... 8

LaVan v. United States,
382 F.3d 1340 (Fed. Cir. 2004) .......... 8

Lingle v. Chevron USA, Inc.,
125 S. Ct. 2074 (2005) .......... 11

M&J Coal Co. v. United States,
47 F.3d 1148 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995) .......... 12

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) .................... 2

Northwest Airlines, Inc. v. United States Dep't of Transp.,
15 F.3d 1112 (D.C. Cir. 1994) .................... 6

Penn Central Transp. Co. v. City of New York,
438 U.S. 104 (1978) .................... 14

Plaintiffs in Winstar-Related Cases v. United States,
37 Fed. Cl. 174 (1997), aff'd, 133 F.3d 874 (Fed. Cir. 1998) .................... 6, 8

Sacramento Municipal Utility Dist. v. United States,
61 Fed. Cl. 438 (2004) .................... 8

Smith v. United States,
58 Fed. Cl. 374 (2003) .................... 5

Southern Nuclear Operating Co. v. United States,
No. 98-614C (Fed. Cl. Apr. 7, 2004) .................... 7

Sun Oil Co. v. United States,
215 Ct. Cl. 716, 572 F.2d 786 (1978) .................... 6

Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.,
833 F.2d 1560 (Fed. Cir. 1987) .................... 2

Systems Fuels, Inc. v. United States,
65 Fed. Cl. 163 (Fed. 2005) .................... 8

Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency,
535 U.S. 302 (2002) .................... 14

The Stearns Co. Ltd. v. United States,
396 F.3d 1394 (Fed. Cir. 2005) .................... 10, 11

Tuthill Ranch, Inc. v. United States,
381 F.3d 1132 (Fed. Cir. 2004) .................... 11

Tyler House Apartments, Ltd. v. United States,
38 Fed. Cl. 1 (1997) .................... 5

United States v. Winstar Corp.,
518 U.S. 839 (1996) ........................................................................................ 6, 9

Yee v. City of Escondido,
503 U.S. 519 (1992) ........................................................................................ 11

Zoeller v. United States,
65 Fed. Cl. 449 (2005) ........................................................................................ 9

# INDEX TO APPENDIX


| DOCUMENT | PAGE |
| --- | --- |
| PG&E's RCFC 26(a)(1) Disclosures | 14 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, Plaintiff, | ) | |
| v. | ) | No. 04-0074C, into which has been consolidated No. 04-0075C (Judge Hewitt) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
UPON COUNTS II AND III OF PLAINTIFF'S COMPLAINTS

Pursuant to Rule 56(b) of the Rules of this Court ("RCFC"), defendant respectfully requests that this Court grant partial summary judgment in defendant's favor upon Count II and III of plaintiff's complaints. In Count II of its complaints, plaintiff, Pacific Gas & Electric Company ("PG&E"), seeks restitution of all the fees paid to the Government pursuant to the Standard Contract. In Count III of its complaint related to Humboldt Bay Power Plant Unit 3 ("Humboldt"), PG&E claims that the Government has taken its property and is liable for just compensation.[1] There are no genuine issues of material fact that would preclude judgment as a matter of law in defendant's favor. In support of our motion, we rely upon the following brief and appendix, the accompanying proposed findings of uncontroverted fact, and the pleadings filed by the parties in this case.

---

[1] PG&E has not alleged a takings claim associated with its complaint related to Diablo Canyon.

## DEFENDANT'S BRIEF

## STATEMENT OF ISSUES

1. Whether PG&E may recover restitution damages for an alleged partial, rather than total, breach of contract.

2. Whether PG&E's allegation that the Government's failure to dispose of the spent nuclear fuel ("SNF") and/or high-level radioactive waste ("HLW") covered by the contract at issue has deprived PG&E of the effective use and value of its Humboldt facility constitutes a viable claim under the Fifth Amendment of the United States Constitution, where any right that PG&E has to require the Government to accept SNF and/or HLW derives solely from the Standard Contract.

## STATEMENT OF FACTS

For our statement of facts, we respectfully refer the Court to our proposed findings of uncontroverted fact, which accompany this motion.

## ARGUMENT

### I. THE STANDARD OF REVIEW

Summary judgment is a wholly acceptable and favored procedural means for disposition of claims or issues as to which there are no genuine issues of material fact in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). It is "a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). "[T]here is no genuine issue of material fact for trial unless there is sufficient

evidence favoring the non-moving party for a jury to return a verdict for that party." Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988) (quoting Anderson, 477 U.S. at 249-50). When the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. RCFC 56(c). In this case, there is no dispute over any facts that could preclude the Government's entitlement to summary judgment upon Counts II and III of PG&E's complaints.

## II. PG&E'S CLAIM FOR RESTITUTION DAMAGES FAILS BECAUSE IT HAS ELECTED TO VIEW DOE'S DELAY AS A PARTIAL BREACH OF CONTRACT

In its complaints, PG&E asserts a restitution claim under a partial breach of contract theory, seeking recovery of monies that it asserts it paid into the Nuclear Waste Fund. Humboldt Compl. ¶¶ 26-29.[2] As a matter of law, a party is not entitled to bring a claim for restitution for a partial breach of contract. See Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1309 (Fed. Cir. 2004) (relief in restitution is only available if breach gives rise to a claim for total breach rather than partial breach); Cuyahoga Metro. Housing Auth. v. United States, 65 Fed. Cl. 534, 561 (2005) (same). In this case, PG&E has elected to view DOE's delay in beginning SNF acceptance as a partial, rather than total, breach of the Standard Contract. Humboldt Compl. ¶ 25; Diablo Compl. ¶ 22. Consequently, PG&E may not claim restitution damages while, at the same time, insisting that DOE perform its obligations under the Standard Contract.

"The terms total breach and partial breach are frequently used by the courts in determining the remedies available to the injured party." 9 A. Corbin, Corbin on Contracts

[2] "Humboldt Compl. ¶ __" refers to the complaint that PG&E filed with respect to Humboldt Bay Power Plant Unit 3. "Diablo Compl. ¶ ___" refers to the amended complaint that PG&E filed with respect to the Diablo Canyon Power Plant

§ 946, at 717-18 (interim ed. 1979). "A total breach of contract is a non-performance of duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end." 9 A. Corbin, supra, § 946, at 718; see Restatement (Second) of Contracts § 236(1), at 214 (1981) ("[a] claim for damages for total breach is one for damages based on all of the injured party's remaining rights to performance"). "[I]t is clear that, wherever the court will hold that A's breach is a total breach, B can regard A's performance as at an end and at once maintain action for damages for all of his injury, past, present, and future." 9 A. Corbin, supra, § 946, at 718.

"While in the case of a total breach the injured party can at once get judgment for his entire injury, it is not always necessary for him to elect this remedy." 9 A. Corbin, supra, § 946, at 720. "In some cases he may elect to regard the breach as partial, proceed with his own performance, sue for the partial injury, and maintain a second suit in case a further breach occurs." Id., quoted in Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1377 (Fed. Cir. 2005); see Coughlin v. Blair, 41 Cal. 2d 587, 598, 262 P.2d 305, 311 (1953) ("even if a breach is total, the injured party may treat it as partial, unless the wrongdoer has repudiated the contract").[3] "[I]f the injured party elects to or is required to await the balance of the other party's performance under the contract, his claim is said instead to be one for damages for partial breach. For example, an injured party who claims damages in addition to specific performance claims damages for partial breach." Indiana Michigan, 422 F.3d at 1374 (quoting Restatement (Second) of Contracts § 236 cmt. b, at 214 (1981)). If the non-breaching party elects to view the breach as partial, the breaching party is required to continue its contract performance. Id. at 1376-78.

---

[3] "A partial breach of contract is a breach where remedial rights provided by law can be substituted by the injured party for only part of the existing contractual rights." Restatement (First) of Contracts § 313(2) (1932).

PG&E has elected to view DOE's delay in beginning SNF acceptance as a partial, rather than total, breach. Accordingly, PG&E cannot seek restitution damages that are not available under a partial breach of contract theory, and the Government is entitled to summary judgment with respect to Count II of PG&E's complaints.

## III. PG&E'S ALLEGATION IN ITS COMPLAINT THAT IT HAS BEEN "DEPRIVED OF THE EFFECTIVE USE AND VALUE OF PROPERTY ON WHICH THE SNF FROM" ITS HUMBOLDT REACTOR IS LOCATED FAILS TO STATE A VIABLE CLAIM FOR A TAKING UNDER THE FIFTH AMENDMENT

### A. PG&E Has Failed To State A Claim For A Taking Of Any Expectations Arising From Its Standard Contract

"In analyzing a takings claim, a court must first determine what was taken." Branch v. United States, 69 F.3d 1571, 1575 (Fed. Cir. 1995). Here, PG&E alleges in its complaint that, because DOE failed to begin to dispose of its SNF by January 31, 1998, "PG&E has been and will be deprived of the effective use and value of property on which the SNF from [Humboldt is located and must be stored for the foreseeable future." Humboldt Compl. ¶ 30. Because the only right PG&E has to have the Government accept and dispose of PG&E's SNF derives solely from the Standard Contract, PG&E's takings claim should be dismissed as a matter of law.

DOE's breach of the Standard Contract does not constitute a compensable taking of PG&E's property rights. It is well-established that, where a party's rights are created by contract with the Government, a party cannot state a takings claim against the Government founded upon a breach of that contract. Tyler House Apartments, Ltd. v. United States, 38 Fed. Cl. 1, 10 (1997) (citing J.J. Henry Co. v. United States, 188 Ct. Cl. 39, 46, 411 F.2d 1246, 1249 (1969)); Castle v. United States, 301 F.3d 1328, 1342 (Fed. Cir. 2002); Smith v. United States, 58 Fed.

Cl. 374, 389 (2003). As Justice Scalia has recognized, "[v]irtually every contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of nonperformance. The duty to keep a contract at common law means a predication that you must pay damages if you do not keep it – and nothing else." United States v. Winstar Corp., 518 U.S. 839, 919 (1996) (Scalia, J., concurring) (citations omitted). Likewise, this Court has held that, when a party enters into a contract, that party has either the right to receive performance or, if a breach occurs, the right to receive damages pursuant to contract law. Plaintiffs in Winstar-Related Cases v. United States, 37 Fed. Cl. 174, 187 n.9 (1997), aff'd, 133 F.3d 874 (Fed. Cir. 1998); see Northwest Airlines, Inc. v. United States Dep't of Transp., 15 F.3d 1112, 1121 n.5 (D.C. Cir. 1994). That is why "the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract." Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001) (quoting Sun Oil Co. v. United States, 215 Ct. Cl. 716, 769-70, 572 F.2d 786, 818 (1978)).

This Court has rejected takings claims that are, in reality, disguised contract claims. In Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652 (2003), one of the 60 currently pending cases concerning the Standard Contract, the Court was presented with a takings claims based upon the Government's breach of the Standard Contract. Id. at 656. As in this case, Commonwealth Edison alleged in its complaint that the Government's breach prevented it from the full commercial use of its property because it was forced to store SNF that otherwise would have been removed. Id. at 655. The Court rejected this claim, holding that Commonwealth Edison did "not have a takings claim absent the rights and obligations granted to the parties by

the Standard Contract." Id. at 656. In so holding, the Court explained that, because the Government had no obligation to accept the plaintiff's SNF absent the contract, the plaintiff had no basis for seeking takings damages outside the context of the contract:

> [A]bsent the contract, plaintiff would have been obligated to conduct the same or similar storage activities that it now asserts create a takings claim. The court finds that plaintiff's claim for a taking is dependent upon the existence of the Standard Contract and therefore plaintiff's rights are enforceable through contract remedy.

Id.

The Court's decision in Commonwealth Edison is consistent with other decisions in SNF cases rejecting takings claims. See Canal Electric Co. v. United States, 65 Fed. Cl. 650, 656 (2005) (rejecting both physical invasion and regulatory takings claims in SNF case, and noting that "[p]laintiff has not shown that it is entitled to damages under a theory independent of the rights accorded Canal Electric under the Standard Contract"); Southern Nuclear Operating Co. v. United States, No. 98-614C, slip op. at 5 (Fed. Cl. Apr. 7, 2004) (unpublished opinion) (dismissing Standard Contract holders' takings claim because it "is grounded on the SNF contracts that [two of the plaintiffs] executed with the United States"). Cf. Consumers Energy Co. v. United States, 57 Fed. Cl. 278, 282 (2003) (dismissing illegal exaction claim for increased storage costs as a result of Government's failure to accept SNF because, "absent the execution of the Standard Contract, there is no provision in the NWPA establishing January 31, 1998, as the deadline for the Government's assumption of the obligation to accept, store and dispose of SNF").[4]

---

[4] In a few decisions in the SNF cases, the Court has deferred dismissal of the plaintiff's takings claim to await further development of the contract claims and as potential alternative

Similarly, in Castle v. United States, 48 Fed. Cl. 187 (2000), aff'd in relevant part, 301 F.3d 1328 (Fed. Cir. 2002), this Court rejected a takings claim based upon rights created by contract. In Castle, the plaintiffs alleged that the Government had effected a taking of "their contractual agreement with the government" because the Government had not performed in strict accordance with the terms of the contract. Id. at 217. This Court recognized that "the formation of a contract does not entitle its signatories to absolute performance, but rather gives rise to the expectation either that the contract will be performed or that the non-breaching party will have available to it a contract-based remedy." Id. at 218 (citing Winstar, 518 U.S. at 919 (Scalia, J., concurring)). "The duty to keep a contract at common law means a prediction that you must pay

---

claims to a contract action. See, e.g., Systems Fuels, Inc. v. United States, 65 Fed. Cl. 163 (Fed. 2005); Sacramento Municipal Utility Dist. v. United States, 61 Fed. Cl. 438 (2004); Detroit Edison Co. v. United States, 56 Fed. Cl. 299 (2003). With all due respect to the Court in those cases, the Federal Circuit's decisions in cases such as Castle and LaVan v. United States, 382 F.3d 1340, 1351-52 (Fed. Cir. 2004), plainly establish that PG&E's takings claim here is not viable, making resolution of this motion appropriate. Indeed, as the Court in Klamath Irrigation District v. United States, 67 Fed. Cl. 504, 532 n.31 (2005), recently explained in dismissing a takings claim predicated upon a breach of contract:

> To be sure, some cases suggest that, under this rule, a takings claim is resurrected if a breach of contract is not found, see Systems Fuels, Inc. v. United States, 65 Fed. Cl. 163, 172-73 (2005). But such suggestions reflect a misunderstanding of the rationale for this rule. At least as described in Winstar and Castle, the rule favoring contract remedies depends upon there being symmetry between the contract rights to be enforced and the contract damages that are potentially available. Once this symmetry is established, a finding on the merits that no breach occurred does not break that relationship, but merely reflects that the contract rights that were asserted either never existed or were not adversely affected by the government's actions. Under either scenario, those same contract rights cannot provide the predicate for a takings because the government cannot take what the claimant does not have.

Id. (citations omitted).

damages if you do not keep it, and nothing else." Id. (quoting Winstar, 518 U.S. at 919 (Scalia, J., concurring)). In its review of this Court's decision in Castle, the Federal Circuit reiterated that, because the Government did not deprive the plaintiff of its previously existing contract remedies, the Government had not effected a taking of the plaintiff's contract:

> The plaintiffs received no contractual guarantee that the government would refrain from regulating Western Empire. At most, the contract promised either to regulate Western Empire consistently with the contract's terms, or to pay damages for breach. *Cf. Winstar,* 518 U.S. at 919, 116 S. Ct. at 2432 (Scalia, J., concurring in judgment) ("Virtually *every* contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of nonperformance . . . ."). Thus, by enacting FIRREA, the government did not deprive the plaintiffs from a contractual remedy – injunctive relief – to which they otherwise might have been entitled against a private defendant. Nor did FIRREA remove the plaintiffs' cause of action for damages. We agree with the Court of Federal Claims that the plaintiffs retained the full range of remedies associated with any contractual property right they possessed. Consequently, we hold that even assuming the enactment and enforcement of FIRREA breached a contract the government had with Castle and Harlan, it did not constitute a taking of the contract.

Castle v. United States, 301 F.3d 1328, 1342 (Fed. Cir. 2002); see Bailey v. United States, 53 Fed. Cl. 251, 256-57 (2002) (no taking of contract rights exist unless Government "takes" range of remedies associated with vindication of contract), aff'd, 341 F.3d 1342 (Fed. Cir. 2003); Integrated Logistics Support Sys. Int'l, Inc. v. United States, 42 Fed. Cl. 30, 34 (1998) (plaintiff "cannot exploit the Fifth Amendment to amend unilaterally a contract in an effort to rectify what hindsight reveals as an unappealing bargain"); Zoeller v. United States, 65 Fed. Cl. 449, 461-62 (2005) (rejecting takings claim predicated upon termination of lease agreement, noting that the

Government had not deprived plaintiff of contractual rights stemming from the breach of the agreement).

Here, the only right that PG&E has to require the Government accept and dispose of PG&E's SNF derives solely from the Standard Contract. See Commonwealth Edison, 56 Fed. Cl. at 655. Further, PG&E has not, and indeed cannot, allege that the Government has taken PG&E's contractual remedies as a result of the Government's delay in performance. In fact, PG&E has asserted its entitlement to contractual remedies in the form of damages based upon the Government's delay in the acceptance of PG&E's SNF. Under these circumstances, PG&E may not maintain a takings claim as a matter of law.

C. PG&E Cannot Assert A Physical Taking Of Its Property

Even if PG&E could assert a takings claim predicated upon a breach of the Standard Contract, PG&E has failed to establish a physical invasion of its property. In its complaint, it appears that PG&E is asserting a physical taking of its property. Humboldt Compl. ¶ 30 ("the effects of DOE's failure to perform is to convert HBPP Unit 3 into a nuclear waste storage facility"). To the extent that PG&E is asserting a physical (as opposed to a regulatory) taking of its property, its claim fails. As the United States Court of Appeals for the District of Columbia Circuit has held, DOE does not hold, and has not taken, title to the utilities' SNF. See Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272, 1276 (D.C. Cir. 1996). Accordingly, the SNF about which PG&E is complaining that it had to continue to store was PG&E's own SNF.

The Federal Circuit has expressly rejected the argument that anything less than a physical invasion of property by the Government could constitute a physical taking. In The Stearns Co.

Ltd. v. United States, 396 F.3d 1394 (Fed. Cir. 2005), the Federal Circuit was confronted with an allegation that a physical taking had occurred based upon the enactment of a regulation that affected the appellee's ability to engage in surface mining. Id. at 1346. The appellee argued that the denial of its "valid existing rights" application ("VER"), which would have allowed it to engage in mining, effected a physical taking because it unilaterally transferred the appellee's surface easement to the United States. Id. at 1357. In overturning the trial court's determination that the denial of the appellee's VER constituted a physical taking of the surface easement, the Federal Circuit reiterated long-standing precedent, noting that a physical taking occurs only "when the government itself occupies the property or 'requires the landowner to submit to physical occupation of its land.'" Id. (quoting Forest Props., Inc. v. United States, 177 F.3d 1360, 1364 (Fed. Cir. 1999), and Yee v. City of Escondido, 503 U.S. 519, 527 (1992)); see Lingle v. Chevron USA, Inc., 125 S. Ct. 2074, 2081 (2005) (noting that the "paradigmatic taking requiring just compensation is a direct appropriation or physical invasion of private property"); Tuthill Ranch, Inc. v. United States, 381 F.3d 1132, 1135 (Fed. Cir. 2004) (explaining that physical takings require physical possession). The Court then held that the Government had neither (1) occupied appellee's mineral property or the accompanying implied appurtenant easement, nor (2) required appellee to accept the physical presence of a third party on any of the property. Stearns, 396 F.3d at 1357.

Here, there is no physical occupation by the Government of the Humboldt facility, and the Government did not required PG&E to accept the presence of a third party upon its property. PG&E has not alleged that the Government federalized its facility or the generation of nuclear power at that facility. It cannot allege that the Government owns the SNF that PG&E's reactor

generated. See Indiana Michigan, 88 F.3d at 1276. PG&E merely alleges that it was required to continue storing its own SNF as a result of the Government's failure to perform under the Standard Contract. Even assuming the truth of all of PG&E's limited assertions, they simply do not constitute a physical taking of PG&E's property.

D. PG&E Has Not Identified Any Viable Regulatory Taking Of Its Property

To the extent that PG&E is claiming a regulatory taking, this argument also fails as a matter of law. Before the Court analyzes whether Government action constituted a regulatory taking, the plaintiffs must identify whether a protected property interest exists or, in other words, whether "the use interest proscribed by the government action was part of the owner's title to begin with." M&J Coal Co. v. United States, 47 F.3d 1148, 1154 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995). This Court has recognized that an "investment-backed expectation is not property." Ambase Corp. v. United States, 58 Fed. Cl. 32, 51 (2003). In this case, the only "property right" to have DOE accept the plaintiffs' SNF and to do so by any particular date arises from the Standard Contract, the mere breach of which, as previously discussed, cannot constitute the basis for a takings action. In Ambase, the plaintiff had alleged that, "as the sole shareholder of [the contracting party], it had a reasonable investment-backed expectation that the government would honor the goodwill contracts with [the contracting party], and that the enforcement of FIRREA confiscated that expectation . . . ." Id. at 50. The Court rejected this argument, finding that, because the "right" at issue was created through a contract with the Government, the only remedy was a contract-based remedy by the contract holder:

> In light of these general concepts, the issue in this case is whether an action by the government against the corporation, that destroys the corporation's value, can be the legal cause of the shareholder's

> loss in value. The answer seems to the Court to depend on what the character of the government action was. If the government's action is legally compensable under some remedial system then the answer appears to be that there is no legal cause that would justify a takings claim. In this case that is clearly the situation. The government's breach of contract creates in the corporation, here Carteret, a cause of action against the government. If Carteret prevailed in the breach of contract action, the corporation would be restored to the position it would have been in and the shareholder would have lost nothing by the government's action. Therefore, <u>the takings claim can only exist if there is no remedy other than a takings claim for the government's breach of contract</u>. But clearly there is a contract remedy.

<u>Id.</u> at 52 (emphasis added; citations omitted). PG&E has contract remedies and has availed itself of those contract remedies by filing suit. No valid regulatory takings claim exists.

Similarly, PG&E has not identified any regulation by the Government that allegedly took its property. PG&E's complaint is devoid of reference to any regulation that "took" its property, and we are not aware of any. Indeed, the only governmental action alleged by PG&E is the Government's failure to perform under the Standard Contract. Accordingly, PG&E's regulatory takings claim should be dismissed.

Further, the Supreme Court has held that, in considering whether a regulatory taking has occurred, courts must look at the totality of the claimant's property rights, not specific segments of those rights:

> "Taking" jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights n the parcel as a whole – here, the city tax block designated as the "landmark site."

Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 327 (2002) (quoting Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 130-31 (1978)). "Where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking." Id. (quoting Andrus v. Allard, 444 U.S. 51, 65-66 (1979)). In this case, PG&E does not even allege the "destruction of one 'strand' of the bundle." Instead, it alleges that the Government's delay in accepting SNF resulted in the storage of certain SNF assemblies for longer than contractually mandated. Under the most basic analysis, PG&E's regulatory takings claim fails.

E. PG&E Has Failed To Set Forth Any Evidence Concerning The Value Of The Property That Was Allegedly Taken

Even if PG&E could overcome the fatal legal flaws in its takings claim, PG&E's takings claim fails as a matter of fact. PG&E has presented absolutely no evidence concerning the value of the property that the Government allegedly took as a result of its failure to timely perform under the Standard Contract. PG&E did not identify a single witness in its initial disclosures concerning its takings claim or the value of its property both before and after the alleged "taking." App. 1-9.[5] Further, PG&E recently submitted its expert reports to the Government and has not identified a property appraiser or other expert who has evaluated PG&E's takings claim. In short, even if PG&E was not legally precluded from bring a takings claims under the circumstances, PG&E's claim should be dismissed for a failure of proof.

[5] "App. __" refers to the appendix to this motion.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant summary judgment in the Government's favor upon Counts II and III of PG&E's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT DAMELIN
SHARON SNYDER
JOSHUA E. GARDNER
TODD J. COCHRAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

s/John C. Ekman
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 353-0897
Fax: (202) 307-2503

November 15, 2005

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2005, a copy of foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNTS II AND III OF PLAINTIFF'S COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Joshua E. Gardner