No. 04-0074C
into which has been consolidated No. 00-0075C
(Judge Hewitt)

---

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

---

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S OPPOSITION TO PACIFIC GAS & ELECTRIC'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE AND RESPONSE TO THE COURT'S NOVEMBER 16, 2005 ORDER

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 307-0282
Fax: (202) 514-8624

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT R. DAMELIN
SHARON A. SNYDER
JOSHUA E. GARDNER
TODD J. COCHRAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

November 23, 2005

Attorneys for Defendant

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . iii

INDEX TO THE APPENDIX . . . . . . . . . . viii

BACKGROUND . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . 7

I. PG&E'S CHALLENGES TO DELIBERATIVE PROCESS PRIVILEGE CLAIMS THAT JUDGE SYPOLT AND SENIOR JUDGE MEROW HAVE ALREADY UPHELD SHOULD BE SUMMARILY REJECTED . . . . . . . . . . 7

II. THE COURT IN THIS CASE HAS ALREADY HELD THAT MANY OF THE CATEGORIES OF DOCUMENTS NOW SOUGHT BY PG&E AND WITHHELD BY THE GOVERNMENT PURSUANT TO THE DELIBERATIVE PROCESS PRIVILEGE ARE NOT RELEVANT TO PG&E'S CLAIM . . . . . . . . . . 9

III. PG&E'S CHALLENGES TO THE GOVERNMENT'S DELIBERATIVE PROCESS PRIVILEGE CLAIMS ARE WITHOUT MERIT . . . . . . . . . . 11

A. The Deliberative Process Privilege Allows The Government To Prevent The Disclosure Of Discussions And Methods Of Reasoning Of Its Officials, Which, If Subject To Disclosure, Would Temper Candor During The Decision-Making Process . . . . . . . . . . 11

B. As Judge Sypolt And Senior Judge Merow Have Already Held In The SNF Cases, The Secretary Of The Department of Energy And The Chairman Of The Nuclear Regulatory Commission Are Entitled To Delegate Their Authority To Invoke The Deliberative Process Privilege To Their Subordinates . . . . . . . . . . 13

C. DOE And The NRC Have Properly Invoked The Deliberative Process Privilege . . . . . . . . . . 21

1. The Office Of Civilian Radioactive Waste Management Has Properly Invoked The Deliberative Process Privilege . . . . . 21

TABLE OF CONTENTS (cont'd)

PAGE

2. The Office of Environmental Management Has Properly Invoked The Deliberative Process Privilege . . . . . . . . . . . . . . . . 25

3. The Office Of The Inspector General Has Properly Invoked The Deliberative Process Privilege . . . . . . . . . . . . . . . . . . . . . . 26

4. The Nuclear Regulatory Commission Has Properly Invoked The Deliberative Process Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . 27

D. PG&E Has Established No Need For Overcoming DOE's And The NRC's Assertion Of Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

IV. THE SECRETARY OF ENERGY'S LONG-STANDING PRACTICE OF DELEGATING THE AUTHORITY TO ASSERT THE DELIBERATIVE PROCESS PRIVILEGE IS BASED UPON BROAD STATUTORY AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

TABLE OF AUTHORITIES

CASES PAGE(S)


Abramson v. United States,
39 Fed. Cl. 290 (1997) . . . . . . . . . . 12, 23, 27

Alexander v. FBI,
186 F.R.D. 154 (D.D.C. 1999) . . . . . . . . . . 15

Association for Women in Science v. Califano,
566 F.2d 339 (D.C. Cir. 1977) . . . . . . . . . . 15

Beacon Oil Co. v. O'Leary,
71 F.3d 391 (Fed. Cir. 1995) . . . . . . . . . . 18

Branch v. Phillips Petroleum Co.,
638 F.2d 873 (5th Cir. 1981) . . . . . . . . . . 14

Brockway v. Department of the Air Force,
518 F.2d 1184 (8th Cir.1975) . . . . . . . . . . 12

CACI Field Services, Inc. v. United States,
12 Cl. Ct. 680 (1987) . . . . . . . . . . 12

Carl Zeiss, Stiftung v. V.E.B. Carl Zeiss, Jena,
40 F.R.D. 318 (D.D.C. 1966), aff'd, 384 F.2d 979,
cert. denied, 389 U.S. 952 (1967) . . . . . . . . . . 12, 23, 27

Cetron Electronic Corp. v. United States,
207 Ct. Cl. 985 (1975) . . . . . . . . . . 16, 19

Committee for Nuclear Responsibility, Inc. v. Seaborg,
463 F.2d 788 (D.C. Cir. 1971) . . . . . . . . . . 23

Consolidated Edison Co. of New York, Inc. v. Richardson,
232 F.3d 1380 (Fed. Cir. 2001) . . . . . . . . . . 21

Elliott v. United States Federal Energy Regulatory Commission,
95 F.3d 1121 (Fed. Cir. 1996) . . . . . . . . . . 21

In re Franklin Nat'l Bank Securities Litigation,
478 F. Supp. 577 (E.D.N.Y. 1979) . . . . . . . . . . 23

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

Gately v. Commonwealth of Massachusetts,
2 F.3d 1221 (1st Cir. 1993), cert. denied, 511 U.S. 1082 (1994) . . . . . . . . . . . . . . . . . 18

Grossman v. Schwarz,
125 F.R.D. 376 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Halkin v. Helms,
598 F.2d 1 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Houston Oil & Refining, Inc. v. United States Federal Energy Regulatory Commission,
95 F.3d 1126 (Fed. Cir. 1996), cert. denied sub nom. Imparato v. F.E.R.C.,
520 U.S. 1228 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Jade Trading, LLC v. United States,
65 Fed. Cl. 487 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Kaiser Aluminum & Chemical Corp. v. United States,
141 Ct. Cl. 38, 157 F. Supp. 939 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Koehler v. United States,
1991 WL 277542 (D.D.C. Dec. 9, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Landry v. Federal Deposit Insurance Corp.,
204 F.3d 1125 (D.C. Cir.), cert. denied, 531 U.S. 924 (2000) . . . . . . . . . . . . . 15, 16, 19

Marriott International Resorts L.P. v. United States,
61 Fed. Cl. 411 (2004), interlocutory appeal pending 122 Fed. Appx. (Fed. Cir.) 13, 14

Martin v. Albany Business Journal, Inc.,
780 F. Supp. 927 (N.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Mary Imogene Bassett Hospital v. Sullivan,
136 F.R.D. 42 (N.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Mead Data Central, Inc. v. Air Force,
566 F.2d 242 (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

NLRB v. Sears, Roebuck & Co.,
421 U.S. 132 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

Perri v. United States,
53 Fed. Cl. 381 (2002) . . . . . . . . 8

Redland Soccer Club, Inc. v. Department of the Army,
55 F.3d 827 (3d Cir. 1995), cert. denied, 516 U.S. 1071 (1996) . . . . . . . . 22, 23

Roviaro v. United States,
353 U.S. 53 (1957) . . . . . . . . 14

Sanchez v. Johnson,
No. C-00-1593, 2001 WL 1870308 (N.D. Cal. Nov. 19, 2001) . . . . . . . . 16

Scott Paper Co. v. United States,
943 F. Supp. 489 (E.D. Pa. 1996) . . . . . . . . 23

Scott v. PPG Industries, Inc.,
142 F.R.D. 291 (N.D.W. Va. 1992) . . . . . . . . 23

Seigel Oil Co. v. Richardson,
208 F.3d 1366 (Fed. Cir. 2000) . . . . . . . . 21

Simmons Oil Corp. v. Tesoro Petroleum Corp.,
86 F.3d 1138 (Fed. Cir. 1996) . . . . . . . . 21

Soucie v. David,
448 F.2d 1067 (D.C. Cir. 1971) . . . . . . . . 12

Texas American Oil Corp. v. United States Department of Energy,
44 F.3d 1557 (Fed. Cir. 1995) . . . . . . . . 20

Tuite v. Henry,
98 F.3d 1411 (D.C. Cir. 1996) . . . . . . . . 14

United States Department of Energy v. Brett,
659 F.2d 154 (Temp. Em. Ct. App. 1981), cert. denied, 456 U.S. 936
(1982) . . . . . . . . 14, 19, 20

United States v. AT&T,
524 F. Supp. 1381 (D.D.C. 1981) . . . . . . . . 23

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

United States v. Electro-Voice, Inc.,
879 F. Supp. 919 (N.D. Ind. 1995) . . . . . . . . . . 22

United States v. Farley,
11 F.3d 1385 (7th Cir. 1993) . . . . . . . . . . 23

United States v. IBM,
20 F.R. Serv. 2d 1082 (S.D.N.Y. 1975) . . . . . . . . . . 23

United States v. L.A. Tucker Truck Lines, Inc.,
344 U.S. 33 (1952) . . . . . . . . . . 18

United States v. Nixon,
418 U.S. 683 (1974) . . . . . . . . . . 11

United States v. Reynolds,
345 U.S. 1 (1953) . . . . . . . . . . 20

Vaughn v. Rosen,
484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974) . . . . . . . . . . 20

Vons Companies, Inc. v. United States,
51 Fed. Cl. 1 (2001) . . . . . . . . . . 21

Walsky Construction Co. v. United States,
20 Cl. Ct. 317, 320 (1990) . . . . . . . . . . 12, 13

Wilder v. Apfel,
153 F.3d 799 (7th Cir. 1998) . . . . . . . . . . 18

Yankee Atomic Electric Co. v. United States,
54 Fed. Cl. 306 (2002) . . . . . . . . . . 7, 13, 21

STATUTES

5 U.S.C. App. 3 . . . . . . . . . . 26

42 U.S.C. §§ 2021b-2021i . . . . . . . . . . 5

TABLE OF AUTHORITIES (cont'd)

STATUTES PAGE(S)

42 U.S.C. § 7252 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 29

42 U.S.C. § 10224(a)-(b) (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

MISCELLANEOUS

Restatement (Second) of Agency § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

INDEX TO THE APPENDIX


DOCUMENT PAGE(S)

Declaration of Ronald Milner, dated May 13, 2002 . . . . . 1

Declaration of Ronald Milner, dated June 13, 2003 . . . . . 13

Declaration of Ronald Milner, dated June 13, 2003 . . . . . 19

Declaration of Ronald Milner, dated November 10, 2005 . . . . . 27

Citations to Department of Energy's Previous Orders Delegating the Authority to Assert the Deliberative Process Privilege . . . . . 48

42 U.S.C. § 7252 . . . . . 51

December 6, 2001 Delegation of Authority from Secretary of Energy Delegation Order No. 00-002.00 to the Under Secretary for Energy, Science, and Environment . . . . . 53

January 8, 2002 Redelegation Order No. 00-002.06 from Under Secretary for Energy, Science, and Environment to the Director, Office of Civilian Radioactive Waste Management . . . . . 64

42 U.S.C. § 7132 . . . . . 67

May 13, 2002 Memorandum and Amendment to Delegation Order No. 00-002.00 from Secretary of Energy to Under Secretary for Energy, Science, and Environment Authorizing the Assertion of the Deliberative Process Privilege . . . . . 68

May 13, 2002 Amendment to Redelegation Order No. 00-002.06 from Under Secretary of Energy, Science, and Environment to Director of OCRWM Authorizing the Assertion of Deliberative Process Privilege . . . . . 71

May 13, 2002 Delegation of Authority from Director of OCRWM to Ronald Milner Authorizing the Assertion of Deliberative Process Privilege . . . . . 72

September 12, 2002 Delegation of Authority from Secretary of Energy Delegation Order No. 00-002.00A to the Under Secretary for Energy, Science, and Environment . . . . . 73

October 4, 2004 Delegation of Authority from Secretary of Energy Delegation Order No. 00-002.00B to the Under Secretary for Energy, Science, and Environment . . . . . 84

INDEX TO THE APPENDIX (cont'd)

DOCUMENT PAGE(S)

April 13, 2005 Delegation of Authority from Secretary of Energy Delegation Order No. 00-002.00C to the Under Secretary for Energy, Science, and Environment . . . . . . . . . . . . 95

August 26, 2005 Delegation of Authority from Secretary of Energy Delegation Order No. 00-002.00D to the Under Secretary for Energy, Science, and Environment . . . . . . . . . . . 107

November 23, 2005 Amendment to Delegation Order No. 00-002.00D from Secretary of Energy to the Under Secretary for Energy, Science, and Environment Authorizing the Assertion of Deliberative Process Privilege . . . . . . . . . . . . . . . . . . . . . . . . . 119

Declaration of Patrice Bubar, dated June 12, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120

Declaration of Frank Marcinowski, dated November 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . 130

January 8, 2002 Redelegation Order No. 00-002.03 from Under Secretary for Energy, Science, and Environment to the Assistant Secretary for Environmental Management Authorizing the Assertion of the Deliberative Process Privilege . . . . . . . . . . . . . . . . . . . . . . 142

June 11, 2003 Delegation of Authority from the Assistant Secretary for Environmental Management to Patrice Bubar Authorizing the Assertion of the Deliberative Process Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 145

November 10, 2005 Delegation of Authority from the Assistant Secretary for Environmental Management to Frank Marcinowski Authorizing the Assertion of the Deliberative Process Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 146

Declaration of Gregory H. Friedman, dated June 10, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . 147

Inspector General Act of 1978, as amended, 5 U.S.C. App. 3 . . . . . . . . . . . . . . . . . . . . . . . . 150

Declaration of Martin J. Virgilio, dated June 9, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 176

Declaration of Martin J. Virgilio, dated November 9, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . 186

Nuclear Regulatory Commission Organization Chart, Description of the NRC Office of the Executive Director for Operations, and Biographical Information for Martin J. Virgilio . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 194

July 24, 2002 Delegation of Authority from Richard A. Meserve to Martin J. Virgilio Authorizing the Assertion of the Deliberative Process Privilege . . . . . . . . . . . . . . . 199

INDEX TO THE APPENDIX (cont'd)

DOCUMENT PAGE(S)

September 5, 2002 Memorandum Regarding Delegation of Authority from Richard A. Meserve to Martin J. Virgilio Authorizing the Assertion of the Deliberative Process Privilege . . . . . 200

Nuclear Regulatory Commission, Reorganization Plan No. 1 of 1980, Sec. 4, 5 U.S.C. App. I . . . . . 202

Nuclear Regulatory Commission Standards for Delegation of Authority, Management Directive 9.1, App., Part IV . . . . . 206

Delegation of Authority from David J. Baird, Administrator, Economic Regulatory Administration to F. Scott Bush, Acting Assistant Administrator for Regulations and Emergency Planning, Authorizing Assertion of the Deliberative Process Privilege, dated July 19, 1979, and Letter from Department of Energy to the Honorable Thomas R. Brett, dated January 21, 1980 . . . . . 239

Table, Post-January 22, 2004 Deliberative Process Documents . . . . . 252

Table, Revisions to Government's Privilege Log . . . . . 263

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0074C, into which has been |
| | ) | consolidated No. 04-0075C |
| THE UNITED STATES, | ) | (Judge Hewitt) |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PACIFIC GAS & ELECTRIC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE AND RESPONSE TO THE COURT'S NOVEMBER 16, 2005 ORDER

Defendant, the United States, respectfully responds to "Pacific Gas & Electric's Motion To Compel Production Of Documents Withheld Under the Deliberative Process Privilege," dated October 19, 2005. In addition, we respectfully respond to the Court's order dated November 16, 2005. In its motion to compel, plaintiff, Pacific Gas & Electric Company ("PG&E"), seeks the production of 465 documents that the Government has withheld upon the basis of the deliberative process privilege. PG&E's motion is without merit and should be denied.

## BACKGROUND

This motion represents the third attempt by counsel for PG&E, this time before a third judge, to overcome the Government's successful invocation of the deliberative process privilege over particular documents. In the motion now pending before this Court, PG&E asks to reevaluate those deliberative process decisions that these prior judges have already made in the spent nuclear fuel ("SNF") litigation, seeking to have this Court review de novo the same privilege claims over the same documents that Senior Judge Merow and Judge Sypolt have already upheld (in addition to asking this Court to consider some additional deliberative process

privilege challenges now being made for the first time). As the Court is aware, there are currently 59 SNF cases pending in this Court. The documents that the Government produces in each of those 59 cases are essentially the same: that is, the same documents form the foundation for at least some of the claims and defenses in all of the 59 pending cases. If the Government is required to produce the challenged privileged documents in this case, it will have to produce them in all 59 cases. Accordingly, any reevaluation of the prior judges' decisions upon these privilege claims over documents for which they have already upheld the invocation of the privilege would essentially eviscerate those decisions, given that, once produced, the documents are available to all SNF plaintiffs. Although there are additional documents with privilege claims now at issue in PG&E's motion that this Court has not previously considered, PG&E's motion highlights the importance of comity in the decisions of this Court regarding the documents at issue in the SNF cases.

First, by motions dated March 27 and April 3, 2002,[1] the Yankee plaintiffs[2] sought to challenge the Government's assertions of privilege over those documents that had been identified as privileged to that point. By order dated May 1, 2002, Senior Judge Merow transferred that motion to Judge Sypolt for consideration as part of the coordinated SNF discovery proceedings with a motion to compel filed by the other utility plaintiffs. In support of the Government's assertion of deliberative process privilege over 24 documents from the Office of Civilian

---

1/ The April 3, 2002 motion was a "supplemental" motion to compel documents identified on the Government's March 12, 1999 privilege log.

2/ Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.); Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Fed. Cl.); and Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Fed.Cl.).

Radioactive Waste Management ("OCRWM") of the Department of Energy ("DOE"), Ronald Milner, Chief Operating Officer, OCRWM, executed an affidavit on May 13, 2002 to invoke deliberative process privilege over these documents. App. 1-12. By order dated October 9, 2002, Judge Sypolt, relying upon Mr. Milner's affidavit and the accompanying delegation of authority emanating from the Secretary of Energy, denied all of the utility plaintiffs' challenges.[3]

On July 3, 2002, while Judge Sypolt was considering the utility plaintiffs' motion to compel, the Yankee plaintiffs also filed with Senior Judge Merow another motion to compel, this time seeking the testimony of Mr. Robert Campbell and the production of documents by the Nuclear Regulatory Commission ("NRC") and DOE regarding the NRC's response to an inquiry made by Dr. Andrew Kadak on the NRC's determination regarding the final disposal of Greater-Than-Class-C ("GTCC") low-level radioactive waste. Senior Judge Merow, on the basis of Judge Sypolt's October 9, 2002 ruling, denied the Yankee plaintiffs' motion to compel. The Yankee plaintiffs then sought to depose Martin J. Virgilio, then Director of the NRC's Office of Nuclear Material Safety & Safeguards, regarding his assertion of deliberative process privilege in support of the Government's opposition to the Yankee plaintiffs' motion to compel the production of documents and testimony regarding the NRC's response to Mr. Kadak. The Court granted the Government's motion to quash the deposition notice by order dated October 16, 2002. In each of the orders entered in these earlier cases, Judge Sypolt and Senior Judge Merow denied each of the plaintiffs' challenges to the Government's assertions of privilege. Despite the record to that point in time, the Yankee plaintiffs persisted in their attempts to challenge virtually

[3] By a filing dated August 5, 2002, the utility plaintiffs reduced the number of their challenges to the Government's assertion of attorney-client or attorney work product privilege from 925 documents to 276 documents.

every assertion of privilege and, by motion filed March 6, 2003, moved to compel every document withheld by the Government under the deliberative process privilege, including those upon which Judge Sypolt had already ruled in the coordinated discovery proceedings, as well as 51 of the Government's claims of attorney-client privilege and attorney work product protection. The Yankee plaintiffs also sought to compel deposition testimony on matters described in those documents.

The Yankee plaintiffs' motion to compel resulted in extensive briefing, as explained by Senior Judge Merow, in his order ruling on the motion, filed August 25, 2003:

> By motion, filed March 6, 2003, plaintiff seeks to compel production of document and testimony withheld by defendant as privileged in 2003. Plaintiff's motion comprised 476 pages, including preface and appendix. Defendant's opposition, filed June 20, 2003, comprised 144, including preface and appendix. Plaintiff's reply, filed August 5, 2003, comprised 116 pages, including preface and appendix. Thus, analysis of the briefing in this matter has required preparation and study of 736 pages of material dealing with well over 250 claims of privilege.

In support of the Government's assertion of deliberative process privilege over a number of documents, officials from DOE and the NRC executed a total of five affidavits. Mr. Milner executed two new affidavits, both dated June 13, 2003. One of these affidavits asserted deliberative process privilege upon behalf of OCRWM for 35 documents involving OCRWM's Fiscal Year 2003 budget documents, and another affidavit asserted deliberative process privilege upon behalf of OCRWM for 27 documents that did not involve Fiscal Year 2003 budget matters. App. 13-26. Gregory H. Friedman, Inspector General, DOE, asserted deliberative process privilege upon behalf of the Office of Inspector General ("OIG") for three documents. App. 147-149. Patrice M. Bubar, Deputy Assistant Secretary for Integration and Disposition, Office

of Environmental Management ("EM"), DOE, asserted deliberative process privilege upon behalf of DOE over 89 documents. App. 120-129. Martin J. Virgilio, Director, NRC Office of Nuclear Materials Safety and Safeguards ("NMSS"), asserted deliberative process privilege upon behalf of the NRC for 46 documents. App. 176-185. All of these declarations were supported by delegations from either the Secretary of Energy or the Chairman of the NRC.

In his August 25, 2003 order, Senior Judge Merow ordered that the Government produce a number of documents to the plaintiffs, either in whole or after redactions, related to the "Government's plans with respect to its obligation, pursuant to the Low-Level Radioactive Waste Policy Amendments Act of 1985, 42 U.S.C. §§ 2021b-2021i, to dispose of [Greater-Than-Class-C low-level radioactive waste] ("GTCC") . . . ." However, Senior Judge Merow concluded that, "[w]ith the exception of the above-listed production, it is concluded that the assertions of privilege by defendant are otherwise, sustained." Senior Judge Merow's order to produce documents involved the deliberative process documents cited in Ms. Bubar's affidavit, which was related to DOE policy regarding GTCC waste acceptance matters pursuant to the Low-Level Radioactive Waste Amendments Act of 1985 within the cognizance of EM.

PG&E now seeks to revisit all of these prior decisions sustaining the Government's deliberative process privilege claims, as well as to challenge every deliberative process privilege claim made since those prior decisions. In support of the Government's opposition to PG&E's motion to compel, DOE and NRC officials have executed three additional affidavits to support the assertion of deliberative process privilege over 315 documents challenged by PG&E. The documents referenced in the three affidavits are not covered by the prior affidavits submitted to Judge Sypolt and Senior Judge Merow. However, many of the documents in the new affidavits

are substantially similar to documents covered by Judge Sypolt's and Senior Judge Merow's prior orders.

First, Mr. Milner executed an affidavit, dated November 10, 2005, and asserted deliberative process privilege upon behalf of DOE over 181 documents from OCRWM. App. 27-47. Second, Frank Marcinowski, Deputy Assistant Secretary for Logistics and Waste Disposition Enhancements in DOE's Office of Environmental Management, executed an affidavit, dated November 2005, and asserted deliberative process privilege upon behalf of DOE over 116 documents from the Office of Environmental Management. App. 130-141. Third, Martin Virgilio, Deputy Executive Director for Materials, Research, State and Compliance Programs, NRC, executed an affidavit, dated November 9, 2005, and asserted deliberative process privilege upon behalf of the NRC over 18 documents from the NRC. App. 186-193. As noted above, both Mr. Milner and Mr. Virgilio executed affidavits on behalf of DOE and the NRC, respectively, in the prior litigation before Judge Sypolt and Senior Judge Merow. All of these declarations are supported by appropriate delegations of authority from the Secretary of Energy and the Chairman of the NRC.

Upon further review of the 465 documents in preparation of the Government's response to PG&E's motion to compel and the preparation of affidavits, the Government has identified two additional documents to be produced, eliminating two entries from the Government's privilege log. In addition, we have determined that there was a duplicate document entered on our privilege log and that one of the documents was merely a portion of a larger document entered separately on the privilege log. In addition, the entry for a document previously released in redacted form has been revised to reflect an assertion of attorney-client privilege only, not

deliberative process. Revisions to the privilege log entries for the documents that will be released or changed are attached. App. 263-264. Copies of the documents that we have determined we can release will be provided to counsel for PG&E through the Government's document production website. As a result, 460 documents remain at issue for PG&E's motion to compel.

## DISCUSSION

### I. PG&E'S CHALLENGES TO DELIBERATIVE PROCESS PRIVILEGE CLAIMS THAT JUDGE SYPOLT AND SENIOR JUDGE MEROW HAVE ALREADY UPHELD SHOULD BE SUMMARILY REJECTED

In its motion to compel, PG&E challenges the Government's assertion of privilege regarding every single document over which the Government has asserted the deliberative process privilege, and a substantial number of the documents over which the Government has asserted attorney-client privilege and attorney work-product protection in the Government's privilege log. As described above, in response to the Government's prior privilege logs, the utility plaintiffs involved in the coordinated discovery proceedings, and then the Yankee plaintiffs, challenged the Government's claims of deliberative process privilege. In an order applicable to the SNF litigation, Judge Sypolt uniformly upheld all of the Government's claims of privilege over the documents identified in Mr. Milner's May 13, 2002 affidavit. Yankee Atomic Elec. Co. v. United States, 54 Fed. Cl. 306, 316-17 (2002). Despite that ruling, less than one year later, the Yankee plaintiffs' again challenged the Government's claims of privilege, including challenges to the same documents upon which Judge Sypolt has already ruled and upheld the assertion of deliberative process privilege. Senior Judge Merow, in his August 25, 2003, upheld the majority of the Government's assertions of deliberative process privilege.

Although the decisions of Judge Sypolt and Senior Judge Merow are not expressly binding on this Court, it is clear that the Court's intent was for the coordinated discovery proceedings to resolve in a uniform fashion for all SNF cases those matters that were presented to it. PG&E – represented by the same set of attorneys who were intimately involved in the coordinated SNF discovery proceedings and in Yankee – should not be allowed to "re-raise" the same demands for production of those documents outside the context of that coordinated effort. See Perri v. United States, 53 Fed. Cl. 381, 405 (2002) (after trial court denied motion to compel production of certain documents, trial court rejected later subsequent attempt again to demand that production where "plaintiff [had] not presented any reason – such as a demonstrable error, injustice, or other 'special circumstances' – for the court to reconsider that ruling now"). Judge Sypolt and Senior Judge Merow, as evidenced by their orders and extensive evidence and briefing available at the time of their decisions, have already considered and rejected PG&E's challenges to the Government's claims of deliberative process privilege over 145 of those documents in its current motion.

As the Court is aware, 59 SNF cases, including those filed by PG&E, are currently pending in the Court of Federal Claims. Because these cases involve many common legal and factual issues, the Court of Federal Claims instituted a coordinated discovery procedure, in which certain "schedule-related" discovery matters were resolved by a "discovery judge," who exercised delegated authority over all of the related cases. Following the close of the coordinated discovery period, a number of the individual cases proceeded into discovery.

Following the coordinated discovery period, and upon completion of the individual discovery periods, seven cases have proceeded to trial: Indiana Michigan Power Co. v. United

States, Yankee Atomic Electric Co. v. United States, Connecticut Yankee Atomic Power Company v. United States, Maine Yankee Atomic Power Company v. United States, Sacramento Municipal Utility District v. United States, Tennessee Valley Authority v. United States, and Southern Nuclear Operating Company v. United States. The Court's prior ruling on these 145 documents have remained the status quo in all of these cases and throughout all of these trials. Continued and repetitive litigation over the deliberative process privilege assertions upon which Judge Sypolt and Senior Judge Merow already ruled should not be permitted. The assertions of deliberative process privilege over those 145 documents should be sustained by this Court.

## II. THE COURT IN THIS CASE HAS ALREADY HELD THAT MANY OF THE CATEGORIES OF DOCUMENTS NOW SOUGHT BY PG&E AND WITHHELD BY THE GOVERNMENT PURSUANT TO THE DELIBERATIVE PROCESS PRIVILEGE ARE NOT RELEVANT TO PG&E'S CLAIM

Based upon the Court's orders dated October 18 and October 24, 2005, many of the documents now sought by PG&E have already been excluded from the scope of the Government's document production obligations. The Court's orders granted in part, and denied in part, PG&E's motion to compel discovery, filed August 25, 2005, seeking to compel the Government to produce documents requested in PG&E's First Request for Production of Documents. In particular, PG&E sought to compel the production of documents pursuant to 15 separate requests. Following extensive briefing and two telephone conferences, the Court issued orders denying or limiting many of PG&E's requests. With regard to those rulings that are relevant here, the Court in its October 18 and 24, 2005 orders denied PG&E's requests for documents in several categories to the extent that they were created after January 22, 2004.

Specifically, with regard to PG&E's Document Request No. 15, which sought documents related to the "order or sequence in which DOE will accept spent fuel from utilities, including but not limited to the order in which DOE would have accepted spent fuel if it had started accepting such fuel on or before January 31, 1998," the order that DOE will accept spent fuel when its begins acceptance, and any plans or estimates by DOE for the order or schedule of acceptance, the Court denied PG&E's request to the extent that documents were created after January 22, 2004. With regard to PG&E's Document Request No. 26, seeking documents related to the "storage, disposal, transportation, preparation, packaging, inspection and pickup of GTCC waste," the Court again limited PG&E's request to documents on or before January 22, 2004, and further limited PG&E's request to those documents relating to whether GTCC waste is covered by the Standard Contract and the schedule upon which DOE would accept GTCC waste had it timely begun that acceptance under the Standard Contract. Regarding PG&E's Document Request No. 29, seeking documents related to the "storage, disposal, transportation, preparation, packaging, inspection, and pickup of nonstandard fuel, failed fuel or other than standard fuel," the Court denied PG&E's request for documents created after January 22, 2004, and limited PG&E's request to those documents relating to the schedule upon which DOE would accept failed or nonstandard fuel had it timely begun that acceptance under the Standard Contract.

As a result of the Court's October 18 and 24, 2005 orders, and the limitations placed upon PG&E's requests for production of documents in those orders, the Government has identified at least 45 documents, withheld by the Government pursuant to the deliberative process privilege, that relate to those requests and were created after January 22, 2004. App. 252-262. We see no reason to revisit the Court's October 18 and 24, 2005 orders and the

limitations upon categories of documents identified there. In accordance with the rulings in those orders, the documents identified at pages 252 through 262 of the appendix to this response are not responsive to any pending document request, as narrowed by the Court, and the Court should deny PG&E's motion to compel these 45 documents based upon the rationale of its October 18 and 24, 2005 orders.

## III. PG&E'S CHALLENGES TO THE GOVERNMENT'S DELIBERATIVE PROCESS PRIVILEGE CLAIMS ARE WITHOUT MERIT

### A. The Deliberative Process Privilege Allows The Government To Prevent The Disclosure Of Discussions And Methods Of Reasoning Of Its Officials, Which, If Subject To Disclosure, Would Temper Candor During The Decision-Making Process

In United States v. Nixon, 418 U.S. 683, 705 (1974), the United States Supreme Court explained that "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." Accord NLRB v. Sears, Robuck & Co., 421 U.S. 132, 151 (1975). Because of this fact and the strong public interest in having Government officials candidly discuss prospective operations and policies, it is well-established that the Government may invoke certain executive privileges, including the deliberative process privilege, which are not available to other parties. The deliberative process privilege allows the Government to prevent the disclosure of the discussions and methods of reasoning of its officials, which, if subject to disclosure, would temper candor during the decision-making process. E.g., NLRB v. Sears, Roebuck & Co., 421 U.S. at 151; Kaiser Aluminum & Chemical Corp. v. United States, 141 Ct. Cl. 38, 47-50, 157 F. Supp. 939, 944-47 (1958).

This Court has held that the deliberative process privilege applies to “inter- and intra-agency deliberative communications or official information, [and] protects ‘documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which Governmental decisions and policies are formulated.’” CACI Field Services, Inc. v. United States, 12 Cl. Ct. 680, 686 (1987) (quoting Carl Zeiss, Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 324 (D.D.C. 1966), aff’d, 384 F.2d 979, cert. denied, 389 U.S. 952 (1967)). Documents properly withheld pursuant to the deliberative process privilege must satisfy two legal requirements. First, the documents must be pre-decisional – that is, they must precede the subject decision in temporal sequence. Walsky Construction Co. v. United States, 20 Cl. Ct. 317, 320 (1990). Second, the documents must be deliberative; that is, the documents must reflect the "interchange of recommendations and deliberations that contribute to the decision-making or policymaking process." CACI, 12 Cl. Ct. at 687.

Although the deliberative process privilege does not shield documents that simply state or explain a decision that the Government has already made or protect material that is purely factual, where the factual material is so intertwined with the deliberative material that it is not reasonably severable, courts have upheld the assertion of the deliberative process privilege as to entire documents. See, e.g., Mead Data Central, Inc. v. Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977) (citing Brockway v. Department of the Air Force, 518 F.2d 1184, 1194 (8th Cir.1975)); Soucie v. David, 448 F.2d 1067 (D.C. Cir. 1971). Nonetheless, any assertion of the deliberative process privilege must be made in the context of an Executive privilege and must meet the formalities required for the proper assertion of a common-law Executive privilege. Abramson v.

United States, 39 Fed. Cl. 290, 294 (1997). To assert the privilege, the Government must follow a three-step process:

> First, the head of the agency that has control over the requested document must assert the privilege after personal consideration. Second, the head of the agency must state with particularity what information is subject to the privilege. Third, the agency must supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document.

Walsky Construction, 20 Cl. Ct. at 320 (citations omitted).

B. As Judge Sypolt And Senior Judge Merow Have Already Held In The SNF Cases, The Secretary Of The Department of Energy And The Chairman Of The Nuclear Regulatory Commission Are Entitled To Delegate Their Authority To Invoke The Deliberative Process Privilege To Their Subordinates

PG&E argues that the deliberative process privilege may only be asserted by the head of the agency. Pl. Br. 13-17. However, this issue has already been rejected in the SNF cases by Judge Sypolt, Yankee Atomic Elec. Co. v. United States, 54 Fed. Cl. 306, 310-11 (2002), and Judge Sypolt's decision was recognized by Senior Judge Merow in his order dated August 25, 2003. As Judge Sypolt recognized, the head of the agency is, in fact, entitled to delegate the authority to assert the deliberative process privilege to subordinate employees. Yankee Atomic, 54 Fed. Cl. at 310-11.

PG&E asserts that the "mandatory requirement of an affidavit from the agency head has been recently affirmed in this Court by Judges Lettow and Williams." Pl. Br. 13-15. (citing Marriott Int'l Resorts L.P. v. United States, 61 Fed. Cl. 411, 419 (2004) (Lettow, J.); Jade Trading, LLC v. United States, 65 Fed. Cl. 487, 493 (2005) (Williams, J.). Although those judges have recently found that the head of an agency is not entitled to delegate his authority, the issue is now before the United States Court of Appeals for the Federal Circuit in an interlocutory

appeal of the Marriott decision. That appeal is fully briefed and oral argument is scheduled for December 8, 2005. 122 Fed. Appx. 490 (Fed. Cir. 2005).

As we established before Judge Sypolt and Senior Judge Merow, the Temporary Emergency Court of Appeals, the decisions of which the Federal Circuit has adopted as binding precedent for at least certain cases, held that the head of an agency is entitled to delegate the authority to assert the deliberative process privilege to subordinate employees and, in fact, that such delegations may even be necessary for a lower-level official to invoke the privilege. See United States Dep't of Energy v. Brett, 659 F.2d 154, 155-56 (Temp. Em. Ct. App. 1981), cert. denied, 456 U.S. 936 (1982).

Although some decisions from other district courts, which are not binding on this Court, may impose requirements regarding "agency heads" to assert the privilege, nowhere in the decisions that PG&E has cited, apart from the decisions of Judges Lettow and Williams, does it say that, in the precedent applicable to this Court, only the head of the agency can execute the affidavit asserting the deliberative process privilege. See, e.g., Tuite v. Henry, 98 F.3d 1411, 1417 (D.C. Cir. 1996) (Counsel to the Justice Department's Office of Professional Responsibility, rather than the Attorney General, was appropriate person to assert governmental executive privilege (law enforcement privilege)); Mary Imogene Bassett Hosp. v. Sullivan, 136 F.R.D. 42, 44-45 (N.D.N.Y. 1991) (head of division within HHS was appropriate person to assert deliberative process privilege).[4]

---

[4] See, e.g., Roviaro v. United States, 353 U.S. 53, 55 (1957) (recognizing a claim of informant's privilege based upon the Government's objection, rather than affidavit setting forth formal review by the Attorney General); Branch v. Phillips Petroleum Co., 638 F.2d 873, 882-83 (5th Cir. 1981) (assertions by EEOC's Houston district office and custodian of subpoenaed records); Association for Women in Science v. Califano, 566 F.2d 339, 348-49 (D.C. Cir. 1977)

The United States Court of Appeals for the District of Columbia in Landry v. Federal Deposit Insurance Corp., 204 F.3d 1125 (D.C. Cir.), cert. denied, 531 U.S. 924 (2000), cogently explained the rationale for broadly interpreting the meaning of the term "head of the department." In that case, the appellate court held that the party seeking document production "mistakenly assumes that only assertion by the head of the *overall* department or agency is enough." Id. at 1135. To the contrary, the D.C. Circuit found that the Memphis regional director of the division of supervision for the Federal Deposit Insurance Corporation ("FDIC"), rather than the head of the FDIC, was an appropriate person who could validly assert the deliberative process privilege upon behalf of the agency, even without a formal delegation of authority from the head of the FDIC. The D.C. Circuit determined that any absolute requirement that the actual head of an agency execute the privilege, or any narrowly construed reading of the phrase "head of the department," would conflict with the purposes of the privilege:

> For these privileges, it would be counterproductive to read "head of the department" in the narrowest possible way. The procedural requirements are designed to "ensure that the privilege[s are] presented in a deliberate, considered, and reasonably specific manner." As we have seen, built into the requirements is the need for "actual personal consideration" by the asserting official. Insistence on an affidavit from the very pinnacle of agency authority would surely start to erode the substance of "actual personal" involvement. Further, both privileges advance important goals; the gains from imposing demands in the interest

---

("confidential reports privilege" assertion by United States Attorney for the District of Columbia because, " little, if anything, could be gained by having the Secretary of HEW review each Form 474 before claiming the privilege"); Alexander v. FBI, 186 F.R.D. 154, 166 (D.D.C.1999) (implying that affidavits of FBI general counsel or inspector general would have been sufficient had they provided enough information to assess whether law enforcement privilege applied); Koehler v. United States, No. 90-2384, 1991 WL 277542, at *5 (D.D.C. Dec. 9, 1991) (head of U.S. Army Criminal Investigation Command); Grossman v. Schwarz, 125 F.R.D. 376, 383 (S.D.N.Y. 1989) (affidavit not required).

> of careful assertion must be balanced against the losses that would result of imposing superstringent procedures.
>
> Under our cases, the head of the appropriate regional division of the FDIC's supervisory personnel is of sufficient rank to achieve the necessary deliberateness in assertion of the deliberative process and law enforcement privileges.

Landry, 204 F.3d at 1135-36 (brackets in original; citations omitted).

As the United States district court in Sanchez v. Johnson, No. C-00-1593, 2001 WL 1870308 (N.D. Cal. Nov. 19, 2001), similarly recognized, the "requirement that the privilege be invoked by the agency [or department] head need not be applied absolutely literally." Id. at *5. "[T]he head of the relevant governmental agency cannot be expected to learn the facts of every single case in which his agency seeks to invoke a governmental privilege." Martin v. Albany Bus. Journal, Inc., 780 F. Supp. 927, 934 (N.D.N.Y. 1992). "Such a requirement could bring the government to a virtual stand-still." Id. A broad interpretation of the phrase "head of a department or agency" that properly takes these factors into consideration is both proper and warranted.

PG&E asserts that the Court of Claims' decision in Cetron Electronic Corp. v. United States, 207 Ct. Cl. 985 (1975), cited in the Marriott decision, precludes the assertion of the deliberative process privilege by any individual other than "the head of the relevant agency," precluding a delegation of authority. Pl. Br. 13-17. However, the Cetron Court did not define the phrase "the head of a department or agency," given that the Government expressly stated that it was not asserting any executive deliberative process privilege in that case and made no attempt to invoke that privilege. See Cetron, 207 Ct. Cl. at 989-90. As discussed above, PG&E's argument ignores those court decisions that have broadly defined "the head of a department or

agency" and have not limited it to only an agency head. In fact, nothing in the plain language of Cetron requires personal exercise of the privilege by an agency head, but instead allows for exercise by "the head of a department" of an agency.

Further, and importantly, the Cetron Court was not presented with, and did not consider, statutes that allow the head of an agency to delegate his or her decision-making authority to subordinates or, for that matter, any argument that the head of an agency may delegate his or her authority. Both the Chairman of the NRC and the Secretary of Energy are statutorily authorized to delegate that authority to subordinates. See 42 U.S.C. § 7252. Nothing in that delegation authority limits their ability to delegate authority to decide whether to invoke the deliberative process privilege in a particular instance. Here, the Chairman of the NRC expressly and explicitly delegated to Mr. Virgilio the authority to assert the deliberative process privilege upon behalf of the agency. The Secretary of Energy expressly and explicitly delegated such authority to the heads of OCRWM and EM, and then those officials redelegated that authority to their respective, high-level subordinates. By delegating authority to assert the deliberative process privilege to a subordinate, the agency head manifested his consent and intention "that the other shall act on his behalf and subject to his control." Restatement (Second) of Agency § 1; see id. § 7 cmt. a ("authority" is "the power of the agent to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestations to him").

The Cetron Court did not have before it, and did not consider, any argument regarding whether an agency or department head is entitled, pursuant to statutory authority, to delegate the ability to assert the deliberative process privilege to an individual with greater expertise and

knowledge regarding a particular matter or decision. Under the doctrine of stare decisis, for a decision to constitute binding precedent upon a issue of law, the "issue of law must have been heard and decided," and, "if [the] issue is not argued, or though argued is ignored by the court, or is reserved, the decision does not constitute a precedent to be followed." Gately v. Commonwealth of Mass., 2 F.3d 1221, 1226 (1st Cir. 1993), cert. denied, 511 U.S. 1082 (1994); see United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37-38 (1952) (because "the effect of the omission was not there [in prior court case] raised in briefs or argument nor discussed in the opinion of the Court," the case "is not a binding precedent on this point"); Beacon Oil Co. v. O'Leary, 71 F.3d 391, 394 (Fed. Cir. 1995) (*stare decisis* "applies only to legal issues that were actually decided in a prior action, and the two issues that [appellant] raised before the Board and renews in this court were not litigated or resolved in" prior appellate decision (citations omitted)). Given that no affidavit from an agency official asserting the deliberative process privilege was submitted in the Cetron case, and that the Government was not even asserting the deliberative process privilege in that case, the issue of whether an agency or department head was entitled to delegate his or her authority to assert the deliberative process privilege plainly was not raised, or decided, in Cetron. As a result, it does not constitute precedent upon that issue.[5]

---

[5] Similarly, the Cetron Court's statements regarding executive privilege are dicta. "Dicta are parts of an opinion that are not binding on a subsequent court, whether as a matter of *stare decisis* or as a matter of law of the case." Wilder v. Apfel, 153 F.3d 799, 803 (7th Cir. 1998). "They are nonbinding for two reasons. First, not being integral elements of the analysis underlying the decision – not being grounded in a concrete legal dispute and anchored by the particular facts of that dispute – they may not express the judges' most careful, focused thinking." Id. "Second, to give the inessential parts of an opinion the force of law would give judges too much power, and of an essentially legislative character; [judges] could hardly consider [themselves] judges in the Anglo-American tradition were [they] to interrupt [any]

Conversely, the Temporary Emergency Court of Appeals ("TECA"), in United States Department of Energy v. Brett, 659 F.2d 154 (Temp. Em. Ct. App. 1981), cert. denied sub nom. Cotton Petroleum Corp. v. Edwards, 456 U.S. 936 (1982), like the D.C. Circuit in Landry, expressly considered the situation in which a head of the agency had delegated his authority to assert the deliberative process privilege to a subordinate. App. 239-251 (delegation of authority). The TECA in Brett established that the procedural requirements for the assertion of the deliberative process privilege reflect a desire for the privilege to be "raised by individuals with specific and substantive knowledge of the documents in which the privilege is asserted." Id. at 155. It determined that the purpose of the privilege "is not furthered and could in fact be hindered by a requirement that the privilege be asserted in all cases by agency heads." As a result, the Brett court determined that subordinated employees below the agency head were entitled to assert the deliberative process privilege upon behalf of the agency, a rule that

---

opinion to offer [their] thoughts on, say, the hearsay rule, or the Americans with Disabilities Act, or the FELA." Id. Here, although the Cetron Court made a general statement concerning executive privilege, it was not considering a claim of executive privilege, as the Government had disavowed that it was making any such claim. See Cetron, 207 Ct. Cl. at 992 ("we do not need to go into that here since [executive privilege] is not being claimed in this case"). It only held that there was no general common law governmental privilege, outside the context of executive privilege, "against disclosure of official information." Id. at 990. The Court neither directly considered any argument about the scope of executive privilege nor decided it.

Further, the Cetron Court did not consider arguments that other courts have directly considered regarding the differences in various types of executive privilege claims. For example, although the state secrets privilege, an absolute privilege that cannot be overcome by a showing of need, may require a declaration from the head of a department or agency because of the absolute nature of the privilege, Halkin v. Helms, 598 F.2d 1, 7 (D.C. Cir. 1979), the deliberative process privilege is not absolute, providing a basis for possible differences in the manner in which they are asserted. See Landry, 204 F.3d at 1136.

presumably would allow the head of an agency to delegate his or her authority to assert that privilege:

> The district court's grounds for rejecting DOE's claim of the deliberative process privilege were that the claim was made by the wrong person, and too late. We conclude that the court erred in ruling that this privilege may be asserted only by the head of an agency. *United States v. Reynolds*, 345 U.S. 1 . . . (1953), relied on by the district court, is inapposite. *Reynolds* dealt with an absolute privilege for state secrets, not the deliberative process privilege.
>
> The requirements for properly asserting this latter privilege are set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 . . . (1974). . . .
>
> Courts have in numerous cases required that governmental privileges be asserted by senior officials. [Citations omitted.] In most cases, however, this procedural requirements reflects *Vaughn*'s substantive requirement that the privilege be raised by individuals with specific and detailed knowledge of the documents in which the privilege is asserted. The Supreme Court, at least in dictum, has cast doubt on the advisability of foreclosing assertions of governmental privilege because the privilege was not claimed by a high ranking official. [Citation omitted.] The rationale for the deliberative process privilege is its supposed avoidance of chilling effects on decision making. That goal is not furthered and could in fact be hindered by a requirement that the privilege be asserted in all cases by agency heads.

Id. at 155-56 (emphasis added). In 1995, the United States Court of Appeals for the Federal Circuit "adopt[ed] as precedent the body of law represented by the holdings of the Temporary Emergency Court of Appeals" for at least some of the cases over which the Federal Circuit has jurisdiction. Texas Am. Oil Corp. v. United States Dep't of Energy, 44 F.3d 1557, 1561 (Fed.

Cir. 1995) (*en banc*); see Consolidated Edison Co. of N.Y., Inc. v. Richardson, 232 F.3d 1380, 1383 (Fed. Cir. 2001)[6] ("[t]his court has adopted the decisions of [TECA] as precedent.").[7]

C. DOE And The NRC Have Properly Invoked The Deliberative Process Privilege

1. The Office Of Civilian Radioactive Waste Management Has Properly Invoked The Deliberative Process Privilege

To comply with the requirements for asserting the deliberative process privilege, the Secretary of Energy delegated to the Director of OCRWM, through the Under Secretary of Energy, the authority to assert the deliberative process privilege. App. 53-66, 68-71, 73-83, 107-119. OCRWM is the office within DOE that is responsible "for carrying out the responsibilities of the Secretary" pursuant to the NWPA. 42 U.S.C. § 10224(a)-(b) (1982). The Director of OCRWM has redelegated this authority to Mr. Milner, given Mr. Milner's experience with the program since 1984 and authority as Chief Operating Officer for OCRWM. App. 72. As Judge Sypolt previously found, Mr. Milner is an appropriate individual to invoke the deliberative process privilege upon OCRWM's behalf. Yankee Atomic, 54 Fed. Cl. at 311.

Many of the documents over which Mr. Milner has invoked the deliberative process privilege upon the Secretary's behalf, see App. 1-47 (affidavits from Mr. Milner invoking

[6] See Seigel Oil Co. v. Richardson, 208 F.3d 1366, 1371 (Fed. Cir. 2000); Elliott v. United States Federal Energy Regulatory Comm'n, 95 F.3d 1121, 1124 (Fed. Cir. 1996); Houston Oil & Refining, Inc. v. United States Federal Energy Regulatory Comm'n, 95 F.3d 1126, 1132 (Fed. Cir. 1996), cert. denied sub nom. Imparato v. F.E.R.C., 520 U.S. 1228 (1997); Simmons Oil Corp. v. Tesoro Petroleum Corp., 86 F.3d 1138, 1141 (Fed. Cir. 1996).

[7] To the extent that the Court finds the Government's assertion of deliberative process to contain technical deficiencies, we respectfully request that we be granted the opportunity, following clarification by the Court of the requirements for assertion of that privilege that it will impose in these cases, to comply with the Court's clarification. See Vons Companies, Inc. v. United States, 51 Fed. Cl. 1, 23 (2001).

deliberative process privilege), relate to documents generated in evaluating OCRWM's development of a budget request for Fiscal Year ("FY") 2003. PG&E states that many of the documents relate to DOE's acceptance rates and systems costs or the OCRWM transportation and waste acceptance system, Pl. Br. 9. However, the documents in question are deliberative in nature and contain numerous suggestions and deliberations that were not adopted as the agency's position after evaluation and decision by official decision-makers. Further, the relevant information regarding the manner in which the program will expect to operate in the future, as related to budget requests, is the information contained in the budget request itself. That publicly available document, which was transmitted to Congress as a part of the budget request for DOE, is the "decision" that encompasses the official decision-makers' evaluation of suggestions and deliberations made in the process of generating that budget request. PG&E complains that invoking "budget policy" in its assertion of deliberative process privilege would serve as the "ultimate bootstrap" to assert this privilege. Pl. Br. 9. Yet PG&E's assertion that these types of documents are not within the deliberative process privilege, and that the Court should simply order production of all deliberative budget-related documents that precede the actual budget request decision, over the invocation of the privilege following the considered evaluation and judgment of the official designated representative of the agency head, is incorrect.

Further, PG&E has not identified any basis upon which its interests in production of these documents outweigh the Government's invocation of the privilege. We recognize that the deliberative process privilege is not absolute. Redland Soccer Club, Inc. v. Department of the Army, 55 F.3d 827, 853 n.18 (3d Cir. 1995), cert. denied, 516 U.S. 1071 (1996); United States v.

Electro-Voice, Inc., 879 F. Supp. 919, 923 (N.D. Ind. 1995). After concluding that the privilege is properly invoked, the Court must balance the public interest in nondisclosure with the individual need for the information as evidence. Redland Soccer Club, 55 F.3d at 854; Committee for Nuclear Responsibility, Inc. v. Seaborg, 463 F.2d 788, 791 (D.C. Cir. 1971); Carl Zeiss, 40 F.R.D. at 327; Scott v. PPG Industries, Inc., 142 F.R.D. 291, 294 (N.D.W. Va. 1992).[8] The factors to be weighed include: (1) the degree to which the proffered evidence is relevant;[9] (2) the extent to which it may be cumulative; and (3) the opportunity of the party seeking disclosure to prove the particular facts by other means. United States v. AT&T, 524 F. Supp. 1381, 1386 n.14 (D.D.C. 1981) (citing United States v. IBM, 20 F.R. Serv. 2d 1082, 1089-91 (S.D.N.Y. 1975)); see Scott Paper Co. v. United States, 943 F. Supp. 489, 496 (E.D. Pa. 1996); In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. 577, 583 (E.D.N.Y. 1979). To compel disclosure, the claimant must make "a showing of necessity sufficient to outweigh the adverse effects the production would engender." Carl Zeiss, 40 F.R.D. at 328-29.

PG&E, like the other utility plaintiffs, has obtained thousands and thousands of documents regarding these issues from the Government. PG&E has no basis for its assertion that it needs more when the documents that it seeks were merely deliberative in nature. The utility plaintiffs' continual demands for unfettered access to every discussion, every thought, and every

---

[8] In this Court, it appears that the requesting party must show a "compelling need" before the deliberative process privilege is overridden. See Abramson v. United States, 39 Fed. Cl. 290, 297 (1997).

[9] A requesting party cannot, as a matter of law, demonstrate "need" in the absence of relevance. United States v. Farley, 11 F.3d 1385, 1390 (7th Cir. 1993) (internal memoranda containing unpublished views of agency staff regarding legal issues are not relevant to court's interpretation of the law).

suggestion of any individual within OCRWM will have the precise effect that the deliberative process privilege is intended to avoid: stifling suggestions and deliberations within the agency.

Although PG&E's claim that its "interest in discovery of the withheld information is substantial," Pl. Br. 22, its primary argument in support of this position is that "many of the documents concern current planning or intentions for GTCC waste, including the DOE's planned acceptance rate for the spent fuel acceptance program." Pl. Br. 22. Yet, the documents that PG&E seeks are pre-decisional in nature. They do not necessarily state the policy, or "intentions," of the agency, but instead merely reflect deliberations prior to an agency decision being made. The "policy" or "decision" that PG&E seeks is reflected in official documents that the agency publicly releases, which identify the policies and decisions upon which official decision-makers at the agency finally decided. The only possible use of the agency's deliberative discussions leading to those decisions or policies for which PG&E might hope would be to attempt to confuse agency policy and decisions with suggestions that lower-level employees might have made. However, those suggestions or discussions, to the extent that they did not become the agency's policy, are irrelevant to the agency's intentions. Given that the Government has produced hundreds of thousands of pages of documents regarding GTCC low-level radioactive waste and the agency's positions regarding the agency's goals for SNF acceptance, PG&E's unsupported assertion that it might find some nugget of deliberative information that might reflect an agency policy is ridiculous and certainly does not establish a "compelling need" for production.

2. The Office of Environmental Management Has Properly Invoked The Deliberative Process Privilege

James Rispoli, Assistant Secretary for Environmental Management, has been delegated the authority to assert the deliberative process privilege upon behalf of DOE. App. 107-118, 142-144. Mr. Rispoli has redelegated this authority to Frank Marcinowski, Deputy Assistant Secretary for Logistics and Waste Disposition Enhancements, Office of Environmental Management, given Mr. Marcinwoski's experience with the EM program. App. 146.

After personal consideration of the documents, Mr. Marcinowski has determined that DOE must assert the deliberative process privilege over a category of documents to prevent their disclosure in discovery in these proceedings. App. 130-141. Specifically, Mr. Marcinowksi has asserted the deliberative process privilege over numerous documents reflecting the deliberations of DOE regarding an Advance Notice of Intent to Prepare an Environmental Impact Statement for the Disposal of GTCC Low-Level Radioactive Waste. As Mr. Marcinowski attests, the withheld documents reflect DOE's deliberative process and precede, temporally, the agency decisions to which they related. In his affidavit, Mr. Marcinowski has described, with particularity, each of the documents and explained the reasons why the confidentiality of the documents must be maintained. App. 130-141.

PG&E also argues that production of privileged documents regarding GTCC waste might evidence some misconduct by the Government, based in part on documents produced by the Government as a result of Senior Judge Merow's August 25, 2003 order. See Pl. Br. 17-20. PG&E's argument lacks merit and is not supported by the record. Nothing that it cites in its brief even remotely evidences the "influence that the spent fuel litigation and DOJ attorneys were exerting on DOE decision-making concerning GTCC waste" that PG&E alleges. Pl. Br.

19-20. To the contrary, the documents that Senior Judge Merow ordered released were originally withheld because of a concern that the release of the deliberative documents, taken as a whole and showing the chronological history of the deliberations, would cause the harm against which the privilege seeks to protect. PG&E's reference to a single document here or there, without relation to all of the related documents, is irrelevant to that analysis. The deliberative process documents that PG&E now seeks are, again, merely deliberative regarding policy decisions to be made. To the extent that final decisions were reached and made available, PG&E has obtained copies of those decisions.

### 3. The Office Of The Inspector General Has Properly Invoked The Deliberative Process Privilege

Pursuant to the authority granted him by the Inspector General Act of 1978, as amended, 5 U.S.C. App. 3, and after personal consideration of the documents, Gregory H. Friedman, Inspector General for DOE, has determined that the Office of the Inspector General ("OIG") must assert deliberative process over two unique documents to prevent their disclosure in discovery in these proceedings. App. 147-149, 150-175. Specifically, Mr. Friedman has asserted the deliberative process over (1) a draft OIG report to the Office of Civilian Radioactive Waste Management regarding investigation of Yucca Mountain surface facilities; and (2) a draft audit of Yucca Mountain's proposed waste handling facility.[10] As Mr. Friedman attests, both draft documents reflect OIG's internal deliberations with regard to its audits and investigations. Mr. Friedman did not execute a new affidavit in response to PG&E's motion to compel. All of

[10] DOE has also asserted the deliberative process privilege over other documents that contain OCRWM's deliberations regarding the manner in which it would respond to questions arising from OIG's audit. The explanation for the assertion of privilege over these related documents is contained in the affidavit of Ronald Milner. App. 30.

the OIG documents at issue on the Government's privilege log are covered by Mr. Friedman's earlier June 10, 2003 affidavit.

PG&E argues that its interest in disclosure of the documents outweighs the Government's interest in protecting them as privileged. Pl. Br. 10. The claimant must make "a showing of necessity sufficient to outweigh the adverse effects the production would engender," Carl Zeiss, 40 F.R.D. at 328-29, and, in this Court, may need to show "compelling need." Abramson, 39 Fed. Cl. at 297. PG&E has made no showing of such necessity, but, instead, speaks merely in generalities insufficient to meet this burden. Absent such a showing, the Court should find that the documents over which the OIG has asserted the privilege, like all of the documents at issue, are pre-decisional deliberative communications and, as such, should be protected from disclosure.

#### 4. The NRC Has Properly Invoked The Deliberative Process Privilege

The Chairman of the Nuclear Regulatory Commission has delegated to Martin Virgilio, Deputy Executive Director for Materials, Research, State and Compliance Programs, the authority to assert the deliberative process privilege upon the NRC's behalf. App. 199-201. After his personal consideration of these documents, Mr. Virgilio has determined that the NRC must assert deliberative process over a total of 18 unique documents, most of which fall into a number of general categories, to prevent their disclosure in discovery in these proceedings. App. 186-193. Specifically, Mr. Virgilio has asserted the deliberative process privilege over: (1) documents reflecting the deliberations of the NRC regarding the manner in which to respond to an October 24, 2001 letter from Dr. Andrew Kadak, which requested that the NRC redefine

Greater Than Class C low-level radioactive waste ("GTCC") as high-level waste ("HLW");[11] (2) documents reflecting the deliberations of the NRC with regard to the content of rulemakings to amend 10 C.F.R. Part 61, conducted in 1989, and to amend 10 C.F.R. Part 72, conducted in 2000; and (3) interim storage for GTCC low-level radioactive waste. As Mr. Virgilio attests, the withheld documents reflect the NRC's deliberative process and precede, temporally, the agency decisions to which they related. In his affidavit, Mr. Virgilio has described, with particularity, each of the documents and explained the reasons why the confidentiality of the documents must be maintained. App. 186-193. As set forth above, this is the second deliberative process affidavit executed by Mr. Virgilio related to the SNF litigation.

### D. PG&E Has Established No Need For Overcoming DOE's And The NRC's Assertion Of Privilege

PG&E asserts that, even if the deliberative process privilege was properly invoked, the "balance of interests overwhelmingly favors disclosure of the allegedly privileged documents." See Pl. Br. 21-23. PG&E has cited no evidence and provided no basis to support its "need" for discovery regarding these documents. PG&E's unsupported representations of "need," without any analysis of the testimony and evidence that will be necessary or admissible in these cases, provides no basis for overcoming DOE's and the NRC's invocation of the deliberative process privilege. For example, PG&E has failed to establish the need for OCRWM documents related to Fiscal Year 2003 budgetary considerations, or how such documents relate to the Government's obligations under the Standard Contract at issue in this case. PG&E has failed to

[11] The NRC's assertion of the deliberative process privilege with regard to other, similar documents, also reflecting deliberations with regard to the NRC's response to Dr. Kadak's request, has already been upheld by Judge Sypolt in her October 9, 2002 order.

establish why the deliberative process privilege should be overcome for documents that relate to DOE's Advance Notice of Intent to Prepare an Environmental Impact Statement for the Disposal of GTCC Low-Level Radioactive Waste, published by DOE in May 2005, 16 months after PG&E filed its complaint in the Court of Federal Claims.

## IV. THE SECRETARY OF ENERGY'S LONG-STANDING PRACTICE OF DELEGATING THE AUTHORITY TO INVOKE THE DELIBERATIVE PROCESS PRIVILEGE IS BASED UPON BROAD STATUTORY AUTHORITY

In its order dated November 16, 2005, the Court instructed the Government to file "all regulations or other guidance of any type of the Department of Energy relating to delegations of authority in effect at any time when the delegations and/or redelegations of authority on which defendant relies for its assertion of the deliberative process privilege were made." The Secretary of Energy has broad statutory authority to delegate "any of his functions" to officers and employees of the Department of Energy, presumably including his authority to invoke the deliberative process privilege:

> Except as otherwise expressly prohibited by law, and except as otherwise provided in this chapter, the Secretary may delegate any of his functions to such officers and employees of the Department as he may designate, and may authorize such successive redelegations of such functions within the Department as he may deem to be necessary and appropriate.

42 U.S.C. § 7252. The Secretary has not promulgated any regulations that would limit this broad authority to delegate the assertion of the deliberative process privilege.

Further, the Secretary's delegation of his authority to invoke the deliberative process privilege has been a long-standing practice that has occurred on numerous occasions over many years. In the appendix to this brief, we have included a copy of the Secretary's delegation of

authority to invoke the deliberative process privilege, from 1979, that was at issue in the previously discussed Brett case from the Temporary Emergency Court of Appeals. App. 239-251. In 2002 and 2003, when we were briefing deliberative process privilege issues before Judge Sypolt and Senior Judge Merow in other SNF cases, we identified the fact that, at that time, there were seven active delegations of authority by the Secretary of Energy to DOE officials, including delegations to assert the deliberative process privilege in various situations. App. 48-50. Clearly, the Secretary of Energy has delegated this authority to invoke the deliberative process privilege on many occasions, establishing that such delegations were not created simply for this litigation, but, to the contrary, have often been utilized as a mechanism for allowing DOE to protect its interests while, at the same time, allowing the Secretary to perform all of his necessary functions.

In response to the Court's instruction that we indicate, with respect to each regulation or guidance relating to the DOE delegations upon which we are relying, "the inclusive effective dates" of each, we have included those delegations in our appendix. See App. 51-83, 107-119, 142-146. With regard to each of the Department of Energy declarations invoking the deliberative process privilege with regard to documents at issue in this case, we respond as follows:

> (1) With regard to the delegation applicable to Mr. Ronald Milner's declaration dated May 13, 2002, Delegation Order No. 00-002.00, which is the Secretary's delegation of authority to the Under Secretary for Energy, Science, and Environment, the delegation became effective December 6, 2001, as amended on May 13, 2002, and remained effective through September 12, 2002. App. 53-63, 68-70. The Under Secretary redelegated that authority on January 8 and May 13, 2002, to the Director of the Office of Civilian Radioactive Waste Management ("OCRWM"),

and the Director of OCRWM redelegated that authority to Ronald Milner on May 13, 2002. App. 64-67, 71-72.

(2) With regard to Mr. Milner's two declarations dated June 13, 2003, Delegation Order No. 00-002.00A, which again delegated the Secretary's authority for various matters to the Under Secretary, the delegation became effective September 12, 2002. App. 73-83. The prior redelegations from the Under Secretary to the Director of OCRWM, and from the Director of OCRWM to Mr. Milner, were relied upon as the basis for Mr. Milner's invocation of those privilege claims. App. 64-67, 71-72.

(3) With regard to Ms. Patrice Bubar's declaration dated June 12, 2003, Delegation Order No. 00-002.00A, which delegated the Secretary's authority to the Under Secretary, the delegation became effective on September 12, 2002. App. 73-83. The Under Secretary, in Redelegation Order No. 00-002.03 (dated January 8, 2002), redelegated the authority to invoke the deliberative process privilege to the Assistant Secretary for Environmental Management regarding matters arising under the Assistant Secretary's cognizance, App. 142-144, and the Assistant Secretary redelegated that authority to Ms. Bubar on June 11, 2003. App. 145.

(4) With regard to Mr. Frank Marcinowski's declaration dated November 10, 2005, the Assistant Secretary for Environmental Management redelegated the authority discussed in the prior paragraph, paragraph (3), to Mr. Marcinowski on November 10, 2005. App. 146.

(5) With regard to Mr. Milner's declaration dated November 10, 2005, Delegation Order No. 00-002.00D, which delegated various authority from the Secretary to the Under Secretary, the delegation became effective on August 26, 2005. App. 107-118. That delegation order unintentionally did not expressly include language directly relating to the authority to assert the deliberative process privilege with respect to matters within OCRWM's cognizance. On November 23, 2005, to correct this error, the Secretary issued an amendment to that delegation order, expressly authorizing that right and amending the prior order to include the following language: "All actions pursuant to any authority delegated prior to this Order or pursuant to any authority delegated by this Order taken prior to and in effect on the date of this Order are hereby confirmed and ratified, and shall remain in full force

> and effect as is taken under this Order, unless or until rescinded, amended or superseded." App. 119.

In addition to deliberative process claims invoked by DOE, PG&E's motion to compel also challenges the deliberative process privilege claims invoked by the Office of the Inspector General and the NRC. Although the Court's November 16, 2005 order does not request information about those privilege invocations, we address them here for completeness purposes. With regard to the Office of the Inspector General, Gregory Friedman, Inspector General, executed a declaration on June 10, 2003, to support deliberative process privilege claims that were previously challenged before Senior Judge Merow. Pursuant to the Inspector General Act of 1978, 5 U.S.C. App. 3, Mr. Friedman was the appropriate individual authorized – without any delegations – to invoke the deliberative process privilege upon behalf of the Office of the Inspector General. App. 150-175.

With regard to the NRC, Mr. Martin Virgilio has invoked the deliberative process privilege upon behalf of the NRC. The Chairman of the NRC delegated his authority to invoke the deliberative process privilege to Mr. Virgilio by memoranda dated July 24 and September 4, 2002, citing as authority section 4 of the Reorganization Plan No. 1 of 1980, 5 U.S.C. App. 1, and the NRC's Standards for Delegation of Authority, Management Directive 9.1, Appendix Part IV. App. 199-238. That delegation of authority remains effective.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny PG&E's motion to compel.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT R. DAMELIN
SHARON A. SNYDER
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

s/John C. Ekman
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 353-0897
Fax: (202) 307-2503

November 23, 2005

Attorneys for Defendant