# DEPARTMENT OF ENERGY
# REDELEGATION ORDER NO. 00-002.03
# TO THE
# ASSISTANT SECRETARY FOR ENVIRONMENTAL MANAGEMENT

1. DELEGATION. Pursuant to section 202(b) of the Department of Energy Organization Act (Public Law 95-91, 42 U.S.C. 7132(b)) and Secretary of Energy Delegation Order 00-002 provided to the Under Secretary for Energy, Science and Environment to perform the function and duties related to Environmental Management, I delegate to the Assistant Secretary for Environmental Management authority to take the following actions:

1.1 On a nonexclusive basis, assert the Federal Government's deliberative process privilege with respect to any matters arising under his or her cognizance. This delegation is made to protect internal predecisional Department of Energy documents in judicial or administrative proceedings in situations where the court may require the claim to be formally asserted by an affidavit from an agency official.

1.2 Under section 624 of the Department of Energy Organization Act (42 U.S.C. 7234) and in accordance with the Federal Advisory Committee Act (5 U.S.C. App. 2), nominate, appoint, renew the term of, and terminate the service of members of the Environmental Management Site Specific Advisory Board.

1.3 Establish, alter, consolidate or discontinue such organizational units or components within assigned organizational elements as deemed to be necessary or appropriate.

A. In exercising this authority, or as redelegated pursuant thereto, delegates will be limited by approved budgets, staffing level allocations, and Senior Executive Service and other executive resource position allocations. Organizational changes shall not be announced or implemented until appropriate union coordination and other pre-release clearances have been obtained.

B. This authority does not include approval of additional, deletion, or transfer of mission and functions of or between Departmental Headquarters or Field Elements, which authority is reserved to the Secretary.

C. Heads of Departmental Headquarters Elements may delegate the authority to alter or consolidate organizational elements further, in whole or in part, consistent with the terms of the Department of Energy Organization Act, to an official or officials one level below the Head of the Departmental Headquarters or Field Element.

D. The authority to establish or discontinue organizational elements at the first or second level below the Head of Departmental Headquarters or Field Element may not be redelegated.

E. Acting Heads of Departmental Headquarters or Field Elements may not redelegate these authorities and may only establish, alter, consolidate or discontinue organizational units at the third level and below. During the tenure of an acting Head of a Departmental Headquarters or Field Element, organizational units below the Head of Departmental Headquarters and Field Elements may not exercise redelegations granting the authority to alter or consolidate units.

2. RESCISSION. Delegation Order Nos. 0204-153 and 0204-167 are hereby rescinded.

3. LIMITATION.

3.1 In exercising the authority delegated in this Order, a delegate shall be governed by the rules and regulations of the Department of Energy and the policies and procedures prescribed by the Secretary or delegate(s).

3.2 Nothing in this Order precludes the Secretary or the Under Secretary for Energy, Science and Environment from exercising any of the authority delegated by this Order.

3.3 Any amendments to this Order shall be in consultation with the Department of Energy General Counsel.

4. AUTHORITY TO REDELEGATE.

4.1 Except as prohibited by law, regulation, or this Order, the Assistant Secretary for Environmental Management may delegate this authority further, in whole or in part.

4.2 Copies of redelegations and any subsequent redelegations shall be provided to the Office of Management and Operations Support, which manages the Secretarial Delegations of Authority system.

5. DURATION AND EFFECTIVE DATE.

5.1 All actions pursuant to any authority delegated prior to this Order or pursuant to any authority delegated by this Order taken prior to and in effect on the date of this Order are ratified and remain in force as if taken under this Order, unless or until rescinded, amended or superseded.

5.2 This Order is effective January 8, 2002.

Robert G. Card
Under Secretary for Energy,
Science and Environment

**Department of Energy**
Washington, DC 20585

JUN 1 1 2003

MEMORANDUM FOR PATRICE M. BUBAR,
ASSOCIATE DEPUTY ASSISTANT SECRETARY
FOR INTEGRATION AND DISPOSITION

FROM: JESSIE H. ROBERSON
ASSISTANT SECRETARY FOR
ENVIRONMENTAL MANAGEMENT

SUBJECT: Delegation of Authority

Pursuant to Sections 1.1 and 4.1 of Redelegation Order No. 00-002.03, dated January 8, 2002, I hereby delegate to you the authority to assert the deliberative process privilege over documents specific to the Department of Energy response to Governor King's letter dated October 1, 2001, regarding Greater-Than-Class-C radioactive waste within the cognizance of the Office of Environmental Management.

In general, documents will be presented to you by the attorneys representing the DOE in the particular litigation in which discovery is sought. The attorneys will have made a preliminary decision that these materials may be privileged and will advise you of the nature of the action, the scope of the discovery request at issue and other pertinent information. Your review of the documents pursuant to this delegation should be in accordance with the following guidelines:

1. Each document must be personally examined by you, and careful consideration must be given as to whether the release of a document, or of a related set of documents, would seriously inhibit frank and open discussion of policies among the staff which is involved. If only certain portions of particular documents should be protected and are segregable, the remaining portions should be released.

2. Decisions in various civil actions as to whether the privilege is to be asserted should be consistent. In addition, all similar or related documents in a particular case should be treated consistently. Consistency is also important because the requesting party may later argue waiver, i.e., that if one document concerning a particular issue or rulemaking is released in discovery, it may be argued that the agency has waived its privilege as to all documents regarding the same subject.

3. Finally, your decision as to whether privilege should be asserted should be based on your experience as Associate Deputy Assistant Secretary and your expertise in environmental policy and analysis.

If you have any further questions, please call me at (202) 586-7709.

**Department of Energy**
Washington, DC 20585

November 10, 2005

MEMORANDUM FOR FRANK MARCINOWSKI
DEPUTY ASSISTANT SECRETARY FOR
LOGISTICS AND WASTE DISPOSITION
ENHANCEMENTS

FROM: JAMES A. RISPOLI
ASSISTANT SECRETARY FOR
ENVIRONMENTAL MANAGEMENT

SUBJECT: Delegation of Authority

Pursuant to Sections 1.1 and 4.1 of Redelegation Order No. 00-002.3, dated January 8, 2002, I hereby delegate to you the authority to assert deliberative process privilege over documents specific to the Department of Energy's plans for disposition of Greater-Than-Class-C low level radioactive waste within the cognizance of the Office of Environmental Management.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | ) | No. 98-126C<br>(Senior Judge Merow) |

# ASSERTION OF DELIBERATIVE PROCESS PRIVILEGE

1. I, Gregory H. Friedman, make the following declaration to be filed in the United States Court of Federal Claims.

2. I am the Inspector General for the United States Department of Energy ("DOE") and I have held this position since October 28, 1998. My office is located at:

1000 Independence Avenue, S.W.
Forrestal Building, Room 5D-039
Washington, D.C. 20585

3. The DOE Office of Inspector General ("OIG") derives its basic authority from the Inspector General Act of 1978, as amended. See 5 U.S.C. App.3.

4. I am responsible for all OIG audits, investigations, and inspections of fraud, waste, abuse, misconduct, and criminal activity within DOE and its programs.

5. Under the authority of the Inspector General Act of 1978, as amended, the DOE OIG conducted an audit on Yucca Mountain Surface Facilities in 2000 and 2001. On April 11, 2002, a final letter report titled "Review of Yucca Mountain Surface Facilities" was issued to the Office of Civilian Radioactive Waste Management ("OCRWM").

6. I have been informed that, in response to discovery requests from the

utility plaintiffs, DOE has reviewed and produced documents referring or relating to DOE's delay in beginning acceptance of spent nuclear fuel ("SNF") and/or high-level radioactive waste ("HLW") by January 31, 1998, and the schedule by which DOE was obligated to accept SNF and/or HLW. During this process, three OIG documents relating to the audit on Yucca Mountain Surface Facilities were discovered.

7. I have reviewed the contents of the three OIG documents. I have determined that disclosure of any of the deliberative process contents of these OIG documents would impair the OIG's operations by interfering with the flow of predecisional communications within the OIG and the agency. If these types of documents were considered releasable, there could be a "chilling effect" on the give-and-take necessary for the audit review and analysis process. It is in the public interest to ensure that thought processes, opinions and recommendations are expressed openly within the agency. I have concluded that disclosure of the documents discussed in this declaration would be injurious to the audit process and the operations of the OIG.

8. Accordingly, because the documents discussed in this declaration were created under the cognizance of the OIG, I assert a formal claim of deliberative process privilege with respect to the following documents:

a. The document Bates-Stamped HQR2500240-HQR2500246 is a revised draft OIG audit report to OCRWM regarding the review of Yucca Mountain's surface facilities. The revised draft contains recommendations and conclusions. The document Bates-Stamped HQR2500251-HQR2500257 is a similar version of the draft audit regarding the review of Yucca Mountain's surface facilities, which

contains marginal annotations. The documents reflect the OIG's deliberations relating to its audit.

b. The document Bates-Stamped HQR2500261-HQR2500265 is a workpaper entitled "Audit of Yucca Mountain's Proposed Waste Handling Facility." The workpaper contains data and questions submitted by an OIG auditor to OCRWM and is clearly part of the OIG's deliberative process.

After personally reviewing each of the above-described documents, I conclude that they contain OIG deliberative materials and should be protected from disclosure.

I declare under the penalty of perjury, this 10 day of June, 2003, that the foregoing is true and correct to the best of my knowledge and belief.

Gregory H. Friedman
Inspector General

# INSPECTOR GENERAL ACT OF 1978

Pub. L. 95–452, Oct. 12, 1978, 92 Stat. 1101, as amended by Pub. L. 96–88, title V, §508(n), Oct. 17, 1979, 93 Stat. 694; Pub. L. 97–113, title VII, §705(a)(1)–(3), Dec. 29, 1981, 95 Stat. 1544; Pub. L. 97–252, title XI, §1117(a)–(c), Sept. 8, 1982, 96 Stat. 750–752; Pub. L. 99–93, title I, §150(a), Aug. 16, 1985, 99 Stat. 427; Pub. L. 99–399, title IV, §412(a), Aug. 27, 1986, 100 Stat. 867; Pub. L. 100–504, title I, §§102(a)–(d), (f), (g), 104(a), 105–107, 109, 110, Oct. 18, 1988, 102 Stat. 2515–2529; Pub. L. 100–527, §13(h), Oct. 25, 1988, 102 Stat. 2643; Pub. L. 101–73, title V, §501(b)(1), title VII, §702(c), Aug. 9, 1989, 103 Stat. 393, 415; Pub. L. 102–233, title III, §315(a), Dec. 12, 1991, 105 Stat. 1772; Pub. L. 103–82, title II, §202(g)(1), (2)(A), (3)(A), (4), (5), Sept. 21, 1993, 107 Stat. 889, 890; Pub. L. 103–204, §23(a), Dec. 17, 1993, 107 Stat. 2407; Pub. L. 103–296, title I, §108(*l*), Aug. 15, 1994, 108 Stat. 1488; Pub. L. 103–325, title I, §118(a), Sept. 23, 1994, 108 Stat. 2188; Pub. L. 104–88, title III, §319, Dec. 29, 1995, 109 Stat. 949; Pub. L. 104–106, div. A, title XV, §1502(f)(6), div. D, title XLIII, §4322(b)(1), (3), Feb. 10, 1996, 110 Stat. 510, 677; Pub. L. 104–208, div. A, title I, §101(f) [title VI, §662(b), title VIII, §805(c)], Sept. 30, 1996, 110 Stat. 3009–314, 3009–379, 3009–393; Pub. L. 105–134, title IV, §409(a)(1), Dec. 2, 1997, 111 Stat. 2586; Pub. L. 105–206, title I, §1103(a)–(c)(1), (e)(1)–(3), July 22, 1998, 112 Stat. 705, 708, 709; Pub. L. 105–272, title VII, §702(b), Oct. 20, 1998, 112 Stat. 2415; Pub. L. 105–277, div. C, title III, §306(h), as added Pub. L. 106–31, title I, §105(a)(5), May 21, 1999, 113 Stat. 63; Pub. L. 105–277, div. G, title XIII, §1314(b), title XIV, §1422(b)(2), Oct. 21, 1998, 112 Stat. 2681–776, 2681–792; Pub. L. 106–65, div. A, title X, §1067(17), Oct. 5, 1999, 113 Stat. 775; Pub. L. 106–113, div. B, §1000(a)(7) [title II, §205], Nov. 29, 1999, 113 Stat. 1536, 1501A–422; Pub. L. 106–422, §1(b), Nov. 1, 2000, 114 Stat. 1872

## §1. Short title

This Act be cited as the "Inspector General Act of 1978".

(Pub. L. 95–452, §1, Oct. 12, 1978, 92 Stat. 1101.)

### Short Title of 1998 Amendment

Pub. L. 105–272, title VII, §701(a), Oct. 20, 1998, 112 Stat. 2413, provided that: "This title [enacting section 8H of Pub. L. 95–452, set out in this Appendix, amending section 8I of Pub. L. 95–452, set out in this Appendix, and section 403q of Title 50, War and National Defense, and enacting provisions set out as a note under section 8H of Pub. L. 95–452, set out in this Appendix] may be cited as the 'Intelligence Community Whistleblower Protection Act of 1998'."

### Short Title of 1988 Amendment

Pub. L. 100–504, title I, §101, Oct. 18, 1988, 102 Stat. 2515, provided that: "This title [enacting sections 8B–8F of Pub. L. 95–452, set out in this Appendix, amending sections 2, 4–6, 8, 9, and 11 of Pub. L. 95–452, set out in this Appendix, sections 5315 and 5316 of this title, sections 405 and 1105 of Title 31, Money and Finance, and section 410 of Title 39, Postal Service, repealing sections 3521–3527 and 7138 of Title 42, The Public Health and Welfare, and section 231v of Title 45, Railroads, and enacting provisions set out as notes under sections 1, 5, 8D, 8E, and 9 of Pub. L. 95–452, set out in this Appendix] may be cited as the 'Inspector General Act Amendments of 1988'."

### Payment Authority Subject to Appropriations

Pub. L. 100–504, title I, §112, Oct. 18, 1988, 102 Stat. 2530, provided that: "Any authority to make payments under this title [see Short Title of 1988 Amendment note above] shall be effective only to such extent as provided in appropriations Acts."

### Act Referred to in Other Sections

The Inspector General Act of 1978 is referred to in title 2 section 1602; title 7 sections 2270a, 6911; title 10 sections 138, 141, 1034, 2409, 3020, 5020, 8020; title 20 sections 767, 1082, 3412, 3422; title 22 sections 3929, 4861, 6203, 6207; title 29 sections 49h, 2935; title 31 sections 902, 3521, 3801, 3808, 9105; title 38 sections 312, 7366; title 39 section 410; title 41 sections 265, 422; title 42 sections 1320a–7a, 1320a–7c, 9651, 12651e; title 48 sections 1422d, 1599, 1668, 1681b.

## §2. Purpose and establishment of Offices of Inspector General; departments and agencies involved

In order to create independent and objective units—

(1) to conduct and supervise audits and investigations relating to the programs and operations of the establishments listed in section 11(2);

(2) to provide leadership and coordination and recommend policies for activities designed (A) to promote economy, efficiency, and effectiveness in the administration of, and (B) to prevent and detect fraud and abuse in, such programs and operations; and

(3) to provide a means for keeping the head of the establishment and the Congress fully and currently informed about problems and deficiencies relating to the administration of such programs and operations and the necessity for and progress of corrective action;

there is established—

(A) in each of such establishments an office of Inspector General, subject to subparagraph (B); and

(B) in the establishment of the Department of the Treasury—

(i) an Office of Inspector General of the Department of the Treasury; and

(ii) an Office of Treasury Inspector General for Tax Administration.

(Pub. L. 95–452, §2, Oct. 12, 1978, 92 Stat. 1101; Pub. L. 96–88, title V, §508(n)(1), Oct. 17, 1979, 93

Stat. 694; Pub. L. 97–113, title VII, §705(a)(1), Dec. 29, 1981, 95 Stat. 1544; Pub. L. 97–252, title XI, §1117(a)(1), Sept. 8, 1982, 96 Stat. 750; Pub. L. 99–93, title I, §150(a)(1), Aug. 16, 1985, 99 Stat. 427; Pub. L. 99–399, title IV, §412(a)(1), Aug. 27, 1986, 100 Stat. 867; Pub. L. 100–504, title I, §102(a), (b), Oct. 18, 1988, 102 Stat. 2515; Pub. L. 100–527, §13(h)(1), Oct. 25, 1988, 102 Stat. 2643; Pub. L. 105–206, title I, §1103(a), July 22, 1998, 112 Stat. 705.)

CODIFICATION

Amendment by Pub. L. 100–527 amended section as it existed prior to amendment by Pub. L. 100–504, see Effective Date of 1988 Amendments note below.

AMENDMENTS

1998—Pub. L. 105–206, in concluding provisions, substituted "there is established—" and subpars. (A) and (B) for "there is hereby established in each of such establishments an office of Inspector General."

1988—Pub. L. 100–504 substituted "there" for "thereby" in concluding provisions and amended par. (1) generally. Prior to amendment, par. (1), as amended by Pub. L. 100–527, read as follows: "to conduct and supervise audits and investigations relating to programs and operations of the Department of Agriculture, the Department of Commerce, the Department of Defense, the Department of Education, the Department of Housing and Urban Development, the Department of the Interior, the Department of Labor, the Department of Transportation, the Department of Veterans Affairs, the Agency for International Development, the Community Services Administration, the Environmental Protection Agency, the General Services Administration, the National Aeronautics and Space Administration, the Small Business Administration, the United States Information Agency, and the Department of State;".

Par. (1). Pub. L. 100–527 inserted "the Department of Veterans Affairs," and struck out "the Veterans' Administration," after "United States Information Agency,". See Codification note above.

1986—Par. (1). Pub. L. 99–399 inserted "the United States Information Agency,".

1985—Par. (1). Pub. L. 99–93 inserted reference to the Department of State.

1982—Par. (1). Pub. L. 97–252, §1117(a)(1), inserted "the Department of Defense,".

1981—Par. (1). Pub. L. 97–113 inserted "the Agency for International Development,".

1979—Par. (1). Pub. L. 96–44 inserted "the Department of Education,".

EFFECTIVE DATE OF 1988 AMENDMENTS

Amendment by Pub. L. 100–527 effective Mar. 15, 1989, see section 18(a) of Pub. L. 100–527, set out as a Department of Veterans Affairs Act note under section 301 of Title 38, Veterans' Benefits.

Amendment by Pub. L. 100–504 effective 180 days after Oct. 18, 1988, see section 113 of Pub. L. 100–504, set out as a note under section 5 of Pub. L. 95–452 in this Appendix.

EFFECTIVE DATE OF 1979 AMENDMENT

Amendment by Pub. L. 96–88 effective May 4, 1980, with specified exceptions, see section 601 of Pub. L. 96–88, set out as an Effective Date note under section 3401 of Title 20, Education.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in title 22 section 4861; title 42 section 8262f.

**§3. Appointment of Inspector General; supervision; removal; political activities; appointment of Assistant Inspector General for Auditing and Assistant Inspector General for Investigations**

(a) There shall be at the head of each Office an Inspector General who shall be appointed by the President, by and with the advice and consent of the Senate, without regard to political affiliation and solely on the basis of integrity and demonstrated ability in accounting, auditing, financial analysis, law, management analysis, public administration, or investigations. Each Inspector General shall report to and be under the general supervision of the head of the establishment involved or, to the extent such authority is delegated, the officer next in rank below such head, but shall not report to, or be subject to supervision by, any other officer of such establishment. Neither the head of the establishment nor the officer next in rank below such head shall prevent or prohibit the Inspector General from initiating, carrying out, or completing any audit or investigation, or from issuing any subpena during the course of any audit or investigation.

(b) An Inspector General may be removed from office by the President. The President shall communicate the reasons for any such removal to both Houses of Congress.

(c) For the purposes of section 7324 of title 5, United States Code, no Inspector General shall be considered to be an employee who determines policies to be pursued by the United States in the nationwide administration of Federal laws.

(d) Each Inspector General shall, in accordance with applicable laws and regulations governing the civil service—

(1) appoint an Assistant Inspector General for Auditing who shall have the responsibility for supervising the performance of auditing activities relating to programs and operations of the establishment, and

(2) appoint an Assistant Inspector General for Investigations who shall have the responsibility for supervising the performance of investigative activities relating to such programs and operations.

(Pub. L. 95–452, §3, Oct. 12, 1978, 92 Stat. 1101.)

ACTING TREASURY INSPECTOR GENERAL FOR TAX ADMINISTRATION

Pub. L. 105–277, div. C, title I, §101, Oct. 21, 1998, 112 Stat. 2681–584, as amended by Pub. L. 106–113, div. B, §1000(a)(5) [title II, §239(a)], Nov. 29, 1999, 113 Stat. 1536, 1501A–302, provided that:

"(a) IN GENERAL.—Notwithstanding any other provision of law, the President may appoint an acting Treasury Inspector General for Tax Administration to serve during the period—

"(1) beginning on the date of the enactment of this section [Oct. 21, 1998] (or, if later, the date of the appointment), and

"(2) ending on the earlier of—

"(A) April 30, 1999, or

"(B) the date on which the first Treasury Inspector General for Tax Administration takes office (other than pursuant to this section).

"(b) DUTIES BEFORE JANUARY 18, 1999.—The acting Treasury Inspector General for Tax Administration appointed under subsection (a) shall, before January 18, 1999, take only such actions as are necessary to begin

operation of the Office of Treasury Inspector General for Tax Administration, including—

"(1) making interim arrangements for administrative support for the Office,

"(2) establishing interim positions in the Office into which personnel will be transferred upon the transfer of functions and duties to the Office on January 18, 1999,

"(3) appointing such acting personnel on an interim basis as may be necessary upon the transfer of functions and duties to the Office on January 18, 1999, and

"(4) providing guidance and input for the fiscal year 2000 budget process for the Office.

"(c) ACTIONS NOT TO LIMIT AUTHORITY OF IG.—None of the actions taken by an individual appointed under subsection (a) shall affect the future authority of any Treasury Inspector General for Tax Administration not appointed under subsection (a).

"(d) LIMITATIONS.—

"(1) NOMINATION.—No individual appointed under subsection (a) may serve on or after January 19, 1999, unless on or before such date the President has submitted to the Senate his nomination of an individual to serve as the first Treasury Inspector General for Tax Administration.

"(2) TREASURY INSPECTOR GENERAL MAY NOT SERVE.—No individual appointed under subsection (a) may serve during any period such individual is serving as the Inspector General of the Treasury of the United States or the acting Inspector General of the Treasury of the United States.

"(3) EMPLOYMENT RESTRICTIONS.—The provisions of section 8D(j) of the Inspector General Act of 1978 (5 U.S.C. App.) shall not apply to any individual appointed under subsection (a)."

[Pub. L. 106–113, div. B, §1000(a)(5) [title II, §239(b)], Nov. 29, 1999, 113 Stat. 1536, 1501A–302, provided that: "The amendment made by subsection (a) [amending section 101 of Pub. L. 105–277, set out above] shall be effective as if included in the enactment of section 101 of title I of division C of the Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999 [Pub. L. 105–277]."]

TRANSITIONAL PROVISIONS RELATING TO APPOINTMENT OF INSPECTOR GENERAL OF FEDERAL DEPOSIT INSURANCE CORPORATION

Pub. L. 103–204, §23(c), Dec. 17, 1993, 107 Stat. 2408, provided that:

"(1) CURRENT SERVICE.—Except as otherwise provided by law, the individual serving as the Inspector General of the Federal Deposit Insurance Corporation before the date of enactment of this Act [Dec. 17, 1993] may continue to serve in such position until the earlier of—

"(A) the date on which the President appoints a successor under section 3(a) of the Inspector General Act of 1978 [subsec. (a) of this section]; or

"(B) the date which is 6 months after the date of enactment of this Act.

"(2) DEFINITION.—For purposes of paragraph (1), the term 'successor' may include the individual holding the position of Inspector General of the Federal Deposit Insurance Corporation on or after the date of enactment of this Act."

EX. ORD. NO. 12993. ADMINISTRATIVE ALLEGATIONS AGAINST INSPECTORS GENERAL

Ex. Ord. No. 12993, Mar. 21, 1996, 61 F.R. 13043, provided:

Certain executive branch agencies are authorized to conduct investigations of allegations of wrongdoing by employees of the Federal Government. For certain administrative allegations against Inspectors General ("IGs") and, as explained below, against certain staff members of the Offices of Inspectors General ("OIGs"), it is desirable to authorize an independent investigative mechanism.

The Chairperson of the President's Council on Integrity and Efficiency ("PCIE") and the Executive Council on Integrity and Efficiency ("ECIE"), in consultation with members of the Councils, has established an Integrity Committee pursuant to the authority granted by Executive Order No. 12805 [31 U.S.C. 501 note].

By the authority vested in me as President by the Constitution and the laws of the United States of America, and in order to ensure that administrative allegations against IGs and certain staff members of the OIGs are appropriately and expeditiously investigated and resolved, it is hereby ordered as follows:

SECTION 1. *The Integrity Committee.* (a) To the extent permitted by law, and in accordance with this order, the Integrity Committee shall receive, review, and refer for investigation allegations of wrongdoing against IGs and certain staff members of the OIGs.

(b) The Integrity Committee shall consist of at least the following members:

(1) The official of the Federal Bureau of Investigation ("FBI") serving on the PCIE, as designated by the Director of the FBI. The FBI member shall serve as Chair of the Integrity Committee.

(2) The Special Counsel of the Office of Special Counsel;

(3) The Director of the Office of Government Ethics;

(4) Three or more IGs, representing both the PCIE and the ECIE, appointed by the Chairperson of the PCIE/ECIE.

(c) The Chief of the Public Integrity Section of the Criminal Division of the Department of Justice, or his designee, shall serve as an advisor to the Integrity Committee with respect to its responsibilities and functions in accordance with this order.

SEC. 2. *Referral of Allegations.* (a) The Integrity Committee shall review all allegations of wrongdoing it receives against an IG who is a member of the PCIE or ECIE, or against a staff member of an OIG acting with the knowledge of the IG or when the allegation against the staff person is related to an allegation against the IG, except that where an allegation concerns a member of the Integrity Committee, that member shall recuse himself from consideration of the matter.

(b) An IG shall refer any administrative allegation against a senior staff member to the Integrity Committee when:

(1) review of the substance of the allegation cannot be assigned to an agency of the executive branch with appropriate jurisdiction over the matter; and

(2) the IG determines that an objective internal investigation of the allegation, or the appearance thereof, is not feasible.

(c) The Integrity Committee shall determine if there is a substantial likelihood that the allegation, referred to it under paragraphs (a) or (b) of this section, discloses a violation of any law, rule or regulation, or gross mismanagement, gross waste of funds or abuse of authority and shall refer the allegation to the agency of the executive branch with appropriate jurisdiction over the matter. However, if a potentially meritorious administrative allegation cannot be referred to an agency of the executive branch with appropriate jurisdiction over the matter, the Integrity Committee shall certify the matter to its Chair, who shall cause a thorough and timely investigation of the allegation to be conducted in accordance with this order.

(d) If the Integrity Committee determines that an allegation does not warrant further action, it shall close the matter without referral for investigation and notify the Chairperson of the PCIE/ECIE of its determination.

SEC. 3. *Authority to Investigate.* (a) The Director of the FBI, through his designee serving as Chairperson of the Integrity Committee, is authorized and directed to consider and, where appropriate, to investigate administrative allegations against the IGs and, in limited cases as described in sections 2(a) and 2(b) above, against other staff members of the OIGs, when such allegations cannot be assigned to another agency of the executive branch and are referred by the Integrity Committee pursuant to section 2(c) of this order.

(b) At the request of the Director of the FBI, through his designee serving as Chairperson, heads of agencies

and entities represented in the PCIE and ECIE may, to the extent permitted by law, provide resources necessary to the Integrity Committee. Employees from those agencies and entities will be detailed to the Integrity Committee, subject to the control and direction of the Chairperson, to conduct an investigation pursuant to section 2(c): *Provided*, that such agencies or entities shall be reimbursed by the agency or entity employing the subject of the investigation. Reimbursement for any costs associated with the detail shall be consistent with applicable law, including but not limited to the Economy Act (31 U.S.C. 1535 and 1536), and subject to the availability of funds.

(c) Nothing in the above delegation shall augment, diminish, or otherwise modify any existing responsibilities and authorities of any other executive branch agency.

SEC. 4. *Results of Investigation.* (a) The report containing the results of the investigation conducted under the supervision of the Chair of the Integrity Committee shall be provided to the members of the Integrity Committee for consideration.

(b) With respect to those matters where the Integrity Committee has referred an administrative allegation to an agency of the executive branch with appropriate jurisdiction over the matter, the head of that agency shall provide a report to the Integrity Committee concerning the scope and results of the inquiry.

(c) The Integrity Committee shall assess the report received under (a) or (b) of this section and determine whether the results require forwarding of the report, with Integrity Committee recommendations, to the Chairperson of the PCIE/ECIE for resolution. If the Integrity Committee determines that the report requires no further referral or recommendations, it shall so notify the Chairperson of the PCIE/ECIE.

(d) Where the Chairperson of the PCIE/ECIE determines that dissemination of the report to the head of the subject's employing agency or entity is appropriate, the head of the agency or entity shall certify to the Chairperson of the PCIE/ECIE within sixty 60 [sic] days that he has personally reviewed the report, what action, if any, has been or is to be taken, and when any action taken will be completed. The PCIE/ECIE Chairperson may grant the head of the entity or agency a 30-day extension when circumstances necessitate such extension.

(e) The Chairperson of the PCIE/ECIE shall report to the Integrity Committee the final disposition of the matter, including what action, if any, has been or is to be taken by the head of the subject's employing agency or entity. When the Integrity Committee receives notice of the final disposition, it shall advise the subject of the investigation that the matter referred to the Integrity Committee for review has been closed.

SEC. 5. *Procedures.* (a) The Integrity Committee, in conjunction with the Chairperson of the PCIE/ECIE, shall establish the policies and procedures necessary to ensure consistency in conducting investigations and reporting activities under this order.

(b) Such policies and procedures shall specify the circumstances under which the Integrity Committee, upon review of a complaint containing allegations of wrongdoing, may determine that an allegation is without merit and therefore the investigation is unwarranted. A determination by the Integrity Committee that an investigation is unwarranted shall be considered the Integrity Committee's final disposition of the complaint.

(c) The policies and procedures may be expanded to encompass other issues related to the handling of allegations against IGs and others covered by this order.

SEC. 6. *Records Maintenance.* All records created and received pursuant to this order are records of the Integrity Committee and shall be maintained by the FBI.

SEC. 7. *Judicial Review.* This order is intended only to improve the internal management of the executive branch and is not intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers, or any person.

WILLIAM J. CLINTON.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in title 10 section 141; title 12 section 1441a; title 41 section 254d; title 42 section 902.

## §4. Duties and responsibilities; report of criminal violations to Attorney General

(a) It shall be the duty and responsibility of each Inspector General, with respect to the establishment within which his Office is established—

(1) to provide policy direction for and to conduct, supervise, and coordinate audits and investigations relating to the programs and operations of such establishment;

(2) to review existing and proposed legislation and regulations relating to programs and operations of such establishment and to make recommendations in the semiannual reports required by section 5(a) concerning the impact of such legislation or regulations on the economy and efficiency in the administration of programs and operations administered or financed by such establishment or the prevention and detection of fraud and abuse in such programs and operations;

(3) to recommend policies for, and to conduct, supervise, or coordinate other activities carried out or financed by such establishment for the purpose of promoting economy and efficiency in the administration of, or preventing and detecting fraud and abuse in, its programs and operations;

(4) to recommend policies for, and to conduct, supervise, or coordinate relationships between such establishment and other Federal agencies, State and local governmental agencies, and nongovernmental entities with respect to (A) all matters relating to the promotion of economy and efficiency in the administration of, or the prevention and detection of fraud and abuse in, programs and operations administered or financed by such establishment, or (B) the identification and prosecution of participants in such fraud or abuse; and

(5) to keep the head of such establishment and the Congress fully and currently informed, by means of the reports required by section 5 and otherwise, concerning fraud and other serious problems, abuses, and deficiencies relating to the administration of programs and operations administered or financed by such establishment, to recommend corrective action concerning such problems, abuses, and deficiencies, and to report on the progress made in implementing such corrective action.

(b)(1) In carrying out the responsibilities specified in subsection (a)(1), each Inspector General shall—

(A) comply with standards established by the Comptroller General of the United States for audits of Federal establishments, organizations, programs, activities, and functions;

(B) establish guidelines for determining when it shall be appropriate to use non-Federal auditors; and

(C) take appropriate steps to assure that any work performed by non-Federal auditors complies with the standards established by the

Comptroller General as described in paragraph (1).

(2) For purposes of determining compliance with paragraph (1)(A) with respect to whether internal quality controls are in place and operating and whether established audit standards, policies, and procedures are being followed by Offices of Inspector General of establishments defined under section 11(2), Offices of Inspector General of designated Federal entities defined under section 8F(a)(2),[1] and any audit office established within a Federal entity defined under section 8F(a)(1),[1] reviews shall be performed exclusively by an audit entity in the Federal Government, including the General Accounting Office or the Office of Inspector General of each establishment defined under section 11(2), or the Office of Inspector General of each designated Federal entity defined under section 8F(a)(2).[1]

(c) In carrying out the duties and responsibilities established under this Act, each Inspector General shall give particular regard to the activities of the Comptroller General of the United States with a view toward avoiding duplication and insuring effective coordination and cooperation.

(d) In carrying out the duties and responsibilities established under this Act, each Inspector General shall report expeditiously to the Attorney General whenever the Inspector General has reasonable grounds to believe there has been a violation of Federal criminal law.

(Pub. L. 95–452, §4, Oct. 12, 1978, 92 Stat. 1102; Pub. L. 100–504, title I, §109, Oct. 18, 1988, 102 Stat. 2529; Pub. L. 103–82, title II, §202(g)(5)(A), Sept. 21, 1993, 107 Stat. 890.)

REFERENCES IN TEXT

Section 8F, referred to in subsec. (b)(2), which related to requirements for Federal entities and designated Federal entities, was renumbered section 8G by Pub. L. 103–204, §23(a)(3), Dec. 17, 1993, 107 Stat. 2408.

AMENDMENTS

1993—Subsec. (b)(2). Pub. L. 103–82 substituted "section 8F(a)(2), and any" for "section 8E(a)(2), and any", "section 8F(a)(1)" for "section 8E(a)(1)", and "section 8F(a)(2)." for "section 8E(a)(2)."

1988—Subsec. (b). Pub. L. 100–504 designated existing provisions as par. (1), redesignated pars. (1) to (3) as subpars. (A) to (C), respectively, and added par. (2).

EFFECTIVE DATE OF 1993 AMENDMENT

Amendment by Pub. L. 103–82 effective Oct. 1, 1993, see section 202(i) of Pub. L. 103–82, set out as an Effective Date note under section 12651 of Title 42, The Public Health and Welfare.

EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–504 effective 180 days after Oct. 18, 1988, see section 113 of Pub. L. 100–504, set out as a note under section 5 of Pub. L. 95–452 in this Appendix.

DOT AUTHORITY

Pub. L. 106–159, title II, §228, Dec. 9, 1999, 113 Stat. 1773, provided that:

"(a) IN GENERAL.—The statutory authority of the Inspector General of the Department of Transportation includes authority to conduct, pursuant to Federal criminal statutes, investigations of allegations that a person or entity has engaged in fraudulent or other criminal activity relating to the programs and operations of the Department or its operating administrations.

"(b) REGULATED ENTITIES.—The authority to conduct investigations referred to in subsection (a) extends to any person or entity subject to the laws and regulations of the Department or its operating administrations, whether or not they are recipients of funds from the Department or its operating administrations."

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in title 38 section 7366; title 44 section 3903.

## § 5. Semiannual reports; transmittal to Congress; availability to public; immediate report on serious or flagrant problems; disclosure of information; definitions

(a) Each Inspector General shall, not later than April 30 and October 31 of each year, prepare semiannual reports summarizing the activities of the Office during the immediately preceding six-month periods ending March 31 and September 30. Such reports shall include, but need not be limited to—

(1) a description of significant problems, abuses, and deficiencies relating to the administration of programs and operations of such establishment disclosed by such activities during the reporting period;

(2) a description of the recommendations for corrective action made by the Office during the reporting period with respect to significant problems, abuses, or deficiencies identified pursuant to paragraph (1);

(3) an identification of each significant recommendation described in previous semiannual reports on which corrective action has not been completed;

(4) a summary of matters referred to prosecutive authorities and the prosecutions and convictions which have resulted;

(5) a summary of each report made to the head of the establishment under section 6(b)(2) during the reporting period;

(6) a listing, subdivided according to subject matter, of each audit report issued by the Office during the reporting period and for each audit report, where applicable, the total dollar value of questioned costs (including a separate category for the dollar value of unsupported costs) and the dollar value of recommendations that funds be put to better use;

(7) a summary of each particularly significant report;

(8) statistical tables showing the total number of audit reports and the total dollar value of questioned costs (including a separate category for the dollar value of unsupported costs), for audit reports—

(A) for which no management decision had been made by the commencement of the reporting period;

(B) which were issued during the reporting period;

(C) for which a management decision was made during the reporting period, including—

(i) the dollar value of disallowed costs; and

(ii) the dollar value of costs not disallowed; and

[1] See References in Text note below.

(D) for which no management decision has been made by the end of the reporting period;

(9) statistical tables showing the total number of audit reports and the dollar value of recommendations that funds be put to better use by management, for audit reports—

(A) for which no management decision had been made by the commencement of the reporting period;

(B) which were issued during the reporting period;

(C) for which a management decision was made during the reporting period, including—

(i) the dollar value of recommendations that were agreed to by management; and

(ii) the dollar value of recommendations that were not agreed to by management; and

(D) for which no management decision has been made by the end of the reporting period;

(10) a summary of each audit report issued before the commencement of the reporting period for which no management decision has been made by the end of the reporting period (including the date and title of each such report), an explanation of the reasons such management decision has not been made, and a statement concerning the desired timetable for achieving a management decision on each such report;

(11) a description and explanation of the reasons for any significant revised management decision made during the reporting period;

(12) information concerning any significant management decision with which the Inspector General is in disagreement; and

(13) the information described under section 05(b)[1] of the Federal Financial Management Improvement Act of 1996.

(b) Semiannual reports of each Inspector General shall be furnished to the head of the establishment involved not later than April 30 and October 31 of each year and shall be transmitted by such head to the appropriate committees or subcommittees of the Congress within thirty days after receipt of the report, together with a report by the head of the establishment containing—

(1) any comments such head determines appropriate;

(2) statistical tables showing the total number of audit reports and the dollar value of disallowed costs, for audit reports—

(A) for which final action had not been taken by the commencement of the reporting period;

(B) on which management decisions were made during the reporting period;

(C) for which final action was taken during the reporting period, including—

(i) the dollar value of disallowed costs that were recovered by management through collection, offset, property in lieu of cash, or otherwise; and

(ii) the dollar value of disallowed costs that were written off by management; and

(D) for which no final action has been taken by the end of the reporting period;

(3) statistical tables showing the total number of audit reports and the dollar value of recommendations that funds be put to better use by management agreed to in a management decision, for audit reports—

(A) for which final action had not been taken by the commencement of the reporting period;

(B) on which management decisions were made during the reporting period;

(C) for which final action was taken during the reporting period, including—

(i) the dollar value of recommendations that were actually completed; and

(ii) the dollar value of recommendations that management has subsequently concluded should not or could not be implemented or completed; and

(D) for which no final action has been taken by the end of the reporting period; and

(4) a statement with respect to audit reports on which management decisions have been made but final action has not been taken, other than audit reports on which a management decision was made within the preceding year, containing—

(A) a list of such audit reports and the date each such report was issued;

(B) the dollar value of disallowed costs for each report;

(C) the dollar value of recommendations that funds be put to better use agreed to by management for each report; and

(D) an explanation of the reasons final action has not been taken with respect to each such audit report,

except that such statement may exclude such audit reports that are under formal administrative or judicial appeal or upon which management of an establishment has agreed to pursue a legislative solution, but shall identify the number of reports in each category so excluded.

(c) Within sixty days of the transmission of the semiannual reports of each Inspector General to the Congress, the head of each establishment shall make copies of such report available to the public upon request and at a reasonable cost. Within 60 days after the transmission of the semiannual reports of each establishment head to the Congress, the head of each establishment shall make copies of such report available to the public upon request and at a reasonable cost.

(d) Each Inspector General shall report immediately to the head of the establishment involved whenever the Inspector General becomes aware of particularly serious or flagrant problems, abuses, or deficiencies relating to the administration of programs and operations of such establishment. The head of the establishment shall transmit any such report to the appropriate committees or subcommittees of Congress within seven calendar days, together with a re-

[1] See References in Text note below.

port by the head of the establishment containing any comments such head deems appropriate.

(e)(1) Nothing in this section shall be construed to authorize the public disclosure of information which is—

(A) specifically prohibited from disclosure by any other provision of law;

(B) specifically required by Executive order to be protected from disclosure in the interest of national defense or national security or in the conduct of foreign affairs; or

(C) a part of an ongoing criminal investigation.

(2) Notwithstanding paragraph (1)(C), any report under this section may be disclosed to the public in a form which includes information with respect to a part of an ongoing criminal investigation if such information has been included in a public record.

(3) Except to the extent and in the manner provided under section 6103(f) of the Internal Revenue Code of 1986 [26 U.S.C. 6103(f)], nothing in this section or in any other provision of this Act shall be construed to authorize or permit the withholding of information from the Congress, or from any committee or subcommittee thereof.

(f) As used in this section—

(1) the term "questioned cost" means a cost that is questioned by the Office because of—

(A) an alleged violation of a provision of a law, regulation, contract, grant, cooperative agreement, or other agreement or document governing the expenditure of funds;

(B) a finding that, at the time of the audit, such cost is not supported by adequate documentation; or

(C) a finding that the expenditure of funds for the intended purpose is unnecessary or unreasonable;

(2) the term "unsupported cost" means a cost that is questioned by the Office because the Office found that, at the time of the audit, such cost is not supported by adequate documentation;

(3) the term "disallowed cost" means a questioned cost that management, in a management decision, has sustained or agreed should not be charged to the Government;

(4) the term "recommendation that funds be put to better use" means a recommendation by the Office that funds could be used more efficiently if management of an establishment took actions to implement and complete the recommendation, including—

(A) reductions in outlays;

(B) deobligation of funds from programs or operations;

(C) withdrawal of interest subsidy costs on loans or loan guarantees, insurance, or bonds;

(D) costs not incurred by implementing recommended improvements related to the operations of the establishment, a contractor or grantee;

(E) avoidance of unnecessary expenditures noted in preaward reviews of contract or grant agreements; or

(F) any other savings which are specifically identified;

(5) the term "management decision" means the evaluation by the management of an establishment of the findings and recommendations included in an audit report and the issuance of a final decision by management concerning its response to such findings and recommendations, including actions concluded to be necessary; and

(6) the term "final action" means—

(A) the completion of all actions that the management of an establishment has concluded, in its management decision, are necessary with respect to the findings and recommendations included in an audit report; and

(B) in the event that the management of an establishment concludes no action is necessary, final action occurs when a management decision has been made.

(Pub. L. 95–452, §5, Oct. 12, 1978, 92 Stat. 1103; Pub. L. 97–252, title XI, §1117(c), Sept. 8, 1982, 96 Stat. 752; Pub. L. 100–504, title I, §§102(g), 106, Oct. 18, 1988, 102 Stat. 2521, 2525; Pub. L. 104–208, div. A, title I, §101(f) [title VIII, §805(c)], Sept. 30, 1996, 110 Stat. 3009–314, 3009–393.)

REFERENCES IN TEXT

Section 05(b) of the Federal Financial Management Improvement Act of 1996, referred to in subsec. (a)(13), probably means section 101(f) [title VIII, §804(b)] of title I of Pub. L. 104–208, Sept. 30, 1996, 110 Stat. 3009–314, 3009–392, which relates to reports by the Inspector General, and is set out in a note under section 3512 of Title 31, Money and Finance.

AMENDMENTS

1996—Subsec. (a)(13). Pub. L. 104–208 added par. (13).

1988—Subsec. (a)(6) to (12). Pub. L. 100–504, §106(a), added pars. (6) to (12), and struck out former par. (6) which read as follows: "a listing of each audit report completed by the Office during the reporting period."

Subsec. (b). Pub. L. 100–504, §106(b), substituted "head of the establishment containing—" and pars. (1) to (4) for "head of the establishment containing any comments such head deems appropriate."

Subsec. (c). Pub. L. 100–504, §106(c), inserted at end "Within 60 days after the transmission of the semiannual reports of each establishment head to the Congress, the head of each establishment shall make copies of such report available to the public upon request and at a reasonable cost."

Subsec. (e)(3). Pub. L. 100–504, §102(g), substituted "Except to the extent and in the manner provided under section 6103(f) of the Internal Revenue Code of 1986, nothing" for "Nothing".

Subsec. (f). Pub. L. 100–504, §106(d), added subsec. (f).

1982—Subsec. (e). Pub. L. 97–252 added subsec. (e).

EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by Pub. L. 104–208 effective for fiscal year ending Sept. 30, 1997, see section 101(f) [title VIII, §807] of Pub. L. 104–208, set out in a Federal Financial Management Improvement note under section 3512 of Title 31, Money and Finance.

EFFECTIVE DATE OF 1988 AMENDMENT

Section 113 of title I of Pub. L. 100–504 provided that: "This title and the amendments made by this title [enacting sections 8B–8F of Pub. L. 95–452, set out in this Appendix, amending sections 2, 4–6, 8, 9, and 11 of Pub. L. 95–452, set out in this Appendix, sections 5315 and 5316 of this title, sections 405 and 1105 of Title 31, Money and Finance, and section 410 of Title 39, Postal Service, repealing sections 3521–3527 and 7138 of Title 42, The Public Health and Welfare, and section 231v of Title 45,

Railroads, and enacting provisions set out as notes under sections 1, 8D, 8E, and 9 of Pub. L. 95–452, set out in this Appendix] shall take effect 180 days after the date of the enactment of this title [Oct. 18, 1988], except that section 5(a)(6) through (12) of the Inspector General Act of 1978 (as amended by section 106(a) of this title) and section 5(b)(1) through (4) of the Inspector General Act of 1978 (as amended by section 106(b) of this title) shall take effect 1 year after the date of the enactment of this title."

PROMPT MANAGEMENT DECISIONS AND IMPLEMENTATION OF AUDIT RECOMMENDATIONS

Pub. L. 103–355, title VI, §6009, Oct. 13, 1994, 108 Stat. 3367, as amended by Pub. L. 104–106, div. A, title VIII, §810, Feb. 10, 1996, 110 Stat. 394, provided that:

"(a) MANAGEMENT DECISIONS.—(1) The head of a Federal agency shall make management decisions on all findings and recommendations set forth in an audit report of the inspector general of the agency within a maximum of six months after the issuance of the report.

"(2) The head of a Federal agency shall make management decisions on all findings and recommendations set forth in an audit report of any auditor from outside the Federal Government within a maximum of six months after the date on which the head of the agency receives the report.

"(b) COMPLETION OF FINAL ACTION.—The head of a Federal agency shall complete final action on each management decision required with regard to a recommendation in an inspector general's report under subsection (a)(1) within 12 months after the date of the inspector general's report. If the head of the agency fails to complete final action with regard to a management decision within the 12-month period, the inspector general concerned shall identify the matter in each of the inspector general's semiannual reports pursuant to section 5(a)(3) of the Inspector General Act of 1978 (5 U.S.C. App.) until final action on the management decision is completed."

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in title 26 section 7803; title 39 section 3013; title 42 section 1320a–7d; title 44 section 3903.

### §6. Authority of Inspector General; information and assistance from Federal agencies; unreasonable refusal; office space and equipment

(a) In addition to the authority otherwise provided by this Act, each Inspector General, in carrying out the provisions of this Act, is authorized—

(1) to have access to all records, reports, audits, reviews, documents, papers, recommendations, or other material available to the applicable establishment which relate to programs and operations with respect to which that Inspector General has responsibilities under this Act;

(2) to make such investigations and reports relating to the administration of the programs and operations of the applicable establishment as are, in the judgment of the Inspector General, necessary or desirable;

(3) to request such information or assistance as may be necessary for carrying out the duties and responsibilities provided by this Act from any Federal, State, or local governmental agency or unit thereof;

(4) to require by subpena the production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence necessary in the performance of the functions assigned by this Act, which subpena, in the case of contumacy or refusal to obey, shall be enforceable by order of any appropriate United States district court: *Provided*, That procedures other than subpenas shall be used by the Inspector General to obtain documents and information from Federal agencies;

(5) to administer to or take from any person an oath, affirmation, or affidavit, whenever necessary in the performance of the functions assigned by this Act, which oath, affirmation, or affidavit when administered or taken by or before an employee of an Office of Inspector General designated by the Inspector General shall have the same force and effect as if administered or taken by or before an officer having a seal;

(6) to have direct and prompt access to the head of the establishment involved when necessary for any purpose pertaining to the performance of functions and responsibilities under this Act;

(7) to select, appoint, and employ such officers and employees as may be necessary for carrying out the functions, powers, and duties of the Office subject to the provisions of title 5, United States Code, governing appointments in the competitive service, and the provisions of chapter 51 and subchapter III of chapter 53 of such title relating to classification and General Schedule pay rates;

(8) to obtain services as authorized by section 3109 of title 5, United States Code, at daily rates not to exceed the equivalent rate prescribed for grade GS–18 of the General Schedule by section 5332 of title 5, United States Code; and

(9) to the extent and in such amounts as may be provided in advance by appropriations Acts, to enter into contracts and other arrangements for audits, studies, analyses, and other services with public agencies and with private persons, and to make such payments as may be necessary to carry out the provisions of this Act.

(b)(1) Upon request of an Inspector General for information or assistance under subsection (a)(3), the head of any Federal agency involved shall, insofar as is practicable and not in contravention of any existing statutory restriction or regulation of the Federal agency from which the information is requested, furnish to such Inspector General, or to an authorized designee, such information or assistance.

(2) Whenever information or assistance requested under subsection (a)(1) or (a)(3) is, in the judgment of an Inspector General, unreasonably refused or not provided, the Inspector General shall report the circumstances to the head of the establishment involved without delay.

(c) Each head of an establishment shall provide the Office within such establishment with appropriate and adequate office space at central and field office locations of such establishment, together with such equipment, office supplies, and communications facilities and services as may be necessary for the operation of such offices, and shall provide necessary maintenance services for such offices and the equipment and facilities located therein.