ECONOMIC REGULATORY ADMINISTRATION
DELEGATION ORDER NO. ________

TO THE ASSISTANT ADMINISTRATOR FOR
REGULATIONS AND EMERGENCY PLANNING

Pursuant to the authority vested in me as Administrator of the Economic Regulatory Administration ("Administrator"), the Assistant Administrator for Regulations and Emergency Planning is hereby delegated, on a nonexclusive basis, the authority to assert evidentiary privilege when documents are requested or demanded of the Economic Regulatory Administration by litigants in judicial or administrative proceedings.

The authority delegated to the Assistant Administrator for Regulations and Emergency Planning may be further delegated, in whole or in part, as may be appropriate.

In exercising the authority delegated by this Order or as redelegated pursuant thereto, the delegate(s) shall be governed by the rules and regulations of the Economic Regulatory Administration and the policies and procedures prescribed by the Administrator or his delegate(s).

All actions pursuant to any authority delegated prior to this Order or pursuant to any authority delegated by this Order taken prior to and in effect on the date of this Order are hereby confirmed and ratified, and shall remain in full force and effect as if taken under this Order, unless or until rescinded, amended or superseded.



Exhibit A

Nothing in this Order shall preclude the Administrator from exercising any of the authority so delegated whenever in his judgment his exercise of such authority is necessary or appropriate to administer the functions vested in him.

This Order is effective July 19, 1979.

David Bardin
Administrator
Economic Regulatory Administration

Department of Energy
Washington, D.C. 20461

JUL 19 1979

MEMORANDUM TO: F. Scott Bush
Acting Assistant Administrator for Regulations and Emergency Planning

FROM: David J. Bardin
Administrator

By Order of July 19, 1979, I have delegated to you the authority to review documents which the Department proposes to protect from disclosure as privileged because they are recommendatory and predecisional, or part of the agency decisionmaking process, in order to protect and promote the frank and open discussion within the agency that is essential to effective decision-making.

In recent months, there has been a massive increase of discovery in civil litigation involving the Department of Energy. A review of these discovery requests indicates that most litigants seek to probe the internal deliberations concerning the rule-making functions of the Economic Regulatory Administration ("ERA") and its predecessors, the Federal Energy Administration and the Federal Energy Office. Most of the documents sought are therefore in areas which are within your responsibility as Assistant Administrator for Regulations and Emergency Planning. In addition, you are familiar with the needs of the other ERA Assistant Administrators in carrying out their duties in formulating and implementing agency policies. Therefore, I have delegated to you the authority to review the documents and, if you determine it to be appropriate, to assert the government's privilege for recommendatory and deliberative documents, release of which would in your judgment threaten the free flow of communication which is necessary for the effective functioning of the ERA.

In general, documents will be presented to you by the attorneys representing the DOE in the particular litigation in which discovery is sought. The attorneys will have made a preliminary decision that these materials may be privileged, and will advise you of the nature of the action, the scope of the discovery request at issue and other pertinent



Exhibit B

information. Your review of the documents pursuant to this delegation should be in accord with the following guidelines:

1. Each document must be personally examined by you, and careful consideration must be given as to whether the release of a document, or of a related set of documents, would seriously inhibit frank and open discussion of policies among the staff which is involved. If only certain portions of particular documents should be protected and are segregable, the remaining portions should be released.

2. Decisions in various civil actions as to whether the privilege is to be asserted should be consistent. In addition, all similar or related documents in a particular case should be treated consistently. Consistency is also important because the requesting party may later argue waiver, i.e., that if one document concerning a particular issue or rulemaking is released in discovery, it may be argued that the agency has waived its privilege as to all documents regarding the same subject.

3. Finally, your decision as to whether privilege should be asserted should be based on your experience as an administrator and your expertise in energy policy analysis and development.

cc: Doug Robinson
Bart House

Department of Energy
Washington, D.C. 20585

JAN 21 1981

The Honorable Thomas R. Brett
United States District Court
Federal Building
Tulsa, Oklahoma 74103

Re: Cotton Petroleum Corporation v. Duncan (No. 79-C-219-B)

Dear Judge Brett:

Prior to the scheduled discovery conference on 10:00 a.m. Friday January 23, 1981, I, as counsel for the defendants, would like to bring several matters to the Court's attention and to respond to Mr. Kincaid's January 15, 1981 letter to this Court.

First, concerning the "Project Manipulator" search, we would first note for the Court and counsel for plaintiff that we, in our January 12, 1981, response, went beyond Paragraph IV of this Court's Second Discovery Order in identifying Project Manipulator "final audit reports and attachments, or comparable documents" referring "directly or indirectly, applying or interpreting Rule 1975-15 relating to stripper well production and unitized leases." We did not limit our search just for documents referring to Ruling 1975-15; instead we requested, received and produced to plaintiff any such reports or comparable documents referring to a unit of oil leases or fees, including any which were stripper well properties. Indeed, none of the audit reports, large parts of which were produced to plaintiff as Documents 703-709, referred to Ruling 1975-15 at all. Indeed, all reports except one - Document 705 - predated Ruling 1975-15. Nevertheless, defendants, in the interests of justice, identified every report which referred to a unit and produced large parts of each such report.

Counsel for Cotton, despite our overproduction in response to the Second Discovery Order, complains that it

received only 10 reports of Project Manipulator audits. (Kincaid letter at 3-4) 1/ In view of the fact that at most 5 - 10% of all crude oil pricing documents defer to units, 2/ finding just 7 reports dealing with units out of the 53 or more Region VI Project Manipulator audits is not unusual, especially where Project audits did not begin until late 1974 or early 1975 and were not completed until after February 1, 1976, the discovery cut-off date here.

Concerning Cotton counsel's complaint that defendants have "withheld all or significant portions of 118 relevant documents" (Kincaid letter at 3) we state that nearly all of the 82 documents (Documents 1-30, 32, 35-44, 47-49, 54, 57-69, 72-82, 84, 87-89, 95-96, E, G-I and L-N) withheld in their entirety are drafts of other later published documents. As such, they have properly been withheld.

As the Second Circuit recently stated in reversing a district court for compelling disclosure of segments of "drafts,"

> [i]f the segment appeared in the final version, it is already on the public record and need not be disclosed. If the segment did not appear in the final version, its omission reveals an agency deliberative process: for some reason, the agency decided not to rely on that fact or argument after having been invited to do so.

Lead Industries Ass'n, Inc. v. OSHA, 610 F.2d 70,86 (2d Cir. 1979).

---

1/ Actually, it only received 7 reports, Documents 703-709. Documents 710-12 are additional documents shedding light on the audits reflected in Documents 709 and 706 respectively. Although Documents 710-12 were not called for either in Paragraph IV of the Court's Second Discovery order, they were produced in their entirety by Counsel for defendants to provide plaintiff with full discovery.

2/ See affidavit of F. Scott Bush filed in United States v. Exxon Corp. on or about August 29, 1980 (Exhibit A, submitted herewith). After receiving this affidavit, Judge Flannery limited discovery in the case to just documents referring to unitized properties instead of properties generally. October 9, 1980 Order at 2, ¶4 (Exhibit B, submitted herewith).

Moreover, approximately 900 documents or parts of documents have been produced to Cotton by the DOE in this case. Nearly 200 audit documents were produced to Cotton in November 1980 by the DOE along with its answers to interrogatories. Another 200 or so non-audit documents were also produced to Cotton in November. On December 15, 1980, approximately 500 more documents were produced. And on January 12, 1981, another 10 were produced.

With respect to Cotton counsel's complaint that our Vaughn indices are somehow inadequate, we note only that he, without citation to the indices themselves, says only that the "DOE has asserted privilege generally by repeating the same boiler - plate claim over and over again." (Kincaid letter at 4) Although we deny that we have resorted to boiler - plate in describing, and providing a justification for withholding, the documents, we note that many of the documents, as we have already explained, fall into the same category (e.g., drafts of other public record documents) and therefore the same justification for claiming privilege applies. Moreover, we note that we have gone beyond Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 877 (1974), which only requires that each document be described and "cross-referenced to the relevant portion of the Government's justification." Id. at 827. Here, for the convenience of plaintiff and this Court, we have described each document separately and provided an attached justification for each document. In short, we have tried to avoid the boiler - plate justification which Vaughn would allow.

Concerning Cotton Counsel's claim that we have inadequately asserted executive privilege, (Kincaid letter at 4-6), we note that Cotton, as its counsel admits (Kincaid letter at 3), has not yet made any motion to compel production of any of the 117 documents (1-30, 32-103 and A-O) withheld in whole or in part. Until that motion is filed, the time is

not ripe for any formal assertion of privilege. It may well be that Cotton will decide on the basis of indexes before it that it does not need some of the 117 privileged documents or that it will surely lose on a motion to compel with regard to some of them, and so will never press its request. It would seriously interfer with the ongoing work of the agency to require a policy official to formally claim privilege for every such document when a company may never move to compel with regard to a number of them. Also, this Court, in its August 29 and November 18, 1980 Orders, ordered us to follow the criteria set forth in Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973), cert. denied, 415 U.S. 877 (1974) and to pay particular attention to Coastal States Gas Corp. v. DOE, 617 F.2d 854 (D.C. Cir. 1980). 8/29/80 Order at 12-13; 11/18/80 Order at 7, ¶V. That we have done. Neither case requires an affidavit.

In any event, the law on the question whether an affidavit of an agency official is necessary to assert executive privilege, which question would only arise if a motion to compel were made, is not as one-sided as Cotton would have this Court believe. The seminal case for Cotton's position is United States v. Reynolds, 345 U.S. 1 (1953). That case involved a claim that a highly relevant official investigation report on the crash of an Air Force bomber constituted a military secret, and the Court noted that "the privilege against revealing military secrets" could be claimed only by the head of the agency. Id. at 6-8. This holding flowed from the nature of the privilege being claimed, the information being reviewed, and the limited judicial role in the inquiry - "the Court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers." Id. at 10. The affidavit of the agency head is therefore essential whenever the military secret privilege is claimed; not even an in camera inspection of the documents is permitted if that affidavit is adequate.

Another, more pragmatic consideration could also have contributed to the result in Reynolds. Judges and lawyers, lacking detailed knowledge of military affairs, are incapable of determining whether certain datum constitutes a military secret merely by looking at it. What is necessary is an individual policy judgment by someone equipped with the necessary information to determine the significance of the data, its uniqueness and notoriety, and the need for secrecy.

By contrast, other privileges such as the attorney-client privilege can properly be invoked by attorneys; corporate heads need not formally assert them. And the judicial role in the inquiry need not be so limited. Because the sole determination is whether the specific communications or documents relate to confidential legal communications, they can be analyzed and evaluated by counsel and the Court just as well as by a corporate official.

The privilege for intra-agency materials is akin to the attorney-client privilege in this respect. The determination of this privilege, unlike the military secret one, does not require an evaluation of extraneous material. Counsel and the Court can determine, by inspecting the material, whether it falls within the general scope of the privilege without consulting the department or agency head.

This is precisely the approach adopted by the Supreme Court in its proposed Rule of Evidence 509(c):

> The privilege for secrets of state may be claimed only by the chief officer of the government agency or department administering the subject matter which the secret information sought concerns, but the privilege for official information may be asserted by any attorney representing the government ... 3/

3/ The Advisory Committee noted that the difference "is justified by the lesser participation by the judge in cases of state secrets. The full participation by the judge in official information cases, on the contrary, warrants allowing the claim of privilege to be made by a government attorney." Advisory Committee Note to Subdivision (c), reprinted in 2 Weinstein, Evidence ¶509[09].

Although Congress did not enact this proposed rule, it never rejected the standards embodied in it. And, as Judge Weinstein has noted, those standards reflect "'reason and experience' . . . [and] are a convenient, comprehensive guide to the federal law of privileges . . . ." 2 Weinstein, Evidence ¶501[02] at 501-20.5. 4/ Judge Weinstein had even relied upon proposed Rule 509 in deciding a claim of intra-agency decisionmaking privilege in a case where, ostensibly, no formal claim of privilege was required. In re Franklin Bank Securities Litigation, 478 F.Supp. 577, 580 (E.D.N.Y. 1979).

In several other recent cases, federal district courts have not required affidavits for the proper assertion of governmental privileges. Just before the decision not to enact Rule 509(c) was made, Judge Becker held in Frankenhauser v. Rizzo, 59 F.R.D. 339, 342 n.6 (E.D. Pa. 1973) that

> [w]e will follow. . . the procedure prescribed by rule 509 (c), Federal Rules of Evidence, which allows counsel for the government to assert the privilege for official information. The rule requires that executive officials invoke the privilege only where military or diplomatic secrets are concerned, because there the judge's participation in delving into the privilege question is less full than in cases involving less sensitive official information.

---

4/ Part of this reason and experience was, no doubt the Fifth Circuit's opinion in NLRB v. Capitol Fish Co., 294 F.2d 868, 875 (5th Cir. 1961). Faced with the question whether the NLRB, by merely having its attorneys refuse on the grounds of the investigatory privilege to produce an employee investigator in response to a subpoena, had waived the privilege, that court held that "the question of privilege is as squarely raised by an unexplained refusal to comply as by an express claim of privilege, and the court must decide the question." Accord, Rosee v. Board of Trade, 35 F.R.D. 512, 514 (N.D. Ill. 1964).

Moreover, after the decision was made not to enact Rule 509 (c) the district court in Sirmans v. City of South Miami, 86 F.R.D. 492, 494-496 (S.D. Fla. 1980) found no waiver of privilege with respect to, and indeed ordered in camera inspection of, documents sought by a subpoena which the state attempted to quash by simply having its attorneys assert its investigatory privilege. See also Renshaw v. Ravert, 82 F.R.D. 361 (E.D. Pa. 1979).

Furthermore, an agency head need not lodge the claim of executive privilege for intra-agency deliberative materials in a Freedom of Information Act (FOIA) 5/ suit; the agency's lawyers can. E.g., NLRB v. Sears Roebuck & Co., 421 U.S. 132, 142-46 (1975). By the same token, when an adequate affidavit is filed, no in camera inspection is necessary. Crooker v. Office of Pardon Attorney, 614 F.2d 825, 828 (2d Cir. 1980). And FOIA Exception 5, at issue in Sears, has been equated with the privilege covering deliberative materials in suits involving the agency Id. at 149.

Thus, established practice in the area of the attorney-client privilege, the reason and experience embodied in proposed Rule of Evidence 509(c) and accepted procedures in FOIA suits, viewed individually or collectively, form a substantial basis for concluding that a government attorney may assert executive privilege as to intra-agency deliberative materials. 6/

Also, because no motion to compel has been made by Cotton, this Court need not reach the questions whether the documents withheld are predecisional or whether Cotton's need for the documents outweighs any claim of privilege (Kincaid letter at 6-7). Interestingly, these arguments are the same ones made by Pennzoil Company in a motion to compel production of Documents 1-30 and 32-34 here in Pennzoil Co. v. DOE, No. 78-335 (D. Del.). Briefing on that motion

5/ 5 U.S.C. §552 (1976).

6/ Even if an affidavit from a non-attorney were necessary, an affidavit from any policy official -- not just the head of the agency -- will assure both consistency and public interest imput. See December 15, 1981 Memorandum at 6-7 in Mobley v. DOE, No. 78-1073 (W.D. La.) (attached as Exhibit C).

occurred in November and early December 1980. Judge Stapleton then heard oral argument on the motion on December 15, 1980 and has had the motion under advisement since that time.

In passing, we do note, however, that Cotton's theory that the DOE can have no predecisional documents concerning questions of unitization because its litigation position is that a unit was always the property under 10 C.F.R. § 212.72 and its predecessor regulation is unsound. For example, drafts of Ruling 1975-15, the regulations and notices of probable violations (NOPV's), some of the documents withheld here, are all part of the give and take of separate decision making processes, i.e. whether and in what form to issue the ruling, regulations and NOPVs. In any event, as the Supreme Court explained in sanctioning the withholding of certain internal opinions in NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 n.18 (1975):

> [O]ur emphasis on the need to protect predecisional documents does not mean that the existence of the privilege turn on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

Moreover, Cotton has not made the "definite showing of necessity" required by Kaiser Aluminum & Chemical Corp. v. United States, 157 F.Supp. 939 (Ct. Cl. 1958) to justify any invastion of the executive or any other privilege. 7/ For example, it has not shown that it needs to know the name of the informant identified generally in Document 51.

7/ No showing of need will, of course, permit an invasion of the attorney client privilege.

Finally, the search for responsive documents in "case specific law enforcement files of the Regional Counsels and Directors of Regional Compliance for Regions I through X" is still underway and will require the identification and production of more documents. Until these additional documents are identified, this "need" question cannot be resolved for it is possible that Cotton will get what it says it needs in this last wave of discovery.

Sincerely,

Daniel F. Shea (signature)

Daniel F. Shea
Office of General Counsel
Department of Energy

Enclosure

cc: James Kincaid, Esq.
Jeffrey Howard, Esq.