IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 04-0074C, into which has been consolidated No. 04-0075C (Judge Hewitt) |

DEFENDANT'S MOTION FOR ENTRY OF AN ORDER COMPELLING THE PRODUCTION OF DOCUMENTS FROM THIRD PARTY ENVIROCARE OF UTAH, LLC

Pursuant to Rules 7(b) and 45 of the Rules of the Court of Federal Claims, defendant, the United States, files this motion for the entry of an order compelling the production of certain documents from Envirocare of Utah, LLC ("Envirocare"). Neither counsel for Envirocare nor counsel for PG&E oppose this motion. However, as discussed below, a third party that is the plaintiff in another case pending before this Court, Wisconsin Electric Power Company ("WEPCO"), objects to the production of one of the four documents at issue here.

STATEMENT OF FACTS

On November 10, 2005, plaintiff, Pacific Gas & Electric ("PG&E"), served upon the Government the expert report of Roderick W. Knight. Mr. Knight's expert report purports to "provide representative costs for various aspects of spent fuel storage, for use in an economic model developed by the Brattle Group." App. at 1-11 (redacted Report of Roderick Knight).[1] Mr. Knight's report contains an Appendix A in which he provides a list of four decommissioning studies "used in this analysis" (App. at 4), and three enclosures that identify costs that allegedly

[1] "App. at ___" refers to the appendix submitted with this motion.

were derived from the four studies. App. at 6-8.[2] The studies listed in Appendix A do not identify the utility for which the decommissioning study was prepared. Instead, Appendix A identifies each utility generically while providing certain additional identifying information related to each study. App. at 5.[3] Based upon our review of Mr. Knight's report, it appears that his entire opinion concerning "representative costs" for the commercial nuclear industry as a whole is based upon these four studies, and nothing else.

By letter dated November 16, 2005, the Government requested that PG&E produce all documents considered by each of PG&E's four experts in this case, including the four decommissioning cost studies upon which Mr. Knight ostensibly relied. App. at 12-13 (November 16, 2005 letter from J. Ekman to J. Stouck). On November 23, 2005, counsel for PG&E responded to the Government's first two requests, stating that:

> The decommissioning cost studies considered by Mr. Knight . . . are controlled by Envirocare of Utah, LLC, which acquired the SCIENTECH division that prepared the reports. Envirocare is very sensitive about disclosure of these reports. To the extent the government determines that it is truly necessary for it to have access to these reports, we will work with you to determine how best to address the situation.

App. at 14 (November 23, 2005 letter from R. Shapiro to J. Ekman). Counsel for PG&E further

---

[2] In an effort to avoid the procedural requirement that this motion be filed under seal, and following from a telephone conversation with counsel for PG&E on December 15, 2005, concerning potentially confidential material, all cost information contained within Mr. Knight's report has been redacted. Based upon the redactions, no potentially confidential material is reflected in this motion.

[3] As set forth in Appendix A, each of the four decommissioning studies were prepared by SCIENTECH Inc., from October 2002 through December 2004. SCIENTECH Inc. recently was acquired by Envirocare. As a result, Envirocare has possession, custody, and control over the four decommissioning studies.

suggested that the Government serve a subpoena upon Envirocare seeking the decommissioning cost studies listed in Appendix A to Mr. Knight's report. App. at 17 (December 13, 2005 letter from R. Shapiro to J. Ekman). However, counsel for PG&E consistently has maintained that PG&E does not have any obligation to provide the Government with the information upon which Mr. Knight relied. Id.

Thereafter, on November 29, 2005, we informed counsel for PG&E that, "[w]ithout these studies, we are unable to prepare a response or depose Mr. Knight concerning his expert opinions." App. at 18. Moreover, we noted that it is "axiomatic that Mr. Knight cannot issue opinions founded upon purportedly confidential or proprietary information and then shield the underlying bases for those opinions from the Government upon proprietary grounds." Id.

In an effort to expedite production of the four studies, and given the limited time in which the Government has to respond to PG&E's four expert reports, the Government served a subpoena upon Envirocare on November 30, 2005, requesting the production of the four decommissioning cost studies identified in Mr. Knight's report. App. at 20-22 (Subpoena). Following the service of the subpoena, the Government spoke both with in-house and outside counsel for Envirocare in an effort to facilitate production of the four studies. During those conversations, the Government repeatedly was informed that Envirocare wished to comply with the subpoena, but that it was precluded from doing so absent a court order compelling production based upon confidentiality provisions contained in the original agreements between SCIENTECH Inc. and its utility clients.[4] App. at 23 (Letter from G. Saylin to J. Ekman, dated

[4] At this time, three of the four studies sought by the Government in the subpoena are being withheld pursuant to the confidentiality provisions in the SCIENTECH Inc. agreements. The remaining study has been produced. However, the Government asks that any order compel

December 15, 2005). Counsel for Envirocare further represented that Envirocare would support the entry of an order compelling production of these four studies. Id.

In connection with our conversations with Envirocare's in-house counsel, we were advised that there were questions concerning the purpose for which one of the four reports – the decommissioning study related to WEPCO's Point Beach Nuclear Plant (Document No. 82A9540) – was prepared. Specifically, attorneys with Perkins Coie LLP who represent WEPCO in one of the spent nuclear fuel cases pending before Senior Judge Merow, Wisconsin Electric Power Company v. United States, No. 00-697C, withdrew their initial consent to produce the requested study based upon the possibility that the document was subject to an assertion of privilege.

Upon being informed of this assertion, we contacted WEPCO's counsel to advise them of this motion and of our intent to obtain an order compelling production of, among other studies, the WEPCO decommissioning study upon which Mr. Knight relied. In response to that call, on December 14, 2005, WEPCO's attorneys sent a letter to the Government asserting that the requested study is "privileged and confidential" and that WEPCO "does not consent to the Government's access to the document." App. at 24 (December 14, 2005 letter from D. Carney to J. Ekman). In response, we advised WEPCO's counsel that we expected that this motion would be filed on Friday, December 16, 2005. App. at 26-27 (December 15, 2005 letter from J. Ekman to D. Carney). We also informed counsel for WEPCO that we would include the grounds for the assertion of privilege in this motion if we timely received a response to our letter. Id. On

---

the production of all four reports to ensure a complete production. All four studies will be subject to the protective order entered in this case.

December 15, 2005, counsel for WEPCO responded stating that the document was prepared by SCIENTECH Inc. for counsel's use in the Wisconsin Electric litigation and that it "falls within the attorney-client privilege and work product rules and should not be disclosed in discovery." App. at 28 (December 15, 2005 letter from R. Oehler to J. Ekman).[5]

## ARGUMENT

RCFC 26(b)(4) permits expert discovery "to facilitate preparation of effective cross-examination and rebuttal testimony, and to make the fact-finder's task more manageable by an orderly presentation of complex factual issues." Abruzzo v. United States, 21 Cl. Ct. 351, 355 (1990). To this end, "[t]he Federal Rules provide for the discovery of the materials upon which an expert witness bases his opinion." William Penn Life Assurance Co. v. Brown Transfer and Storage Co., 141 F.R.D. 142, 143 (W.D. Mo. 1990). Such "pretrial disclosure is necessary if the

---

[5] The letter from counsel for WEPCO, Richard Oehler, contains a further assertion that the allegedly privileged study may have been incorrectly referenced in Mr. Knight's report and that Mr. Knight likely meant to cite to WEPCO's publicly-filed decommissioning study (Document No. 82A9550). The implication in the letter is that Mr. Knight made a stenographer's error in his report. There simply is no support for this contention. Indeed, even without reference to the cost information contained in Mr. Knight's report, there are significant reasons to believe that Mr. Knight relied upon the allegedly privileged study. First, Mr. Knight's report identifies both the number (82A9540) and the preparation date (December 2004) of the allegedly privileged study. App. at 5. The publicly-filed decommissioning study referenced by Mr. Oehler has a different number and, most significantly, a different date of preparation (June 2005). App. at 30 (first page of WEPCO's publicly-filed 2004 decommissioning study). Second, if Mr. Knight had relied upon the publicly-available decommissioning study that he prepared, the assertion from counsel for PG&E that the information was not within Mr. Knight's possession, custody, or control would be in error. App. at 31-32. Indeed, the subpoena that PG&E suggested that we serve upon Envirocare to obtain that study, among others, would have been unnecessary. Finally, Mr. Knight's curriculum vitae may reference his allegedly privileged work for WEPCO. Specifically, Mr. Knight writes that, "[i]n the winter of 2005 [he] provided cost estimates to a confidential client for litigation support." App. at 11. The limited information that we possess appears to contradict the assertion that Mr. Knight relied upon a different, publicly-available decommissioning study than the study referenced in his report.

parties are to fairly evaluate their respective claims for settlement purposes, determine the real areas of dispute, narrow the actual issues, avoid surprise, and prepare adequately for cross-examination and rebuttal." United States v. Meyer, 398 F.2d 66, 69 (9th Cir. 1968); accord Oneida, 43 Fed. Cl. at 619 ("advance knowledge through pretrial discovery of an expert witness's basis for his opinion is essential for effective cross-examination."). To this end, the discovery rules "authorize disclosure of both expert opinions and 'all the documents the expert generated or examined in the process of forming those opinions.'" County of Suffolk v. Long Island Lighting Co., 122 F.R.D. 120, 122 (E.D.N.Y. 1988) (quoting Hewlett-Packard Co. v. Bausch & Lomb, Inc., 116 F.R.D. 533, 536 (N.D. Cal. 1987)) (emphasis added). Particularly in this case, where the outcome may "turn on the testimony of competing experts, the trier of fact has a right to know every thing that the experts considered in the process of formulating their opinions." Hewlett-Packard, 116 F.R.D. at 540 (emphasis added); accord Boring v. Keller, 97 F.R.D. 404, 406 (D. Colo. 1983).

Here, in an effort to obtain the four decommissioning studies upon which Mr. Knight relied in reaching his opinions, and based upon representations from PG&E that Mr. Knight did not physically possess the four studies (App. at 31-32 (December 14, 2005 letter from J. Ekman to R. Shapiro)), the Government served a subpoena, pursuant to RCFC 45, upon Envirocare – the entity with possession, custody, and control over the studies. These four studies are necessary to examine the limited opinions of Mr. Knight and to prepare our response to those opinions. Indeed, the deposition of Mr. Knight cannot proceed without access to the four documents upon which his opinion is based. Since the Government needs the decommissioning studies upon which Mr. Knight relied, we respectfully request that the Court enter an order compelling

Envirocare to produce all four of the cost studies to the Government.

Finally, since neither PG&E nor Envirocare object to the entry of this order, the only remaining issue involves WEPCO's assertion of privilege over its decommissioning cost study. Prior to Mr. Knight's expert report and the identification of the WEPCO study by Envirocare, the Government was unaware of the existence of this study, even though WEPCO's decommissioning studies were sought by the Government in discovery in the Wisconsin Electric litigation. App. at 26. Moreover, WEPCO neither listed the document upon a privilege log nor articulated the basis for its assertion of privilege. Id. Mr. Knight's opinions are based, in large part, upon the WEPCO decommissioning study. Indeed, having elected to rely upon only four decommissioning cost studies to generate his "representative costs," Mr. Knight's opinion significantly is affected by the costs set forth in each of the four studies. In order to depose Mr. Knight and respond to his opinions, we need to review all four studies that form the basis for his opinions. If we are unable to review all of the studies, our ability to respond to Mr. Knight's opinions is prejudiced.

CONCLUSION

For the reasons set forth herein, we respectfully request the entry of an order compelling third party Envirocare of Utah, LLC, to produce the four studies identified by the Government in its subpoena.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT DAMELIN
SHARON SNYDER
JOSHUA E. GARDNER
TODD J. COCHRAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

s/John C. Ekman
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 353-0897
Fax: (202) 307-2503

December 16, 2005

Attorneys for Defendant