No. 04-0074C
into which has been consolidated No 04-0075C
Judge Hewitt

(Filed Electronically, December 16, 2005)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# PG&E'S OPPOSITION TO MOTION TO STRIKE CORNELL EXPERT WITNESS REPORT RELATED TO FUTURE DAMAGES

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173
(202) 261-4751
*Counsel for Plaintiff*
Pacific Gas & Electric Company

Of Counsel:
ROBERT L. SHAPIRO
Greenberg Traurig, LLP

# TABLE OF CONTENTS

Page

A. The Motion to Strike is Procedurally Improper and Unworkable .................................... 2

B. The Government Has Acknowledged That This Court Has Flexibility to Award Post-Complaint Damages .............................................................. 3

C. Neither Indiana Michigan Nor Any Other Authority Resolves Availability Of Post-January 28, 2004 Damages In This Case ........................................ 7

D. Limiting Damages to the Time of the Complaint or Amended Complaint Would be Arbitrary and Without Merit ....................................................... 14

CONCLUSION ....................................................................................................... 15

## APPENDIX

Document ....................................................................................................Page

Exhibit 1: September 16, 2005 Correspondence from United States Department to Balch & Bingham LLP ............................................................ 1

Exhibit 2: December 5, 2005 Correspondence from United States Department of Justice to Pillsbury Winthrop Shaw Pittman LLP ............................................................................................ 4

Exhibit 3: Excerpts from W. John Arthur, III Deposition Transcript dated September 22, 2005 ............................................................... 7

# TABLE OF AUTHORITIES

**Cases** .......... Page

*Ace-Federal Reporters, Inc. v. Barram,* 226 F.3d 1329 (Fed. Cir. 2000) .......... 15

*Anderson v. United States,* 344 F.3d 1343 (Fed. Cir. 2003) .......... 10

*Arnone v. Chrysler Corp.,* 148 N.W.2d 902 (Mich. Ct. App. 1967) .......... 12

*Beacon Oil Co. v. O'Leary,* 71 F.3d 391 (Fed. Cir. 1995) .......... 9

*Bluebonnet Sav. Bank v. United States,* 266 F.3d 1348 (Fed. Cir. 2001) .......... 14

*Commonwealth Edison Co. v. United States,* 56 Fed. Cl. 652 (2003) .......... 10

*Conley v. Gibson*, 355 U.S. 41 (1957) .......... 5

*Coughlin v. Blair,* 262 P.2d 305 (Cal. 1953) .......... 10

*Energy Capital Corp. v. United States,* 302 F.3d 1314 (Fed. Cir. 2002) .......... 15

*Gately v. Commonwealth of Mass.,* 2 F.3d 1221 (1st Cir. 1993), *cert. denied,* 511 U.S. 1082 (1994) .......... 9

*Hughes Communications Galaxy, Inc. v. United States,* 271 F.3d 1060 (Fed. Cir. 2002) .......... 13

*Indiana Michigan v. United States,* 422 F.3d 1369 (Fed. Cir. 2005) .......... passim

*Indiana Michigan,* 60 Fed. Cl. 639 (2004) .......... 7, 8

*Intrepid v. Pollack,* 907 F.2d 1125 (Fed. Cir. 1990) .......... 5

*Kaiser v. Northwest Shopping Center, Inc.,* 587 S.W.2d 454 (Tex. Civ. App. 1979) .......... 12, 13

*Locke v. United States*, 283 F.2d 521 (Ct. Cl. 1960) .......... 14

*Mechanical Wholesale, Inc. v. Universal-Rundle Corp.,* 432 F.2d 228 (5th Cir. 1970) .......... 15

*Northern Helex Co. v. United States*, 634 F.2d 557 (Ct. Cl. 1980) .......... 15

*Olson v. United States,* 172 F.3d 1311 (Fed. Cir. 1999) .......... 10

*San Carlos Irrigation & Drainage Dist. v. United States,* 111 F.3d 1557 (Fed. Cir. 1997) .......... 12

*Wilder v. Apfel,* 153 F.3d 799 (7th Cir. 1998) .......... 8

**Other Authorities**

22 Am. Jur. 2d Damages § 488 (2003) .................................................................. 12
*Corbin on Contracts* § 956 .................................................................................. 11, 12
RCFC 7(b)(1) ......................................................................................................... 2, 3
RCFC 26(a)(1) ........................................................................................................... 6
RCFC 26(a)(2) ........................................................................................................... 2
RCFC 56 .................................................................................................................... 1
*Restatement (Second) of Judgments* § 26 ...................................................... 8, 9, 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically Filed On December 16, 2005

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0074C, into which has been |
| | ) | consolidated No. 04-0075C |
| UNITED STATES OF AMERICA, | ) | (Judge Hewitt) |
| | ) | |
| Defendant. | ) | |

PG&E'S OPPOSITION TO MOTION TO STRIKE CORNELL
EXPERT WITNESS REPORT RELATED TO FUTURE DAMAGES

The government's motion to strike "portions" of Dr. Cornell's expert witness report related to future damages addresses an issue that is ultimately appropriate for resolution by the Court – an appropriate time frame for consideration of damages incurred by PG&E due to the government's "partial" breach in the present tranche of its claim against the government. But the procedural vehicle the government is attempting to use to address this issue is inappropriate. The government's motion to strike a portion of an expert witness report is unsupported, unworkable and should be rejected.

To the extent the government's motion may be viewed as a motion *in limine* or a motion for partial resolution of PG&E's claims pursuant to RCFC 56, the government's claim that PG&E should be limited to damages incurred only through January 28, 2004 is inconsistent with the government's position regarding the present recoverability of post-complaint damages in other cases, is not required by the Federal Circuit's decision in *Indiana Michigan v. United States,* 422 F.3d 1369 (Fed. Cir. 2005), and is substantively without merit.

A. The Motion to Strike is Procedurally Improper and Unworkable

The government cites no Rule of this Court or other authority supporting grant of the remedy it seeks – striking portions of an expert witness report. This is not surprising, because the remedy would actually be contrary to the Rules and would be unworkable. The contents of Dr. Cornell's expert witness report comply with the Rule governing such reports – RCFC 26(a)(2). That Rule requires a "*complete* statement of *all* opinions to be expressed and the basis and reasons therefor . . ." Dr. Cornell's report, including the portions addressing damages after January 28, 2004, does just that. Indeed, since Dr. Cornell obviously has and intends to express those opinions, his report would be incomplete and, thus, contrary to RCFC 26(a)(2) if it did not include the discussion of post-January 28, 2004 damages.

The government's motion is unworkable because it fails to even identify precisely which portions of Dr. Cornell's report it would have the Court strike. In this regard, the government's motion fails to comply with the most basic of requirements of motions – that they "set forth the relief or order sought." RCFC 7(b)(1). The government's failure to set out how it would like the Court to edit Dr. Cornell's expert witness report is also not surprising; although certain sections of Dr. Cornell's report pertain primarily to future damages, his report is not organized such that all portions regarding future damages can be easily excised and still leave a coherent expression of his opinions.

Of course, the government does not have to agree either that Dr. Cornell's opinions are correct or that PG&E is legally entitled to the amounts of damages addressed in Dr. Cornell's expert witness report. But the fact that the government contends that PG&E is not entitled to some of the damages discussed in his report is not a ground for striking those portions of the report. In fact, inclusion of that discussion in Dr. Cornell's

report helps to facilitate the parties' and the Court's consideration of the damages issues in this case, including the issue of the appropriate time frame for consideration of PG&E's damages.

In addition, the government's claim that Dr. Cornell's discussion of post-January 28, 2004 damages somehow "comes with potentially significant cost to the Government," *see* Govt. Mot. at 9, is not reconcilable with its argument that the unavailability of such damages is so manifest that Dr. Cornell's expert witness report should never have discussed them in the first place. *Id.* at 10, n.7. One of these competing government claims must be disingenuous. If the government truly believed that it is beyond serious dispute that post-January 2004 damages are not presently recoverable, then it could simply ignore discussion of such damages in Dr. Cornell's expert witness report and avoid all costs of preparing a defense on those issues.

B. The Government Has Acknowledged That This Court Has Flexibility to Award Post-Complaint Damages

The government's argument here that *Indiana Michigan* has established a firm rule precluding present recovery of damages incurred after the filing of this case, *see* Govt. Mot. at 5-6, is belied by the government's positions in other cases and even other statements it has made in this case. In *Southern Nuclear Operating Co. v. United States*, No. 98-614C (Fed. Cl. filed July 29, 1998), the government has taken the position that the plaintiff, through its present round of litigation, may recover damages through December 31, 2004, more than six years after the institution of that case. *See* Exhibit 1, Sept. 16, 2005 letter from John Ekman at 1.

In *Systems Fuels, Inc. v. United States*, No. 03-2624C (Fed. Cl. filed November 5, 2003), similarly, the government has taken the position that the plaintiff may recover in

its current round of litigation damages incurred through August 31, 2005, almost two years after the institution of that action. *See* Exhibit 2, Dec. 5, 2005 letter from Sharon Snyder at 1. In both *Southern* and *Systems Fuels*, the government's position depends on the plaintiff filing an amended or supplemental complaint. But if *Indiana Michigan* is to be read as establishing a firm rule precluding consideration of damages in these cases beyond the institution of the actions, the filing of an additional pleading could not change such a damages cutoff.

Neither *Indiana Michigan* nor any of the other authorities cited by the government link the cutoff date for the recoverability of damages in a partial breach of contract action to the date of the last amended or supplemental pleading filed in the case. And the government offers no explanation here as to why the filing of an amended or supplemental pleading should be deemed significant for purposes of determining the time frame for the recoverability of damages.[1] Importantly, the law concerning pleading is to the contrary. As the Federal Circuit has explained with particular reference to Rule 15, which governs amended and supplemental pleadings, "'[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to

[1] In his letter to Southern's counsel, Mr. Ekman asserted that an amended complaint would provide "a clear conception of the time period at issue in the trial of this matter and any appeal, and plaintiffs here will reduce any issues surrounding the Court's jurisdiction to consider and the effect of the statute of limitations upon these post-complaint damages." Exhibit 2 at 1. This statement does not explain why an amended or supplemental complaint should be deemed to extend the period in which damages can be sought. Moreover, an amended pleading is surely not the only, or even the best, vehicle to make clear the time period for which damages are being considered. And Mr. Ekman's statement does not identify what "issues" regarding jurisdiction or limitations the government believes might be reduced though an additional pleading.

facilitate a proper decision on the merits.'" *Intrepid v. Pollack*, 907 F.2d 1125 (Fed. Cir. 1990) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

Even in this case, the government has taken positions that make clear that its arguments concerning the impact of *Indiana Michigan* are more strategic than principled. In fact, the cutoff date proposed by the government in its Motion to Strike is January 28, 2004, the date of PG&E's amended complaint, not January 24, 2004, the date the action was first instituted. *See* Govt. Mot. at 4 and n.2. Although not necessary, consistent with the government's positions in *Southern* and *Systems Fuels*, PG&E could file a supplemental or second amended complaint here to allege more specifically the damages PG&E has incurred through today or through trial if such an additional pleading would be deemed helpful by the Court.

The government acknowledged that it has taken different positions in other spent fuel cases, and ultimately sets forth a more pragmatic approach, in Defendant's Response to Plaintiff's Motion for Clarification or Reconsideration on Discovery Restriction filed December 14, 2005 at 13, n.8:

> . . . the Government has consistently maintained that, although an SNF plaintiff may seek leave to file a supplemental complaint to obtain damages that post-date its complaint, the Court has discretion to deny such leave, particularly where it would prejudice the Government.

In that Response, , though still noting a role for a supplemental complaint, the government appropriately emphasizes that practical considerations should inform whether post-January 28, 2004 damages should be considered now in this case. The government argues that in other cases, including *Wisconsin Electric Co. v. United States*, No. 00-697C (Fed. Cl. filed November 16, 2000), where the government is also not opposing consideration of all damages incurred after institution of the action, fact

discovery is ongoing whereas fact discovery has already closed in this case. Such practical considerations are fundamentally different from the firm rule the government urges in its Motion to Strike.

Moreover, the government's claim that it would be "significantly prejudiced" if PG&E were permitted to continue to seek recovery of post-January 28, 2004 damages is utterly without merit. Though it does not fully explain the source of such alleged prejudice, the government is presumably asserting that it cannot adequately take discovery of PG&E's post-January 28, 2004 damages now that fact discovery has closed. But this assertion ignores the fact that PG&E has been claiming damages extending through 2012 since it served its RCFC 26(a)(1) disclosures and that the government took comprehensive discovery from PG&E regarding that damage claim, including the portion addressing future damages, during the allotted period for fact discovery. Hundreds of pages of deposition transcripts and many thousands of pages of documents sought by the government and produced by PG&E in discovery address PG&E's claim for damages beyond January 28, 2004.[2] Indeed, most of the fact discovery in this case took place before the Federal Circuit issued its decision in *Indiana Michigan* on September 9, and fact discovery had closed by November 25, when the Federal Circuit resolved Indiana Michigan's petition for rehearing in which it requested clarification of the future damages issue. Thus, the government's implicit contention that it did not take full discovery regarding future damage in this case in light of the Federal Circuit's ruling in *Indiana Michigan* is disingenuous and wrong.

---

[2] We are reluctant to burden the Court's docket by appending that material, but we are prepared to promptly produce (or further describe) such materials if the Court requests.

C. Neither Indiana Michigan Nor Any Other Authority Resolves Availability Of Post-January 28, 2004 Damages In This Case

The government's argument that the Federal Circuit's decision in *Indiana Michigan* conclusively resolves the recoverability of post-January 28, 2004 damages in this case both misreads *Indiana Michigan* and reflects a misunderstanding of the *stare decisis* doctrine. A correct analysis of these issues requires an understanding of the facts of that case. The problem with Indiana Michigan's claim for future damages is explained succinctly in the trial court's decision:

> The parties argued during trial that the threshold issue for considering plaintiff's future cost claim is when the Department of Energy will begin collecting spent nuclear fuel according to the Standard Contract. Their emphasis on the year of contract compliance related to a major element of plaintiff's projected damages – the cost of building and maintaining a Dry Storage System. Such a system would store the fuel that remains uncollected after 2010. If DOE begins complying with the Standard Contract in 2010, plaintiff will not need a Dry Storage System; its current wet pool storage system will have sufficient capacity at least until then. . . .
>
> Competent evidence during trial permitted a finding that 2010 is the most likely year of DOE's compliance with the Standard Contract. Another date would require speculation amounting to a guess.

*Indiana Michigan,* 60 Fed. Cl. 639, 643 (2004).[3] In short, Indiana Michigan's request for future damages depended on a claim that DOE's non-performance would extend until well beyond 2010, and the trial court found that claim to be speculative. The trial court concluded that "[f]uture costs in this case depend entirely on the occurrence of speculative events." *Indiana Michigan Power Co. v. United States,* 60 Fed. Cl. at 641.

[3] The trial court concluded "during trial that meeting the 2010 date is possible if everything goes smoothly." 60 Fed. C1. at 645. In fact, almost nothing has gone smoothly for DOE regarding its spent fuel program since that Spring 2004 trial, and DOE has abandoned 2010 as a target date for performance. *See, e.g.,* Deposition Tr. of John Arthur (Deputy Director for Repository Development of DOE's Office of Civilian Radioactive Waste Management) at 173-74, exhibit 3.

In that context, the trial court also held that since Indiana Michigan was pursuing a claim for partial, rather than total, breach of contract, "its damages are limited to those for the partial breach, or partial breaches that occurred by the time that it filed its complaint in this case, or at the outside, that have occurred to date." *Id.* at 648. The trial court's ruling was not any more specific on the issue of recoverability of "future" damages because greater specificity was not material to resolution of that case – Indiana Michigan's claim for such damages was speculative in any event. Indeed, given the Court's finding that Indiana Michigan's claim for future damages was speculative, the trial court's entire discussion of the availability of "future" damages in a partial breach of contract case is mere *dicta.* *See, e.g., Wilder v. Apfel,* 153 F.3d 799, 803 (7th Cir. 1998).

The Federal Circuit affirmed the trial court's judgment. And its discussion of the recoverability of future damages in a partial breach of contract case was no more specific concerning the meaning of "future" damages than the trial court's. As noted by the government, *see* Govt. Mot. at 3, the Federal Circuit stated that because Indiana Michigan's "claim is premised upon the government's partial breach, its damages were limited to those costs incurred prior to the date of its suit." *Indiana Michigan,* 422 F.3d at 1376-77. But contrary to the government's assertion, Govt. Mot. at 3, the Federal Circuit did not define the imprecise term "date of its suit" as "the time of institution of the action." The government's purported definition is not the wording of the Federal Circuit, but rather a its quote from *Restatement (Second) of Judgments* § 26 cmt. g. 422 F.3d at 1377. There is nothing in the Federal Circuit's opinion to suggest that this quote from cmt. g is any more authoritative as the Federal Circuit's guidance than other statements in the opinion. Elsewhere, the Federal Circuit stated that "[w]e agree with the

government, and concur in the proposition that '[i]f the breach of an entire contract is only partial, the plaintiff can recover only such damages as he or she has sustained, leaving prospective damages to a later suit in the event of further breaches." *Id.* (emphasis in original). The Federal Circuit also stated that "Indiana Michigan can, however, obtain recovery of post-breach damages as they are incurred." *Id.* These statements support consideration of damages incurred past the time of the filing of a complaint, up to the time damages are actually awarded after trial, decision and any appeals. Thus, the language of the Federal Circuit's decision in *Indiana Michigan* does not provide clear guidance of the Court's views regarding the recoverability of post-January 28, 2004 damages in a case like PG&E's.

Furthermore, as the government itself acknowledged in its opposition to PG&E's motion to compel documents withheld pursuant to the deliberative process privilege, not all statements in a Federal Circuit decision are binding precedent. *See* Govt. Opp. at 18. *Stare decisis* "applies only to legal issues that were actually decided in a prior action. . ." *See, e.g., Beacon Oil Co. v. O'Leary*, 71 F.3d 391, 394 (Fed. Cir. 1995). As the First Circuit has explained, "if an issue is not argued, or though argued is ignored by the court, or reserved, the decision does not constitute a precedent to be followed." *Gately v. Commonwealth of Mass.*, 2 F.3d 1221, 1226 (1st Cir. 1993), *cert. denied,* 511 U.S. 1082 (1994).

In *Indiana Michigan,* the Federal Circuit clearly did not decide among the various articulations of a time frame for consideration of the availability of future damages in a partial breach of contract case noted above. It did not have to, since the trial court had found the future damages to be speculative in any event, and the damages at issue were

not going to be incurred until well after trial. Therefore, none of the Federal Circuit's articulations regarding future damages can be considered binding precedent.

Fundamentally, the Federal Circuit only has jurisdiction to resolve particular, concrete cases and controversies. *See, e.g., Anderson v. United States*, 344 F.3d 1343, 1349 (Fed. Cir. 2003). Thus, it is not the Federal Circuit's role to offer advisory opinions. *See, e.g., Olson v. United States*, 172 F.3d 1311, 1318 (Fed. Cir. 1999).[4] Therefore, any suggestion that the Federal Circuit attempted to set out a rule regarding the availability of future damages in all of the different spent fuel cases with their varying facts is without merit. And the government's specific claim that some part of the Federal Circuit's decision purported to discuss "the rules for the lower court to apply in future cases," *see* Govt. Mot. at 6, is just plain wrong.

In addition to not being controlling for this Court, the other authority cited by the government as support for its argument that PG&E's damages should be cutoff by January 28, 2004 is also not clearly supportive of the government's position. The government cites the trial court decision in *Indiana Michigan, see* Govt. Mot. at 2, but as noted above, that decision stated that the Court is open to consideration of damages through the time of trial. A similar rule was articulated in *Coughlin v. Blair*, 262 P.2d 305, 311 (Cal. 1953), also cited by the government. *See* Govt. Mot. at 2. The authority of that ruling, however, is limited, as the California Supreme Court held that the plaintiff in that case properly brought a case for total breach of contract. *Id.* at 312. Thus, its discussion regarding damages in a partial breach of contract case is mere *dicta*.

[4] Though not a Court organized under Article III, this Court likewise traditionally limits its decisions to cases and controversies and refrains from offering advisory opinions. *See, e.g., Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 653 (2003).

The government greatly overstates the significance of the *Restatement (Second) of Contracts* § 26(1)(e) and § 26 cmt. g. *See* Govt. Mot. at 3-4 and 6. The focus of section 26 and its cmt. g is on exceptions to the general bar against claim splitting, not on determining the appropriate time frame for consideration of damages in a case for partial breach of contract. Nothing in § 26 or its comments forecloses a plaintiff from pursuing, in an action for partial breach of contract, damages sustained up until the time of trial or even some time thereafter.

The government's reliance on *Corbin on Contracts*, *see* Govt. Mot. at 6, is particularly inappropriate. The supplement to the section of the treatise relied on by the government explains that "[a] breach can cause future damages and still be only 'partial.' It is not true that future damages are inconsistent with a partial breach." *See* 9-53 *Corbin on Contracts Supp.* to § 956 (2005). The main volume of *Corbin* which the government cites is not to the contrary. The focus of the section is to explain that "there is no essential difference between a 'continuing' contract and an 'instalment' contract," not on the availability of future damages in a partial breach of contract case. *See* 9-53 *Corbin on Contracts* § 956 (2005). And while Corbin notes that "[i]t has been thought that where there has been no repudiation, the plaintiff can recover damages for his injury only to the date of the writ – that he must treat the breach as on 'partial,'" citing cases from the 1800s, the treatise makes clear that these are simply some of the "varying decisions" regarding continuing contracts. *Id.*

Other authorities cited or noted by the government, *see* Govt. Mot. at 6, while indicating that "future damages" not be awarded in cases of partial breach of contract, offer little or no guidance as to an appropriate demarcation of future as opposed to past

damages. *See* 22 *Am. Jur. 2d Damages* § 488 (2003); *Arnone v. Chrysler Corp.*, 148 N.W.2d 902, 905 (Mich. Ct. App. 1967); *Kaiser v. Northwest Shopping Center, Inc.,* 587 S.W.2d 454, 457 (Tex. Civ. App. 1979).[5]

Significantly, the limitations on future damages addressed in *Indiana Michigan* and other authorities cited by the government are based on a concern that is inapplicable to PG&E's claim for damages here – that the non-breaching party may be able to avoid its claimed future damages if the breaching party starts to perform. Both the appellate and trial courts in *Indiana Michigan* make clear that their objection to award of future damages in that case was because the claim for such damages was based on anticipated future nonperformance, which was speculative. *See* 422 F.3d at 1376 ("Because of its highly speculative nature, a claimant may not recover, at the time of the first suit for partial breach, prospective damages for anticipated future nonperformance resulting from the same partial breach."). The Federal Circuit references an argument by Indiana Michigan that "because it is known that DOE will not perform until 2010 at the earliest, it ought to be awarded its future damages immediately," *id.* at 1377, but the Federal Circuit's opinion does not explain why that court did not accept that argument. The reason is more fully supplied in the trial court's decision in that case discussed above – Indiana Michigan's claim for future damages depended on a speculative assertion that DOE would not perform until well after 2010. *See also Arnone*, 148 N.W.2d at 905

[5] The government also notes that the Federal Circuit cited *San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1563 (Fed. Cir. 1997), in *Indiana Michigan*. *See* Govt. Mot. at 5-6, citing 422 F.3d at 1376. But contrary to the implication of the government's citation, *San Carlos* does not purport to address the extent of availability of future damages in a case of partial breach of contract. Instead, the cited portion is an example of the unexceptional rule that speculative damages are not recoverable, and it was for this proposition that it was cited by the *Indiana Michigan* court.

(concluding that plaintiff employee being paid at wage rate below contractual entitlement should maintain an action on any deficiency when it accrues); *Kaiser*, 587 S.W.2d at 457 (holding that claim for damages from a lessor's failure to maintain property were not barred by similar claims in a prior action since the damage claim in the second action was necessarily based on the lessor's conduct after the trial in the first action).

In PG&E's case, conversely, its claim for damages after January 28, 2004 does not depend on any speculation as to when DOE will start to perform or PG&E's ultimate need to provide for additional spent fuel storage because of the government's failure to perform. PG&E is actively implementing additional spent fuel storage capacity at its nuclear plants right now, and will continue to do so and continue to incur costs to do so in the "future" tomorrow, and next month, and through trial next June, and beyond. There is no realistic possibility that DOE will perform in that time frame. Indeed, there can be no serious contention at this point that DOE will not perform before at least 2012.

In sum, the Court faces a situation where there is neither a definitive ruling from a controlling court nor significant authority from other jurisdictions which make the appropriate path for this Court to take clear. Therefore, it is this Court's responsibility to determine an appropriate time frame for PG&E's damages in this present round of litigation.

D. Limiting Damages to the Time of the Complaint or Amended Complaint Would be Arbitrary and Without Merit

This Court has the authority and responsibility to fashion an appropriate remedy in this case, including an award of future damages as appropriate. *See, e.g., Hughes Communications Galaxy, Inc. v. United States,* 271 F.3d 1060, 1065 (Fed. Cir. 2002). Ultimately, the government offers no good reason why that remedy cannot include

PG&E's damages incurred beyond the time of the complaint or amended complaint. As explained above, such a result is not precluded by either *Indiana Michigan* or other authority. The government's only discussion of a substantive reason for such a damages cutoff is limited to a single sentence in a footnote. *See* Govt. Mot. at 7, n.4. Addressing the difference between a time of complaint-based damages cutoff and a time of trial-based cutoff, the government argues that problems will arise in identifying and verifying claimed damages incurred between the conclusion of fact discovery and the commencement of trial, including an inability of the government to take discovery about some period of time. *Id.*

The government's argument is without merit. First, this and other courts routinely adjudicate without substantial difficulty claims for damages extending not just to trial but well beyond it. As recognized by *Indiana Michigan*, the *Restatement,* and other authorities cited by the government, in cases of total breach of contract courts must adjudicate all of a plaintiff's damages, including future damages. The government has not offered any reason why it should be more complicated or problematic to adjudicate damages beyond the time of the complaint in a case of a partial breach of contract.

Second, beyond its suggestion that problems exist in identifying and verifying future damages, the government has failed to actually identify any such "problems." The fact that consideration of future damages involves estimation is hardly a problem. The law is clear that evidence need only enable the Court to make a fair and reasonable approximation of damages. *See, e.g., Locke v. United States*, 283 F.2d 521, 524 (Ct. Cl. 1960). Thus, "[i]f a reasonable probability of damage can be clearly established, uncertainty as to the amount will not preclude recovery." *Id.*; *accord Bluebonnet Sav.*

*Bank v. United States*, 266 F.3d 1348, 1356-57 (Fed. Cir. 2001); *Ace-Federal Reporters, Inc. v. Barram*, 226 F.3d 1329, 1333 (Fed. Cir. 2000). In fact, the Federal Circuit and other courts regularly approve damage awards consisting of future lost profits that entail far more uncertainty than PG&E's estimated costs for managing spent fuel at issue here. *See, e.g., Energy Capital Corp. v. United States*, 302 F.3d 1314, 1334 (Fed. Cir. 2002); *Northern Helex Co. v. United States*, 634 F.2d 557, 564 (Ct. Cl. 1980); Locke, 283 F.2d 521; *Mechanical Wholesale, Inc. v. Universal-Rundle Corp.,* 432 F.2d 228, 231 (5th Cir. 1970).

In addition, the government's proposed time-of-complaint damages cutoff fails to take account of the RCFC 1's admonitions that rules be applied and administered "to secure the just, speedy, and inexpensive determination of every action." The parties (and the Court) have expended considerable time, effort and expense litigating PG&E's claim for damages that extend well beyond the date of the complaint. The government's proposed January 28, 2004 damages cutoff would needlessly waste much of that effort. Similarly, the government's proposed, early and arbitrary damages cutoff date would needlessly delay adjudication and award of a substantial portion of PG&E's damages. The government has not and cannot justify such waste and delay.

## CONCLUSION

For these reasons, the government's motion to strike portions of Dr. Cornell's expert witness report should be denied.

In the next few days, PG&E will file its own motion asking the Court to set an appropriate time frame for consideration of damages in this case in light of *Indiana Michigan*. PG&E respectfully requests that the Court consider both motions together.

And given the importance and complexity of these issues, PG&E respectfully requests that the Court hear oral argument on these motions.

Dated: December 16, 2005

Respectfully submitted,

s/ Jerry Stouck
Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 phone
(202) 261-4751 fax
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:

Robert L. Shapiro
Greenberg Traurig, LLP

# EXHIBIT 1

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL:JEkman
154-98-614

Telephone: (202) 353-0897
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

September 16, 2005

VIA FACSIMILE AND U.S. MAIL

M. Stanford Blanton
Balch & Bingham LLP
1710 Sixth Avenue North
Birmingham, Alabama 35203

Re: *Southern Nuclear Operating Co. v. United States*, Fed. Cl. No. 98-614C

Dear Mr. Blanton:

We are writing concerning several issues arising out of yesterday's pretrial conference and plaintiffs' objections to the Government's exhibit list. First, based upon the decision in Indiana Michigan Power Co. v. United States, 04-5122 (Fed. Cir. Sept. 9, 2005), and the statements of Senior Judge Merow during the pretrial conference, we request that plaintiffs file a new complaint in advance of trial, seeking damages through December 31, 2004. We will agree to the consolidation of the new action and the pending action for trial in October. Moreover, we will agree that damages that have arisen under the new complaint will be litigated through December 31, 2004. We will agree that any actual costs incurred between January 1, 2005, and the date of the new complaint can be included in a new complaint filed in the future in accordance with the appellate court's decision in Indiana Michigan. By filing the new complaint, the parties will have a clear conception of the time period at issue in the trial of this matter and any appeal, and plaintiffs here will reduce any issues surrounding the Court's jurisdiction to consider and the effect of the statute of limitations upon these post-complaint damages.

Second, we need to respond to your letter dated September 9, 2005, in which you largely parrot our critiques of plaintiffs' exhibit list in responding to the Government's exhibit list. Your criticisms of the Government's exhibit list are overstated. For example, your letter asserts that the Government's exhibit list contains duplications, and you parrot our language to you upon that same issue that "'duplication could significantly affect the record in this case' and results in 'unnecessary copying.'" However, plaintiffs' objections to the Government's exhibits identify only two duplicated exhibits upon the Government's entire list – totaling only seven pages between them. In contrast, the Government has identified more than 100 duplicative exhibits upon plaintiffs' list encompassing potentially thousands of pages of documents. The "unnecessary copying" of seven pages of duplication pales in comparison to plaintiffs' failure to remove unnecessary duplication from its exhibit list.

In any event, to the extent that two exhibits listed upon the Government's list have been duplicated, we will remove the offending duplicate exhibit leaving upon our list a complete copy of each exhibit. We anticipate, given the strong language in your letter, that plaintiffs likewise will remove any duplicative exhibits from their list.

We are looking at the remaining minor critiques of our exhibit list and will respond to those issues upon completion of that analysis. However, with respect to your concerns relating to allegedly incomplete exhibits, we note that the plaintiffs are entitled to enter into evidence complete versions of any allegedly incomplete exhibit. We likely will not be expanding our exhibit production for the purposes of addressing allegedly incomplete exhibits. Additionally, by this letter we are confirming that exhibits 330-333 were renumbered to exhibits 333-336.

Finally, and based upon the Court's limitation of the damages to be tried by the parties and by the Government's stipulation concerning costs that we do not dispute were incurred by plaintiffs, we ask that you remove from your exhibit list any documents rendered superfluous by these two actions. We believe that our stipulation and the limitation of damages greatly reduces the paper record required to litigate plaintiffs' case. Please also consider whether plaintiffs need to present the testimony of both of their damages experts. We believe that the testimony of Richard Sieracki – if ever relevant – has been eviscerated by the Court's limitation of damages. Eliminating an unnecessary and irrelevant expert witness will reduce the trial time needed to present the plaintiffs' case-in-chief. We likewise will be reviewing the opinions of our experts to eliminate unnecessary testimony from the trial record.

If you have any questions, please do not hesitate to call.

Sincerely,

JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch

# EXHIBIT 2

U.S. Department of Justice

Civil Division

PDK:DMC:HDL:SASnyder
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

Telephone: (202) 616-0347
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

December 5, 2005

**VIA FACSIMILE AND FIRST CLASS MAIL**

Mr. Alex D. Tomaszczuk
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Boulevard
McLean, VA 22102-4859

Re: System Fuels, Inc. v. United States, No. 03-2624

Dear Mr. Tomaszczuk:

We have preliminarily reviewed the expert reports that plaintiff, System Fuels, Inc., on its own behalf and as agent for System Energy Resources, Inc. and South Mississippi Electric Power Association (collectively "SFI"), provided to us on November 18, 2005. The SFI claim for damages includes a claim for damages "estimated to be incurred between September 1, 2005 and August 31, 2006." These costs are potential future damages for which you have provided no invoices or supporting data. The SFI claim also includes costs incurred between the date upon which SFI filed its complaint and September 1, 2005. It appears that you submitted the report of Messrs. Metcalfe and Sieracki with the expectation that the United States Court of Appeals for the Federal Circuit would grant the petition for rehearing in the Indiana Michigan case. Because the Federal Circuit denied that petition, we understand the Indiana Michigan decision to be settled law in this case. Thus, the damages that SFI may claim here are only those damages that have been incurred as of "the time of the institution of the action." Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1377 (Fed. Cir. 2005). In this case, because the SFI complaint was filed on November 5, 2003, the trial of this case should only consider those damages incurred through November 5, 2003.

Even though costs incurred after November 5, 2003 are not currently a proper part of this case, we would be willing to consider agreeing not to oppose a motion by SFI to file an amended or supplemental complaint that would update its damages through August 31, 2005. Given that you have provided to us documentation for the damages incurred through August 31, 2005, we expect that we would be able to complete our discovery, including an audit, of those actual costs through that time. However, we must oppose any effort by SFI to amend the complaint to the time of trial, to include any costs beyond August 31, 2005, as that will not provide us with the time that we need for fact and expert discovery based upon actual documentary support for actual costs, as opposed to speculation about costs that might be incurred.

Alex Tomaszczuk
December 5, 2005
Page 2

Please let me know as soon as possible what your intentions are in this regard so that we may plan accordingly. If I do not hear from you by close of business, December 7, 2005, we will assume that we need to raise this issue with the Court and seek to strike those portions of your damages report that refer to damages to be incurred after November 5, 2003.

Please give me a call if you have any questions.

Very truly yours,

Sharon Snyder

SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch

# EXHIBIT 3

00001

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

----------------------------------:
PACIFIC GAS & ELECTRIC COMPANY, :
:
Plaintiff, :
:
vs. : No. 04-074C into
: which has been
UNITED STATES OF AMERICA, : consolidated No.
: 04-075C
Defendant. :
----------------------------------:

Washington, D.C.

Thursday, September 22, 2005

Deposition of:

W. JOHN ARTHUR, III

called for oral examination by counsel for Plaintiff, pursuant to notice, at Greenberg, Traurig, L.L.P., 800 Connecticut Avenue, Northwest, Suite 500, Washington, D.C., before Shari R. Broussard, a Notary Public in and for the District of Columbia, beginning at 9:41 a.m., when were present on behalf of the respective parties:

00173

Q The ones over to the right report up to the Office of the Principal Deputy Director and ultimately the Office of the Director?

A That's correct.

Q I see. Directly?

A Correct.

Q As you do?

A Correct.

Q So with respect to Exhibit 6, again, I realize this is not in your line, but on page two just as a little background, you see in the last line there that the transportation planning at that time apparently was still predicated on the beginning of shipments in 2010? Do you see that, bottom right on page two?

A Correct.

Q And am I correct that that is not at present the planning basis that the Department is operating on, the 2010 start date?

A You are correct. At that time when this briefing was given 2010 was the target date and, you know, we did have a delay on license

00174
application, as I mentioned earlier, in December of '04 and we had not re-established an opening date for the repository.

Q Right. Thank you.

Now, take a look at page six quickly. The title of the page is "Fiscal Year 2004 Budget and Key Activities" and then halfway down almost under "Fiscal Year 2004 Key Activities" the fifth bullet there is "Engage cask vendor industry regarding design and fabrication activities." Do you see that?

A I see that bullet, yes.

Q Do you have an understanding of sort of generally what that is that they're talking to the cask vendor industry?

MS. HERRMANN: Objection. Foundation.

THE WITNESS: I didn't prepare this slide, but I assume it has to do with transportation casks.

BY MR. STOUCK:

Q Do you know whether that activity is ongoing at the current time?