No. 04-0074C,
into which has been consolidated No. 04-0075C
(Judge Hewitt)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
UPON COUNTS II AND III OF PLAINTIFF'S COMPLAINTS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 353-0897
Facsimile: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

SCOTT R. DAMELIN
SHARON A. SNYDER
JOSHUA E. GARDNER
TODD J. COCHRAN
Department of Justice

January 9, 2006

TABLE OF CONTENTS

PAGE

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. PG&E'S SUGGESTION THAT IT MAY MAINTAIN A CLAIM FOR RESTITUTION AS AN ALTERNATIVE THEORY OF RECOVERY IS WITHOUT MERIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A. PG&E Concedes That It May Not Recover Restitution Under A Partial Breach Of Contract Damages Theory . . . . . . . . . . . . . . . . . . . . . . 1

B. PG&E Is Precluded From Electing A Total Breach At This Time . . . . . . 2

II. PG&E'S TAKINGS CLAIM SHOULD BE RESOLVED ON THE MERITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. PG&E's Takings Claim Is Ripe For Adjudication . . . . . . . . . . . . . . . . . . 4

B. The Essential Facts In This Case Relating To PG&E's Takings Claim Are Of The Same Nature As Those In *Commonwealth Edison* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

1. The Federal Circuit's Decision In *Cienega Gardens* Has No Bearing Upon The Viability Of PG&E's Takings Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2. The Issue Of GTCC Low-Level Radioactive Waste Has No Bearing Upon PG&E's Takings Claim . . . . . . . . . . . . . . . . . . 9

3. PG&E's Attempt To Distinguish *Commonwealth Edison* On The Ground That The "Salient Facts May Change" Is Without Merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

4. The Court's Decisions in *Commonwealth Edison* And *Canal Electric* Are In Accordance With The Federal Circuit's Decision In *Castle* And Its Progeny . . . . . . . . . . . . . . . 12

C. PG&E's Request That Its Takings Claim Be Dismissed Without Prejudice Should Be Denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TABLE OF CONTENTS (cont'd)

PAGE

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TABLE OF AUTHORITIES

CASES PAGE(S)

Allegre Villa v. United States,
60 Fed. Cl. 11 (2004) . . . . . . . . . . . . . . . . . . . . . 8

Bailey v. United States,
53 Fed. Cl. 251 (2002), aff'd, 341 F.3d 1342 (Fed. Cir. 2003) . . . . . . . . . . 15

Canal Electric Co. v. United States,
65 Fed. Cl. 650 (2005) . . . . . . . . . . . . . . . . . . . . . 12

Castle v. United States,
301 F.3d 1328 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . 4, 14

Cienega Gardens v. United States,
331 F.3d 1319 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . 7, 8

Cities Service Helex, Inc. v. United States,
211 Ct. Cl. 222, 543 F.2d 1306 (1976) . . . . . . . . . . . . . . 3

Commonwealth Edison Co. v. United States,
56 Fed. Cl. 652 (2003) . . . . . . . . . . . . . . . . 4, 7, 9, 11, 12

Coughlin v. Blair,
41 Cal. 2d 587, 262 P.2d 305 (1953) . . . . . . . . . . . . . . . 3

Cuyahoga Metropolitan Housing Authority v. United States,
65 Fed. Cl. 534 (2005) . . . . . . . . . . . . . . . . . . . . . 2

Detroit Edison Co. v. United States,
56 Fed. Cl. 299 (2003) . . . . . . . . . . . . . . . . . . . . . 13

Deuterium Corp. v. United States,
21 Cl. Ct. 132 (1990) . . . . . . . . . . . . . . . . . . . . 16, 17

Dow Chemical Co. v. United States,
226 F.3d 1334 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . 4

Fern v. United States,
908 F.2d 955 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . 10

Galasso v. Eisman, Zucker, Klein & Ruttenberg,
310 F. Supp. 2d 569 (S.D.N.Y. 2004) . . . . . . . . . . . . . . 17

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

Hansen Bancorp, Inc. v. United States,
367 F.3d 1297 (Fed. Cir. 2004) . . . . . . . . . . 1, 2

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . 2

Integrated Logistics Support Systems International, Inc. v. United States,
42 Fed. Cl. 30 (1998) . . . . . . . . . . 15

Klamath Irrigation District v. United States,
67 Fed. Cl. 504 (2005) . . . . . . . . . . 15

Ling-Temco-Vought, Inc. v. United States,
201 Ct. Cl. 135, 475 F.2d 630 (1973) . . . . . . . . . . 4

Maine Yankee Atomic Power Co. v. United States,
225 F.3d 1336 (Fed. Cir. 2000) . . . . . . . . . . 13

Members of the Peanut Quota Holders Association v. United States,
60 Fed. Cl. 524 (2004), aff'd, 421 F.3d 1323 (Fed. Cir. 2005) . . . . . . . . . . 10

Munn v. United States,
94 U.S. 113 (1876) . . . . . . . . . . 10

National Education Association-Rhode Island v. Retirement Board,
172 F.3d 22 (1st Cir. 1999) . . . . . . . . . . 10

Omaha Public Power District v. United States,
No. 01-115C, 2005 WL 3216929 (Fed. Cl. Nov. 30, 2005) . . . . . . . . . . 13

Pittman v. Chicago Board of Education,
64 F.3d 1098 (7th Cir. 1995) . . . . . . . . . . 10

Prudential Insurance Co. of America v. United States,
801 F.2d 1295 (Fed. Cir. 1986) . . . . . . . . . . 14

Schweiger Constr. Co. v. United States,
49 Fed. Cl. 188 (2001) . . . . . . . . . . 16, 17

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

Southern Nuclear Operating Co. v. United States,
No. 98-614C, slip op. (Fed. Cl. Apr. 7, 2004) (unpublished) . . . . . . . . . . . . . . . . . . 12, 13

Standard Space Platforms Corp. v. United States,
38 Fed. Cl. 461 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

System Fuels, Inc. v. United States,
65 Fed. Cl. 163 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Virgil v. Montgomery,
353 F. Supp. 2d 620 (E.D.N.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Webb's Fabulous Pharmacies, Inc. v. Beckwith,
449 U.S. 155 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Yankee Atomic Electric Co. v. United States,
No. 98-126C, 2004 WL 1535688 (Fed. Cl. June 28, 2004) (unpublished) . . . . . . . . . . . 11

Zoeller v. United States,
65 Fed. Cl. 449 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

STATUTES

42 U.S.C. § 2021b-2021i . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 2021c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. §§ 10101-10270 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

MISCELLANEOUS

9 A. Corbin, Corbin on Contracts § 946 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Restatement (Second) of Contracts § 236 cmt. b (1981) . . . . . . . . . . . . . . . . . . . . . . . . 3

L. Fuller, The Law of Morality (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

RCFC 41(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) | No. 04-0074C, into which has been consolidated No. 04-0075C (Judge Hewitt) |

DEFENDANT’S REPLY TO PLAINTIFF’S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNTS II AND III OF PLAINTIFF’S COMPLAINTS

Defendant, the United States, respectfully submits this reply to “Opposition to Motion for Summary Judgment On Counts II And III Of PG&E’s Complaints" that plaintiff, Pacific Gas & Electric Company (“PG&E”), filed on December 16, 2005.

## DISCUSSION

### I. PG&E’S SUGGESTION THAT IT MAY MAINTAIN A CLAIM FOR RESTITUTION AS AN ALTERNATIVE THEORY OF RECOVERY IS WITHOUT MERIT

#### A. PG&E Concedes That It May Not Recover Restitution Under A Partial Breach Of Contract Damages Theory

In response to the Government's arguments that PG&E cannot recover restitution damages in this case, PG&E does not, and cannot, contest the Government's argument that PG&E may not recover restitution damages for a partial breach of contract. See Pl. Br. 2. As the United States Court of Appeals for the Federal Circuit has reiterated, "the remedy of restitution is available only if the breaching party's conduct amounts to a total breach of its contractual duties." Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1309 (Fed. Cir. 2004) (emphasis added); see Cuyahoga Metro. Housing Auth. v. United States, 65 Fed. Cl. 534, 561 (2005)

(restitution only available if breach gives rise to claim for total rather than partial breach). "The goal of restitution, to return the parties to their precise state before the contract, is incompatible with the situation of partial breach . . . ." Hansen Bancorp, 367 F.3d at 1309 n.10 (emphasis added). Consequently, PG&E may not recover restitution damages under a partial breach of contract theory.

B. PG&E Is Precluded From Electing A Total Breach At This Time

Conceding that it cannot recover restitution damages for a partial breach, PG&E contends only that it is entitled to maintain an alternative theory of recovery and that it has not waived any claim for damages based upon a total breach of contract. Pl. Br. 2. PG&E is incorrect.

As an initial matter, although we respectfully disagree with the Federal Circuit's statement and although it appears to have been unnecessary to the ultimate resolution of the appeal,[1] we must note that the Federal Circuit in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), in reviewing the unique nature of the contract between the Department of Energy ("DOE") and the utilities, stated that spent nuclear fuel ("SNF") plaintiff there could not have elected a total breach of the Standard Contract based upon DOE's representations and actions prior to January 31, 1998:

> Here, Indiana Michigan could not have claimed anticipatory repudiation even if it wanted to: while the government did indicate that it would not meet the 1998 deadline, its actions did not portend an absolute refusal to perform the contract. The NWPA itself, and the Standard Contract's terms drafted pursuant to it, compelled Indiana Michigan to bring an action for partial, not total, breach. Had Indiana Michigan brought an action for total breach, DOE would have been discharged from further

[1] PG&E agrees that the statement in the Federal Circuit's opinion appears to be dicta. See Pl. Br. 5-6.

> responsibility under the contract, a situation apparently not desired by appellant and foreclosed by statute. . . . Therefore, Indiana Michigan had no choice but to hold the government to the terms of the Standard Contract while suing for partial breach.

Id. at 1374. To the extent that PG&E has no choice but to sue for partial breach under the rationale of this statement, its restitution claim would be precluded as a matter of law.

Aside from this statement, PG&E is precluded from claiming a total breach of contract at this point in time based upon its election to treat DOE's delay as a partial, rather than total, breach and the resulting prejudice to the Government. In response to any of DOE's actions that PG&E viewed as a breach, PG&E elected to consider that breach partial, rather than total. Pl. Amended Compl. ¶ 25; see 9 A. Corbin, Corbin on Contracts § 946, at 720 (1951) ("[i]n some cases he may elect to regard the breach as partial, proceed with his own performance, sue for the partial injury, and maintain a second suit in case a further breach occurs"); Coughlin v. Blair, 41 Cal. 2d 587, 598, 262 P.2d 305, 311 (1953) ("even if a breach is total, the injured party may treat it as partial, unless the wrongdoer has repudiated the contract"). In making that election, PG&E ensured that DOE would continue to be obligated to perform its contract and obligations to accept PG&E's SNF. See Cities Service Helex, Inc. v. United States, 211 Ct. Cl. 222, 234, 543 F.2d 1306, 1313 (1976); Restatement (Second) of Contracts § 236 cmt. b, at 214 (1981). Indeed, the Court can take judicial notice of the fact that DOE has continued to spend extraordinary amounts of money since 1998 attempting to develop a repository that would allow DOE to begin SNF acceptance under the Standard Contract. The source of those funds is the Nuclear Waste Fund ("NWF"), which includes the fee payments that PG&E has paid pursuant to the requirements of its Standard Contract.

Had PG&E and the other Standard Contract holders claimed a total breach of contract in 1998, or earlier, the Government potentially could have eliminated or at least substantially reduced the need to spend these extraordinary amounts of money to develop a repository. Because the Government is committing substantial resources to develop and operate a Federal repository that will operate for more than 10,000 years, allowing plaintiffs such as PG&E to insist upon DOE's performance and then, years later, claim that the monies upon which DOE has relied to develop such a program should be refunded to the utilities as restitution would greatly hinder DOE's ability to develop its civilian radioactive waste disposal program. Consequently, PG&E has waived any right to claim a total breach of contract at this point in time, in light of the prejudice to the Government. See, e.g., Ling-Temco-Vought, Inc. v. United States, 201 Ct. Cl. 135, 146, 475 F.2d 630, 637 (1973). The cases that PG&E has cited to support its right to maintain a restitution claim, including Dow Chemical Co. v. United States, 226 F.3d 1334 (Fed. Cir. 2000) (see Pl. Br. 3), support the argument that prejudice to the breaching party precludes a change in the non-breaching party's election.

## II. PG&E'S TAKINGS CLAIM SHOULD BE RESOLVED ON THE MERITS

### A. PG&E's Takings Claim Is Ripe For Adjudication

In the Government's motion for summary judgment concerning PG&E's takings claim, we established that PG&E's takings claim was precluded as a matter of law based upon the Federal Circuit's decision in Castle v. United States, 301 F.3d 1328 (Fed. Cir. 2002), and its progeny, including this Court's decision in Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652 (2003). In response to the Government's argument, PG&E – nearly two years after the filing of its amended complaint – contends for the first time that its takings claim is premature

and should be dismissed without prejudice. Pl. Br. 6-8. However, it is clear from PG&E's briefing not that its takings claim is not "ripe," but that it has no takings claim. As it admits in its brief, "[t]he government has simply not taken anything yet." Pl. Br. 8. As a result, PG&E admits that its current takings claim is without foundation. Rather than a dismissal of a baseless takings claim "without prejudice," as PG&E requests, the Court should dismiss that claim on the merits, dismissing it with prejudice, based upon the fact that, to date, the Government has not engaged in any act that has "taken" PG&E's property.[2]

In any event, although PG&E now tries to link its takings claim to the ISFSI that it allegedly plans to build in the future, PG&E made no such claim in its amended complaint for Humboldt Bay. Rather, in its amended Humbolt Bay complaint, PG&E alleged that the Government had already taken its property:

> 30. PG&E has been and will be deprived of the effective use and value of property on which the SNF from [Humboldt Bay] is located and must be stored for the foreseeable future, until DOE performs its obligation to remove PG&E's [Humboldt Bay]-related SNF. In fact, the effect of DOE's failure to perform is to convert [Humboldt Bay] Unit 3 into a nuclear waste storage facility.
>
> 31. Therefore, the government has taken PG&E's property and is liable to PG&E for just compensation.

---

[2] PG&E makes the remarkable argument that it should be able to recover partial breach of contract damages associated with its Independent Spent Fuel Storage Installation ("ISFSI") through 2012, on the one hand, yet its takings claims based upon the existence of that same ISFSI is premature. Compare PG&E's Motion To Establish Time Frame For Consideration Of Future Damages, at 12 (Dec. 23, 2005), with Pl. Br. 6-7. This argument is pure sophistry. In both situations, PG&E does not now possess claims based upon future acts in which the Government might engage, but has not yet engaged. Rather than making its current takings claim "unripe," it merely means that PG&E has no takings claim at this time.

Pl. Amended Compl. ¶¶ 30-31 (emphasis supplied). Our motion is directed to the actual complaint that PG&E filed, rather than its new effort to recharacterize the allegations in its complaint. We are entitled to a merits judgment upon the alleged taking in PG&E's complaint and its dismissal from this litigation.

In fact, PG&E's new-found takings theory makes no sense. PG&E apparently contends that the "taking" at issue is not the mere fact that it will be storing SNF on site longer than it otherwise would have had to store SNF in the "but for" world. Rather, PG&E now contends that the existence of an ISFSI, which PG&E will build, creates a taking. Thus, PG&E apparently takes the untenable position that it would not have had a takings claim had it left its SNF in its wet storage pool indefinitely, but, rather, that the transfer of its SNF to an ISFSI somehow creates a takings claim. Further, under PG&E's theory, the accrual of its takings claim is not predicated upon the Government's actions, but, rather, is predicated upon the actions that PG&E takes in response to the Government's past actions. Of course, there is no legal support for such a novel takings theory.

Third, as PG&E correctly notes in its motion for leave to forego submitting a response to the Government's proposed findings of fact associated with the Government's summary judgment motion, "the issues the government is raising are fundamentally legal, not factual." Pl. Motion For Leave, at 2. Even if PG&E were somehow correct that its takings claim is not yet ripe, there are no facts awaiting development that would change the legal issues concerning PG&E's takings claim. As we explained in our motion for summary judgment, the issue before the Court is whether PG&E may maintain a takings claim based upon the Government's breach of a contract from which the rights at issue emanated. Regardless of whether the taking stems

from the existence of SNF on-site longer than it allegedly anticipated in the "but for" world, as it alleges in its complaint, or from the construction of its ISFSI, as it now alleges, the legal issue remains the same. Indeed, as we explained in our motion for summary judgment, because absent the Standard Contract, PG&E has no right to the Government's acceptance of its SNF, and the Government has not taken PG&E's contractual remedies, PG&E may not, as a matter of law, maintain a takings claim under these circumstances. PG&E's attempts to recharacterize its takings claim, only in the face of a dispositive motion and six months before trial, should be rejected.

B. The Essential Facts In This Case Relating To PG&E's Takings Claim Are Of The Same Nature As Those In *Commonwealth Edison*

1. The Federal Circuit's Decision In *Cienega Gardens* Has No Bearing Upon The Viability Of PG&E's Takings Claim

As discussed in our motion for summary judgment, this Court in Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652 (2003), considered a takings allegations essentially identical to those that PG&E has made in this case. Def. Br. 6-7. Although PG&E has attempted to distinguish the facts of Commonwealth Edison from those in this case and, further, has argued that a change in law has occurred since Commonwealth Edison was issued, PG&E's efforts are misguided.

First, PG&E claims that the Court in Commonwealth Edison did not have the benefit of the Federal Circuit's decision in Cienega Gardens v. United States, 331 F.3d 1319 (Fed. Cir. 2003), which PG&E contends is somehow instructive on the issues in this case. Pl. Br. 9. Contrary to PG&E's contention, the Federal Circuit's decision in Cienega Gardens has no relevance to the resolution of PG&E's takings claim. Indeed, if anything, Cienega

Gardens supports the proposition that, where the Government enters into a contract with a plaintiff and breaches that contract, plaintiff's remedies are in breach of contract rather than the Takings Clause of the Fifth Amendment. The Cienega Gardens case involved the implementation of regulations that interfered with the plaintiffs' investment-backed expectations in the plaintiffs' contracts with third parties. Because the Government was not a party to the contracts and no contract remedy against the Government existed, the Court found that a regulatory taking had occurred. Id. at 1325; see Allegre Villa v. United States, 60 Fed. Cl. 11, 19 (2004) (explaining rationale of taking claim in Cienega). Conversely, because the plaintiff in Allegre Villa had a contract with the Government, which the Government allegedly breached, this Court required the plaintiff to pursue the breach of contract claim and dismissed its takings claims:

> Because their contracts were with private lenders, plaintiffs in Cienega Gardens and Chancellor Manor were not in privity with the Government; thus, no contract claim against the Government was available to address the subsequent prepayment limitations by the Government. The present action, in contrast, involves plaintiffs that entered into contracts directly with the Government, and such contracts provide a remedy for the later prepayment restrictions.

Allegre Villa, 60 Fed. Cl. at 19. Applying the analysis of Cienega and Allegre Villa to the facts of this case, PG&E's takings claim fails. PG&E is seeking to recover damages based upon rights that it obtained solely through its contract with DOE: a right to acceptance of SNF. Consequently, the Federal Circuit's decision in Cienega does not "undermine the rationale of the takings dismissal ruling" in Commonwealth Edison, as PG&E alleges (Pl. Br. 9), and, indeed, is entirely consistent with the Federal Circuit's decision in that case.

2. The Issue Of GTCC Low-Level Radioactive Waste Has No Bearing Upon PG&E's Takings Claim

PG&E next contends that the Court's decision in Commonwealth Edison is not controlling because that decision did not involve a claim for Greater-Than-Class-C radioactive waste ("GTCC waste") storage costs, whereas PG&E apparently is claiming the cost of storing GTCC waste in this case. Pl. Br. 10. PG&E's argument concerning the presence of GTCC waste's effect upon the viability of its damages claim is misplaced.

As an initial matter, PG&E has not made a claim for damages arising from the Government's alleged obligation to accept GTCC waste. Therefore, PG&E has no basis for asserting a takings claim based upon the Government's alleged failure to accept GTCC waste. See, e.g., Commonwealth Edison, 56 Fed. Cl. at 658 (concluding that resolution of claim based upon GTCC was not yet ripe where plaintiff had not made claim for acceptance of GTCC).

Further, the Government's obligation to dispose of GTCC waste is not governed by the Nuclear Waste Policy Act, 42 U.S.C. §§ 10101-10270, but, rather, the Low-Level Radioactive Waste Policy Amendments Act of 1985 ("LLRWPA"), Pub. L. No. 99-240 (codified at 42 U.S.C. §§ 2021b-2021i). Although that statute provides that the Federal Government "shall be responsible for the disposal" of GTCC waste, 42 U.S.C. § 2021c(b)(1)(D), the LLRWPAA sets no deadline for DOE's acceptance or disposal of GTCC waste. Further, no utility, including PG&E, has yet paid DOE to dispose of its GTCC waste or even negotiated financial arrangements for that disposal with DOE. Accordingly, PG&E has identified no statute or contract that requires DOE to accept its GTCC waste at any particular time and, therefore, cannot identify any failure upon DOE's part to act in a timely manner to accept that waste.

Indeed, even if PG&E had identified some DOE violation of a statutory duty, it still would have no basis for pursuing a takings claim. The Supreme Court has been clear that a "mere unilateral expectation or an abstract need is not a property interest entitled to protection" under the Fifth Amendment, Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980), "even if they are entirely plausible expectations of economic benefit." National Educ. Ass'n-R.I. v. Retirement Bd., 172 F.3d 22, 29 (1st Cir. 1999). Accordingly, no entity has a property right in that rule of law. "[T]he law itself, as a rule of conduct, may be changed at the will or even the whim, of the legislature, unless prevented by constitutional limitations." Fern v. United States, 908 F.2d 955, 959 (Fed. Cir. 1990) (quoting Munn v. Illinois, 94 U.S. 113 (1876)); see Branch, 69 F.3d at 1577-78 ("[i]f every time a man relied on existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever'") (quoting L. Fuller, The Morality of Law 60 (1964)); Pittman v. Chicago Bd. of Educ., 64 F.3d 1098, 1104-05 (7th Cir. 1995). "Because Congress has the right to modify or terminate a federal program, the benefits of such a program do not constitute a property interest protected by the Fifth Amendment." Members of the Peanut Quota Holders Ass'n, Inc. v. United States, 60 Fed. Cl. 524, 529 (2004), aff'd, 421 F.3d 1323 (Fed. Cir. 2005). Here, the only basis upon which DOE will have an obligation to accept any of PG&E's GTCC waste is pursuant to the LLRWPAA, but PG&E does not have a property right in that rule of law. To the extent that PG&E is relying upon the LLRWPAA as creating a right to GTCC waste

acceptance by a date certain, it has failed to identify any "property right" upon which to maintain a takings claim.[3]

### 3. PG&E's Attempt To Distinguish *Commonwealth Edison* On The Ground That The "Salient Facts May Change" Is Without Merit

PG&E's claim that Commonwealth Edison should not be considered as controlling because "the salient facts may change" is curious, at best. Pl. Br. 10. Indeed, as "evidence" of the fact that the salient facts may change in the future, PG&E cites to a recent bill introduced by Senator Harry Reid of Nevada that would authorize DOE to take title to SNF on-site at commercial reactor sites and to assume all financial responsibility for the maintenance of such fuel. Pl. Br. 10. Rather than counsel against resolving PG&E's takings dispute, the proposed legislation highlights the perils of allowing the recovery of damages that post-date PG&E's complaint. Nevertheless, it has no effect on this Court's determination of whether, when PG&E filed its complaint, the Government had engaged in any acts that constituted a taking of PG&E's property. If not, we are entitled to judgment, as a matter of law, on that takings claim. To the extent that the Government may engage in an action in the future that "takes" PG&E's property,

---

[3] Although PG&E correctly notes that the Court in Yankee Atomic Electric Co. v. United States, No. 98-126C, 2004 WL 1535688 (Fed. Cl. June 28, 2004) (unpublished), denied the Government's motion to dismiss the takings claim in that case based upon the presence of GTCC waste, we respectfully disagree with that decision. In its unpublished order in Yankee, the Court stated

> [D]efendant urges that GTCC is not covered by the contract at issue. If so, a continuing presence of GTCC on plaintiff's site despite defendant's statutory obligation to dispose of it could, conceivably, form the basis of a takings claim.

Yankee Order, at 5. However, as we explained above, the LLRWPAA does not mandate GTCC waste acceptance by any particular date, and, even if it did, any violation of a statutory duty does not impinge upon any property right that could be "taken."

that possible future speculative event does not give rise to a taking claim now. To the contrary, the taking claim for which we are entitled to judgment is its claim in its complaint that the Government has already taken its property.

#### 4. The Court's Decisions In *Commonwealth Edison* and *Canal Electric* Are In Accordance With The Federal Circuit's Decision In *Castle* And Its Progeny

PG&E also claims that "Commonwealth Edison is the only decision in this Court to have dismissed the takings claim in a spent fuel case of this type." Pl. Br. 11. PG&E has provided no compelling reason why this Court's decision in Canal Electric Co. v. United States, 65 Fed. Cl. 650 (2005), which dismissed a takings claim in a SNF case, is "very different." Id. Although it is true that the plaintiff's takings theory in Canal was based upon a diminution in the value of its nuclear assets rather than in having to maintain SNF on its premises longer than it would have had to do so in the "but for" world, the legal principles underlying Commonwealth Edison and Canal are identical. In Canal, the Court concluded that, because the plaintiff had no right to SNF acceptance by the Government absent the Standard Contract, and because the plaintiff had alleged a breach of the Standard Contract, plaintiff could not maintain a takings claim based upon a breach of that Standard Contract. Canal Electric, 65 Fed. Cl. at 655-56. Consequently, the Court's decision in Canal is directly in accordance with this Court's decision in Commonwealth Edison. See also Southern Nuclear Operating Co. v. United States, No. 98-614C, slip op. at 5 (Fed. Cl. Apr. 7, 2004) (unpublished opinion) (dismissing Standard Contract holders' takings claim because it "is grounded on the SNF contracts that [two of the plaintiffs] executed with the United States").

Although PG&E has cited to other SNF cases that have denied the Government's motion to dismiss takings claims, PG&E does not explain why these decisions are correct. Indeed, with all due respect, those decisions erroneously base their conclusions upon the notion that plaintiffs may plead takings and breach claims in the alternative, but that, if the plaintiff recovers damages upon the breach claim, it may not subsequently recover damages upon a takings claim. See, e.g., Omaha Public Power Dist. v. United States, No. 01-115, 2005 WL 3216929, at n.4 (Fed. Cl. Nov. 30, 2005) (stating that "court will address Plaintiff's takings claim only if the contract claims fail"); System Fuels, Inc. v. United States, 65 Fed. Cl. 163, 172 (2005) (concluding that breach of contract and takings claims may be brought together, but that breach of contract remedies "would take precedence"); Detroit Edison Co. v. United States, 56 Fed. Cl. 299, 303 (2003) ("the court views plaintiff's takings theory as an alternative to its contract claim, . . . not as a mechanism by which plaintiff may obtain remedies unavailable to it under the Standard Contract.").[4] However, the basis for this notion that breach of contract and takings claims may

---

[4] Notably, of the cases cited by PG&E that it claims are "similar" to its case, Omaha Public Power, System Fuels, and Detroit Edison each involve operating, rather than shutdown, facilities. Under such "similar circumstances," the Court in Southern Nuclear Operating Co. v. United States, No. 98-614C, slip op. at 5 (Fed. Cl. Apr. 7, 2004) (unpublished), dismissed the SNF plaintiffs' takings claims.

Further, contrary to PG&E's contention, the Federal Circuit's decision in Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000), did not express any opinion about the viability of a takings claim based upon a breach of contract. Pl. Br. 11. In Maine Yankee, the Government filed a motion to dismiss the plaintiff's complaint for lack of jurisdiction, arguing that the plaintiff was required to exhaust its administrative remedies before it could proceed with either its breach of contract or its takings claim in this Court. However, the Court found that, with regard to the plaintiff's breach of contract claim, the "Avoidable Delays" and "Disputes" clauses contained in the Standard Contract did not encompass the delay at issue in this case and that, therefore, no administrative exhaustion was required before the plaintiff could pursue its contract claim. See Maine Yankee, 225 F.3d at 1342. The Court stated that the Mainee Yankee plaintiff "was not required to invoke the contract's disputes clause before

be brought in the alternative is based upon a misapplication of the Federal Circuit's decision in Prudential Insurance Co. of America v. United States, 801 F.2d 1295 (Fed. Cir. 1986). In Prudential, the issue before the Court was whether foreseeability of damages for breach of a lease agreement should be measured as of the date of contract execution or the date that the lease was breached. Id. at 1300. Concluding that foreseeability of damages for breach of a lease agreement should be measured as of the date of contract execution, the Court noted in dicta that, "[a]lthough this may place a more difficult burden on a lessor seeking consequential damages against the government as a holdover tenant, lessors may have an alternative avenue of relief under the Takings Clause of the Fifth Amendment." Id. at 1300 n.13. Indeed, the plaintiff in Prudential had not brought a takings claim based upon the Government's hold-over of the lease.

Any doubt as to the viability of the Federal Circuit's dicta in Prudential has been resolved in its more recent decision in Castle v. United States, 301 F.3d 1328 (Fed. Cir. 2002). In Castle, the Federal Circuit expressly rejected the notion that a takings claim may be brought as an alternative to a breach of contract claim, holding that, where a plaintiff's rights were created by a contract with the Government and the plaintiff retains its contractual remedies following a breach, it may not maintain a takings claim based upon the Government's breach of that contract. Id. at 1341-42; see Zoeller v. United States, 65 Fed. Cl. 449, 461-62 (2005) (rejecting takings claim predicated upon termination of lease agreement, noting that the Government had not

---

bringing suit" and that its takings count "cannot be viewed as constituting avoidable delays under that clause." Id. at 1342-43. Contrary to the implication of PG&E's citation, the Federal Circuit in Maine Yankee did not make any determination that the plaintiff's takings claim stated a viable cause of action. To the contrary, the only motion that the Court was considering was a jurisdictional motion requesting dismissal based upon the plaintiff's failure to exhaust its administrative remedies.

deprived plaintiff of contractual rights stemming from the breach of the agreement); Bailey v. United States, 53 Fed. Cl. 251, 256-57 (2002) (no taking of contract rights exists unless Government "takes" range of remedies associated with vindication of contract), aff'd, 341 F.3d 1342 (Fed. Cir. 2003); Integrated Logistics Support Sys. Int'l, Inc. v. United States, 42 Fed. Cl. 30, 34 (1998) (plaintiff "cannot exploit the Fifth Amendment to amend unilaterally a contract in an effort to rectify what hindsight reveals as an unappealing bargain").

Notably, of the SNF decisions to which PG&E cites in support of its takings claim, none of those decisions addresses why the Federal Circuit's binding holding in Castle is not dispositive of the takings claims in those cases. Indeed, as we explained in our motion for summary judgment, the Court in Klamath Irrigation District v. United States, 67 Fed. Cl. 504 (2005), recently rejected the notion of "alternative" breach of contract and takings claims, explaining:

> To be sure, some cases suggest that, under this rule, a takings claim is resurrected if a breach of contract is not found, see System Fuels, Inc. v. United States, 65 Fed. Cl. 163, 172-73 (2005). But such suggestions reflect a misunderstanding of the rationale for this rule. At least as described in Winstar and Castle, the rule favoring contract remedies depends upon there being symmetry between the contract rights to be enforced and the contract damages that are potentially available. Once this symmetry is established, a finding on the merits that no breach occurred does not break that relationship, but merely reflects that the contract rights that were asserted either never existed or were not adversely affected by the government's actions. Under either scenario, those same contract rights cannot provide the predicate for a takings because the government cannot take what the claimant does not have.

Id. at 532 n.46 (citations omitted).

Simply put, the Court's decision in Commonwealth Edison is consistent with the Federal Circuit's decision in Castle and its progeny, and PG&E has provided no legitimate basis for the Court to depart from its previous opinion.

C. PG&E's Request That Its Takings Claim Be Dismissed Without Prejudice Should Be Denied

Finally, PG&E contends that, rather than decide the issue on the merits, the Court should dismiss PG&E's takings claim without prejudice so that PG&E may reassert that claim at a later time. Pl. Br. 12. PG&E has provided no justifiable basis for the dismissal of its takings claim without prejudice.

RCFC 41(a)(2) provides, in pertinent part, that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." RCFC 41(a)(2) (emphasis added). Although the Court has considerable discretion in deciding whether to dismiss a claim with or without prejudice, the Court may exercise such discretion and dismiss the claim with prejudice so long as the Court offers reasonable grounds for the dismissal. Schweiger Constr. Co. v. United States, 49 Fed. Cl. 188, 208 (2001); Deuterium Corp. v. United States, 21 Cl. Ct. 132, 134 (1990). Further, although no precise formula governs dismissals with prejudice, courts have identified three factors that should be considered: (1) the burden on the defendant of dismissal without prejudice; (2) the progress of the litigation; and (3) the diligence and good faith of the plaintiff. Standard Space Platforms Corp. v. United States, 38 Fed. Cl. 461, 466 (1997) (citing Deuterium Corp. v. United States, 21 Cl. Ct. 132, 134 (1990)).

In deciding whether to dismiss a claim without prejudice, "the court must keep uppermost in mind the effected interests of the defendant, because it is its position which must be protected." Standard Space, 38 Fed. Cl. at 467. Indeed, the Court has recognized that "courts often deny a motion for dismissal without prejudice, or order dismissal with prejudice, where the defendant has incurred significant expense and time in preparation of the case for trial." Id. This is particularly true where the plaintiff moves to withdraw its complaint during the pendency of a summary judgment motion filed by the defendant. See Deuterium Corp., 21 Cl. Ct. at 134 (holding that dismissal with prejudice was appropriate where the defendant had expended an enormous amount of time and money preparing for trial, extensive discovery had already taken place, trial was scheduled to begin in less than two months, and plaintiff moved to withdraw complaint while summary judgment motion was pending); Schweiger, 49 Fed. Cl. at 188 (denying motion for dismissal without prejudice where "the government clearly expended considerable resources in developing the arguments presented in its motion to dismiss"); see also Virgil v. Montgomery, 353 F. Supp. 2d 620, 623 (E.D.N.C. 2005) (denying motion for dismissal without prejudice where there had already been "significant discovery" in the case); Galasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 572-73 (S.D.N.Y. 2004) (denying motion for dismissal without prejudice where discovery had been conducted and motion for summary judgment was pending).

In Standard Space, the Court denied the plaintiff's motion to dismiss its complaint without prejudice where the case had been pending for almost two years, there had been a substantial amount of time and expense spent by both parties in disputing the scope of a protective order, and the plaintiff filed the motion to dismiss without prejudice just one month

before the close of discovery. Standard Space, 38 Fed. Cl. at 468. In denying plaintiff's motion to dismiss without prejudice, the Court explained:

> Thus, on the totality of this record, we find more than sufficient reason within the court's discretion to conclude that the case has advanced to such a point that dismissal without prejudice would be unfair to both the defendant and the court. To rule otherwise would be to permit a plaintiff to dismiss a case without prejudice where the end of discovery and trial were clearly in sight. If such hospitable action were commonplace, then many parties would incur substantial frivolous expenses to effect favorable judge shopping, and the dockets of the federal courts would be even more congested than they currently are. This we cannot countenance, except in grave circumstances duly justified, which does not exist here at bar.

Id. at 468-69.

In this case, each of these three factors weighs in favor of the dismissal of PG&E's takings claim with prejudice. The Government would be significantly burdened should the Court dismiss PG&E's takings claim without prejudice. The Government has expended significant resources in litigating this case. The Government has answered PG&E's complaint, fact discovery has closed, and the Government is diligently preparing for the June 2006 trial date in this case. Indeed, just as in Standard Space, where the parties expended significant resources litigating over the scope and appropriateness of a protective order, in this case, the parties have expended significant time and expense litigating over PG&E's rights to obtain discovery that post-date by at least six years the Government's January 31, 1998 obligation to begin SNF acceptance from the industry generally. To allow PG&E to dismiss its takings claim and potentially reassert it at a later date will result in the Government likely having to replicate the significant time and expense it has already expended in the instant case. Indeed, where, as here, PG&E has moved to dismiss its takings claim without prejudice in response to the Government's

motion for summary judgment, the Court should deny PG&E's last-minute efforts to avoid a decision by the Court on the merits.

## CONCLUSION

For the foregoing reasons, and those set forth in our motion for summary judgment, the Government respectfully requests that the Court grant our motion and dismiss Counts II and III of PG&E's complaints.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/John C. Ekman by Harold D. Lester, Jr.
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 353-0897
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT R. DAMELIN
SHARON A. SNYDER
JOSHUA E. GARDNER
TODD J. COCHRAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

January 9, 2006

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January 2006, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF’S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNTS II AND III OF PLAINTIFF’S COMPLAINTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Harold D. Lester, Jr.