IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically Filed On January 18, 2006

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0074C, into which has been |
| | ) | consolidated No. 04-0075C |
| UNITED STATES OF AMERICA, | ) | (Judge Hewitt) |
| | ) | |
| Defendant. | ) | |

PG&E'S SURREPLY OPPOSING THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT ON COUNT II OF PG&E'S COMPLAINT

Plaintiff Pacific Gas & Electric Co. ("PG&E") respectfully submits this surreply to address one argument the government first made in its reply brief on its motion for summary judgment on Count II of PG&E's complaints.[1] That Count sets forth an alternative claim for restitution of the fees PG&E has paid to the Department of Energy ("DOE") pursuant to the contract involved in this case.

In seeking summary judgment on PG&E's restitution claim, the government's motion ("MSJ") noted that PG&E has "elected" to proceed on a partial breach theory. MSJ at 5. In its opposition ("PG&E Opp."), PG&E acknowledged that it is now pursuing a partial breach claim as its "preferred remedy, PG&E Opp. at 4, and also acknowledged that in order to pursue restitution, it would have to declare a "total" breach, *id*. at 2. As PG&E explained, however, it is not required to make a final or binding election between partial breach damages and total breach restitution until later in this litigation. *Id.* at 3-4.

[1] The government's motion seeks summary judgment on Counts II and III of PG&E's complaints, but the government argument addressed here concerns only Count II.

More specifically, PG&E explained that under controlling case law, including *Dow Chemical Co. v. United States*, 226 F.3d 1334 (Fed. Cir. 2000), a non-breaching party does not waive its right to elect total breach remedies unless a delay in making the election has prejudiced the party in breach. And as PG&E noted in its opposition: "[h]ere, the government does not even *allege* any prejudice from PG&E's parallel pursuit of a partial breach claim and its failure thus far to declare a total breach or to terminate the contract." PG&E Opp. at 3 (emphasis in original).

Although the latter statement was true when made, the government did claim prejudice, for the first time, in its reply brief ("USReply"). PG&E therefore submits this short surreply to respond to that claim.

The "prejudice" the government now claims is "the fact that DOE has continued to spend extraordinary amounts of money since 1998 attempting to develop a repository that would allow DOE to begin SNF acceptance under the Standard Contract[s]." USReply at 3. According to the government, "[h]ad PG&E and the other standard Contract holders claimed a total beach of contract in 1998, or earlier, the Government potentially could have eliminated or at least substantially reduced the need to spend these extraordinary amounts of money to develop a repository."

The Court should reject this claim of "prejudice" for several different reasons. Fundamentally, the government cannot legitimately maintain that PG&E's delay in declaring a total breach has caused the government to incur the "prejudice" it now claims. In fact, the "harm" the government alleges – "spend[ing] extraordinary amounts of money . . . to develop a repository" – bears absolutely no relation to PG&E's litigation strategy in this case. Even if PG&E had sued for "total" breach (and, thus, terminated its

contract), the government would still be incurring the very same costs it seeks to attribute to PG&E' s litigation strategy. The government is statutorily-committed to construct, license and operate a repository for the storage of spent fuel – not only spent fuel from commercial reactors, but spent fuel from Naval vessels and other military applications as well. The government also has entered into contracts with dozens of other nuclear utilities, and must continue developing spent fuel storage and disposal facilities for the vast quantity of commercial spent fuel it is obligated to pick up from those utilities – even if PG&E were to declare its own contract at an end.

The government also cannot legitimately link its expenditures on Yucca Mountain to PG&E's failure thus far to declare a total breach and terminate DOE's performance obligations because DOE could perform its contract obligations without spending any more money at Yucca Mountain. As the government has argued when the point is helpful to its positions, PG&E's contract does not require that its spent fuel be disposed of at Yucca Mountain, only that DOE accept PG&E's spent fuel and remove it from PG&E's facilities. Under the contract, DOE must take the spent fuel to a "DOE facility," defined to include both a disposal facility (*i.e.*, a repository) and "such other facility(ies) to which spent nuclear fuel and/or high level radioactive waste may be shipped by DOE prior to its transportation to a disposal facility." Contract, Art. I. 10. DOE is not spending "extraordinary amounts" at Yucca Mountain because of PG&E's litigation strategy, but simply because DOE has deliberately chosen to continue its breach and refuse to perform its contract obligations until (if ever) the Yucca Mountain repository is completed.

The government's citation of *Cities Services Helex, Inc. v. United States*, 543 F.2d 1306 (Ct. Cl. 1976), *see* MSJ at 3, is instructive. In *Cities Service Helix*, the government *was* prejudiced by plaintiff's failure to terminate the contract. The plaintiff had continued to perform by delivering helium to the government for more than two years, and in response the government had *paid for* much of the helium (and become obligated for the remainder). In that case, therefore, the government had materially – and irreversibly – changed its position in reliance on the plaintiff's failure to terminate the contract. As explained above, nothing of that sort has occurred in the present case.

To the contrary, in this case, although PG&E has not terminated the contract, in "return" DOE has never provided any contract performance whatever. That fact is alone should be dispositive of any claim that the DOE has taken detrimental action *under the contract* in reliance on PG&E's  in declaring a total breach. For example, in *Mobil Oil Explor. & Prod. S.E., Inc. v. United States*, 530 U.S. 604 (2000), the Supreme Court held that plaintiffs could not be said to have waived their right to seek restitution where they had not received "at least partial performance" from the government. *Id.* at 622. And as PG&E noted in its opposition brief, the Supreme Court also held in *Mobil Oil* (applying black letter law) that a plaintiff does not waive its right to seek restitution "simply by urging performance." PG&E Opp. at 3 (quoting *Mobil Oil*, 530 U.S. at 622).

In sum, both factually and legally the Court should reject the government's belated suggestion that DOE's expenditures at Yucca Mountain are either "prejudicial" or the result of PG&E's litigation strategy in this case.

That DOE' s breach is a continuing one also bears on the question of waiver, because as DOE's breach continues, so too do PG&E's corresponding remedial rights.

*See, e.g., Apex Pool Equip. Corp. v. Lee*, 419 F.2d 556, 562 (2d Cir. 1969) ("deciding to continue a contract despite a breach does not necessarily foreclose future terminations if there are succeeding breaches"). Commentators have also recognized, and other courts have agreed, that . . . "[a] continuing breach of condition . . . is not necessarily excused permanently because the injured party elects to go on with the contract." Samuel Williston & Walter H.E. Jaeger, *A Treatise on the Law of Contracts*, §688 at 305 (3d ed. 1963). *See Neil v. Kennedy*, 149 N.E. 775, 777 (Ill. 1925) ("When there is a continuing cause of forfeiture, the acceptance of payment after a breach incurring the forfeiture was originally committed will not preclude an insistence upon the forfeiture if the breach continue after the acceptance or a new breach occur.").[2]

The government's breach began in January 1998 and continues uninterrupted to this day; DOE has never tendered *any* performance, it will not do so for many (currently eight and counting) years after the 1998 contractual start date, and DOE may *never* perform. It simply cannot be the case – and the government has offered no reason why it should be the case – that PG&E has waived any right to sue for total breach. Accordingly, all remedies remain available to PG&E.

---

[2] Although in *Apex Pool Equip.* the Second Circuit stated (contrary to the law of this Circuit) that "detrimental reliance" by the breaching party is unnecessary to a binding election of contract remedies, *see*, 419 F.2d at 563, that statement may reflect a mere semantic difference. A waiver was found in that case only because after the breach the non- breaching seller "continue[d] the business relationship, and accept[ed] future performance" *id*. at 561, by urging the breaching buyer to continuing purchasing, which it did.

Dated: January 18, 2006

Respectfully submitted,

s/ Jerry Stouck
Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 phone
(202) 261-4751 fax
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:

Robert L. Shapiro
Greenberg Traurig, LLP