# In the United States Court of Federal Claims

No. 04-74C
(into which has been consolidated No. 04-75C)

(E-Filed: March 9, 2006)

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

ORDER

The court has before it plaintiff's Motion for Reconsideration (Pl.'s Mot. or Motion) filed electronically on March 1, 2006.[1] Plaintiff, Pacific Gas & Electric Company (PG&E), "moves for reconsideration of Part III of the [court's] January 25, 2006 Opinion overruling work[]product doctrine objections that plaintiff lodged during certain depositions." Pl.'s Mot. at 1. Plaintiff believes that the court "reache[d] an incorrect result," and therefore requests the court to reconsider that part of its Opinion. Id. For the following reasons, plaintiff's Motion is DENIED.

Rule 59(a) of the Rules of the Court of Federal Claims (RCFC) affords this court discretion to grant reconsideration "to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable

[1]Plaintiff states that its Motion is filed pursuant to Rule 7 of the Rules of the Court of Federal Claims (RCFC). Pl.'s Mot. at 1. However, plaintiff's Motion is for reconsideration and therefore should have been filed pursuant to RCFC 59. See RCFC 59, Rules Committee Note, 2002 Revision ("[N]on-final orders . . . can be the subject of motions for reconsideration at any time before final judgment."). Nevertheless, the court ACCEPTS plaintiff's filing as if it was filed pursuant to RCFC 59.

as between private parties in the courts of the United States." RCFC 59(a) (2002); see Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). A showing in support of the motion "must be based 'upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.'" Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999) (quoting Bishop v. United States, 26 Cl. Ct. 281, 286 (1992)). A party moving under RCFC 59 "does not persuade the court to grant . . . a motion [for reconsideration] by merely reasserting arguments which were previously made and were carefully considered by the court." Coconut Grove Entertainment, Inc. v. United States, 46 Fed. Cl. 249, 255 (2000); see also Gelco Builders & Burjay Constr. Corp. v. United States, 369 F.2d 992, 1000 n.7 (Ct. Cl. 1966). The court notes that "reconsideration enables a trial court to address oversights, and the court appreciates the opportunity to do so." Fru-Con, 44 Fed. Cl. at 315.

I. Part III of the Court's January 25, 2006 Opinion

Part III of the court's January 25, 2006 Opinion (1/25/06 Op. or Opinion) "determine[d] whether plaintiff's invocation of the work product doctrine to protect . . . [PG&E employee-]witnesses from responding to defendant's questions regarding the preparation of plaintiff's damages claim was proper." 1/25/06 Op. at 47. The court provided specific examples of plaintiff's counsel's objections on work product grounds to defendant's deposition questions asking PG&E employees about their involvement in the preparation of plaintiff's damages claim. See id. at 47-49. These were the only examples of such questions before the court, and the court's analysis did not extend to any potential follow-up questions not asked by defendant or objected to by plaintiff. The court then described the scope of the work product doctrine, noting that it provides protection for "documents and tangible things . . . prepared in anticipation of litigation," RCFC 26(b)(3), as well as some limited forms of intangible work product of attorneys, their agents or other representatives of a party, 1/25/06 Op. at 49-50. The court found that

> plaintiff's counsel's assertion that responses of PG&E employees to deposition questions regarding the preparation of plaintiff's damages claim are covered by the work product doctrine attempts to stretch the doctrine beyond its recognized boundaries. To the extent that such questions call for the substance of communications made from these employees to their attorneys, the attorney-client privilege may apply, but the transcripts of depositions cited . . . do not appear to call for such information, nor does plaintiff's counsel appear to object to questions on such grounds.

1/25/06 Op. at 50 (quotation and citations omitted).

The court turns now to address the arguments made by plaintiff in its Motion.

II. Plaintiff's Arguments Regarding the Scope of the Work Product Doctrine

Plaintiff first argues, and the court does not dispute, that "there should be no question that the [work product] doctrine encompasses intangible work product." Pl.'s Mot. at 4; see 1/25/06 Op. at 49 ("'[T]he work product doctrine furnishes protection for some forms of work product not in tangible form . . . .'" (quoting Williams v. Chrysler Fin. Corp., No. 98-2931, 1999 U.S. Dist. LEXIS 6902, at *5 (E.D. La. May 3, 1999))). Plaintiff states that:

> Both case[]law and R[CFC] 26(b)(3) address the issue of whose work product is protected by the doctrine, and both sources of authority make clear that reach of the doctrine's protection is sufficiently broad to effectuate the doctrine's purpose of enabling a party and its counsel to prepare the party's case outside of the view of the opposing party or counsel.

Pl.'s Mot. at 5. Plaintiff goes on to quote, inter alia, United States v. Nobles, 422 U.S. 225, 239 (1975), In re Cendant Corp. Securities Litigation, 343 F.3d 658, 662-63 (3d Cir. 2003), and RCFC 26(b)(3), to support the proposition that "the work product doctrine covers work product of attorneys, consultants and the parties themselves." Id. at 6.

While plaintiff is correct that "[t]he language of R[CFC] 26(b)(3) . . . protect[s] from discovery materials 'prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent) . . . ,'" Pl.'s Mot. at 5 (quoting RCFC 26(b)(3)) (first emphasis added), plaintiff does not cite, nor is the court aware of, any authority providing that the work product doctrine protects from discovery intangible work product of a party or a party's employee as opposed to a party's representative or his or her agent. Cf. Williams, 1999 U.S. Dist. LEXIS 6902, at *5 ("[T]he work product doctrine furnishes protection for some forms of work product not in tangible form, but these are limited to the mental impressions, conclusions, opinions, legal theories, thought processes and recollections of an attorney or other representative of a party concerning the litigation.") (emphasis added). Plaintiff's citation of Nobles is inappropriate. In Nobles, the Supreme Court recognized that

> attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore

> necessary that the [work product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

Nobles, 422 U.S. at 239 (emphasis added), cited in Pl.'s Mot. at 5. Nowhere did the Court state that the intangible work product of a party or a party's employee was protected by the work product doctrine. See Nobles, 422 U.S. at 239 n.13 ("The sole issue in Hickman related to materials prepared by an attorney, and courts thereafter disagreed over whether the [work product] doctrine applied as well to materials prepared on his behalf. Necessarily, it must.") (citations omitted).

Moreover, In re Cendant does not support plaintiff's position. There, the specific question being reviewed by the Court of Appeals for the Third Circuit was "whether the 'work product' of a non-testifying trial consultant . . . is privileged and subject to only limited discovery." In re Cendant, 343 F.3d at 659 (emphasis added); but cf. Pl.'s Mot. at 6 ("The [Third Circuit] . . . conclud[ed] that the work product doctrine applied to shield the former employee's work with the consultant preparing for the case from discovery . . . .") (emphasis added). Although In re Cendant is similar to this case in that the Third Circuit analyzed this question in the context of deposition questions asking a former employee of the co-defendant about his interactions with the trial consultant, see 343 F.3d at 660, the court's holding in that case was that "the work product of [the litigation consultant] is privileged and subject to only limited discovery," id. at 667. The court did not hold that the work product doctrine applied specifically to protect the intangible work product of the former employee himself. Instead, the court agreed with the co-defendant that "questioning into the content of advice [the litigation consultant] gave to [the employee-witness] during a private consultation with [the employee-witness' attorney] clearly calls for attorney work product protection." Id. (emphasis added). Specifically noting that "[l]itigation consultants retained to aid in witness preparation may qualify as non-attorneys who are protected by the work product doctrine," id. at 665, the court found that

> [c]ompelled disclosure of the substance of conversations between [the employee-witness], his counsel, and [the litigation consultant] would require disclosure of communications protected by the work product doctrine. The communications took place during a consultation that focused on those issues that counsel and [the litigation consultant] perceived to be central to the case. Moreover, the communications were intended to be confidential and made in anticipation of litigation. As such, the communications are at the core of the work product doctrine . . . .

Id. at 667 (emphasis added). Judge Garth wrote a concurring opinion because he was "also of the opinion that the discovery which was sought in the instant context was precluded as well by the attorney-client privilege," id. at 668 (Garth, J., concurring), which the majority opinion did not address.

The court's January 25, 2006 Opinion is not contradicted by the Third Circuit's holding. The court reviewed deposition questions asking whether PG&E employees were involved in the preparation of plaintiff's damages claim. See 1/25/06 Op. at 47-49. The transcripts provided to the court do not indicate that defendant's counsel at any time asked PG&E employees to disclose the substance of conversations they had with plaintiff's counsel or the content of advice they received from plaintiff's counsel. Id. Unlike In re Cendant, the deposition questions at issue here asked only whether PG&E employees were involved in the preparation of plaintiff's damages claim. Id. Nowhere did they ask for the substance of advice, legal theories, or mental impressions of attorneys as conveyed to the PG&E employees. Cf. In re Cendant, 343 F.3d at 660 (The Special Discovery Master, whose ruling the Third Circuit deemed "essentially correct," 343 F.3d at 668, stating, in relevant part, that the employee-witness "may be asked whether he has met with [the litigation consultant], the date and duration of any meetings, who was present and the purpose for same. He may not be asked what [the litigation consultant] told the witness . . . or whether [the litigation consultant] provided the witness with any documents. In my view, answers to the latter questions would violate the work product doctrine."). In fact, the court expressly noted that

> [t]o the extent that such questions call for the substance of communications made from these employees to their attorneys, the attorney-client privilege may apply, cf. Burton[ v. R.J. Reynolds Tobacco Co., Inc.] 170 F.R.D. [481,] 484 [(D. Kan. 1997)] ("The privilege does not apply to the fact of communication between a client and attorney. It is the substance of the communication which is protected, not the fact that there has been communication."), but the transcripts of depositions cited . . . do not appear to call for such information.

1/25/06 Op. at 50 (citations omitted); accord In re Cendant, 343 F.3d at 668 (Garth, J., concurring). Accordingly, the court disagrees with plaintiff that In re Cendant contradicts the court's Opinion and supports plaintiff's Motion.

Furthermore, the Third Circuit's discussion of intangible work product does not state that the work product doctrine extends to protect the intangible work product of a party or a party's employee. On the contrary, the court in In re Cendant explained that

> "since intangible work product includes thoughts and recollections of counsel, it is often eligible for the special protection accorded opinion work product." . . . Furthermore, this protection extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants.

In re Cendant, 343 F.3d at 662 (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2024, at 337 (2d ed. 1994)) (emphasis added). Moreover, numerous other authorities, in discussing intangible work product, appear to limit the protection of intangible work under the work product doctrine to that of a party's representatives or his or her agents (or, at the very least, do not extend the work product doctrine to cover intangible work product of a party or a party's employee). See, e.g., Williams, 1999 U.S. Dist. LEXIS 6902, at *5 ("[T]he work product doctrine furnishes protection for some forms of work product not in tangible form, but these are limited to the mental impressions, conclusions, opinions, legal theories, thought processes and recollections of an attorney or other representative of a party concerning the litigation.") (emphasis added); Holly v. Torch, Inc., No. 95-3372, 1996 U.S. Dist. LEXIS 7831, at **4-5 (E.D. La. Jun. 4, 1996) ("[T]he work product doctrine furnishes protection for some forms of work product not in tangible form, but these are limited to the mental impressions, conclusions, opinions, legal theories, thought processes and recollections of an attorney or other representative of a party concerning the litigation.") (emphasis added); Banks v. Office of the Senate Sergeant-at-Arms, 222 F.R.D. 1, 4 (D.D.C. 2004) ("Questions of a witness that would disclose counsel's mental impressions, conclusions, opinions or legal theories may be interdicted to protect 'intangible work product.'") (emphasis added); cf. Baker v. General Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000) ("There are two kinds of work product – ordinary work product and opinion work product. Ordinary work product includes raw factual information. Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories." (citation omitted) (emphasis added)); In re Grand Jury Subpoena (Zerendow), 925 F. Supp. 849, 853 (D. Mass. 1995) ("Courts have distinguished 'between "opinion" work product and "ordinary" work product – the former category encompassing materials that contain the mental impressions, conclusions, opinions or legal theories of an attorney, the latter category embracing the residue.'" (quoting In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1014 (1st Cir. 1988) (emphasis added)).[2] Therefore, the court disagrees

---

[2]Contrary to plaintiff's assertions, see Pl.'s Mot. at 6-8, the court does not conflate "intangible" work product with "opinion" work product. The court recognizes that "R[CFC] 26(b)(3) only partially codified the work product doctrine." Id. at 7; see 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2024, at 337 (2d ed. 1994) ("Rule 26(b)(3) (continued...)

with plaintiff that its "January 25, 2006 Opinion misapplies the work product doctrine." Pl.'s Mot. at 6 (capitalization omitted).

Plaintiff further argues that

> questioning of PG&E's employees regarding their involvement in the preparation of PG&E's RCFC 26(a)(1) disclosures would almost certainly quickly implicate both opinion work product – PG&E's counsel's mental impressions and strategies – and attorney-client communications. For example, a basis description by Mr. Kapus of his role in helping put together PG&E's RCFC 26(a)(1) damages disclosures by itself is unlikely to be of significant interest. The government is likely to follow-up such an inquiry with questions asking Mr. Kapus why he did what he did or who gave him instructions to assemble the damages portion of the initial disclosure in a particular way or how PG&E's final RCFC 26(a)(1) damages disclosure might differ from any initial input provided by Mr. Kapus. Such questions would inappropriately intrude on opinion work product, which is entitled to special protection, and attorney-client communications.

Pl.'s Mot. at 11. However, when the court issued its January 25, 2006 Opinion it did not have before it such hypothetical questions or objections to such questions. The court's analysis was limited to whether the work product doctrine was properly invoked by plaintiff to object to the questions posed by defendant's counsel, which asked only whether PG&E employees were involved in the preparation of plaintiff's damages claim and not "opinion work product – PG&E's counsel's mental impressions and strategies – [or] attorney-client communications." Id. The court determined that the doctrine was not properly invoked. See Allen v. Chicago Transit Auth., 198 F.R.D. 495, 500 (N.D. Ill. 2001) ("Only by strictly construing the elements of work product, can the doctrine's original intent be best served."); McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242,

---

[2](...continued)
itself provides protection only for documents and tangible things and . . . does not bar discovery of facts a party may have learned from documents that are not themselves discoverable. Nonetheless, Hickman v. Taylor continues to furnish protection for work product within its definition that is not embodied in tangible form."), quoted in In re Cendant, 343 F.3d at 662. However, it does not follow that the intangible work product of a party or a party's employee necessarily is covered under the work product doctrine; nor has any authority so held. Indeed, in Hickman itself, "[t]he sole issue . . . related to materials prepared by an attorney." Nobles, 422 U.S. at 239 n.13.

260 (N.D. Ill. 2000) (work product doctrine "significantly restricts the scope of discovery and must be narrowly construed in order to aid in the search for the truth").

III. Conclusion

For the foregoing reasons, the court declines to reconsider its January 25, 2006 Opinion. Plaintiff's Motion is therefore DENIED. The court concluded Part III of its January 25, 2006 Opinion by stating, "If the parties have further disputes regarding the permissibility of objections to questions during depositions, the parties shall contact chambers for guidance at that time and during the respective deposition by telephone at (202) 357-6564." 1/25/06 Op. at 50. The parties are requested to contact the court at any time when it appears that the involvement of the court may assist in securing "the just, speedy, and inexpensive determination of [this] action." RCFC 1.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge