# In the United States Court of Federal Claims

No. 04-74C
(into which has been consolidated No. 04-75C)

(E-Filed: March 14, 2006)

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Motion to Compel Production of Documents Withheld Under the Deliberative Process Privilege; RCFC 37(a)(2); Scope of Privilege; Procedural Requirements for Invocation of Privilege; Failure to Meet Procedural Requirements for Invocation of Privilege |

Jerry Stouck, Washington, DC, for plaintiff. Robert L. Shapiro, Washington, DC, of counsel.

John Clifford Ekman, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Jane K. Taylor, Office of General Counsel, United States Department of Energy, Washington, DC, and Scott R. Damelin, Sharon A. Snyder, Joshua E. Gardner, and Todd J. Cochran, Civil Division, Department of Justice, Washington, DC, of counsel.

OPINION

HEWITT, Judge

The court has before it Pacific Gas & Electric Company's Motion to Compel Production of Documents Withheld Under the "Deliberative Process" Privilege (Pl.'s Mot. or Motion), Defendant's Opposition to Pacific Gas & Electric's Motion to Compel the Production of Documents Withheld Under the Deliberative Process Privilege and Response to the Court's November 16, 2005 Order (Def.'s Resp. or Response), plaintiff's Reply in Support of Motion to Compel "Deliberative Process" Documents (Pl.'s Reply or Reply), and PG&E's Response to Court's Order of February 15, 2006 Regarding Amended Table of Challenges Included in the Appendix of PG&E's Reply in Support of Motion to Compel (Pl.'s Resp. to Ct. Ord.). Pursuant to Rule 37(a)(2) of the Rules of the Court of Federal Claims (RCFC), plaintiff moves the court "to compel the government to produce the large number of responsive documents that the government has withheld from disclosure under the 'deliberative process' privilege." Pl.'s Mot. at 1.

Plaintiff, Pacific Gas & Electric Company (PG&E), initially listed a total of 465 documents in its Motion, see Pl.'s Mot. at 1; Pl.'s Mot. Appendix (App.) at A1-40 (Table of Challenges), 145 of which plaintiff states have been withheld by the government in discovery in similar spent nuclear fuel litigation proceedings before this court, and 320 of which are withheld by the government for the first time in this case, see Pl.'s Mot. at 1. Subsequent to the filing of plaintiff's Motion, it appears that plaintiff and defendant reached an agreement with respect to at least seven of these documents, as plaintiff ultimately requests the court to "reject the government's claims of deliberative process privilege in their entirety and direct the government to produce all 45[8] documents [improperly withheld]." Pl.'s Reply at 29.[1]

I. Background

This is not the first case in which the government has asserted the deliberative process privilege over documents related to spent nuclear fuel litigation in this court. On March 27 and April 3, 2002, the plaintiffs in Yankee Atomic Electric Co. v. United States, No. 98-126C, Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C, and Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Yankee plaintiffs), moved this court to compel the production of documents then identified as privileged in the government's privilege log. Def.'s Resp. at 2. During the coordinated

[1]In plaintiff's response to the court's February 15, 2006 Order, plaintiff states that "[t]he '453' documents noted in PG&E's reply is not an accurate representation of the challenged documents. . . . [I]t appears to be largely a typographical error." Pl.'s Resp. to Ct. Ord. at 2. After reviewing the Amended Table of Complaints in its Reply, plaintiff explains that seven documents are no longer in dispute and that "[i]f these seven documents were removed from the Amended Table, it would reflect 458 challenged documents." Id. at 3.

spent nuclear fuel discovery proceedings before this court, see Pl.'s Reply App. at 33-34 (Order granting Unconsolidated Spent Fuel Plaintiffs' Joint Motion for Consolidated Discovery), and in response to the Yankee plaintiffs' motion to compel, on May 13, 2002, Ronald Milner, Chief Operating Officer of the Office of Civilian Radioactive Waste Management (OCRWM) of the Department of Energy (DOE), executed an affidavit in support of the government's assertion of the deliberative process privilege over 37 of these documents, Pl.'s Mot. at 3-4; Def.'s Resp. App. at 1-12 (2002 Milner Affidavit); see also Def.'s Resp. at 2-3; Yankee Atomic Elec. Co. v. United States, 54 Fed. Cl. 306, 309 (2002).[2] On October 9, 2002, this court "denie[d] [the Yankee] plaintiffs' motion to compel the production of the documents withheld pursuant to the deliberative process privilege asserted in Mr. Milner's May 13, 2002 affidavit." Yankee Atomic, 54 Fed. Cl. at 312.

As plaintiff states, "[t]his case had not been filed – and PG&E thus was not before the [c]ourt – when [this court] issued [its] ruling[]," Pl.'s Reply at 3, and therefore "PG&E [is] not . . . bound by [this] ruling[]," id. Accordingly, plaintiff seeks production of all 37 of the documents listed in defendant's privilege log as protected under the deliberative process privilege and supported by the May 13, 2002 Milner Affidavit.[3] See

---

[2]The 2002 Milner Affidavit appears to name 37 documents over which the government asserted the deliberative process privilege, see Def.'s Resp. App. at 2-11 (2002 Milner Affidavit); Pl.'s Mot. at 3 ("The government first asserted the deliberative process privilege [over] 37 documents . . . ."), although this court has described it as covering only 24 documents, see Yankee Atomic Elec. Co. v. United States, 54 Fed. Cl. 306, 309 (2002) ("The Government has asserted the deliberative process privilege over 24 documents described in an affidavit from Mr. Ronald A. Milner."), as has defendant, see Def.'s Resp. at 2-3. This discrepancy may be due to the fact that some of the listed documents are different versions or duplicates of the same document. See, e.g., Def.'s Resp. App. at 6 (2002 Milner Affidavit, naming documents that are "duplicate memoranda" or "duplicates or different versions of a[] . . . memorandum"). Because plaintiff's Amended Table of Challenges does not indicate whether certain documents covered by the 2002 Milner Affidavit are duplicates, see Pl.'s Reply App. at 166-208 (Amended Table of Challenges); Pl.'s Resp. to Ct. Ord. Exhibit (Ex.) (Summary of Affidavits and Corresponding Documents) (listing 37 documents covered by the Milner Affidavit and being challenged here), and because the parties have not indicated otherwise, for the purposes of plaintiff's Motion, the court assumes that the exact number of documents covered by the 2002 Milner Affidavit is 37.

[3]In its Response, defendant argues:

> PG&E – represented by the same set of attorneys who were intimately involved in the coordinated SNF discovery proceedings in Yankee – should not be allowed to

(continued...)

Pl.'s Resp. to Ct. Ord. Exhibit (Ex.) (Summary of Affidavits and Corresponding Documents).

After being served with another privilege log in January of 2003, see Pl.'s Mot. at 6, on March 6, 2003 the Yankee plaintiffs again moved this court to compel production of documents identified as privileged in the government's privilege log, id. at 7; Def.'s Resp. at 3-4. In response to the Yankee plaintiffs' motion to compel, officials from the DOE and the Nuclear Regulatory Commission (NRC) executed five new affidavits in support of the government's assertion of the deliberative process privilege over at least 200 of the documents. Def.'s Resp. at 4-5; see Def.'s Resp. App. at 13-26 (June 2003 Milner Affidavits); id. at 147-49 (Friedman Affidavit); id. at 120-129 (Bubar Affidavit); id. at 176-185 (2003 Virgilio Affidavit). On August 25, 2003, this court ruled that, "on the basis of compelling necessity," fifty of these documents, mainly those covered by the Bubar Affidavit, "must be produced." Pl.'s Mot. App. at A116 (Yankee Atomic, No. 98-

---

[3](...continued)
're-raise' the same demands for production of those documents outside the context of that coordinated effort.

Def.'s Resp. at 8. The court disagrees. First, the "law of the case" doctrine does not apply because that doctrine only acts to discourage "a court [from] . . . reopen[ing] issues decided in earlier stages of the same litigation." Agostini v. Felton, 521 U.S. 203, 236 (1997) (emphasis added) (citing Messenger v. Anderson, 225 U.S. 436, 444 (1912)). PG&E's litigation is separate and distinct from the Yankee plaintiffs' litigation; and PG&E was not a part of the coordinated discovery proceedings for spent nuclear fuel cases. See Pl.'s Reply App. at 6 (July 9, 2001 Joint Motion for an Order for Coordinated Discovery listing the "Cases Included in Coordinated Discovery" and not listing PG&E).

Second, issue preclusion does not apply. "Under the doctrine of issue preclusion . . . , issues which are actually and necessarily determined by a court of competent jurisdiction are conclusive in a subsequent suit involving the parties to the prior litigation. The underlying rationale is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again." Mother's Rest., Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1569 (Fed. Cir. 1983) (emphasis added) (footnote and citation omitted); see also id. (requiring that "the party precluded . . . was fully represented in the prior action" for issue preclusion to apply). PG&E has not "litigated . . . and lost," id., the issue of whether documents withheld by the government are properly protected from discovery by the deliberative process privilege, nor was PG&E "fully represented in the prior action" involving other spent nuclear fuel plaintiffs, id. Therefore, plaintiff is not precluded from seeking production of documents previously withheld by the government on deliberative process privilege grounds in previous – and distinct – spent nuclear fuel cases.

126C, Order of August 25, 2003). However, this court did not order the rest of the documents withheld by the government under the deliberative process privilege to be produced. Def.'s Resp. at 5; see Pl.'s Mot. at 8-9; Pl.'s Reply at 4.

Plaintiff argues that "[t]his case had not been filed – and PG&E thus was not before the [c]ourt – when [this court] issued [its] ruling[]," Pl.'s Reply at 3, and therefore "PG&E [is] not . . . bound by [this] ruling[]," id. Accordingly, plaintiff seeks production of 108 of the documents not previously produced that are listed in defendant's privilege log as protected under the deliberative process privilege and supported by the June 2003 Milner Affidavits, the Friedman Affidavit, and the 2003 Virgilio Affidavit. See Pl.'s Resp. to Ct. Ord. Ex. (Summary of Affidavits and Corresponding Documents).

As plaintiff states, subsequent to this court's August 23, 2005 Order, "the government has produced additional privilege logs that identify hundreds of additional responsive documents that it has now elected to withhold on deliberative process privilege grounds." Pl.'s Mot. at 11. During discovery proceedings in this case, on September 12, 2005, plaintiff's counsel wrote to defendant's counsel in attempt to resolve the parties' discovery dispute and requested that defendant "produce its 'deliberative process' documents immediately." Pl.'s Mot. App. at A119. On September 21, 2005, defendant's counsel responded to plaintiff's counsel in a letter stating that defendant "disagree[s] with [plaintiff's] assertion that the Government's [deliberative process] privilege claims lack merit." Id. at A131. Accordingly, defendant refused to produce any of the documents on its privilege log listed as protected by the deliberative process privilege. See id. at A132.

Plaintiff therefore filed the Motion before the court on October 7, 2005,[4] requesting the court to

> compel production of the withheld documents described in the 5/13/02 Milner affidavit and in the Virgilio, Friedman, and two additional Milner affidavits . . . . In addition, PG&E moves to compel the government to produce the additional documents that have been withheld by the government on deliberative process privilege grounds subsequent to the [prior spent nuclear fuel discovery] proceedings . . . ."

Pl.'s Mot. at 13 (emphasis omitted). As had been done by the government in response to previous motions to compel by spent nuclear fuel plaintiffs, on or around November 10,

[4]By leave of the court, plaintiff filed a corrected version of its Motion on October 19, 2005. All quotations and citations to plaintiff's Motion are to the corrected version.

2005, officials from DOE and NRC executed three new affidavits in support of defendant's assertion of the deliberative process privilege over at least 315 of the documents listed as privileged in defendant's privilege logs created subsequent to this court's prior rulings. Def.'s Resp. at 5; Def.'s Resp. App. at 27-47 (2005 Milner Affidavit); id. at 130-141 (Marcinowski Affidavit); id. at 186-193 (2005 Virgilio Affidavit). Plaintiff has indicated that it seeks production of 313 of these documents. See Pl.'s Resp. to Ct. Ord. Ex. (Summary of Affidavits and Corresponding Documents). In total, between the documents previously withheld by the government under the deliberative process privilege and supported by prior-executed affidavits of NRC and DOE officials (145 documents), and the documents withheld under the deliberative process privilege for the first time during discovery proceedings in this case (313 documents), plaintiff moves for production of 458 documents withheld by defendant under the deliberative process privilege. See Pl.'s Resp. to Ct. Ord. at 3; Pl.'s Resp. to Ct. Ord. Ex. (Summary of Affidavits and Corresponding Documents). The court now proceeds to address the merits of plaintiff's Motion.

## II. Discussion

### A. The Deliberative Process Privilege

#### 1. Scope of the Deliberative Process Privilege

The deliberative process privilege "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" Dep't of Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)).[5] As the Supreme Court has stated, "[t]he deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of

---

[5]The Court of Claims in Kaiser Aluminum & Chemical Corporation v. United States, 157 F. Supp. 939 (Ct. Cl. 1958), is sometimes credited as the first federal case to recognize a deliberative process privilege. Marriott Int'l Resorts, L.P. v. United States, No. 05-5046, 2006 U.S. App. LEXIS 2654, at **5-6 (Fed. Cir. Feb. 3, 2006) (citing Michael N. Kennedy, Escaping the Fishbowl: A Proposal to Fortify the Deliberative Process, 99 Nw. U. L. Rev. 1769, 1779 (2005)); see also Jade Trading, LLC v. United States, 65 Fed. Cl. 487, 493 (2005) ("The deliberative category of the executive privilege was first articulated and adopted by the Court of Claims in Kaiser Aluminum . . . ."); CACI Field Servs., Inc. v. United States, 12 Cl. Ct. 680, 687 n.7 (1987) ("According to commentators, the creation of the executive deliberation privilege can be traced to Kaiser.").

discovery and front page news, and its object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." Klamath, 532 U.S. at 8-9 (quoting Sears, Roebuck, 421 U.S. at 151); see also Scott Paper Co. v. United States, 943 F. Supp. 489, 496 (E.D. Pa. 1996) ("Th[e deliberative process] privilege recognizes '[t]hat were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer.'" (quotation and citation omitted)); Greenpeace v. Nat'l Marine Fisheries Serv., 198 F.R.D. 540, 543 (W.D. Wash. 2000) ("The accepted rationale [of the deliberative process privilege] is that frank and open discussions within governmental agencies would be 'chilled' if the personal opinions and ideas of government personnel involved in the decision-making process were subject to public scrutiny.").

"The burden of justifying the application of the governmental deliberative process privilege rests with the party seeking to invoke it." Kaufman v. City of New York, No. 98 Civ. 2648 (MJL) (KNF), 1999 U.S. Dist. LEXIS 5779, at **10-11 (S.D.N.Y. Apr. 22, 1999). "Like all evidentiary privileges that derogate a court's inherent power to compel the production of relevant evidence, the deliberative process privilege is narrowly construed." Nat'l Marine Fisheries Serv., 198 F.R.D. at 543; see also Kaufman, 1999 U.S. Dist. LEXIS 5779, at *11 ("The [deliberative process] privilege, as it is in derogation of the search for truth, is not to be expansively construed.").

In order for a document to be protected from discovery by the deliberative process privilege, it must be both "pre-decisional" and "deliberative." Jade Trading, LLC v. United States, 65 Fed. Cl. 487, 493 (2005). To qualify as pre-decisional, the material sought to be protected "must address activities '[a]ntecedent to the adoption of an agency policy.'" Walsky Constr. Co. v. United States, 20 Cl. Ct. 317, 320 (1990) (quoting Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978)).[6] "'Subjective documents which reflect the personal opinion of the writer, rather than the policy of the agency are considered privileged information because they are predecisional.'" New York ex rel. Boardman v. Nat'l R.R. Passenger Corp., No. 1:04-CV-0962 (DNH/RFT), 2006 U.S.

---

[6] Walsky and other cases cited in this discussion refer to the deliberative process privilege more generally as the "executive privilege." See Walsky Constr. Co. v. United States, 20 Cl. Ct. 317, 319 (1990). As the Federal Circuit recently explained, "[t]he deliberative process privilege is but one of several privileges that generally fall within the scope of the more general 'executive privilege.'" Marriott, 2006 U.S. App. LEXIS 2654, at *9 n.3. Therefore, where it appears to the court that a case is specifically referring to the deliberative process privilege even while using the more general phrase "executive privilege," the court uses the phrase "deliberative process privilege" in order to be more specific as to the privilege to which a case appears to refer.

Dist. LEXIS 4684, at *32 (N.D.N.Y. Jan. 9, 2006) (quoting LNC Invs., Inc. v. Republic of Nicaragua, No. 96 Civ. 6360 (JFK) (RLE), 1997 WL 729106, at *1 (S.D.N.Y. Nov. 21, 1997)). To qualify as deliberative, the material sought to be protected "must address 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.'" Walsky, 20 Cl. Ct. at 320 (quoting Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975)); see also Kaiser Aluminum & Chem. Corp. v. United States, 157 F. Supp. 939, 946 (Ct. Cl. 1958) ("So far as the disclosure of confidential intra-agency advisory opinions is concerned, we conclude that they belong to that class of governmental documents that are privileged from inspection as against public interest but not absolutely."); Jade Trading, 65 Fed. Cl. at 493-94 ("[T]o be deliberative, a document must reflect 'the give-and-take of the consultative process,' rather than constituting a 'body of secret law.'" (quoting Vons Cos., Inc. v. United States, 51 Fed. Cl. 1, 22 (2001))). "The privilege does not protect factual or investigative material, except as necessary to avoid indirect revelation of the decision-making process." Scott Paper, 943 F. Supp. at 496. "Thus, 'factual findings and conclusions, as opposed to opinions and recommendations' are not protected." Reino de Espana v. Am. Bureau of Shipping, No. 03 Civ. 3573 (LTS) (RLE), 2005 U.S. Dist. LEXIS 15685, at *34 (S.D.N.Y. Aug. 1, 2005) (quoting Resolution Trust Corp. v. Diamond, 137 F.R.D. 634, 641 (S.D.N.Y. 1991), rev'd in part on other grounds, 18 F.3d 111 (2d Cir. 1994)).[7]

The deliberative process privilege is not absolute; rather, the privilege is qualified and "subject to judicial oversight." Marriott Int'l Resorts, L.P. v. United States, No. 05-5046, 2006 U.S. App. LEXIS 2654, at *15 (Fed. Cir. Feb. 3, 2006); Walsky, 20 Cl. Ct. at 320; Scott Paper, 943 F. Supp. at 496. "After the government makes a sufficient showing of entitlement to the privilege, the court should balance the competing interests of the parties." Scott Paper, 943 F. Supp. at 496 (citing Redland Soccer Club v. Dep't of the Army, 55 F.3d 827, 854 (3d Cir. 1995)). The plaintiff may overcome the privilege by making "a showing of evidentiary need . . . that outweighs the harm that disclosure of such information may cause to the defendant." Alaska v. United States, 16 Cl. Ct. 5, 11 (1988) (citing CACI Field Servs., Inc. v. United States, 12 Cl. Ct. 680, 687 (1987)); see also Marriott, 2006 U.S. App. LEXIS 2654, at *15 ("[A] showing of compelling need can overcome the qualified deliberative process privilege.").

---

[7]Where possible, "facts that are separable from the privileged portion of a document should be disclosed." New York ex rel. Boardman v. Nat'l R.R. Passenger Corp., No. 1:04-CV-0962 (DNH/RFT), 2006 U.S. Dist. LEXIS 4684, at *33 (N.D.N.Y. Jan. 9, 2006) (quoting LNC Invs., Inc. v. Republic of Nicaragua, No. 96 Civ. 6360 (JFK) (RLE), 1997 WL 729106, at *2 (S.D.N.Y. Nov. 21, 1997)).

2. Procedural Requirements for Invocation of the Deliberative Process Privilege

"When a request for relevant documents or information is made, a claim of privilege should be interposed judiciously and not casually." United States v. O'Neill, 619 F.2d 222, 225 (3d Cir. 1980). "For that reason, the [c]ourt carefully scrutinizes the manner of assertion of the [deliberative process] privilege." Revelle v. Trigg, No. 95-5885, 1999 U.S. Dist. LEXIS 890, at **4-5 (E.D. Pa. Feb. 2, 1999). To invoke the deliberative process privilege, "the party resisting discovery must meet several procedural requirements." Reino De Espana, 2005 U.S. Dist. LEXIS 15685, at *36. "First, the head of the agency that has control over the requested document must assert the privilege after personal consideration." Walsky, 20 Cl. Ct. at 320. Alternatively, and recently confirmed as an appropriate practice by the Federal Circuit, "the head of an Agency can, when carefully undertaken, delegate authority to invoke the deliberative process privilege on the Agency's behalf." Marriott, 2006 U.S. App. LEXIS 2654, at *16.[8]

Many courts have found that the deliberative process privilege may not be asserted by government counsel. Kaufman, 1999 U.S. Dist. LEXIS 5779, at *10; see also O'Neill, 619 F.2d at 226 ("It has been suggested that it is inappropriate for the privilege to be invoked by attorneys instead of by the department head."); Kaufman, 1999 U.S. Dist. LEXIS 5779, at *13 ("[S]ince defendants have merely asserted the privilege through counsel, the Court finds that defendants have failed to establish that the governmental deliberative process privilege exists with respect to the withheld documents."). In this circuit, invocation of the privilege by government counsel has been found to be appropriate where the counsel holds "a senior position within the Agency and is responsible for planning, administering and evaluating the Agency's disclosure policies and procedures." Marriott, 2006 U.S. App. LEXIS 2654, at **16-17. Notably, the counsel in Marriott was "not directly responsible for or involved in substantive tax

[8] The agency head who asserts the deliberative process privilege or, alternatively, the agency official to whom the authority to assert the deliberative process privilege has been properly delegated, asserts the privilege in the form of a declaration or affidavit. Walsky, 20 Cl. Ct. at 320 n.3 (citing Cetron Elec. Corp. v. United States, 207 Ct. Cl. 985, 989-90 (1975)); see also United States v. O'Neill, 619 F.2d 222, 226 (3d Cir. 1980) ("Usually such claims [of the deliberative process privilege] must be raised by affidavit."); Kaufman v. New York, No. 98 Civ. 2648 (MJL) (KNF), 1999 U.S. Dist. LEXIS 5779, at *9 (S.D.N.Y. Apr. 22, 1999) ("The agency head or his or her authorized designee must invoke the privilege through an affidavit which states, inter alia, that he or she has reviewed each of the relevant documents and provides the reason(s) why preserving confidentiality – rather than the agency's interest in the particular action – outweighs the public interest in disclosure.").

litigation, including th[at] case," and was a "high ranking Agency official with expertise in the nature of the privilege claim and documents at issue." Id., at *17. The Federal Circuit's approach in Marriott is consistent with the reasoning in other cases holding that counsel are not permitted to invoke the privilege, that is, to ensure that the privilege is invoked as a result of an executive decision about the exigencies of executive management, rather than as a result of trial counsel's decision about a desirable litigation strategy.

Second, the party seeking protection "must state with particularity what information is subject to the privilege." Walsky, 20 Cl. Ct. at 320. In other words, "the information or documents sought to be shielded must be identified and described." Reino de Espana, 2005 U.S. Dist. LEXIS 15685, at *37 (quotation omitted). Third, "the agency must supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document." Walsky, 20 Cl. Ct. at 320 (citing Mobil Oil Corp. v. Dep't of Energy, 102 F.R.D. 1, 6 (N.D.N.Y. 1983)); Alaska, 16 Cl. Ct. at 11.[9] "Blanket assertions of the privilege are insufficient." Nat'l Marine Fisheries Serv., 198 F.R.D. at 543; see also Kaufman, 1999 U.S. Dist. LEXIS 5779, at *12 ("[A] blanket approach to asserting the privilege is unacceptable and is itself grounds for denying invocation of the privilege.").

Finally, the court notes that RCFC 26(b)(5) provides, in pertinent part:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged . . . , the party shall make the claim expressly and shall describe the nature of the documents . . . not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege . . . .

---

[9]Although "[n]one of the decisions binding on this court . . . recognizes th[e 'precise and certain reasons' requirement] as an independent condition for invoking the deliberative process privilege," Yankee Atomic, 54 Fed. Cl. at 312 n.7 (citations omitted), this requirement is well-established in persuasive federal case law. See, e.g., O'Neill, 619 F.2d at 226; Reino de Espana v. Am. Bureau of Shipping, No. 03 Civ. 3573 (LTS) (RLE), 2005 U.S. Dist. LEXIS 15685, at *37 (S.D.N.Y. Aug. 1, 2005); Greenpeace v. Nat'l Marine Fisheries Serv., 198 F.R.D. 540, 543 (W.D. Wash. Apr. 12, 2000); Anderson v. Marion County Sheriff's Dep't, 220 F.R.D. 555, 562 (S.D. Ind. 2004); Revelle v. Trigg, No. 95-5885, 1999 U.S. Dist. LEXIS 890, at *5 (E.D. Pa. Feb. 2, 1999); Scott Paper Co. v. United States, 943 F. Supp. 489, 497 (E.D. Pa. 1996); Resolution Trust Corp. v. Diamond, 773 F. Supp. 597, 604 n.5 (S.D.N.Y 1991); Nat'l R.R. Passenger Corp., 2006 U.S. Dist. LEXIS 4684, at *34 n.12 (quoting LNC Invs., 1997 WL 729106, at *2).

RCFC 26(b)(5). After quoting the language of identical Rule 26(b)(5) of the Federal Rules of Civil Procedure as applied to the deliberative process privilege, the United States District Court for the Southern District of Indiana stated that

> the time to make the showing that certain information is privileged is [therefore] at the time the privilege is asserted, not months later when the matter is before the Court on a motion to compel. This requirement is to allow parties to try and resolve discovery disputes prior to Court intervention.

Anderson v. Marion County Sheriff's Dep't, 220 F.R.D. 555, 562 n.5 (S.D. Ind. 2004); cf. Miller v. Pancucci, 141 F.R.D. 292, 300 (C.D. Cal. 1992) (examining the similar "official information" government privilege and stating that "the party must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter") (emphasis added). Similarly, after citing the same language, the United States District Court for the Eastern District of Pennsylvania stated that "a broad assertion of harm is [therefore] clearly not enough. In fact, the Third Circuit has held that an 'indiscriminate claim of privilege may in itself be sufficient reason to deny it.'" Revelle, 1999 U.S. Dist. LEXIS 890, at *6 (quoting O'Neill, 619 F.2d at 227);[10] cf. Miller, 141 F.R.D. at 300 (examining the similar "official information" government privilege and stating that "'[a] general claim of harm to the public interest [would not be ]sufficient to overcome the burden placed on the party seeking to shield material from disclosure.'" (quoting Kelly v. City of San Jose, 114 F.R.D. 653, 672 (N.D. Cal. 1987))).

[10]After observing in O'Neill that "[t]he indiscriminate claim of privilege may in itself be sufficient reason to deny it," O'Neill, 619 F.2d at 227, the Court of Appeals for the Third Circuit continued:

> The court when faced with [an indiscriminate claim of deliberative process privilege] cannot make a just or reasonable determination of its validity. Even when the privilege has been asserted by the President of the United States, the Supreme Court has rejected it when it depended "solely on the broad, undifferentiated claim of public interest in the confidentiality of . . . conversations" and has refused to extend deference to a President's "generalized interest in confidentiality."

O'Neill, 619 F.2d at 227 (quoting United States v. Nixon, 418 U.S. 683, 706, 711 (1974)).

Adherence to the foregoing procedural requirements ensures that the documents sought to be protected are in fact "(1) part of the deliberative process by which policies or decisions are formulated; and (2) truly of a predecisional, or advisory or recommendatory nature, or expresses [sic] an opinion on a legal or policy matter, or otherwise were reflective of a deliberative process." LNC Invs., 1997 WL 729106, at *2.

B. Whether the Government has Met the Procedural Requirements for Invocation of the Deliberative Process Privilege in This Case

In its Motion, plaintiff makes it clear that its argument focuses on the government's failure to comply with the procedural requirements for invocation of the deliberative process privilege:

> The government should be compelled to produce the[] documents [withheld under the deliberative process privilege] because the government has failed to satisfy the fundamental prerequisites for asserting the executive/deliberative process privilege, which require the government to (1) submit an affidavit from the head of the relevant department or agency that (2) sets forth the "precise and certain reasons" for withholding the documents in question and (3) explains why disclosure of each particular document would be detrimental to agency decision-making. In addition, the largely routine internal agency documents that the government is withholding are not "predecisional" and "deliberative" in the narrow sense necessary to invoke this privilege, a fact clearly shown by many of the government's own descriptions of the documents on its privilege log . . . .

Pl.'s Mot. at 1-2.

The court agrees with plaintiff that the 458 documents over which defendant claims deliberative process privilege protection should be produced. The court need not decide whether these documents meet the legal standards of the privilege by being "pre-decisional" and "deliberative." Jade Trading, 65 Fed. Cl. at 493. Nor is it necessary for the court to "balance the competing interests of the parties," Scott Paper, 943 F. Supp. at 496, to determine whether plaintiff has made "a showing of compelling need [to] overcome the qualified deliberative process privilege," Marriott, 2006 U.S. App. LEXIS 2654, at *15. Instead, the court's conclusion is based on the fact that defendant has failed to meet the procedural requirements for invoking the deliberative process privilege: first, defendant has failed to demonstrate that the privilege was properly invoked by an appropriate official; second, defendant has failed to "supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document[s],"

Walsky, 20 Cl. Ct. at 320; and third, defendant's affidavits supporting its assertions of the deliberative process privilege have been belatedly executed.

1. Whether the Invocation of the Deliberative Process Privilege was Properly Made by an Appropriate Official

Plaintiff first argues in its Motion that "[t]he executive/deliberative process privilege may be upheld only if the head of the relevant agency personally attests that disclosure would be detrimental to agency decision-making." Pl.'s Mot. at 13. Thus, plaintiff asserts, because "it is undisputed that the government has not submitted a single affidavit from an agency head in support of its deliberative process claims," id. at 15, "the government's deliberative process privilege claims with regard to each and every challenged document withheld on these grounds are legally deficient and must be rejected," id. Defendant responds that "the head of the agency is, in fact, entitled to delegate the authority to assert the deliberative process privilege to subordinate employees." Def.'s Resp. at 13. Defendant then explains various delegations and redelegations of authority to assert the deliberative process privilege that took place in this and previous spent nuclear fuel cases. See id. at 21 (explaining delegation from Secretary of Energy ultimately to Mr. Milner, Chief Operating Officer for OCRWM); id. at 25 (explaining delegation from Secretary of Energy ultimately to Mr. Marcinwoski, Deputy Assistant Secretary for Logistics and Waste Disposition Enhancements, Office of Environmental Management); id. at 26 (explaining authority under the Inspector General Act of 1978 for Mr. Friedman, Inspector General for DOE, to assert the deliberative process privilege); id. at 27 (explaining delegation from the Chairman of the NRC to Mr. Virgilio, Deputy Executive Director for Materials, Research, State and Compliance Programs).

Plaintiff posited its argument, and the parties briefed the delegation question extensively, see Pl.'s Mot. at 13-15; Def.'s Resp. at 13-27; Pl.'s Reply at 8-15, before the Federal Circuit issued its February 3, 2006 ruling in Marriott International Resorts, L.P. v. United States. In Marriott, the Federal Circuit held that "an Agency head may delegate the authority to invoke the deliberative process privilege on the Agency's behalf." 2006 U.S. App. LEXIS 2654, at *17. Therefore, the court declines to rule that the various delegations and redelegations of authority to assert the deliberative process privilege made by the government in this and previous spent nuclear fuel cases were per se improper or unauthorized under the law. See Crowley v. United States, 398 F.3d 1329, 1335 (Fed. Cir. 2005) ("[T]he Court of Federal Claims may not deviate from the precedent of the United States Court of Appeals for the Federal Circuit . . . .").

The court notes, however, that the Federal Circuit in Marriott took express notice of the government's "care in the delegation process" in that case. Marriott, 2006 U.S. App. LEXIS 2654, at *16. In Marriott, the Commissioner of the Internal Revenue Service (IRS) "expressly exclud[ed] from [the delegation's] scope the authority to claim the state secrets privilege and establish[ed] detailed criteria for claiming the deliberative process privilege." Id. The court continued:

> In addition, the subordinate selected by the Commissioner, an Assistant Chief Counsel, holds a senior position within the Agency and is responsible for planning, administering and evaluating the Agency's disclosure policies and procedures. Notably, this subordinate is not directly responsible for or involved in substantive tax litigation, including this case. Thus, the Commissioner, in his delegation, provided detailed criteria for invoking the privilege. Moreover he chose a high ranking Agency official with expertise in the nature of the privilege claim and documents at issue. This delegation by the Commissioner was entirely proper . . . .

Id. at **16-17.

Contrary to the "care in the delegation process" described in Marriott, it appears to the court that the various delegations and redelegations of authority on which defendant relies were extremely broad in scope and provided little, if any, "criteria for invoking the privilege." Id. at *17; see, e.g., Def.'s Resp. App. at 54 (delegation from the Secretary of Energy to the Director of OCRWM, delegating the authority, "[o]n a nonexclusive basis, [to] assert the Federal Government's deliberative process privilege with respect to any Environmental Management matters arising under the Under Secretary's cognizance"); id. at 72 (redelegation from the Director of the OCRWM to Mr. Milner, Chief Operating Officer for OCRWM, delegating authority "to assert the deliberative process privilege over documents within the cognizance of the [OCRWM]"); id. at 142 (redelegation from the DOE Under Secretary of Energy to the Assistant Secretary for Environmental Management, delegating authority, "[o]n a nonexclusive basis, [to] assert the Federal Government's deliberative process privilege with respect to any matters arising under his or her cognizance"); id. at 146 (redelegation from the Assistant Secretary for Environmental Management to Mr. Marcinowski, delegating authority "to assert [the] deliberative process privilege over documents specific to [DOE]'s plans for disposition of Greater-Than-Class-C low level radioactive waste within the cognizance of the Office of Environmental Management"). Moreover, it appears that some of the redelegations of authority to assert the deliberative process privilege were provided on the very same day that the delegatee executed his affidavit asserting the privilege. See, e.g., id. at 12 (May 13, 2002 Milner Affidavit); id. at 72 (May 13, 2002 redelegation of authority to assert the

deliberative process privilege from Director of OCRWM to Mr. Milner). This practice does not appear to the court to be consistent with delegation that was "carefully undertaken." See Marriott, 2006 U.S. App. LEXIS 2654, at *16 ("[T]his court concludes that the head of an Agency can, when carefully undertaken, delegate authority to invoke the deliberative process privilege . . . .") (emphasis added); cf. id., at *13 ("Delegated review by a subordinate undoubtedly results in a more thorough, more consistent, and timelier review of potentially privileged documents than personal review by the Agency head."). However, even if the government's various delegations of authority (as distinguished from the general legal authority of an agency head to delegate such authority) could be viewed as proper – and the court does not so view these delegations – the government's invocation of privilege contains two further procedural deficiencies.

2. Whether the Invocation of the Deliberative Process Privilege was Made for Sufficiently "Precise and Certain Reasons"

In its Motion, plaintiff also argues that "the affidavits that have been . . . submitted by the government are further deficient in that none of them set[s] forth the 'precise and certain reasons' for maintaining the confidentiality of the withheld documents." Pl.'s Mot. at 16. Plaintiff states that the affidavits executed in support of defendant's assertion of the deliberative process privilege "do[] nothing to explain how or why disclosure of these documents would harm or inhibit agency decision-making and deliberations and provide[] no basis for making an independent determination into whether each individual withheld document qualifies for protection." Id.[11]

---

[11]The court does not base its conclusion here on an alleged failure by defendant to meet the more general procedural requirement that "the information or documents sought to be shielded must be identified and described." Reino de Espana, 2005 U.S. Dist. LEXIS 15685, at *37 (quoting LNC Invs., 1997 WL 729106, at *2); see also Walsky, 20 Cl. Ct. at 320 (party seeking protection "must state with particularity what information is subject to the privilege"). Defendant's privilege log, Def.'s Resp. App. at 252-262 (Defendant's Privilege Log), as well as the affidavits executed by government officials upon which defendant relies for support of its assertion of the deliberative process privilege, e.g., id. at 1-47 (Milner Affidavits), generally provide sufficient descriptions of the documents defendant attempts to protect from discovery. However, this is not the only procedural requirement relating to the substance of the documents sought to be protected. See, e.g., Walsky, 20 Cl. Ct. at 320; Alaska, 16 Cl. Ct. at 11-12; O'Neill, 619 F.2d at 226; Reino de Espana, 2005 U.S. Dist. LEXIS 15685, at **36-37; see also supra note 9. To the extent that this court has previously so found, the court now respectfully disagrees. Contra Yankee Atomic, 54 Fed. Cl. at 312 ("To the extent that the Government needs to offer 'precise and certain reasons' for invoking the privilege, it has done so by providing descriptions of the documents and averring that continued confidentiality is necessary to assure the free flow
(continued...)

In its Response, defendant argues that many of the "documents in question are deliberative in nature and contain numerous suggestions and deliberations that were not adopted as the agency's position after evaluation and decision by official decision-makers." Def.'s Resp. at 22. According to defendant, "[P]G&E's assertion that . . . the [c]ourt should simply order production of all deliberative budget-related documents that precede the actual budget request decision, over the invocation of the privilege following the considered evaluation and judgment of the official designated representative of the agency head, is incorrect." Id. Defendant contends that the affidavits executed by government officials in support of its assertion of the deliberative process privilege "describe[], with particularity, each of the documents and explain[] the reasons why the confidentiality of the documents must be maintained." Id. at 25, 28.

---

[11](...continued)
of ideas and candid discussions within the agency.") (citations and footnote omitted).

Nor does the court believe it sufficient by itself that the document descriptions relied on by the government define or identify the deliberative process purportedly subject to the privilege. See Walsky, 20 Cl. Ct. at 323 (finding that affidavit that stated that the deliberative process privilege was needed "to preserve the . . . evaluation process" did not "define or identify the deliberative process subject to the privilege"); see also Vaughn v. Rosen, 523 F.2d 1136, 1146 (D.C. Cir. 1975) ("[T]he absence of any assured final decision [i]s indicative of the amorphous nature of the mass of information the Government seeks to protect, i.e., the failure of the affidavits relied on to come to grips with and define what it is out of this mass of documents that the Government considers the 'deliberative process' and thus entitled to protection."), cited in Walsky, 20 Cl. Ct. at 319-323. While it appears to the court that some of the descriptions in the government's affidavits meet this requirement, see, e.g., Def.'s Resp. App. at 39 (2005 Milner Affidavit) ("The document reveals the deliberations within DOE regarding the identification of the rail corridor and the recommendations of OCRWM to the Under Secretary on this issue . . . ."); id. at 137 (Marcinowski Affidavit) ("The document reveals the deliberations of DOE regarding potential plans for disposal of [Greater-Than-Class-C (GTCC)] . . . ."); id. at 191 (Virgilio Affidavit) ("The document reflects, and is part of, the deliberations of the NRC regarding the rulemaking for the storage of GTCC, and comprised part of the process by which the NRC formulated its decision."), it appears that others do not, see id. at 17 (First 2003 Milner Affidavit) (describing documents as "emails and graphs discussing the effect of a potential option for SNF acceptance"); id. at 30 (2005 Milner Affidavit) (describing documents as reflecting "OCRWM's proposed response to the Inspector General's requests").

The court believes that the deliberative process privilege can be invoked only if the proponent of the privilege explains with particularity how or why disclosures of the substance of the documents would harm an identified deliberative function.

Plaintiff replies that "[i]t is only . . . harm, and nothing else concerning this privilege, that can possibly justify withholding relevant evidence from the [c]ourt. . . . The government's brief barely mentions that crucial harm factor . . . , and never describes (nor do the accompanying affidavits) any particular harm that might result from disclosure of any of the . . . documents in question." Pl.'s Reply at 5 (citation omitted). Further, plaintiff argues, "any release of documents here would occur under the existing protective order, a circumstance . . . that . . . the government does not address[] and . . . that will prevent the 'public dissemination' that the government cites as the source of potential harm." Id. at 6. Moreover, plaintiff argues that the "documents challenged here are not in th[e] narrow subcategory of 'deliberative' agency documents, but instead are various routine, everyday drafts and internal documents unrelated to any 'recommendation' or 'advice' on 'program policy' and not of the kind that agency heads rely upon in determining a course of action." Id. at 7 (quotation and ellipse omitted). Plaintiff attacks specifically the government's affidavits executed in support of its assertion of the deliberative process privilege, see id. at 17-25, stating that they "show that the elements of serious harm from disclosure, and of high-level 'decisions' and 'deliberations' of the type this privilege protects, are completely lacking," id. at 17. Finally, plaintiff states that "because the government has not even suggested – much less established – that disclosure of any of the challenged documents would cause any particular harm to agency decision[-]making, there is nothing on the other side of the balance to stand in the way of PG&E's 'need,' and indeed right, to discovery of the evidence it seeks." Id. at 26 (citation omitted). Therefore, according to plaintiff, "the [c]ourt should reject the government's claims of [the] deliberative process privilege in their entirety." Id. at 29.

Defendant relies on a total of eight affidavits executed by government officials to support its assertion of the deliberative process privilege over documents sought by plaintiffs in previous spent nuclear fuel litigations and by plaintiff in this case, or by plaintiff in this case alone. See Def.'s Resp. App. at 1-12 (2002 Milner Affidavit); id. at 13-26 (June 2003 Milner Affidavits); id at 147-49 (Friedman Affidavit); id. at 176-185 (2003 Virgilio Affidavit); id. at 27-47 (2005 Milner Affidavit); id. at 130-141 (Marcinowski Affidavit); id. at 186-193 (2005 Virgilio Affidavit). Each of these affidavits includes a very vague, general and conclusory statement as to why the confidentiality of the listed documents should be maintained. Each such statement is at the beginning of the affidavit and purports to apply to all of the documents listed thereafter. See id. at 1 (2002 Milner Affidavit) ("DOE has a policy of protecting its deliberative processes in order to assure free flow of ideas and candid discussion of alternatives, which are essential to its efficient operation."); id. at 14 (First 2003 Milner Affidavit) ("I have determined that disclosure of any of the deliberative process contents of the documents disclosed in the following list would be injurious to the Federal

Government's decision-making functions because such disclosure would tend to inhibit the frank and candid discussion necessary to effective government. Indeed, disclosure would have a chilling effect on any future budget discussions as well as several related and continuing policy issues at DOE."); id. at 20 (Second 2003 Milner Affidavit) (same); id. at 148 (Friedman Affidavit) ("I have reviewed the contents of the three [DOE Office of Inspector General (OIG)] documents. I have determined that disclosure of any of the deliberative process contents of these OIG documents would impair the OIG's operations by interfering with the flow of predecisional communications within the OIG and the agency. If these types of documents were considered releasable, there could be a 'chilling effect' on the give-and-take necessary for the audit review and analysis process. It is in the public interest to ensure that thought processes, opinions and recommendations are expressed openly within the agency. I have concluded that disclosure of the documents discussed in this declaration would be injurious to the audit process and the operations of the OIG."); id. at 176 (2003 Virgilio Affidavit) (substantially the same); id. at 28 (2005 Milner Affidavit) (substantially the same); id. at 130-31 (Marcinowski Affidavit) (substantially the same); id. at 186-87 (2005 Virgilio Affidavit) (substantially the same). The court finds that such vague, general and conclusory statements – all purporting to apply to many documents but unconnected to any particular document – fail to meet the requirement that defendant "supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document[s]." Walsky, 20 Cl. Ct. at 320.

Several authorities are instructive with regard to proper fulfillment of this procedural requirement for invoking the deliberative process privilege. In National Marine Fisheries Service, the United States District Court for the Western District of Washington directed the defendant to produce for in camera review documents the defendant sought to withhold under the deliberative process privilege. 198 F.R.D. at 545. The court requested the defendant to "designate those portions of the documents it considered privileged and to specifically indicate the basis for applying the privilege to any information so designated." Id. As the court explained, the defendant failed to do so:

> Rather than provide the particularized explanation that the Court requested, [defendant] continued to press a blanket claim of privilege. Blanket assertions of the privilege are insufficient. Without indicating any specific, policy-oriented communication nor proffering any cogent reason for protecting it, the bare assertion that internal agency discussions will be "chilled" is nothing but a legal platitude asserted in the abstract.

Id. (citation omitted).

In Resolution Trust, the United States District Court for the Southern District of New York examined the adequacy of an affidavit supporting the plaintiff's assertion of the deliberative process privilege similar to the affidavits on which defendant relies. See Resolution Trust, 773 F. Supp. at 604. The court stated:

> [Resolution Trust Corporation (RTC)] has failed to meet the requirement that it provide "precise and certain" reasons for its decision to withhold the documents, other than stating a blanket policy of nondisclosure of predecisional, deliberative documents. Indeed, [the head of the agency's] affidavit states:
>
> > The release through discovery of documents protected by the deliberative process privilege would severely harm the RTC's ability to make determinations on controversial issues. If I, or those on whose judgment and input I depend, were to understand that deliberative, decisional documents are to be disclosed, many documents, or at least the view, opinions, recommendations and judgments they contain, would not be created. The RTC and the public would be deprived of the free flow of ideas and proposals to its decision makers on which good government depends.
>
> However, this is merely a paraphrase of the rationale for the deliberative-process privilege described in the case law. As such, it is conclusory. Nowhere does Cooke explain why, particularly, the documents in question here are so sensitive that disclosure would compromise the agency decision-making process to such a degree that the public interest in full disclosure is outweighed.
>
> A "broad, undifferentiated . . . generalized interest in confidentiality," [United States v. ]Nixon, 418 U.S. [683, ]706[ (1974)], is insufficient to assert the deliberative process privilege. RTC does not contend that giving more precise reasons would in any way compromise the confidentiality of the documents.

Id. (citations omitted). Therefore, the court concluded, "the RTC's assertion of the deliberative-process privilege is rejected." Id. at 606.

The same court examined another declaration that purported to support the plaintiff's assertion of the deliberative process privilege. See Reino de Espana, 2005 U.S. Dist. LEXIS 15685, at *40. The declaration provided that

> I [, Martinez, the head of the agency,] have personally reviewed the documents and examined the grounds for the privilege of the documents listed in the [Privilege Log] and I am in agreement with them, and also with the description, subject matter and privilege, as these appear in the said [Privilege Log].

Id. (second and third alterations in original). The court found this declaration to be

> insufficient for Spain to invoke the privilege because it fails to meet the procedural requirements. . . . [The] declaration fails to give precise and certain reasons of how Spain's interest will be impaired by disclosure of the documents. Further, while the Privilege Log identifies and describes the documents sought to be protected, it fails to give precise and certain reasons for asserting confidentiality over the documents. Instead of specifically describing the information that is purportedly privileged, the Privilege Log merely lists scant, uninformative description[s] of the documents, which do not relate the deliberations, if any, to the instant action.

Id. at **40-41 (quotations and citations omitted). Thus, the court denied the plaintiff's assertion of the deliberative process privilege. Id. at *42, *46.

As the courts have found in similar cases, the court finds here that defendant has failed to provide "precise and specific reasons" for maintaining the confidentiality of the documents requested by plaintiff. As in National Marine Fisheries Service, defendant has not "proffer[ed] any cogent reason for protecting" the documents it seeks to withhold. 198 F.R.D. at 545. In addition, just as with the plaintiff's affidavit in Resolution Trust, defendant's affidavits provide "merely a paraphrase of the rationale for the deliberative-process privilege described in the case law." Resolution Trust, 773 F. Supp. at 604. Nowhere do these affidavits provide "'precise and certain' reasons for [the government's] decision to withhold the documents," id., nor do they "explain why, particularly, the documents in question here are so sensitive that disclosure would compromise the agency decision-making process to such a degree that the public interest in full disclosure is outweighed," id.; accord Reino de Espana, 2005 U.S. Dist. LEXIS 14685, at *41 ("[W]hile the Privilege Log identifies and describes the documents sought to be protected, it fails to give precise and certain reasons for asserting the confidentiality over the documents."). Adherence to this requirement ensures that the government official

called upon to examine documents "has inspected the individual documents and determined that the public interest in confidentiality (as distinct from the government's interest in th[e] litigation) outweighs the public interest in disclosure." Resolution Trust, 773 F. Supp. at 603.[12] Defendant has failed to make this required showing.

3. Whether Defendant Timely Asserted its Bases for Invocation of the Deliberative Process Privilege

Plaintiff alleges that the government's affidavits "inherently lack credibility" because "each of them w[as] executed by a subordinate official long after the decision to withhold the documents was made by goverment litigation counsel, and only in response to a motion to compel challenging the propriety of the privilege assertions." Pl.'s Mot. at 16. Moreover, plaintiff argues, even if defendant "can substantiate its deliberative process assertions, the deliberative process privilege . . . must yield [because] the interest in full disclosure outweighs the harm that would occur if the information is disclosed." Id. at 21. Defendant responds that it has properly invoked the deliberative process privilege through appropriate officials, e.g., Def.'s Resp. at 21, and that "PG&E's unsupported representations of 'need,' without any analysis of the testimony and evidence that will be necessary or admissible in these cases, provides no basis for overcoming [the] DOE's and the NRC's invocation of the deliberative process privilege," id. at 28.[13]

---

[12]The court notes that any need the government might have for confidentiality (a need not sufficiently described with "precise and certain reasons") is diminished by the fact that the court has issued a Protective Order in this case stating that "[c]onfidential [m]aterial shall be used by the receiving party solely for the purpose of conducting litigation in the spent nuclear fuel cases pending in the United States Court of Federal Claims and not for any business or other purpose whatsoever." Order of April 21, 2005 at 2.

[13]Defendant also argues that,

> [a]s a result of the [c]ourt's October 18 and 24, 2005 orders, and limitations placed upon PG&E's requests for production of documents in those orders, the Government has identified at least 45 documents, withheld by the Government pursuant to the deliberative process privilege, that relate to those requests and were created after January 22, 2004. . . . In accordance with the rulings in those orders, the[se] documents . . . are not responsive to any pending document request, as narrowed by the [c]ourt, and the [c]ourt should deny PG&E's motion to compel these 45 documents based upon the rationale of its October 18 and 24, 2005 orders [that documents created after January 22, 2004 are not discoverable].

(continued...)

As described above, see supra Part I, each affidavit on which defendant relies was executed subsequent to, and in response to, a motion to compel production of documents withheld under the deliberative process privilege filed after the government had already claimed the deliberative process privilege over the documents in its privilege log. See Pl.'s Mot. at 3-4, 11; Def.'s Resp. at 2-3; Pl.'s Mot. App. at A118-19 (Sept. 12, 2005 letter from plaintiff's counsel to defendant's counsel challenging government's assertion of the deliberative process privilege); Pl.'s Mot. App. at A131-32 (Sept. 21, 2005 letter from government counsel to plaintiff's counsel reiterating government's assertion of the deliberative process privilege). The Yankee plaintiffs first moved this court to compel production of documents claimed by the government as protected by the deliberative process privilege on March 27 and April 3, 2002. Def.'s Resp. at 2. In response, Mr. Milner executed an affidavit to support the government's assertion of deliberative process privilege protection over these documents on May 13, 2002. See Def.'s Resp. App. at 12 (2002 Milner Affidavit). The Yankee plaintiffs again moved this court to compel production of documents claimed by the government as protected by the deliberative process privilege on March 6, 2003. Pl.'s Mot. at 7; Def.'s Resp. at 3-4. In response, four government officials executed five affidavits to support the government's assertion of deliberative process privilege protection over these documents in June of 2003. See Def.'s Resp. App. at 13-18, 19-26 (June 2003 Milner Affidavits); id at 147-149 (Friedman Affidavit); id. at 120-29 (Bubar Affidavit); id. at 176-85 (2003 Virgilio Affidavit). Finally, PG&E filed the Motion before the court on October 7, 2005. In response, three government officials executed affidavits to support defendant's assertion of deliberative process privilege protection over at least 315 documents on or around November 10, 2005. See id. at 27-47 (2005 Milner Affidavit); id. at 130-41 (Marcinowski Affidavit); id. at 186-93 (Virgilio Affidavit).

It logically follows from the foregoing that the government's counsel had already made a determination to claim the deliberative process privilege with respect to these documents without an affidavit from a government official to support or validate such a claim. In fact, several of the affidavits upon which defendant relies state exactly that. See, e.g., Def.'s Resp. App. at 1 (2002 Milner Affidavit) ("In th[e discovery] process,

---

[13](...continued)
Def.'s Resp. at 10-11. The court declines to deny plaintiff's Motion as to any documents on these grounds. Subsequent to the filing of defendant's Response, on December 21, 2005, the court issued an Order stating that "[a]bsent any specific discovery limitations previously ordered by the court and not hereby stricken, the parties shall be able to obtain document discovery without a universal 'cut-off date' limitation and in accordance with the discovery rules of the RCFC." December 21, 2005 Order on Motion for Reconsideration at 3 (footnote omitted). Accordingly, defendant's argument is no longer apposite.

DOE's attorneys have withheld a small number of documents that involve and/or reflect the Department's deliberative processes.") (emphasis added); id. at 13 (First 2003 Milner Affidavit) (same); id. at 19 (Second 2003 Milner Affidavit) (same); id. at 27 (2005 Milner Affidavit) (same); id. at 130 (Marcinowski Affidavit) (same). The court finds the government's practice to be procedurally deficient. See Marriott, 2006 U.S. App. LEXIS 2654, at **16-17 (upholding delegation to Assistant Chief Counsel to invoke the privilege but stating that "[n]otably, this subordinate is not directly responsible for or involved in substantive tax litigation, including this case"); O'Neill, 619 F.2d at 226 ("It has been suggested that it is inappropriate for the privilege to be invoked by attorneys . . . ."); Kaufman, 1999 U.S. Dist. LEXIS 5779, at *10 ("The governmental deliberative process privilege may not be asserted by government counsel.").

The United States District Court for the Southern District of Indiana examined circumstances similar to those in this case in Anderson, 220 F.R.D. at 562. There, the defendant "submitted the affidavit of . . . [the] Section Commander of [its] Internal Affairs Section[] in response to the [plaintiff's] motion to compel." Anderson, 220 F.R.D. at 562. The court found that "the time to make the showing that certain information is privileged is at the time the privilege is asserted, not months later when the matter is before the Court on a motion to compel. . . . Thus, even if [this] affidavit met the requirements that establish a deliberative process privilege, the affidavit arguably comes too late." Id. at 562 n.5 (citing Miller, 141 F.R.D. at 300 ("[T]he party must submit, at the time it files and serves its reponse to the discovery request, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter.") (emphasis supplied in Anderson)); cf. Marriott, 2006 U.S. App. LEXIS 2654, at *3 ("[The] Assistant Chief Counsel . . . invoked the privilege during an exhaustive examination of the voluminous documents at issue.") (emphasis added).

The court agrees with the Southern District of Indiana. As in Anderson, the court finds that the affidavits on which defendant relies for its assertion of the deliberative process privilege "arguably come[] too late." Anderson, 220 F.R.D. at 562 n.2. The submission of post hoc determinations by government officials in response to plaintiff's motion to compel which invoke the privilege while stating that documents that have already been withheld by government counsel are indeed subject to the privilege appears to the court to be procedurally deficient. The rationale for requiring an agency head or official to whom authority has been carefully delegated, rather than government counsel, to "invoke[] the privilege during an exhaustive examination of the voluminous documents at issue," Marriott, 2006 U.S. App. LEXIS 2654, at *3, is to allow those "official[s] with expertise in the nature of the privilege claim and documents at issue," id. at *17, to determine whether the public interest in confidentiality outweighs the public interest in

disclosure. Indeed, the purpose of the deliberative process privilege "is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government," Klamath, 532 U.S. at 8-9 (quoting Sears, Roebuck, 421 U.S. at 151), not to further the litigation strategy of counsel who apparently, as in this case, decide when it will be asserted. The court finds that defendant has not properly invoked the deliberative process privilege such that its application to the 458 documents at issue is justified in this case.

III. Conclusion

For the foregoing reasons, plaintiff's Motion is GRANTED. Defendant shall produce the 458 documents at issue to plaintiff. The parties are invited to contact the court at any time when it appears that the involvement of the court may assist in securing "the just, speedy, and inexpensive determination of [this] action." RCFC 1.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge