No. 04-0074C,
into which has been consolidated No. 04-0075C
(Judge Hewitt)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT’S ORDER DATED MARCH 14, 2006

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 353-0897
Facsimile: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

JOSHUA E. GARDNER
SCOTT R. DAMELIN
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20585

March 21, 2006

# TABLE OF CONTENTS

PAGE

SUMMARY OF ARGUMENT . . . . . 1

ARGUMENT . . . . . 3

I. THIS COURT POSSESSES INHERENT AUTHORITY TO REVISIT ITS OWN DECISIONS PRIOR TO FINAL JUDGMENT . . . . . 3

II. THIS COURT'S FINDING THAT THE GOVERNMENT MUST PRODUCE AFFIDAVITS FORMALLY INVOKING THE DELIBERATIVE PROCESS PRIVILEGE WHEN IT PRODUCES A PRIVILEGE LOG CONFLICTS WITH LONG-STANDING PRECEDENT . . . . . 6

A. Numerous Courts, Including This One, Have Previously Held That Affidavits Formally Invoking The Deliberative Process Privilege May Accompany A Response To A Motion To Compel . . . . . 6

B. The Affiants Whose Affidavits Were Provided To The Court, Rather Than Government Attorneys, Invoked The Deliberative Process Privilege In This Case . . . . . 14

III. TO THE EXTENT THAT THE COURT REAFFIRMS ITS FINDING THAT THE AGENCY OFFICIALS' AFFIDAVITS DO NOT PROVIDE SUFFICIENTLY PRECISE AND CERTAIN REASONS FOR THE PRIVILEGE, THE COURT SHOULD PROVIDE THE GOVERNMENT AN OPPORTUNITY TO CORRECT THAT DEFECT . . . . . 17

IV. THE COURT'S DECISION INVALIDATING THE HEADS OF AGENCIES' DELEGATIONS OF AUTHORITY IS INCONSISTENT WITH FEDERAL CIRCUIT PRECEDENT AND, FURTHER, PROVIDES NO GUIDELINES TO THE GOVERNMENT TO FOLLOW . . . . . 22

V. AT THE VERY LEAST, THE COURT SHOULD MODIFY ITS ORDER THAT THE GOVERNMENT PRODUCE 92 DOCUMENTS FOR WHICH OTHER PRIVILEGES, IN ADDITION TO THE DELIBERATIVE PROCESS PRIVILEGE, WERE ASSERTED AND NOT CHALLENGED . . . . . 27

CONCLUSION . . . . . 28

# TABLE OF AUTHORITIES

CASES PAGE(S)

Abramson v. United States,
39 Fed. Cl. 290 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Anchor Savings Bank FSB v. United States,
63 Fed. Cl. 6 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Anderson v. Marion County Sheriff's Department,
220 F.R.D. 555 (S.D. Ind. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Bishop v. United States,
26 Fed. Cl. 281 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Chui v. United States,
948 F.2d 711 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cobell v. Norton,
213 F.R.D. 1 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Export-Import Bank of the United States v. Asia Pulp & Paper Co.,
232 F.R.D. 103 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Exxon Corp. v. United States,
931 F.2d 874 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ferrell v. United States Department of Health & Human Services,
177 F.R.D. 425 (N.D. Ill. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Florida Power & Light Co. v. United States,
66 Fed. Cl. 93 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Fru-Con Constr. Corp. v. United States,
44 Fed. Cl. 298 (1999), aff'd, 250 F.3d 762 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 5

Greenpeace v. National Marine Fisheries Service,
198 F.R.D. 540 (W.D. Wash. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

Henderson County Drainage District No. 3 v. United States,
55 Fed. Cl. 334 (2003) . . . . . . . . . . 5

Herald Association, Inc. v. Dean,
816 A.2d 469 (Vt. 2002) . . . . . . . . . . 21

Iraheta v. United of Omaha Life Ins. Co.,
No. 2004-794, 2005 WL 701070 (D. Md. Mar. 28, 2005) . . . . . . . . . . 4

Jamesbury Corp. v. Litton Industrial. Products, Inc.,
839 F.2d 1544 (Fed. Cir.), cert. denied, 488 U.S. 828 (1988) . . . . . . . . . . 3, 4

Kerr v. United States District Court for the Northern District of California,
426 U.S. 394 (1976) . . . . . . . . . . 13, 20, 21

Kerr v. United States District Court for the Northern District of California,
511 F.2d 192 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976) . . . . . . . . . . 12

Marriott International Resorts, L.P. v. United States,
437 F.3d 1302 (Fed. Cir. 2006) . . . . . . . . . . 22, 23

Miller v. Pancucci,
141 F.R.D. 292 (C.D. Cal. 1992) . . . . . . . . . . 10, 11, 12

National Institute of Military Justice v. United States Department of Defense,
404 F. Supp. 2d 325 (D.D.C. 2005) . . . . . . . . . . 10

Reino de Espana v. American Bureau of Shipping,
No. 03-Civ-3573, 2005 WL 1813017 (S.D.N.Y. Aug. 1, 2005) . . . . . . . . . . 19, 20

Resolution Trust Corp. v. Diamond,
137 F.R.D. 634 (S.D.N.Y. 1991) . . . . . . . . . . 20

Resolution Trust Corp. v. Diamond,
773 F. Supp. 597 (S.D.N.Y. 1991) . . . . . . . . . . 19, 20

In re Sealed Case,
121 F.3d 729 (D.C. Cir. 1997) . . . . . . . . . . 7, 8, 11, 20

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

Securities & Exchange Commission v. Downe,
No. 92-Civ-4092, 1994 WL 23141 (S.D.N.Y. 1994) . . . . . . . . . . 10

Tri-State Hosp. Supply Corp. v. United States,
226 F.R.D. 118 (D.D.C. 2005) . . . . . . . . . . 10

Tuite v. Henry,
98 F.3d 1411 (D.C. Cir. 1996) . . . . . . . . . . 17

United States Department of Energy v. Brett,
659 F.2d 154 (Temp. Emer. Ct. App. 1981) . . . . . . . . . . 9

United States v. Board of Education of City of Chicago,
610 F. Supp. 695 (N.D. Ill. 1985) . . . . . . . . . . 10

United States v. Reynolds,
345 U.S. 1 (1953) . . . . . . . . . . 8, 9, 17

Wolfchild v. United States,
68 Fed. Cl. 779 (2005) . . . . . . . . . . 6

Yankee Atomic Electric Co. v. United States,
54 Fed. Cl. 306 (2002) . . . . . . . . . . 16, 18, 22, 27

STATUTES, REGULATIONS, AND RULES

5 U.S.C. App. 3 . . . . . . . . . . 18, 23

42 U.S.C. § 7252 . . . . . . . . . . 26

10 C.F.R. § 961.11 . . . . . . . . . . 24

Fed. R. Civ. P. 26 . . . . . . . . . . 11

Fed. R. Civ. P. 45 . . . . . . . . . . 7, 8, 11

Fed. R. Civ. P. 54 . . . . . . . . . . 4

Fed. R. Civ. P. 59 . . . . . . . . . . 4, 5, 6

TABLE OF AUTHORITIES (cont'd)

MISCELLANEOUS PAGE(S)

Black's Law Dictionary 867 (5th ed. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

INDEX TO ATTACHMENTS

ATTACHMENT A: Delegation of authority to invoke deliberative process privilege at issue in Marriott International Resorts, L.P. v. United States, 437 F.3d 1302 (Fed. Cir. 2006)

ATTACMENT B: Documents subject to the Court's March 14, 2006 order over which the Government had also asserted other privileges

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 04-0074C, into which has been consolidated No. 04-0075C (Judge Hewitt) |

DEFENDANT'S MOTION FOR RECONSIDERATION
OF THE COURT'S ORDER DATED MARCH 14, 2006

Defendant, the United States, respectfully requests that the Court reconsider its order, dated March 14, 2006, granting plaintiff's motion to compel the production of documents subject to claims of deliberative process privilege.

SUMMARY OF ARGUMENT

This Court's March 14, 2006 decision that the Government has not established a prima facie case for invoking the deliberative process privilege, and that it has not met the technical requirements for invoking that privilege, creates new law that, in several instances, directly conflicts with the weight of authority from this and other courts. In essence, the Court rejected the Government's effort to invoke the deliberative process privilege based upon its belief that (1) the delegations of authority from the Secretary of Energy and the Chairman of the Nuclear Regulatory Commission ("NRC") were not sufficiently "carefully undertaken;" (2) the affidavits supporting the privilege did not provide sufficiently "precise and certain reasons"for maintaining the confidentiality of the documents at issue; and (3) the Government essentially waived the privilege by not providing the plaintiff, Pacific Gas & Electric Company ("PG&E"), or plaintiffs in earlier-filed cases with affidavits supporting the privilege at the same time that the

Government produced its privilege logs. Further, even though PG&E did not challenge the Government's additional privilege assertions under the attorney-client privilege and work product doctrine on 92 of the 458 documents at issue, see PG&E Motion, at 13 n.2,[1] this Court has ordered us to produce all of the identified 458 documents.

This Court's decision, which has a potentially devastating effect upon the Government's ability to assert the deliberative process privilege in any case, is incorrect for several reasons. With regard to the Court's finding that the Government essentially waived the deliberative process privilege by not providing affidavits when it originally produced its privilege logs, the Court's decision is in direct conflict with the weight of authority on that issue. With regard to the Court's findings that the Government's delegations were not sufficiently careful and that the supporting affidavits did not provide sufficiently "precise and certain reasons" for non-disclosure, the Court's analysis, with which we respectfully disagree, establishes no guidelines by which the Government, in this or future cases, could identify the Court's standards for the invocation of this privilege. Further, particularly in light of the fact that this Court, in two prior spent nuclear fuel ("SNF") cases, upheld the Government's assertion of the deliberative process privilege over some of the same documents at issue here on the basis of the same affidavits, with the same delegations and same explanations of harm, this Court's order for immediate production of all documents, without any opportunity to correct the technical defects that the Court found and without any opportunity for in camera review, is unwarranted.

[1] "PG&E Motion, at ___" refers to the motion to compel that PG&E filed on October 19, 2006. "Def. App. ___" refers to the appendix to the Government's response to that motion, filed on November 23, 2005. "Attachment ___" refers to the attachments to this motion for reconsideration. "Order, at ___" refers to this Court's order dated March 14, 2006.

We respectfully request that the Court reconsider these findings, based upon the court decisions discussed below, and find that the Government has, in fact, properly invoked the deliberative process privilege. To the extent that the Court does not reconsider those findings, we respectfully request that the Court supplement its opinion to identify guidelines for us to follow in creating appropriate delegations of authority and affidavits and, further, provide us with an opportunity to correct the technical deficiencies that the Court has identified. In any event, we request that the Court modify its order to allow the Government to continue to withhold those 92 documents over which the Government, in addition to invoking the deliberative process privilege, asserted attorney-client and/or work product protections that PG&E has not challenged.

## ARGUMENT

### I. THIS COURT POSSESSES INHERENT AUTHORITY TO REVISIT ITS OWN DECISIONS PRIOR TO FINAL JUDGMENT

As the United States Court of Appeals for the Federal Circuit has recognized, this Court possesses the inherent authority to revisit its own decisions prior to entry of final judgment:

> The law of the case doctrine is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts. The doctrine requires a court to follow the decision on a question made previously during the case . . . . When a judgment of a trial court has been appealed, the decision of the appellate court determines the law of the case, and the trial court cannot depart from it on remand . . . . Orderly and efficient case administration suggests that questions once decided not be subject to continued argument, but the court has the power to reconsider its decisions until a judgment is entered.

Exxon Corp. v. United States, 931 F.2d 874, 877 (Fed. Cir. 1991) (emphasis added) (quoting Jamesbury Corp. v. Litton Indus. Prod., Inc., 839 F.2d 1544 (Fed. Cir.), cert. denied, 488 U.S.

828 (1988)). Because the law of the case "merely requires a trial court to follow rulings of an appellate court," it "does *not* constrain the trial court with respect to issues not actually considered by an appellate court . . . ." Id. (emphasis in original). Accordingly, the trial judge "always has the power to change a ruling; further reflection may allow a better informed ruling in accordance with the conscience of the court." Jamesbury, 839 F.2d at 1551; see Chui v. United States, 948 F.2d 711, 717 (Fed. Cir. 1991).

This Court's discretion to amend its prior orders prior to a final judgment is not altered by the fact that, in this Court, motions for reconsideration in this Court are governed by RCFC 59. This Court's Rule 59 differs from Rule 59 of the Federal Rules of Civil Procedure ("FRCP"). FRCP 59 applies only to requests for new trials and motions to alter or amend a previously issued judgment. However, this Court modified the standard FRCP 59 in formulating its own rules, making Rule 59 applicable not only to motions for new trials and to amend judgments but also to motions for rehearing and for reconsideration. See RCFC 59. Although FRCP 59 does not apply to motions for reconsideration of interlocutory orders, see Iraheta v. United of Omaha Life Ins. Co., No. 2004-794, 2005 WL 701070, at *1 (D. Md. Mar. 28, 2005), this Court modified Rule 59 to include motions for reconsideration of interlocutory orders. See, e.g., Florida Power & Light Co. v. United States, 66 Fed. Cl. 93, 95-97 (2005) (discussing differences between FRCP 59 and RCFC 59); Anchor Savings Bank FSB v. United States, 63 Fed. Cl. 6, 7 (2004) (reviewing motion for reconsideration of interlocutory order pursuant to RCFC 59). Nevertheless, this Court's rules also incorporate portions of FRCP 54, including that portion of the rule providing that "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . .

is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." RCFC 54(b).

Generally, a motion for reconsideration of a final judgment under RCFC 59 "must be based 'upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.'" Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999) (quoting Bishop v. United States, 26 Cl. Ct. 281, 286 (1992)) (emphasis added), aff'd, 250 F.3d 762 (Fed. Cir. 2000). A "manifest" error is an error that is "[e]vident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evident, and self-evident." Black's Law Dictionary 867 (5th ed. 1979) (defining "manifest"). Generally, to meet this requirement, "the movant must show: (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice." Henderson County Drainage Dist. No. 3 v. United States, 55 Fed. Cl. 334, 337 (2003).

However, as this Court recently recognized in Florida Power & Light Co. v. United States, 66 Fed. Cl. 93 (2005), this standard should not apply to motions for reconsideration of non-final orders. The Court in Florida Power considered the fact that this Court, in its rules, had added motions for reconsideration to RCFC 59 and that, "[o]n occasion, . . . judges of this Court have applied these stricter standards" of FRCP 59 "to non-final, interlocutory orders," but the Court ultimately determined that the application to motions for reconsideration of the stricter standard applicable to final orders "blurs the distinction between final and interlocutory orders." Id. at 96. It found that, because "[c]ourts possess inherent power to modify their interlocutory

orders before entering a final judgment," the standards required for reconsideration of a final judgment under RCFC 59 should not apply to reconsideration of a non-final order. Id. at 96-97. It found that "[t]o apply final order review standards to non-final orders would undermine both the common law and RCFC 54 which explicitly states that non-final orders may be revisited at any time." Id. at 97; see Wolfchild v. United States, 68 Fed. Cl. 779, 784 (2005).

## II. THIS COURT'S FINDING THAT THE GOVERNMENT MUST PRODUCE AFFIDAVITS FORMALLY INVOKING THE DELIBERATIVE PROCESS PRIVILEGE WHEN IT PRODUCES A PRIVILEGE LOG CONFLICTS WITH LONG-STANDING PRECEDENT

### A. Numerous Courts, Including This One, Have Previously Held That Affidavits Formally Invoking The Deliberative Process Privilege May Accompany A Response To A Motion To Compel

As one of the three bases in its March 14, 2006 order for finding that the Government failed to establish the prerequisites for invoking the deliberative process privilege, this Court found that (1) the Government did not obtain affidavits from a Government official to support or validate a deliberative process privilege claim until after it had produced a privilege log and (2) the Government's attorneys, given the absence of an affidavit from an agency official, improperly invoked the deliberative process privilege when the privilege log was produced. Order, at 10-11 & 21-24. Although PG&E identified in its motion to compel that the Government's affidavits did not accompany the original privilege logs that were produced in the coordinated discovery proceedings that preceded PG&E's lawsuit or the additional privilege logs that were provided to PG&E, PG&E did not raise in its motion to compel any argument that these facts, in and of themselves, constituted a waiver of the deliberative process privilege. Accordingly, this legal issue was not addressed in the parties' briefing. For this reason,

reconsideration of this legal issue here is warranted, particularly because this Court's decision conflicts with the overwhelming majority of decisions on this issue from this and other courts.

In In re Sealed Case, 121 F.3d 729 (D.C. Cir. 1997), the United States Court of Appeals for the District of Columbia Circuit rejected the argument that the Court has adopted in this case. In Sealed Case, a grand jury sought documents from the White House concerning the White House counsel's investigation of the official who was the subject of the grand jury investigation. The White House relied upon two executive privileges, the privilege for presidential communications and the deliberative process privilege, in declining to produce documents, originally providing in response to the subpoena a privilege log identifying "the date, author, and recipient of each document withheld as well as a general statement of the nature of each document and the basis for the privilege on which the document was withheld." Id. at 735. That privilege log identified 84 documents as being withheld "on grounds of the deliberative process privilege," with a later draft of the log identifying all 84 documents as subject to the "executive/deliberative privilege." Id. Several months later, the Office of Independent Counsel ("OIC") filed a motion to compel production of the withheld documents. Id. The White House subsequently submitted the documents for in camera review, along with an "ex parte cover sheet that explained the purpose of [each] document." Id. at 735-36.

In response to the OIC's argument that the White House had waived its claim of privilege by not formally invoking them in advance of the motion to compel, the D.C. Circuit held that Federal Rule of Civil Procedure 45 did not mandate formal invocation of the privilege, through supporting materials, until a response to a motion to compel:

> Nor did the White House have an obligation to formally invoke its privileges in advance of the motion to compel. In its response to

> the subpoena, the White House informed the OIC that it believed the withheld documents were privileged, thus satisfying Rule 45(c)(2)(B) and Rule 45(d)(2) of the Federal Rules of Civil Procedure, which together require that "a party objecting to a subpoena on the basis of privilege must both (1) object to the subpoena and (2) state the claim of privilege within [the stipulated period]." The motion to compel was the first event which could have forced disclosure of the documents. Since the OIC was clearly aware in advance of the motion to compel that the White House likely would be asserting privilege, it was not prejudiced by any alleged delay in the White House's formally invoking its privileges.

Id. at 741 (citations omitted). Because the language of RCFC 26(b)(5), which relates to a party's assertion of privilege, is substantially similar to the language of RCFC 45(d)(2), which relates to a third party's assertion of privilege, the same rationale should apply here.[2]

The United States Supreme Court has also suggested that a formal declaration of executive privilege need not be made at the exact moment that a privilege log is first provided to a requesting party. In United States v. Reynolds, 345 U.S. 1 (1953), the district court had initially granted a motion to compel the production of certain documents relating to the plaintiffs' claims, but had then received a letter from the Secretary of the Air Force stating that "it has been determined that it would not be in the public interest to furnish" a particular report.

---

[2] Although the privilege claims in our case are governed by RCFC 26 (relating to privilege claims by a party), rather than RCFC 45 (relating to privilege claims by a third party), that distinction does not alter the analysis regarding the timing of formal invocation of the privilege. Under RCFC 45(d)(2), when information subject to a subpoena "is withheld on a claim that it is privileged . . ., the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Under RCFC 26(b)(5), when a party "withholds information otherwise discoverable under these rules by claiming that it is privileged . . ., the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

See id. at 4 (discussing factual background). The district court allowed rehearing on the earlier order, and, during the rehearing, the Secretary filed a formal "Claim of Privilege," invoking executive privilege over the document. Although the district court found that there was no valid claim of privilege, the Supreme Court reversed and, with regard to the timing of the Secretary's invocation of the privilege through a formal "Claim of Privilege," indicated that the Secretary's delay in formally invoking the privilege until the rehearing proceedings did not somehow waive the executive privilege:

> Of course, even with this information before him, the trial judge was in no position to decide that the report was privileged until there had been a formal claim of privilege. Thus it was entirely proper to rule initially that petitioner had shown probable cause for discovery of the documents. Thereafter, when the formal claim of privilege was filed by the Secretary of the Air Force, under circumstances indicating a reasonable possibility that military secrets were involved, there was certainly a sufficient showing of privilege to cut off further demand for the document on the showing of necessity for its compulsion that had then been made.

Id. at 10-11 (emphasis added).

Numerous other courts, including this one, have also found that the formal invocation of deliberative process privilege, either through affidavits or other information supportive of the privilege claim, need not be generated until after a motion to compel has been filed challenging the Government's identification of that privilege. See, e.g., Abramson v. United States, 39 Fed. Cl. 290, 294 (1997) ("procedural requirements" for invoking deliberative process privilege "generally are satisfied through the production of a declaration or affidavit by the agency head, and produced in response to a motion to compel" (emphasis added)); United States Dep't of Energy v. Brett, 659 F.2d 154, 155 (Temp. Emer. Ct. App. 1981) (finding that agency's submission of "a detailed and specific justifications of its claims of [deliberative process]

privilege in its counsels' lengthy submissions" prior to third discovery hearing before court was "timely"); Tri-State Hosp. Supply Corp. v. United States, 226 F.R.D. 118, 134 n.13 (D.D.C. 2005) (finding that "the government had no obligation to formally invoke the [deliberative process] privilege in advance of the motion to compel" and recognizing appropriateness of submitting affidavits explaining basis for privilege as attachment to opposition to motion to compel); United States v. Board of Education of City of Chicago, 610 F. Supp. 695, 698 (N.D. Ill. 1985) ("Although not doing so when he first claimed the [deliberative process] privilege, the Secretary himself has now formally invoked the privilege by an affidavit which states that he has personally considered the problem. Thus, the first part of the threshold step is met."); see also Securities & Exch. Comm'n v. Downe, No. 92-Civ-4092, 1994 WL 23141, at *5 (S.D.N.Y. 1994) (in invoking investigative files privilege, "Commission has met its obligations for the purposes of responding to the instant motion to compel by submitting an affidavit with its motion papers" and was not required to provide affidavit "prior to formal motion practice"); National Inst. of Military Justice v. United States Dep't of Defense, 404 F. Supp. 2d 325, 348 (D.D.C. 2005) (in the context of FOIA deliberative process privilege assertion, declaration filed after the submission of a Vaughn index was sufficient to invoke the privilege).

In support of its conclusion that the Government's affidavits supporting the deliberative process privilege must be produced with the original privilege log, rather than in response to a motion to compel, this Court in its March 14, 2006 order relies upon decisions by two different magistrate judges, Anderson v. Marion County Sheriff's Department, 220 F.R.D. 555 (S.D. Ind. 2004), and Miller v. Pancucci, 141 F.R.D. 292 (C.D. Cal. 1992). See Order, at 10-11 & 21-24. In Anderson, a magistrate judge originally found that (1) the Government cannot claim as

subject to the deliberative process privilege in a Title VII lawsuit documents that describe the reasons for the employment action at issue and (2) the documents at issue were routine in nature and were not related to the formulation of public policy. Id. at 560-61. However, in rendering an alternative rationale for rejecting the Government's privilege claims, the magistrate judge, in dicta, relied on his interpretation of FRCP 26(b)(5) and upon another magistrate judge's decision in Miller to find that an affidavit from the Government official, which did not accompany the original privilege log, "arguably comes too late" because "the time to make the showing that certain information is privileged is at the time the privilege is asserted, not months later when the matter is before the Court on a motion to compel." Id. at 562 n.5. The magistrate judge's dicta in Anderson is simply incorrect.

First, with regard to FRCP 26(b)(5), nothing in the language of that rule mandates that privilege logs be accompanied by affidavits formally invoking the deliberative process privilege or places the Government on notice that an affidavit is required at that stage of the discovery process. As the D.C. Circuit found in In re Sealed Case, 121 F.3d 729 (D.C. Cir. 1997), in interpreting similar language in FRCP 45(d)(2), a "motion to compel [is] the first event which could have forced disclosure of the documents," and, "[s]ince the [requesting party] was clearly aware in advance of the motion to compel that the [Government] likely would be asserting privilege, it was not prejudiced by any alleged delay in the [Government's] formally invoking its privileges." Id. at 741.

Similarly, the magistrate judge's reliance in Anderson on another magistrate judge's decision in Miller v. Pancucci, 141 F.R.D. 292 (C.D. Cal. 1992), is equally misplaced. In Miller, the magistrate judge held in the context of a Title VII lawsuit, relying solely upon the United

States Court of Appeals for the Ninth Circuit's decision in Kerr v. United States District Court for the Northern District of California, 511 F.2d 192 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976), that the party asserting the deliberative process privilege "must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter." Miller, 141 F.R.D. at 300. However, the Ninth Circuit's decision in Kerr contains no discussion of any requirement for an affidavit, let alone a discussion of the timing of such an affidavit. In Kerr, the Ninth Circuit considered whether the California Adult Authority, a state agency, could properly invoke "the common law governmental privilege" in the context of a civil rights action in which prisoners sought personnel files. The Ninth Circuit rejected the state agency's petition for writ of mandamus, explaining that "[n]either the Chairman of the Authority nor the Director of Corrections nor any official of these agencies asserted, in person or in writing, any privilege in the district court." Id. at 198. However, the Ninth Circuit found that, "[s]ince there may be information in the requested documents which should be protected," despite the agency's failure to provide proper support for it to that point in time, "the petitioners may assert a privilege to a particular document or class of documents, and perhaps seek *in camera* inspection, at the time the documents are discovered in the district court." Id. at 198-99. The Ninth Circuit's decision in Kerr was subsequently reviewed by the Supreme Court, which, in its decision affirming the Ninth Circuit's denial of the writ of mandamus there, found that mandamus was not appropriate where the appellate court had left open the possibility for petitioners to reassert the privilege before the district court more specifically through responsible officials and return to the district court for further review:

> Its denial of the writ was based largely on the grounds that the governmental privilege had not been asserted personally by anyone eligible to assert it, and that it had not been asserted with the requisite specificity. <u>The court apparently left open the opportunity for petitioners to return to the District Court, assert the privilege more specifically and through responsible officials, and then have their request for an [i]n camera review of the materials by the District Court reconsidered in a different light</u>.

<u>Kerr v. United States Dist. Ct. for the N. Dist. of Calif.</u>, 426 U.S. 394, 404 (1976) (emphasis added). The Supreme Court found that the Ninth Circuit had "provid[ed] petitioners an avenue far short of mandamus to achieve precisely the relief they seek." <u>Id.</u>

The Court's decision to require affidavits formally invoking the deliberative process privilege at the time that privilege logs are produced is directly contrary to the weight of authority and has no support in any prior decision in this circuit. Further, this Court's decision ignores the public policy reasons for requiring action by high-level agency officials only when a privilege issue is actually litigated. Parties in litigation are usually able to come to agreement upon claims of privilege among themselves, without the need to seek court intervention and thereby intrude upon the daily responsibilities of high-level Government officials who have enormous demands upon their time in attending to the people's business. Most claims of privilege in response to discovery are never challenged at all – perhaps because the validity of the claim acknowledged. And, where the parties do disagree as to the validity of a privilege claim, most disputes are resolved consensually, without need for the Court's involvement. Requiring sworn declarations in all of these cases has proven entirely unnecessary to date and a change in that procedure now would create an extraordinary – and completely unnecessary – demand on the scarce time of public officials. It would, in essence, give counsel in any case the ability to command the potentially needless expenditure of the limited time of very high-level

Government officials every time they make a discovery demand that implicates deliberative process issues, to the detriment of the public. In addition to awaiting the possibility that there will ultimately be no discovery dispute and the possibility that any discovery dispute will be resolved amicably, the public, at the very least, is entitled to a motion filed by opposing counsel under the strictures of RCFC 11 before scarce Government resources are devoted to such matters.

In any event, to the extent that the Court continues to adhere to the view expressed in its March 14, 2006 order, that decision should not be applied retroactively. As will be discussed below, the Government should have an opportunity to correct any deficiencies in the technical aspects of its privilege invocation. Nevertheless, the Court should revisit its decision upon this issue and follow the weight of authority permitting the affidavits formally invoking the deliberative process privilege to be generated in response to a motion to compel.

### B. The Affiants Whose Affidavits Were Provided To The Court, Rather Than Government Attorneys, Invoked The Deliberative Process Privilege In This Case

In its March 14, 2006 order, this Court suggests that the Government's attorneys, rather than appropriate agency officials, invoked the deliberative process privilege. Order, at 22 ("It logically follows from the foregoing that the government's counsel had already made a determination to claim the deliberative process privilege with respect to these documents without an affidavit from a government official or validate such a claim"). In light of the prior discussion, no formal invocation of the privilege with an affidavit is necessary before a motion to compel is filed. Accordingly, with all due respect, the premise of the Court's belief is in error.

In any event, the record contains no evidence that Government counsel, rather than the appropriate agency, made the decision to invoke the privilege. Although Government counsel certainly was involved in assisting with the organization of documents produced by the agencies and withheld documents from production based upon the deliberative process privilege at the agencies' request, counsel did not make any determinations that the deliberative process privilege should be invoked with regard to any particular document or category of documents. Those decisions were made by the agency, with assistance in organizing documents from the Department of Justice, and the privilege was eventually invoked in a declaration after personal consideration and review by the authorized Government officials. It is these declarations by the individuals authorized to invoke the privilege that form the basis of the Government's privilege claims.

To the extent that the Court is suggesting that these individuals were somehow tainted by Government counsel so that these agency officials could not make their own decisions regarding these documents, that supposition is unfounded and, in any event, is unsupported by the record in this case. Many activities have to occur in the process of obtaining the appropriate authority to invoke the deliberative process privilege, and the timing of those activities often overlap. As the Court noted in its March 14, 2006 order, in some instances, delegations of authority were executed by the head of the agency on the same day as the declaration by the agency official to whom authority was delegated was issued. However, that fact does not mean that the appropriate agency officials were not knowledgeable or did not provide guidance prior to the official delegation or that Government counsel somehow usurped the process. In Ferrell v. HHS,

177 F.R.D. 425 (N.D. Ill. 1998), the district court rejected a requesting party's request for an adverse inference upon similar facts:

> Plaintiffs contest whether Mr. Retsinas performed a legitimate, independent review and analysis of the documents – as opposed to merely "rubber-stamping" conclusions previously made by HUD's counsel – because the Secretary of HUD signed the letter delegating Mr. Retsinas with the duty of invoking the deliberative process privilege on the same day that Mr. Retsinas signed his declaration setting forth his analysis of such review. Although the official letter delegating Mr. Retsinas the power to assert the privilege bears the same date as the declaration, there is no evidence that Mr. Retsinas could not or did not begin his review prior to that day. Absent additional proof that Mr. Retsinas did not perform the necessary review, Plaintiffs' objection based solely on the timing of the declaration cannot be accepted.

Id. at 428 n.4. Government employees are presumed to act in good faith in performing their duties, see Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002), and there is no evidence in the record here of any bad faith by the Government in invoking these privileges.[3]

---

[3] Further, applying the Court's rationale, those affidavits that existed before PG&E had filed this case cannot have been provided to PG&E too late. In its March 14, 2006 order, this Court recognizes in several instances that PG&E is not bound by the Court's prior decisions in the coordinated discovery proceedings or in the Yankee Atomic litigation because it was not a party to those proceedings and had not even filed its complaint in this Court at that point in time. Yet, the Court also finds that, because the Government provided other SNF plaintiffs in those earlier proceedings with a privilege log before it provided them with affidavits formally invoking the deliberative process privilege, the Government's invocation of the deliberative process privilege – invoked with affidavits before PG&E filed its complaint here – was deficient. However, as it relates to PG&E, PG&E had access to the Government's declarations supporting the earlier deliberative process privilege claims from the outset of this litigation. Assuming that the Court upholds its prior finding that the Government must provide affidavits with its privilege log, PG&E should not be able to claim that, for those deliberative process privilege claims for which it had supporting affidavits at the outset of this litigation, those affidavits were somehow too late as they apply to PG&E.

## III. TO THE EXTENT THAT THE COURT REAFFIRMS ITS FINDING THAT THE AGENCY OFFICIALS' AFFIDAVITS DO NOT PROVIDE SUFFICIENTLY PRECISE AND CERTAIN REASONS FOR THE PRIVILEGE, THE COURT SHOULD PROVIDE THE GOVERNMENT AN OPPORTUNITY TO CORRECT THAT DEFECT

In its March 14, 2006 order, the Court criticized the Government officials' affidavits as not containing sufficiently precise and certain reasons to invoke the deliberative process privilege. However, it is unclear to us what more the affiants, outside the context of an in camera inspection with ex parte affidavits, could state without disclosing the content of the deliberations that they seek to protect. In making a determination regarding executive privilege, the Court must "do so without forcing a disclosure of the very thing the privilege is designed to protect." Reynolds, 345 U.S. at 8. As the Supreme Court has recognized, "[t]oo much judicial inquiry into the claim of privilege would force disclosure of the thing the privilege was meant to protect, while a complete abandonment of judicial control would lead to intolerable abuses." Id. (comparing executive privilege with privilege against self-incrimination). As articulated by the D.C. Circuit, in invoking the deliberative process privilege, the Government must provide to the Court, in addition to a "formal claim or privilege by" an appropriate agency official and an "assertion of the privilege based on actual personal consideration by that official," "a detailed specification of the information for which the privilege is claimed with an explanation why it properly falls within the scope of the privilege." Tuite v. Henry, 98 F.3d 1411, 1417 (D.C. Cir. 1996). In its March 14, 2006 order, this Court described this requirement as mandating identification of "precise and certain reasons" for maintaining the confidentiality of the documents at issue. Order, at 10 & n.9.

Recognizing that it was disagreeing with this Court's prior decision in Yankee Atomic Electric Co. v. United States, 54 Fed. Cl. 306 (2002), the Court subsequently determined that the affidavits from the high-level agency officials submitted in this case did not provide sufficient information regarding the harm that would result from disclosure to meet the procedural requirements for invoking the deliberative process privilege. Order, at 15 n.11 & 17. It found that each of the affidavits contains only a "very vague, general and conclusory statement as to why the confidentiality of the listed documents should be maintained." Order, at 17. Yet, the affidavits provided as much information as possible without actually disclosing the contents of the deliberations. For example, Gregory H. Friedman, the Inspector General for the United States Department of Energy, pursuant to his authority under the Inspector General Act of 1978, 5 U.S.C. App. 3, averred that he personally reviewed the three documents identified in his declaration, described the documents, and, based upon his consideration of those documents, provided his analysis of the harm that would result if they were released:

> I have reviewed the contents of the three [Office of Inspector General ("OIG")] documents. I have determined that disclosure of any of the deliberative process contents of these OIG documents would impair the OIG's operations by interfering with the flow of predecisional communications within the OIG and the agency. If these types of documents were considered releasable, there would be a "chilling effect" on the give-and-take necessary for the audit review and analysis process. It is in the public interest to ensure that thought processes, opinions and recommendations are expressed openly within the agency. I have concluded that disclosure of the documents discussed in this declaration would be injurious to the audit process and the operations of the OIG.

Def. App. 148. To the extent that Mr. Friedman must provide greater detail to the Court to substantiate a deliberative process privilege claim, he would likely need to discuss the contents

of the draft documents or, at a minimum, to discuss the internal workings of the Inspector General's office. Yet, such a disclosure would defeat the purpose of the assertion of privilege.

The decisions upon which this Court relied to support its finding that the affidavits did not even meet the minimum standard for invoking the privilege involved different circumstances than that here. In Reino de Espana v. American Bureau of Shipping, No. 03-Civ-3573, 2005 WL 1813017 (S.D.N.Y. Aug. 1, 2005), the plaintiff provided no reasons relating to the deliberations or the harm that might result. In Greenpeace v. National Marine Fisheries Service, 198 F.R.D. 540 (W.D. Wash. 2000), the agency failed to provide particularized explanations for disputed documents in an in camera review after being asked for them by the court. In Resolution Trust Corp. v. Diamond, 773 F. Supp. 597 (S.D.N.Y. 1991), the district court found that the affiant, who had not personally reviewed the documents at issue, had not provided sufficient allegations of harm, even though the agency had not contended "that giving more precise reasons would in any way compromise the confidentiality of the documents." Id. at 604. With all due respect, they do not support a finding that the affidavits here, which particularly describe the documents and identify the harm that would result from disclosure following a personal review and evaluation of the documents by the affiants, are deficient.

In any event, the remedy that this Court has ordered for the deficiency that it has identified – immediate production, without any opportunity to correct the technical deficiencies that the Court has found and without any opportunity for in camera review – conflicts with the standard practice of the Federal courts and the guidance of the United States Supreme Court. In each of the three cases that this Court cited as support for its finding here that the affidavits in question do not provide sufficient information regarding harm from disclosure, the district court

had either reviewed the documents in camera before ordering production or had provided the Government the opportunity to correct the identified deficiencies in its submissions. See, e.g., Reino de Espana, No. 03-Civ-3573, 2005 WL 1813017, at *13 (in camera inspection); National Marine Fisheries, 198 F.R.D. at 545 (in camera review); Resolution Trust Corp. v. Diamond, 137 F.R.D. 634, 646 (S.D.N.Y. 1991) ("in the interest of fairness to the RTC, the RTC will be allowed to make a new presentation reasserting the privileges, no later than July 17, 1991") (decision preceding Resolution Trust, 773 F. Supp. at 604). Further, with in camera review, the Government can provide ex parte affidavits that more particularly describe the harm that might result from disclosure, relying upon information in the documents themselves to assist in that effort, see Sealed Case, 121 F.3d at 735-36, and the Court can rely upon the ex parte affidavits or can rely upon an in camera review of the actual documents supplemented with the ex parte affidavits.

This type of opportunity for the Government's further refinement of perceived technical deficiencies, along with court in camera review of supplemental affidavits and/or the documents identified as privileged, is wholly consistent with the United States Supreme Court's analysis in Kerr v. United States District Court for the Northern District of California, 426 U.S. 394 (1976), in which the Court discussed the serious consequences that could result from refusing to allow the Government to rectify such defects:

> To the extent that the opinion below might be regarded as ambiguous, we are fortified in our reading of it by a recognition of the serious consequences which could flow from an unwarranted failure to grant petitioners the opportunity to have the documents reviewed by the trial judge [i]n camera before being compelled to turn them over. Petitioners' claims of privilege rest in large part on the notion that turning over the requested documents would result in substantial injury to the State's prison-parole system by

> unnecessarily chilling the free and uninhibited exchange of ideas between staff members within the system, by causing the unwarranted disclosure and consequent drying up of confidential sources, and in general by unjustifiably compromising the confidentiality of the system's records and personnel files. In light of the potential seriousness of these considerations and in light of the fact that the weight to be accorded them will inevitably vary with the nature of the specific documents in question, it would seem that an [i]n camera review of the documents is a relatively costless and eminently worthwhile method to insure that the balance between petitioners' claims of irrelevance and privilege and plaintiffs' asserted need for the documents is correctly struck. Indeed, this Court has long held the view that in camera review is a highly appropriate and useful means of dealing with claims of governmental privilege.

Id. at 405-06 (emphasis added; footnotes omitted). See, e.g., Cobell v. Norton, 213 F.R.D. 1, 8 (D.D.C. 2003) (after finding that Government had not properly invoked deliberative process privilege, stating that "Defendants will be provided with an opportunity to submit an affidavit that conforms with the requirements for proper invocation of the privilege" and establishing a procedure for future deliberative process assertions in that case); Export-Import Bank of the United States v. Asia Pulp & Paper Co., 232 F.R.D. 103, 111 (S.D.N.Y. 2005) (in response to motion to compel discovery, ordering agency to "promulgate a revised privilege log that identifies each document with as much specificity as is needed to demonstrate that" the appropriate privilege applies); Herald Ass'n, Inc. v. Dean, 816 A.2d 469 (Vt. 2002) ("Although we find defendants' assertion of executive privilege over the Governor's schedule in its entirety too broad, we decline to require the Governor to disclose the entirety of his schedule at this time," prior to remand to permit opportunity for submission of appropriate declaration).

In fact, an opportunity to correct any perceived technical deficiencies is further warranted by the history of decisions on the Government's deliberative process privilege claims in this

litigation. As the Court is aware, it has twice issued decisions on the same deliberative process privilege claims asserted in this case, see, e.g., Yankee Atomic, 54 Fed. Cl. at 311-12, and the Government's preparation of its subsequent affidavits adding deliberative process privilege claims over additional documents was, in part, dependent upon the precedent created by those decisions and the Court's approval of the Government's procedures. The Court's decision here simply to order production, without an opportunity for the Government to correct the deficiencies that the Court now perceives in these past decisions in the SNF cases, increases the uncertainty in this litigation. Accordingly, to the extent that the Court continues to believe that the Government's affidavits are deficient, we request that the Court allow us an opportunity to provide ex parte affidavits to the Court for use in place of or in conjunction with an in camera review of these documents.

## IV. THE COURT'S DECISION INVALIDATING THE HEADS OF AGENCIES' DELEGATIONS OF AUTHORITY IS INCONSISTENT WITH FEDERAL CIRCUIT PRECEDENT AND, FURTHER, PROVIDES NO GUIDELINES TO THE GOVERNMENT TO FOLLOW

In its March 14, 2006 order, this Court acknowledged the United States Court of Appeals for the Federal Circuit's recent decision in Marriott International Resorts, L.P. v. United States, 437 F.3d 1302 (Fed. Cir. 2006) (petition for rehearing en banc pending), and recognized that, in that decision, the appellate court held that "an Agency head may delegate the authority to invoke the deliberative process privilege on the Agency's behalf." Order, at 13 (quoting Marriott, 437 F.3d at 1308). Nevertheless, this Court found that the Federal Circuit had limited that authority to delegations that were "carefully undertaken" and that the Federal Circuit had complimented the agency in Marriott on its "care in the delegation process." Id. at 14 (citing Marriott, 437 F.3d at 1308). The Court then found that there was insufficient "care in the delegation process" to

validate the Government's delegations of authority to invoke the deliberative process privilege in this case. Id.[4]

Unfortunately, the Court provided us with no guidelines to apply that would allow the heads of agencies, when making delegations, to know whether this Court would find their delegations valid. Although this Court complains that the delegations here, unlike those in Marriott, were "extremely broad and provided little, if any, 'criteria for invoking the privilege,'" Order, at 14 (quoting Marriott, 437 F.3d at 1308), we do not understand the basis of this contention. First, the Federal Circuit did not establish specific criteria in Marriott that every delegation of authority had to satisfy. Second, the standing delegation of authority that the Federal Circuit in Marriott reviewed is essentially no more detailed than the delegations at issue here. The Internal Revenue Service delegation discussed in Marriott, which we have obtained from the joint appendix filed with the Federal Circuit in that appeal, reads as follows:

> (1) Claims of Executive Privilege in Federal Courts (Updated 10-02-2000) to reflect additional new organizational titles required by IRS Modernization.)
>
> (2) Authority: To claim executive privilege with respect to the Internal Revenue Service records or information in matters before the United States Court of Federal Claims, the United States Tax Court, and other federal courts.
>
> (3) Certain federal courts recognized claims of executive privilege by the head of the agency as the sole basis for protecting internal or inter-agency records or information that reflect recommendations, advisory opinions, deliberations, and other similar matters, comprising the

[4] Given that the Inspector General himself, Mr. Friedman, invoked the deliberative process privilege for three documents from the Office of the Inspector General of DOE, pursuant to his statutory authority under 5 U.S.C. App. 3, we presume that the Court's discussion of this issue was not intended to apply to Mr. Friedman.

process by which governmental decisions and policies are formulated.

(4) Executive privilege may be claimed only for those internal or inter-agency records or information that are predecisional and deliberative, the disclosure of which would significantly impede or nullify Internal Revenue Service actions in carrying out a responsibility or function or would constitute an unwarranted invasion of personal privacy. Before any claim of executive privilege is made, there shall be coordination with the appropriate function(s).

* * *

(6) Delegated to: Through the Chief Counsel to the Assistant Chief Counsel (Disclosure Litigation), or in the absence, or at the request, of the Assistant Chief Counsel (Disclosure Litigation), to the Deputy Assistant Chief Counsel (Disclosure Litigation).

Attachment B.

The NRC has specific standards for delegations of authority, which are contained in NRC Appendix 0101, dated March 25, 1983. Def. App. 232-35. By delegation memorandum dated July 24, 2002, the Chairman of the NRC delegated to Mr. Martin Virgilio, the Director of the Office of Nuclear Materials Safety and Safeguards ("NMSS") and a high-level official at the NRC who is not directly involved in the substantive litigation here, the authority to assert the deliberative process privilege on behalf of the Nuclear Regulatory Commission in the cases involving the standard contract for the disposal of spent nuclear fuel published at 10 C.F.R. § 961.11." Def. App. 199. By memorandum dated September 5, 2002, the Chairman also provided the Director of NMSS detailed evaluation criteria that the Director was to follow in determining whether he should assert the deliberative process privilege over any document:

1. Each document must be personally examined, and careful consideration must be given as to whether the release of a

> document, or of a related set of documents, would seriously inhibit the frank and open discussion of legal or policy matters among agency personnel. Directives from superiors to subordinates explaining a decision already made should not be withheld pursuant to this privilege. However, drafts of substantive documents or documents reflecting discussions, analyses, recommendations, advice or other deliberations leading to a possible decision on a legal or policy matter should, consistent with advice of counsel and other instructions herein, be withheld.
>
> 2. If only certain portions of particular documents should be protected and those segments are reasonably segregable, the remaining portions should be released. For example, purely factual portions of memoranda generally should not be withheld pursuant to this privilege, but drafts should be withheld in their entirety.
>
> 3. The degree of harm to the public interest resulting from the release of a given document should be carefully weighed against any public benefits or individual need for the information contained in that document.
>
> 4. Decisions in various civil actions as to whether the privilege is to be asserted should be consistent. In addition, all similar or related documents in a particular case should be treated consistently. Consistency is also important because the requesting party may later argue waiver, i.e., that release of one document concerning a particular issue or rulemaking has waived the privilege as to all documents regarding the same subject.

Def. App. 200-01. Subsequently, by affidavits dated June 9, 2003 and November 9, 2005, Mr. Virgilio formally invoked the privilege through affidavits. Def. App. 176-93. In light of this clear delegation of authority from the NRC Chairman to Mr. Virgilio, as well as the Chairman's identification of specific criteria for Mr. Virgilio to follow in considering whether to invoke the privilege, we cannot understand what additional steps are necessary for the NRC Chairman properly to delegate his authority to a high-level official within the NRC. The Court's decision in this case leaves us with no standards to apply in making such determinations.

The Secretary of Energy also has standard delegations that are posted on DOE's website, with delegations to the Under Secretary for Energy, Science, and Environment currently contained in Delegation Order No. 00-002.00D. See Def. App. 107-19. That standing delegation contains the following delegation language:

> On a nonexclusive basis, assert the Federal Government's deliberative process privilege with respect to any Environmental Management matters arising under the Under Secretary's cognizance. This delegation is made to protect internal predecisional Department of Energy documents in judicial or administrative proceedings in situations where the court may require the claim to be formally asserted by an affidavit from an agency official.

Def. App. 108; see Def. App. 54. A similar delegation, with similar language, was issued for matters pertaining to the Office of Civilian Radioactive Waste Management. Def. App. 70, 119. Although this delegation does not contain as detailed instructions regarding the evaluation process, the Secretary possesses authority to delegate pursuant to an express statutory provision, 42 U.S.C. § 7252:

> Except as otherwise expressly prohibited by law, and except as otherwise provided in this chapter, the Secretary [of Energy] may delegate any of his functions to such officers and employees of the Department as he may designate, and may authorize such successive redelegations of such functions with the Department as he may deem to be necessary or appropriate.

The Secretary properly exercised his statutory authority. Again, the Court's decision provides us with no guidelines that would allow us to understand the additional requirements that are necessary before this Court would find the delegation effective.

Certainly, it was the Secretary's and the NRC Chairman's intention to create valid delegations. To the extent that the Court continues to find these delegations deficient, it should

not merely order the Government to produce all of the documents claimed as privileged. As previously discussed, rather than ordering the Government's production of all documents claimed as privileged, the Court should provide the Government with an opportunity to correct any technical deficiencies that the Court believes exist. However, before requiring the Government to correct these deficiencies, the Court should provide the Government with guidance as to what steps, in addition to those that the agencies undertook, are necessary to create a delegation that this Court will find appropriate. Particularly in light of our reliance upon this Court's past decisions regarding delegations in this litigation, see, e.g., Yankee Atomic, 54 Fed. Cl. at 310-11, such an opportunity is especially appropriate here.

## V. AT THE VERY LEAST, THE COURT SHOULD MODIFY ITS ORDER THAT THE GOVERNMENT PRODUCE 92 DOCUMENTS FOR WHICH OTHER PRIVILEGES, IN ADDITION TO THE DELIBERATIVE PROCESS PRIVILEGE, WERE ASSERTED AND NOT CHALLENGED

In its March 14, 2006 order, this Court ordered that "[d]efendant shall produce the 458 documents at issue to plaintiff." Order, at 24. Yet, with regard to 92 of those documents, a list of which is attached to this motion as Attachment B, other privileges in addition to the deliberative process privilege were asserted. In its original motion to compel, PG&E asserted that, to the extent all of part of some of these documents are protected by the attorney-client or work product privileges, PG&E does not challenge that here." PG&E Motion, at 13 n.2. With regard to those documents, PG&E requested instead that the Court order "production of the documents with only such otherwise privileged material redacted." Id. As a result, our response to PG&E's motion did not address the privilege claims that PG&E had not challenged. We respectfully request that, at the very least, the Court modify its prior order to limit the

Government's production obligation to those of the 458 documents at issue for which no other unchallenged claim of privilege was asserted.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court reconsider its order dated March 14, 2006. Specifically, we respectfully request that the Court find that the Government was not required to provide affidavits when it initially produced its privilege logs, that the affidavits subsequently provided properly invoke the deliberative process privilege, and that the Secretary of Energy's and NRC Chairman's delegations of authority were proper and effective. To the extent that the Court does not reconsider those findings, we respectfully request that the Court supplement its opinion to identify guidelines for us to follow in creating appropriate delegations of authority and affidavits and, further, provide us with an opportunity to correct any technical deficiencies that the Court has identified followed by submission of ex parte affidavits and/or the documents at issue for in camera review. In any event, we request that the Court modify its order to allow the Government to continue to withhold those 92 documents over which the Government, in addition to invoking the deliberative process privilege, asserted attorney-client and/or work product protections that PG&E has not challenged.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ John C. Ekman by Harold D. Lester, Jr.
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

JOSHUA E. GARDNER
SCOTT R. DAMELIN
Department of Justice
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

March 21, 2006

Attorneys for Defendant

# ATTACHMENT A

(7) To the extent that the authority previously exercised consistent with this order may require ratification, it is hereby approved and ratified. This order supersedes Delegation Order No. 219 (Rev. 3), effective March 7, 1994.

(8) Signed: James E. Donelson, Acting Chief Compliance Officer

1.2.2.123
(04-16-1997)
Order Number 220
(Rev. 3)

(1) **Claims of Executive Privilege in Federal Courts (Updated (10-02-2000) to reflect additional new organizational titles required by IRS Modernization.)**

(2) **Authority:**To claim executive privilege with respect to the Internal Revenue Service records or information in matters before the United States Court of Federal Claims, the United States Tax Court, and other federal courts:

(3) Certain federal courts recognize claims of executive privilege by the head of the agency as the sole basis for protecting internal or inter-agency records or information that reflect recommendations, advisory opinions, deliberations, and other similar matters, comprising the process by which governmental decisions and policies are formulated.

(4) Executive privilege may be claimed only for those internal or inter-agency records or information that are predecisional and deliberative, the disclosure of which would significantly impede or nullify Internal Revenue Service actions in carrying out a responsibility or function or would constitute an unwarranted invasion of personal privacy. Before any claim of executive privilege is made, there shall be coordination with the appropriate function(s).

(5) Authority to claim the states secrets privilege is not delegated by this order. The states secrets privilege generally encompasses records or information, the disclosure of which would harm national security or the conduct of international relations.

(6) **Delegated to:**Through the Chief Counsel to the Assistant Chief Counsel (Disclosure Litigation), or in the absence, or at the request, of the Assistant Chief Counsel (Disclosure Litigation), to the Deputy Assistant Chief Counsel (Disclosure Litigation).

***Note:*** This authority is also delegated through the Chief Counsel to the Deputy Associate Chief Counsel (Procedure and Administration)

(7) **Redelegation:**

***Note:*** This authority may only be redelegated by the Chief Counsel.

(8) **Source of Authority:**Treasury Department Order 150-10.

(9) To the extent that the authority previously exercised consistent with this order may require ratification, it is hereby approved and ratified. This order supersedes Delegation Order 220 (Rev. 2), effective October 1, 1991.

(10) Signed: Margaret Milner Richardson, Commissioner

1.2.2.124
(04-01-1999)
**Order Number 221**
**(Rev. 3)**

(1) **Authority To Grant Extensions and Waivers**



EXHIBIT D 00338

# ATTACHMENT B

# DP Documents Subject To Judge Hewitt's 3/14/2006 Order For Which The Government Has Made Other Assertions Of Privilege

| Ref No (From PG&E's Table) | | | Priv Clm |
|---|---|---|---|
| 97 | | | DP, AC |
| 98 | | | DP, AC |
| 99 | | | DP, AC |
| 100 | | | DP, AC |
| 101 | | | DP, AC |
| 102 | | | DP, AC |
| 103 | | | DP, AC |
| 104 | | | DP, AC, AW |
| 112 | | | DP, PC |
| 151 | | | DP, AC, PC, AW |
| 152 | | | DP, PC |
| 153 | | | DP, PC |
| 154 | | | DP, PC |
| 155 | | | DP, PC, SN |
| 156 | | | DP, PC |
| 157 | | | DP, PC |
| 158 | | | DP, AC, PC, AW |
| 159 | | | DP, SN, PC, AW |
| 160 | | | DP, AC, PC, AW |
| 161 | | | DP, PC |
| 162 | | | DP, PC |
| 163 | | | DP, PC |
| 164 | | | DP, PC |
| 165 | | | DP, PC |
| 166 | | | DP, PC |
| 167 | | | DP, PC |
| 168 | | | DP, PC |
| 169 | | | DP, PC |
| 170 | | | DP, PC |
| 171 | | | DP, PC |
| 172 | | | DP, PC |
| 173 | | | DP, PC |
| 175 | | | DP, PC |
| 176 | | | DP, AC |

# DP Documents Subject To Judge Hewitt's 3/14/2006 Order For Which The Government Has Made Other Assertions Of Privilege

| | | | |
|---|---|---|---|
| 177 | | | AW, SN, PC, DP |
| 178 | | | DP, PC |
| 179 | | | DP, PC |
| 181 | | | AC, AW, DP |
| 182 | | | AC, AW, DP |
| 183 | | | AC, AW, DP |
| 184 | | | AC, AW, DP, PC |
| 186 | | | AC, AW, DP |
| 196 | | | AC, AW, DP |
| 202 | | | AC, AW, DP |
| 212 | | | AC, AW, DP |
| 220 | | | AC, AW, DP |
| 233 | | | AC, AW, DP |
| 246 | | | AC, AW, DP |
| 251 | | | AC, AW, DP |
| 254 | | | AC, AW, DP |
| 264 | | | AC, AW, DP |
| 268 | | | AC, AW, DP |
| 272 | | | AC, AW, DP |
| 274 | | | AC, AW, DP |
| 275 | | | AC, AW, DP |
| 276 | | | AC, AW, DP |
| 277 | | | AC, AW, DP |
| 280 | | | AC, AW, DP |
| 281 | | | AC, AW, DP |
| 282 | | | AC, AW, DP |
| 285 | | | AC, DP |
| 287 | | | AC, AW, DP |
| 289 | | | AC, AW, DP |
| 290 | | | AC, AW, DP |
| 368 | | | DP, AC |
| 384 | | | DP, AC |
| 395 | | | DP, AC |
| 402 | | | DP, AC |
| 403 | | | DP, AC |

# DP Documents Subject To Judge Hewitt's 3/14/2006 Order For Which The Government Has Made Other Assertions Of Privilege

| | | | |
|---|---|---|---|
| 404 | | | AC, AW, DP |
| 405 | | | AC, DP |
| 406 | | | AC, DP |
| 407 | | | AC, AW, DP |
| 409 | | | AC, DP |
| 411 | | | AC, DP |
| 413 | | | AC, DP |
| 414 | | | AC, AW, DP |
| 415 | | | AC, AW, DP |
| 416 | | | AC, DP |
| 417 | | | AC, DP |
| 418 | | | AC, DP |
| 430 | | | AC, AW, DP |
| 446 | | | AC, DP |
| 447 | | | AC, DP |
| 448 | | | AC, DP |
| 449 | | | AC, DP |
| 450 | | | AC, DP |
| 451 | | | AC, DP |
| 452 | | | AC, DP |
| 453 | | | AC, DP |
| 454 | | | AW, AC, DP |
| 465 | | | DP, AC |

CERTIFICATE OF FILING

I hereby certify that on this 21st day of March 2006, a copy of foregoing "DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 14, 2006 ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.