No. 04-0074C
into which has been consolidated
No. 04-0075C
Judge Hewitt

(Filed Electronically, April 11, 2006)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# PACIFIC GAS & ELECTRIC'S MOTION *IN LIMINE* TO EXCLUDE WARREN K. BREWER'S EXPERT TESTIMONY

---

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173
(202) 261-4751
*Counsel for Plaintiff*
Pacific Gas & Electric Company

Of Counsel:
ROBERT L. SHAPIRO
Greenberg Traurig, LLP

TABLE OF CONTENTS

PAGE

I. MR. BREWER'S PROPOSED TESTIMONY SHOULD BE PRECLUDED AS IT FAILS ALL FIVE ADMISSIBILITY CRITERIA SET OUT IN RULE 702 .................................. 2

II. THIS COURT HAS THE POWER TO PRECLUDE EXPERT TESTIMONY IF NOT RELEVANT, RELIABLE, AND HELPFUL ........................................................................ 4

III. MR. BREWER IS NOT QUALIFIED TO EXPRESS AN EXPERT OPINION CRITIQUING PG&E'S DAMAGES CLAIM ........................................................................ 5

IV. MR. BREWER'S TESTIMONY IS NOT RELIABLE ........................................................ 8

V. MR. BREWER'S "OPINION" THAT CERTAIN COST ITEMS ARE "NOT SUPPORTED" IS AN INADMISSIBLE EVIDENTIARY DETERMINATION ................ 9

VI. MR. BREWER'S "OPINIONS" THAT CERTAIN CLAIMED DAMAGES ARE "NOT INCREMENTAL" ARE IMPERMISSIBLE LEGAL CONCLUSIONS ............................ 11

A MR. BREWER DOES NOT BASE HIS "OPINION" THAT SOME CLAIMED COSTS ARE "NOT INCREMENTAL" ON ANY "SPECIALIZED KNOWLEDGE" ...................................................................... 11

1. Costs of Investigating the Taiwan Earthquake .............................................. 12

2. Costs of Storing Failed Fuel ........................................................................ 12

3. Costs of Visually Inspecting the Fuel Prior to Loading .................................. 14

B. MR. BREWER INTRUDES ON THE SOLE PROVINCE OF THE COURT BY INTERPRETING LEGAL DOCUMENTS TO CONCLUDE THAT SOME CLAIMED COSTS ARE "NOT INCREMENTAL" .................... 15

1. Costs of Searching Spent Fuel Pool to Resolve a Used Fuel Documentation Discrepancy ........................................................................................ 16

2. Costs of Applying for a Part 71 Transportation License under the Holtec Contract ............................................................................................. 16

3. Costs of Storing GTCC Waste ........................................................................ 17

VI. MR. BREWER'S "OPINION" THAT CERTAIN CLAIMED COSTS ARE "NOT REASONABLE" RELIES ON ACCOUNTING KNOWLEDGE ADMITTEDLY OUTSIDE THE SCOPE OF HIS CLAIMED EXPERTISE ............................................ 18

VII. CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

<u>CASES</u> <u>PAGE</u>

*American National Ins. Co. v. United States*, 690 F.2d 878 (Ct. Cl. 1982)......................15

*Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994) ......................................................5

*Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194 (4th Cir. 2001) ........................................4

*Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579 (1993.........................................1,4,8

*Gray v. Briggs*, 45 F. Supp. 2d 316 (S.D.N.Y. 1999)........................................................4

*Indiana Michigan Power Co. v. United States*, 60 Fed. Cl. 639 (2004) ............................8

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc*., 456 U.S. 844 (1982).....................10

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ...................................................4, 9

*Lippe v. Bairnco Corp.,* 288 B.R. 678 (2003).....................................................................8

*Markman v. Westview Instrument, Inc.,* 52 F.3d 967 (Fed. Cir. 1995)............................15

*Maine Yankee v. United States,* 225 F.3d 1336 (Fed. Cir. 2000).........................................3

*Principal Mut. Life Ins. Co. v. United States*, 26 Ct. Cl. 616 (1992)...............................15

*TRW Title Ins. Co. v. Liberty National Title Ins. Co.,*
877 F. Supp. 1029 (N.D. Ill. 19952,15 ...........................................................................2

*United States v. Gwaltney*, 790 F.2d 1378 (9th Cir. 1986) .................................................4

*United States v. Scop*, 846 F.2d 135 (2d Cir. 1988)........................................................15

*Westfed Holdings v. United States*, 55 Fed. Cl. 544 (2003)....................................5,11,18

<u>OTHER AUTHORITIES</u>

Fed. R. Evid. 702 .....................................................................1,2.4,5, 8.9, 11,15, 19

Fed. R. Evid. 703 ..........................................................................................................18

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically Filed on April 11, 2006

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 04-0074C, into which has been consolidated No. 04-0075C (Judge Hewitt) |

**PACIFIC GAS & ELECTRIC'S MOTION *IN LIMINE* TO EXCLUDE WARREN K. BREWER'S EXPERT TESTIMONY**

Pursuant to RCFC 16, Pacific Gas & Electric ("PG&E") moves the Court to preclude Warren K. Brewer from testifying as an expert witness. Mr. Brewer purports to "critique certain of the [damages claims] set forth in PG&E's [expert, Professor Brad Cornell's,] report." Expert Report of Warren K. Brewer at 1 ("Report"). Under Fed. R. Evid. 702, expert testimony must be relevant, reliable, and, ultimately, helpful to the trier of fact to be admissible. *See Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993). Mr. Brewer's proposed testimony that PG&E's claims are "not supported," "not incremental," and "not reasonable" is none of these. In fact, his "opinions" fail every one of the criteria for admissibility set out it Rule 702.[1]

[1] In light of the Court's Order of March 30, 2006 limiting the damages that PG&E can recover in this case to those incurred through 2004, this Motion does not address that portion of Mr. Brewer's report and proposed testimony relating to "future costs." *See* Report Sec. 5.B, pp. 15-22.

I. MR. BREWER'S PROPOSED TESTIMONY SHOULD BE PRECLUDED AS IT FAILS ALL FIVE ADMISSIBILITY CRITERIA SET OUT IN RULE 702

Fed. R. Evid. 702 contains the following five criteria:

A. *"If scientific, technical, or specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. . ."*:

- Mr. Brewer's opinions that costs claimed as part of PG&E's damages are either "not supported"[2] or "not incremental"[3] are not grounded in any "scientific, technical, or specialized knowledge," and, thus, will not assist the Court.

- To conclude that claims were "not supported," Mr. Brewer simply read the descriptions on the invoices supporting the claimed amounts and determined that "it is not possible given the documents I've seen to reach a conclusion as to whether the cost is incremental or . . . reasonable." Dep. 145:9-13. Determining whether PG&E's evidence is sufficient to support its claim is the sole province of this Court.

- Mr. Brewer's determination that certain parts of PG&E's claim are "not incremental" is just a series of impermissible legal conclusions. In some instances, Mr. Brewer intrudes on the Court's bailiwick by interpreting NRC regulations and Contract provisions. In others, he draws inferences from the record without relying on or contributing any "specialized knowledge." As with Mr. Brewer's "opinion" that certain cost claims were "not supported," these are merely evidentiary determinations and should be excluded. *See TRW Title Ins. Co. v. Liberty National Title Ins. Co.*, 887 F. Supp. 1029, 1031 (N.D. Ill. 1995) (excluding expert testimony that did nothing more than draw legal conclusions based on evidence already admitted).

---

[2] Mr. Brewer categorizes a claimed cost "not supported" where:

> [I]t is not possible given the documentation I've seen to reach a conclusion as to whether the cost is incremental or whether the amount of that cost is reasonable given the activity being performed.

Warren K. Brewer Deposition 145:9-14 ("Dep.").

[3] Mr. Brewer defines an "incremental cost" as one which PG&E would not have incurred but for the United States Department of Energy's ("DOE") failure to begin accepting spent nuclear fuel ("SNF") in 1998 as specified in the 1983 contract between DOE and PG&E ("Contract"). These costs are the direct result of DOE's breach of that Contract and are recoverable. According to Mr. Brewer, costs that are "not incremental" would have been incurred by PG&E at some point regardless of DOE's breach; therefore, they are not recoverable.

B. *". . .a witness qualified as an expert by knowledge, skill, experience, training or education, may testify in the form of an opinion or otherwise,. . ."* :

- Mr. Brewer lacks sufficient knowledge, skill, experience, training or education to qualify as an expert in any of the topics relevant to this case, namely, the handling, storage and transport of SNF. Neither his education, a master's degree in nuclear engineering, nor his experience designing, constructing and regulating reactors in the U.S. Navy involved any of these topics. In the more than twenty-five years since he left the Navy, his private-sector experience in preparing cost study estimates has had so little to do with SNF that the terms "SNF" or "spent fuel" do not even appear in his resume. Dep. 38:10-12.

- In addition, Mr. Brewer claims no expertise in accounting, yet relies on complex accounting assumptions, including weighted average labor costs and inflation adjustments, to conclude that PG&E's claimed dry cask loading costs are "not reasonable."[4] Clearly, this Court should not permit Mr. Brewer to express such "opinions" as they are outside the scope of his expertise.

C. *". . .(1) the testimony is supported by sufficient facts or data, . . ."*:

- Mr. Brewer's proposed testimony that the costs of visually inspecting the SNF prior to loading it into casks would have been incurred regardless of DOE's breach are based on an assumption that the costs of such inspections would have been the same in both the breach and non-breach worlds.[5] He admits, however, that he does not know whether DOE will require PG&E to perfom additional visual inspections, let alone the potential cost of those additional inspections. Dep. 192:2-12. Thus, Mr. Brewer's conclusion is not "supported by sufficient facts or data."

---

[4] Mr. Brewer testified that:

> Not reasonable is, I have reached a conclusion that says, this is a cost that will be incurred or may be incurred, but the amount is in my estimation unreasonable for one or more reasons. Perhaps the assumptions that go into developing the amount are unreasonable.

Dep. 145:9-21.

[5] The Court has determined that DOE has partially breached its contract with the nuclear utilities, making the real world the "breach" world. *See generally Maine Yankee v. United States*, 225 F.3d 1336 (Fed. Cir. 2000). The hypothetical world where DOE performed on the contract is known as the "non-breach" world. Mr. Brewer's opinion focuses on "incremental" costs, which he defines to include those costs that were occurred in the breach world, but would not have been incurred in the non-breach world.

D. *". . . (2) the testimony is the product of reliable principles or methods, . . ."*

- Mr. Brewer wholly fails to state any principle or method which guides his analysis. Further, Mr. Brewer cannot rely on his experience in lieu of articulated principles or methods because he has no related experience that sufficiently and reliably supports his conclusions.

E. *". . .and (3) the witness has applied the principles and methods reliably to the facts of the case."*:

- Because he stated no guiding principle, method or relevant experience, Mr. Brewer's "opinions" are nothing but bald assertions.

The Court should not permit Mr. Brewer, who lacks the relevant qualifications and whose "opinions" do not adhere to reliable principles or methods, to intrude on its role as the ultimate arbiter of fact and law in this case. Accordingly, the Court should preclude Mr. Brewer from testifying as an expert.

## II. THIS COURT HAS THE POWER TO PRECLUDE EXPERT TESTIMONY IF NOT RELEVANT, RELIABLE, AND HELPFUL

This Court functions as a "gatekeeper," admitting only expert testimony which is "relevant [and] reliable," *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993), and which "will assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999) (applying the *Daubert* holding to non-scientific expert testimony). The Court has "broad discretion to exclude expert testimony for its lack of helpfulness or for the expert's lack of qualifications." *Gray v. Briggs*, 45 F. Supp. 2d 316, 323 (S.D.N.Y. 1999) (citations omitted). The Court should exercise this discretion and exclude expert testimony where the proponent fails to show that the proposed testimony meets Rule 702's standard by a preponderance of the evidence. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *United States v. Gwaltney*, 790 F.2d 1378, 1382 (9th Cir. 1986), *cert. denied*, 479 U.S. 1104 (1987).

## III. MR. BREWER IS NOT QUALIFIED TO EXPRESS AN EXPERT OPINION CRITIQUING PG&E'S DAMAGES CLAIM

Mr. Brewer does not qualify as an expert in the topics covered in PG&E's damages claim — the handling, storage, or transportation of commercial SNF. In order to testify in the form of an opinion, a witness must be "qualified . . . by knowledge, skill, experience, training or education," in an area of "scientific, technical, or specialized knowledge." Fed. R. Evid. 702. That Mr. Brewer can demonstrate *general* knowledge of nuclear power is insufficient; this Court has held that a witness must show expertise relevant to the *particular* question in the case. *See Westfed Holdings v. US*, 55 Fed. Cl. 544, 571 (2003) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994), "The court agrees that the issue is not the qualifications of the witness in the abstract or in general but 'whether those qualifications provide a foundation for a witness to answer a specific question.'"). Here, neither Mr. Brewer's education nor his experience with nuclear power in the Navy more than twenty-five years ago demonstrate any focus on the "specific question" of storing, handling, and transporting commercial SNF; thus, Mr. Brewer does not qualify as an expert for the purposes of this case.

Mr. Brewer's master's degree in nuclear engineering does not make him an expert in the storage, handling, and transport of commercial SNF for two reasons. First, it is a general degree. Without further showing that Mr. Brewer has engaged in research or coursework pertaining to the "specific question" of storing, handling, or transporting commercial SNF, the degree itself is merely proof of general knowledge of nuclear engineering. Second, the methods and technologies at issue in this case were not available when Mr. Brewer obtained his degree, so he could not have studied them. Furthermore, Mr. Brewer has not listed any ongoing academic

involvement, either in the classroom or in various industry journals, which might have provided such specialized knowledge in the years since he completed his degree.[6]

Similarly, Mr. Brewer's knowledge, skill, experience or training do not focus sufficiently on the storage, handling, and transport of commercial SNF to render him an expert. Mr. Brewer claims experience in construction and operation of nuclear reactors, nuclear regulation and compliance, and estimation of plant decommissioning costs. Dep. 23:21-24:17, 28:21-29:4, 48:5-14. Mr. Brewer's experience with reactor construction, operation, regulation and compliance, however, dates back over twenty-five years to his service in the U.S. Navy and did not involve *spent* nuclear fuel. Mr. Brewer was involved in the "approval of *procedures*, . . . for *refueling* reactors," not with storing, handling, or transporting the resulting *spent* fuel. *Id.*. Mr. Brewer further admits that his "approval of procedures" was "specific to a reactor design" and did not extend to all shipboard naval reactors, let alone *any* land-based commercial models. Dep. 28:5-11.

More recently, Mr. Brewer has acted as a consultant to nuclear utilities as a partner at ABZ, Inc., where he has prepared plant decommissioning cost studies for nuclear utilities. While such studies touch on the cost of storage, handling and transport of commercial SNF, Mr. Brewer's resume, Report, and deposition testimony clearly demonstrate that he is not qualified to offer opinions on this topic. Mr. Brewer's resume fails to mention SNF even once. He admits openly that, "[SNF] wasn't a big part of what I did." Dep. 38:10-12. In fact, Mr. Brewer can't recall any experience with SNF in over two decades in the private sector. Dep. 33:19-34:13. This is not surprising as Mr. Brewer admits having no personal experience with any major activities associated with commercial SNF, including Independent Spent Fuel Storage

[6] Mr. Brewer has published articles on nuclear power, but admitted at his deposition that "none of those involved handling, transportation, or storage of spent nuclear fuel." Dep. 41:15-18.

Installation ("ISFSI") operations,[7] ISFSI and cask licensing,[8] cask loading,[9] transport,[10] and greater than class-C ("GTCC") waste.[11] At ABZ, he merely estimated the costs of such activities as part of decommissioning studies. Mr. Brewer has visited only two operational ISFSIs, Dep. 90:12-13, and when ABZ itself oversaw the construction of a third at San Onofre, California, Mr. Brewer "only reviewed some information," and never even went to the facility. Dep. 92:7-19.

Mr. Brewer cannot show any exposure to, let alone expertise in, the field of SNF during his thirty-year work history. Thus, he lacks the knowledge specific to the topics relevant in this case, the storage, handling, and transport of commercial SNF, and, as such, is not qualified to offer expert opinions about the attendant costs.

---

[7] *See* Dep. 90:11 ("Q. You've never worked in an ISFSI; is that correct? A. I have never worked at an ISFSI").

[8] *See* Dep. 91:5-92:6:

> Q. Neither you nor ABZ has ever been involved — I may have asked you this already, and I apologize if that's so. Neither you nor ABZ has ever been involved in ISFSI licensing, is that correct, the process of licensing an ISFSI?
>
> A. We have never been a participant in applying for a license, that's correct.
>
> Q. Or a cask license?
>
> A. Or a certificate of compliance for a cask, no.

[9] *See* Dep. 18:6-11 ("Q. . . . you've never loaded any commercial spent nuclear fuel or participated directly in the loading of commercial spent nuclear fuel into storage or transportation casks, have you? A. I have not.")

[10] *See* Dep. 8:21-9:11("Q. ABZ has never done any work that involved the transportation of spent nuclear fuel; is that correct? A. We have never done any work to actually transport fuel.").

[11] *See* Dep. 38:18-22 ("Have you ever had any firsthand experience handling or storing greater than class C waste of any type? *** A. No.") (objection omitted).

## IV. MR. BREWER'S TESTIMONY IS NOT RELIABLE

The Court should also preclude Mr. Brewer from testifying because his "opinions" are not "the product of reliable principles or methods." Fed. R. Evid. 702. In fact, Mr. Brewer *presents* no methodology and, consequently, *applies* no methodology in his "critique" of PG&E damages claim and Professor Cornell's report. Section 4 of Mr. Brewer's Report demonstrates his utter failure to predicate his "opinions" on any "reliable principles or methods." Despite being titled "Methodology and Documents Considered," that section, quoted here in its entirety, makes absolutely no mention of a methodology:

> I evaluated PG&E's claimed costs by reviewing Professor Cornell's report, publicly available information, and other information obtained through discovery in this case. These documents included computer spreadsheets used to develop the claim and depositions of PG&E's fact witnesses. The documents that I relied upon in forming my opinions are listed in Appendix B.

Indeed, Mr. Brewer admitted at his deposition that, though he considered many documents, he applied no methodology. He stated that "in the absence of citing the document, it would simply be [me] saying, 'I know that because I know that'" — the very definition of *ipse dixit.* Dep. 109:1-5 (quotations added). *See also Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 590 (1993) (finding that "expert" knowledge "connotes more than subjective belief of unwarranted speculation."); *Indiana Michigan Power Co. v. US*, 60 Fed. Cl. 639, 647 (2004) ("The more subjective the expert's inquiry, the more likely the testimony should be excluded as unreliable").

Further, Mr. Brewer cannot claim that he relied on his experience in lieu of applying a formal methodology. To do so, Rule 702 requires that he explain "how that experience leads to the conclusion reached, why the experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[12] Fed. R. Evid. 702, Advisory Committee notes on 2000 Amendments, *quoted in Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (2003) (excluding

---

[12] For specific examples, see Sec VI, *infra.*

plaintiff's damages expert because he made no effort to show how his experience was applied to analyze the facts in that case). Contrary to Rule 702's requirement, Mr. Brewer does not tie his experience to his conclusions. Indeed, he doesn't even *attempt* to demonstrate that his conclusions were the product of his experience in these matters:

> Q. What expertise do you rely on in determining whether or not particular claimed costs are incremental?
>
> * * *
>
> A. It's simply a matter that I am making the assessment that this activity in the simplest sense would have . . . occurred independent of the breach.

Dep. 132:9-19. No doubt, Mr. Brewer is unable to make this connection because, as shown above, he has no personal experience whatsoever with the storage, handling and transport of commercial SNF.

Even if he did attempt to create these connections, Mr. Brewer's experience would prove an insufficient and unreliable basis for his conclusions. As a primary example, Mr. Brewer performed multiple decommissioning cost estimates at ABZ but admits that he never checked the reasonableness of his cost estimates even though data on the actual costs is readily available. Dep. 79:1-5 ("If you're asking for the decommissioning studies we did, have I gone back and reviewed as-built cost versus estimated cost, the answer is, no, I have not."). This lack of basic intellectual rigor renders Mr. Brewer's experience inherently unreliable, and precludes him from drawing on it as a basis for any expert opinion. *See Kumho Tire, 526 U.S.* at 152 (excluding testimony that failed to exhibit "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.").

## V. MR. BREWER'S "OPINION" THAT CERTAIN COST ITEMS ARE "NOT SUPPORTED" IS AN INADMISSIBLE EVIDENTIARY DETERMINATION

Mr. Brewer's "opinion" that certain claimed costs are "not supported" is nothing more than an intrusion on the Court's exclusive power to determine the sufficiency of PG&E's

evidence.[13] *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 856 (1982) ("Determining the weight and credibility of the evidence is the special province of the trier of fact."). In Mr. Brewer's own words, his "opinion" is nothing more than an assertion that he "could not find sufficient information . . . that the charges were for work that was incremental to the breach." Report at p. 8. Whether Mr. Brewer believes that PG&E provided sufficient evidence to support its claim is immaterial. It is for the Court alone to weigh the evidence and decide whether costs attributed to radioactive waste disposal,[14] insurance,[15] and a collection of invoices on various other subjects[16] are supported by the evidence.

Mr. Brewer nonetheless claims that his assessment will help the Court to recognize whether costs described in the invoices are "uniquely related to fuel storage not." Dep. 569:1-7. He admits, however, that the Court could obtain this information just as easily from one of PG&E's fact witnesses:

> If Mr. Kapus [PG&E's financial services supervisor in charge of SNF costs] was sitting here and said that, I would ask him, what was it, and he would tell, and we would be at an end.

Dep. 607:1-19. Clearly, then, Mr. Brewer's attempt to use so-called "opinions" to intrude on the Court's domain should not be countenanced.

---

[13] In response to Mr. Brewer's report, PG&E has reviewed the invoices identified in appendices C&D and removed costs reflected in the few invoices identified that were not properly included in the claim.

[14] Report § 5A 1.4, "Rad Waste Disposal - Not Supported".

[15] Report § 5A 1.6, "Insurance - Not Supported".

[16] Report § 5A 1.7, "Invoices - Not Supported".

## VI. MR. BREWER'S "OPINIONS" THAT CERTAIN CLAIMED DAMAGES ARE "NOT INCREMENTAL" ARE IMPERMISSIBLE LEGAL CONCLUSIONS

Mr. Brewer's "opinions" that certain of PG&E's claimed costs are "not incremental" are of no assistance to the Court because they simply offer an evaluation of facts with no expert opinion or, worse, they constitute legal interpretations — both of which are the exclusive province of this Court. *Inwood Laboratories*, 456 U.S. at 856. The costs that Mr. Brewer categorizes as "non-incremental" are considered below:[17]

### A. MR. BREWER DOES NOT BASE HIS "OPINION" THAT SOME CLAIMED COSTS ARE "NOT INCREMENTAL" ON ANY "SPECIALIZED KNOWLEDGE"

Rather than base his "opinions" on "specialized knowledge" as required by Rule 702, Mr. Brewer attempts to substitute mere logic or to comment on the sufficiency of the evidence in lieu of a properly-predicated opinion. Mr. Brewer committed the same error when he concluded certain costs were "not supported." These so-called "opinions" are not helpful to the Court. *Westfed Holdings,* 55 Fed. Cl. at 574 (2003) ("[E]xpert testimony 'is not helpful if it draws inferences or reaches conclusions within the [trier of the fact's] competence." (alteration in original)).

[17] Mr. Brewer categorizes the costs addressed in Report § 5A 2.1(a), relating to DCPP invoices, as not incremental. However, a close review of Mr. Brewer's analysis demonstrates that he is really saying that these costs are "not supported." Mr. Brewer attempts to apply his general experience with nuclear power generation to declare that feedwater and steam systems replacement and steam generator replacement are inherently not incremental. Mr. Brewer should not be permitted to express this opinion for two reasons. First, if Mr. Brewer is relying on his experience, he fails to show explicitly how this experience ties to this specific subject matter. Second, Mr. Brewer uses a conditional construct to reach his conclusion, stating that there is no reason that these costs "*would* be incremental" rather than "*could* be incremental." This indicates that Mr. Brewer's actual assessment of these costs is that he lacks sufficient evidence to draw a conclusion — i.e. that that these costs are "not supported." As demonstrated in Section V, Mr. Brewer should not be permitted to intrude on the Court's role of making evidentiary determinations in the guise of expressing an expert opinion.

1. Costs of Investigating the Taiwan Earthquake [18]

Mr. Brewer improperly opines that the facts are sufficient to show that the costs PG&E incurred to investigate the effects a Taiwan earthquake were not incremental to DOE's breach. In 2000, an earthquake hit Taiwan along a fault line geologically similar to the one near the Humboldt Bay Power Plant ("HBPP"). PG&E sent a team to investigate the earthquake's seismic impact on structures. PG&E included the costs associated with this investigation as part of the claim because it was conducted solely to gain insight into the construction of HBPP's ISFSI. Mr. Brewer opines that PG&E would have conducted the investigation even if it did not have to construct the HBPP ISFSI. His opinion is not based on any "specialized knowledge," but, rather, on his evaluation of just two facts. First, Mr. Reuger, a PG&E employee, testified at his deposition that the company had a "strong long term seismic program" applicable to all of its energy-related structures. Report p. 7, Dep. 275:2-9. Second, a PG&E memorandum suggested that $12,420 of the $175,954 cost for the earthquake investigation should have been allocated from HBPP to the Diablo Canyon Power Plant ("DCPP"). *Id.* This Court is equally capable of weighing this evidence, and it alone has the power to do so. Mr. Brewer's "opinion" adds nothing.

2. Costs of Storing Failed Fuel [19]

Here, Mr. Brewer's premises his "opinion" on a hypothetical condition: If failed fuel[20] is not covered by the Contract, then, in the non-breach world, DOE may not have accepted this

---

[18] Report § 5A 1.5.

[19] Report § 5C 1.

[20] Throughout his opinion, Mr. Brewer conflates the topics of "Failed Fuel" and "other than standard fuel," which are distinctly defined in the Contract and regulations; we will, however, adopt his usage for the purposes of this motion.

failed fuel when it picked up PG&E's standard spent fuel. As a result, PG&E would have to continue to store failed fuel after DOE accepted all of PG&E's standard fuel.[21] Mr. Brewer offers no opinion as to whether the condition upon which he bases his opinion is true, nor can he be qualified to do so. Dep. 532:7-9 ("I'm saying I'm not offering any opinion about what DOE's obligation is as to when or if or how it takes failed fuel."). Mr. Brewer cannot offer an opinion on whether the Contract covers failed fuel because interpreting the terms of the Contract is the exclusive domain of this Court. Instead, Mr. Brewer assumes the condition to be true and states that, based on PG&E's inventory, at least one of HBPP's five storage casks would have contained failed fuel. Therefore, Mr. Brewer reasons, one-fifth of the casks would have been subject to an acceptance rate different from that in the Contract, making one-fifth of the construction, operation, and maintenance costs not incremental.

Mr. Brewer's assertion is not a properly-predicated expert opinion as it is not based upon any "specialized knowledge." Mr. Brewer simply assumes a hypothetical condition to be true. Further, even if the condition were true, Mr. Brewer's consequent analysis consists of nothing more than applying basic math to uncontested fact. PG&E admits that it has small amounts of failed fuel.[22] Based on this, Mr. Brewer reasons that at least one of PG&E's five casks would have contained failed fuel and, by simple division, concludes that at least one-fifth of the ISFSI

---

[21] Mr. Brewer's actual phrasing of this hypothetical is far more confusing:

> If other than standard fuel is not subject to the same acceptance schedule as standard fuel, other than standard fuel (including failed fuel) may have been required to be stored for an extended time, even if DOE had initiated acceptance of standard spent fuel assemblies from the industry in 1998.

Report at 22.

[22] Mr. Brewer determined that HBPP has failed fuel based on the fact that HBPP "bought cans for failed fuel in their Holtec contract." Dep. 530:15-21.

construction, operational, and maintenance costs would be non-incremental. Thus, Mr. Brewer's "opinion" should be excluded because it is based on a hypothetical, about which Mr. Brewer does not and cannot express an opinion, and basic math that is easily performed by the Court.

3. Costs of Visually Inspecting the Fuel Prior to Loading[23]

In asserting that the costs PG&E claims as damages for visually inspecting spent fuel in the breach would be offset by identical costs in the non-breach world, Mr. Brewer assumes his conclusion. Mr. Brewer's conclusion rests on the necessary assumption that the costs of visually inspecting spent fuel prior to loading it into casks are equal regardless of whether that cask is to be placed in an ISFSI or picked up by DOE and transported to a repository. Report at 3. Mr. Brewer does not identify any "specialized knowledge" as the basis for his assumption; he simply makes the assumption and states its inexorable conclusion.

Further, Mr. Brewer's tautology is unfounded because Mr. Brewer's deposition testimony demonstrates that there are not "sufficient facts or data" to support his assumption that visual inspection costs are equal in both the breach and non-breach worlds. Mr. Brewer does not know what work was involved in PG&E's visual inspection in the breach world. Dep. 175:2-176:12. Accordingly, he cannot know whether the work required in the non-breach world would be comparable.[24] Thus, Mr. Brewer is unable to say how many, if any, visual inspection(s) will ultimately be conducted in the breach world or what the total cost of such inspection(s) will be. He does not know if DOE would require additional visual inspection(s) prior to picking up the fuel. Dep. 192:2-12. Indeed, Mr. Brewer acknowledges that, after a certain amount of time had

[23] Report § 5A 1.1, "Visual Inspection - Not Incremental."

[24] Indeed, PG&E's claimed costs t for extensive equipment, labor, and time required to videotape the entire process of loading its casks, a process qualitatively different from mere "visual inspection" contemplated by Mr. Brewer.

passed, it would be prudent to re-inspect the SNF prior to loading it. Dep. 169:2-5 ("I don't know anyone who would rely on records from 1968 to now load the fuel into a cask 40 years later — or 30 years later."). Because Mr. Brewer admits that he knows little or nothing about the scope or costs of visual inspection in the breach world, he cannot properly assume that this cost would be offset by the cost of visual inspection in the non-breach world. Thus, the assumption underlying Mr. Brewer's tautology is not supported by "sufficient facts or data," and renders his "opinion" unreliable.

### B. MR. BREWER INTRUDES ON THE SOLE PROVINCE OF THE COURT BY INTERPRETING LEGAL DOCUMENTS TO CONCLUDE THAT SOME CLAIMED COSTS ARE "NOT INCREMENTAL"

As a general matter, the Court is not helped when witnesses attempt to provide legal determinations in the guise of expert opinions. *See United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988) (excluding a witness's expert legal opinion as unhelpful.). Mr. Brewer's own interpretation of the Contract provisions and regulations are inadmissible because they do not "assist the [Court]." Fed. R. Evid. 702. *See Markman v. Westview Instrument, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995) (expert testimony regarding the proper construction of a patent "amounts to no more than legal opinion . . . as to these types of opinions, the Court has complete discretion to adopt the expert legal opinion as its own, to find guidance from it, or to ignore it entirely, or even to exclude it"); *Principal Mut. Life Ins. Co. v. United States*, 26 Cl. Ct. 616, 625 (1992) (affidavits containing only expert legal opinion "cannot be considered helpful, and therefore admissible expert testimony"); *American Nat'l Ins. Co. v. United States*, 690 F.2d 878, 888 (Ct. Cl. 1982) (questions of law do not require expert testimony except in "exceptional circumstances").

1. Costs of Searching Spent Fuel Pool to Resolve a Used Fuel Documentation Discrepancy [25]

In 2004, PG&E discovered fuel assembly pieces in HBPP's spent fuel pool that did not appear in its inventory. PG&E engaged in a search of the pool and compiled a report to resolve the discrepancy. Based on his reading of an NRC Notice of Violation and Proposed Imposition of Civil Penalty ("Notice"), dated December 20, 2005, Mr. Brewer opines that PG&E knew about and had the opportunity to rectify the discrepancy prior to 1998 and that the NRC would have required PG&E to resolve this issue prior to decommissioning the plant. Therefore, he concludes that PG&E would have incurred these costs regardless of DOE's breach.

The sole basis for Mr. Brewer's "opinion" is his interpretation of the implications of the NRC's Notice. Any interpretation of this legal document is beyond Mr. Brewer's expertise; it intrudes on the Court's exclusive power to interpret legal documents and should, therefore, be excluded.

2. Costs of Applying for a Part 71 Transportation License under the Holtec Contract [26]

Here, too, Mr. Brewer does nothing more than improperly interpret legal documents to conclude that the cost of applying to the DOE for a Part 71 transportation license for PG&E's Holtec Hi-Star casks was not incremental. The only aspect of this analysis susceptible to an SNF expert's opinion is the reasonableness of obtaining a transportation license when it is unknown whether DOE will agree to use PG&E's casks for transportation, but Mr. Brewer explicitly refrains from offering such an opinion. Dep. 363:17-364:3 ("Q. . . . do you have an opinion whether [applying for a Part 71 transportation license] was reasonable one way or the other? . . .

[25] Report § 5A 1.2, "Used Fuel Documentation Discrepancy - Not Incremental."

[26] Report § 5A 1.9, "Holtec Contract - Part 71 License - Not Incremental."

A. I'm not offering an opinion about the reasonableness.") (objections omitted). Instead, Mr. Brewer bases his "opinion" on the terms of the Contract and the relevant portions of the Code of Federal Regulations. That Contract states that DOE, not the utilities, will transport SNF. Contract, Art. II, B.2. With the Contract only partially breached, Mr. Brewer opines that PG&E has no reason to apply for a Part 71 license, so the associated application costs are unrelated to DOE's breach and, therefore, "not incremental." Dep. 350:11-13.[27] It is the exclusive domain of this Court to interpret legal documents like the Contract and Code of Federal Regulations; Mr. Brewer's attempt to apply his own interpretation is, therefore, improper and should be excluded.

3. Costs of Storing GTCC Waste [28]

Mr. Brewer concludes that ISFSI staffing and operating costs would not be incremental to DOE's breach based on "conversations [that he had] with NRC officials as well as NRC documents concerning the licensing of GTCC storage facilities."[29] The excerpt Mr. Brewer quotes from these documents indicates NRC's "preference" that GTCC waste be treated just like SNF.[30] Mr. Brewer reads this to mean that, if DOE collected PG&E's SNF but left behind the GTCC waste, PG&E would nonetheless have to maintain the same level of security and

---

[27] Mr. Brewer's deposition testimony contradicts his Report on this point. The Report appears to state that an opinion that these costs are not reasonable: "there is no reason for PG&E to incur costs for transportation licensing." Mr. Brewer deposition testimony states instead that the costs of applying for a transportation license is "not appropriate to be *claimed as damages*," with no mention of reasonableness. Dep. 352:10-11.

[28] Report § 5C 2.

[29] *Id.* at 23.

[30] Dep. 486:5-487:19. Were his interpretation not an improper legal conclusion, Mr. Brewer's opinion would still fail for sufficient facts or data. The rule expressly applies only "*if* the NRC were to develop guidance for storage of reactor-related GTCC waste." Final Rule, Interim Storage of GTCC Waste, June 1, 2001 p. 26, *quoted in* Report p.23. Mr. Brewer admits that "they never issued such guidance." Dep. 488:20-21.

maintenance staff. Therefore, he opines that security and maintenance costs are not incremental to the storage of commercial SNF.

To the extent Mr. Brewer bases his "opinion" on his interpretation of a "preference" mentioned in the comments to an NRC rulemaking, his "opinion" is an improper legal interpretation that only the Court may make. It is also improper for Mr. Brewer to base his "opinion" on hearsay statements made by NRC officials. While Mr. Brewer might be able to rely on hearsay to provide an expert opinion grounded in "specialized knowledge," he cannot "back door" hearsay statements into evidence in the guise of an "opinion" based on improper legal interpretations. *See* Fed. R. Evid. 703 (regulating expert witness's presentation of facts or data not in evidence); *Westfed Holdings v. US*, 55 Fed. Cl. 544, 574 (2003) (noting that defendant acted improperly by having its expert read into the record documents not admitted as evidence.).

## VII. MR. BREWER'S "OPINION" THAT CERTAIN CLAIMED COSTS ARE "NOT REASONABLE" RELIES ON ACCOUNTING KNOWLEDGE ADMITTEDLY OUTSIDE THE SCOPE OF HIS CLAIMED EXPERTISE

Mr. Brewer steps well beyond the scope of his expertise to opine that PG&E erred in concluding that the costs of loading SNF into casks in both the breach and non-breach worlds would be equal and, therefore, offset. Mr. Brewer admits that, "other than basic kinds of college courses," he has no accounting experience or certification.[31] Yet, in calculating alternative "But-for Fuel Loading Costs" at HBPP, Section 5A 1.8, he attempts to rely on complex, interrelated accounting assumptions, such as an 108-hour cask loading time, a 24-hour work day, a weighted-average wage based on the type and amount of labor required, and an unsubstantiated 3% "escalation" to adjust for inflation. Report at 11, n.33. These advanced concepts as well as the

[31] Dep. 19:16-19-21.

complex calculations that accompany them go well beyond what is taught in the "basic kinds of college courses" Mr. Brewer attended.

## VIII. CONCLUSION

As shown above, Mr. Brewer's testimony violates every criterion for admissibility under Rule 702. Mr. Brewer's "knowledge, skill, experience, training and education" do qualify him to offer opinions on the particular topic relevant to this case: the storage, handling, and transport of commercial SNF. His master's degree in nuclear engineering provided only a general knowledge of nuclear power, with no focus on SNF; his U.S. Navy experience, dating back more than twenty-five years, involved the regulation of reactor refueling, but did not involve the resulting spent fuel; and his private-sector experience generating cost estimates has involved commercial SNF so infrequently that Mr. Brewer does not even mention it once in his resume. Mr. Brewer also fails to cite any "principle[,] method" or relevant experience that forms the basis for his analysis, rendering his "opinions" mere *ispse dixit*, and completely unreliable. Finally, Mr. Brewer often does not rely on any "scientific, technical, or specialized knowledge" to reach his conclusions. Instead, he improperly weighs the sufficiency of the evidence or interprets legal documents — both of which are within the exclusive domain of the Court. Clearly, the Court should not allow Mr. Brewer to intrude on its decision-making with unqualified, unreliable and, ultimately, unhelpful "opinions."

For these reasons, the Court should exclude the testimony of Warren K. Brewer.

Dated: April 11, 2006

Respectfully submitted,

s/Jerry Stouck

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW, Suite 500
Washington, DC 20006
(202) 331-3173 Phone
(202) 261-4751 Fax
*Counsel for Plaintiff*
Pacific Gas & Electric Company

Of Counsel:
Robert L. Shapiro
Greenberg Traurig, LLP