# In the United States Court of Federal Claims

No. 04-74C
(into which has been consolidated No. 04-75C)

(E-Filed: April 14, 2006)

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## ORDER

The court has before it Defendant's Motion to Compel the Production of Documents Improperly Withheld by Plaintiff on the Basis of Privilege, in Compliance With the Court's Order Dated January 25, 2006 (Def.'s Mot. or Motion), PG&E's Response to the Government's Motion to Compel (Pl.'s Resp. or Response), and Defendant's Reply to Plaintiff's Response to Motion to Compel the Production of Documents Improperly Withheld by Plaintiff on the Basis of Privilege, in Compliance With the Court's Order Dated January 25, 2006 (Def.'s Reply or Reply). On January 25, 2006, the court issued an Opinion granting-in-part and denying-in-part defendant's October 26, 2005 motion to compel the production of documents and deposition testimony improperly withheld on the basis of privilege (Opinion). Pac. Gas & Elec. Co. v. United States (PG&E), 69 Fed. Cl. 784 (2006). The court directed the parties to use the guidelines provided in its Opinion to determine whether there continued to be any disputes regarding the claims made by plaintiff, Pacific Gas & Electric Company (PG&E), of attorney-client privilege or work product protection over documents listed in plaintiff's privilege logs. See id. at 808-09. To the extent that the parties could not resolve any remaining discovery disputes regarding documents withheld by PG&E, the court directed defendant to proceed with another motion to compel those documents still in dispute. See id. at 809.

Defendant filed such a motion on February 28, 2006. On March 1, the court ordered plaintiff, at the time of the filing of its response to defendant's Motion, to cause to be delivered to chambers for review in camera the documents that defendant sought to be produced in its Motion that then remained unproduced. See Order of March 1, 2006. After responsive briefing concluded, based on plaintiff's suggestion, see Pl.'s Resp. at 2, the court ordered seven documents from plaintiff's Supplemental Privilege Log[1] to be produced to defendant. See Order of March 15, 2006. Moreover, in its Response, plaintiff stated that it will "not further dispute" the privileged or protected status of nine documents, five from its Initial Privilege Log[2] and four from its Supplemental Privilege Log,[3] see Pl.'s Resp. at 2; Def.'s Reply at 1-2, and that it "will promptly produce copies of these documents," Pl.'s Resp. at 2. On March 22, 2006, plaintiff's counsel represented to the court that it had produced these documents to defendant. See Transcript of Oral Argument of March 22, 2006 (Tr.) at 68:10-17.[4] Therefore, as defendant states, "all of the remaining PG&E documents that remain in dispute are contained in PG&E's Supplemental Privilege Log." Def.'s Reply at 3.[5] There are eighteen documents that remain in dispute. The court proceeds now to address each of these documents, grouped together where appropriate, in turn.

Document Nos. 825 and 828

Plaintiff argues that Document Nos. 825 and 828 are protected by the attorney-client privilege because they "clearly reflect communications with counsel." Pl.'s Resp. at 3. However, as the court stated in its Opinion,

---

[1]PG&E has produced two privilege logs relevant to this Order: (1) "Privilege Log Corresponding to Documents Gathered for Purposes of Initial Disclosures," dated June 21, 2005 and revised November 7, 2005 (Initial Privilege Log); and (2) "Privilege Log Corresponding to Documents Gathered in Response to Defendant's First Request for Production of Documents," dated November 7, 2005 (Supplemental Privilege Log). Def.'s Reply at 1 n.1.

[2]Specifically, Document Nos. 76, 77, 79 and 593.

[3]Specifically, Document Nos. 310, 311, 654 and 786.

[4]To the extent that these documents have not been produced, the court ORDERS plaintiff to produce to defendant Document Nos. 76, 77, 79, 80 and 593 from plaintiff's Initial Privilege Log and Doc Nos. 310, 311, 654 and 786 from plaintiff's Supplemental Privilege Log.

[5]Accordingly, all Document Nos. to which the court refers below are those listed in plaintiff's Supplemental Privilege Log.

> The attorney-client privilege only affords protection to confidential communications seeking or rendering legal, rather than business, advice. United States v. Defazio, 899 F.2d 626, 635 (7th Cir. 1990). "Only when an attorney is giving advice concerning the legal implications of conduct, whether past or proposed, is the privilege properly invoked." Burton, 170 F.R.D. at 484 (citing Hercules Inc. v. Exxon Corp., 434 F. Supp. 136 (D. Del. 1977)). For the privilege to apply, "[l]egal advice must predominate . . . . The privilege does not apply where the legal advice is merely incidental to business advice." Id. (citations omitted).
>
> . . . "[C]ommunications made by and to the same in-house lawyer with respect to business matters, management decisions or business advice are not protected by the privilege." [Boca Investerings P'ship v. United States, 31 F. Supp. 2d 9, 11 (D.D.C. 1998)].

PG&E, 69 Fed. Cl. at 811. After reviewing Document Nos. 825 and 828 in camera, the court concludes that these documents, which are identical, reveal business, rather than legal, advice. See id. Accordingly, the court ORDERS plaintiff to PRODUCE to defendant Document Nos. 825 and 828 in their entirety.

Document No. 827

Plaintiff argues that Document No. 827, an attachment to an email, is protected by the attorney-client privilege because it "reflect[s] Mr. Warner's [a PG&E attorney] legal advice to his company clients on legal issues regarding a draft board presentation." Pl.'s Resp. at 3. After reviewing Document No. 827 in camera, the court concludes that a large majority of this document contains merely business advice, or legal advice incidental to business advice. See PG&E, 69 Fed. Cl. at 811. However, it appears to the court that the comments initialed "CJW," presumably referring to Chris Warner, a PG&E attorney, provide predominantly legal advice. See Pl.'s Resp. at 3 (referring to "the typed notes on the document with Mr. Warner's initials"). Accordingly, the court ORDERS plaintiff to PRODUCE to defendant Document No. 827 in redacted form. Plaintiff may REDACT all portions of Document No. 827 that are underlined, italicized, bracketed, in bold print and begin with "CJW comment."

Document Nos. 42, 43, 44, 45, 46, 47 and 48

While plaintiff states that parts of Document Nos. 42 and 43 should be produced, see Pl.'s Resp. at 2, 4, plaintiff argues that the remaining portions of these documents, as well as Document Nos. 44, 45, 46, 47 and 48 are protected by the attorney-client privilege

because "the attorney-client privilege protects communications to counsel for the purpose of obtaining legal advice in addition to counsel's advice to the client," id. at 4. While this is true, after reviewing Document Nos. 42-48 in camera, it is apparent that these documents are, in fact, emails exchanged between PG&E employees that simply include Richard Locke, a PG&E attorney, as a recipient. Moreover, it appears to the court that these emails address business, not legal, matters. See PG&E, 69 Fed. Cl. at 811. Accordingly, the court ORDERS plaintiff to PRODUCE to defendant Document Nos. 42, 43, 44, 45, 46, 47 and 48 in their entirety.

Document No. 64

Plaintiff argues that Document No. 64, a letter from a PG&E employee to other PG&E employees, as well as PG&E counsel, is protected by the attorney-client privilege because "[a]s long as the communication is shared with only those employees who need access to it, the privilege is maintained." Pl.'s Resp. at 4. After reviewing plaintiff's Supplemental Privilege Log, defendant "identified a document that appears to be the same, or substantially similar to, the document described as Document No. 64," Def.'s Reply at 6, that plaintiff has produced to defendant. Defendant attached this produced document for the court's review. See id. Attachment (Attach.) 4. Defendant argues that, if these documents are the same or substantially similar, then plaintiff has no basis to support its assertion of attorney-client privilege over Document No. 64. The court agrees with defendant. Not only is Document No. 64 exactly the same as the document already produced by plaintiff and provided in the attachment to defendant's Reply, compare id. with Document No. 64, but Document No. 64 addresses business, not legal, matters. See PG&E, 69 Fed. Cl. at 811. Accordingly, the court ORDERS plaintiff to PRODUCE to defendant Document No. 64 in its entirety.

Document Nos. 86, 87 and 88

Plaintiff states that Document Nos. 86, 87 and 88, are protected by the attorney-client privilege. See Def.'s Mot. Appendix (App.) at 18 (Documents from Supplemental Privilege Log that Will Not be Released). These documents, which are almost identical, contain emails between PG&E employees, one of which mentions a question asked by PG&E attorney Chris Warner, and another which provides a response to this question. After reviewing Document Nos. 86-88 in camera, it appears to the court that this question, its response, and all other information provided in these emails address predominantly business, not legal, matters. See PG&E, 69 Fed. Cl. at 811. Accordingly, the court ORDERS plaintiff to PRODUCE to defendant Document Nos. 86, 87 and 88 in their entirety.

Document No. 105

Plaintiff argues that Document No. 105 is protected by the attorney-client privilege because it "documents a discussion with legal counsel on a legal issue." Pl.'s Resp. at 4. Document No. 105 was authored by Larry Van Note, presumably a PG&E employee, and states, at the top, "Discussion with Craig Buchsbaum [a PG&E attorney] and Dick Patterson [not identified]." Document No. 105. This is the only indication that Document No. 105 "documents a discussion with legal counsel." The remainder of Document No. 105 is purely informational, and the content of any communication with PG&E counsel cannot be distinguished from content provided by the author himself. The subject is the treatment of certain funds collected from ratepayers. Even assuming that certain tax aspects of the information were gleaned from an attorney – a fact which cannot be ascertained from the document – the information discussed focuses on the business regulatory regime without which plaintiff cannot function. See id. The court views the discussion of the tax treatment of ratepayers' funds as primarily a business matter. See PG&E, 69 Fed. Cl. at 811. Accordingly, the court ORDERS plaintiff to PRODUCE to defendant Document No. 105 in its entirety.

Document No. 138

Plaintiff argues that Document No. 138 is protected by the attorney-client privilege because it contains an email "authored by Mr. Womack [a PG&E employee] and sent to Mr. Lock [a PG&E attorney]." Pl.'s Resp. at 5. Plaintiff states that it is this email that is privileged from discovery, while "[t]he concluding email is not privileged, but it . . . provides no discoverable information." Id. Defendant responds that, "[a]t a minimum, PG&E should be compelled to produce the e-mail that it admits is 'not privileged.'" After reviewing this document in camera, the court concludes that the email authored by Mr. Womack and sent to Mr. Locke is protected by the attorney-client privilege. This email requests primarily legal, rather than business, advice. See PG&E, 69 Fed. Cl. at 811. However, because plaintiff concedes that the "concluding email is not privileged," Pl.'s Resp. at 5, the court ORDERS plaintiff to produce to defendant Document No. 138 in redacted form. Plaintiff may REDACT from Document No. 138 all contents of the email sent from Mr. Womack to Mr. Locke.

Document No. 198

Plaintiff argues that Document No. 198 is protected under the work product doctrine because is a "draft filing [that] was prepared to rebut presumptions issued in the Administrative Law Judge's decision [after a California Public Utilities Commission

(CPUC) investigation].” Pl.’s Resp. at 5. Plaintiff states that this decision “was entered in a proceeding . . . that was initiated against PG&E.” Id. at 6.

The court provided guidance in its Opinion on the issue of whether materials created in anticipation of CPUC proceedings are protected under the work product doctrine:

> [P]roceedings before the CPUC can, in some circumstances, resemble “litigation.” However, it is also true that initial filings for these proceedings, and any evidence presented or testimony provided to the CPUC thereafter in order accurately to set rates and revenues, can take the form of “primarily ex parte administrative, not . . . adversarial, proceeding[s].” McCook[ Metals L.L.C. v. Alcoa, Inc.], 192 F.R.D. [242,] 260 [(N.D. Ill. 2000)]. Indeed, it appears to the court from the briefing before it that, much like an applicant in a patent application proceeding, an applicant seeking to set rates and the presiding officer “are on fairly neutral grounds.” Id. at 262. And it is entirely possible that an applicant may “face[] no opposing parties or adversaries” such that the “proceedings [are] entirely ex parte.” In re Grand Jury Subpoenas dated March 9, 2001, 179 F. Supp. 2d [270,] 274 [(S.D.N.Y. 2001)]. Even when another party does intervene in these proceedings before the CPUC, it is simply “participat[ing] in the proceeding to the degree indicated by the presiding officer,” see Cal. Code. Regs. tit. 20, § 54, and the purpose of the intervention may not be entirely adversarial, if at all. Given this, and that the ultimate goal of such proceedings is not adversarial but rather accurately to set rates and revenues as required by the CPUC, the court does not believe it would serve the purposes of the work product doctrine to provide the blanket label of “litigation” to every aspect of these proceedings. Cf. In re Grand Jury Subpoena, 220 F.R.D. [130,] 147 [(D. Mass. 2004)] (“‘Adversarialness’ is the touchstone of this approach to the ‘litigation’ question, and a number of courts seem to have followed it to a large degree.”). Instead, only those aspects of proceedings before the CPUC that are truly adversarial should be treated as “litigation” for the purposes of the work product doctrine.

PG&E, 69 Fed. Cl. at 801-02.

After reviewing Document No. 198 in camera, the court concludes that it was not prepared in anticipation of “litigation” as defined in the court’s Opinion. See id. Contrary to plaintiff’s assertion, it does not appear to the court that this CPUC proceeding

was "initiated against PG&E." Pl.'s Resp. at 6. Indeed, the document states that the CPUC "instituted an investigation for the purpose of considering present and alternative methods of financing the future decommissioning costs of nuclear generating stations by regulated public utilities," including PG&E. Document No. 98 at 1. This appears to the court to be more akin to a "'primarily ex parte administrative, not . . . adversarial, proceeding[].'" PG&E, 69 Fed. Cl. at 801 (quoting McCook, 192 F.R.D. at 260). Nor does it appear to the court that Document No. 198 was prepared in anticipation of an "adversarial" aspect of this proceeding or for "adversarial" purposes. See id. at 2 ("This material is not intended as argument, nor is it intended to reopen the generic case. Rather it is intended to call the Commission's attention to the magnitude of the problem and to certain of its implications."), 3 ("[T]his is not meant to argue the present titled case but to further inform the Commission as to the magnitude of the problem."); PG&E 69 Fed. Cl. at 801-02. Accordingly, the court ORDERS plaintiff to PRODUCE to defendant Document No. 198 in its entirety.

Document No. 665

Plaintiff argues that Document No. 665 is protected under the work product doctrine because it "is a draft settlement addressing disputes in a ratemaking proceeding," and "[a]bsent an adversarial proceeding, there would be nothing for the settlement agreement to settle." Pl.'s Resp. at 6. Defendant argues that, "[g]iven the nature of the [General Rate Case (GRC)] proceedings before the CPUC, there is no indication that the document, although characterized as a 'settlement agreement,' would not have been prepared to address the setting of rates and revenues in the normal course of business for a utility operating in California." Def.'s Reply at 9. After reviewing Document No. 665 in camera, the court concludes that it is protected under the work product doctrine. It appears to the court that potentially adversarial parties were involved in PG&E's GRC proceeding before the CPUC, see Pl.'s Resp. at 6 ("The document . . . makes clear that the parties included PG&E, the Division of Ratepayer Advocates and the Attorney General of the Statute of California."), and that this document was prepared in response to and as a result of this "adversarialness," see PG&E, 69 Fed. Cl. at 802.

For the foregoing reasons, defendant's Motion is GRANTED-IN-PART and DENIED-IN-PART. Plaintiff is hereby ORDERED to PRODUCE to defendant Document Nos. 825, 828, 42, 43, 44, 45, 46, 47, 48, 64, 86, 87, 88, 105 and 198 in their entirety and, as described above, Document Nos. 827 and 138 in redacted form. To the extent that they have not already been produced, plaintiff is hereby ORDERED to PRODUCE to defendant Document Nos. 76, 77, 79, 80 and 593 from plaintiff's Initial Privilege Log and Doc Nos. 310, 311, 654 and 786 from plaintiff's Supplemental Privilege Log.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge