No. 04-0074C
into which has been consolidated
No. 04-0075C
Judge Hewitt

(Filed Electronically, April 18, 2006)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# PACIFIC GAS & ELECTRIC'S MOTION TO EXCLUDE TESTIMONY FROM JOHN R. MCGRATH

---

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 phone
(202) 261-4751 fax
*Counsel for Plaintiff*
Pacific Gas & Electric Company

Of Counsel:
ROBERT L. SHAPIRO
Greenberg Traurig, LLP

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................ 2

I. THE COURT SHOULD PRECLUDE MR. MCGRATH'S PROPOSED TESTIMONY BECAUSE IT IS IRRELEVANT UNDER FEDERAL RULES OF EVIDENCE 401 AND INADMISSIBLE UNDER RULE 402 .................................................... 2

II. THIS COURT HAS THE POWER UNDER RULE 702 TO PRECLUDE EXPERT TESTIMONY IF NOT RELEVANT, RELIABLE, AND HELPFUL ............................... 6

III. MR. MCGRATH'S PROPOSED TESTIMONY FAILS TO SATISFY THE REQUIREMENTS FOR EXPERT TESTIMONY UNDER RULE 702 ........................... 6

A. Schedule And Delay Analysis Is Not An Expertise; Mr. McGrath Is Not Qualified To Offer An Opinion About Delays In The Scheduling and Implementation Of PG&E's Dry Storage Facilities; And Testimony About Alleged Delays, Without More, Is Irrelevant ........................................................................................ 8

B. Mr. McGrath's Proposed Testimony Is Not Based Upon Specialized Knowledge And Will Not Assist the Court ........................................................................ 10

C. Mr. McGrath's Purported Analysis Of His "Baseline Schedule" Relies Upon Insufficient Facts And Is Unreliable ............................................................... 12

D. Mr. McGrath's Proposed Testimony Is Not The Product Of Reliable Principles Or Methods ......................................................................................... 13

CONCLUSION ................................................................................................... 14

# TABLE OF AUTHORITIES

Cases

*Baskett v. United States*, 2 Cl. Ct. 356 (1983), *aff'd*, 790 F.2d 93 (Fed. Cir. 1986)....................... 2

*Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994) ................................................................. 8

*Biovail Corp. Int'l v. Andrx Pharm., Inc.*, 239 F.3d 1297(Fed. Cir. 2001) .................................. 6

*Chain Belt Co. v. United States,* 115 F. Supp 701 (Ct. Cl. 1953).................................................. 4

*Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194 (4th Cir. 2001) ................................................... 6

*Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993) ............................................. 2, 6, 13

*General Elec. Co. v. Joiner,* 522 U.S. 136 (1997)......................................................................... 13

*Gray v. Briggs*, 45 F. Supp. 2d 316 (S.D.N.Y. 1999)..................................................................... 6

*Indiana Michigan Power Co. v. United States* 422 F.3d 1369 (Fed. Cir. 2005) ........................... 4

*INSLAW, Inc. v. United States*, 35 Fed. Cl. 295 (1996)................................................................ 2

*Koby v. United States,* 53 Fed. Cl. 493 (2002) ............................................................................... 5

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) .................................................................... 6

*Sacramento Municipal Utility Dist. v. United States,* Slip Op. (Fed. Cl. March 31, 2006)... 4, 5, 9

*T.C. Bateson Constr. Co. v. United States,* 319 F.2d 135 (Ct. Cl. 1963) ...................................... 5

*Tennessee Valley Authority v. United States*, 69 Fed. Cl. 515 (2006)........................................... 4

*United States v. Gwaltney*, 790 F.2d 1378 (9th Cir. 1986), *cert. denied*, 479 U.S. 1104 (1987) ... 6

*Westfed Holdings v. United States*, 55 Fed. Cl. 544 (2003).......................................................... 8

*Yankee Atomic Elec. Co. v. United States,* No. 98-126C Order of August 29, 2003
(Fed. Cl. filed Feb. 18, 1999)........................................................................................ 5

*Zenith Electronics Corp. v. WH-TV Broadcasting Corp.,* 395 F.3d 416 (7th Cir. 2005)............. 13

TABLE OF AUTHORITIES, cont.

Rules

Fed. R. Evid. 401 .......... 1, 4, 6, 16

Fed. R. Evid. 402 .......... 1, 6, 16

Fed. R. Evid. 702 .......... passim

# INDEX TO APPENDIX

Report of John R. McGrath ........................................ A1

John R. McGrath Deposition Transcript Excerpts ........................................ A36

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically Filed on April 18, 2006

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 04-0074C,<br>into which has been consolidated No. 04-0075C<br>(Judge Hewitt) |

**PACIFIC GAS & ELECTRIC'S MOTION**
**TO EXCLUDE TESTIMONY FROM JOHN R. MCGRATH**

Pursuant to RCFC 16, PG&E moves for an order precluding John R. McGrath from testifying as an expert witness. Mr. McGrath purports to offer "opinions" regarding his analysis of delays in the scheduling and implementation of dry storage facilities for spent nuclear fuel and high-level radioactive waste (together "SNF") at PG&E's Diablo Canyon and Humboldt Bay power plants. Under Fed. R. Evid. Rules 401 and 402, to be admissible, "evidence [must] hav[e] [a] tendency to make the existence of any fact that is of consequence to the determination of the action more…or less probable…." *See* Fed. R. Evid. 401, 402. Mr. McGrath's proposed testimony is nothing more than a recitation of facts that have no probative value. It is, in sum, irrelevant.

In addition, Mr. McGrath is being offered as an expert witness. Thus, his proposed testimony is held to a higher standard of admissibility than under Rule 401. Rule 702 requires that expert testimony must not only be relevant, but also reliable, reflect scientific, technical or other specialized knowledge, and ultimately, helpful to the trier of fact to be admissible. *See*

Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993). Mr. McGrath's proposed testimony regarding the "delays" between scheduling and implementation of PG&E's dry storage facilities fails to meet these requirements.

## ARGUMENT

### I. THE COURT SHOULD PRECLUDE MR. MCGRATH'S PROPOSED TESTIMONY BECAUSE IT IS IRRELEVANT UNDER FEDERAL RULES OF EVIDENCE 401 AND INADMISSIBLE UNDER RULE 402

Under RCFC 16, this Court has the authority to rule in advance of trial on the admissibility of documentary or testimonial evidence "to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters." *Baskett v. United States*, 2 Cl. Ct. 356, 367-68 (1983), *aff'd*, 790 F.2d 93 (Fed. Cir. 1986). "In this manner the court filters out irrelevant evidence and performs its function of 'simplifying issues for trial.'" *INSLAW, Inc. v. United States*, 35 Fed. Cl. 295, 303 (1996) (quoting *Baskett*, 2 Ct. Cl. at 359).

Mr. McGrath's proposed testimony purports to "analyze the activities, milestones, and events" relating to PG&E's pursuit of dry storage systems[1] for its Diablo Canyon ("DCPP") and Humboldt Bay ("HBPP") power plants. McGrath Expert Report ("Report") at 1, App. A4. He claims that this analysis allowed him to "determine[] the actual critical path of work, calculate[] delays incurred to critical milestones, and attribute[] the delays to various root causes." *Id.* Mr. McGrath "opines" that PG&E incurred delays of 27 months for DCPP and 47 months for HBPP, in the implementation and execution of the ISFSI projects. Report at 5 - 6, App. A8 - A9. In reality, Mr. McGrath's proposed testimony does much less than he promises, as he does not "determine[] . . . and attribute[] the delays to various root causes." *Id.* In fact, Mr. McGrath

[1] A dry storage system for spent nuclear fuel is known as an Independent Spent Fuel Storage Installation ("ISFSI"). This is a common term of art used throughout the industry.

admits that he has done nothing more than compare the variance between an early PG&E schedule with PG&E's actual experience in planning for and implementing the construction of its dry storage facilities:

> Q So in essence, [your] schedule and delay analysis is comparing a baseline projected schedule to the actual experience of an organization performing that project?
>
> * * *
>
> A In this case, that's essentially the analysis that I performed.

McGrath Deposition Transcript ("Tr.") at 25:6-18, App. A40. Significantly, Mr. McGrath expresses no opinion as to whether the projected schedule against which he made his comparisons included reasonable estimates of time to complete various tasks or whether PG&E implemented the projected schedule in a reasonable and prudent manner.[2]

> Q You're not saying that it was imprudent in any way for PG&E to proceed in an incremental and serial manner in the implementation of its ISFSI projects, are you?
>
> A No, I'm not.
>
> Q And you would lack the expertise to offer an opinion as to whether or not PG&E's pursuit of its ISFSIs in an incremental manner was imprudent in any way, correct?
>
> A That's correct.

Tr. at 65:10 - 19, App. A46.

PG&E does not dispute that the implementation of the ISFSI projects at DCPP and HBPP has taken longer than PG&E initially envisioned. But Mr. McGrath does not claim that PG&E's damages in this case should be offset because of these variances. Of particular note is Mr.

[2] "Q So you're saying you have the expertise to make a judgment as to how long it should take to construct a dry storage facility at a nuclear power plant? A No, I'm not saying that…." Tr. at 29:3 – 7, App. A41.

McGrath's refusal to opine whether PG&E was somehow imprudent in its actions which may have contributed to the variances between the planned schedule and actual results.

> Q. And you wouldn't make an independent characterization as to whether or not the variance in the actual experience versus the forecasted schedule was due to imprudence, at least in part, because you don't have the expertise to make such a determination, correct?
>
> (objection omitted)
>
> A That's correct.

Tr. at 73:13 – 22, App. A49. As such, Mr. McGrath's proposed testimony is not relevant, as it does not "hav[e] [the] tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

It is well-settled and universally recognized that the standard against which a party's mitigation efforts are measured is reasonableness. The Court of Claims applied that standard more than fifty years ago in *Chain Belt Co. v. United States,* 115 F. Supp 701, 714 (Ct. Cl. 1953), where it explained that a plaintiff "may recover as damages the expense incurred in such reasonable effort to avoid harm." *Accord Indiana Michigan Power Co. v. United States* 422 F.3d 1369, 1375 (Fed. Cir. 2005); *Tennessee Valley Authority v. United States*, 69 Fed. Cl. 515, 528 (2006) ("TVA's expenses of its mitigation are accordingly recoverable to the extent they are reasonable."); *Sacramento Municipal Utility Dist. v. United States,* slip Op. at 51 (Fed. Cl. March 31, 2006) ("if an injured party's efforts to mitigate damages from a breach are reasonable, they are recoverable"). This Court has applied this established law in other spent fuel cases, stating that "[t]he government bears the burden of showing that [plaintiff]'s mitigation efforts were unreasonable." *TVA*, 69 Fed. Cl. at 523; *SMUD*, slip op. at 51 ("the government bears the

burden or proving that actions to mitigate were unreasonable"); *Yankee Atomic Elec. Co. v. United States,* No. 98-126C Order of August 29, 2003 at 3 (Fed. Cl. filed Feb. 18, 1999) ("[d]efendant would have the burden of proof as to any such failure to mitigate assertion") (citing *T.C. Bateson Constr. Co. v. United States,* 319 F.2d 135, 140 (Ct. Cl. 1963); *see Koby v. United States,* 53 Fed. Cl. 493, 496 (2002)). As noted above and discussed further below, Mr. McGrath does not even address the issue of reasonableness.

Mr. McGrath testified in *SMUD* concerning the issue of schedule delays in the construction of an ISFSI. Similar to his proposed testimony here, he failed in *SMUD* to offer any opinion or make any conclusion concerning the prudency of SMUD's actions. The Court concluded that Mr. McGrath "failed to render an opinion as to the reasonableness of the … delays or the specific costs incurred as a result," and because "[t]he government failed to establish that SMUD acted unreasonably with respect to these [] delays … the court [] determined not to offset any amount for these delays." *SMUD* Slip op. at 55. Consequently, Mr. McGrath's failure to offer any opinion here concerning the reasonableness of PG&E's conduct with respect to the schedule delays is a glaring omission and fatal to the admissibility of his proposed testimony. Absent such a conclusion, Mr. McGrath's proposed testimony is simply not relevant, and therefore inadmissible because it lacks any persuasive value that might "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 and 402.

## II. THIS COURT HAS THE POWER UNDER RULE 702 TO PRECLUDE EXPERT TESTIMONY IF NOT RELEVANT, RELIABLE, AND HELPFUL

This Court functions as a "gatekeeper," admitting only expert testimony which is "relevant [and] reliable," *Daubert,* 509 U.S. at 589, and which "will assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (extending the basic gate-keeping obligation for scientific testimony established in *Daubert* to all expert testimony, *Daubert,* 509 U.S. at 589). The Court's gatekeeping function in this regard permits the Court to exclude the testimony of proposed expert witnesses. *See Biovail Corp. Int'l v. Andrx Pharm., Inc.*, 239 F.3d 1297, 1303 (Fed. Cir. 2001) (one purpose of gatekeeping role is to ensure that all expert testimony is both relevant and reliable). As such, the Court has "broad discretion to exclude expert testimony for its lack of helpfulness or for the expert's lack of qualifications." *Gray v. Briggs*, 45 F. Supp. 2d 316, 323 (S.D.N.Y. 1999) (citations omitted). Moreover, the Court should exercise this discretion and exclude expert testimony where the proponent fails to show that the proposed testimony meets Rule 702's standard by a preponderance of the evidence. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *United States v. Gwaltney*, 790 F.2d 1378, 1382 (9th Cir. 1986), *cert. denied*, 479 U.S. 1104 (1987).

## III. MR. MCGRATH'S PROPOSED TESTIMONY FAILS TO SATISFY THE REQUIREMENTS FOR EXPERT TESTIMONY UNDER RULE 702

Even if the Court were to consider Mr. McGrath's proposed testimony relevant under Rule 401, as an expert witness Mr. McGrath's opinions must also satisfy all of the requirements of Rule 702. Mr. McGrath is not qualified to testify as an expert in this matter as he lacks sufficient "knowledge, skill, experience, training or education" about the "specific question(s)"

at issue in this case. Fed. R. Evid. 702. Mr. McGrath admits that he lacks the relevant qualifications to even offer an opinion as to the reasonableness of PG&E's actions.

Mr. McGrath should also not be permitted to testify as an expert as his testimony is not based on any "specialized knowledge." As a simple reporter of facts found in certain documents (i.e., the fact that the actual schedule upon which PG&E's ISFSIs were built differed from the schedule projected at the outset), Mr. McGrath's opinions will not "assist the [Court] to understand the evidence or to determine a fact in issue." *Id.*

Admissible expert opinions must also be "supported by sufficient facts or data." *Id.* Mr. McGrath's proposed testimony is comprised of a series of conclusions relating to the variances between a baseline schedule and the dates that certain tasks were actually completed. Mr. McGrath is, however, unable to articulate a reasoned basis for selecting this baseline schedule and whether dates included in that schedule were appropriate estimates of the time that it would take to complete various projects.[3] As all of Mr. McGrath's purported opinions are premised upon his baseline schedule, his opinions are not "supported by sufficient facts or data" and therefore are not admissible.

Finally, the Court should preclude Mr. McGrath from testifying because his "opinions" are not "the product of reliable principles or methods." *Id.* In fact, Mr. McGrath *presents* no methodology and, consequently, *applies* no methodology in "analysis" of the project schedules.

For all these reasons Mr. McGrath should not be permitted to testify as an expert in this case as his "opinions" will not assist this Court with determining any fact in issue.

---

[3] "Q You yourself don't have the expertise sufficient to determine how long it should take to develop a license application under 10 CFR Part 72, do you? A No. Again, I relied on the documents that PG&E produced and developed that estimated that activity and its duration." Tr. at 32:2 – 8, App. A42.

### A. Schedule And Delay Analysis Is Not An Expertise; Mr. McGrath Is Not Qualified To Offer An Opinion About Delays In The Scheduling and Implementation Of PG&E's Dry Storage Facilities; And Testimony About Alleged Delays, Without More, Is Irrelevant

Mr. McGrath fails to establish that "schedule and delay analysis" is a recognized expertise that will assist the Court to determine a fact in issue. Even assuming it were a recognized expertise, Mr. McGrath is not qualified to perform such an analysis as it relates to scheduling and implementation of dry storage facilities for SNF where complex and unusual seismic issues must be addressed. In order to testify in the form of an opinion, a witness must be "qualified . . . by knowledge, skill, experience, training or education," in an area of "scientific, technical, or specialized knowledge." Fed. R. Evid. 702. Assuming that Mr. McGrath can demonstrate *general* knowledge of construction scheduling and engineering, that in itself is insufficient.[4] This Court has held that a witness must show expertise relevant to the *particular* question in the case. *See Westfed Holdings v. United States*, 55 Fed. Cl. 544, 571 (2003) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994), "The court agrees that the issue is not the qualifications of the witness in the abstract or in general but 'whether those qualifications provide a foundation for a witness to answer a specific question.'").

The "specific question(s)" here is the scheduling and implementation of dry storage facilities for SNF in locations that are subject to significant seismic activity and whether PG&E's actions in scheduling and work towards implementation of its ISFSIs were reasonable. Mr. McGrath's knowledge, skill, experience, education or training do not reflect even a rudimentary expertise in these area. Mr. McGrath is unable to address preliminary questions regarding

[4] Mr. McGrath's education includes a bachelor degree in aerospace engineering. He claims that his work with scheduling at McDonnell Douglas and experience "analyzing schedules in a consulting capacity" contribute to his qualifications as an expert in schedule and delay analysis here, pertaining to the PG&E ISFSIs. *See* Tr. 6:7 - 7:12, App. A37 - A38.

licensing and permitting of NRC-regulated facilities. He admits he has no expertise in NRC licensing matters (Tr. at 152:4 – 10, App. A56) or in any geotechnical analyses that PG&E had to address in order to construct its ISFSIs. Tr. at 167:15 – 18, App. A57. Although he asserts that he "rel[ies] extensively on the project documentation and the actual contemporaneous documents produced by the people scheduling and working the project," Tr. at 25:1 – 4, App. A40, Mr. McGrath's glaring unfamiliarity with these documents was demonstrated by his inability to answer a fundamental question relating to a "critical path" requirement for building an ISFSI – whether, under NRC rules, PG&E could have used a general (as opposed to a site specific) license to implement its ISFSI.[5] Tr. at 53:4 – 19, App. A45. Furthermore, Mr. McGrath readily admits that he does not have the expertise to make a determination concerning the prudency of any variances in the schedule.[6]

Mr. McGrath's only experience with nuclear utilities and scheduling and planning for the construction of an ISFSI was gained in prior litigation involving another nuclear utility, a case where for all practical purposes, this Court ignored his opinion. *See SMUD,* slip op. at 55 ("Mr. McGrath, however, failed to render an opinion as to the reasonableness of the…delays or the specific costs incurred as a result."). That is not surprising as neither Mr. McGrath's education nor his experience demonstrate any focus on or even familiarity with on the "specific question" of whether PG&E's scheduling and work towards implementation of an ISFSI was reasonable.

---

[5] Unlike other utilities, PG&E could not use existing NRC licensed dry storage systems.

[6] *See* Tr. at 73:13 – 22, App. A49. Q: "And you wouldn't make an independent characterization as to whether or not the variance in the actual experience versus the forecasted schedule was due to imprudence, at least in part, because you don't have the expertise to make such a determination, correct?" [objection omitted] A: "That's correct."

The Court should not permit Mr. McGrath to testify as an expert where he lacks the necessary specific qualifications to testify about the "specific question(s)" in this case and where he admits that he lacks the expertise to making a determination as to the reasonableness of PG&E actions.

B. Mr. McGrath's Proposed Testimony Is Not Based Upon <u>Specialized Knowledge And Will Not Assist the Court</u>

Rule 702 allows an otherwise qualified expert to present "scientific, technical, or other specialized knowledge [if it] will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Mr. McGrath's proposed testimony demonstrably is not based on any "specialized knowledge" as he admits numerous times that he is simply reporting the information contained within certain documents. *See* Tr. at 24:15 - 25:4, App. A39 - A40 ("I do rely extensively on the project documentation and the actual contemporaneous documents produced by the people scheduling and working the project."); Tr. at 70:1 – 12, App. A47 ("My expertise in this case is in relating the descriptions and causes of the delays that are contained in the contemporaneous records …"). The only "opinion" Mr. McGrath offers is that there are differences between a forecasted schedule and PG&E's actual implementation of its dry storage projects. His "opinion" is not based upon any "specialized knowledge" as Mr. McGrath used simple mathematics to calculate the difference (expressed as a number of weeks or months) between the planned date of completion from the actual date.

Absent demonstrated application of "specialized knowledge," Mr. McGrath is simply an observer of the facts and his conclusions will not assist the Court in determining any fact in

issue.[7] Mr. McGrath even admits that "anyone could do" what he did and his "opinion" adds so little that government counsel could simply take the documents he identified and ask the Court to compare the dates on those documents:

> Q I'm asking as a theoretical matter. Wouldn't that work? Couldn't the government counsel simply take the documents that you've identified as reflecting a forecasted schedule and an actual experience schedule and offer those to the court for the Court to compare the dates on the two documents?
>
> (objection omitted)
>
> A Theoretically, I'm sure that they could -- the government's counsel could do that.
>
> Q And if the government's counsel did that, then the Court could adequately compare the forecasted schedule to the -- to the actual experience to see the variances, correct?
>
> (objection omitted)
>
> A That is correct. In my opinion, that would not give you -- wouldn't be that illuminating as to any of the detail beneath that high-level comparison. *But the comparison in that manner certainly could be done, and theoretically anyone could do that.*

(emphasis added) Tr. at 39:16 - 40:22, App. A43 - A44.

Mr. McGrath protests that this comparison that *"anyone could do"* would not be "illuminating as to any of the detail[s]," yet he is unable to describe what detail he is referring to other than "the reasons and the causes for the variances that are identified in the schedule." Tr. at 40:18 – 22, App. A44. If the value in Mr. McGrath's proposed testimony is the "illuminating details" that are admittedly identified in the schedule, then his proposed testimony is duplicative

[7] In addition to admitting that he does not have the expertise to opine on the prudency of the variance between the planned schedule for the HBPP ISFSI and PG&E's actual experience in developing the ISFSI, Mr. McGrath testified he could offer an "opinion" on that issue "[o]nly to the extent that that characterization would be contained in the project records. It's not an independent characterization that I would make." Tr. at 72:22 - 73:12, App. A48 - A49.

of what is already contained in the documents and will accomplish nothing more than to waste the Court's time by the needless presentation of cumulative evidence.

### C. Mr. McGrath's Purported Analysis Of His "Baseline Schedule" Relies Upon Insufficient Facts And Is Unreliable

At the foundation of Mr. McGrath's purported analysis is a "baseline schedule" that he cobbled together from several preliminary PG&E planning schedules. Mr. McGrath contends that this schedule was taken "for the most part" from one project schedule prepared by PG&E in 1999. Tr. 83:1 – 4, App. A54**.** Mr. McGrath can articulate no good reason why this particular schedule, as compared to a multitude of other projected schedules, should be used for his baseline schedule. Upon examination, he admits that the reasons he chose this schedule – (1) because PG&E shared this schedule with the NRC and (2) because an ISFSI project charter was prepared by PG&E at the same time this schedule was created, Tr. at 77:1 - 78:6, 78:15 – 20, App. A50 - A54, – are entirely without substance.

Mr. McGrath concedes that he lacks the expertise to know whether sharing a project schedule with the NRC is significant "beyond what's indicated in the project records." Tr. at 77:20 - 78:14, App. A50 - A51. When pressed as to why providing this schedule to the NRC made it significant he could say no more than: "It's a presentation outside the company." Tr. at 77:20 - 78:6, App. A50 - A51. Mr. McGrath conceded that he is equally ignorant as to whether the other reason for selecting this schedule for his baseline was justified. He admits that he does not know the significance of a project charter or the extent to which PG&E uses or relies upon these project charters. Tr. at 79:9 - 80:1, App. A52 - A53.

Mr. McGrath's glaring inability to articulate a reasoned basis for relying on particular documents in preparing his baseline schedule illustrates that he is a "fish out of water" concerning project scheduling in the nuclear utility industry. His lack of technical or other

specialized knowledge with regard to the nuclear industry precludes Mr. McGrath from offering any relevant personal opinion or reasoned basis for the timelines in his baseline schedule. Quite simply, Mr. McGrath prepared his baseline schedule without sufficient facts or data, and his purported analysis is nothing more than a rudimentary comparison of two schedules, which anyone could do. Because his baseline schedule lacks sufficient reliability or relevance, any conclusions made in reliance upon it are arbitrary, unreliable and ultimately irrelevant.

### D. Mr. McGrath's Proposed Testimony Is Not The Product Of Reliable Principles Or Methods

The Court should also preclude Mr. McGrath from testifying as an expert because his "opinions" are not "the product of reliable principles or methods." Fed. R. Evid. 702. "[T]estifying experts may [] show the validity of their theory by explaining 'precisely how [the experts] went about reaching their conclusions and point[ing] to some objective source – a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like – to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field.'" *Domingo v. T.K., M.D.* 289 F.3d 600, 605-606 (9th Cir. 2002) (quoting *Daubert,* 43 F.3d at 1319). As noted above, Mr. McGrath *presents* no methodology and, consequently, *applies* no methodology in his "analysis" of the project schedules.[8] "[E]xperts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.,* 395 F.3d 416, 420 (7th Cir. 2005) (quoting *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)). The U.S. Court of Appeals for the 7th

---

[8] "…I believe I described the methodology as, you know, without specific terminology. As essentially, a review of all project records and data available, you know." *See* Tr. at 141:8 – 18, App. A55.

Circuit concluded in *Zenith* that the district court properly excluded the proposed testimony because the expert lacked a sufficient methodology. Here, Mr. McGrath's methodology is nothing more than an admitted review of the underlying project records. As the resulting conclusions offer nothing more than what can be found in the available data, it is not admissible.

CONCLUSION

Mr. McGrath's proposed testimony does not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence;" it is, therefore, irrelevant and inadmissible. Fed. R. Evid. 401 and 402.

Furthermore, Mr. McGrath should not be permitted to testify as an expert, as his proposed testimony does not meet Rule 702's requirements: (1) he lacks sufficient "knowledge, skill, experience, training or education" about the "specific question(s)" at issue in this case; (2) his testimony is not based on any "specialized knowledge;" (3) his opinions are not "supported by sufficient facts or data;" and his "opinions" are not "the product of reliable principles or methods." Therefore, Mr. McGrath's testimony will not be helpful to the Court.

For all these reasons Mr. McGrath should not be permitted to testify.

Dated: April 18, 2006

Respectfully submitted,

s/ Jerry Stouck

Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 Phone
(202) 261-4751 Fax
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:

Robert L. Shapiro
Greenberg Traurig, LLP