No. 04-0074C, into which has been consolidated No. 04-0075C
(Judge Hewitt)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RELY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DATED MARCH 14, 2006

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 353-0897
Facsimile: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

JOSHUA E. GARDNER
SCOTT R. DAMELIN
MARIAN E. SULLIVAN
HEIDE L. HERRMANN
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

April 19, 2006

Attorneys for Defendant

TABLE OF CONTENTS

PAGE(S)

DISCUSSION ........ 1

I. PG&E'S ASSERTION THAT PROCEDURES FOR INVOKING THE DELIBERATIVE PROCESS PRIVILEGE SHOULD DIFFER FROM THOSE FOR INVOKING OTHER EXECUTIVE PRIVILEGES LACKS ANY BASIS ........ 1

II. PG&E's COMPLAINT THAT *IN CAMERA* REVIEW - A PROCEDURE INVOKED IN MANY COURT REVIEWS OF EXECUTIVE PRIVILEGE CLAIMS – DOES NOT ALLOW PG&E TO REVIEW THE GOVERNMENT'S PRIVILEGED DOCUMENTS PROVIDES NO BASIS FOR REJECTING THE GOVERNMENT'S PRIVILEGE CLAIMS ........ 8

III. PG&E'S REMAINING ARGUMENTS LACK MERIT ........ 10

CONCLUSION ........ 11

TABLE OF AUTHORITIES

CASES PAGE(S)

Abramson v. United States,
39 Fed. Cl. 290 (1997) .......... 2

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002) .......... 2

Cobell v. Norton,
213 F.R.D. 1 (D.D.C. 2003) .......... 7

In re Consolidated Litigation Concerning Internationl Harvester's Disposition Of Wisconsin Steel,
Nos. 81-C-7065, 82-C-6895, & 82-C-3521,
1987 WL 20408 (N.D. Ill. Nov. 20, 1987) .......... 8

Crater Corp. v. Lucent Technologies, Inc.,
423 F.3d 1260 (Fed. Cir. 2005) .......... 4, 9

Crater Corp. v. Lucent Technologies, Inc.,
255 F.3d 1361 (Fed. Cir. 2001) .......... 4

Ellsberg v. Mitchell,
709 F.2d 51 (D.C. Cir. 1983) .......... 3

Kerr v. United States District Court for the Northern District of California,
426 U.S. 394 (1976) .......... 8

Landry v. Federal Deposit Insurance Corp.,
204 F.3d 1125 (D.C. Cir. 2000) .......... 2

Linder v. National Security Agency,
94 F.3d 693 (D.C. Cir. 1996) .......... 9

Marriott International Resorts, L.P. v. United States,
437 F.3d 1302 (Fed. Cir. 2006) .......... 3

McDonnell Douglas Corp. v. United States,
323 F.3d 1006 (Fed. Cir. 2003) .......... 3, 4

Monarch Assurance, L.P. v. United States,
244 F.3d 1356 (Fed. Cir. 2001) .......... 9

TABLE OF AUTHORITIES (cont'd)


CASES PAGE(S)

National Institute of Military Justice v. United States Department of Defense,
404 F. Supp. 2d 325 (D.D.C. 2005) ..................................................... 7

Pierson v. United States,
428 F. Supp. 384 (D. Del. 1985) ..................................................... 7

SCM Corp. v. United States,
473 F. Supp. 791 (Cust. Ct. 1979) ..................................................... 6, 7

Scott Paper Co. v. United States,
943 F. Supp. 489 (E.D. Penn. 1996) ..................................................... 7

In re Sealed Case,
121 F.3d 729 (D.C. Cir. 1997) ..................................................... 3, 5, 6, 10

United States v. Brett,
659 F.2d 154 (Temp. Emer. Ct. App. 1981) ..................................................... 3

United States v. Nixon,
418 U.S. 683 (1974) ..................................................... 5

United States v. Reynolds,
345 U.S. 1 (1953) ..................................................... 2, 4

Yankee Atomic Electric Co. v. United States,
54 Fed. Cl. 306 (2002) ..................................................... 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 04-0074C, into which has been consolidated No. 04-0075C (Judge Hewitt) |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DATED MARCH 14, 2006

Defendant, the United States, respectfully submits this reply to "PG&E's Opposition To Motion For Reconsideration" that plaintiff, Pacific Gas & Electric Company ("PG&E"), filed on April 5, 2006.

DISCUSSION

I. PG&E'S ASSERTION THAT PROCEDURES FOR INVOKING THE DELIBERATIVE PROCESS PRIVILEGE SHOULD DIFFER FROM THOSE FOR INVOKING OTHER EXECUTIVE PRIVILEGES LACKS ANY BASIS

In its response brief, PG&E apparently acknowledges that, when the Government invokes either the presidential communications privilege or the state secrets privilege, it does not have to produce affidavits supporting that privilege until after a motion to compel challenging the privilege is filed. Yet, PG&E asserts that the fundamental nature of the deliberative process privilege is somehow sufficiently different from these other Executive privileges to require a different procedural manner of invoking privilege, arguing that the presidential communications and state secrets privileges, unlike deliberative process, "attach due to the *nature* of the communications involved" and that "harm through disclosure is *presumed* from the nature of

[those] communications." PG&E Resp. 2 (italics in original).[1] PG&E claims that Government lawyers, in conducting privilege reviews prior to production, "can identify a presidential communication or a state secret, at least tentatively," with appropriate affidavits "confirming the *nature* of those documents" to "follow in due course," but that Government lawyers cannot make such judgments about deliberative process documents. Id. (italics in original).[2]

PG&E's argument is nonsensical. As an initial matter, PG&E does not cite to a single case to support its novel argument that some different set of procedural rules should apply to the invocation of the deliberative process than those that apply to invoking these other Executive privileges. None of these three privileges are formally invoked by Government lawyers. Instead, all three privileges have to be claimed and supported by an appropriate Federal official in an affidavit prepared for a case in which the Government has asserted the privilege. None of the privileges can be asserted in court without this affidavit. See United States v. Reynolds, 345 U.S. 1, 7-8 (1953) (state secrets privilege); Abramson v. United States, 39 Fed. Cl. 290, 294 n.3 (1997) (deliberative process privilege); Landry v. Federal Deposit Ins. Corp., 204 F.3d 1125,

---

[1] "PG&E ___" refers to PG&E's response to the Government's motion for reconsideration of the Court's March 14, 2006 order, which PG&E filed on April 5, 2006.

[2] In its response brief, PG&E repeatedly asserts that it is the Government's lawyers who have made the ultimate decisions in determining the documents over which the Government will invoke the deliberative process privilege. PG&E Resp. 6-8. There is simply no support in the record that Government attorneys somehow subverted the affiants' review process for invoking privilege. PG&E's speculation directly conflicts with the presumption that Government employees perform their duties in good faith. See Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002). Nevertheless, even if PG&E's assertions were true, it would not follow that the high-level officials who then formally invoked the privilege did not exercise their own independent judgment regarding the documents when they personally reviewed them and determined whether disclosure would cause a "chilling" effect upon agency deliberations.

1135 (D.C. Cir. 2000) (deliberative process privilege); In re Sealed Case, 121 F.3d 729, 741-76 (D.C. Cir. 1997) (deliberative process and presidential communications privileges). But see United States v. Brett, 659 F.2d 154, 155 (Temp. Emer. Ct. App. 1981) (finding no affidavit necessary for deliberative process privilege if documents are to be submitted for in camera review). Further, the United States Court of Appeals for the Federal Circuit has found that the deliberative process privilege and the presidential communications privilege are "closely affiliated," Marriott Int'l Resorts, L.P. v. United States, 437 F.3d 1302, 1305 n.3 (Fed. Cir. 2006), precluding PG&E's argument that those two privileges are somehow so different that they warrant different procedural rules.

Second, PG&E's characterization of the state secrets and presidential communications as being somehow "presumed" to apply to Government documents lacks support. In fact, contrary to PG&E's argument that Government lawyers are in a better position to identify documents containing state secrets than they would be to identify deliberative process documents, the Federal Circuit in Marriott recognized that, because the state secrets privilege is absolute and the deliberative process privilege is not, it is more important that the head of the agency invoke the state secrets privilege, while invocation of the deliberative process privilege may be delegated. Marriott, 437 F.3d at 1307. The state secrets privilege encompasses matters that, if disclosed, would harm the nation's defense capabilities, reveal intelligence gathering methods, or disrupt diplomatic relations with foreign governments. See generally Ellsberg v. Mitchell, 709 F.2d 51, 57 (D.C. Cir. 1983). Although courts "should accord the 'utmost deference' to executive assertions of privilege upon grounds of military or diplomatic secrets, and judicial review of such a claim of privilege is necessarily narrow," McDonnell Douglas Corp. v. United States, 323

F.3d 1006, 1021 (Fed. Cir. 2003), there is, contrary to PG&E's insinuation, no automatic "presumption" that every document generated by the military or at a certain level of the Government is subject to the state secrets privilege. To the contrary, to invoke the state secrets privilege successfully, the Government must demonstrate that "there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." Reynolds, 345 U.S. at 10. "The privilege does not protect from discovery material that is not strictly necessary to prevent potential harm to national security." Crater Corp. v. Lucent Technologies, Inc., 423 F.3d 1260, 1265 (Fed. Cir. 2005). To make the necessary showing, the appropriate Government official must submit an affidavit that identifies the findings invoking the privilege:

> The Military and State Secrets privilege allows the United States to block discovery in a lawsuit of any information that, if disclosed, would adversely affect national security. *Crater Corp. v. Lucent Techs., Inc.*, 255 F.3d 1361, 1370 (Fed. Cir. 2001). As the Supreme Court explained,
>
>> [t]he privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect.

McDonnell Douglas, 323 F.3d at 1021 (quoting without footnotes United States v. Reynolds, 345 U.S. 1, 7-8 (1953)) (emphasis added).

Similarly, although there is "a presumptive privilege for Presidential communications," founded on "a President's generalized interest in confidentiality," United States v. Nixon, 418

U.S. 683, 708, 711 (1974), the presidential communications privilege must still be properly invoked. That privilege is necessary to ensure that the "President and those who assist him [are] free to explore alternatives in the process of shaping policies and making decisions . . . ." Id. at 708. Like the deliberative process privilege, the presidential communications privilege is not absolute. A claim of Presidential privilege that is "based only on the generalized interest in confidentiality . . . must yield to the demonstrated, specific need for evidence . . .," at least in the context of a criminal trial, Nixon, 418 U.S. at 713, and, as with the deliberative process privilege, "courts must balance the public interests at stake in determining whether the privilege should yield in a particular case, and must specifically consider the need of the party seeking privileged information." Sealed Case, 121 F.3d at 746. PG&E's assertion that some significant difference in the nature of the presidential communications privilege and the deliberative process privilege that somehow necessitates a different procedural mechanism for invoking privilege is unsupported.

In any event, the United States Court of Appeals for the District of Columbia Circuit in In re Sealed Case, 121 F.3d 729 (D.C. Cir. 1997), made quite clear that the same timing requirements for the affidavits supporting a claim of state secrets or presidential communications privilege apply to the deliberative process privilege. Id. at 741-42. Although PG&E calls the D.C. Circuit's discussion of whether the Government waived the deliberative process privilege by not submitting the necessary affidavits formally invoking the privilege until after a motion to compel had been filed as "pure *dicta*," PG&E Resp. 10, the D.C. Circuit clearly and definitively considered and rejected the appellant's argument that the Government had waived both the deliberative process and presidential communications privileges by not timely asserting them. It

plainly found that, because "[t]he motion to compel was the first event which could have forced disclosure of the documents," the affidavit formally invoking the deliberative process privilege executed and filed after that motion was filed was sufficient to support the privilege claim. Id. at 740-42. PG&E's assertions of dicta ignore the attention that the D.C. Circuit provided to this issue.

Further, "[s]ince executive privilege exists to aid the governmental decisionmaking process, a waiver should not be lightly inferred." SCM Corp. v. United States, 473 F. Supp. 791, 796 (Cust. Ct. 1979), quoted in In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997). Even where the Government does not originally identify particular documents as protected by the deliberative process privilege, but raises the privilege claim for the first time in response to a motion to compel, "the opportunity to raise the claim of executive privilege should be permitted if it is required by the public interest." Id. In SCM Corp. v. United States, 473 F. Supp. 791 (Cust. Ct. 1979), the Government had originally responded to a motion to compel and filed a cross-motion for a protective order relating to various discovery requests, seeking to protect from disclosure, among others, a document that the Government originally asserted was "outside the scope of judicial review." Id. at 795. In compliance with the court's order, the Government subsequently submitted the various documents at issue to the court for in camera review, along with an affidavit from a high-level official invoking the deliberative process privilege over (1) the one document previously identified only as "outside the scope of judicial review" and (2) eight additional documents that had not previously been identified. Id. at 794. In response to the plaintiff's argument that the Government had waived the deliberative process privilege by not identifying it when it first identified the one document and by failing previously to identify

any of the additional eight documents, the United States Customs Court rejected the plaintiff's challenge, finding that identification of the privilege during the court's review of the matter was sufficiently timely to preclude a waiver of the privilege. Id. at 796.

Numerous other courts have recognized that, with regard specifically to the deliberative process privilege, the Government does not somehow waive the privilege by not having its affidavits available when the privilege log is originally produced. To the contrary, these courts have permitted the Government to obtain affidavits that comply with the prerequisites for invoking the deliberative process privilege even after they found original attempts to invoke the privilege ineffective. See, e.g., Cobell v. Norton, 213 F.R.D. 1, 8 (D.D.C. 2003) (after finding that Government had not properly invoked deliberative process privilege, stating that "Defendants will be provided with an opportunity to submit an affidavit that conforms with the requirements for proper invocation of the privilege" and establishing a procedure for future deliberative process assertions in that case); Scott Paper Co. v. United States, 943 F. Supp. 489, 498 (E.D. Penn. 1996) (after finding invocation of deliberative process privilege deficient, providing Government with "additional time to 'permit a higher-ranking IRS official to review the documents and assert the privilege'"); Pierson v. United States, 428 F. Supp. 384, 395 (D. Del. 1985) (after finding that original invocation of deliberative process privilege by other than the agency head ineffective, providing opportunity for agency head to invoke privilege "by formal affidavit"); see also National Inst. of Military Justice v. United States Dep't of Defense, 404 F. Supp. 2d 325, 348-49 (D.D.C. 2005) (declaration supplied to the court in response to challenge to deliberative process privilege claims, while submitted "late in the game," was sufficient to substantiate those claims); In re Consolidated Litig. Concerning Int'l Harvester's

Disposition Of Wisconsin Steel, Nos. 81-C-7065, 82-C-6895, & 82-C-3521, 1987 WL 20408, at *7 (N.D. Ill. Nov. 20, 1987) (although official's "affidavit was not filed contemporaneously with the invocation of the privilege, but rather only with [defendant's] brief in response to [plaintiff's] motion," it was sufficiently timely to justify deliberative process privilege claims). PG&E's arguments that the Court should create a new rule here – that affidavits formally invoking the deliberative process privilege must accompany the original privilege logs – conflict directly with the overwhelming weight of authority. PG&E's arguments should be rejected.

## II. PG&E's COMPLAINT THAT *IN CAMERA* REVIEW – A PROCEDURE INVOKED IN MANY COURT REVIEWS OF EXECUTIVE PRIVILEGE CLAIMS – DOES NOT ALLOW PG&E TO REVIEW THE GOVERNMENT'S PRIVILEGED DOCUMENTS PROVIDES NO BASIS FOR REJECTING THE GOVERNMENT'S PRIVILEGE CLAIMS

PG&E also complains that the Government's request for in camera review of the ex parte affidavits and documents is improper because "PG&E is entitled to *confront* the harm the government alleges and to overcome any alleged harm with a showing of evidentiary need." PG&E Response, at 11. In our motion for reconsideration, we cited to extensive court precedent, including the United States Supreme Court's decision in Kerr v. United States District Court for the Northern District of California, 426 U.S. 394 (1976), evidencing that, when a court finds that an Executive privilege has not been properly invoked, the Government should be provided an opportunity to correct any technical defects that the court perceives. By order dated March 23, 2006, the Court accepted our offer to submit the documents at issue here, along with ex parte affidavits further detailing the harm that the affiants perceive will result from disclosure, and we submitted those to the Court on April 11, 2006.

Essentially, PG&E argues here that, whenever the Government asserts a claim of Executive privilege, the Government should be required to produce the documents to the plaintiff to allow the plaintiff to identify reasons that it needs or wants the privileged information contained in them. We know of no support for such an argument. Generally, courts must balance the need for a party sufficiently to identify a document in a privilege log against the need of the party not to disclose the privileged information to the opposing party. See Yankee Atomic Elec. Co. v. United States, 54 Fed. Cl. 306, 309 (2002) (in privilege log provided to opposing party, "the party invoking the privilege need not reveal so much about the contents of a communication as to compromise the privilege"). Only through an in camera review may the Government provide sufficiently greater detail than it previously provided in its response to PG&E's motion to compel regarding the privileged documents at issue here, without disclosing the privileged information to PG&E. Generally, in camera review of documents subject to the deliberative process privilege should not be ordered unless the Court finds that, without that review, the agency has not satisfied its burden of justifying the privilege. See Linder v. National Security Agency, 94 F.3d 693, 696-97 (D.C. Cir. 1996) (if agency meets its burden through affidavits, in camera inspection is neither necessary nor appropriate). However, where necessary, the Federal Circuit has approved the use of in camera review of ex parte affidavits and documents in reviewing claims of executive privilege. See Monarch Assurance, L.P. v. United States, 244 F.3d 1356, 1358-60 (Fed. Cir. 2001) (finding, after reviewing affidavit "submitted in camera for the exclusive use of the trial judge," that Government had properly invoked state secrets privilege); see also Crater, 423 F.3d at 1266 (finding state secrets privilege properly invoked after having "reviewed both the public and classified declarations submitted to

the district court in connection" with the invocation); Sealed Case, 121 F.3d at 761 (ordering in camera review of documents claimed as subject to presidential communications privilege upon appellant's showing of need).

## III. PG&E'S REMAINING ARGUMENTS LACK MERIT

In the remainder of its response to the Government's motion for reconsideration, PG&E has not cited to any case precedent that conflicts with the requests in our motion. In our motion for reconsideration, we asked the Court to reconsider its decision that the delegations from the Chairman of the Nuclear Regulatory Commission ("NRC") and the Secretary of Energy to other high-level officials within the NRC and the Department of Energy ("DOE") were ineffective to allow their delegatees to invoke the deliberative process privilege.[3] In our motion, we detailed the specific instructions that the NRC Chairman provided to his delegatee, and we identified the statutory basis upon which the Secretary of Energy delegated his authority as a matter of right. PG&E has identified nothing to challenge the appropriateness of these delegations or suggested any additional language or factors that would have been necessary for the Chairman's and the Secretary's delegations to have been deemed effective. See PG&E Resp. 12. In light of the absence of any identified standards for the agencies to apply to determine whether their agency heads' delegations are invalid, we respectfully request that the Court reconsider that aspect of its decision.

Further, in our motion for reconsideration, we asked the Court to reconsider its finding that our original affidavits did not provide sufficiently precise reasons for invoking the

---

[3] As we further explained, the Inspector General of the Department of Energy invoked the privilege with regard to documents within his cognizance and pursuant to his statutory authority, without delegation.

deliberative process privilege. For the reasons set forth in our motion for reconsideration, we respectfully request that the Court reconsider that finding. Nevertheless, we also requested permission to submit ex parte affidavits to provide the Court with additional information about the harm that would result from disclosure. In light of the Court's receipt of those documents and accompanying ex parte affidavits on April 11, 2006, pursuant to the Court's March 23, 2006 order, we respectfully request that the Court find that we have properly invoked the deliberative process privilege and reject PG&E's demand for production of these documents.[4]

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court reconsider its order dated March 14, 2006. Specifically, we respectfully request that the Court find that the Government was not required to provide affidavits when it initially produced its privilege logs, that the affidavits subsequently provided properly invoke the deliberative process privilege, and that the Secretary of Energy's and NRC Chairman's delegations of authority were proper and effective. To the extent that the Court does not reconsider those findings, we respectfully request that the Court supplement its opinion to identify guidelines for us to follow in creating appropriate delegations of authority and affidavits and, further, provide us with an opportunity to correct any technical deficiencies that the Court has identified followed by submission of ex parte affidavits and/or the documents at issue for in camera review.

[4] PG&E also suggests that the Government should be required to produce all documents to PG&E and its counsel under the protective order issued in this case. PG&E Resp. 8. As explained in the ex parte affidavits, the harm that would result from disclosure of these documents would not be prevented by the protective order, as evidenced by the effect that the continual threat of repetitive depositions and involvement in this litigation has in "chilling" agency employees' willingness to engage in open agency discussions.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ John C. Ekman by Harold D. Lester, Jr.
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

JOSHUA E. GARDNER
SCOTT R. DAMELIN
MARIAN E. SULLIVAN
HEIDE L. HERRMANN
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

April 19, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 19th day of April 2006, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DATED MARCH 14, 2006" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.