# In the United States Court of Federal Claims

No. 04-74C
(into which has been consolidated No. 04-75C)

(E-Filed: April 25, 2006)

| | |
|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, Plaintiff, v. THE UNITED STATES, Defendant. | Summary Judgment; Spent Nuclear Fuel; Nuclear Waste Policy Act; 42 U.S.C. § 10222(a)(5)(B) (2000); Whether Restitution Is Available in the Circumstances of This Case; Whether a Takings Claim May Be Maintained in the Circumstances of This Case; GTCC Waste |

Jerry Stouck, Washington, DC, for plaintiff. Robert L. Shapiro, Washington, DC, of counsel.

John C. Ekman, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Jane K. Taylor, Office of General Counsel, United States Department of Energy, Washington, DC, and Scott R. Damelin, Sharon A. Snyder, Joshua E. Gardner, and Todd J. Cochran, Civil Division, Department of Justice, Washington, DC, of counsel.

## OPINION AND ORDER

HEWITT, Judge

Plaintiff Pacific Gas & Electric (PG&E) seeks damages from defendant arising from an alleged breach of the Department of Energy (DOE)'s contractual obligations

under the Nuclear Waste Policy Act. Complaint (Compl.) ¶ 1.[1] Plaintiff seeks damages for defendant's alleged partial breach of contract in Count I of its complaint, see Compl. ¶ 25, restitution of all fees allegedly paid and payable to defendant under such contract in Count II of its complaint, see Compl. ¶ 29, and just compensation for defendant's alleged taking of its property in Count III of its complaint.[2]

Presently before the court are Defendant's Motion for Summary Judg[]ment Upon Counts II and III of Plaintiff's Complaints (Def.'s Mot. or Motion), Defendant's Proposed Findings of Uncontroverted Fact (Def.'s PFUF or Proposed Findings), plaintiff's Opposition to Motion for Summary Judgment on Counts II and III of PG&E's Complaints (Pl.'s Resp. or Response), Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment Upon Counts II and III of Plaintiff's Complaints (Pl.'s Reply or Reply), and PG&E's Surreply Opposing the Government's Motion for Summary Judgment on Count II of PG&E's Complaint (Pl.'s Sur-Reply or Sur-Reply). Pursuant to Rule 56(b) of the Rules of the Court of Federal Claims (RCFC), defendant moves the court to grant partial summary judgment in its favor upon counts II and III of plaintiff's complaint. Def.'s Mot. at 1.

## I. Background

On January 7, 1983, Congress enacted the Nuclear Waste Policy Act of 1982 (NWPA), Pub. L. No. 97-425, 96 Stat. 2201 (codified at 42 U.S.C. §§ 10101-10270 (2000)), because of concerns over the disposal of nuclear waste accumulating at nuclear power plants, see Def.'s PFUF ¶ 1.[3] The NWPA authorized the Secretary of DOE to

---

[1]Plaintiff seeks damages related to two of its plants – the Humboldt Bay Power Plant Unit 3 and the Diablo Canyon Power Plant – in separate complaints in Case Nos. 04-74C and 04-75C, respectively. Both complaints were amended on January 28, 2004. By Order of April 12, 2005, the court consolidated the cases for pretrial proceedings and trial. All citations in this Opinion to plaintiff's complaint are to the amended complaint in Case No. 04-74C.

[2]The amended complaint in Case No. 04-75C does not contain a Count III. Therefore, all references in this Opinion to Count III of plaintiff's complaint refer only to the amended complaint in Case No. 04-74C. All references in this Opinion to Counts I and II of plaintiff's complaint refer to the amended complaints in both Case Nos. 04-74C and 04-75C. All references in this Opinion to plaintiff's complaint as a whole refer to the amended complaints in both Case Nos. 04-74C and 04-75C.

[3]Facts are cited to defendant's Proposed Findings alone because, on December 19, 2005, the court granted plaintiff's motion for leave to forego submitting a response to defendant's Proposed Findings (Pl.'s Mot. for Leave) filed December 16, 2005. See Order of December 19,

(continued...)

enter into contracts with utilities for the disposal of spent nuclear fuel (SNF) and high-level radioactive waste (HLW). See 42 U.S.C. § 10222(a)(1); Def.'s PFUF ¶ 3; see generally 42 U.S.C. §§ 10101-10270. The NWPA required that all contracts "shall provide that" DOE will dispose of the waste "beginning not later than January 31, 1998." 42 U.S.C. § 10222(a)(5)(B); Def.'s PFUF ¶ 3. The NWPA also "effectively made entry into such contracts mandatory for the utilities by prohibiting the Nuclear Regulatory Commission [(NRC)] from issuing licenses to any operator who has not 'entered into a contract with the Secretary' or who 'is [not] actively and in good faith negotiating with the Secretary for a contract.'" Me. Yankee Atomic Power Co. v. United States (Maine Yankee), 225 F.3d 1336, 1337 (Fed. Cir. 2000) (quoting 42 U.S.C. § 10222(b)(1)(A) (2000)).

DOE implemented the statute by promulgating the Standard Contract for Disposal of Spent Nuclear Fuel (Standard Contract). 10 C.F.R. § 961.11 (2006). Article VIII of the Standard Contract requires utilities to pay a one-time fee to DOE, based on the amount of electricity generated by the utility prior to April 7, 1983, and an ongoing fee to DOE based on the amount of electricity generated thereafter. Id. In exchange for the fees received by utilities, DOE was required to take title to, transport, and dispose of the nuclear waste stored at the utilities' facilities, id. art. IV, beginning "not later than January 31, 1998," id. art. II.

On June 30, 1983, PG&E executed a contract with DOE concerning two of its power plants (contract), the terms of which were derived from the Standard Contract. Def.'s PFUF ¶ 4. In 1994, DOE announced that it could not begin disposing of nuclear waste by January 31, 1998 because the repository that it planned to build to store the waste would not be available until at least 2010. See Waste Acceptance Issues, 59 Fed.

---

[3](...continued)
2005. RCFC 56 states, in relevant part:

> In determining any motion for summary judgment, the court will, absent persuasive reason to the contrary, deem the material facts claimed and adequately supported by the moving party to be established, except to the extent that such material facts are controverted by affidavit or other written or oral evidence.

RCFC 56(h)(3). Plaintiff recognized this, see Pl.'s Mot. for Leave ¶ 3, but since it had "no real quarrel with the 'facts' stated by the government in its [Proposed Findings]," id. ¶ 2, it moved the court for leave to forego filing a response. Plaintiff also "submit[ted] that the government's motion is better viewed as one to dismiss or for judgment on the pleadings with respect to the claims at issue." Id. The court agrees, and deems the facts claimed in defendant's Proposed Findings to be established for the purposes of determining the Motion.

Reg. 27,007, 27,007-08 (1994). DOE did not begin accepting nuclear waste from PG&E – or any utility – under the Standard Contract by January 31, 1998, Def.'s PFUF ¶ 5, nor has it done so as of the date of this Opinion. In Maine Yankee, the United States Court of Appeals for the Federal Circuit (Federal Circuit) held that DOE had breached the Standard Contract by not beginning to accept, transport, and dispose of SNF by the deadline of January 31, 1998. Maine Yankee, 225 F.3d at 1343.

Plaintiff filed its complaint in this court on January 28, 2004. On September 9, 2005, in another case involving a SNF plaintiff, the Federal Circuit found that because the plaintiff was required to await the government's performance of the Standard Contract after January 31, 1998, its claim was one of damages for partial, rather than total, breach of contract. Ind. Mich. Power Co. v. United States (Indiana Michigan), 422 F.3d 1369, 1374 (Fed. Cir. 2005). The Federal Circuit concluded that "Indiana Michigan can . . . obtain recovery for post-breach damages as they are incurred," id. at 1377, by "bring[ing] suits for damages in the future," id. at 1378. Like the plaintiff in Indiana Michigan, plaintiff here continues to await the government's performance of the Standard Contract, and it continues to pay in full all of the fees required under its terms. Compl. ¶ 22. In accordance with Indiana Michigan, on March 30, 2006, this court determined that plaintiff's claim was one of damages for partial breach of contract, see Opinion of March 30, 2006 at 3 n.4, and, consequently, concluded that plaintiff may not seek damages beyond December 31, 2004, see id. at 11, 13; Indiana Michigan, 422 F.3d at 1376-77 ("Because its claim is premised upon the government's partial breach, [the plaintiff's] damages were limited to those costs incurred prior to the date of its suit.") (emphasis added). The court now considers defendant's motion for summary judgment of Count II and Count III of plaintiff's complaint.

## II. Discussion

### A. Standard of Review

Summary judgment is proper when no genuine issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c). Genuine disputes of material fact that may significantly affect the outcome of the matter preclude an entry of judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A genuine dispute concerning a material fact exists when the evidence presented would permit a reasonable jury to find in favor of the non-movant. Anderson, 477 U.S. at 248.

The non-movant must establish the existence of a material element on which it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The evidence is examined in the light most favorable to the non-movant, Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986), and all justifiable inferences must be drawn in favor of the non-movant. Anderson, 477 U.S. at 255. Unsupported assertions or conclusory allegations are insufficient to withstand summary judgment. SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985).

B. Whether Defendant is Entitled to Partial Summary Judgment on Count II of Plaintiff's Complaint

1. The Parties' Arguments

Defendant moves for partial summary judgment on Count II of plaintiff's complaint, which alleges that "PG&E is entitled to restitution of all fees paid and payable by PG&E to the government under the contract." Compl. ¶ 29. Defendant states that, as a matter of law, a plaintiff may not bring a claim for restitution when alleging a partial, rather than total, breach of contract. Def.'s Mot. at 3 (citing Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1309 (Fed. Cir. 2004); Cuyahoga Metro. Housing Auth. v. United States, 65 Fed. Cl. 534, 561 (2005)). Defendant argues that, "[i]n this case, PG&E has elected to view DOE's delay in beginning SNF acceptance as a partial . . . breach of the Standard Contract. Consequently, PG&E may not claim restitution damages while, at the same time, insisting that DOE perform its obligations under the Standard Contract." Id.

Plaintiff "recognizes that in order to pursue [an] alternative restitution remedy it will have to elect to declare a total breach," but states that it "need only make that election at some point prior to final judgment, not now." Pl.'s Resp. at 2. Plaintiff argues that it "may pursue alternative remedies, even if they are inconsistent," and that it is "entitled to present evidence supporting multiple inconsistent remedies to a trier of fact." Id. According to plaintiff, a non-breaching party does not waive its right to terminate the contract and claim remedies for total breach "unless a delay in making the election has prejudiced the party in breach." Id. at 3. Plaintiff argues that "[h]ere, the government does not even allege any prejudice from PG&E's parallel pursuit of a 'partial' breach claim and its failure thus far to declare a total breach or to terminate the contract." Id. Accordingly, while plaintiff's "preferred remedy is the recovery of damages for a partial breach," id. at 4, plaintiff requests the court to "reserve[] its right to make a final election 'after a verdict but prior to judgment,' which in this case means after the [c]ourt issues a decision on damages but before entering judgment," id. at 5.

Defendant replies that there is language in Indiana Michigan suggesting that plaintiff is required to sue only for partial, rather than total, breach of contract. Def.'s Reply at 2-3 (quoting Indiana Michigan, 422 F.3d at 1374). Moreover, asserts defendant,

plaintiff "is precluded from claiming a total breach of contract at this point in time based upon its election to treat DOE's delay as a partial, rather than total, breach and the resulting prejudice to the Government." Id. at 3. Defendant argues that it has been prejudiced by plaintiff's election because it "has continued to spend extraordinary amounts of money since 1998 attempting to develop a repository that would allow DOE to begin SNF acceptance under the Standard Contract." Id. Moreover, claims defendant, "[t]he source of those funds is the Nuclear Waste Fund [(NWF)], which includes the fee payments that PG&E has paid pursuant to the requirements of its Standard Contract." Id. Accordingly, defendant states that

> [b]ecause the Government is committing substantial resources to develop and operate a Federal repository that will operate for more than 10,000 years, allowing plaintiffs such as PG&E to insist upon DOE's performance and then, years later, claim that the monies upon which DOE has relied to develop such a program should be refunded to the utilities as restitution would greatly hinder DOE's ability to develop its civilian radioactive waste disposal program.

Id. at 4. Defendant concludes that, therefore, "PG&E has waived any right to claim a total breach of contract at this point in time, in light of the prejudice to the Government." Id.

The court granted leave to plaintiff to allow it to file a Sur-Reply regarding this issue. See Order of January 18, 2006. In its Sur-Reply, plaintiff argues that "the 'harm' the government alleges – 'spend[ing] extraordinary amounts of money . . . to develop a repository' – bears absolutely no relation to PG&E's litigation strategy in this case." Pl.'s Sur-Reply at 2 (alterations in original). According to plaintiff,

> The Government is statutorily[] committed to construct, license and operate a repository for the storage of spent nuclear fuel . . . . The government also has entered into contracts with dozens of other nuclear utilities, and must continue developing spent fuel storage and disposal facilities for the vast quantity of commercial spent fuel it is obligated to pick up from those utilities – even if PG&E were to declare its own contract at an end.

Id. at 3. Moreover, asserts plaintiff, "PG&E's contract does not require that its spent fuel be disposed of at Yucca Mountain, only that DOE accept PG&E's spent fuel and remove it from PG&E's facilities." Id. Thus, plaintiff argues, defendant cannot claim that it is "prejudiced" simply because defendant has chosen to continue its breach until the Yucca Mountain repository is completed. Id. Finally, plaintiff argues that, although PG&E has not terminated the parties' contract, "in 'return' DOE has never provided any contract

performance whatever." Id. at 4. According to plaintiff, "[t]hat fact alone should be dispositive of any claim that the DOE has taken detrimental action under the contract in reliance on PG&E's [not] declaring a total breach." Id. Thus, plaintiff claims, because "DOE has never tendered any performance, [and] it will not do so for many (currently eight and counting) years after the 1998 contractual start date," if ever, plaintiff has not waived its right to claim restitution for total breach of contract. Id. at 5.

2. Analysis

The circumstances under which the parties to the contract function in this case do not lend themselves to a conventional or formulaic analysis of the doctrine of election or waiver of remedies. The factual setting has many elements unique to the civilian nuclear power industry: the NWPA "effectively made entry into such contracts mandatory" for PG&E, see Maine Yankee, 225 F.3d at 1337; the government is exclusively responsible for SNF collection and disposal, thereby prohibiting plaintiff from seeking disposal by alternative means, Indiana Michigan, 422 F.3d at 1374; and the NWPA places responsibility for payment for such disposal on plaintiff and other utilities that generated the SNF, see Roedler v. DOE, 255 F.3d 1347, 1353 (Fed. Cir. 2001). Where, as here, DOE apparently intends to render full performance of the contract but has arguably rendered none thus far, and where plaintiff has continued to render performance of the contract, a formulaic application of all aspects of the doctrine of election or waiver of remedies does not appear to the court to reflect an adequate analytical approach. The parties' performance (or non-performance) of the contract thus far, and its corresponding effect on plaintiff's continued right to elect to terminate the contract and make a claim for restitution damages, must be analyzed with the realities of the regulatory regime established by the NWPA in mind.

Absent the NWPA and under ordinary circumstances, and assuming the government's actions in this case have amounted to a material breach of the parties' contract,[4] plaintiff would have the choice "between cancelling the contract and continuing it." Cities Serv. Helex, Inc. v. United States, 543 F.2d 1306, 1313 (Ct. Cl. 1976). In such a situation, "[i]f [plaintiff] decides to close the contract and so conducts [it]self, both parties are relieved of their further obligations . . . ," id., and plaintiff may sue for total breach. On the other hand, "[i]f [plaintiff] elects . . . to continue the contract, the obligations of both parties remain in force and the injured party may retain only a claim for damages for partial breach." Id.

[4] The court notes that it has not yet explicitly held that defendant is liable for a breach of contract in this case, nor has plaintiff moved for partial summary judgment on the issue of liability. Cf. Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 655, 656 n.8 (2003).

Plaintiff's election either to declare the contract terminated and sue for total breach or to continue the contract and sue for partial breach is significant because "relief in restitution is 'available only if the breach gives rise to a claim for damages for total breach and not merely to a claim for damages for partial breach.'" Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1309 (Fed. Cir. 2004) (quoting Restatement (Second) of Contracts § 373 cmt. a (1981)). Restitution damages and damages for partial breach are therefore inconsistent and incompatible remedies. Plaintiff has elected to continue its contract with the government, yet plaintiff seeks damages both for partial breach of contract in Count I of its complaint, see Compl. ¶ 25, and restitution in Count II of its complaint, see id. ¶ 29. It would appear that, based on plaintiff's election to continue the contract, Hanson Bancorp precludes plaintiff's restitution claim.

However, "the doctrine that a non-defaulting party has an election either to end the contract or to continue performance, has sometimes been modified." Dow Chemical Co. V. United States, 226 F.3d 1334, 1346 (Fed. Cir. 2000). RCFC 8 provides that "[r]elief in the alternative or of several different types may be demanded." RCFC 8(a); see also Restatement (Second) of Contracts § 378 cmt. a ("Alternative counts seeking inconsistent remedies are generally permitted in the same complaint and a change in remedy may often be made by amendment of the complaint, even at an advanced stage of the action."). Moreover, the United States Supreme Court has found that a party does not waive its right to restitution through "continued action[] under the contract[ that] amount[s] to [no]thing more than . . . urging of performance." Mobil Oil Exploration v. United States, 530 U.S. 604, 622 (2000). Rather, a party waives its right to restitution once it has received or accepted at least partial performance from the opposing party. See id. at 622-623 (finding that the government's only valid claim that the plaintiffs waived their right to restitution must be "a claim that [plaintiffs] received at least partial performance," but concluding that the plaintiffs "did not receive significant postrepudiation performance," and, "consequently[,] . . . they did not waive their right to restitution"); V.S. Int'l, S.A. v. Boyden World Corp., 862 F. Supp. 1188, 1196 (S.D.N.Y. 1994) ("[After defendant has breached the contract, p]laintiffs cannot elect to continue with the contract, continue to receive the benefits from it, and thereafter bring an action for rescission or total breach."). In addition, a party waives its right to restitution once the opposing party has materially changed its position in reliance on the party's choice to continue the contract. See Restatement (Second) of Contracts § 378 cmt. a ("Only if the other party has materially changed his position in reliance on the original choice is a shift to another remedy precluded by the election of the first. A change of position is 'material' within the meaning of this Section if it is such that in all the circumstances a shift in remedies would be unjust."); see also Dow Chemical, 226 F.3d at 1346 (noting that "'some courts have shared Professor Corbin's view that an election [waiver] should not be conclusive unless facts giving rise to an estoppel exist; either the breaching party must have changed his position in reliance on the injured party's failure to cancel or the injured party's conduct

must be such that it would be unjust to allow him to change his position'" (quoting Cities Serv., 543 F.2d at 1314)) (alterations in Dow Chemical). Where such postrepudiation performance or material reliance by the breaching party has not occurred, "[a] party that chooses to proceed with the contract [after a breach by the opposing party]–even if it is the government, and even if it manifests a strong desire to procure the item that is the subject of the contract–does not thereby waive its right to terminate for default." McDonnell Douglas Corp. v. United States, 182 F.3d 1319, 1327 (Fed. Cir. 1999); see also Dow Chemical, 226 F.3d at 1346 (stating the same and finding no waiver of termination right where there was "no evidence that the government was prejudiced by Dow's delay in terminating").

Under ordinary circumstances, then, there could remain a genuine issue of material fact, RCFC 56(c), as to whether plaintiff has waived its right to restitution as an alternative remedy under RCFC 8(a) by continuing the contract, either by receiving from defendant postrepudiation performance under the contract or by inducing defendant to change materially its position in reliance on its continued performance of the contract.[5] Accord Yankee Atomic Elec. Co. v. United States, No. 98-126C, 2004 WL 1535688, at *5 (Fed. Cl. June 28, 2004) (noting that under RCFC 8(c), "[p]laintiffs may demand relief in the alternative," and concluding that "[r]estitution was raised over a year ago and will not be excluded pre-trial" because "[o]n this pre-trial record it cannot be concluded that a final election has been made by plaintiffs, or that defendant would be prejudiced if plaintiffs were allowed to offer evidence, testimony, and argument in this regard");[6] see also Restatement (Second) of Contracts § 378 ("If a party has more than one remedy under the rules stated in this Chapter, his manifestation of a choice of one of them by bringing suit or otherwise is not a bar to another remedy unless the remedies are inconsistent and the other party materially changes his position in reliance on the manifestation.").[7]

---

[5]The court makes no determination of these issues in this Opinion.

[6]Yankee Atomic was decided before the Federal Circuit in Indiana Michigan interpreted the NWPA to foreclose a claim requiring termination of the Standard Contract and an action for total breach to a SNF plaintiff.

[7]The court notes that if it were to allow plaintiff's restitution claim to go forward as an alternative claim, plaintiff would be required to make a final election between the inconsistent claims for partial breach and for restitution "at some point prior to final judgment." Yankee Atomic Elec. Co. v. United States, No. 98-126C, 2004 WL 1535688, at *5 (Fed. Cl. June 28, 2004) (citing Wynfield Inns v. Edward Leroux Groups, Inc., 896 F.2d 483, 488 (11th Cir. 1990) (noting that an election of remedies is generally made after a verdict but prior to judgment)). And, of course, if plaintiff elected the remedy of restitution it would be required beforehand "to

(continued...)

However, in the circumstances of this case, where the regulatory framework of the NWPA – as interpreted by the Federal Circuit in Indiana Michigan – precludes plaintiff from suing for total breach of the contract, the court finds that plaintiff's claim for restitution in this proceeding must fail. In Indiana Michigan, the Federal Circuit, in examining whether the plaintiff was alleging anticipatory repudiation of the entire contract between it and the government, stated:

> For an aggrieved party to recover damages for an anticipatory repudiation, it must elect to treat the repudiation as a total breach. On the other hand, "if the injured party elects to or is required to await the balance of the other party's performance under the contract, [its] claim is said instead to be one for damages for partial breach."

422 F.3d at 1374 (alteration in original) (citation omitted) (quoting Restatement (Second) of Contracts § 236 cmt. b). The court continued, finding that

> Indiana Michigan could not have claimed anticipatory repudiation even if it wanted to; while the government did indicate that it would not meet the 1998 deadline, its actions did not portend an absolute refusal to perform the contract. The NWPA itself, and the Standard Contract's terms drafted pursuant to it, compelled Indiana Michigan to bring an action for partial, not total, breach. Had Indiana Michigan brought an action for total breach, DOE would have been discharged from further responsibility under the contract, a situation apparently not desired by appellant and foreclosed by statute. The NWPA directed that DOE and all nuclear utilities enter into Standard Contracts, 42 U.S.C. § 10222(a)(1), and concomitantly conditioned the issuance and renewal of Nuclear Regulatory Commission operating licenses upon the execution of those contracts, id. § 10222(b)(1)(A). Additionally, the NWPA provided that DOE was exclusively responsible for SNF collection and disposal in the United States, thereby prohibiting Indiana Michigan or any other nuclear utility from seeking alternative disposal means. See 42 U.S.C. § 10131(a)(4), (b)(2); Roedler, 255 F.3d at 1350. Therefore, Indiana Michigan had no choice but to hold the government to the terms of the Standard Contract while suing for partial breach.

---

[7](...continued)
close the contract and so conduct[] [it]self," thereby "reliev[ing both parties] of their further obligations." Cities Serv., 543 F.2d at 1313.

Id. (emphasis added).

The Federal Circuit's summary of the realities of the NWPA regime as applied to the Indiana Michigan plaintiff appears to the court to be equally applicable to plaintiff under the circumstances of this case. As with the plaintiff in Indiana Michigan, if plaintiff here were to bring "an action for total breach, DOE would . . . be[] discharged from further responsibility under the contract, a situation apparently not desired by [plaintiff] and foreclosed by statute." Id. Accordingly, it appears to the court that, based on Indiana Michigan's reading of the NWPA and the regulatory framework under which plaintiff entered into – and continues to perform – the contract, plaintiff "ha[s] no choice but to hold the government to the terms of the Standard Contract while suing for partial breach." Id.; see also Roedler, 255 F.3d at 1353 ("The [NWPA] places responsibility for payment of the waste disposal fees on 'the generators and owners of such waste and spent fuel, that will ensure that the costs of [disposal] will be borne by the persons responsible for generating such waste and spent fuel.' The Standard Contract recites that the 'costs associated with the . . . disposal of SNF [spent nuclear fuel] will be borne by the owners and generators under contract with the DOE for disposal services.'" (quoting 42 U.S.C. § 10131(b)(4) and 10 C.F.R. § 961.11)) (first alteration added).

SNF cases arising from the government's alleged breach of the Standard Contract under the NWPA regime, like this case and Indiana Michigan, can be distinguished from Mobil Oil (relied on by plaintiff, see Pl.'s Resp. at 3; Pl.'s Sur-Reply at 4), where oil companies (companies) contracting with the government were found by the Supreme Court not to have waived their right to claim restitution damages after the government materially breached the contracts. 530 U.S. at 623. In Mobil Oil, changes implemented by a statute that affected the terms of the companies' lease contracts and that were "of a kind that the contracts did not foresee," id. at 620, and the government's subsequent communication of its intent to follow the changes implemented by this statute, "deprive[ed] the companies of the benefit of their bargain," thereby "amount[ing] to a repudiation of the contracts," id. at 621. The companies had paid the government $158 million up front in return for these lease contracts, id. at 609, yet they "did not receive significant postrepudiation performance," from the government, id. at 623. Accordingly, the Court "f[ou]nd that they did not waive their right to restitution," of the $158 million paid to the government, id. at 623-24.

Although the lease contracts in Mobil Oil were made subject to various statutes and regulations, see id. at 609, unlike here, there were no statutes or regulations "effectively ma[king] entry into such contracts mandatory," Maine Yankee, 225 F.3d at 1337. Moreover, unlike here, where relief of the government from further performance under the Standard Contract is "foreclosed by statute," Indiana Michigan, 422 F.3d at 1374, no statute or regulation in Mobil Oil prevented the government from abandoning

performance of the lease contracts and, in fact, a statute required the government to violate the terms of the lease contracts, see Mobil Oil, 530 U.S. at 618. Finally, unlike here, the companies in Mobil Oil did not "elect[] to or [were not] required to await the balance of the [government]'s performance under the contract[s]." Indiana Michigan, 422 F.3d at 1374 (quotation omitted). On the contrary, the companies in Mobil Oil sought to terminate the government's responsibility to perform under the lease contracts by claiming that the government had repudiated the contracts and by seeking restitution of their up-front payments. Mobil Oil, 530 U.S. at 607. The circumstances that allowed the companies to seek such relief in Mobil Oil are simply not present in this case, where the pervasive NWPA regime restricts both contracting parties significantly by limiting both the government's ability to be discharged from its contractual duties and plaintiff's ability to terminate the contract and sue for total breach. Accordingly, Mobil Oil's analysis of non-waiver of restitution is not readily applicable to the circumstances in this case, even where plaintiff has arguably "not receive[d] significant postrepudiation performance." Mobil Oil, 530 U.S. at 623.[8]

Plaintiff points out that "Indiana Michigan did not address a total breach claim, much less a restitution claim, so the Federal Circuit's dicta concerning total breach is no impediment to full consideration of such claims if and when they are properly presented to that court." Pl.'s Resp. at 5-6. Further, plaintiff states that,

> [i]f squarely presented with the issue, PG&E is confident that the Federal Circuit would recognize that the [NWPA] is no impediment to a total breach claim, since contrary to Indiana Michigan's dicta (uninformed by any briefing on the matter), the NWPA only 'authorizes' rather than 'requires' contracts, and the provisions regarding the need to have a contract to obtain a license raises only regulatory issues, not a bar to a restitution claim.

[8]Following the same analysis applicable to Mobil Oil, Dow Chemical, which involved the government's repudiation of a license in a contract for subsidence control work, see 226 F.3d at 1336, 1346, and the plaintiff's continued right of termination of the contract thereafter, see id. at 1346, is also inapposite.

Id. n.3.[9] While the court agrees that the discussion in Indiana Michigan regarding the availability of a total breach claim is dicta, the court finds its guidance to be highly persuasive in the context of this case. As here, the Federal Circuit was specifically examining whether the plaintiff could proceed under a theory of recovery for breach of contract, the prerequisite of which is an "elect[ion] to treat the repudiation as a total breach." Indiana Michigan, 422 F.3d at 1374. Not only did the court find that the plaintiff had not proceeded under such a theory (or treated the government's repudiation as such), it specifically concluded that the plaintiff "could not," and that the plaintiff was "compelled [to]" and "had no choice but to," sue for partial, rather than total, breach of contract. Id.

This conclusion is directly applicable to the circumstances in this case. The court does not agree that, merely because the NWPA "authorizes," rather than "requires" DOE to enter into contracts with utilities to dispose of their SNF, Pl.'s Resp. at 6 n.3, a total breach claim must be available to plaintiff at this time. The relevant circumstances are: plaintiff did enter into such a contract with DOE, see Maine Yankee, 225 F.3d at 1337 (stating that the NWPA "effectively made entry into such contracts mandatory for the utilities"); DOE is exclusively responsible for SNF collection and disposal thereby prohibiting plaintiff from seeking disposal by alternative means, Indiana Michigan, 422 F.3d at 1374; the NWPA places responsibility for payment of such disposal on plaintiff and other utilities that generated the SNF, see Roedler, 255 F.3d at 1353; cf. Restatement (Second) of Contracts § 243(1) ("With respect to performances to be exchanged under an exchange of promises, a breach by non-performance gives rise to a claim for damages for total breach only if it discharges the injured party's remaining duties to render such performance . . . ."); DOE's non-performance to date "d[oes] not portend an absolute refusal to perform the contract," Indiana Michigan, 422 F.3d at 1374; and plaintiff has continued to perform the contract. Under such circumstances, which are so closely analogous to those in Indiana Michigan, the court declines to stray from the Federal Circuit's reasoned guidance and allow at this time a claim to proceed that requires termination of the contract and an action for total breach. See Crowley v. United States,

---

[9]Defendant also states that it "respectfully disagree[s] with the Federal Circuit's statement . . . that [the SNF] plaintiff there could not have elected a total breach of the Standard Contract based upon DOE's representations and actions prior to January 31, 1998," Def.'s Reply at 2, but argues that "[t]o the extent that PG&E has no choice but to sue for partial breach under the rationale of [Indiana Michigan], its restitution claim would be precluded as a matter of law," id. at 3.

398 F.3d 1329, 1335 (Fed. Cir. 2005) ("[T]he Court of Federal Claims may not deviate from the precedent of the United States Court of Appeals for the Federal Circuit . . . .").[10]

3. Conclusion

For the foregoing reasons, defendant is entitled to judgment as a matter of law on plaintiff's restitution claim. RCFC 56(c). Defendant's Motion is hereby GRANTED with respect to Count II of the plaintiff's Complaint.

C. Whether Defendant is Entitled to Partial Summary Judgment on Count III of Plaintiff's Complaint

1. The Parties' Arguments

Defendant moves for partial summary judgment on Count III of plaintiff's complaint, which alleges that "the government has taken PG&E's property and is liable to PG&E for just compensation." Compl. ¶ 31. Plaintiff's takings theory is that, because PG&E must store nuclear waste on its property for the indefinite future and until DOE performs its contractual obligations, PG&E "has been and will be deprived of the effective use and value of [its] property." Id. ¶ 30. Defendant argues that, "[b]ecause the only right PG&E has to have the Government accept and dispose of PG&E's SNF derives solely from the Standard Contract, PG&E's takings claim should be dismissed as a matter of law." Def.'s Mot. at 5. According to defendant, "[i]t is well established that, where a party's rights are created by contract with the Government, a party cannot state a takings claim against the Government founded upon a breach of that contract." Id.

Defendant proceeds to describe numerous cases in this court and in the Federal Circuit in which takings claims were rejected where they were based upon rights created by contract. See id. at 6-10. Defendant claims that, "[e]ven if PG&E could assert a takings claim predicated upon a breach of the Standard Contract, PG&E has failed to establish a physical invasion of its property," id. at 10, because "PG&E merely alleges that it was required to continue storing its own SNF as a result of the Government's failure to perform under the Standard Contract," id. at 12. According to defendant, this

---

[10]Plaintiff states that it is concerned that the court may "refuse (or fail) to effectively reserve PG&E's right to later pursue future damages." Pl.'s Resp. at 5. Based on the Federal Circuit's binding precedent in Indiana Michigan, the court, as presently advised, expects, at the time judgment in this case is entered, to reserve plaintiff's right to bring future suits for damages as they are incurred. See Indiana Michigan, 422 F.3d at 1378. Moreover, the court expresses no opinion here as to whether plaintiff may, in a future action, terminate the Standard Contract and sue for total breach.

"do[es] not constitute a physical taking of PG&E's property." Id. Finally, defendant argues that, "[t]o the extent that PG&E is claiming a regulatory taking, this argument also fails as a matter of law," id., because "PG&E has not identified any regulation by the Government that allegedly took its property," id. at 13.

In its Response, plaintiff "requests that the [c]ourt, rather than addressing the government's various summary judgment arguments now, simply [] dismiss PG&E's takings claim without prejudice on ripeness grounds." Pl.'s Resp. at 6-7. Plaintiff explains that this is because "[t]he heart of PG&E's takings claim is th[e] fact that the physical presence at Humboldt Bay of the [Independent Spent Fuel Storage Installation (ISFSI)] and the waste it contains will substantially interfere with PG&E's use of its property there indefinitely, and perhaps forever. However, because construction of the Humboldt Bay ISFSI has not begun, the claimed 'taking' is unripe." Id. at 7-8. Plaintiff concedes that "[t]he government has simply not taken anything yet." Id. at 8. However, plaintiff states that, "once PG&E's IFSFI is constructed at Humboldt Bay[,] it undeniably will intrude upon, and interfere with alternative uses of, the real property on which it physically rests." Id. Thus, according to plaintiff, "those future facts make it a viable takings claim." Id.

Plaintiff then attempts to distinguish its case from the court's decision in Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652 (2003). There, in another SNF case arising from the government's breach of its obligations under the Standard Contract, the court held that the "plaintiff's claim for a taking is dependent upon the existence of the Standard Contract and therefore plaintiff's rights are enforceable through a contract remedy." 56 Fed. Cl. at 656. Therefore, the court dismissed the plaintiff's takings claim with respect to SNF. Id. Plaintiff argues that the Federal Circuit's decision in Cienega Gardens v. United States, 331 F.3d 1319 (Fed. Cir. 2003) "undermine[s] the rationale of the takings dismissal ruling in Commonwealth Edison, or at least call[s] for reexamination of the issue in light of this subsequent Federal Circuit guidance." Pl.'s Resp. at 9-10. Moreover, plaintiff states that Commonwealth Edison is distinguishable from this case because it "did not involve a damages claim for storage of [Greater-Than-Class C (GTCC)] waste," id. at 8,[11] while this case does, id. at 10. Third, plaintiff states that Commonwealth Edison "should not be considered controlling as to a takings claim that PG&E may re-assert in the future because the salient facts may change," for example, if a "pending 'take-title' bill, or something like it, is enacted." Id. Finally, plaintiff argues that "the significant number of decisions contrary to Commonwealth Edison

[11]GTCC waste is defined as "low-level radioactive waste that exceeds the concentration limits of radionuclides established for Class C waste in § 61.55 of [Chapter 1, Title 10 of the Code of Federal Regulations]." 10 C.F.R. § 72.3 (2005).

counsel[] in favor of dismissing the takings claim here without prejudice and allowing PG&E to come back later if and when the claim has ripened." Id. at 11.

Defendant replies that "it is clear from PG&E's briefing not that its takings claim is not 'ripe,' but that it has no takings claim." Def.'s Reply at 5. Defendant argues that plaintiff's argument linking its takings claim to its plans to construct an ISFSI is a "new effort to recharacterize the allegations in its complaint." Id. at 6. Moreover, defendant asserts that

> PG&E now contends that the existence of an ISFSI, which PG&E will build, creates a taking. Thus, PG&E apparently takes the untenable position that it would not have had a takings claim had it left its SNF in its wet storage pool indefinitely, but, rather, that the transfer of its SNF to an ISFSI somehow creates a takings claim. Further, under PG&E's theory, the accrual of its takings claim is not predicated upon the Government's actions, but, rather, is predicated upon the actions that PG&E takes in response to the Government's past actions. . . . [T]here is no legal support for such a novel takings theory.

Id.

Defendant proceeds to rebut plaintiff's attempt to distinguish Commonwealth Edison from this case. Id. at 7-16. As to the issue of GTCC waste, defendant states that "PG&E's argument concerning the presence of GTCC waste's effect upon the viability of its damages claim is misplaced." Id. at 9. Defendant argues that "PG&E has not made a claim for damages arising from the Government's alleged obligation to accept GTCC waste." Id. Moreover, asserts defendant, "the Government's obligation to dispose of GTCC waste is not governed by the [NWPA], but, rather, the Low-Level Radioactive Waste Policy Amendments Act of 1985 . . . ." Id. (citation omitted). According to defendant, "the LLRWPA sets no deadline for DOE's acceptance or disposal of GTCC waste." Id. Thus, defendant argues, "PG&E has identified no statute or contract that requires DOE to accept its GTCC waste at any particular time and, therefore, cannot identify any failure upon DOE's part to act in a timely manner to accept that waste." Id. In addition, even if plaintiff could identify a violation of DOE's statutory duty to accept or dispose of GTCC waste under the LLRWPA, according to defendant, "PG&E does not have a property right in that rule of law." Id. at 10. Accordingly, defendant states that, "[r]ather than a dismissal of a baseless takings claim 'without prejudice,' as PG&E requests, the [c]ourt should dismiss that claim on the merits, dismissing it with prejudice, based on the fact that, to date, the Government has not engaged in any act that has 'taken' PG&E's property." Id. at 5.

2. Analysis

Count III of plaintiff's complaint is based on the Fifth Amendment, which provides, in pertinent part: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. "[T]he Fifth Amendment concerns itself solely with the 'property,' i.e., with the owner's relation as such to the physical thing and not with other collateral interests which may be incident to his ownership." United States v. General Motors Corp., 323 U.S. 373, 378 (1945). As the Federal Circuit has stated:

> This court's predecessor has cautioned against commingling takings compensation and contract damages. Indeed, "the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim."

Hughes Commc'ns Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001) (quoting Sun Oil Co. v. United States, 572 F.2d 786, 818 (Ct. Cl. 1978)). Where a plaintiff retains a range of remedies associated with any contractual property right it possesses, the plaintiff's claim is said to be one of damages for breach of contract, not just compensation for taking of property. Castle v. United States, 301 F.3d 1328, 1342 (Fed. Cir. 2002); see also United States v. Winstar Corp., 518 U.S. 839, 919 (1996) (Scalia, J., concurring) ("Virtually every contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of nonperformance . . . ."). However, rights existing independently of a contract are generally not restricted to contract remedies and may be pursued through a takings action. See Integrated Logistics Support Sys. Int'l, Inc. v. United States, 42 Fed. Cl. 30, 34-35 (refusing to dismiss takings claim because court could not conclude whether contract conferred rights at issue).

The court disagrees that plaintiff's takings claim can be distinguished from that of the plaintiff in Commonwealth Edison. Compare Compl. ¶ 30 ("PG&E has been and will be deprived of the effective use and value of property on which the SNF from [Humboldt Bay Power Plant] is located and must be stored for the foreseeable future, until DOE performs its obligation to remove PG&E's [Humboldt Bay Power Plant]-related SNF.") with Complaint in Commonwealth Edison Co. v. United States, No. 98-621C, ¶ 50 ("The Government's failure and refusal to comply with the requirements of the Standard Contract for acceptance and disposal of ComEd's SNF has deprived, and will continue to deprive, ComEd of the full valuable economic use of [its nuclear plant] sites . . . ."). The court adopts fully the reasoning in that case with respect to the possibility of a taking arising out of the government's breach of the Standard Contract. See Commonwealth Edison, 56 Fed. Cl. at 656. Indeed,

> [p]laintiff alone was responsible for the storage and disposal of its SNF and HLW prior to the Standard Contract. Therefore, absent the contract, plaintiff would have been obligated to conduct the same or similar storage activities that it now asserts create a takings claim. . . . [P]laintiff's claim for a taking is dependent upon the existence of the Standard Contract and therefore plaintiff's rights are enforceable through a contract remedy.

Id.; see also Castle, 301 F.3d at 1342 (affirming this court's ruling that "despite breaching the contract, the government did not take the plaintiffs' property because they retained 'the range of remedies associated with the vindication of a contract'") (citation omitted); La Van v. United States, 382 F.3d 1340, 1351-52 (Fed. Cir. 2004) (stating same and noting that "[t]his court has consistently reaffirmed this binding precedent" (citing FDIC v. United States, 342 F.3d 1313, 1320 (Fed. Cir. 2003) ("This panel, however, is bound by Castle and cannot overrule it.") and Bailey v. United States, 341 F.3d 1342, 1347 (Fed. Cir. 2003) (explaining that there was no "regulatory taking because Bailey . . . was not deprived of a contractual remedy for the government's breach to recover the thrift's assets"))). While it may be true that plaintiff "ha[s] real property interests that are separate from its interests under the Standard Contract, plaintiff does not have a takings claim absent the rights and obligations granted to the parties by the Standard Contract." Commonwealth Edison, 56 Fed. Cl. at 656. Accordingly, plaintiff's takings claim must fail. Accord Canal Elec. Co. v. United States, 65 Fed. Cl. 650, 656 (2005) ("Plaintiff has not shown that it is entitled to damages under a theory independent of the rights accorded Canal Electric under the Standard Contract.").

Moreover, with respect to plaintiff's storage of SNF or HLW, the court disagrees that Count III of plaintiff's complaint should be dismissed without prejudice as "unripe." "'A court should dismiss a case for lack of ripeness when the case is abstract or hypothetical. . . . A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.'" Rothe Dev. Corp. v. Dep't of Def., 413 F.3d 1327, 1335 (Fed. Cir. 2005) (quoting Monk v. Huston, 340 F.3d 279, 282 (5th Cir. 2003) (alteration in original)). While plaintiff concedes that "[t]he government has simply not taken anything yet," Pl.'s Resp. at 8,[12]

---

[12]The court notes that, based on this statement, plaintiff could be considered to lack standing to assert its takings claim. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (holding that in order to meet the constitutional requirement of standing a plaintiff must show, inter alia, that he has suffered an "injury in fact" which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical); Natural Law Party of the United States v. Fed. Election Comm'n, 111 F. Supp. 2d 33, 41 (D.C. Cir. 2000) ("Standing is based upon the facts as they exist at the time the complaint is filed, and plaintiff bears the burden of

(continued...)

plaintiff contends that further factual development is required "because construction of the Humboldt Bay ISFSI has not begun," and therefore "the claimed 'taking' is unripe," id. at 7-8. The court finds that plaintiff's attempt to recharacterize the pleadings in its complaint does not survive scrutiny.

Plaintiff's complaint states that its property has been taken by the government because it must continue to store SNF on its property for the foreseeable future and has therefore been deprived of the effective use and value of the property by the government's breach of the Standard Contract. Compl. ¶ 30. Plaintiff's complaint does not allege specifically that the construction of an ISFSI at Humboldt Bay is what constitutes the taking of its property. See id. passim. The court notes that, in light of the court's agreement with plaintiff's contention that "the government's [M]otion is better viewed as one to dismiss or for judgment on the pleadings with respect to the claims at issue," Pl.'s Mot. for Leave ¶ 2, see supra note 3, the court is reluctant to address plaintiff's recharacterization of its takings claim raised for the first time in its Response. See Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993) ("A motion made under Rule 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced. The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity."); Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) ("'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991))). Nevertheless, because defendant's Motion is pursuant to RCFC 56 rather than RCFC 12(b)(6), the court addresses briefly plaintiff's contention that its takings claim is "unripe."

The court finds that plaintiff's unilateral decision to build an ISFSI to continue to store this SNF cannot amount to the accrual of a taking of plaintiff's property by the government any more than can its storage activities to date. Indeed, the costs associated with the construction of such a facility, if they are found to be reasonably foreseeable by the government, caused by the government's breach, and proved to a reasonable certainty, see Indiana Michigan, 422 F.3d at 1373, may be fully vindicated through a breach of

---

[12](...continued)
proof."). However, because plaintiff's complaint, as opposed to its Response, sufficiently alleges an injury in fact, the court addresses the merits of plaintiff's takings claim.

contract remedy, see Hughes, 271 F.3d at 1070; Castle, 301 F.3d at 1342; Commonwealth Edison, 56 Fed. Cl. at 656.

Plaintiff does not contend that further action taken by the government will cause its takings claim against the government to become ripe. Rather, plaintiff contends that further, unilateral action taken by PG&E because of the government's breach of the Standard Contract will cause its takings claim against the government to become ripe. The court finds this contention to be without merit. Takings jurisprudence involves analysis of government action, not unilateral action taken by a plaintiff as a result of the government's breach of contract. The court finds that plaintiff's novel takings theory – a theory not specifically pleaded in its complaint, raised for the first time in its Response, and appearing in a case where plaintiff concedes that nothing has yet been taken – fails as a matter of law. RCFC 56(c); cf. Advanced Cardiovascular Sys., 988 F.2d at 1160 ("The purpose of [RCFC 12(b)(6)] is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail."). Accordingly, with respect to plaintiff's storage of SNF and HLW under the contract, the court agrees with defendant that, "it is clear . . . not that [plaintiff's] takings claim is not 'ripe,' but that [plaintiff] has no takings claim."[13] See Def.'s Reply at 5; see Rothe, 413 F.3d at 1335 ("A case is generally ripe if any remaining questions are purely legal ones . . . ."); Ross v. United States, 910 F.2d 1422, 1427 (7th Cir. 1990) ("[W]e are satisfied that we have all of the pertinent facts necessary for a resolution of this issue, and there is no need for further factual development. The issue is ripe for resolution on the pleadings.").

---

[13]The court disagrees with plaintiff that Cienega Gardens v. United States, 331 F.3d 1319 (Fed. Cir. 2003), counsels a different result. In Cienega Gardens, the plaintiffs entered into loan agreements with private lenders that were insured by the Department of Housing and Urban Development (HUD) and that provided for a specific right of prepayment. Id. at 1325. Government regulation subsequently restricted the prepayment right, which the Federal Circuit found amounted to a taking. Id. at 1340. First, Cienega Gardens is distinguishable from this case in that there, the plaintiffs' contracts were with private lenders and not the government, so no contract claim against the government was available to redress the government's subsequent restriction on the plaintiff's prepayment right. In contrast, as explained above, plaintiff in this case may enforce its rights against the government through a contract remedy. Accord Allegre Villa v. United States, 60 Fed. Cl. 11, 19 (2004). Second, in Cienega Gardens, the Federal Circuit found, "as a matter of law, that the government's actions . . . , insofar as they abrogated the [plaintiffs'] contractual rights to prepay their mortgages . . . , had a character that supports a holding of a compensable taking." Id. (emphasis added). Therefore, to the extent that plaintiff claims that Cienega Gardens supports the theory that its takings claim is not yet ripe because actions that PG&E will take have not yet occurred, plaintiff's reliance on Cienega Gardens appears to the court to be unfounded.

If the "salient facts . . . change" as plaintiff states they may, Pl.'s Resp. at 10, through the government's enactment of a "take-title" bill or otherwise, plaintiff may bring a takings claim based on the facts as they exist at that time. See Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1362 (Fed. Cir. 2000) ("[A] second suit will be barred by claim preclusion if: (1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first.") (emphasis added). As the facts exist now, however, with respect to plaintiff's storage of SNF and HLW under the contract, the court finds that plaintiff's takings claim fails to withstand summary judgment.[14]

However, with respect to storage of GTCC waste, the court finds plaintiff's takings claim to be unripe. The Supreme Court has explained that "[the] basic rationale [for the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized . . . ." Abbot Labs v. Gardner, 387 U.S. 136, 148-49 (1967). In Commonwealth Edison, the court found the general question of whether disposal of GTCC waste was required under the Standard Contract to be unripe for judicial decision

[14]The court notes that some cases have allowed a takings claim to go forward and suggested that a taking may be found in this context if a breach of the Standard Contract is not found, or if recovery from such a breach is not allowed. See Detroit Edison Co v. United States, 56 Fed. Cl. 299, 302-03; Sys. Fuels, Inc. v. United States, 65 Fed. Cl. 163, 172-73 (2005). The court respectfully disagrees with these decisions, to the extent that they are not distinguishable based on their particular circumstances. The court reads Winstar, Hughes and Castle to favor contract remedies alone where, as here, a plaintiff's alleged rights arise solely from the terms of a contract. This is so "even if it ultimately is determined that no breach occurred." Klamath Irrigation Dist. v. United States, 67 Fed. Cl. 504, 532 (2005) (citing Baggett Transp. Co. v. United States, 969 F.2d 1028, 1034 (Fed. Cir. 1992) (no breach of contract and no takings); Canal Elec., 65 Fed. Cl. at 656 (takings claim dismissed, contract claim allowed to proceed)). Indeed, as explained in Klamath,

> the rule favoring contract remedies depends upon there being symmetry between the contract rights to be enforced and the contract damages that are potentially available. Once this symmetry is established, a finding on the merits that no breach occurred does not break that relationship, but merely reflects that the contract rights that were asserted either never existed or were not adversely affected by the government's actions. Under either scenario, those same contract rights cannot provide the predicate for a takings because the government cannot take what the clamant does not have.

67 Fed. Cl. at 532 n.46.

"because the issue [was] 'contingent [upon] future events that may not occur as anticipated, or indeed may not occur at all.'" 56 Fed. Cl. at 658 (quoting Texas v. United States, 523 U.S. 296, 300 (1998)) (second alteration in original). The court noted that "plaintiff in this case has not made a claim for damages stemming from defendant's failure to accept and dispose of GTCC waste." Id. Moreover, DOE had not yet issued "detailed acceptance criteria" for the waste subject to the Standard Contract as was to be provided in accordance with Appendix E of the Standard Contract, and therefore it was unclear at that time whether GTCC waste was subject to the Standard Contract. Id. Because the court found the question of whether the government was obligated under the terms of the Standard Contract to accept and dispose of the plaintiff's GTCC waste to be unripe for judicial decision, the court denied as moot the government's motion to dismiss the plaintiff's takings claim with respect to GTCC waste. See id. at 656.

The court finds that circumstances with respect to GTCC waste have not sufficiently changed since Commonwealth Edison so as to justify a finding of ripeness for judicial decision of plaintiff's takings claim as it relates to the storage of GTCC waste. Just as the plaintiff in Commonwealth Edison did not make a specific claim for damages stemming from the government's failure to accept and dispose of GTCC waste, plaintiff has not made such a claim here. See Compl. passim. Moreover, it remains unclear whether disposal of GTCC waste is provided for under the Standard Contract and the NWPA or rather, as defendant states, the Low-Level Radioactive Waste Policy Amendments Act of 1985 (LLRWPA),[15] Pub. L. No. 99-240, 99 Stat. 1842 (1986) (codified at 42 U.S.C. §§ 2021b-2021i (2000)), see Def.'s Reply at 9.[16] In fact, with

---

[15]The LLRWPA provides, in relevant part, that:

> (b)(1) The Federal Government shall be responsible for the disposal of–
>
> . . . .
>
> (D) any . . . low-level radioactive waste with concentrations of radionuclides that exceed the limits established by the Commission for class C radioactive waste . . . .

42 U.S.C. § 2021c (2000). Notably, the LLRWPA does not specify a time within which the government must meet this disposal obligation. See Pl.'s Resp. Exhibit (Ex.) 1, at 5 (Order of June 26, 2003 in Yankee Atomic Electric Co. v. United States, No. 98-126C).

[16]Plaintiff also hints that its theory for a taking regarding the storage of its GTCC waste may be based on some statutory duty of the government to dispose of it, see Pl.'s Resp. at 10 ("[T]he government had a pre-existing, non-contractual, statutory obligation to remove the
(continued...)

respect to the disposal of GTCC waste, section 631 of the Energy Policy Act of 2005, Pub. L. No. 109-58, § 631, 119 Stat. 594, 631 (2005), states, in relevant part:

> (B) Analysis of Alternatives.–Before the Secretary makes a final decision on the disposal alternative or alternatives to be implemented, the Secretary shall–
>
> (i) submit to Congress a report that describes all alternatives under consideration, including all information required in the comprehensive report making recommendations for ensuring the safe disposal of all greater-than-Class C low-level radioactive waste . . . ; and
>
> (ii) await action by Congress.
>
> (2) Short-term plan for recovery and storage.–
>
> (A) In general.– Not later than 180 days after the date of enactment of this Act, the Secretary shall submit to Congress a plan to ensure the continued recovery and storage of greater-than-Class C low-level radioactive sealed sources that pose a security threat until a permanent disposal facility is available.

Id. § 631(b)(1)(B)(i), (B)(ii), (2)(A). Such apparent uncertainty regarding the government's obligation to dispose of GTCC waste – as well as the alternative means by which it is considering disposal of GTCC waste – militates against a finding of ripeness with respect to plaintiff's takings claim to the extent that it involves the storage of GTCC waste. Accord Commonwealth Edison, 56 Fed. Cl. at 658; cf. Pl.'s Resp. Ex. 1, at 6 (Order of June 26, 2003 in Yankee Atomic Electric Co. v. United States, No. 98-126C) ("[D]efendant urges that GTCC [waste] is not covered by the [Standard Contract]. If so, a continued presence of GTCC [waste] on plaintiff's site despite defendant's statutory obligation to dispose [o]f it could, conceivably, form the basis for a taking claim.").

Accordingly, with respect to the disposal of GTCC waste, the court declines to "entangl[e itself] in abstract disagreements over administrative policies," and determines that refraining "from judicial interference until an administrative decision has been formalized," Abbot Labs, 387 U.S. at 148-49, is the prudent course. To the extent that

---

[16](...continued)
GTCC waste.").

Count III of plaintiff's complaint involves the continued storage of GTCC waste, plaintiff's claim is deemed UNRIPE.

3. Conclusion

For the foregoing reasons, defendant is entitled to judgment as a matter of law on plaintiff's takings claim with respect to SNF and HLW. RCFC 56(c). Accordingly, defendant's motion for summary judgment upon Count III of plaintiff's complaint is GRANTED with respect to SNF and HLW. To the extent that Count III of plaintiff's complaint involves the continued storage of GTCC waste, plaintiff's claim is deemed UNRIPE. Accordingly, defendant's motion for summary judgment upon Count III of plaintiff's complaint is DENIED as MOOT with respect to GTCC waste. Accord Commonwealth Edison, 56 Fed. Cl. at 656.

III. Conclusion

For the foregoing reasons, defendant's motion for summary judgment upon Count II of plaintiff's complaint is GRANTED, and defendant's motion for summary judgment upon Count III of plaintiff's complaint is GRANTED except with respect to GTCC waste, as to which the motion is DENIED as MOOT.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge