No. 04-0074C
into which has been consolidated
No. 04-0075C
Judge Hewitt

(Filed Electronically, April 28, 2006)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# PACIFIC GAS & ELECTRIC COMPANY'S MOTION TO EXCLUDE TESTIMONY OF JONATHAN A. NEUBERGER

---

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 phone
(202) 261-4751 fax
*Counsel for Plaintiff*
Pacific Gas & Electric Company

Of Counsel:
ROBERT L. SHAPIRO
Greenberg Traurig, LLP

TABLE OF CONTENTS

ARGUMENT ....................................................................................................4

I. THIS COURT HAS THE POWER TO PRECLUDE EXPERT TESTIMONY IF IT IS NOT RELEVANT, RELIABLE, AND HELPFUL ....................................................................4

II. DR. NEUBERGER'S PROPOSED TESTIMONY CRITICIZING THE GRAVES MODEL IS IRRELEVANT, UNRELIABLE AND A WASTE OF THE COURT'S TIME ....................................................................................................5

A. Dr. Neuberger's Proposed Testimony Is Nothing More Than Baseless Speculation And Should Be Excluded Under Rules 402 And 403 As It Is Irrelevant, Confusing And A Waste Of The Court's Time ....................................................................6

B. Dr. Neuberger's Proposed Testimony Criticizing The Graves Model Is Not "Reliable" Under Rule 702 As It Is The Product Of Speculation And Hypothesis Rather Than "Sufficient Facts And Data" And "Reliable Principles And Methods" ....................8

III. DR. NEUBERGER'S PROPOSED TESTIMONY CRITICIZING PROFESSOR CORNELL'S DAMAGES CALCULATIONS DOES NOT SATISFY RULE 702'S REQUIREMENTS AND IS AN IMPROPER LEGAL CONCLUSION ....................11

A. Dr. Neuberger's "Opinions" That Certain Costs Claimed As Damages Are Not Incremental Are Impermissible Legal Conclusions ....................................................11

B. Dr. Neuberger's Opinion Criticizing Professor Cornell's Treatment Of Decommissioning Costs Is Inadmissible As He Lacks The Qualifications To Offer Such An Opinion, The Opinion Is The Product Of Speculation And Unfounded Assumptions And Is Not Based On "Sufficient Facts Or Data" ....................................12

IV. DR. NEUBERGER'S PROPOSED TESTIMONY CONCERNING HIS "SIMULATION" OF THE DOE MODEL DOES NOT MEET ANY OF RULE 702'S REQUIREMENTS ....................................................................................................14

CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

Federal Cases

*Biovail Corp. Int'l v. Andrx Pharm., Inc.,* 239 F.3d 1297 (Fed. Cir. 2001)....................................4

*Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194 (4th Cir. 2001) ..................................................4

*Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579 (1993) ........................................................4

*DePaepe v. General Motors Corp.,* 141 F.3d 715 (7th Cir. 1998) .................................................2

*Domingo v. T.K., M.D.,* 289 F.3d 600 (9th Cir. 2002)...................................................................9

*General Elec. Co. v. Joiner,* 522 U.S. 136 (1997).....................................................................4, 9

*Gray v. Briggs,* 45 F. Supp. 2d 316 (S.D.N.Y. 1999)....................................................................4

*Indiana Michigan Power Co. v. United States,* 60 Fed. Cl. 639 (2004) .........................................9

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, (1982)............................3, 11

*Khumo Tire Co. v. Carmichael,* 526 U.S. 137 (1993) ...................................................................4

*O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090 (7th Cir. 1994) .......................................9

*Smith v. Ford Motor Co.,* 215 F.3d 713 (7th Cir. 2000)................................................................2

*Tennessee Valley Authority v. United States,* 69 Fed. Cl. 515 (2006) ...................................11, 12

*United States v. Gwaltney,* 790 F.2d 1378, (9th Cir. 1986), cert. denied, 479 U.S. 1104 (1987) ...5

*United States v. Rincon,* 28 F.3d 921 (9th Cir. 1994)....................................................................7

*Westfed Holdings Inc., v. United States*, 55 Fed. Cl. 544 , (2003) ....................................4, 10, 13

*Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416 (7th Cir. 2005)..........9, 10

Federal Rules

Fed. R. Evid. 403 ........................................................................................................................6, 8

Fed. R. Evid. 702 ..................................................................................................................... passim

INDEX TO APPENDIX

Table of Excerpts from Dr. Neuberger's Report ............................................................................A1

Expert Witness Report of Jonathan A. Neuberger, Ph.D...........................................................A5

Transcript Citations from March 6, 2006 Deposition of Dr. Neuberger ....................................A60

Excerpt from Expert Report of Brad Cornell..............................................................................A76

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically Filed on April 28, 2006

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-0074C, into which has been consolidated No. 04-0075C (Judge Hewitt) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

PACIFIC GAS & ELECTRIC COMPANY'S MOTION TO EXCLUDE TESTIMONY OF JONATHAN A. NEUBERGER

Pursuant to RCFC 16, PG&E moves for an order precluding Jonathan A. Neuberger from testifying as an expert witness. The government states that Dr. Neuberger is expected to testify "concerning economic critiques of the expert witness reports prepared by [PG&E's] expert witnesses, Frank Graves and Professor Bradford Cornell"[1] and "concerning the DOE spent nuclear fuel discharge projections model."[2] The "opinions" expressed in Dr. Neuberger's expert report, however, primarily criticize Mr. Graves' model which characterizes what the schedule of spent fuel acceptance from PG&E's Humboldt Bay and Diablo Canyon power plants would have been absent the government's partial breach of PG&E's spent fuel contract with the Department of Energy ("DOE").[3]

[1] *Pacific Gas & Electric Co. v. United States,* Defendant's Witness List, April 17, 2006 (Fed. Cl., filed January 22, 2004).

[2] *Id.*

[3] Expert Witness Report of Jonathan A. Neuberger, Ph.D. ("Rep."), App. at 5 - 59.

Dr. Neuberger asserts the Graves model is deficient because it fails to take into account certain variables. However, Dr. Neuberger admits that he does not know whether *any* of these variables, individually or in combination, would have had a material effect on the Graves model as he has not created a competing model that accounts for any of these variables.[4] As such, Dr. Neuberger's proposed testimony is no more than a laundry list of speculation, conjecture and "red herrings." At its most basic, Dr. Neuberger's proposed testimony is an analytically-unsound series of unhelpful rhetorical "what ifs" and "maybes," not based on any discernable methodology. Dr. Neuberger criticism of Mr. Graves' model is deficient and inadmissible, because Dr. Neuberger has not attempted to demonstrate that his "hypothetical alternatives . . . have 'analytically sound bases' so that they are more than mere 'speculation.'" *Smith v. Ford Motor Co.,* 215 F.3d 713, 719 (7th Cir. 2000) (citing *DePaepe v. General Motors Corp.,* 141 F.3d 715, 720 (7th Cir. 1998). There is no doubt that, if the variables that Dr. Neuberger claims are missing from Mr. Graves' model had a material effect on that model, Dr. Neuberger would have created his own model that accounted for these "hypothetical alternatives." He did not, and his failure to create such a competing model speaks volumes. Having not created his own model, Dr. Neuberger should not be permitted to waste the Court's time with confusing, rank speculation.

In addition, Dr. Neuberger's criticizes PG&E expert witness Professor Bradford Cornell's inclusion in PG&E's damages claim certain costs that Dr. Neuberger asserts are "not

---

[4] "The reason I said 'may' was . . . [because] I don't know how . . . they would exactly interact." Neuberger Deposition Transcript ("Tr.") at 242:3 - 13, App. 71;

"I did not independently model the but-for world . . . I don't have a counterexample to say [what would have happened] . . . to a reasonable degree of certainty. . ." Tr. at 70:4 - 8, App. 66.

incremental."[5] Dr. Neuberger should not be permitted to offer this baldly-conclusory legal opinion as it intrudes on the exclusive province of this Court. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 856 (1982). Furthermore, Dr. Neuberger lacks the qualifications to express an opinion criticizing Professor Cornell's treatment of decommissioning costs and his opinion is the product of speculation and unfounded assumptions and is not based on "sufficient facts or data."

Finally Dr. Neuberger's Report addresses his "simulation" of DOE's model for computing allocations of acceptance rate based on the oldest fuel first ("OFF") theory of priority rankings. Dr. Neuberger did not create, test or evaluate this model in any way. All that Dr. Neuberger can say is that, if you put a certain acceptance rate (which for all he knows is an inappropriately low rate), the model produces certain results. Dr. Neuberger's "opinion" concerning this so-called "simulation" of DOE's model does not rise to the level of a properly-predicated expert opinion, because it is not based on "specialized knowledge," it does not demonstrate the application of "reliable principles or methods" and there is no demonstration that the results of running the model is based upon "sufficient facts or data." There is no conceivable opinion concerning this model that Dr. Neuberger could offer which would satisfy the requirements of Rule 702, which defines permissible expert testimony.

[5] Dr. Neuberger does not expressly define "not incremental" costs in his expert report. However, another of the government's proposed experts, Warren K. Brewer, defines "not incremental" as costs that would have been incurred by PG&E at some point regardless of DOE's breach; and therefore, they are not recoverable.

## ARGUMENT

### I. THIS COURT HAS THE POWER TO PRECLUDE EXPERT TESTIMONY IF IT IS NOT RELEVANT, RELIABLE, AND HELPFUL

This Court functions as a "gatekeeper," ensuring expert testimony "will assist the trier of fact to understand the evidence or determine a fact in issue," Fed. R. Evid. 702, and is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993); *Khumo Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1993) (applying the holding of *Daubert* to "technical" and "other specialized" expert testimony); *Biovail Corp. Int'l v. Andrx Pharm., Inc.,* 239 F.3d 1297, 1303 (Fed. Cir. 2001) (one purpose of gatekeeping role is to ensure that all expert testimony is both relevant and reliable).

Accordingly, when this Court finds that offered expert testimony is either not helpful to the resolution of issues before the Court or not reliable; it may exclude such expert testimony at trial. *Kumho Tire*, 526 U.S. at 137 (1999); *General Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997) (trial court decision on admissibility of expert testimony reviewed on an abuse of discretion standard). The Court has "broad discretion to exclude expert testimony for its lack of helpfulness *or* for the expert's lack of qualifications." *Gray v. Briggs*, 45 F. Supp. 2d 316, 323 (S.D.N.Y. 1999) (emphasis added) (citations omitted). "In addition to possessing 'knowledge, skill, experience, training, or education,' an expert's testimony *must also* be both relevant and reliable in order to be admitted into evidence." *Westfed Holdings Inc., v. United States,* 55 Fed. Cl. 544 , 571 (2003), (emphasis added) (citing *Daubert,* 509 U.S. at 589; *Kumho Tire,* 526 U.S. at 147). Moreover, the Court should exercise this discretion and exclude expert testimony where the proponent fails to show that the proposed testimony meets Rule 702's standard by a preponderance of the proof. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001);

*United States v. Gwaltney*, 790 F.2d 1378, 1382 (9th Cir. 1986), *cert. denied*, 479 U.S. 1104 (1987).

## II. DR. NEUBERGER'S PROPOSED TESTIMONY CRITICIZING THE GRAVES MODEL IS IRRELEVANT, UNRELIABLE AND A WASTE OF THE COURT'S TIME

Dr. Neuberger contends that the Graves model which characterizes what the schedule of spent fuel and high-level waste (together "SNF") acceptance from PG&E's Humboldt Bay ("HBPP") and Diablo Canyon ("DCPP") power plants would have been absent the government's partial breach of the DOE's contract with PG&E is "an overly simplistic representation of the incentives and market forces facing utilities for holding, buying and selling DOE acceptance rights." Neuberger Report at 3, ¶14, App. 11. Dr. Neuberger also asserts that the Graves model's "characterization of the market [for trading DOE acceptance rights] is incomplete and unlikely to produce any reliable predictions of trading volumes or market prices." Rep. at 14, ¶51, App. 22.

Dr. Neuberger states his assignment was to "provide an economic analysis and critique of the assumptions, theory, and practical implications of Mr. Graves' model." Rep. at 2, ¶5, App. 10. Dr. Neuberger woefully has failed to complete his assignment. While Dr. Neuberger identifies a series of variables or inputs that he believes are either wrongfully included or omitted from the Graves model, Dr. Neuberger does not offer an opinion on the quantitative impact to the Graves model if these "important" factors were included. *See* Tr. 233:14 – 19, App. 70. Dr. Neuberger admits that he "do[es]n't know how" the factors he alleges Mr. Graves failed to consider "may" affect the Graves model.

> Q: And since you haven't quantified the effect of the factors that you criticize Mr. Graves for not considering, you're not even sure that they would ultimately affect the outcomes predicted by Mr. Graves because, for example, as you point out, these --

> these other factors might have washed each other out?
>
> A: The reason I said "may" was for that possibility. I've not done the modeling, so I don't know how with -- with a reasonable degree of certainty, how they would exactly interact.

Tr. at 242:3 – 13, App. 71.

Instead, Dr. Neuberger's report offers nearly seventy paragraphs of baseless speculation and hypothesis where he repeatedly fails to offer any substantive conclusions about or criticisms of the Graves model. Dr. Neuberger's analysis of DOE acceptance rights is of no use to the Court as "it is ***impossible to estimate*** how [his so-called] more complete depiction of the market would affect any individual utility's ability to purchase DOE acceptance rights." (emphasis added) Rep. at 17, ¶60, App. 25. This deficiency is a common theme throughout Dr. Neuberger's report.

A. Dr. Neuberger's Proposed Testimony Is Nothing More Than Baseless Speculation And Should Be Excluded Under Rules 402 And 403 As It Is Irrelevant, Confusing And A Waste Of The Court's Time

Rules 402 and 403 outline a standard where irrelevant evidence is inadmissible and, even where that evidence may be relevant, it "may be excluded if its probative value is substantially outweighed by "the danger of . . . confusion of the issues . . . or by considerations of . . . [a] waste of time." Fed. R. Evid. 403.

Dr. Neuberger's report offers flimsy conclusions where he is either unable or unwilling to state his opinion with a reasonable degree of certainty. He makes extensive use of "may,"

"could," "might," "potentially," and other qualifiers.[6] The word "*if*" appears some thirty-four times within the body of his report.[7] While speculation and hypothesis alone does not obviate the relevance of Dr. Neuberger's criticisms of the Graves model, the failure to follow through with actual substantive opinions does. Dr. Neuberger never offers his own alternative model.

> Q: What quantitative analyses did you perform . . . as part of your work critiquing Mr. Graves' analysis?
>
> A: I don't know that there was specific run it with these numbers, do something different. I mean, I don't know that there was specifically quantitative work . . .

Tr. at 36:15 – 37:2, App. 62-63.

If perhaps Dr. Neuberger had first offered his criticisms and then modeled those alternative inputs, there might be some probative value in the quantitative and verifiable results. Failing that however, any *de minimis* value that might be accorded to his uniformly-qualified speculation and hypothesis is substantially outweighed by its danger of confusing the issues and wasting the Court's time. If Dr. Neuberger is unwilling to unequivocally commit to his own specific criticisms of the Graves model and develop alternative theories, the Court should bar Dr. Neuberger's testimony. *See U.S. v. Rincon,* 28 F.3d 921, 925 (9th Cir. 1994) (affirming the

---

[6] A few examples of Dr. Neuberger's speculation and hypotheses are as follows:

> "Buyers and sellers ***may*** send misleading signals about the valuations they place on DOE acceptance rights." (emphasis added) Rep. at 23, ¶77, App. 31;
>
> "Mr. Graves ignores factors besides avoidable cost that ***could affect*** the demand for DOE acceptance rights, including risk aversion, uncertainty, and political, regulatory and community pressure." (emphasis added) *Id.* at 15, ¶52, App. 23;
>
> "These ***potentially important*** factors are not considered in the Graves model in influencing both the demand and supply for DOE acceptance rights." (emphasis added) *Id.*; and
>
> "In fact, strategic behavior ***could affect*** many aspects of Mr. Graves' modeling framework. " (emphasis added) *id.* at 22,¶76, App. 30.

[7] The full extent of Dr. Neuberger's reliance on qualifiers, supposition and speculation to temper his "opinion" can be found in the Appendix at App. 1 - 4.

exclusion of expert testimony under Rule 403 where expert sought to testify about factors that *may* impact the reliability of eyewitness identifications). Any presentation of this evidence would only confuse the relevant (and supported) issues presented by Mr. Graves and would be a waste of the Court's time and should therefore be excluded. Fed. R. Evid. 403.

B. Dr. Neuberger's Proposed Testimony Criticizing The Graves Model Is Not "Reliable" Under Rule 702 As It Is The Product Of Speculation And Hypothesis Rather Than "Sufficient Facts And Data" And "Reliable Principles And Methods"

To be "reliable" proposed expert testimony must be: (1) "the product of sufficient facts and data," (2) "based on reliable principles and methods," and (3) the product of a reliable application of these principles and methods to the facts of the case. Fed. R. Evid. 702. Dr. Neuberger's opinion criticizing the Graves model meets none of these requirements. Dr. Neuberger asserts that variables or inputs have either wrongfully been included or omitted from the Graves model, yet Dr. Neuberger has no substantive opinion on what would be the effect on the Graves model if it was adjusted with his suggested inputs and rerun. *See* Tr. at 233:14 – 19, App. 70.

Dr. Neuberger's "opinion" is purely speculative and theoretical as he admits that he "did not conduct statistical tests. [He] didn't run regressions. Those are all empirical analytical tools. The nature of my critique is more theoretical." Tr. at 72:17 – 22, App. 68. Because he has eschewed "empirical analytical tools" for theoretical speculation, Dr. Neuberger methods can not be tested for reliability. Instead, he asks the Court to "presume" that his opinions are reasonable, because he says so:

Q: How could the court test the reliability of your analysis?

(objection omitted)

> A: I don't know. I think if my arguments are reasonable, if they seem intuitively correct, then presumably the court would give them some weight.

Tr. at 74:8 – 16, App. at 69. Thus, Dr. Neuberger's opinions have no real basis in facts or data. They rely upon "beliefs" (Tr. at 242:14 – 20, App. 71) theory and conjecture and, as such, are clearly inadmissible under Fed. R. Evid. 702.

The Court should also preclude Dr. Neuberger from testifying because his "opinions" are not "the product of reliable principles or methods." *Id.* In fact, Dr. Neuberger's *presents* no methodology and, consequently, *applies* no methodology other than his intangible "economic beliefs" in his "analysis" of the Graves model. *See* Tr. 242:3 - 243:2, App. 71.

"The reasoning between steps in a theory must be based on objective, verifiable evidence and scientific [or other] methodology of the kind traditionally used by experts in the field." *Domingo v. T.K., M.D.,* 289 F.3d 600, 607 (9th Cir. 2002) (citing *Kennedy v. Collagen Corp.,* 161 F.3d 1226, 1230 (9th Cir.1998)). "The more subjective . . . the expert's inquiry, the more likely the testimony should be excluded as unreliable." *Indiana Michigan Power Co. v. United States,* 60 Fed. Cl. 639 (2004) (citing Fed. R. Evid. 702, 2000 Amendments Commentary (citing *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090 (7th Cir. 1994) (expert testimony based on a subjective analysis should be excluded)). "[E]xperts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data [as is Dr. Neuberger's opinion] only by the *ipse dixit* of the expert." *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.,* 395 F.3d 416, 420 (7th Cir. 2005) (quoting *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)).

In *Zenith* the Seventh Circuit upheld the district court's exclusion of proposed testimony because the expert lacked a sufficient methodology. When asked to identify his methods, the

expert repeatedly answered “my expertise,” “my industry experience” and other similar statements. The district court concluded that this “is to say that [the expert] either had no reliable method or could not describe one. He was relying on intuition, which we won’t do.” *Zenith,* 395 F.3d at 417-418. (citations omitted). Likewise, Dr. Neuberger offers similar answers when asked about his methodology.[8] First, his claims that his method was just “economics,” Tr. at 71:3 - 8, App. 67, *then* he asserts “[y]ou could probably call it anything you want.” Tr. at 72:6 - 7, App. 68. Shortly thereafter he settles on “applied microeconomic analysis” Tr. at 72:18, App. 68, and offers that ‘[t]he nature of my critique is more theoretical.” Tr. 72:17 – 22, App. 68. Clearly Dr. Neuberger’s method is nothing more than the impermissible “*ipse dixit* of the expert.”

For all these reasons Dr. Neuberger should not be permitted to testify as an expert criticizing the Graves model as his “opinions” are unreliable and not “the product of reliable principles or methods.” As such, Dr. Neuberger’s “opinion” will not assist this Court with determining any fact in issue.

[8] Unlike the expert in *Zenith*, Dr. Neuberger can’t say that he was relying on “my industry experience” as any familiarity Dr. Neuberger has with the particular issues and challenges that are unique to the nuclear power industry was acquired from the two prior SNF cases in which he participated. Tr. at 12:6 - 10, App. XX. As this Court “does not regard accumulated experience in testifying in other cases as in itself proof of expertise …,” (*Westfed Holdings, Inc. v. United States,* 55 Fed. Cl. 544, 573 (2003) (citing 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* §6265 n.14 (1997 & Supp. 2002), Dr. Neuberger should be precluded from offering his opinions concerning the Graves model.

## III. DR. NEUBERGER'S PROPOSED TESTIMONY CRITICIZING PROFESSOR CORNELL'S DAMAGES CALCULATIONS DOES NOT SATISFY RULE 702'S REQUIREMENTS AND IS AN IMPROPER LEGAL CONCLUSION

Dr. Neuberger's proposed testimony includes two major criticisms of PG&E's expert witness, Dr. Bradford Cornell. He states that some of the damages identified by Dr. Cornell may not represent incremental costs. Rep. at 31-32, ¶105, App. 39-40. In addition, Dr. Neuberger believes that despite their potential to affect the amount of the damages claim, Dr. Cornell has ignored costs associated with the decommissioning of the Humboldt Bay Power Plant.

### A. Dr. Neuberger's "Opinions" That Certain Costs Claimed As Damages Are Not Incremental Are Impermissible Legal Conclusions

Dr. Neuberger's "opinion" that certain costs included in Dr. Cornell's damages estimate "may not represent incremental costs" is of no assistance to the Court because such a conclusion is no more than a legal interpretation which is the exclusive province of this Court. *Inwood Laboratories*, 456 U.S. at 856.

Dr. Neuberger criticizes the inclusion of certain labor and overhead charges in PG&E's damages claim because "[u]nless it can be shown that the company hired additional personnel, or paid overtime to employees because of their work on a breach-related project, or would have reduced staff in the absence of the breach, there are no incremental employee-related damages." Rep. at 32, App. 40. That this is indeed a legal conclusion to be made only by the Court is demonstrated by this Court's recent opinion in *Tennessee Valley Authority v. United States,* 69 Fed. Cl. 515 (2006). There, this Court addressed the same issue but reached a conclusion opposite to that of Dr. Neuberger, determining that TVA's use of "its own internal resources to support its mitigation is not fatal to its claim for damages in mitigating a breach of contract. Rather, the test for recovery is . . . whether use of the internal resources [] deprived it of the ability to employ those resources on other projects. That TVA would have paid its employees in

all events is not material to this inquiry" *TVA,* 69 Fed. Cl. at 539. Dr. Neuberger's "opinion" about incremental labor cost is nothing more than a legal conclusion (and an incorrect one at that).

B. Dr. Neuberger's Opinion Criticizing Professor Cornell's Treatment Of Decommissioning Costs Is Inadmissible As He Lacks The Qualifications To Offer Such An Opinion, The Opinion Is The Product Of Speculation And Unfounded Assumptions And Is Not Based On "Sufficient Facts Or Data"

Dr. Neuberger does not qualify as an expert in the topics covered in PG&E' s damages claim – the handling and storage of SNF as well as the requirements and attendant costs in maintaining a nuclear power plant in SAFSTOR[9] status. In order to testify in the form of an opinion, a witness must be "qualified . . . by knowledge, skill, experience, training or education," in an area of "scientific, technical, or specialized knowledge." Fed. R. Evid. 702. Nothing in Dr. Neuberger's education, training or experience qualifies him to express an opinion on the matters relevant to this case.

> Q: I was asking really just about the likelihood of there being a technical problem in the DOE program that would cause at least a temporary disruption of the program. You don't have the expertise to estimate the likelihood of the program suffering such a technical problem?
>
> (objection omitted)
>
> A: . . . Again, I'm not a technical expert in spent fuel storage or transportation; but given sufficient data about events that could disrupt the program, I believe that I could estimate their impact on the exchanges market.

Tr. 370:7 - 371:7, App. 72-73. That Dr. Neuberger has been an expert witness in two other SNF cases does not make him qualified under Rule 702. As noted above (*see* note 8, *supra*) this

[9] Custodial "SAFSTOR," which under Nuclear Regulatory Commission ("NRC") regulations essentially involves placing the unit in a mothball condition to assure that the public health and safety are adequately protected before the plant is later decontaminated and dismantled.

Court "does not regard accumulated experience in testifying in other cases as in itself proof of expertise . . . ," *Westfed,* 55 Fed. Cl. at 573 (citations omitted).

Dr. Neuberger claims that Dr. Cornell has ignored the potential impact of decommissioning costs related to Humboldt Bay. Rep. at 33, ¶110, App. 41. Decommissioning itself is not an incremental cost. However, in the same manner in which Humboldt Bay's SAFSTOR costs have escalated every year (Cornell Report at 16, Table 1, App. 79), every additional year in which DOE fails to pick-up the SNF at Humboldt Bay, the costs to decommission that plant will likely increase. Because "[t]he timing and amount of these costs, both in the actual and "but for" worlds is uncertain," Dr. Cornell "assum[es] that the rising costs of such decommissioning activities…is offset by [PG&E's]discount rate." Cornell Report at 13-14, ¶30, App 77-78. Dr. Neuberger's criticizes Dr. Cornell's opinion, speculating, without any analysis of any relevant data, that the cost to decommission *could* escalate at a rate slower than the discount rate. ("If . . . decommissioning costs escalate at a rate slower that PG&E's cost of capital . . .") Rep. at 34, ¶111, App. 42. Consistent with nearly every criticism in his report, instead of providing facts or data to support his allegations, Dr. Neuberger is offering only speculation about what could happen.

In the absence of data to support his assertions concerning the rate at which costs to decommission a power plant are expected to rise, Dr. Neuberger offers instead a cursory review of unrelated ISFSI construction cost indices. These indices are a part of the ISFSI construction contract between PG&E and Holtec. Dr. Neuberger claims that the rate of escalation in these ISFSI-related construction cost *may be* "proof" that the decommissioning costs *may* not increase at the same rate as the discount rate. Dr. Neuberger asserts that "[i]f similar types of costs are associated with decommissioning Humboldt Bay, then delays imposed by the Government's

breach will actually provide a net benefit to PG&E." Rep. at 34, ¶112, App. 42. Dr. Neuberger provides no basis for this assumption nor does he even attempt to tie any of the ISFSI-related cost indices to similar activities for the decommissioning of Humboldt Bay. As Dr. Neuberger's conclusions relating to Dr. Cornell's damages analysis is premised on insufficient facts or data it will be of no assistance to the Court. As such, he should not be permitted to testify.

## IV. DR. NEUBERGER'S PROPOSED TESTIMONY CONCERNING HIS "SIMULATION" OF THE DOE MODEL DOES NOT MEET ANY OF RULE 702'S REQUIREMENTS

Expert opinions must involve "specialized knowledge" and demonstrate the expert's qualifications, the application of "reliable principles or methods" and whether his testimony is based upon "sufficient facts or data." Fed. R. Evid. 702. Here, none of those requirements are met. Instead, Dr. Neuberger's "opinion" results solely from the "simulation" of the "DOE model" which Dr. Neuberger describes as "a tool developed by the agency for predicting SNF discharges . . . and allocating DOE acceptance rights." Rep. at 35, ¶115, App. 43. Significantly, Dr. Neuberger does not suggest that he created, tested or evaluated this model in any way. Dr. Neuberger work here is limited to "run[ning] a scenario of that model using the acceptance rates contained in the 1991 Annual Capacity Report . . ." Tr. at 43:18 - 44:5, App. 64-65. Thus, Dr. Neuberger "opinion" is based on the "simulation" of a model and the use of methodology prepared by someone else, with the inputs provided by government counsel and derived from a 15 year-old Acceptance Capacity Report. Clearly there is no Rule 702 expertise demonstrated here.

Dr. Neuberger's "opinion" concerning his "simulation" of DOE's model is not a properly-predicated expert opinion because it is not based on any "specialized knowledge," the application of "reliable principles or methods" and there is no demonstration that the results of

running the model is based upon "sufficient facts or data. As such, Dr. Neuberger should not be permitted to testify as an expert on his "simulation" of the DOE model because his proposed testimony fails to satisfy Rule 702's requirements.

## CONCLUSION

Dr. Neuberger should not be permitted to testify as an expert as various aspects of his proposed testimony does not meet Rule 702's requirement: (1) he is not "qualified . . . by knowledge, skill, experience, training or education," in an area of "scientific, technical, or specialized knowledge" relevant to this litigation; (2) his opinions are '[un]reliable" as they are not "supported by sufficient facts or data" and his opinions are not "the product of reliable principles or methods; (3) his opinions are not properly-predicated expert opinion because they are not based on any "specialized knowledge," and (4) some of his opinions are impermissible legal conclusion that intrude upon the exclusive province of this Court.

For these reasons Dr. Neuberger should not be permitted to testify.

Dated: April 28, 2006

Respectfully submitted,

s/ Jerry Stouck
Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 Phone
(202) 261-4751 Fax
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:

Robert L. Shapiro
Greenberg Traurig, LLP