No. 04-0074C, into which has been
consolidated No. 04-0075C
(Judge Hewitt)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION *IN LIMINE* REGARDING TESTIMONY CONCERNING THE MEANING OF THE NUCLEAR WASTE POLICY ACT AND THE STANDARD CONTRACT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
100 L Street N.W.
Washington, DC 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT R. DAMELIN
JOSHUA E. GARDNER
SHARON A. SNYDER
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

May 1, 2006

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

BMW Mfg. Corp. v. United States,
241 F.3d 1357 (Fed. Cir. 2001) . . . . . . . . . . 6

Carter v. United States,
530 U.S. 255 (2000) . . . . . . . . . . 3

Commonwealth Edison v. United States,
56 Fed. Cl. 652 (2003) . . . . . . . . . . 5

Conway v. Aniskoff,
507 U.S. 511 (1993) . . . . . . . . . . 4

Department of Energy v. Westland,
565 F.2d 685 (C.C.P.A. 1977) . . . . . . . . . . 6

Fidelity Fin. Servs, Inc. v. Fink,
522 U.S. 211 (1998) . . . . . . . . . . 5

Gardner & North Roofing & Siding Corp. v. Board of Governors of the Fed. Reserve Sys.,
464 F.2d 838 (D.C. Cir. 1972) . . . . . . . . . . 6

Gustafson v. Alloyd Co., Inc.,
513 U.S. 561 (1995) . . . . . . . . . . 5

Hartford Underwriters Ins. Co. v. Union Planters Bank,
530 U.S. 1 (2000) . . . . . . . . . . 3

Holder v. Hall,
512 U.S. 874 (1994) . . . . . . . . . . 5

McAbee Constr., Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996) . . . . . . . . . . 8

National Sch. of Aeronautics, Inc. v. United States,
135 Ct. Cl. 343, 142 F. Supp. 933 (1956) . . . . . . . . . . 6

Ratzlaf v. United States,
510 U.S. 135 (1994) . . . . . . . . . . 3

**TABLE OF CONTENTS (con't)**

**CASES** **PAGE(S)**

Ryco Constr., Inc. v. United States,
55 Fed. Cl. 184 (2002) . . . . . . . . . . . . 9

Sacramento Municipal Utility District v. United States,
63 Fed. Cl. 495 (2005) . . . . . . . . . . . . 9

Safeco Credit v. United States,
44 Fed. Cl. 406 (1999) . . . . . . . . . . . . 9

Selman v. United States,
204 Ct. Cl. 675 (1974) . . . . . . . . . . . . 5

Specht v. Jensen,
853 F.2d 805 (10th Cir. 1988) . . . . . . . . . . . . 7

Underwood v. Waddell,
743 F. Supp. 1291 (S.D. Ind. 1990) . . . . . . . . . . . . 7

United States Steel Corp. v. United States,
618 F.Supp. 496 (C.I.T. 1985) . . . . . . . . . . . . 7

United States v. Gonzales,
520 U.S. 1 (1997) . . . . . . . . . . . . 4

United States v. United Mine Workers,
330 U.S. 258 (1947) . . . . . . . . . . . . 5

United States v. Wiltberger,
18 U.S. (5 Wheat.) 76 (1820) . . . . . . . . . . . . 4

**STATUTES**

10 C.F.R. 961.11, Art . . . . . . . . . . . . 9, 10

10 C.F.R. 9611.11, Art. V.B . . . . . . . . . . . . 10

Fed. R. Evid. 701 . . . . . . . . . . . . 11

42 U.S.C. § 10222(a)(6) . . . . . . . . . . . . 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0074C, into which has been |
| | ) | consolidated No. 04-0075C |
| THE UNITED STATES, | ) | (Judge Hewitt) |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION *IN LIMINE* REGARDING
TESTIMONY CONCERNING THE MEANING OF THE
NUCLEAR WASTEPOLICY ACT AND THE STANDARD CONTRACT

Pursuant to Federal Rule of Evidence 701 and the Court's pre-trial scheduling order, defendant, the United States, respectfully requests that this Court grant defendant's motion *in limine* concerning certain testimony that plaintiff, Pacific Gas & Electric ("PG&E"), proposes to offer from Christopher Warner and Loring Mills.

SUMMARY OF THE ARGUMENT

In its witness list, PG&E has stated that it intends to call Christopher Warner, chief counsel for corporate and regulatory affairs in PG&E's law department, and Loring Mills, the former vice president of the Edison Electric Institute, an energy advocacy group, to testify about issues related to the development of the Nuclear Waste Policy Act of 1982 ("NWPA"), a "reasonable" schedule for DOE's acceptance and disposal of spent nuclear fuel ("SNF") from utilities, and the understanding of PG&E and the industry as a whole concerning DOE's contractual obligations. This proposed testimony is improper for several reasons.

First, to the extent Messrs. Warner and Mills intend to testify about the "legislative intent" behind the NWPA, the language of the NWPA is unambiguous, and resort to sources extrinsic to the plain language to interpret the NWPA are unnecessary. Further, even if the

NWPA were ambiguous, which it is not, such testimony constitutes inadmissible hearsay, as no one individual has the ability to testify as to the intent of Congress in passing particular legislation. Consequently, the Court should preclude PG&E's witnesses from testifying concerning the intent of Congress in passing the NWPA. Indeed, reliance upon testimony proffered nearly a quarter-of-a-century after the promulgation of the NWPA sheds no light upon the meaning of the statutory language of the NWPA.

Second, the Court should preclude PG&E's witnesses from testifying about the intent of the parties to the Standard Contract. Because the Standard Contract contains an integration clause, reliance upon parol evidence to interpret the contract's terms is inappropriate. Indeed, reliance upon parol evidence is particularly inappropriate in this case, where there is no ambiguity in the terms of the Standard Contract. Further, even if the Court were to conclude that the Standard Contract was ambiguous, Mr. Warner, who did not begin employment with PG&E until 1988 – five years after PG&E signed the Standard Contract – has no basis for testifying about the intent of either PG&E or the Government at the time the Standard Contract was signed. Similarly, to the extent Mr. Mills intends on testifying about any particular contract-holder's intent at the time the Standard Contract was signed, such testimony constitutes inadmissible hearsay. Therefore, the Court should preclude these witnesses from testifying about the intent of the parties at the time of contract formation.

## DISCUSSION

### I. THE COURT SHOULD PRECLUDE TESTIMONY RELATED TO THE MEANING OR INTERPRETATION OF THE NUCLEAR WASTE POLICY ACT

On March 17, 2006, PG&E provided the Government with its witness list. In this list, PG&E identified Christopher J. Warner, PG&E's chief counsel for corporate and regulatory affairs, as a witness concerning "the development of the Nuclear Waste Policy Act of 1982 and a reasonable schedule for DOE's removal of spent fuel from utilities." Pl. Witness List at 5. Further, PG&E identified Mr. Warner as testifying about "PG&E's understanding of DOE's contract obligations and contract breach." Id. Similarly, PG&E has identified Loring E. Mills, a former employee of the Edison Electric Institute, a utility trade association, as a witness "concerning the development of the parties' contract," as well as the "understandings and intentions of the contracting utilities regarding the pace and schedule of spent fuel acceptance." Id. at 3.

To the extent that PG&E seeks to introduce testimony concerning the intent of Congress in passing the NWPA or interpreting the statutory language, such evidence should be excluded. The bedrock principle of statutory interpretation is that the Court is to begin with the language of the statute. See Carter v. United States, 530 U.S. 255, 271 (2000) ("In analyzing a statute, we begin by examining the text . . . not by psychoanalyzing those who enacted it."). Indeed, if the text of the statute is clear, that is the end of the Court's inquiry. See Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1, 6 (2000); Ratzlaf v. United States, 510 U.S. 135, 148-49 (1994) ("But we do not resort to legislative history to cloud a statutory text that is clear"). "'Where there is no ambiguity in the words, there is no room for construction. The case must be

a strong one indeed, which would justify a court in departing from the plain meaning of words . . . in search of an intention which the words themselves did not suggest.'" United States v. Gonzales, 520 U.S. 1, 8 (1997) (quoting United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 95-96 (1820) (Marshall, C.J.)). As Justice Scalia has explained in rejecting reliance upon legislative history to interpret the plain meaning of statutory text:

> The greatest defect of legislative history is its illegitimacy. We are governed by laws, not the intentions of legislators. As the Court stated in 1844: "The law as it passed is the will of the majority of both houses, and the only more in which that will is spoken is in the act itself . . ."

Conway v. Aniskoff, 507 U.S. 511, 519 (1993) (Scalia, J., concurring in judgment) (quoting Aldridge v. Williams, 3 How. 9, 24, 11 L. Ed. 469 (emphasis added)).

Here, there is no ambiguity in the language of the NWPA requiring reliance upon legislative history. Presumably, PG&E is seeking to introduce the testimony of Messrs. Warner and Mills to testify about purported ambiguities in the NWPA concerning the rate and schedule of SNF acceptance. However, rather than contain an ambiguity concerning the rate and schedule upon which DOE was to accept contract holders' SNF, it is undisputed that the NWPA provides that any contract will provide that, "following commencement of operations of a repository, the Secretary shall take title to the [SNF] involved as expeditiously as practicable upon the request of" the contract holder; id. § 10222(a)(5)(A); and provides that any contract will have a provision that, in return for the payment of fees, DOE will begin disposing of SNF at some type of facility (either a repository or some other storage facility). Id. § 10222(a)(5)(B). The NWPA also provides that the Secretary of Energy "shall establish in writing criteria setting forth the terms and conditions under which such disposal services shall be made available." 42 U.S.C.

§ 10222(a)(6). Consequently, the NWPA expressly provides the Secretary with the authority to establish the post-January 31, 1998 rate and schedule of SNF acceptance under the Standard Contract, and there is no term in the statutory language of the NWPA requiring testimony.[1]

Even if the Court concludes that the NWPA is ambiguous, reference to "legislative history" generally, and post-drafting testimony specifically, to resolve such ambiguity is inappropriate. Indeed, the general rule is that post-passage remarks cannot be used to establish the legislative intent of the enacting Congress. See Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 579 (1995) ("[a]fter-the-fact statements by proponents of a broad interpretation are not reliable indicator of what Congress intended when it passed the law, assuming extratextual sources are to any extent reliable for this purpose"); United States v. United Mine Workers, 330 U.S. 258, 281-82 (1947) (finding remarks of legislators made 11 years after passage of act not probative of intent of drafters). The Supreme Court has rejected reliance upon both Committee Reports and floor statements as authoritative sources of legislative intent. See Fidelity Fin. Servs, Inc. v. Fink, 522 U.S. 211, 218-20 (1998); Holder v. Hall, 512 U.S. 874, 932 (1994) (Thomas, J., concurring in judgment).

To the extent that PG&E is seeking to develop some sort of "legislative history" of the NWPA, the opinions of individuals who may have worked on or with the laws and regulations at issue are not admissible. See, e.g., Selman v. United States, 204 Ct. Cl. 675, 685 n.6 (1974)

---

[1] Although the Government is aware of this Court's decision in Commonwealth Edison v. United States, 56 Fed. Cl. 652, 667 (2003), that a "fact-intensive inquiry [is] necessary to determine the intent of Congress and the parties," as we discuss below, even if such a fact-intensive inquiry were appropriate, a proposition with which the Government respectfully disagrees, the use of Messrs. Warner and Mills to establish such intent is improper.

(ruling that the affidavit of a Senator concerning particular legislation was "without evidentiary value" because "no member of a legislature, outside of the legislature, is empowered to speak with authority for that body"). As the Court of Claims explained in rejecting reliance upon the testimony of a former senator concerning the intent of the Senate in connection with particular legislation:

> The plaintiff produced as a witness a former member of the United States Senate who was Chairman of the Veterans Subcommittee of the Senate Labor and Public Welfare Committee which considered the bill which ultimately became Public Law 610. This witness gave oral testimony as to what was intended by Public Law 610. At first blush it might seem that this would be the ideal way to learn the intent of a legislative body, to get it straight from the mouth of a responsible member of the legislature. Second thought leads to the conclusion that the practice would be intolerable. A legislature speaks through statutes, and, in cases where the statutes require interpretation, through committee reports and debates. No member of a legislature, outside the legislature, is empowered to speak with authority for the body. If he may testify voluntarily, other members of his legislative body with different views or different recollections may be summoned to give their differing versions. The debate, which, so far as the lawmaking body is concerned, should have been ended by the enactment of the statute, would be transferred to the court, with disturbing possibilities of embarrassment and friction.

National Sch. of Aeronautics, Inc. v. United States, 135 Ct. Cl. 343, 142 F. Supp. 933, 938 (1956); see Department of Energy v. Westland, 565 F.2d 685, 690-91 (C.C.P.A. 1977) (rejecting testimony of former congressman concerning proper interpretation of statute because "no member of the legislature is empowered to speak for that body");[2] Gardner & North Roofing & Siding Corp. v. Board of Governors of the Fed. Reserve Sys., 464 F.2d 838, 842 (D.C. Cir. 1972)

---

[2] Decisions of the Court of Customs and Patent Appeals "are binding precedent on this Court." BMW Mfg. Corp. v. United States, 241 F.3d 1357, 1362 n.3 (Fed. Cir. 2001).

(rejecting letter from congressman written one year after passage of legislation, which was not part of legislative history and therefore could not be considered in determining the intent of the legislature); United States Steel Corp. v. United States, 618 F.Supp. 496, 500 n.5 (C.I.T. 1985) ("post enactment statements, even those by the authors of the legislation, cannot be considered by the court, because the statements cannot demonstrate intent at the time of passage"). As discussed above, such a pursuit is impermissible and wasteful because the Court decides questions of law and is the sole arbiter of the law and its applicability.

Here, PG&E proposes to introduce testimony that is of even less relevance or reliability than testimony from a congressman. PG&E proposes to introduce testimony from Mr. Warner, who, from 1981 through March 1983, served as the associate minority counsel for the House of Representatives Energy and Commerce Committee. Tr.59:3-8 (Warner). Surely, if post-hoc statements from congressmen are not probative of legislative intent, then statements from an associate minority counsel for a House subcommittee should be afforded even less probative value. Similarly, Mr. Mills, who collected comments from various utilities during the proposed rulemaking promulgating the Standard Contract, cannot shed any light on what Congress intended or thought at the time that the NWPA was passed.

Further, Messrs. Warner and Mill's proposed testimony concerning congressional intent constitutes inadmissible hearsay. Simply put, Messrs. Warner and Mills cannot possibly have personal knowledge of "congressional intent" because that is not something that is susceptible to personal knowledge. Cf. Underwood v. Waddell, 743 F. Supp. 1291, 1297 (S.D. Ind. 1990) (holding that affidavit of co-author of legislation stating purpose of legislation constituted hearsay). Witness opinions upon questions of law usurp the function of the Court, for it is

axiomatic that the judge is the sole arbiter of the law and its applicability. Specht v. Jensen, 853 F.2d 805, 807 (10th Cir. 1988). Consequently, to the extent that Messrs. Warner and Mills plan to testify concerning the intent of Congress in promulgating the NWPA or the meaning of the NWPA, such testimony should be precluded.

## II. THE COURT SHOULD PRECLUDE TESTIMONY CONCERNING THE INTENT OF THE PARTIES TO THE STANDARD CONTRACT

### A. Parol Evidence To Determine The Intent Of The Parties Is Inappropriate Because The Standard Contract Is Fully Integrated And Unambiguous

PG&E seeks to introduce evidence in this case concerning PG&E's understanding of the Standard Contract obligations at the time of contract formation. First, PG&E intends to introduce the testimony of Mr. Warner, who was not employed at PG&E until 1988, to testify about PG&E's 1983 understanding of DOE's contractual obligations. Second, PG&E seeks to introduce the testimony of Loring Mills, a former vice president of the Edison Electric Institute, an electric energy advocacy group, to testify about the "understandings and intentions of the contracting utilities regarding the pace and schedule of spent fuel acceptance." However, this proposed testimony is improper for several reasons.

First, such testimony constitutes impermissible parol evidence. Where a contract is integrated, parol testimony is prohibited. McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1434 (Fed. Cir. 1996) (holding that integration clause of Government contract precluded use of extrinsic evidence to add or modify the contractual terms). The Standard Contract contains a clear and unambiguous integration clause:

> This contract, which consists of Articles I through XXI and Appendices A through G, annexed hereto and made a part hereof, contains the entire agreement between the parties with respect to the subject matter hereof. Any representation, promise, or

> condition not incorporated in this contract shall not be binding on either party. No course of dealing or usage of trade or course of performance shall be relevant to explain or supplement any provision contained in this contract.

See 10 C.F.R. 961.11, Art. XXII.A.

Indeed, the Court in Sacramento Municipal Utility District v. United States, 63 Fed. Cl. 495 (2005), another spent nuclear fuel case, has held that, "[a]s a matter of law, what SMUD thought about the DOE Standard Contract is irrelevant since the DOE Standard Contract has an integration clause" so that "'the agreement is completely integrated'" and, further, that the parol evidence rule "precludes consideration of post-execution evidence." Id. at 506 (citations omitted). Similarly, the integration clause of the Standard Contract precludes the testimony of Messrs. Warner and Mills concerning the "intent" of PG&E or other contracting utilities.

Further, there are no ambiguities contained in the Standard Contract to justify testimony or other extrinsic evidence. "Contract language is ambiguous if it is susceptible to two different interpretations, each of which is consistent with the language of the contract." Ryco Constr., Inc. v. United States, 55 Fed. Cl. 184, 190 (2002) (citations omitted). Further, parol evidence may not be used to create an ambiguity where one otherwise does not exist. Safeco Credit v. United States, 44 Fed. Cl. 406, 420 (1999).

Here, there is no ambiguity in the Standard Contract regarding the rate and schedule of SNF acceptance. Indeed, the Standard Contract does not contain a numerical rate or schedule of SNF acceptance. Instead, the Standard Contract contains a contractual mechanism for the determination of the rate and schedule of SNF acceptance:

> 5. (a) Beginning on April 1, 1991, DOE shall issue an annual acceptance priority ranking for receipt of SNF and/or HLW at the DOE repository. This priority ranking shall be based on the age of

> SNF and/or HLW as calculated from the date of discharge of such material from the civilian nuclear power reactor. The oldest fuel or waste will have the highest priority for acceptance, except as provided in paragraphs B and D of Article V and paragraph B.3 of Article VI hereof.
>
> (b) Beginning not later than July 1, 1987, DOE shall issue an annual capacity report for planning purposes. This report shall set forth the projected annual receiving capacity for the DOE facility(ies) and the annual acceptance ranking relating to DOE contracts for the disposal of SNF and/or HLW including, to the extent available, capacity information for ten (10) years following the projected commencement of operation of the initial DOE facility.

10 C.F.R. 961.11, Art. IV.B.5. Once DOE indicated through its 1991 annual capacity report ("ACR") and annual priority ranking ("APR") the amount and schedule of SNF that DOE would accept, contract holders were to submit delivery commitment schedules ("DCSs") to DOE which would "identify all SNF and/or HLW the Purchaser wishes to deliver to DOE beginning sixty-three (63) months thereafter." 10 C.F.R. 9611.11, Art. V.B. Consequently, PG&E's suggested use of extrinsic evidence in the face of the Standard Contract's integration clause and in light of the unambiguous language contained in the Standard Contract is inappropriate.[3]

[3] To the extent that the Court determines that parol evidence is appropriate, the Government is prepared to demonstrate at trial that, despite certain utilities' specific requests for the inclusion of a particular rate of acceptance or objective standards of performance, DOE specifically rejected such proposals because it recognized that the program would iterate during the early years of the program, and that it was not until 1991 and the promulgation of the 1991 ACR/APR that it would publish the rate and schedules upon which DOE intended to perform beginning in 1998.

B. Because Mr. Warner Was Not Employed At PG&E When The Standard Contract Was Executed, He Should Be Precluded From Testifying Upon Issues Concerning PG&E's Understanding Of DOE's Contractual Obligations

Even if the Court concludes that extrinsic evidence to determine the intent of the parties to the Standard Contract at the time of contracting is otherwise appropriate, testimony from Mr. Warner upon this issue is improper. Mr. Warner began working at PG&E in 1988 as an attorney within the regulatory section of PG&E's law department. Tr.16:6-8 (Warner). Consequently, Mr. Warner has no basis for testifying about "PG&E's understanding of DOE's contract obligations" based upon a contract into which PG&E entered with DOE in 1983, and the Court should preclude Mr. Warner from offering testimony on this issue.

Certainly, Mr. Warner has no grounds to testify as to PG&E's 1983 "intent" upon the basis of any personal knowledge, given that he was not even employed at PG&E in 1983. To the extent that he expects to offer an opinion as to that intent, a witness's testimony in the form of opinions or inferences is limited to those opinions or inferences that are (a) rationally based upon the perception of the witness, and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Fed. R. Evid. 701. Given that Mr. Warner was not employed at PG&E until five years after the Standard Contract was signed, the proffered testimony of Mr. Warner related to PG&E's understanding of DOE's contract obligations plainly does not fit within these limitations. Consequently, the Court should preclude Mr. Warner from testifying about issues concerning PG&E's understanding of DOE's contractual obligations.

C. Mr. Mills Should Be Precluded From Testifying About The Intent Of Any Particular Party To The Standard Contract At The Time Of Contract Formation

To the extent that the Court believes that extrinsic evidence is otherwise appropriate, Mr. Mills should be precluded from testifying about the intent of any particular party to the Standard Contract because such testimony constitutes inadmissible hearsay. To the extent that the Court allows parol evidence regarding the standard contract language, the Government does not object to Mr. Mills' testimony concerning Edison Electric Institute's participation in the proposed rulemaking concerning the Standard Contract. However, Mr. Mills should be precluded from testifying about any particular contract-holder's intent at the time that the Standard Contract was signed. Such testimony would necessarily constitute inadmissible hearsay, as it would presumably be based upon discussions that Mr. Mills had with others and would be offered for the truth of the matter asserted. Therefore, PG&E should be precluded from offering testimony from Mr. Mills concerning the intent of any particular utility that entered into the Standard Contract.

CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant the Government's motion *in limine* and preclude PG&E from offering testimony concerning the intent of Congress in enacting the NWPA or the intent of the parties in entering into the Standard Contract.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/John C. Ekman by Joshua E. Gardner
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 353-0897
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT R. DAMELIN
JOSHUA E. GARDNER
SHARON A. SNYDER
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

May 1, 2006

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of May, 2006, a copy of foregoing "DEFENDANT'S MOTION *IN LIMINE* REGARDING TESTIMONY CONCERNING THE MEANING OF THE NUCLEAR WASTEPOLICY ACT AND THE STANDARD CONTRACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Joshua E. Gardner