No. 04-0074C
into which has been consolidated
No. 04-0075C
Judge Hewitt

(Filed Electronically, May 3, 2006)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# PACIFIC GAS & ELECTRIC'S MOTION *IN LIMINE* TO EXCLUDE R. LARRY JOHNSON'S EXPERT TESTIMONY

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173
(202) 261-4751
*Counsel for Plaintiff*
Pacific Gas & Electric Company

Of Counsel:
ROBERT L. SHAPIRO
Greenberg Traurig, LLP

TABLE OF CONTENTS

PAGE

ARGUMENT .......... 3

I. THIS COURT HAS A RESPONSIBILITY UNDER RULE 702 TO PRECLUDE EXPERT TESTIMONY IF NOT RELEVANT AND RELIABLE .......... 3

II. MR. JOHNSON EMPLOYS NO "SPECIALIZED KNOWLEDGE" TO CONCLUDE THAT CERTAIN OF PG&E'S CLAIMED COSTS ARE "NOT INCREMENTAL," "ERRONEOUSLY ASSERTED," OR "NOT SUPPORTED" .......... 4

A. Mr. Johnson Requires No Expertise to Echo Mr. Brewer's and Dr. Neuberger's Conclusions and Subtract The Costs They Suggest From PG&E's Damages Claim .......... 6

B. Where Mr. Johnson Does Not Parrot the Opinions of Another Witness to Conclude That a Cost is "Not Incremental," He Simply Subtracts Costs Per Counsel's Instructions Without Adding Any "Specialized Knowledge" .......... 9

C. When Not Relying On Other Witnesses or Counsel, Mr. Johnson Intrudes on the Sole Province of the Court by Impermissibly Weighing the Sufficiency of PG&E's Evidence .......... 10

D. Finally, Mr. Johnson Offers No Reason at All for His Remaining Conclusions .......... 11

III. MR. JOHNSON DOES NOT EVEN ABIDE BY HIS OWN, UNFOUNDED ASSERTION THAT AN EXPERT MUST PERSONALLY AUDIT THE COST DATA SUPPORTING THE CLAIM .......... 12

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

CASES PAGE

*Berry v. City of Detroit*, 25 F.3d 1342, (6th Cir. 1994)....4

*Biovail Corp. Int'l v. Andrx Pharm., Inc.*, 239 F.3d 1297 (Fed. Cir. 2001)....4

*Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003)....9

*Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194 (4th Cir. 2001)....5

*Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993)....2, 3

*Gray v. Briggs*, 45 F. Supp. 2d 316, 323 (S.D.N.Y. 1999)....4

*Indiana Michigan Power Co. v. United States,* 422 F.3d 1369 (Fed. Cir. 2005)....1

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982)....10

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)....3

*Maine Yankee v. United States,* 225 F.3d 1336 (Fed. Cir. 2000)....1

*Sharpe v. United States*, 230 F.R.D. 452 (E.D. Va. 2005)....12

*Smith v. Baptist Healthcare System, Inc.*, 23 Fed. Appx. 499 (6th Cir. 2001)....12

*United States v. Gwaltney*, 790 F.2d 1378 (9th Cir. 1986), *cert. denied*, 479 U.S. 1104 (1987)....5

*Westfed Holdings v. US*, 55 Fed. Cl. 544, 571 (2003)....4

# INDEX TO APPENIX

Expert report of R. Larry Johnson ........ A1

R. Larry Johnson Deposition Transcript Excerpts ........ A43

Warren K. Brewer Deposition Transcript Excerpts ........ A60

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Filed Electronically on May 3, 2006

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 04-0074C, into which has been consolidated No. 04-0075C (Judge Hewitt) |

PACIFIC GAS & ELECTRIC'S MOTION *IN LIMINE* TO EXCLUDE R. LARRY JOHNSON'S EXPERT TESTIMONY

Pursuant to RCFC 16, Pacific Gas & Electric ("PG&E") moves this Court to preclude R. Larry Johnson from testifying as an expert witness. Mr. Johnson states that he was retained "to review and analyze the calculations of economic damages presented by [PG&E's expert witness] Dr. Bradford Cornell . . . ." April 13, 2006 Expert Report of R. Larry Johnson at 1 ("Report"), Appendix A at A1 ("App."). Mr. Johnson offers three general conclusions: (1) "[t]he asserted damages include costs that are not incremental[1] or are not supported[2] by adequate details or

[1] Mr. Johnson defines "incremental costs" as "those that would not have been incurred but for [the U.S. Department of Energy's ("DOE")] partial breach" of its 1983 contract with PG&E ("Contract"). Report at 10, App. at A12. The Federal Circuit has held that DOE breached the Contract by failing to accept commercial spent nuclear fuel ("SNF") from PG&E beginning in 1998. *See generally Maine Yankee v. United States,* 225 F.3d 1336 (Fed. Cir. 2000). According to Mr. Johnson, costs that are "not incremental" would have been incurred by PG&E at some point regardless of DOE's breach and are not recoverable. This smacks of a "but for" causation analysis, which is contrary to the governing law in *Indiana Michigan Power Co. v. United States,* 422 F.3d 1369, 1373 (Fed. Cir. 2005). There, the Court rejected this type of "but for" damages standard, finding instead that a utility could recover its damages where DOE's breach was a "substantial factor" in the utility's decision to expend the claimed costs.

[2] Mr. Johnson categorizes a cost as "not supported" for one of two reasons; either he impermissibly weighed PG&E's evidence and made his own determination that it was

documentation" and should, therefore, be subtracted from PG&E's damage claim; (2) government counsel has told him that "[t]he asserted damages [improperly] include costs incurred prior to January 28, 1998" that should be subtracted out; and (3) Dr. Cornell "lacks a basis for concluding that the cost he asserted as damages are proper." Report at 5, App. at A7. The Court should exclude Mr. Johnson's proposed testimony as all three of his "opinions" fail to satisfy Rule 702's requirements.

In order to testify in the form of an opinion, a proposed expert must be qualified in a field entailing relevant "scientific, technical, or other specialized knowledge" and must express an opinion that is "the product of reliable principles and methods" and based on "sufficient facts or data." Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993). Mr. Johnson applies no such "specialized knowledge" to assert that certain of PG&E's claimed costs are "not incremental," "erroneously asserted," or "not supported." In fact, he offers no opinion or analysis of his own. Instead, he (a) unquestioningly adopts the "opinions" of other government witnesses and subtracts out the sums they suggest from PG&E's claim, (b) follows the advice of counsel and subtracts out the sums it suggests, (c) intrudes on the exclusive province of the Court by weighing PG&E's evidence and subtracts out the attendant sums, or (d) offers no discernable reason for his objection to certain claimed costs, but subtracts them out nonetheless. Mr. Johnson maintains that he is "really good at subtraction," likely because it is the only skill or "knowledge" he exercises in his proposed testimony. Dep. 234:12-16; App. at

---

insufficient to prove damages, *see* Part V, *infra*, or he relied on the government's expert Warren K. Brewer's characterization:

> [I]t is not possible given the documentation I've seen to reach a conclusion as to whether the cost is incremental or whether the amount of that cost is reasonable given the activity being performed.

Warren K. Brewer Deposition 145:9-14, App. at A60.

A56. Ultimately, Mr. Johnson does not even stand by his own, unfounded assertions. He asserts that "sufficient analysis" must include a personal review of the documentation made available by PG&E, but then fails to review even the most basic of PG&E's documents. The Court should exclude Mr. Johnson's proposed testimony because he offers no opinion or analysis, brings to bear no "specialized knowledge," and is, therefore, nothing more than an advocate for the government's legal positions.

## ARGUMENT

### I. THIS COURT HAS A RESPONSIBILITY UNDER RULE 702 TO PRECLUDE EXPERT TESTIMONY IF NOT RELEVANT AND RELIABLE

This Court functions as a "gatekeeper," admitting only expert testimony which is "relevant[,] reliable," and, ultimately, helpful. *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)(extending the basic gate-keeping obligation for scientific testimony established in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993), to all expert testimony). Expert testimony under Fed. R. Evid. 702 is "relevant" where a witness offers "scientific, technical, or specialized knowledge" to the court, the knowledge "will assist the trier of fact to understand the evidence or determine a fact in issue," and the "witness qualifie[s] as an expert by knowledge, skill, experience, training or education." *Id.* Case law has further refined the rule to require that the witness's "specialized knowledge" be relevant to the *particular* question in the case, not just the general topic at issue. *See Westfed Holdings v. United States*, 55 Fed. Cl. 544, 571 (2003) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994), "The court agrees that the issue is not the qualifications of the witness in the abstract or in general but 'whether those qualifications provide a foundation for a witness to answer a specific question.'"). To also be "reliable," proposed expert testimony must be: (1) "the product of sufficient facts and data," (2) "based on

reliable principles and methods," and (3) the product of a reliable application of these principles and methods to the facts of the case. Witness testimony which is irrelevant or unreliable is of no help to the Court and should be excluded.

The Court's gatekeeping function permits it to exclude such testimony if irrelevant. *See Biovail Corp. Int'l v. Andrx Pharm., Inc.*, 239 F.3d 1297, 1303 (Fed. Cir. 2001) (one purpose of gatekeeping role is to ensure that all expert testimony is both relevant and reliable). It has "broad discretion to exclude expert testimony for its lack of helpfulness or for the expert's lack of qualifications." *Gray v. Briggs*, 45 F. Supp. 2d 316, 323 (S.D.N.Y. 1999) (citations omitted). The Court should exercise this discretion and exclude expert testimony where the proponent fails to meet its burden and show that the proposed testimony meets Rule 702's standard. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *United States v. Gwaltney*, 790 F.2d 1378, 1382 (9th Cir. 1986), *cert. denied*, 479 U.S. 1104 (1987).

## II. MR. JOHNSON EMPLOYS NO "SPECIALIZED KNOWLEDGE" TO CONCLUDE THAT CERTAIN OF PG&E'S CLAIMED COSTS ARE "NOT INCREMENTAL," "ERRONEOUSLY ASSERTED," OR "NOT SUPPORTED"

Mr. Johnson employs no "specialized knowledge" to categorize PG&E's claimed costs as "not incremental," "erroneously asserted," or "not supported." For each cost, he manages to avoid offering any expert opinion in one of four ways:

1.) He unquestioningly adopts the conclusions of other witnesses, specifically those of Mr. Brewer and Dr. Neuberger, and subtracts the costs they suggest without adding any opinion of his own;
2.) Per the instructions of government's counsel, Mr. Johnson simply subtracts costs without adding any "specialized knowledge;"
3.) He intrudes on the Court's exclusive power to weigh the evidence presented; or
4.) He provides no reason, principle, or method to support his conclusion, rendering it mere *ipse dixit.*

A table showing the flaw in each section of Mr. Johnson's Report appears below; other than the indicated flaw, all Mr. Johnson does in each case is subtract:

| | TABLE 1: Outline of Johnson Report | Flaw |
|---|---|---|
| | II. Non-Incremental Costs | |
| | Humboldt Bay SAFSTOR | |
| 1 | PG&E Labor | Applies No Method or Principle |
| 2 | 1999 SAFSTOR Costs | Follows Counsel's Instructions |
| 3 | Fossil Security | Simply Weighs Evidence |
| 4 | "HBPP Used Fuel Documentation Discrepancy" | Parrots Brewer |
| 5 | Rad Material Disposal | Parrots Brewer |
| | | |
| | Humboldt Bay ISFSI | |
| 6 | PG&E Labor | Applies No Method or Principle |
| 7 | Visual Inspection of Fuel | Parrots Brewer |
| 8 | Investigation of Taiwan Earthquake | Parrots Brewer |
| 9 | Fuel Transfer Offset | Parrots Brewer |
| | | |
| 10 | Humboldt Bay Stack Removal | Counsel's Instructions |
| | | |
| | Diablo Canyon ISFSI | |
| 11 | PG&E Labor | Applies No Method or Principle |
| 12 | Enercon Crane Modifications | Counsel's Instructions |
| | | |
| | Diablo Canyon Temporary Rack | |
| 13 | PG&E Labor | Applies No Method or Principle |
| | | |
| | III. Costs Based on Erroneous Assertions | |
| 14 | Unpaid Escalation | Simply Weighs Evidence |
| 15 | Unpaid Sales Tax [on Escalation] | Simply Weighs Evidence |
| 16 | Altran Invoices | Simply Weighs Evidence |
| 17 | GBH Distributing Inc. Invoices | Simply Weighs Evidence |
| 18 | F. Randall Huey Invoices | Simply Weighs Evidence |
| | | |
| | IV. Costs Not Supported by Adequate Details or Documentation | |
| 19 | Non-Incremental Support Costs | Simply Weighs Evidence |
| 20 | Other Support Costs | Simply Weighs Evidence |
| 21 | Rad Material Disposal | Parrots Brewer |
| 22 | Brewer Adjustments | Parrots Brewer |
| | | |
| | V. Alternative Acceptance Scenario | |
| 23 | Humboldt Bay | Parrots Neuberger |
| 24 | Diablo Canyon | Parrots Neuberger |

A. Mr. Johnson Requires No Expertise to Echo Mr. Brewer's and Dr. Neuberger's Conclusions and Subtract The Costs They Suggest From PG&E's Damages Claim

Mr. Johnson admits that he has done no more than simply accept Mr. Brewer's conclusion that certain of PG&E's claimed costs are "not incremental" or "not supported":

> Q. You're basically relying on Brewer to the extent PG&E representative testimony corroborates what Brewer says or we think it does you cite that testimony in your report here as well?
>
> A. I think it provides additional evidence.
>
> Q. You would give the same opinions even if you did not cite to or know about that PG&E representative testimony in every instance?
>
> * * *
>
> A. Yes.

Dep. 162:11-19; App. at A51.1 (objection omitted).[3] Mr. Johnson restates his reliance on Mr. Brewer's opinions over and over to support many of his conclusions that certain claimed costs are "not incremental" or "not supported." These include all direct charges and allocations not attributable to labor,[4] disposal of radioactive material,[5] investigation of the Taiwan Earthquake,[6]

---

[3] Should the Court grant PG&E's pending Motion *in limine* to Exclude the Warren K. Brewer's Expert Testimony, filed April 11, 2006, it would render moot all of Mr. Johnson's conclusions that rely on that proposed testimony.

[4] Dep. 65:5-66:1; App. at A48:

> Q. You yourself did not make any judgment or offer any opinions about the incremental nature of costs shown on invoices, . . . is that right?
>
> A. . . . I think specific charges that were removed of a non-labor nature because they were non-incremental were in, as I recall, all cases based upon Mr. Brewer's expertise.

[5] Table 1, Items 5, 21. Dep. 195:17-196:1; App. at A54:

> Q. And you accept [Mr. Brewer's] opinions about those matters and deduct all of the claimed costs for Rad material disposal either because of Brewer's opinion that some part of those costs are non-incremental or because of his related opinion that the other part of those costs are not appropriately supported?
>
> A. Yes.

resolution of Humboldt Bay Power Plant's ("HBPP") documentation discrepancy,[7] visual inspection of spent fuel prior to loading it into casks,[8] and costs associated with invoices identified by Mr. Brewer as "not supported" in appendices C and D of his report.[9]

Mr. Johnson all but admits that he adds nothing to Mr. Brewer's conclusions other than the ability to subtract:

> Q. Are you adding anything to the opinion of Brewer other than the ability to find the breach world costs . . . on one of the spreadsheets

---

[6] Table 1, Item 8. In 2000, an earthquake hit Taiwan along a fault line geologically similar to the one near the Humboldt Bay Power Plant ("HBPP"). PG&E sent a team to investigate the earthquake's seismic impact on structures. PG&E included the investigation's costs attributable to HBPP as part of the damages claim because it was conducted for HBPP's ISFSI. Mr. Johnson relies on Mr. Brewer's proposed testimony that PG&E would have conducted the entire investigation even if it did not have to construct the HBPP ISFSI:

> Q. I thought you told me at the beginning of our discussion of this cost item that unlike visual inspection of fuel and the resolution of the document discrepancy for this cost item, the investigation of the earthquake, you were relying on Brewer's opinion about the incremental nature of this activity; is that wrong?
>
> A. I'm relying on Brewer's opinions about the incremental nature of all three activities.

Dep. 222:9-17; App. at A55.

[7] Table 1, Item 4. *See supra* note 6.

[8] Table 1, Item 7. *See supra* note 6.

[9] Table 1, Item 22. Invoices identified in appendices C and D of Mr. Brewer's are copied at appendices A and B of Mr. Johnson's Report. Mr. Johnson testified about his reliance on Mr. Brewer:

> Q. You say Brewer gives opinions that costs covered by all these invoices are not support by adequate detail or documentation?
>
> A. Correct.
>
> Q. And that is the only basis for your deducting the costs covered by these invoices from damages, right?
>
> A. Correct.

Dep. 485:14-21; App. at A58.

that you've been provided by Cornell or by the plaintiff and subtracting it?

A. And the opinion of how you measure damages.

Q. You're adding that?

A. Yeah.

Q. And the opinion how to measure damages is you subtract costs of non-incremental activities?

A. Correct, to the extent that they are being included.

Dep. 184:15-185:6; App. at A52. To assert expertise based on the insight that costs allegedly not properly included in the claim should be subtracted from it borders on humorous. Mr. Johnson appears to realize this when asked about his subtracting \$6.4 million in cask loading costs allegedly avoided due to the breach:

Q. Have you added to Mr. Brewer's opinion about but for loading costs except the ability to subtract the 6.4 million dollars from the damages?

A. I'm really good at subtraction and I have subtracted it because it's a cost avoided.

Dep. 234:12-16; App. at A56. Clearly, Mr. Johnson's elementary math adds no "specialized knowledge," leaving him to act as nothing more than an echo chamber for Mr. Brewer's opinions.[10]

Similarly, Mr. Johnson simply parrots Dr. Neuberger's "opinion" that certain claimed costs are "not incremental" under the government's alternate acceptance rate of 900 MTUs a year.[11] Dr. Neuberger opines that, under the reduced acceptance rate, HBPP's SAFSTOR costs

---

[10] *See generally* PG&E's pending Motion *in limine* to Exclude the Warren K. Brewer's Expert Testimony, filed April 11, 2006.

[11] "Acceptance rates" refer to the amount of commercial spent nuclear fuel ("SNF") the U.S. Department of Energy will pick up in any given year under its 1983 contract with nuclear utilities, including PG&E ("Contract"). Mr. Johnson considers two rates: (1) 3000 metric tons ("MTU") asserted by PG&E and supported by most of DOE's planning documents and

would have been incurred through 2001 notwithstanding DOE's breach of the Contract.[12] He further opines that all costs of providing additional commercial SNF storage at Diablo Canyon Power Plant ("DCPP") through 2004 would also have been incurred in the non-breach world. As he does with Mr. Brewer's opinions, Mr. Johnson adopts both of Mr. Neuberger's opinions—without question and does nothing more than subtract the attendant costs from PG&E's overall damages claim, adding no "specialized knowledge." Dep. 435:7-10; App. at A57 ("Q. The only thing you do based on Neuberger's opinion is to remove the balance of the asserted SAFSTOR damages for 2000 and 2001, correct? A. Correct."). No matter how good Mr. Johnson is at subtraction, it does not qualify as expert testimony.

B. Where Mr. Johnson Does Not Parrot the Opinions of Another Witness to Conclude That a Cost is "Not Incremental," He Simply Subtracts Costs Per Counsel's Instructions Without Adding Any "Specialized Knowledge"

Solely because of government counsel's instructions, Mr. Johnson subtracts HBPP's 1999 SAFSTOR costs,[13] HBPP's costs for removing the 240-foot vent stack overlooking the spent fuel pool,[14] DCPP's costs for modifying its crane to accommodate the ISFSI casks,[15] and all of PG&E's claimed costs prior to January 28, 1998.[16] At no point does Mr. Johnson offer any

---

substantial other evidence, and (2) the alternative acceptance rate proposed by defendant's counsel, 900 MTU, already largely rejected by the Court in *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 667 (2003).

12 SAFSTOR is a method of operation in which the utility stores its SNF in anticipation of decommissioning. In 1999, HBPP operated in SAFSTOR mode, incurring costs associated with storing its SNF in the spent fuel pool.

13 Report at 11, App. at A13.

14 Report at 14, App. at A16. HBPP took down a 240-foot masonry vent stack overlooking the spent fuel pool. Because the spent fuel pool still contained spent fuel, PG&E had to take extra care in the take-down process and had to erect a shorter, metal vent stack as a replacement.

15 Report at 15, App. at A17.

16 Report at 9, App. at A11.

opinion, let alone one based on "specialized knowledge." His ability to subtract the costs suggested by counsel does not rise to the level of admissible expert testimony.

### C. When Not Relying on Other Witnesses or Counsel, Mr. Johnson Intrudes on the Sole Province of the Court by Impermissibly Weighing the Sufficiency of PG&E's Evidence

The Court, not Mr. Johnson, has the exclusive power to weigh the evidence and reach a legal conclusion as to its sufficiency. *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 856 (1982) ("Determining the weight and credibility of the evidence is the special province of the trier of fact.").[17] Thus, Mr. Johnson intrudes on the sole province of the Court when he weighs PG&E's evidence to conclude that certain of PG&E's claimed costs are "not incremental," "erroneously asserted," or "not supported."

Mr. Johnson's decision to exclude these costs is based primarily on his interpretation of testimony by either Robert Kapus, PG&E's Financial Services Supervisor in charge of ISFSI projects, or Betty Phillips, PG&E's Accounting Manager under the Comptroller. Based on Mr. Kapus's testimony, Mr. Johnson concludes that many of PG&E's claimed HBPP security costs were "not incremental" because they would have been spent on industrial security necessary to protect the fossil fuel production units located there. Relying on Mr. Kapus's testimony, Mr. Johnson also concludes that certain other claimed costs are "erroneous assertions," to include, in relevant part, amounts listed in invoices from PG&E's vendors, Altran, GBH Distributing Inc., and F. Randall Huey. Report at 17-18, App at A19-20. Similarly, Mr. Johnson relies on Ms. Phillips's testimony and calculations to subtract out $4.648 million in allocated costs he terms "not incremental," and to exclude additional millions in "Other Support Costs." Report at 22-23, App. at A24-25. Though each of these topics might be amenable to an opinion born of

---

[17] A more detailed discussion of this point appears in PG&E's Motion *in limine* to Exclude the Warren K. Brewer's Expert Testimony, filed April 11, 2006, at Part V.

accounting expertise, Mr. Johnson never offers one. Instead, he weighs Mr. Kapus's and Ms. Phillips's testimony and concludes, solely on that basis, that these costs should be excluded. In doing so, Mr. Johnson has intruded on the exclusive province of this Court to determine whether such testimony represents sufficient evidence – rendering Mr. Johnson's conclusions both impermissible and superfluous.

D. Finally, Mr. Johnson Offers No Reason at All for His Remaining Conclusions

The remaining costs that Mr. Johnson seeks to subtract from PG&E's claim are labeled "PG&E Labor" and appear intermittently throughout his Report. Report at 10, 13, 15, 16, App. at A12, 15, 17, 18. He provides no basis to support his opinion that these costs should be excluded and none is implied in his seemingly contradictory assertions. In some instances, he adopts an 'all-or-nothing' approach, excluding all labor charges except those for employees Mr. Kapus identifies as having spent "100 percent or substantially all their time" on breach-related projects. Report at 13, 15, App. at A15, 17 (quoting Robert Kapus Deposition, March 30, 2006, at 113). Yet, when dealing with labor costs related to Humboldt Bay SAFSTOR, he does not assert that PG&E's labor costs should be subtracted from the claim, even though they represent only "65% of the hours worked at Humboldt Bay" and include employees who were not "100 percent" dedicated to breach-related projects. Mr. Johnson does not attempt to explain his method or, more fundamentally, his reason for reaching these disparate, and seemingly conflicting, conclusions. This violates not only Fed. R. Evid. 702, but also Fed. R. Civ. P. 26's requirement that an expert's "report shall contain a complete statement of all opinions to be expressed *and the basis and reasons therefore*." *See Sharpe v. United States*, 230 F.R.D. 452, 458 (E.D. Va. 2005) (excluding both of plaintiff's expert physician witnesses in a medical malpractice action where neither provided a "complete statement of opinions and the basis for those opinions."). *See also Smith v. Baptist Healthcare System, Inc.*, 23 Fed. Appx. 499 (6th Cir.

2001) (affirming exclusion of an expert "most significantly [because of a] failure to include 'a complete statement of all opinions . . . and the basis and reasons therefore,' as is required under . . . Fed. R. Civ. P. 23(a)(2)(B)."). Mr. Johnson's failure to state, or even imply, any rhyme or reason for his decision to exclude certain PG&E labor costs renders it mere *ipse dixit*, and this Court should exclude his opinion as such.

## III. MR. JOHNSON DOES NOT EVEN ABIDE BY HIS OWN, UNFOUNDED ASSERTION THAT AN EXPERT MUST PERSONALLY AUDIT THE COST DATA SUPPORTING THE CLAIM

Mr. Johnson contends that an expert's failure to audit the documentation provided amounts to "insufficient analysis." Report at 6, App. at A8. Not surprisingly, Mr. Johnson fails to provide any basis for this assertion. More importantly, he fails to abide by his own rules.

Evidence abounds that, by his own rules, Mr. Johnson did not review sufficient documents on which to base an expert opinion. He admits he did not study the PG&E spreadsheets and cost schedules listed in his "Documents Considered." Dep. 192:1-3; App. at A53 ("Q. You really haven't studied these schedules [summarizing the data which formed the basis of Dr. Cornell's analysis]; is that right? A. I have not."). Mr. Johnson further admits that he never personally inspected the binders of supporting invoices and summary accounting reports that Celerity Consulting provided to Dr. Cornell and has no personal knowledge of the type and extent of documentation they contain. Dep. 30:22-32:7; App. at A45. Finally, Mr. Johnson admits that he failed to familiarize himself with even the top-level spreadsheets containing the aggregated costs PG&E used to create its damages claim:

> Q. Did you yourself review any of these Excel spreadsheets or PDF files that are listed on page 28 under the initial disclosures in this engagement?
>
> A. I think I might have seen some. I did not conduct a personal review of any of them.

Dep. 30:3-7; App. at A45. According to Mr. Johnson, such documents would be critical to any expert accountant analysis. Instead, Mr. Johnson relied overwhelmingly on expert reports and deposition testimony:

> Q. . . . which of these documents [listed as Documents Considered], if any, did you yourself look at?
>
> A. Cornell's report. Brewer's report. Neuberger's report. Certain aspects of the testimony of Mr. Kapus and Mr. Pulley. I've seen certain schedules that were printed from certain of these electronic files.

Dep. 29:10-17; App. at A44. Mr. Johnson can hardly bring to bear any accounting expertise when he admits that he focused on testimony and other witnesses' reports rather than the underlying numbers. If Mr. Johnson's cannot even abide by his own rules, he clearly adds nothing to the analysis and the Court should exclude his proposed testimony.

## CONCLUSION

Mr. Johnson provides no "specialized knowledge" to reach his conclusions; therefore, this Court should exclude his proposed testimony. Mr. Johnson's conclusion that certain costs are "not incremental," "erroneously asserted," and "not supported" suffers from four serious flaws: (1) for the majority of these costs, he parrots the opinions of other government witnesses without adding any "specialized knowledge;" (2) where he does adopt the opinion of another witness, he simply applies counsel's instructions; (3) where neither of the above occur, Mr. Johnson reaches his conclusion by intruding on the exclusive province of the court and determining the sufficiency of PG&E's evidence; and (4) where all of the above fail, Mr. Johnson offers his "opinion" *ipse dixit*. All that Mr. Johnson really adds is his hyperactive penchant for elementary subtraction.

Indeed, this Court should ignore Mr. Johnson's "opinion" because even he fails to follow his own, unfounded rules. He requires a proposed expert to review critical documentation

needed to provide "sufficient analysis," but fails to do so himself. Clearly, the Court should not permit Mr. Johnson to offer an expert opinion grounded in nothing more than subtraction.

Dated: May 3, 2006

Respectfully submitted,

s/ Jerry Stouck
Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 Phone
(202) 261-4751 Fax
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:

Robert L. Shapiro
Greenberg Traurig, LLP

Certificate of Service

I certify that the foregoing PG&E's Motion *in limine* to Exclude R. Larry Johnson's Expert Testimony was served by courier on the following on May 3, 2006:

John C. Ekman
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Classification Unit, Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530

Alon Cohen

# APPENDIX A