No. 04-0074C
into which has been consolidated
No. 04-0075C
Judge Hewitt

(Filed Electronically, May 8, 2006)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

PACIFIC GAS & ELECTRIC'S REPLY IN SUPPORT OF ITS
MOTION *IN LIMINE* TO EXCLUDE
WARREN K. BREWER'S EXPERT TESTIMONY

---

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173
(202) 261-4751
*Counsel for Plaintiff*
Pacific Gas & Electric Company

Of Counsel:
ROBERT L. SHAPIRO
Greenberg Traurig, LLP

TABLE OF CONTENTS

I. ALMOST HALF OF THE GOVERNMENT'S RESPONSE REITERATES THE *DAUBERT* STANDARD FOR ADMITTING EXPERT OPINIONS AND MR. BREWER'S GENERAL QUALIFICATIONS IN THE FIELD OF NUCLEAR POWER, BUT NEVER ADDRESSES PG&E'S ARGUMENTS CONCERNING THESE TOPICS. 2

A. The Government Does Not Contest the Fact that Mr. Brewer Neither Provides a Methodology Nor Cites Any Relevant Experience to Support His Analysis ............... 2

B. The Government Repeats Mr. Brewer's Resume at Length, but Fails to Show How His Experience Relates to the Specific Topic of this Case, the Storage, Handling, and Transport of Commercial SNF........................................................................ 3

II. THE GOVERNMENT AVOIDS ADDRESSING OTHER PG&E ARGUMENTS BY RAISING STRAW MEN — THAT IS, MISCHARACTERIZING PG&E'S ARGUMENTS — AND THEN ATTACKING THEM...................................................... 5

A. To Exclude Mr. Brewer's "Opinion" Regarding Visual Fuel Inspection, PG&E Need Only Show That Mr. Brewer Lacks Sufficient Data to Conclude That the Costs of Visual Fuel Inspection in the Breach and Non-Breach World are Equal ..................... 5

B. The Government Admits That Cross-Examination, Not Mr. Brewer's Opinion, is the Appropriate Tool to Determine Whether Certain of PG&E's Costs Have Adequate Evidentiary Support ............................................................................................ 7

C. The Government's Response Acknowledges That it is a Question of Fact, Not One of Expert Opinion, Whether PG&E's Claimed Costs For Storing Failed Fuel are Recoverable............................................................................................................. 8

III. THE GOVERNMENT MISCHARACTERIZES ITS OWN EXPERT'S TESTIMONY IN AN EFFORT TO BUTTRESS MR. BREWER'S INADEQUATE "OPINIONS"............... 8

A. The Government's Response Completely Ignores Mr. Brewer's Explicit Bases For Concluding that the Costs of Investigating the Taiwan Earthquake are "Not Incremental" and Seeks to "Backfill" His Opinion with New Bases that He Never Mentions ........................................................................................................... 8

B. The Government's Response Again Replaces Mr. Brewer's Bases with its Own to Make Mr. Brewer's "Opinion" That the Costs of Applying For a Part 71 Transportation License are "Not Incremental" Seem Like More Than an Impermissible Legal Interpretation of the Regulation................................................. 9

C. The Government's Attempt to "Backfill" Mr. Brewer's "Opinion" that the Costs of Storing Greater-Than-Class-C ("GTCC") Waste are "Not Incremental" Backfires Because it Contradicts Mr. Brewer's Own Testimony............................................. 10

IV. Conclusion ............................................................................................................... 11

# TABLE OF AUTHORITIES


## FEDERAL CASES

*Betterbox Communications Ltd. v. BB Technologies*, 300 F.3d 325 (3rd Cir. 2002) .................... 4

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)................................................ passim

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ..................................................................... 2

*Lippe v. Bairnco Corp.*, 288 BR. 678 (2003)................................................................................ 3, 9

*Tennessee Valley Authority v. United States*, No. 01-249C (Fed. Cl. Jan. 31, 2006) ("TVA") ..... 3

*Westfed Holdings v. United States*, 55 Fed. Cl. 544 (2003)..................................................... 3, 10

## FEDERAL RULES

Fed. R. Evid. 702 ............................................................................................................... passim

RCFC 7.2(b)......................................................................................................................... 1

RCFC 26(a)(2) ..................................................................................................................... 9

## OTHER AUTHORITIES

29 Charles Alan Wright & Victor James Gold, *Federal Practice & Procedure* § 6265.............. 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Filed Electronically on May 8, 2006

| | |
|---|---|
| PACIFIC GAS & ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 04-0074C, into which has been consolidated No. 04-0075C<br>(Judge Hewitt) |

**PACIFIC GAS & ELECTRIC'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE WARREN K. BREWER'S EXPERT TESTIMONY**[1]

Pursuant to Rule 7.2(b), Pacific Gas & Electric ("PG&E") replies to the government's response to PG&E's Motion *in Limine* to Exclude Warren K. Brewer's Expert Testimony.[2] The Response raises several straw men, and hefty ones at that, as the Response is nearly twice as long as the Motion. The government takes up the bulk of that space restating its legal position in this litigation without addressing the arguments PG&E made in its Motion, mischaracterizing

---

[1] PG&E acknowledges that the Court advised the parties during the May 4, 2006, conference that it was not "looking for" reply briefs to the parties motions *in limine*. PG&E submits this Reply because it was substantially complete at the time of the conference, and PG&E believes that it will aid the Court in its evaluation of the Motion.

[2] PG&E's Motion *in limine* to Exclude Warren K. Brewer's Expert Testimony, filed April 11, 2006, along with the corrected version of that motion, filed April 26, 2006, will be referred to collectively as the "Motion." The government's Response to the Motion, filed April 28, 2006, will be referred to as the "Response." All expert witness reports and deposition testimony cited in this Reply are attached either to PG&E's Motion or the government's Response, so PG&E will not burden the record with additional copies.

PG&E's arguments, or simply putting words in Mr. Brewer's mouth in an attempt to buttress his alleged expert "opinions."

## I. ALMOST HALF OF THE GOVERNMENT'S RESPONSE REITERATES THE *DAUBERT* STANDARD FOR ADMITTING EXPERT OPINIONS AND MR. BREWER'S GENERAL QUALIFICATIONS IN THE FIELD OF NUCLEAR POWER, BUT NEVER ADDRESSES PG&E'S ARGUMENTS CONCERNING THESE TOPICS

### A. The Government Does Not Contest the Fact that Mr. Brewer Neither Provides a Methodology Nor Cites Any Relevant Experience to Support His Analysis

The government's Response fails to address the two key points in PG&E's Motion regarding the standard applicable to admitting Mr. Brewer's proposed testimony. Instead, the government spends four-and-a-half pages arguing a point that PG&E does not contest; namely, that *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), allows an expert to testify on the basis of experience rather than a formal methodology. Response at 2-6; Motion at 6-7.[3]

First, Fed. R. Evid. 702 provides that an expert must premise his opinion on "reliable principles or methods." PG&E's Motion noted that Mr. Brewer made no attempt to state any principle or methodology to support his analysis. Motion at 8 (quoting Section 4 of Mr. Brewer's report); Fed. R. Evid. 702. The government's Response does not address this.

Second, Fed. R. Evid. 702 alternatively allows an expert to rely on experience in lieu of a methodology, but PG&E's Motion emphasized that, to qualify, an expert witness's proposed testimony must meet certain standards to distinguish it from mere *ipse dixit*. Motion at 8-9. *See* Fed. R. Evid. 702, Advisory Committee notes on 2000 Amendments (requiring that the proposed expert witness make explicit "how that experience leads to the conclusion reached, why the

[3] The government's position on the application of *Daubert* in this case is inconsistent with the position it takes when seeking to preclude PG&E's expert witnesses from testifying. In its Response, the government contends that the Court's "gatekeeping" function under *Daubert* does not apply to bench trials. Response at 2. Yet, in its own Motion *In Limine* to Exclude Certain Expert Testimony at Trial, filed May 3, 2006, the government strongly advocates the application of *Daubert* and encourages the Court to exercise its "gatekeeping" function. *Id.* at 10-11.

experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts"); *Lippe v. Bairnco Corp.*, 288 BR. 678, 686 (2003). PG&E's Motion repeatedly points to examples in Mr. Brewer's analysis where, according to Rule 702 he needed to state explicitly how his experience reliably informed his opinion. *See* Motion, Part VI at p. 18. Mr. Brewer never met this standard, and the government's Response does not argue otherwise. Instead, the government struggles in its Response to "backfill" the holes in Mr. Brewer's "opinions" by asserting that he relied on other, unnamed factors linked to his personal experience, effectively putting words in Mr. Brewer's mouth.[4]

B. The Government Repeats Mr. Brewer's Resume at Length, but Fails to Show How His Experience Relates to the Specific Topic of this Case, the Storage, Handling, and Transport of Commercial SNF

The government's seven-page rehashing of Mr. Brewer's *general* experience with nuclear power fails to respond to PG&E's argument that, to qualify as an expert, Mr. Brewer must demonstrate knowledge of the *specific* topic at issue — the storage, handling, and transport of commercial spent nuclear fuel ("SNF"). Response at 9-17; Motion at 5 (citing this Court's finding in *Westfed Holdings v. United States,* 55 Fed. Cl. 544, 571 (2003), "that the issue is not the qualifications of the witness in the abstract or in general but 'whether those qualifications provide a foundation for a witness to answer a specific question.'") (citations omitted). The same test was applied by the Court in *Tennessee Valley Authority v. United States*, No. 01-249C (Fed. Cl. Jan. 31, 2006) ("TVA"), and is cited in the government's Response. Response at 10, (citing, in part, TVA Tr. 1850:17-1851:2 in which the Court reminds government counsel that, "you've got to have a *specific qualification* if you want the Court to make credibility findings

[4] Such attempts to "backfill" the holes in Mr. Brewer's opinion are discussed in detail in Section III, *infra.*

respecting Mr. Brewer's testimony."). The government fails this test because, regardless of the volume of *general* experience it attributes to Mr. Brewer in the field of nuclear power, it does not establish his "specific qualifications" to testify about the storage, handling and transport of commercial SNF. Further, the Government's droning response ignores PG&E's arguments singling out deficiencies in Mr. Brewer's experience:[5]

- Mr. Brewer's education, completed over thirty years ago, involved only a general course of study in nuclear engineering and is too remote to be relevant. Motion at 5-6. The government's Response simply reiterates what type of degree Mr. Brewer obtained and where he obtained it. Response at 10-11.
- Mr. Brewer's stint operating, maintaining, and refueling reactors on Navy submarines ended twenty years ago and is not relevant because it did not involve the storage and handling of the resulting *spent* fuel. Motion at 6. Further, Mr. Brewer admits that experience with certain Navy reactors does not carry over to other Navy reactors, let alone commercial, land-based reactors. *Id.* The government's Response simply reiterates Mr. Brewer's experience in the Navy.

---

[5] In its Response, the government relies heavily on *Betterbox Communications Ltd. v. BB Technologies*, 300 F.3d 325 (3rd Cir. 2002), but the holding in that case only serves to bolster PG&E's argument. There, the court accepted testimony from plaintiff's expert regarding direct sales of computer hardware based solely on his experience in the field. *Id.* While the court approved of the expert's twenty years of experience in direct marketing and catalog sales generally, it focused its decision on his personal experience with the *specific* topic at issue — he had previously owned a company that sold computer hardware by means of direct marketing and catalogs. *Id.* Here, while Mr. Brewer demonstrates *general* knowledge of nuclear power, he candidly admits that even estimating the costs of (much less personally engaging in) storing, handling, and transporting commercial SNF "wasn't a big part of what [he] did." Motion at 7 (citing Dep. 8:21-9:11; 18:6-11; 38:18-12; 90:11; and 91:5-92:6 where Mr. Brewer admits having no personal experience with activities related to commercial SNF.)

Further, the *Betterbox* court noted that the passage of time between the expert's experience and his proposed testimony might "have force" as an objection, "[i]f [the expert] had been called to testify in a field of knowledge that had changed greatly during the past few years." *Id.* There, the court allowed plaintiff's expert to testify because the field of computer hardware direct marketing had not changed significantly in the eight years since he had owned his company. *Id.* Here, Mr. Brewer's last personal experience with nuclear power occurred in the Navy, *over twenty years ago*. Huge advances have been made in the field of nuclear power between then and now; indeed, on-site fuel storage such as ISFSIs and casks did not exist back then. Thus, even if Mr. Brewer did have experience specific to SNF then, it would no longer be relevant.

- Mr. Brewer's subsequent civilian consulting experience, consisting of estimating decommissioning and accident costs, is not directly relevant and, what is more, completely unreliable because Mr. Brewer never compared any of his estimates to readily-available "as-built" cost data once the projects were completed. Motion at 7, 9. The government never denies this, but simply reiterates Mr. Brewer's experience in performing the estimates and attempts to buttress it with quotes from his testimony in *TVA*.[6]

## II. THE GOVERNMENT AVOIDS ADDRESSING OTHER PG&E ARGUMENTS BY RAISING STRAW MEN — THAT IS, MISCHARACTERIZING PG&E'S ARGUMENTS — AND THEN ATTACKING THEM

### A. To Exclude Mr. Brewer's "Opinion" Regarding Visual Fuel Inspection, PG&E Need Only Show That Mr. Brewer Lacks Sufficient Data to Conclude That the Costs of Visual Fuel Inspection in the Breach and Non-Breach World are Equal

Mr. Brewer opines that the costs of visually inspecting spent fuel prior to loading it into casks in the breach and non-breach worlds offset. Report at 14. For this to be true, the costs of visual inspection in the two worlds must be equal. *See* Motion at 14-15. As discussed in PG&E's Motion, the major reason why Mr. Brewer lacked "sufficient facts or data" to reach this conclusion is that he conceded he does not even know what work was involved in inspecting PG&E's spent fuel in the breach world. *Id*. If Mr. Brewer does not know what work the visual inspection entailed in the breach world, he cannot have any basis for opining that the work, and thus the costs, for visual inspection of spent fuel in the non-breach world would be the same. The government's Response never addresses this fundamental point.

---

[6] The government claims that Mr. Brewer was qualified as a "technical" expert on "these identical subjects" in *TVA*. Response at 6, 9-10. This assertion is plainly wrong; the Court in *TVA* distinguished between Mr. Brewer's experience in "nuclear engineering," in which it accepted his testimony, but was "much more dubious about [his alleged expertise in] nuclear fuel handling and storage," the specific issue in this litigation. TVA Tr. 1843:19-1844:18. The *TVA* Court instead qualified Mr. Brewer in the narrower area of evaluating costs of nuclear fuel, which TVA's counsel did not challenge. TVA Tr. 1845:2-15. In light of the Court's misgivings and the lack of any serious challenge to Mr. Brewer's qualifications by TVA's counsel, the fact that Mr. Brewer testified in *TVA* should be accorded minimal weight.

PG&E's Motion also demonstrated that Mr. Brewer lacked "sufficient facts or data" to *rule out the possibility* that DOE will require additional inspections in the breach world. *Id.* The prospect of additional visual inspections in the breach world that would raise the overall costs makes it impossible for Mr. Brewer to conclude that the costs of visual inspection in the breach and non-breach worlds would be equal and offset.

PG&E doesn't dispute that a utility must visually inspect SNF before loading it in both the breach and non-breach worlds. *See* 1983 Contract between DOE and PG&E ("Contract"), App. E (requiring that PG&E classify its spent fuel prior to delivery and specifically requiring visual inspection to determine the status of failed fuel). Nevertheless, the government wastes three pages reiterating this point. Response at 21-24.

More importantly, the government's Response mischaracterizes PG&E's argument by overstating it. Response at 24-25. According to the government's Response, PG&E states that Mr. Brewer found it "prudent or likely" that DOE would require additional visual inspections prior to accepting SNF in the non-breach world. PG&E does not go this far in its argument because, as shown above, it does not need to. Instead, PG&E merely shows that Mr. Brewer could not conclude with anything approaching reasonable certainty that the costs of visual inspection would be equal in both breach and non-breach worlds. PG&E's Motion cited Mr. Brewer's admissions that he did not know if DOE would require additional inspections when it finally performed and that there existed a length of time past which even he would require an additional inspection. Motion at 15. These admissions show that Mr. Brewer could not rule out

the possibility of additional inspections, not that he thought them "prudent or likely," and these admissions are enough to exclude Mr. Brewer's opinion as unreliable.[7]

B. The Government Admits That Cross-Examination, Not Mr. Brewer's Opinion, is the Appropriate Tool to Determine Whether Certain of PG&E's Costs Have Adequate Evidentiary Support

Mr. Brewer offers the "opinion" that he has read the invoices supporting PG&E's claim and asserts that they do not provide sufficient evidence to support PG&E's claim. Report §§ 5.A.1.4, 5.A.1.6, 5.A.1.8, 5.A.2.1(b). To defend this, the government contends that the Court requires expert assistance to comprehend the written descriptions used on the invoices supporting PG&E's claimed costs. Response at 26. It argues that PG&E acknowledges the need for expertise, because PG&E identified Mr. Kapus on its witness list as a "hybrid fact-expert witness," "presumably precisely" because it plans to employ Mr. Kapus in a similar expert capacity. *Id.* Again, this mischaracterizes PG&E's statements. The government has no basis beyond this four-word description to determine PG&E's intentions to offer Mr. Kapus as an expert witness.[8]

Further, Mr. Brewer's assertions about the sufficiency of PG&E's evidence goes to the factual basis of Mr. Kapus's testimony regarding damages; namely, the invoices. As the

[7] The government, in footnote 11 of the Response, reasons that PG&E is using multipurpose casks, therefore, it must believe that DOE will not reopen its casks prior to acceptance. This is a mischaracterization like the one discussed above. The government is correct in that PG&E developed a cask suitable for storage and transportation in the reasonable expectation the DOE will not require that the cask be reopened when it accepts PG&E's SNF. But PG&E's reasonable expectation is nothing more than that. To this day, PG&E is uncertain if DOE will require that the casks be reopened, and, in fact, it is this very uncertainty about DOE's future actions that renders unreliable Mr. Brewer's attempt to equate the costs for visual inspection of spent fuel in both breach and non-breach worlds.

[8] Parenthetically, the government's presumption is incorrect. Mr. Kapus has personal knowledge of PG&E's claimed costs and whether they were incurred as part of breach-related projects. Thus, he will provide testimony on these costs as a fact witness, not by expressing an expert opinion.

government notes in its Response, such attacks are appropriately conducted by *cross examination.* Response at 4-5. Moreover, Mr. Brewer agrees that cross examining Mr. Kapus would be the most effective way to obtain this information, "If Mr. Kapus [PG&E's financial services supervisor in charge of SNF costs] was sitting here and said that, I would ask him, what was it, and he would tell me, and we would be at an end." Brewer Dep. 607:1-19, *quoted in* Motion at 10-11.

### C. The Government's Response Acknowledges That it is a Question of Fact, Not One of Expert Opinion, Whether PG&E's Claimed Costs For Storing Failed Fuel are Recoverable

The government contends that the extent of Mr. Brewer's opinion on the costs of storing failed fuel is to identify which costs of storing failed fuel are fixed and which are variable. Response at 19-21. That is not an opinion; the fixed or variable nature of these costs is a fact, and, as shown above, is a topic the government admits is best handled on cross examination of PG&E's fact witnesses.

## III. THE GOVERNMENT MISCHARACTERIZES ITS OWN EXPERT'S TESTIMONY IN AN EFFORT TO BUTTRESS MR. BREWER'S INADEQUATE "OPINIONS"

### A. The Government's Response Completely Ignores Mr. Brewer's Explicit Bases For Concluding that the Costs of Investigating the Taiwan Earthquake are "Not Incremental" and Seeks to "Backfill" His Opinion with New Bases that He Never Mentions

Mr. Brewer expressly bases his "opinion" that the costs PG&E incurred to investigate the seismic effect of the Taiwan earthquake are not incremental on Mr. Reuger's testimony and a memo questioning whether some of the Taiwan earthquake investigation costs should be allocated to the Diablo Canyon Power Plant ("DCPP"). Report at §5.A.1.5. PG&E's Motion argued that, by his own terms, Mr. Brewer does nothing more than weigh this evidence without adding any "specialized knowledge" of commercial SNF. Motion at 12. Recognizing this flaw,

the government attempts to "pump up" Mr. Brewer's one-paragraph "opinion" into two pages in its Response and adds that Mr. Brewer relies on "experience and knowledge concerning the seismic requirements at operating nuclear facilities." Response at 18. First, the basis for this opinion stated in the government's Response wholly ignores the limited bases Mr. Brewer actually provided in his Report, as required by Rule 26(a)(2). Second, Fed. R. Evid. 702's Advisory Committee Notes to the 2000 Amendments, which codified *Daubert*, make clear that proposed experts, like Mr. Brewer, must make explicit their reliance on experience in lieu of methodology. *See Lippe*, 288 B.R. at 686. Government counsel's attempt to "backfill" this connection for Mr. Brewer represents a flagrant attempt to testify in place of its expert and cannot be condoned.

B. The Government's Response Again Replaces Mr. Brewer's Bases with its Own to Make Mr. Brewer's "Opinion" That the Costs of Applying For a Part 71 Transportation License are "Not Incremental" Seem Like More Than an Impermissible Legal Interpretation of the Regulation

Mr. Brewer devotes just six lines of his Report to conclude that a "Part 71 license is not needed to store fuel in the ISFSI," citing only one basis — Part 71 itself. Report at 12. PG&E's Motion notes that Mr. Brewer's interpretation of Part 71 is an impermissible legal conclusion and, therefore, of no help to the Court. Motion at 17. In its Response, the government turns Mr. Brewer's one stated basis for his opinion into four, including his review of the work needed to obtain such a license, his understanding of the license, his understanding of the regulation, and the "direction of DOJ counsel," all without a single citation to any evidence in the record. Even if the now-proffered reasons were legitimate, it was Mr. Brewer's responsibility to make these reasons known through his Report or deposition; this attempt of counsel to "backfill" his reasoning only serves to further undercut the reliability of Mr. Brewer's opinion. Moreover, counsel's attempt is deficient. Mr. Brewer never mentions that counsel directed him to remove

these costs, though he readily does so where he relies on counsel's instructions. Dep. 350:5-22. *Cf.* Dep. 138:2-139:1 (following counsel's instructions in calculating but-for loading costs). Also, Mr. Brewer's so-called "extensive knowledge" of cask licensing does not support the government's claims because Mr. Brewer admits it was developed almost entirely in the course of his work as an expert witness for the Department of Justice ("DOJ"). Response at 21; Dep. 50:11-53:12; 29 Charles Alan Wright & Victor James Gold, *Federal Practice & Procedure* § 6265 at text accompanying n.14, *cited in Westfed*, 55 Fed. Cl. at 573 (stating that "experience developed as a professional expert witness is not sufficient.").

C. The Government's Attempt to "Backfill" Mr. Brewer's "Opinion" that the Costs of Storing Greater-Than-Class-C ("GTCC") Waste are "Not Incremental" Backfires Because it Contradicts Mr. Brewer's Own Testimony

Mr. Brewer opines that PG&E would expend the same operating and maintenance costs to operate its ISFSIs so long as it was storing GTCC waste. Report at 23-24. He states his bases explicitly: (1) a lengthy quote from material accompanying a pre-9/11 NRC rule indicating the Nuclear Regulatory Commission's ("NRC") "preference" that GTCC be stored in a manner similar to SNF and (2) discussions with NRC personnel. *Id.* As above, PG&E's Motion noted that Mr. Brewer's "opinion" is an impermissible legal conclusion because it relies on his interpretation of NRC comments accompanying a rule. Motion at 18-19. In attempting to remedy this, the government ignores Mr. Brewer's stated bases and offers in their place Mr. Brewer's "detailed understanding of [nuclear] safety principles [ ] obtained both from his formal education . . . and practical application of those principles in the nuclear industry." Response at 32. The government does not, and cannot, pinpoint what portion of Mr. Brewer's "education" and "practical application" relate to GTCC waste, because Mr. Brewer admits having no

personal experience with it. Dep.38:18-22, *quoted in* Motion at 7. If the government seeks to "backfill" its own expert's opinions, it should, at the very least, avoid contradicting him.

IV. Conclusion

The government's Response does not affect the force of PG&E's motion *in limine* to exclude Mr. Brewer's proposed testimony because the Response hardly addresses the arguments made in the Motion. Instead, the government creates its own version of PG&E's arguments to attack, just as it creates its own version of Mr. Brewer's opinions as a defense. Thus, the cogency of PG&E's Motion remains unassailed. The Court should ignore the straw men and smoke screens the government raises in its Response and grant PG&E's Motion.

For these reasons, and those stated in PG&E's Motion, the Court should exclude the testimony of Warren K. Brewer.

Dated: May 8, 2006

Respectfully submitted,

s/Jerry Stouck

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW, Suite 500
Washington, DC 20006
(202) 331-3173 Phone
(202)261-4751 Fax
*Counsel for Plaintiff*
Pacific Gas & Electric Company

Of Counsel:
Robert L. Shapiro
Greenberg Traurig, LLP