# EXHIBIT B

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL
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

Telephone: (202) 305-7562
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

May 9, 2006

VIA TELECOPY AND FIRST CLASS MAIL

Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

Re: *Pacific Gas & Electric Co. v. United States*, Nos. 04-0074C, 04-0075C (Fed. Cl.)

Dear Mr. Stouck:

This letter is in response to your letter dated May 5, 2006, which we apparently received at 6:26 p.m. on that date. Because of the volume of documents that you have identified in your letter and our need to confirm with the various interested agencies and offices regarding production of these documents, we are responding here to your request for production of those documents identified in the declarations of Mr. Marcinowski and Mr. Friedman. We are working diligently to complete our analysis of the remaining documents that you have asked us to produce, and we anticipate that we will be able to respond to those document requests tomorrow.

Documents Over Which Mr. Friedman Invoked The Deliberative Process Privilege

In his declaration, Mr. Friedman, Inspector General, Office of Inspector General, Department of Energy, invoked the deliberative process privilege over three documents identified in your May 5, 2006 letter: Document Nos. 306, 307, and 309.[1] Although you assert in your letter that, "[b]ased on the Court's 'guidance'" in its April 27, 2006 order on reconsideration, the Government must produce these three documents, the Court's order actually is contrary to PG&E's representations. The Court specifically addressed each of these three documents in its

[1] In your May 5, 2006 letter, it appears as though you may have referred to the three documents discussed in Mr. Friedman's declaration – Document Nos. 306, 307, and 309 – as relating to Mr. Milner's declaration. Those documents are actually identified and discussed in Mr. Friedman's declaration.

order, and the Court found that the documents "are the type of documents that the deliberative process privilege is designed to protect" and that it "is not readily apparent to the court why plaintiff has a 'compelling need' for the documents . . . that outweighs the harm that disclosure of the documents may cause to defendant." Order, at 11-12 (Apr. 27, 2006). The Court held that, with regard to the documents in Mr. Friedman's declaration, plaintiff, Pacific Gas & Electric Company ("PG&E"), "must make a showing of compelling need for production of the documents" to warrant their production. These documents, which are drafts and a work paper relating to an audit regarding Yucca Mountain's surface facilities, are simply not relevant to PG&E's litigation. PG&E has made no effort to identify any "compelling need" for these three documents. Accordingly, we have no basis upon which to withdraw the claim of privilege that Mr. Friedman invoked.

Documents Over Which Mr. Marcinowski Originally Invoked The Deliberative Process Privilege

Of the documents identified in your letter dated May 5, 2006, those documents that were originally addressed in the declaration from Mr. Marcinowski are identified as Document Nos. 1 through 103, No. 385, and Nos. 391 through 401. Although you assert in your letter that the Government must now produce all of these documents, the Government has actually previously produced a large number of these documents to you. Specifically, Mr. Marcinowski, upon reviewing his privilege assertions following the Court's order dated March 14, 2006, elected to withdraw his prior invocation of the deliberative process privilege from the following documents, copies of which we provided to you on April 18, 2006: Nos. 1, 3,4, 5, 6, 7, 8, 9, 10, 11, 14, 15, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 69, 70, 78, 79, 393, 394, and 397. In addition, with regard to Document No. 401, we produced that document in 2003, after redacting information subject to the attorney-client privilege,[2] in response to Senior Judge Merow's order in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.). After you review your records, please let us know if you are missing any of these documents. Otherwise, we will assume that we need take no further action with regard to those documents.

With regard to the remaining documents that you identified in your May 5, 2006 letter that were identified in Mr. Marcinowski's declaration, we agree that, because the Government has raised the issue of the plaintiff's need to store Greater-Than-Class-C radioactive waste ("GTCC waste") as a defense in this case, the Court's April 27, 2006 order suggests that PG&E may be able to require production of these documents to the extent that PG&E's need for these documents outweighs the harm to the Government. However, although GTCC waste may now be an issue in this case, the mere fact that any particular document discusses GTCC waste in

---

[2] As we identified at page 263 of our appendix to our opposition to PG&E's motion to compel, which we filed on November 23, 2005, and as PG&E recognized in the listing of privilege log information that it attached to its own briefing on December 9, 2005, PG&E recognized that the Government had included an attorney-client privilege claim regarding some of the information in Document No. 401.

some manner does not automatically render every document mentioning GTCC waste relevant to this litigation or create a "compelling need" for it in this litigation. With regard to the particular documents identified in Mr. Marcinowski's declaration, we cannot identify any relevance of these documents to PG&E's particular case, as follows:

> Most of the documents in Mr. Marcinowski's declaration relate in some way to DOE's preparations for the development of an Environmental Impact Statement ("EIS") to address the future disposal of GTCC waste, including possible scheduling of activities for developing that EIS (specifically, the potential timing of the publication of an Advanced Notice of Intent and a Notice of Intent). The documents that seem to relate to such issues are Document Nos. 2, 12, 13, 18, 51 through 53, 56 through 59, 62 through 68, 71 through 74, and 80 through 103.[3] We cannot identify any relevance of these documents to this litigation. The relevant issue in this case regarding GTCC waste is whether the NRC, by rule, has defined GTCC waste as high-level radioactive waste, so that it is subject to the Standard Contract. In other SNF cases, counsel for PG&E has asserted that another relevant issue is whether, in the "but for" world without any partial breach by the Department of Energy ("DOE"), DOE "would have" accepted the nuclear utilities' SNF on the same schedule as their SNF, regardless of whether any such contract obligation existed. We cannot see any relevance to documents created in 2003 and later regarding (1) the meaning of the NRC's published rules or (2) the actions that DOE would have undertaken in the "but for" world had SNF acceptance begun in 1998.[4] Further, these documents are merely drafts and do not represent agency policy or final decisions. Accordingly, we cannot identify any reason voluntarily to withdraw our privilege claims over these documents, absent some identification of a compelling need for them.

---

[3] To the extent that they are produced, Document Nos. 97 through 103 contain information protected by other previously-identified privileges that would need to be redacted prior to production.

[4] In fact, as you are well aware, we believe that any evaluation of what DOE "might have" done had it begun SNF acceptance in 1998 is irrelevant to this litigation, given that, particularly as it relates to GTCC waste, the only relevant issue is what actions DOE was contractually <u>obligated</u> to undertake so that DOE's failure to undertake those actions constitutes a breach of contract, as opposed to a "breach" of an activity that DOE had never committed itself to undertake.

Document Nos. 396 and 400 relate to a discussion regarding what office within DOE should be assigned responsibility for developing the EIS, while Document No. 391 relates to the status of discussions about the potential issuance of an EIS. For the reasons identified above, we cannot identify the relevance of these documents to the issues relating to GTCC waste that are arguably at issue in this case.

Document Nos. 16 and 17 relate to whether the NRC wishes to participate as a "cooperating agency" in the development of an EIS for GTCC waste disposal. Before we can agree to withdraw the invocation of the deliberative process privilege from these documents, we need to understand the relevance of these documents to this litigation and the reasons that PG&E has a "compelling need" for them.

Document No. 55 is a draft decision memorandum recommending a response to Congressman Markey regarding the Department's efforts to address the problem of "orphaned" radioactive material. Document No. 392 is a draft response to questions from a congressional committee regarding, among other things not relevant to this litigation, DOE's plan to prepare an EIS. We, again, do not see the relevance of this document to the issues in PG&E's litigation.

Document Nos. 75, 76, and 77 discuss the safety of GTCC waste, in response to a congressional inquiry. We do not understand the relevance of these documents to the issues regarding GTCC waste in this litigation.

Document Nos. 60 and 61 relate to a draft of an unadopted suggested policy in response to GAO's "DOE Action Needed To Ensure the Continued Recovery of Unwanted Sealed Radioactive Sources, GAO-03-483." We do not understand the relevance of these documents to the issues relating to GTCC waste in this litigation.

Document No. 385 is a staff member's unsigned draft presentation of the legal and regulatory framework for disposal of GTCC waste. We do not understand the relevance of a staff member's discussion upon the actual requirements of the existing laws or the issues relating to GTCC waste in this case.

We are willing to discuss these documents and to evaluate any explanation of relevance and "compelling need" that PG&E offers. However, without any explanation of relevance or need, we have no basis upon which to question the reasoned decision of the high-level official who invoked the deliberative process privilege over these documents. We look forward to discussing this issue with you.

With regard to two particular documents – Document Nos. 63 and 73 – we have identified an error in our original privilege designations. In each of these two documents, there are several lines of information that discuss advice from the Office of General Counsel that was provided to the agency. To the extent that the Court orders production of these two documents or the parties are able to agree that PG&E's need for these documents outweighs the harm that Mr. Marcinowski identified would result from their disclosure, we would need to redact from those two documents the few lines in them that relate to advice from the Office of General Counsel, which constitutes information protected by the attorney-client privilege. In addition, in Document No. 392, in addition to information relating generally to GTCC waste, a particular paragraph in that document relates only to a continuing dispute between DOE and the State of New York regarding the West Valley Demonstration Project – an issue that is irrelevant to this litigation but that is sensitive with regard to other parties; to the extent that the Government is required or agrees to produce Document No. 392, we would need to redact that paragraph and an irrelevant paragraph about low-level radioactive waste capacity.

Other Documents Identified In Your May 5, 2006 Letter That Were Previously Produced

Although we are continuing to review those documents identified in the declarations executed by Mr. Virgilio and Mr. Milner that PG&E is asking us to produce, our review indicates that, of the documents that Mr. Virgilio and Mr. Milner originally identified as subject to the deliberative process privilege, they elected to withdraw their invocation of that privilege over the following documents, which were produced to you on April 18, 2006: Document Nos. 132, 221, 223, 286, 332, 420, 436, 441, 442, 461, 463, and 465. After you review your records, please let us know if you are missing any of these documents. Otherwise, we will assume that we need take no further action with regard to those documents. We are continuing our review of the remaining documents identified in the declarations from Mr. Virgilio and Mr. Milner, and we anticipate that we will be able to respond to you regarding those documents tomorrow.

We are working diligently to respond to the remainder of your letter dated May 5, 2006. Nevertheless, to the extent that PG&E wants to defer its motion to compel, which is currently due tomorrow, until Friday, May 12, 2006, to allow the parties an opportunity to discuss these matters after we have had an opportunity fully to respond to PG&E's May 5, 2006 production

request and PG&E has had an opportunity to consider those responses, we have no objection to that deferment.

Very Truly Yours,

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch

# EXHIBIT C

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL
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

Telephone: (202) 305-7562
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

May 10, 2006

VIA TELECOPY AND FIRST CLASS MAIL

Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

Re: *Pacific Gas & Electric Co. v. United States*, Nos. 04-0074C, 04-0075C (Fed. Cl.)

Dear Mr. Stouck:

This letter is in further response to your letter dated May 5, 2006, which we apparently received at 6:26 p.m. on that date. As we explained in our letter dated May 9, 2006, because of the volume of documents that you have identified in your letter and our need to confirm with the various interested agencies and offices regarding production of these documents, we addressed the documents identified in your letter dated May 5, 2006, over which Messrs. Friedman and Marcinowski had invoked the deliberative process privilege in yesterday's letter. In this letter, we address the documents identified in your May 5, 2006 letter that Mr. Virgilio originally identified as subject to the deliberative process privilege. Those documents are Document Nos. 187, 402 through 434, 436 through 459, and 461 through 465.[1/] We are continuing to review the documents relating to Mr. Milner's declaration and anticipate that we will respond to your request for those documents later today.

[1/] As we stated in our letter dated May 9, 2006, our review indicates that, of the documents that Mr. Virgilio originally identified as subject to the deliberative process privilege and that PG&E asked us to produce in its May 5, 2006 letter, Mr. Virgilio elected to withdraw his invocation of that privilege over the following documents, which were produced to you on April 18, 2006: Document Nos. 420, 436, 441, 442, 461, 463, and 465. After you review your records, please let us know if you are missing any of these documents. Otherwise, we will assume that we need take no further action with regard to those documents.

With regard to Document Nos. 457 and 459, we provided copies of those two documents (Bates-stamp numbers NRC0130206 and NRC0130277) to Todd W. Monroe of your office by letter from Scott R. Damelin, Department of Justice, on January 13, 2006. Please let us know if you are unable to locate those two documents in your files.

Several documents from Mr. Virgilio's declaration that you have identified in your May 5, 2006 letter are protected by privileges other than the deliberative process privilege and cannot be redacted. Those documents include a letter (and drafts of a letter) from Jane K. Taylor, Office of General Counsel, Department of Energy ("DOE"), to E. Neil Jensen, Office of General Counsel, Nuclear Regulatory Commission ("NRC"), which is identified as Document Nos. 407, 410, 414, 415, 430, and 431. In our original privilege log, we identified each of these documents as protected not only by the deliberative process privilege, but also by the attorney-client and attorney work product privileges.[3] In addition, after reviewing the documents identified in Mr. Virgilio's declaration and in your May 5, 2006 letter, we have determined that the following documents that are also protected by other previously asserted privileges cannot be redacted: Document Nos. 413, 416, 417, 418, 446, 448, and 454. Accordingly, regardless of whether these documents are relevant to this litigation, these documents are privileged in their entirety based upon these other privileges and will not be released.

In addition, we have previously produced a copy of the document identified as Document No. 411, which was produced with the Bates-stamp number NRC0030012, but without the privileged marginalia that is contained on Document No. 411. Because the attorney notes that are handwritten on Document No. 411 are all subject to the attorney-client privilege, which we previously identified in our privilege log, we see no reason to produce another copy of NRC0030012 with redactions of all of the information that has not already been produced to PG&E.

Most of the remaining documents fall into two categories: (1) documents dealing with the NRC's response to Andrew Kadak's October 2000 letter requesting that the NRC define Greater-Than-Class-C radioactive waste ("GTCC") as high-level radioactive waste ("HLW"), or (2) documents relating to the development of a response to a petition for rulemaking that Portland General Electric Company ("Portland") submitted regarding the interim storage of GTCC waste that eventually resulted in a final rule published at 66 Fed. Reg. 51823 (Oct. 11, 2001). The documents that relate to the NRC's development of a response to Dr. Kadak's letter

---

[3] In the summary of privilege claims that PG&E filed with the Court as an attachment to a brief on December 9, 2005, PG&E omitted the attorney-client and work product privilege invocations from its list of our claimed privileges. In a motion for reconsideration that we filed on March 21, 2006, we attached a list of documents, using PG&E's reference numbers for documents, that identified the privilege claims that PG&E had identified next to each of its reference numbers, assuming the correctness of PG&E's representations. We have now identified that PG&E's list was inaccurate. Nevertheless, the attorney-client and attorney work product privileges were properly asserted over these documents.

are Document Nos. 187, 402, 403, 405, 406, 408, 409, 412, 419, 421, 422, 423, 424, 425,[3] 426, 427, 429, 432, 433, 434, 445, and 455.[4] As we discussed in the letter that we sent to you yesterday with regard to documents that Mr. Marcinowski had identified as subject to the deliberative process privilege, the relevant issue in this case regarding GTCC waste is whether the NRC, "by rule," has defined GTCC waste as HLW, so that it is subject to the Standard Contract. As you are aware, the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. § 10101(12) defines HLW as including "other highly radioactive material that the [NRC], consistent with existing law, determines by rule requires permanent isolation." (Emphasis added). The NRC has published a rule regarding GTCC waste, and PG&E apparently will argue that, in that rule, the NRC defined GTCC waste in a manner that converts it into HLW. The manner in which the Court will interpret that rule is well-established – it will do so by reference to the plain language of the rule itself. The extrinsic evidence that PG&E seeks is not admissible for any purpose, eliminating any "compelling need" by PG&E for these documents. We cannot see any relevance to these documents regarding the meaning of the NRC's published rules. Further, these documents are merely drafts and do not represent agency policy or final decisions. Accordingly, we cannot identify any reason voluntarily to withdraw our privilege claims over these documents, absent some identification of a viable compelling need for them.

The documents relating to the development of a response to a petition for rulemaking that Portland submitted regarding the interim storage of GTCC waste are Document Nos. 437, 438, 439, 440, 443, 444, 450, 452, 453, 456, 458, and 464. Although these documents certainly relate to GTCC waste, the issue involved in Portland's petition does not have any relevance to the particular issues in PG&E's case, particularly beyond the actual final rule that the NRC ultimately issued at 66 Fed. Reg. 51823 (Oct. 11, 2001). We suggest that you review that final rule so that you can identify whether PG&E has any "compelling need" for the type of information that would be contained in drafts of the rule or related documents. The mere fact that these documents relate to GTCC waste does not automatically create a "compelling need" for them in this case. The GTCC matters that they discuss must actually relate to an issue in this case for them to be relevant and before we can evaluate whether PG&E would have a "compelling need" for them in this case. After you have reviewed the NRC's published final rule and have considered the subject matter at issue in that rule, please identify for us the relevance of these documents to PG&E's case and the "compelling need" that PG&E has for these deliberative documents.

---

[3] We have identified a portion of this document that contains information protected by the attorney-client privilege and work product doctrine. Were we to agree to produce this document, we would need to redact those two sentences.

[4] We invoked the attorney-client privilege and/or the work product doctrine as a justification for withholding some of these documents, and that information would need to be redacted from any of those documents, to the extent that we agreed or were ordered to produce them.

Finally, we address the few remaining documents identified both in Mr. Virgilio's declaration and in PG&E's May 5, 2006 letter below:

> Document No. 447: This document is simply an outline of a proposed NRC regulatory evaluation of GTCC waste and the use of 10 C.F.R. Parts 60 and 61 to regulate GTCC waste. We cannot see the relevance of this document to this case, much less PG&E's "compelling need" for it.
>
> Document No. 449: This document briefly outlines policy and legal issues regarding the disposal of GTCC waste and what an Environmental Impact Statement ("EIS") for GTCC waste "might look like." For the reasons that we discussed in our letter dated May 9, 2006, regarding DOE's development of an EIS for GTCC waste, we do not see the relevance of or "compelling need" for this document in this litigation.
>
> Document No. 451: This document is a brief two-part e-mail chain describing contact between the NRC and Waste Control Specialists to discuss regulatory aspects of GTCC storage at Waste Control Specialists. We do not see the relevance of or "compelling need" for this document in this litigation.
>
> Document No. 462: This document relates to a telephone conference between the NRC and the State of South Carolina regarding South Carolina's regulation of GTCC waste disposal. We do not see the relevance of or "compelling need" for this document in this litigation.

Again, we are working diligently to respond to the remainder of your letter dated May 5, 2006. Nevertheless, to the extent that PG&E wants to defer its motion to compel, which is currently due tomorrow, until Friday, May 12, 2006, to allow the parties an opportunity to discuss these matters after we have had an opportunity fully to respond to PG&E's May 5, 2006 production request and PG&E has had an opportunity to consider those responses, we have no objection to that deferment.

Very Truly Yours,

Harold D. Lester, Jr.

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch

# EXHIBIT D

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL
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

Telephone: (202) 305-7562
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

May 10, 2006

VIA TELECOPY AND FIRST CLASS MAIL

Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

Re: *Pacific Gas & Electric Co. v. United States*, Nos. 04-0074C, 04-0075C (Fed. Cl.)

Dear Mr. Stouck:

This letter is our last of three letters responding to your letter dated May 5, 2006, which we apparently received at 6:26 p.m. on that date. As we explained in our letter dated May 9, 2006, because of the volume of documents that you have identified in your letter and our need to confirm with the various interested agencies and offices regarding production of these documents, we have addressed the documents identified in your May 5, 2006 letter separately, addressing documents over which the deliberative process privilege was invoked by Messrs. Friedman and Marcinowski in one letter dated May 9, 2006, and those over which the privilege was invoked by Mr. Virgilio in a second letter sent to you earlier today. In this letter, we address the documents identified in your May 5, 2006 letter that Mr. Milner originally identified as subject to the deliberative process privilege. Those documents are Document Nos. 108, 112, 115, 118, 119, 122 through 125, 127, 129 through 132, 135 through 138, 140, 141, 143, 145, 146, 150, 153, 154, 162, 167, 170, 171, 178, 185, 188 through 193, 195 through 233, 235 through 238, 240 through 246, 248, 249, 251 through 292, 299 through 301, 303, 308, 310 through 314, 319, 322, 331 through 336, 338, 340 through 342, 346 through 356, 361 through 367, 369 through 379, 381 through 383, and 387 through 390.[1]

---

[1] As we stated in our letter dated May 9, 2006, our review indicates that, of the documents that Mr. Milner originally identified as subject to the deliberative process privilege and that PG&E asked us to produce in its May 5, 2006 letter, Mr. Milner elected to withdraw his invocation of that privilege over the following documents, which were produced to you on April 18, 2006: Document Nos. 132, 221, 223, 286, and 332. After you review your records, please let us know



PAGE 2/10 * RCVD AT 5/10/2006 10:19:22 PM [Eastern Daylight Time] * SVR:WDC-PS1/3 * DNIS:5 * CSID: * DURATION (mm-ss):04-04

PG&E has requested production of the majority of documents over which the Government invoked the deliberative process privilege, and we have attempted to respond to PG&E's demands as quickly as possible. To the extent that we inadvertently fail to address below one or more of the requested documents over which Mr. Milner invoked the deliberative process privilege, please let us know, and we will attempt to address any omitted documents as quickly as we can.

Documents Similar To Those That The Court Has Ordered The Government To Produce

In the Court's order dated April 27, 2006, the Court ordered the Government to produce several documents for which Mr. Milner had invoked the deliberative process privilege, finding that "defendant's interest in maintaining the confidentiality of the documents – while described with sufficient particularity – is outweighed by plaintiff's evidentiary need for the documents." Order, at 14 (Apr. 27, 2006). With regard to each set of documents that the Court ordered the Government to produce, the Court found that "[i]t appears to the court that these documents regarding the potential rate of acceptance by the nuclear utilities – which could be helpful in determining the rate of acceptance the government would have used had it began to perform the Standard Contract on January 31, 1998 – are highly relevant to the litigation and that there may be no other way for plaintiff to obtain evidence that serves the same purpose as these documents." Id. We disagree that the documents that the Court ordered us to produce are relevant to this litigation, in part because (1) they have no effect upon defining the scope of DOE's contractual obligation to accept SNF under the Standard Contract and the extent to which DOE breached that specific contractual obligation and (2) they are unrelated to DOE's performance plan had it begun SNF acceptance in 1998.

Nevertheless, based upon the rationale that the Court identified for determining whether PG&E's need for particular documents outweighs the Government's harm, it appears that the following documents which PG&E asked us to produce in its May 5, 2006 letter have a similar subject matter to those that the Court ordered us to produce in its April 27, 2006 order, in that they either mention or discuss rate of SNF acceptance issues: Document Nos. 118, 119, 122, 124, 125, 127, 135, 138, 140, 143, 145, 146, 188, 189, 190, 191, 192, 193, 195, 196, 202, 203, 205, 208, 207, 212, 213, 214, 215, 216, 220, 224, 226, 233, 236, 238, 240, 241, 242, 243, 244, 245, 246, 248, 249, 251, 252, 253, 254, 256, 262, 264, 266, 267, 268, 269, 270, 272, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 287, 290, 311, 313, 319, 322, 333, 334, 335, 336, 341, 346, 348, 350, 361, 363, 364, 365, 366, and 378. Although, as previously stated, we disagree that all documents relating to the rate of SNF acceptance are relevant to or admissible in this litigation, we will not contest that these documents fall within that category for purposes of the Court's April 27, 2006 decision. Because we do not want to create any opportunity for any SNF plaintiff, or any plaintiff in other current or future litigation with DOE, to have any grounds

---

if you are missing any of these documents. Otherwise, we will assume that we need take no further action with regard to those documents.

for arguing that the Government somehow waived any privilege claims relating to the rate of SNF acceptance, we request that you ask the Court for an order compelling the production of these documents.[2]

Documents That The Government Should Not Have To Produce

Document No. 112, And Similar Documents

In your May 5, 2006 letter, you assert that, "[b]ased on the Court's 'guidance'" in its April 27, 2006 order on reconsideration, the Government must produce Document No. 112. Yet, in its April 27, 2006 order, the Court specifically addressed Document No. 112. See Order, at 9 (Apr. 27, 2006). The document, which is discussed in paragraph 10 of Mr. Milner's in camera declaration, relates to an options paper upon the question of interim storage of radioactive waste. See Milner Declaration ¶ 10. As Mr. Milner stated, "[t]he specific decision at issue was whether DOE would elect to store spent nuclear fuel in an interim storage facility, and this document reflects DOE's considerations and deliberations that relate to that decision." Id. After reviewing this description and, presumably, the document that had been submitted for in camera review, the Court found that the document was of the type "that the deliberative process privilege is designed to protect" and that "it is not readily apparent to the court why plaintiff has a 'compelling need' for the document[] . . that outweighs the harm that disclosure of the document[] may cause to defendant." Order, at 9 (Apr. 27, 2006). We agree with the Court, as we are unable to identify any reason that PG&E would need access to such policy deliberations – regardless of the ultimate decision that was made – to support or defend its damages claims in this case. Further, PG&E has offered us no explanation as to why it has a "compelling need" for the document, despite the analysis by the Court. Without any explanation of need, we have no basis to agree to produce this document over Mr. Milner's invocation of the deliberative process privilege.

Document Nos. 153, 154, 162, 167, 170, 171, and 178 are very similar to Document No. 112 and are described in paragraphs 11 through 14 of Mr. Milner's in camera declaration. For the same reasons that Document No. 112 is properly protected by the deliberative process privilege, these documents are properly protected. In addition, some of these documents discuss potential settlement options relating to the nuclear utilities involved in lawsuits against DOE, many of which are currently plaintiffs in the Court of Federal Claims. We see no reason that the utility plaintiffs should review DOE's past evaluation of possible settlement options when the utility plaintiffs have not produced similar information to the United States.

Finally, with regard to all of these documents, the Government invoked not only the deliberative process privilege, but also the presidential communications privilege. PG&E did not challenge that privilege claim, and PG&E previously informed the Court that it did not intend to challenge privilege claims other than the deliberative process privilege. We would object to any

[2] Any order requiring us to produce these documents should be subject to redactions relating to any other privilege claims that we have invoked with regard to any of these documents.

attempt by PG&E to raise a new challenge to the presidential communications privilege claim at this point in the litigation.

Document No. 377, And Similar Documents

You also assert in your May 5, 2006 letter that, based upon the Court's April 27, 2006 order, the Government must produce Document No. 377, which is discussed in paragraph 34 of Mr. Milner's declaration. That document "reveals the deliberations within DOE regarding the identification of the rail corridor and contains a detailed explanation as to why one corridor was recommended over the others." Milner Declaration ¶ 34. Contrary to your representation that the Court's order indicates that the Government must produce this document, the Court actually indicated in its order that, like Document No. 112, "it is not readily apparent to the court why plaintiff has a 'compelling need' for the document . . . that outweighs the harm that disclosure of the document may cause to defendant." Order, at 10 (Apr. 27, 2006). PG&E has provided no explanation to us regarding the reason that it has a "compelling need" for information about DOE's internal deliberations regarding rail corridors. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Like Document No. 377, Document Nos. 294 and 296 (discussed in paragraph 49 of the Milner declaration) relate to DOE deliberations regarding possible transportation alternatives for transporting SNF to the repository site, developed for use in preparing a budget submission to the Office of Management and Budget. Similarly, Document Nos. 131 and 379 are draft presentations "regarding transportation options for Yucca Mountain." Milner Declaration ¶ 67. For the same reasons identified in relation to Document No. 377, we do not understand the relevance of or "compelling need" for these documents to support PG&E's damages claims or to rebut the Government's defenses. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Document Nos. 367 and 369, And Similar Documents

You also assert in your May 5, 2006 letter that, based upon the Court's April 27, 2006 order, the Government must produce Document Nos. 367 and 369, which are discussed in paragraph 36 of Mr. Milner's declaration. Those draft presentations, titled "Proposed Approach for Initiating Modifications to Utility Disposal Contracts," represent one individual's preliminary views on the contract terms to be modified, with the agreement of the contract holders, if modifications are undertaken. Milner Declaration ¶ 36. Contrary to your representation that the Court's order indicates that the Government must produce these documents, the Court actually indicated that, like Document Nos. 112 and 377, "it is not readily apparent to the court why plaintiff has a 'compelling need' for the documents . . . that outweighs the harm that disclosure of the documents may cause to defendant." Order, at 10 (Apr. 27, 2006). PG&E has provided no explanation to us regarding the reason that it has a "compelling need" for information about DOE's internal deliberations regarding possible future modifications of the Standard Contract. To the contrary, unless and until parties propose and agree to contract modifications in the future, the existing lawsuits, including PG&E's, must proceed upon the basis of the contract as it

currently exists, as it is that document that defines the parties' rights and obligations. Accordingly, particularly since PG&E has not provided us with any information as to its "compelling need" for these documents, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Like Document Nos. 367 and 369, Document No. 353 identifies a suggestion, here by a contractor, regarding a possible contract change. Again, this suggestion, which has not been adopted by DOE, is irrelevant to this litigation, and we have identified no "compelling need" by PG&E for this document.

Document Nos. 228, 231, and 257, And Similar Documents

You also assert in your May 5, 2006 letter that, based upon the Court's April 27, 2006 order, the Government must produce Document Nos. 228, 231, and 257, which are discussed in paragraph 45 of Mr. Milner's declaration. These documents created by DOE personnel present "possible activities that could be undertaken to reduce the cost and schedule for the construction of the repository and opinions as to the likelihood of successfully implementing each of the ideas." Milner Declaration ¶ 45. Again, contrary to PG&E's representations that the Court's order indicates that the Government must produce this document, the Court actually indicated in its order that "it is not readily apparent . . . why plaintiff has a 'compelling need' for the document . . . that outweighs the harm that disclosure of the document may cause to defendant." Order, at 10 (Apr. 27, 2006). PG&E has provided no explanation to us regarding the reason that it has a "compelling need" for information about the costs of the development and construction of the repository at Yucca Mountain to present its damages claims here. To the extent that documents relating to DOE's schedule for constructing a repository in the future were ever relevant in this litigation, it is no longer even arguably relevant following the United States Court of Appeals for the Federal Circuit's decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), and this Court's order eliminating future damages from the trial of this matter. Accordingly, particularly without any explanation from PG&E regarding the relevance of these documents to this litigation or to its "compelling need" for the documents, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Like Document Nos. 228, 231, and 257, numerous other documents identified in Mr. Milner's declaration relate to proposed schedules for the repository development in the future, as well as the effect of budgetary issues upon the cost and schedule for the development of the repository and/or the submission of the License Application for the repository, unrelated to the rate at which DOE will accept, or "would have" accepted, nuclear utilities' SNF once SNF acceptance begins. Those documents are Document Nos. 113, 129, 130, 198, 199, 200, 201, 206, 210, 211, 217, 218, 219, 232, 259, 265, 292, 342, 356, 362, 370, 373, 374, 375, and 376 (discussed in paragraphs 35, 38, 39, 40, 41, 42, 43, 44, and 47 of the Milner declaration). Another document, Document No. 331 (paragraph 37 of the Milner declaration), relates to DOE's evaluation of the best manner in which to respond to criticisms from the Nuclear Waste Technical Review Board regarding the planned design and operation of the geologic repository at



PAGE 6/10 * RCVD AT 5/10/2006 10:19:22 PM [Eastern Daylight Time] * SVR:WDC-PS1/3 * DNIS:5 * CSID: * DURATION (mm-ss):04-04

Yucca Mountain. Document No. 115 (discussed in paragraph 28 of the Milner declaration) relates to the deferral of final waste package closure and emplacement. Other documents, including Document Nos. 293, 312, 314, 355, and 371 (discussed in paragraphs 33, 48, 75, and 81 of the Milner declaration), simply relate to budget issues, unrelated to the rate at which DOE will accept or would have accepted SNF once acceptance begins. Finally, Document Nos. 197, 204, 209, 222, 225, 227, 229, 230, 235, 237, 255, 258, 260, 270, 273, 291, and 354 (discussed in paragraphs 62 and 72 of the Milner declaration) deal with possible efforts to expedite the commencement of SNF acceptance in the future while attempting to reduce program costs, without any discussion of rates of SNF acceptance after that acceptance commences. We can identify no "compelling need" by PG&E for any of these documents in this litigation, and PG&E has not identified any need to us.

Remaining Documents

With regard to the remaining documents that PG&E has asked us to produce despite Mr. Milner's invocation of the deliberative process privilege, PG&E has not identified any compelling need for any of those documents, as discussed below:

> Document No. 108: Document No. 108, which is discussed in paragraph 27 of Mr. Milner's declaration, relates to a suggestion that DOE adopt a "market-driven acquisition approach" for contracting of support services when DOE began the acceptance and transport of SNF from nuclear utilities. We do not understand how the manner in which DOE will contract with third parties to assist it in its SNF acceptance and transportation obligations under the Standard Contract has any relevance to PG&E's damages claims. Further, PG&E has not identified any "compelling need" for this document. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.
>
> Document Nos. 136, 137, 141, 261, and 263: These documents, which are discussed in paragraph 31 of Mr. Milner's declaration, are drafts of a graphic presentation regarding repository design options (titled "Repository Design Evolution for License Application – Legal Weight Truck Options" and "Modular Construction System Evaluation"), along with a meeting agenda for Dr. Chu regarding potential repository design changes. These issues seem far removed from the damages claims that PG&E is making in this litigation, rendering these documents irrelevant to PG&E's case. PG&E has not identified any "compelling need" for these documents. Accordingly, we have no basis for withdrawing the privilege claim over these documents that Mr. Milner invoked.

Document No. 185: Document No. 185, which is discussed in paragraph 23 of Mr. Milner's declaration, relates to DOE's consideration of a request from General Atomics, a research reactor, to remove DOE-owned SNF and TRIGA fuel from General Atomics' site. PG&E is not a research reactor. We cannot understand the relevance of this document to PG&E's damages claims, and PG&E has not identified any "compelling need" for this document to assist it in its case. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Document No. 289: Document No. 289, which is discussed in paragraph 25 of Mr. Milner's declaration, relates to an internal policy evaluation regarding which office within DOE should be transferred responsibility for various responsibilities of DOE's Office of Environmental Management, including responsibility for Greater-Than-Class-C radioactive waste ("GTCC waste"). For the same reasons that we discussed in our letter dated May 9, 2006, we cannot understand either the relevance of or the "compelling need" for documents relating to consideration of which office within DOE will have responsibility for developing disposal options of GTCC waste. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Document No. 292: Document No. 292, which is discussed in paragraph 46 of Mr. Milner's declaration, is an e-mail and attached graph prepared by a contractor in response to a request for a summary of the utilities' estimates of at-reactor storage costs for SNF, prepared for use in developing a budget request. Milner Declaration ¶ 46. The document is not segregated by individual utility and provides no information other than a very general identification of at-reactor storage costs, as identified and claimed by the nuclear utilities. We can see no relevance to or "compelling need" for this information in this litigation. Accordingly, we have no basis for withdrawing the privilege that Mr. Milner invoked.

Document No. 299: We cannot identify any relevance of or "compelling need" for this document, which is discussed in paragraph 78 of the Milner declaration, in this litigation.

Document Nos. 300 and 301: Document Nos. 300 and 301, which are discussed at paragraph 73 of Mr. Milner's declaration, relate to DOE's deliberations regarding comments upon the NRC's proposed revisions to a rule in response to a petition for

rulemaking from Portland General Electric Company ("Portland"). We discussed that rulemaking in the letter that we sent you earlier today relating to Mr. Virgilio's declaration. For the same reasons discussed there, these two documents are irrelevant to this case and, further, PG&E has identified no "compelling need" for their production.

Document No. 303: This document, which is discussed in paragraph 74 of the Milner declaration, relate to the Fiscal Year 2001 budget. We can identify no relevance of this document to this litigation, particularly following the Indiana Michigan decision.

Document Nos. 307 and 310: In its April 27, 2006 order, the Court stated that it was unable to identify any "compelling need" by PG&E for Document Nos. 306, 308, and 309, which are documents relating to the Office of Inspector General. See Order, at 11-12. Document Nos. 307 and 310 are similar to Document Nos. 306, 308, and 309. For the reasons discussed by the Court, we have not identified any "compelling need" by PG&E for these documents.

Document No. 351: This document, which is discussed at paragraph 79 of the Milner declaration, relates to an exchange with the Governor of Nevada regarding the safe storage of SNF in dry storage facilities. This document is irrelevant to this litigation, as neither party has disputed safety issues, but it is a sensitive subject between DOE and Nevada. Accordingly, particularly in light of the lack of relevance of this document to this litigation, PG&E cannot have a compelling need for its production here.

Document No. 372: Document No. 372, which is discussed in paragraph 30 of Mr. Milner's declaration, forwards a working draft of an audit report on the "Licensing Support Network" ("LSN") for the Yucca Mountain repository. As you know, the LSN is a computerized database of documents relating to the license proceedings for Yucca Mountain, which DOE is required by statute to develop. We cannot identify any relevance of the LSN for Yucca Mountain to PG&E's damages claims or any "compelling need" that PG&E has for documents about the LSN for use in this litigation. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Document Nos. 381, 382, and 383: These documents, which Mr. Milner discusses in paragraph 32 of his declaration, relate to a briefing for Under Secretary Card regarding the potential design of the repository at Yucca Mountain. Under Secretary Card was provided with recommendations on matters such as how DOE should proceed with the license application for the repository. These documents do not discuss the rate at which DOE would accept nuclear utility SNF. Accordingly, based upon the Court's April 27, 2006 order, we cannot see either the relevance of or PG&E's "compelling need" for these documents. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Document Nos. 387, 388, and 390: These documents, which are discussed in paragraph 29 of the Milner declaration, relate to the Office of Civilian Radioactive Waste Management's initiation of the delivery commitment schedule submission process in 2004. These documents are not relevant to this litigation, given that they relate to DOE's effort to begin SNF acceptance in 2010 at a Federal repository and that they do not affect any activities in the "but for" world. Nevertheless, to the extent that we are required or agree to produce these documents, we have identified an error in our privilege log, which should have identified an attorney-client designation for a small portion of each of the three documents. We would seek to redact that information protected by the attorney-client privilege prior to any production of the documents.

We have been working diligently to respond to your letter dated May 5, 2006. To the extent that we identify any omissions in our discussion above or our other letters sent yesterday and earlier today, we will attempt to identify those omissions and respond accordingly. As we have previously stated, we are more than willing to discuss any remaining disagreements with you, at your convenience.

Very Truly Yours,

Harold D. Lester, Jr.

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch