IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically filed on May 15, 2006

| | |
|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | |
| Plaintiff, | No. 04-074C, into which has been consolidated No. 04-075C |
| v. | |
| UNITED STATES OF AMERICA, | (Judge Hewitt) |
| Defendant. | |

**PG&E'S MOTION TO EXCLUDE GOVERNMENT EXHIBITS**

Pursuant to the Court's February 15, 2005, Scheduling Order, Plaintiff Pacific Gas & Electric Co. ("PG&E") moves to exclude exhibits proffered by the government as set forth in this Motion. A spreadsheet showing objections to particular documents is attached as Exhibit A.

As set forth below, apart from instances where documents were incomplete or did not match the stated Bates range, all of which are marked as such on Exhibit A, PG&E's objections to the government's exhibits can be grouped into a few basic categories, including relevance, authenticity, hearsay, and excludable under Rule 403 as cumulative or creating unnecessary confusion of the issues.

As an initial matter, the government did not separate its exhibits into those it will use and those it may use.[1] A large number of documents appear to be listed for no other purpose than to establish a minor fact that will be set forth in testimony (*i.e.*, the date of a certain meeting, whether a person was present at a meeting, etc.). In these circumstances, introduction of the

[1] Although the Court has directed the government to serve a separated list, these objections were required to be prepared and served prior to receipt of the separated list.

document into evidence is unnecessary and cumulative if the fact is established in testimony (and if the witness fails to remember, then the document can be used to refresh recollection without having it introduced into evidence). Documents in this category are not relevant or should be excluded under Rule 403 because they are unnecessary and cumulative or may create confusion through unnecessary debate over the document.

Another group of the government's exhibits consists of documents dated prior to the execution of the contract between DOE and PG&E (the "Contract") on June 30, 1983, including the entire administrative record relating to the formation of the Contract. (E.g., DX 2 - 2.86, 5 - 69). As set forth herein, these documents are not relevant to contradict or vary the language of the Contract.

Another group of the government's exhibits consists of documents the government relies upon to establish the rate of acceptance of SNF. As set forth herein, these documents are not relevant because the ACR/DCS procedure in the Contract is not binding, and because the very low rate advocated by the government has already been rejected by the Court and is in direct conflict with the language of the Contract.

Another group of the government's exhibits consists of reports and correspondence of industry groups both before and after execution of the Contract. For the time period prior to execution, such documents are not relevant to vary or contradict the language of the Contract. For both time periods, documents relating to the industry's efforts to make more explicit what the Contract already required are not relevant to establish that the Contract required something other than what the parties understood it said.

Finally, the government has listed documents that purport to relate specifically to the amount of damages claimed by PG&E in this case. Many of the documents on the government's list are not relevant to prove or disprove any fact relating to PG&E's damages.

These issues are discussed in more detail below.

## I. RELEVANCE

Under Rule 401, evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 states that "Evidence which is not relevant is not admissible." Many of the exhibits offered by the government are not relevant.

### A. The parol evidence rule renders irrelevant and inadmissible the government's evidence offered to alter or vary the terms of the Contract.

The parties' Contract does not set out a specific rate or schedule for the DOE's acceptance of spent nuclear fuel and high level radioactive waste for PG&E or any of the other utilities. *E.g., Commonwealth Edison Co v. United States,* 56 Fed. Cl. 652, 662 (2003). As a result, the issue to be decided is what rate and schedule were reasonable. *E.g., id.* Many of the government's exhibits are offered in support of various arguments that contend the Contract does not contain an open term with respect to the spent fuel pickup rate and schedule, but rather the Contract imposes or requires some specific rate or schedule. Exhibits offered in support of any such argument are barred by the parol evidence rule. That rule, as a feature of substantive law, operates to exclude the consideration of extrinsic evidence offered to alter or vary the terms of the contract.[2] *See, e.g., Sylvania Elec. Prods., Inc. v. United States*, 458 F.2d 994, 1006 (Ct. Cl.

[2] The government has filed a motion *in limine* to exclude, in part on parol evidence grounds, certain of PG&E's testimony relating Contract "interpretation." The parol evidence rule, however, does not bar that testimony. As noted above in the text and as PG&E explains

1972). ("If [the extrinsic evidence] is inconsistent [with the written agreement], the parol evidence rule would bar it . . .").

B. The government's evidence relating to the rate of acceptance is not probative of the rate of acceptance necessary to perform the contract.

The Contract implements the Nuclear Waste Policy Act ("NWPA"), which requires in 42 U.S.C. § 10222 that:

> Contracts entered into under this Section shall provide that . . . in return for the payment of fees established by this Section, the Secretary, beginning not later than January 31, 1998, will dispose of the high-level radio active waste or spent nuclear fuel involved as provided in this subchapter.

42 U.S.C. § 10222 (a)(5)(b). Thus, by statute, DOE was required to dispose of PG&E's SNF and HLW, commencing by January 31, 1998. In response to this mandate by Congress, DOE and PG&E entered into the Contract, which provides:

---

further in its response filed today to this government motion in limine, the parol evidence rule does not operate to exclude all evidence extrinsic to a contract, but only that evidence that is offered to change or alter the plain terms of the contract. For example, evidence showing the purpose of the contract would not be barred. In *Roedler v. DOE,* 255 F.3d 1347, 1352 (Fed. Cir.), *cert. denied*, 122 S. Ct. 648 (2001) which involved one of the same Standard Contracts involved here, the Federal Circuit instructed: "[f]or determination of contractual and beneficial intent when, as here, the contract implements a statutory enactment, it is appropriate to inquire into the governing statute and its purpose." *Roedler* thus embraces the "fundamental precept of common law that the intention of the parties to a contract control its interpretation." *Firestone Tire & Rubber Co. v. United States*, 444 F.2d 547, 551 (Ct. Cl. 1971). "If the principal purpose of the parties is ascertainable it is given great weight." *Alvin Ltd. v. United States Postal Serv.*, 816 F.2d 1562, 1565 (Fed. Cir. 1987) (quoting Restatement (Second) of Contracts § 202(1)). Moreover, the parol evidence rule is not a bar to the use of extrinsic evidence "in aid of the interpretation of ambiguous or uncertain clauses in written agreements." *See, e.g., Sylvania,* 458 F.2d at 1005 (Ct. Cl. 1972). Indeed, "[b]efore arriving at a legal reading of a contract provision, a court *must* consider the context and intentions of the parties." *Metric Constructors v. NASA*, 169 F.3d 749, 752 (Fed. Cir. 1999) (emphasis added). The government's exhibits, conversely are barred by the parol evidence rule because the government is offering those exhibits in an attempt to change the terms of the Contracts from being open with respect to rate and schedule to prescribing (under the government's arguments) some particular rate or schedule – or, alternatively, no schedule at all.

> The services to be provided by DOE under this contract shall begin … not later than January 31, 1998, and shall continue until such time as all SNF and/or HLW from the civilian nuclear reactors specified in Exhibit A, annexed hereto and made a part hereof, have been disposed of.

Contract Article II (emphasis added). Appendix A to the Contract listed three reactors (two at Diablo Canyon and one at Humboldt Bay), all of which were owned by PG&E. Thus, the Contract obligated DOE to begin accepting PG&E's SNF in 1998 and to continue accepting PG&E's SNF until all of it was gone.

The government contends that, if DOE had performed as required, it would have begun accepting SNF from PG&E in 1998, it would have accepted all of the SNF from the Humboldt Bay Power Plant by 2001, but it would not have begun accepting SNF from the Diablo Canyon until 2011 after a 10-year suspension of its obligation to "continue" acceptance and disposal. Government Memorandum of Fact and Law ("Govt. Mem.") at 5.

As this Court has previously ruled, a contention by the government that it was only required to "begin" acceptance and not to "continue" acceptance would render the contract illusory because it would require PG&E to pay hundreds of millions of dollars to the government in exchange for performance to be rendered at the whim of the government. *Comm. Edison,* 56 Fed. Cl. at 665. This Court concluded in *Commonwealth Edison*, "[the government's] argument that it is not obligated to continue the acceptance of SNF at any minimum rate is in direct conflict with the plain language of the Standard Contract." *Id.* at 664.

This Court has similarly ruled that the government's obligations were not conditioned upon the existence of an operational permanent repository; that DCS submissions and Annual Capacity Reports did not create any binding agreement on the rate required under the Contract,[3]

[3] As the government notes on page 21 of its Memorandum of Contentions of Fact and Law, the acceptance rate set out in the 1991 APR "was created with the knowledge that no permanent repository would be available by January 31, 1998." For this additional reason, the

and that the acceptance rate was not affected by the 1997 Amendments to the NWPA. *Id.* at 664-666. In *Commonwealth Edison*, this Court explained that:

> The 10,000 MTU acceptance rate, upon which the 900 MTU rate was based, applied if DOE built a "monitored retrievable storage facilit[y]" (MRS), a disposal "option" created by the 1997 Amendments to supplement any permanent repositories to be built…. The court does not agree with defendant that it is entitled to limit its damages based on an optional disposal method of which it did not avail itself…. [T]he 1987 Amendments did not apply this limitation to DOE's obligation to dispose of SNF under the Standard Contract beginning January 31, 1998.

*Id.*, at 666. As result, evidence on these issues is not relevant to establish the reasonable rate.

The government further contends that DOE refused to make explicit during development of the Contract terms a requirement that its acceptance rate exceed the rate of discharge of SNF from the various reactors. Based upon documents that would be excluded from evidence by the parol evidence rule, the government argues as follows in its pre-trial memorandum:

> DOE did not adopt the suggestion of [the Edison Electric Institute] and many of the utilities to incorporate into the contract a requirement that DOE accept SNF at a rate equal to the annual generation rate plus some amount to reduce the accumulated backlog. The government will show at trial that DOE determined it could not obligate itself to satisfy such a commitment…. Accordingly, DOE specifically declined to create any commitment to accept SNF beginning in 1998 at a specific minimum rate or based on any mandatory minimum criteria.

Govt. Mem. at 14-15. At best, the government's evidence, if considered, shows only that the DOE decided not to spell out what the Contract already required – and the parties already understood it required.[4]

---

rate set out in the 1991 APR has no relevance to what the parties contemplated when the executed the Contract in 1983.

[4] Although the Contract does not contain any specific rate of acceptance, the Contract imposes a specific performance obligation on DOE, and the Contract did promise to PG&E and other utilities a specific result – disposal of *all* SNF and HLW. Contract, Article II. To achieve that goal and provide that result, DOE's rate of acceptance *necessarily* had to *exceed* the rate at which SNF was being generated and discharged from the various reactors. Otherwise,

But even assuming that DOE did not agree with the utilities' interpretation in 1983, DOE was obligated to do more than just leave that term of the contract open. DOE was required to expressly contradict it during formation of the contract. "A party who willingly and without protest enters into a contract with knowledge of the other party's interpretation of it is bound by such interpretation and cannot later claim that it thought something else was meant." *Perry & Wallis, Inc. v. United States*, 427 F.2d 722, 725 (Ct. Cl. 1970); *see also Jet Forwarding, Inc. v. United States*, 437 F.2d 987, 989 (Ct. Cl. 1971) ("a party knowing the meaning his opposite number gives to an agreement about to be consummated is bound by that understanding unless he speaks up"); *Cresswell v. United States*, 173 F. Supp. 805, 811 (Ct. Cl. 1959) (same). *See Restatement (Second) of Contracts* § 201(2)(a)-(b) & Rep't Notes (embracing the *Perry & Wallis* rule). Because DOE is bound by the utilities' interpretation of the contract's requirements for the minimum rate, DOE is precluding from now offering into evidence to contradict that rate.

Further, the government seeks to introduce evidence that, for many years after the Standard Contracts were executed by utilities, the nuclear industry continued to be concerned about DOE's refusal to concede even the minimum performance required of it. Such evidence is not relevant to show that the Contract required or even contemplated a rate of acceptance less than the rate of discharge.

C. Positions and statements of other utilities are not relevant to establish that PG&E has agreed to any fact.

Statements of other utilities of positions taken with regard to the Standard Contract are not relevant to establish that PG&E has taken any particular position on any issue. Moreover,

---

inventories of SNF would continually increase, and it would be mathematically impossible for DOE ever to dispose of all of it until all of the reactors had long since been shut down (and assuming no more were ever built). Such a result would have complied with neither the Congressional mandate nor the intent and purpose of the Contract.

each of the utilities may have different business needs that result in different reactions to DOE's excuses and breach of contract. The fact that other utilities may have business reasons for accepting less than full performance by DOE does not mean that PG&E has done or should do so.[5] Documents relating to other utilities, and positions taken by other utilities are not relevant to prove or establish that PG&E has agreed to any fact . E.g., DX 64 (TVA), DX 81 (Yankee Atomic).

## II. HEARSAY

Rule 801(c) provides that "Hearsay" is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 802 provides that:

> Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress.

Fed. R. Evid. 802. Under Rule 805, "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Fed. R. Evid. 805.

Each of the documents offered by the government contains hearsay, and is inadmissible unless the government shows that statements contained in the document are (1) not hearsay under Fed. R. Evid. 801(d) or (2) come within one or more of the exceptions to the rule against hearsay evidence contained in Fed. R. Evid. 803 and 804.

---

[5] The government asserts that "Tennessee Valley Authority accepted the rate set forth in the 1991 APR and argued that the rate in 2008 would ramp-up immediately from 900 MTU to 3,000 MTU." Govt. Mem. of Contentions of Fact and Law at 15. But as the government well knows, TVA accepted that rate solely for purposes of a motion for summary judgment and certain other purposes in this litigation; TVA specifically did not accept that rate as a proper or reasonable rate for DOE to have followed in the non-breach world.

PG&E objects on the basis of hearsay with regard to each document so marked on Exhibit A.

## III. AUTHENTICITY

A number of the government's exhibits appear to have come from entities other than PG&E, from proceedings in which PG&E was not involved, or from other sources from which PG&E cannot authenticate the documents. PG&E objects to each of the exhibits marked as such on Exhibit A.

## IV. CUMULATIVE AND UNNECESSARY EVIDENCE TO BE EXCLUDED UNDER RULE 403

Rule 403 provides for exclusion of relevant evidence under certain circumstances, as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. Many of the government's proffered exhibits, if relevant, should nevertheless be excluded under Rule 403.

For example, the government has proffered (as 87 separate exhibits) what purports to be the entire administrative record of the rulemaking proceeding relating to the Standard Contract. DX 2-2.86. If any of it is relevant, then only those relevant portions of it are necessary.

Similarly, the government has listed a large number of "Dry Cask Storage Weekly Updates" (DX 3 - 3.43). While the relevance of such documents is doubtful, any relevance is outweighed by the minimal probative value that such documents have in this proceeding.

PG&E objects under Rule 403 to each document so marked on Exhibit A.

V. CONCLUSION

The foregoing objections must be sustained and the exhibits objected to must be excluded from evidence.

Dated: May 15, 2006

Respectfully submitted,

s/ Jerry Stock

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Ave, NW Ste 500
Washington, D.C. 20006
(202) 331-3173
(202) 261-4751 fax
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:
ROBERT L. SHAPIRO
Greenberg Traurig, LLP