# Attachment - 1

*PG&E v. USA*

# Curriculum Vitae
# John McGrath

## February 06, 2006

PXE011 0001

Contract Solutions LLC

Attachment 1

# CURRICULUM VITAE

## John R. McGrath

John is a founding partner of Contract Solutions LLC and a former member of The Barrington Consulting Group. He has extensive experience providing claims analysis, schedule analysis, and litigation support services for large government contracts and construction projects. During the past 14 years, John has provided expert consulting services for both owners and contractors in the fields of construction, aerospace, and defense. Clients include the Department of Justice, the Department of the Navy, the U.S. Army, the State of California, and several major construction and defense contractors and subcontractors. John has performed various analyses for schedule delay, change order evaluation, productivity, project management, claims development, and defense of claims.

Prior to joining Barrington, John worked as an operations engineer/specialist with the McDonnell Douglas Corporation (now Boeing). His duties included the development of work plans, schedules, manpower plans, and budgets for the utilization and operations directorate of the International Space Station program. John was also responsible for the evaluation of contract change requests and engineering change proposals pertaining to contract modifications. He planned the production of and developed contractually deliverable data documents and supervised their transmittal to the government. Additionally, John provided direct engineering support of the design, development, test and evaluation of both hardware and software for this large and complex program.

During his career, John has utilized several software and scheduling tools to perform critical path, schedule delay, and financial and budgetary analyses for many aspects of government contract and subcontract work.

## Education & Training

John holds a Bachelor of Science degree in Aerospace Engineering and a Master of Business Administration degree from the University of Colorado at Boulder. His areas of engineering study included flight and structural mechanics, fluid dynamics, propulsion, orbital mechanics, aerodynamics, and aircraft design. His areas of cost study include cost accounting, finance, information systems, and production management. He has completed several continuing education programs regarding schedule delay claims and damages calculations, and has provided expert witness testimony in court and for various Trial Advocacy programs. John is a member of the American Institute of Aeronautics and Astronautics and Project Management Institute. He currently holds an active Secret security clearance classification with special access clearance for current engagements.

## Testimony Experience

In the past five years, John has provided deposition and trial testimony in the United States Court of Federal Claims for McDonnell Douglas Corporation and General Dynamics Corporation v. United States, CFC No. 91-1204C (2001), GASA Inc. v. United States, CFC No. 01-642 (2003), and Sacramento Municipal Utility District v. United States, CFC No. 01-642 (2005).

PXE011 0002

Contract Solutions LLC

Attachment 1

**Work History**

March 2000 - Present | Contract Solutions LLC
Feb 1992 - Mar 2000 | Barrington Consulting Group
Sep 1988 - Jan 1992 | McDonnell Douglas Corporation (Boeing)

**Representative Professional Experience**

**A-12 Aircraft Program, Washington, DC**
*John assisted the U.S. Government in a default termination dispute with two major defense contractors involving the development of the U.S. Navy A-12 attack aircraft. He performed a detailed schedule analysis of all structural, systems, avionics, and propulsion components of the full-scale development* program. In this regard, John analyzed project schedules and documentation, identified project-controlling delays, and assessed the impact of schedule issues on contract performance. He developed an expert report, organized document and demonstrative trial exhibits, and provided expert testimony at deposition and trial.

**DOE Decontamination, Decommissioning and Recycle Project, Oak Ridge, TN**
John performed a schedule and delay analysis for the Department of Energy's decommissioning of the three-building East Tennessee Technology Park gaseous diffusion project in Oak Ridge, TN. John analyzed schedule productivity for the dismantlement, removal, and decontamination of uranium enrichment equipment by the contractor.

**Construction of Dry Storage System for Spent Nuclear Fuel, Sacramento, CA**
*John performed a schedule and delay analysis for the Department of Energy relating to a utility's* construction of a Dual-Purpose (Storage and Transport) Dry Cask system for the storage of Spent Nuclear Fuel produced from a shut-down pressurized water reactor. He performed a critical path analysis of the design, development, construction and implementation of this ten-year project. John prepared an expert report and provided expert testimony at deposition and trial.

**U.S. Navy FLIR Pod for F/A-18 Aircraft**
John analyzed schedule and cost impacts for a second source production of a Forward Looking Infrared (FLIR) Pod for the F/A-18 aircraft. The Claim submitted on this project was in excess of $100 Million. He performed various engineering and technical analyses, which included an evaluation of the contractor's delay claim and manufacturing and assembly schedules. John also prepared an expert report summarizing the results of the entire schedule analysis of the program. In addition, he provided supervision and direction of technical experts.

***F-111 Avionics Test Systems, Baltimore, MD***
John assisted a government contractor in the analysis of delays experienced on an Air Force contract involving the development of an advanced automatic system to test F-111 aircraft avionics units. John worked extensively with the program engineers and managers to analyze and quantify delays impacting hardware development. He also developed as-planned and as-built schedules and prepared documentation packages and exhibits to be used at trial to demonstrate the results of this analysis.

**Army Multi-Purpose Range Complex (MPRC), Al Udayri, Kuwait**
John assisted the U.S. Government with a $7 Million claim against the US Army regarding the design and construction of the Kuwaiti Land Forces M1A2 Abrams tank and Desert Warrior Infantry Fighting

Contract Solutions LLC

Attachment 1

Vehicle training range. John made several presentations during a four-day settlement conference regarding schedule/delay, technical, and damages analyses resulting in a favorable settlement for the US Army.

**Israeli Defense Forces (IDF) Logistics and Storage Base, El Ad, Israel**
John recently developed a request for equitable adjustment for a large government contractor regarding the construction of a $130 Million military facility for the US Army/IDF in Israel. The facility includes storage and maintenance buildings for military equipment in a climate/humidity controlled environment.

**US Embassy Construction, Luanda, Angola**
This project involves the construction of a $35 Million re-development of the U.S. Embassy compound, including a five-story chancery building. John is working with the contractor to assess claims for equitable adjustment for delay against the owner and subcontractors.

**Renovation of Naval Training Center Hospital, Great Lakes, IL**
John assisted the U.S. Navy in defense of a claim due to a claim for the right to finish early but-for alleged delays, disruptions, and inefficiencies experienced on the project by the joint venture prime contractors and subcontractors. This project involved myriad historical renovation issues related to lead paint abatement, window refurbishment/replacement, and a variety of masonry work including hand-made terra cotta materials.

**Immigration and Naturalization Service (INS) Processing Facility, El Paso TX**
This project involved the construction of a $4 Million, five-building facility near the US/Mexico border, administered by the Corps of Engineers. John worked with the parties involved to facilitate settlement by working through issues of delay, constructive changes, modifications, defective specifications, and differing site conditions.

**Replacement of Military Family Housing, Eielson AFB, AK**
John assisted the U.S. Government with a $6 million claim involving delay and disruption related to alleged design defects regarding underground hydronic piping and differing site conditions for the construction of 72 new housing units for the US Air Force.

**Naval and Marine Corps Reserve Training Centers, Miami, FL and Johnstown, PA**
John has assisted the U.S. Government with two separate cases involving delay, disruption, extra work, and differing site conditions on projects involving construction and build-out of Navy and Marine training centers and associated vehicle maintenance and hangar facilities.

**Dredging and Material Placement Operation, Monongahela River, Pittsburgh, PA**
John has provided case-in-chief schedule analysis and a rebuttal analysis for the U.S. Government concerning a $3.5 million claim involving delay and disruption related to alleged winter productivity impacts during a dredging contract on the Monongahela River for the U.S. Army Corps of Engineers.

**Numerous CALTRANS Highway Projects, California**
John assisted the owner in several project delay and cost overrun disputes involving highway and bridge expansion/reconstruction projects. He was responsible for analyzing and evaluating contractor claims and expert reports, developing detailed as-planned and as-built schedules, and resolving issues of delay and cost impacting the work performed on the projects.

PXE011 0004

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---o0o---

PACIFIC GAS & ELECTRIC COMPANY,)
)
Plaintiff, )
) Case No.:
) 04-0074,
) Consolidated
vs. ) into 04-0075C
)
THE UNITED STATES, )
)
Defendant. )
______________________________)

DEPOSITION OF LUTHER JEARL STRICKLAND, JR., taken on behalf of Defendant at 77 Beale Street, San Francisco, California, commencing at 9:06 a.m., Thursday, August 18, 2005, before Linda Vaccarezza, Certified Shorthand Reporter, CSR No. 10201.



APPEARANCES:

Plaintiff
Greenberg Traurig, LLP
BY: MR. JERRY STOUCK, ESQUIRE
8000 Connecticut Avenue, NW, Suite 500
Washington, D.C. 20006
(202) 331-3173

For Defendant
U.S. Department of Justice Civil Division
BY: MR. JOHN C. EKMAN, ESQUIRE
BY: MS. SHARON A. SNYDER, ESQUIRE
1100 I Street, NW
Washington, D.C. 20530
(202) 307-0277



INDEX


| | | PAGE |
|---|---|---|
| EXAMINATION BY | | |
| BY MR. EKMAN | | 4 |


EXHIBITS


| Defendant | | |
|---|---|---|
| 1 | Study of Spent Fuel Storage Options at Diablo Canyon | 62 |
| 2 | Diablo Canyon Power Plant Independent Spent Fuel Storage Installation | 68 |
| 3 | DCPP ISFSI Damages Prior to Expert Analysis/Initial Disclosures April 22, 2005 | 68 |
| 4 | Temporary Cask Pit Rack - Estimated Project Costs | 119 |
| 5 | August 2, 2001, Meeting to Wakeup Humboldt ISFSI Project | 132 |
| 6 | HBPP ISFSI Kickoff Meeting, November 8, 2001 | 136 |
| 7 | One-page Document (Bates PDCP0004733) | 138 |
| 8 | E-mail dated December 18, 2001 | 140 |
| 9 | 9/04/02 HBIP Staffing Plans | 141 |
| 10 | Memorandum to Womack from Moulia | 143 |




EXHIBITS: CONT'D


| | | |
|---|---|---|
| 11 | Document to NPG ISFSI from Strickland dated October 2, 2000 | 153 |
| 12 | Document to NPG ISFSI from Strickland dated January 7, 2001 | 161 |
| 13 | Document to NPG ISFSI from Strickland dated May 29, 2001 | 164 |
| 14 | Document to NPG ISFSI from Strickland (Bates PDCP0026672-73) | 167 |
| 15 | Used Fuel Storage Project | 170 |
| 16 | Diablo Canyon Power Plant Used Fuel Storage Project dated June 4, 2003 | 174 |
| 17 | Diablo Canyon Power Plant Used Fuel Storage Project dated February 26, 2004 | 176 |
| 18 | Diablo Canyon Power Plant Used Fuel Storage Project (Bates PDCP0016083-91) | 184 |
| 19 | Spent Fuel Management Options Analysis | 186 |
| 20 | Situation at Diablo Canyon | 186 |
| 21 | Memorandum from Nuclear Regulatory Commission dated May 19, 2000 | 187 |
| 22 | Memorandum from Kapus to Witt | 190 |
| 23 | E-mail dated March 14, 2002 | 194 |
| 24 | E-mail dated December 20, 2001 | 202 |
| 25 | Memorandum from Kapus to Womack | 204 |
| 26 | E-mail (Bates PDCP0032261) | 212 |
| 27 | Letter dated July 17, 2002, from Strickland to Singh | 214 |


--o0o--

A Rob Curb is the current director of special projects.
Q And what is his role on the management team?
A His role to --
MR. STOUCK: Objection to form. It's vague. But please answer.
THE WITNESS: His role today is to provide guidance through the construction and initial operation of the storage facility. He's my direct boss.
BY MR. EKMAN:
Q So you report to him?
A I report to him.
Q When you say, "provide guidance," what do you mean when you say, "provide guidance"?
A I think a better way to characterize that is that I use him to remove hurdles, obstacles that are in the way of actually getting work completed in a timely manner within the plant proper within the organization of the plan.
Q So when you say, "hurdles," you're talking about organizational --
A That's correct.
Q Pacific Gas & Electric hurdles?

Page 29

A That's correct.
Q Can you give me an example of a Pacific Gas & Electric hurdle that he would help you remove?
A Allocation of resources.
Q So you need more people, he's the guy to go to?
A He's the guy to go to. That's correct. Or if I need the right person.
Q In other words, you can identify "I need Mr. Smith. Please assign him to my project," and he's the guy who could get that done?
A That's correct. And he has approval authority such as for letting this contract for construction, then he's part of the chain that has to review and approve and recommend up the ladder that it be funded.
Q Are you involved in that chain?
A Yes, I am.
Q Where are you in the chain of approval?
A I have the approval right after procurement and right before the director of special projects.
Q And is there anyone beyond the director of special projects who needs to approve

Page 30

contracts?
MR. STOUCK: Objection to form. Vague and over broad. Answer, please.
THE WITNESS: It depends on the amount of the contract. So for a contract such as construction, that if it's over $10 million, then it has to be approved by, first, the vice president, and second, the senior vice president.
Q If it's under ten million?
A If it's under ten million, then the vice president can approve it.
Q And is there a number below that that the vice president can be taken out?
A Yes. If it's under a million, then the director can approve it.
(Telephonic interruption)
(Pause in proceedings.)
BY MR. EKMAN:
Q Before we continue, I should have asked what's your -- what's your educational background?
A I have a bachelors in civil engineering. Extensive graduate work in civil structural engineering. I have a masters in business administration. And that's about it.

Page 31

Q When did you get your BA in civil engineering?
A 1979.
Q From where?
A From California State University, Chico.
Q Where did you do your graduate work in civil engineering?
A U.C. Berkeley.
Q You do not have a graduate degree, however?
A I do not.
Q Where did you do your MA -- where did you get your MA in business administration?
A My MBA was at Golden Gate University here in San Francisco.
Q When did you get that degree?
A 1984.
Q Are you a licensed -- do you have any professional licenses?
A Yes, I do. I'm a licensed civil engineer.
Q And have you been a licensed civil engineer throughout your employment at Pacific Gas & Electric?
A Since 1981.

Page 32

CERTIFICATE OF FILING

I hereby certify that on this 16th day of May, 2006, a copy of foregoing "DEFENDANT'S OPPOSITION TO PACIFIC GAS & ELECTRIC'S MOTION TO EXCLUDE TESTIMONY FROM JOHN R. MCGRATH" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ John A. Ekman