No. 04-0074C
into which has been consolidated
No. 04-0075C
Judge Hewitt

(Filed Electronically, May 19, 2006)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

PG&E'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE FROM TRIAL DOCUMENTS PREPARED BY GOVERNMENT CONTRACTORS

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 phone
(202) 261-4751 fax
*Counsel for Plaintiff*
Pacific Gas & Electric Company

Of Counsel:
ROBERT L. SHAPIRO
Greenberg Traurig, LLP

TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1

I. THE DOCUMENTS ARE PUBLIC RECORDS ADMISSIBLE UNDER FRE 803(8). ...... 4

A. DOE Fulfills Its Mission Through Contractors. ......................................................... 4

B. The Documents Are DOE Public Records Setting Forth The Activities Of The Agency The Pursuant To FRE 803(8)(A) And Are Therefore Admissible. ................. 8

II. BECAUSE DOE AUTHORIZED THE CONTRACTORS TO SPEAK CONCERNING THE CONTRACT AND THE SPENT NUCLEAR FUEL PROGRAM, THE STATEMENTS IN THE DOCUMENTS ARE ADMISSIBLE PURSUANT TO FED. R. EVID. 801(D)(2)(C). ............................................................ 10

III. THE DOCUMENTS CAN ALSO BE DEEMED ADMISSIBLE AS STATEMENTS OF AGENTS OR SERVANTS OF DOE PURSUANT TO FRE. 801(D)(2)(D)................ 14

IV. THE DOCUMENTS ARE NOT HEARSAY WHERE THE GOVERNMENT HAS "MANIFESTED AN ADOPTION OR BELIEF" IN THEIR TRUTH PURSUANT TO FRE 801(D)(2)(B)..................................................................................... 16

V. THE DOCUMENTS FALL WITHIN OTHER EXCEPTIONS TO THE RULE AGAINST HEARSAY. ................................................................................. 16

A. The Documents Are "Business Records" Admissible Under FRE 803(6). ................ 16

B. Certain Documents Are Ancient And Therefore Admissible Pursuant To FRE 803(16). ........................................................................................... 16

VI. THE GOVERNMENT'S OBJECTIONS THAT SOME OF THE DOCUMENTS ARE DRAFTS GOES TO WEIGHT AND NOT ADMISSIBILITY. ........................................ 17

VII. A NUMBER OF DOCUMENTS OBJECTED TO BY THE GOVERNMENT AS CONTRACTOR DOCUMENTS ARE NOT CONTRACTOR DOCUMENTS. ............... 17

VIII. CONCLUSION. ..................................................................................................... 18

APPENDIX INDEX


| | |
|---|---|
| Deposition Transcript Excerpt - Thomas Pollog, 5/22/2005 | 1-3 |
| Deposition Transcript Excerpt - Darrell Newman, 4/17/2002 | 4-6 |
| Deposition Transcript Excerpt - David Zabransky, 4/18/2002 | 7-9 |
| DOE News Press Release 9/16/1998 | 10 |
| Pacific Northwest National Laboratory, About the Lab | 11 |
| Yankee Atomic v. United State Trial Transcript Excerpt | 12-13 |
| PG&E Exhibit No. 131 (excerpt) | 14-15 |
| PG&E Exhibit No. 135 (excerpt) | 16-17 |
| PG&E Exhibit No. 103 (excerpt) | 18 |
| PG&E Exhibit No. 105 (excerpt) | 19-20 |
| PG&E Exhibit No. 115 (excerpt) | 21 |
| PG&E Exhibit No. 124 (excerpt) | 22 |
| PG&E Exhibit No. 138 (excerpt) | 23 |
| PG&E Exhibit No. 151 (excerpt) | 24-25 |
| PG&E Exhibit No. 172 (excerpt) | 26 |
| PG&E Exhibit No. 280 (excerpt) | 27 |
| PG&E Exhibit No. 468 (excerpt) | 28 |
| PG&E Exhibit No. 486 (excerpt) | 29 |
| PG&E Exhibit No. 524 (excerpt) | 30-31 |
| PG&E Exhibit No. 181 (excerpt) | 32 |
| Deposition Transcript Excerpt - Nancy Slater, 4/21/1999 | 33-34 |
| PG&E Exhibit No. 103 (excerpt) | 35-36 |
| Deposition Transcript Excerpt - Nancy Slater, 4/21/1999 | 37-38 |

# TABLE OF AUTHORITIES

Cases

*Brubaker Amusement Co. v. United States*, 304 F.3d 1349 (Fed. Cir. 2002) .............................. 15

*Chemtool, Inc. v. Lubrication Technologies, Inc.*, 148 F. 3d 742 (7th Cir. 1998)....................... 14

*Columbia First Bank v. United States*, 58 Fed. Cl. 333 (2003) .................................................. 17

*Paul v. Federal Mine Safety and Health Review Comm'n*, 812 F. 2d 717 (D.C. Cir. 1987)........ 14

*Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292 (9th Cir. 1983) ......................... 12

*Rotec Industries, Inc. v. Mitsubishi Corp.*, 215 F.3d 1246 (Fed. Cir. 2000) ............................... 14

*United States v. Frazier*, 53 F.3d 1105 (10th Cir. 1995) .......................................................... 16

*Westfed Holdings, Inc. v United States*, 55 Fed. Cl. 544 (2003) .......................................... 11, 17

*Westinghouse Electric Corporation v. United States*, 1997 WL 108204 (Fed. Cl. 1997)............. 5

*Yankee Atomic Electric Company v. United States*, 2004 WL 2450874 (Fed. Cl. 2004)...... passim

Statutes

42 U.S.C.10222(d) ........................................................................................................... 4

48 C.F.R. § 17.604 ........................................................................................................... 6

48 C.F.R. §17.601 ........................................................................................................... 6

Rules

Fed. R. Evid 801(d)(2)(B)................................................................................................. 3

Fed. R. Evid. 801(d)(2)(C)..................................................................... 3, 4, 10, 11, 13, 14

Fed. R. Evid. 801(d)(2)(D) ............................................................................... 11, 14, 16, 17

Fed. R. Evid. 803(A)(8) ..........................................................................................12

Fed. R. Evid. 803(6)......................................................................................................... 17

Fed. R. Evid. 803(16)................................................................................................. 17, 18

TABLES OF AUTHORITIES cont.

Other

Pub.L. 108-136, Sec. 3112, November 24, 2003 ........................................................................ 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically filed on May 19, 2006

| | |
|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | |
| Plaintiff, | No. 04-074C<br>into which has been consolidated<br>No. 04-075C |
| v. | |
| UNITED STATES OF AMERICA, | (Judge Hewitt) |
| Defendant. | |

PG&E'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE FROM TRIAL DOCUMENTS PREPARED BY GOVERNMENT CONTRACTORS

Pacific Gas & Electric Company ("PG&E") responds as follows to the government's Motion In Limine To Exclude From Trial Documents Prepared By Government Contractors ("Govt. Motion").[1] For the reasons stated herein, the government's motion must be denied.

INTRODUCTION

As an initial matter, the government fails to advise the Court that in *Yankee Atomic Elec. Co. v. United States*, No. 98-126C, most of PG&E's exhibits at issue here were also designated by the plaintiffs there as admissible evidence, and Judge Merow held that such contractor documents are admissible under Federal Rule of Evidence ("FRE") 803(8)(A) as "records, reports, [etc.] of public offices or agencies setting forth the activities of the office or agency." *Yankee Atomic Electric Company v. United States*, 2004 WL 2450874 (Fed. Cl.

[1] The government's motion also included a separate "Protective Motion To Exclude All Documents Regarding the Standard Contract Upon Plaintiff's Exhibit List," which is not covered by the Court's May 4 Order requesting a prompt response to the government's contractor document motion and to which PG&E, therefore, will respond separately.

2004) ("*Yankee Atomic*"). The government does mention that opinion, but only in a back-handed way on page 13 of its Motion. *Of course* the government "respectfully disagrees" with that decision, *see* Gov't Mot. at 12, which not only was a comprehensive and correct treatment of Rule 803(8)(A), but also specifically refuted many of the exact same arguments restated by the government here, *see, e.g., Yankee Atomic* at *5-6, and specifically distinguished many of the exact same cases the government again attempts to rely upon here, *compare, e.g.*, Gov't Mot. (citing and relying upon four cases – *Blue Water Env'l v . United States*, 60 Fed. Cl. 48 (2000), *Marsee v. United States Tobacco Co.*, 866 F.2d 319 (10th Cir. 1989), *Smith v. Isuzu Motors Ltd.*, 137 F.3d 859 (5th Cir. 1998) and *Zeus Enterprises, Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238 (4th Cir. 1999)) with *Yankee Atomic* at pp. 9-11 (distinguishing these cases). Although the *Yankee Atomic* ruling is not binding here in a technical sense, even apart from the imposition on judicial resources represented by the government's blatant disregard of Judge Merow's ruling – which the Court should not countenance – it would be completely untenable to have the very same documents accepted as evidence in one spent fuel case and rejected in others, especially considering that the issues on which these contractor documents are relevant (generally, the so-called rate and schedule issues) are largely the same in all of the 50-plus spent fuel cases pending in this Court.

In the same vein, the government's lead argument, that DOE's contractors do not create departmental policy for DOE and that their statements "do not represent DOE positions," *see* Gov't Mot. at 2-5, and are "not the agency's adopted positions, " *id.* at 15, has no bearing on whether such statements are admissible under applicable Federal Rules of Evidence ("FRE"), including FRE 803(8)(A), as Judge Merow ruled, and FRE 801(d)(2)(C), which Judge Merow found it unnecessary to reach. *See Yankee Atomic at* *11 (allowing as

admissions statements "by a person authorized by the party to make a statement concerning the subject matter") In those instances where the government has actually adopted positions developed (at least in part) by its contractors, such as the 3,000 MTU per year acceptance or "throughput" rate, PG&E has an *additional* ground for the admissibility of these documents, under FRE 801(d)(2)(B), which allows into evidence statements of which the party "has manifested an adoption or belief in [their] truth." Under the applicable evidence rules addressed below, however, DOE's official adoption of contractor positions is irrelevant.[2]

The government quotes from several depositions seeking to prove its point, *see* Gov't Mot. at 2-5, but DOE adoption of contractor positions is simply not a requirement for admissibility into evidence of statements made by the contractors. Even ordinary employees of business corporations do not make policy for their employer, yet documents prepared by those same employees can be admitted into evidence in suits against their employer. In such cases, the pertinent questions include whether the documents qualify as business records and whether the documents contained statements that have been authorized by the employer or concern a matter within the scope of the employee's employment. The same kind of inquiry is involved here. Thus, as set forth below, the contractor documents are admissible under a number of different theories, including most importantly the facts that the documents are public records under FRE 803(8)(A) and that the statements made by the contractors were authorized by DOE under FRE 801(d)(2)(C). And of course, PNNL (Pacific Northwest

---

[2] Nor is it even remotely relevant whether a government contractor can be held substantively liable as an "agency" of the government. *See Yankee Atomic* at *6 ("Questions of whether a contractor is a federal agency for under the Tucker Act or the Federal Tort Claims Act are not the same as the court's evidentiary inquiry here."). This renders inapposite *United States v. Orleans*, 425 U.S. 807 (1976), *Blue Water Environmental, Inc. v. United States*, 60 Fed. Cl. 48 (2004), and *Lockheed Martin Corp. v. United States*, 50 Fed. Cl. 550 (2001), relied upon at Gov't Mot. at 7-8.

National Laboratory) and other National Laboratories, although sometimes run by a "management and operating" ("M&O") contractor, are part of DOE itself, a fact the government does not and cannot deny. *See id.* at 13 (conceding that "the laboratories themselves are Federal facilities"); *see Yankee Atomic at* *2-4 (further documenting that these laboratories are part of the government).

I. THE DOCUMENTS ARE PUBLIC RECORDS ADMISSIBLE UNDER FRE 803(8).

A. DOE Fulfills Its Mission Through Contractors.

As a matter of *fact,* the contractor documents involved here are DOE documents. As Judge Merow explained in *Yankee Atomic,* "[t]o a significant, if not exclusive extent, DOE's activities, duties and responsibilities under the NWPA, have been and are conducted through its national laboratories and management and operation ("M&O") contractors." *Yankee Atomic* at *3. Indeed, the Contract between PG&E and DOE expressly provides that "DOE may fulfill any of its obligations, or take any action, under this contract either directly or *through contractors*." Contract, Article IV.B.3 (emphasis added). Consistent with the Contract, and consistent with the authority granted to DOE in the United States Code, *e.g.*, 42 U.S.C.10222(d) (authorizing expenditure of funds for non-generic research, development and demonstration activities under the NWPA), DOE engaged a number of contractors to provide services to it in connection with the Contract and the management of its spent nuclear fuel program in general.

These contractors included a number of entities that were engaged under M&O contracts, which have been described as follows:

> DOE normally uses M & O contractors to manage and operate its Government-owned facilities. The DOE M & O contract is unique. Unlike a typical Government contract through which the Government obtains products and services to assist it in carrying out its mission, *DOE uses the M & O contract to conduct its mission.*

*Westinghouse Electric Corporation v. United States*, 1997 WL 108204, at *2 (Fed. Cl. 1997) (emphasis added). In *Yankee Atomic*, Judge Merow similarly stated:

> These contractors were retained under unique circumstances to perform DOE's function, provided critical and essential data and input to DOE, and operate and manage the national laboratories for and on behalf of DOE. *In a very real sense, these contactors performed DOE's statutory mission*, or at a minimum provided the technical input to perform the same.

*Id. Yankee Atomic,* 2004 WL 2450874 at *11.[3] Under the Federal Acquisition Regulation ("FAR") an M&O contractor is defined as acting on behalf of the government:

> Management and operating contract means an agreement under which the Government contracts for the operation, maintenance, or support, *on its behalf*, of a Government-owned or -controlled research, development, special production, or testing establishment, wholly or principally devoted to one or more major programs of the contracting Federal agency.

48 C.F.R. §17.601 (emphasis added). The FAR further provides that:

> A management and operating contract is characterized both by its purpose (see 17.601) and by the special relationship it creates between Government and contractor. The following criteria can generally be applied in identifying management and operating contracts:…
>
> (b) Because of the nature of the work, or because it is to be performed in Government facilities, *the Government must maintain a special, close relationship with the contractor and the contractor's personnel* in various important areas (e.g., safety, security, cost control, site conditions).

[3] "M & O" contractors involved in this case include Battelle Memorial Institute (Pacific Northwest National Laboratories), Martin Marietta Energy Systems, Inc (Oak Ridge National Laboratory), Science Applications International Corporation and TRW Environmental Systems, Inc. (Civilian Radioactive Waste Management System), and Lockheed Martin Idaho Technologies, Inc. (Idaho National Engineering and Environmental Laboratory). *See* App. at 1-3 (Pollog 5/22/02 tr. at 594:25 – 595:6 (Martin Marietta Energy Systems, Inc.)); App. at 4-6 (Newman 4/17/02 tr. at 7:23 – 8:8 (Battelle Memorial Institute)); App. at 7-9 (Zabransky 4/18/02 tr. at 258:16 – 259:1 (TRW Environmental and Safety Systems)); App. at 10 (DOE News Release 8/16/98 at http://newsdesk.inel.gov/press_releases/1998/prrecompete2.html (Lockheed Martin Idaho Technologies Co.)). "*See also* App. at 11(stating that Battelle Memorial Institute operates PNNL, but that PNNL is "managed by DOE's Office of Science"). *See generally Yankee Atomic* at *2-6.

> (c) The conduct of the work is wholly or at least substantially separate from the contractor's other business, if any.
>
> (d) *The work is closely related to the agency's mission and is of a long term or continuing nature,* and there is a need (1) to ensure its continuity and (2) special protection covering the orderly transition of personnel and work in the event of a change in contractors.

48 C.F.R. § 17.604 (emphasis added). Indeed, Congress has decreed that employees of M&O Contracts be deemed employees of the DOE for some purposes:

> *An officer or employee of a management and operating contractor of the Department of Energy*, when serving a member of a group reviewing or advising on matters related to one or more management and operating contracts of the Department, *shall be treated as an officer or employee of the Department* for purposes of determining whether the group is an advisory committee within the meaning of section 3 of the Federal Advisory Committee Act (5 U.S.C. App.).

Pub.L. 108-136, Sec. 3112, November 24, 2003, 117 Stat. 1743 (emphasis added). Judge Merow concluded:

> The documents indicate that the contractor personnel who operate DOE facilities are functionally indistinguishable from the DOE employees who request and use their research or drafting input. They are more akin to contract employees of DOE.

*Yankee Atomic* at *7.

This symbiotic relationship between the government and these contractors was also explicitly recognized by Dr. John Bartlett, former Director of OCRWM. When asked during the *Yankee Atomic* trial about the role of the OCRWM M&O contractor (then TRW Systems), Dr. Bartlett explained that:

> [a]ll of the work is done by the - by the support contractors. That's what they're there for. . . . OCRWM itself has about 65 employees. The program has about 5,000 employees. . . . The work is done by [the contractors]. And the job of the DOE people is to oversight that, do the program planning, give them guidance and direction for what their activities should be.

*Yankee Atomic* 7/14/04 Trial Tr. 615:24-616:22, App. at 12-13. Dr. Bartlett was also asked about the extent to which the M&O contractor was "authorized by the Department to make

statements concerning the subjects addressed in studies . . ." *Id.* at 616:23-617:1, App. at 13. Further reinforcing the agency relationship between OCRWM and M&O contractors, Dr. Bartlett explained that "[t]hey have full authority to accomplish and report this work." *Id.* at 617:2-3, App. at 13.

In this case, DOE engaged its contractors to investigate and report on a number of subjects specifically relating the fulfillments of DOE's obligations under the Contract, including the following:

> the program strategy (PX064),
>
> preparation of the Mission Statement (PX66, 67, 73)
>
> the proper and most economical rate of acceptance of SNF (PX015, 144, 151, 165, 502, 504, 505, ),
>
> allocation of acceptance rights (PX088, 129)
>
> trading of acceptance rights by utilities (PX 088, 100, 103, 105,109, 172, 491, 516, 519, 520)
>
> the delivery commitment schedule (PX114)
>
> acceptance scenarios and priorities for shutdown reactors (PX115, 123, 124, 486)
>
> development of the annual capacity report (PX121, 282)
>
> alternatives for acceptance and storage (PX135)
>
> cost estimates (PX138)
>
> proposed changes to the Contract (PX167)
>
> design and construction (PX 280)
>
> the role of transportation (PX468)
>
> reactor-specific spent fuel discharge projections (PX481)

The contractors also prepared, at DOE's request, positions to be taken by the government on issues (PX170, 176,178, 231, 344, 361, 508).[4]

---

[4] In *Yankee Atomic*, Judge Merow described the documents before him (many of which are again challenged by the government in this case) as follows:

B. The Documents Are DOE Public Records Setting Forth The Activities Of The Agency The Pursuant To FRE 803(8)(A) And Are Therefore Admissible.

As a matter of *law*, the Court in *Yankee Atomic* correctly concluded that these contractor documents – which in reality are DOE documents for all intents and purposes – are fully admissible under FRE 803(8)(A), which excepts from the hearsay rule all "[r]ecords, reports, statements, or data compilations, in any form, of public offices and agencies, setting forth (A) the activities of the office or agency . . .unless the sources of information or other circumstances indicate lack of trustworthiness." As Judge Merow explained:

> Since the assurance of accuracy is generally greater for public records than for private business records, the proponent is usually not required to establish their admissibility through foundation testimony. Rule 803 documents are non-hearsay and admissible regardless of the availability of the declarant. . . . . Admissibility is presumed and the burden of proof is on the party opposing introduction.

*Yankee Atomic*, at *4 (citations and footnote omitted). Here, the government does not contend that any of the documents are untrustworthy.

As noted at the outset, in *Yankee Atomic* the Court considered and rejected objections identical to those the government makes here regarding (for the most part) the very same government contractor documents. Rather than reiterating Judge Merow's conclusions at length, PG&E respectfully refers the Court to his *Yankee Atomic* opinion. In brief summary,

---

> For the most part they are documents of national laboratories and other contractors to the Department of Energy ("DOE") and include analysis of priority for shutdown reactors and other acceptance scenarios, fuel shipment strategies, consideration of failed fuel and delivery commitment schedules, allocations between nuclear utilities, program costs, treatment of greater-than-class C waste ("GTCC"), trading of acceptance rights, and the effects of trading of acceptance rights on transportation-all part of the development of DOE's spent nuclear fuel program.

*Yankee Atomic* at *1.

however, the Court reasoned there that "public agency" is construed broadly for the purposes of FRE 803(8)(A). *See Yankee Atomic,* 2004 WL 2450874 at *4. Specifically:

> In this case, the records, reports, statements or other data compilations, in any form, to the extent they are the activities of the DOE, are construed broadly to include those activities done by national laboratories at the behest of DOE and within the parameters thereof. . . . DOE cannot bifurcate its responsibilities for SNF and/or high level waste ("HLW") disposal by utilizing its M&O contractors to develop DOE's spent nuclear fuel program. *Contracting statutory and regulatory responsibility does not eliminate the public nature of these documents.*

*Id.* at *6. (emphasis added) *See also United States v. Lykes Bros S.S. Co.*, 432 F.2d 1076, 1079-80 (5th Cir. 1970) ("[T]he duty to prepare a report can be delegated, under government regulations, to an independent agency or to a foreign government without the report losing its character … as a report of a 'department or agency of the United States.'").

Judge Merow specifically rejected the government's argument, set forth on page 10 of its Motion in this case, that PG&E's argument creates a "ridiculous result."

> Defendant argues that allowing contractor documents to be admissible as public documents would create a "ridiculous" result because, under plaintiffs' theory, all documents generated by a construction contractor under contract to build a federal courthouse would become "public records" and a contractor could potentially generate documents that could be used against the government in litigation. The "contractors" involved in the instant document issues are in no way analogous to a contractor who bids for and obtains a contract to construct a building. *The documents indicate that the contractor personnel who operate DOE facilities are functionally indistinguishable from the DOE employees who request and use their research or drafting input. They are more akin to contract employees of DOE. See United States v. Hopkins,* 427 U.S. 123, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976). There is no way courthouse construction contractor employees would be performing court work in an equivalent manner.

*Yankee Atomic* at *7.(emphasis added) Judge Merow further noted that the documents came from DOE files:

> Data compilations, records, reports or statements "of" public offices or agencies "setting forth" the activities of that agency are within the scope of the hearsay exception. The qualifier "of" does not mean that data compilations,

> records, reports and statements must in all situations have been authored by the public office or agency-just that they must have emanated therefrom. These are "... documents generated or collected by the national government in the course of its public functions." *In re Oil Spill by the Amoco Cadiz,* 954 F.2d at 1309.

*Id.* (emphasis added)

The documents are public records of DOE "setting forth the activities of the agency" and therefore admissible pursuant to FRE 803(8)(A).

## II. BECAUSE DOE AUTHORIZED THE CONTRACTORS TO SPEAK CONCERNING THE CONTRACT AND THE SPENT NUCLEAR FUEL PROGRAM, THE STATEMENTS IN THE DOCUMENTS ARE ADMISSIBLE PURSUANT TO FED. R. EVID. 801(D)(2)(C).

The challenged exhibits are also admissible under FRE 801(d)(2)(C), as non-hearsay party admissions, because DOE "authorized" its contractors to make the statements contained in these documents. In most if not all cases, the contractors were actually hired to *write* the reports in question, so clearly the statements made in the reports – like the analysis and other work underlying the reports – were "authorized" by DOE. Where a contractor is hired to write a report, the statements in the report are *a fortiori* "authorized."

Although Judge Merow ultimately found that "the court need not reach the separate admissibility of contractor documents under Rue 801," he did recognize – explicitly – the fundamental basis for admitting these contractor documents under FRE 801(d)(2)(C) as party admissions "authorized" by DOE: "Plaintiffs insist that the contractors were 'authorized' to make the statements concerning the subjects in the reports in the sense that they were specifically requested to perform work for DOE, *matters not in dispute*." *Yankee Atomic*, at *8 (emphasis added).

As reflected in the very next sentence, however, the Court in *Yankee Atomic* then – perhaps because it had already concluded it "need not reach" FRE 801 – veered off to address

a different subpart of FRE 801(d)(2), subpart (D), which governs statements "by the party's agent or servant:" "Defendant counters that authorization to do work is not the same as authorization to make binding admissions on behalf of DOE." *Id.* at *8. The latter statement is certainly true, but it concerns whether an *agent* can make "binding" statements admissible under FRE 801(d)(2)(D), not whether a someone has made "authorized" statements admissible under FRE 801(d)(2)(C). The Yankee Atomic Court next discussed this Court's Rule 801 rulings in *Westfed Holdings, Inc. v United States*, 55 Fed. Cl. 544, 564-65 (2003), which concerned agency principles under FRE 801(d)(2)(D), and did *not* address "authorized" statements covered by 801(d)(2)(C). Indeed, the Court in *Yankee Atomic* stated directly "[t]he question is whether the conclusions and recommendations therein were authorized positions of DOE under *agency* principles, . . ." (emphasis added). *Yankee Atomic* at *9.

That is the question under 801(d)(2)(D), concerning statements of agents, but is it *not* the question under FRE 801(d)(2)(C), concerning statements "authorized" by a party. As to the latter question, although Judge Merow technically did not reach the issue because he did not have to, he did recognize that the "authorized" nature of DOE contractor statements "is not in dispute." *Yankee Atomic*, at *8.

For that reason alone, for other reasons well-established by applicable case law and by the documents in question themselves, and perhaps most importantly to spare other spent fuel plaintiffs and other Judges of this Court the need to face the exact same arguments over and over again in other spent fuel cases, this Court should not only adopt Judge Merow's well-considered conclusion that contractor documents are admissible under FRE 803(A)(8), but also should now reach the issue and rule more explicitly than Judge Merow did that contractor documents are also admissible under FRE 801(d)(2)(C) as statements "authorized" by DOE.

First, this Court has recognized that the person "authorized to speak" need not qualify as an "agent" under this provision of the Rule. *Glendale Federal Bank, FSB v. United States*, 39 Fed. Cl. 422, 424 (1997) (stating that "FRE 801(d)(2)(C) applies to a person who is not an agent but is 'authorized' to speak"); *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1306-07 (9th Cir. 1983) (allowing into evidence report prepared by non-employee of defendant on the basis that it was "authorized" by defendant). Nor is it of any importance that the government now disagrees with the statement (if it does). Under the plain language of the Rule, so long as the person was authorized by DOE to speak regarding a particular subject, the statement of that person can be used against DOE in this case. DOE's current disagreement goes to the weight of the evidence, not its admissibility. Even absent the explicit statements in the contractor documents in question, as discussed next, it is simply not credible to assume that these studies, reports, and papers were prepared and published *sua sponte*, without the DOE's authorization.

Second, some of the documents state explicitly on their inside cover that "[t]his report was prepared as an account of work sponsored by an agency of the United States Government." PX131 (excerpt), App. at 14-15 and PX135 (excerpt), App. at 16-17. That is the same, in substance, as saying "this report is authorized by the United States Government." On others, on the face of the document, it is readily apparent that DOE authorized the contractors to produce the study or document – *i.e.*, "authorized [the contractor] to make a statement [the study] concerning the subject." *Glendale,* 39 Fed. Cl. at 424. *See*, *e.g.*, relevant excerpts of exhibits PX103, App. 18 ("Prepared for the U.S. Department of Energy under Contract DE-AC06-76RLO 1830"); PX105, App. 19-20 (same); PX115, App. 21 (same); PX124, App. 22 (same); PX138, App. 23 (same); PX151, App. 24-25 (same); PX172,

App. 26 ("Prepared for: The U.S. Department of Energy"); PX280, App. 27 ("Prepared for: The U.S. Department of Energy"); PX468, App. 28 ("Work supported by the U.S. Department of Energy under Contract DE-AC06-76RLO 1830"); PX486, App. 29 ("Prepared for the U.S. Department of Energy under Contract DE-AC06-76RLO 1830"); PX524, App. 30-31 ("Prepared for the U.S. Department of Energy … Under Contract DE-AC01-91RW00134").

Plaintiff's exhibit 181 (excerpt at App. 32) is an example of a document that purportedly was not prepared on behalf of DOE, but lists a DOE author. Nancy Slater, listed as one of the authors of this paper and a DOE employee describes the document as "a general summary of the ACR issue resolution process, the nature and scope of the issues that require interpretation . . .." Slater 4/21/1999 Tr. 122:13 - 123:2, App. at 33-34. She insists however, that it was "authored on behalf of E.R. Johnson Associates for presentation at a conference" and "not . . . at the request of DOE." *Id.* at 123:19 - 124:3, App. at 34. So, while DOE attempts to disavow that this document (among others) was authored at the request of DOE, Ms. Slater explains that "in general we have a DOE author on papers like this. We then have the right to review." *Id.* at 123:24-124:3, App. at 34. So, regardless of whether these documents have a DOE author or were prepared by a contractor at the direction and authorization of DOE, these allegedly inadmissible contractor documents clearly have DOE's "stamp of approval" before being publicly released.

Accordingly, in addition to being public records, the challenged exhibits are admissible pursuant to Fed. R. Evid. 801(d)(2)(C).

## III. THE DOCUMENTS CAN ALSO BE DEEMED ADMISSIBLE AS STATEMENTS OF AGENTS OR SERVANTS OF DOE PURSUANT TO FRE. 801(D)(2)(D).

In addition to their being merely authorized to speak, in the circumstances of this case the contractors were agents of DOE and statements made within the scope of their employment are admissible under FRE 801(d)(2)(D), which provides that statements offered against a party are not hearsay if made "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." This Rule requires only that the statement concern a matter within the scope of the agency or employment; it does not require DOE to have ratified or even agreed with the statement.

Although the authors of the documents at issue are contractors, "'an agency relationship can be created by contract . . . .'" *Rotec Industries, Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1256 (Fed. Cir. 2000) (*quoting Chemtool, Inc. v. Lubrication Technologies, Inc*., 148 F. 3d 742, 745 (7th Cir. 1998)). *See also Paul v. Federal Mine Safety and Health Review Comm'n*, 812 F. 2d 717, 718 (D.C. Cir. 1987) (describing Battelle Memorial Institute, which prepared, as the M&O contractor and operator of DOE's Pacific Northwest National Laboratory ("PNNL")[5] over twenty of the challenged contractor documents in this litigation, as "agent" of DOE).[6]

The government itself concedes that the documents were created by parties who had contracted with the government, and further the documents themselves show that they were created in fulfillment of the contractor's duties to the government under their contracts.

---

[5] Battelle has operated PNNL for DOE (and its predecessors) for over 40 years, since its inception in 1965. App. 11. PNNL is one of five national laboratories managed and operated by Battelle. *Id.*.

[6] The documents created by PNNL/Battelle include: PX64, 88, 90, 99, 100, 103, 105, 108, 114, 115, 121, 123, 124, 129, 133, 135, 138, 144, 151, 167, 468, 481 and 486.

Thomas Wood, a 20-plus year employee of PNNL was questioned during his deposition about a draft report prepared by PNNL entitled "At-Reactor Spent Fuel Storage Requirements With and Without Acceptance Rights Trading" (PX103 (excerpt, App. 35-36). Mr. Woods is noted in the acknowledgements to this draft report as "originally recogniz[ing] the need for this study and instigated its initiation . . ." Mr. Wood testified that he was "involved in the scoping or formulation of the problem that led to this report" (Wood 5/8/02 Tr. 71:16-20, App. at 37) and that it was not a study that PNNL undertook on its own but instead was commissioned by the Department of Energy.[7] *Id.* at 72:4-9, App. at 37. Thus, it is undisputed that the statements by the contractors both concerned a matter within the scope of the contractor's employment and was made during the existence of the relationship.

An agency relationship "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." *Brubaker Amusement Co. v. United States*, 304 F.3d 1349, 1360 (Fed. Cir. 2002). For M&O contractors, that consent and level of control is defined and set forth above in the nature of the relationship between the M&O contractor and the government. As Judge Merow reasoned in *Yankee Atomic*,

> As "servants," direct employees of DOE could make binding admissions as to matters within their employment duties, and there may be no good reason to not afford the same evidentiary treatment to the contractors here. Any distinction between a nuclear physicist preparing tonnage estimates for DOE under a direct employment contract versus the M & O contracts here is questionable, and at best a matter of degree.

*Yankee Atomic*, 2004 WL 2450874 at *11.

---

[7] Mr. Woods is listed as the author on several challenged documents, including PX88, 90, 99 and 100 and describes "[t]he purpose of [PNNL's] work" as directed by DOE as "includ[ing] setting reasonable design and requirements for the system . . . ." Wood 5/8/02 Tr. 70:3-14, App. at 37.

Accordingly, those contractors are agents or servants of DOE and their statements are admissible pursuant to Fed. R. Evid. 801(d)(2)(D).

## IV. THE DOCUMENTS ARE NOT HEARSAY WHERE THE GOVERNMENT HAS "MANIFESTED AN ADOPTION OR BELIEF" IN THEIR TRUTH PURSUANT TO FRE 801(D)(2)(B).

Many of the challenged exhibits have been made publicly available by the government. *E.g.*, PX131 (excerpt), App. 14-15 ("Available to the public from the National Technical Information Service…."); PX 151 (excerpt), App. 24-25 (same). When the government makes the documents available to the general public or presents them at industry conferences,[8] it manifests an adoption or belief in the truth of such documents and such documents may be used in evidence against the government.

## V. THE DOCUMENTS FALL WITHIN OTHER EXCEPTIONS TO THE RULE AGAINST HEARSAY.

### A. The Documents Are "Business Records" Admissible Under FRE 803(6).

Alternatively, the Court may elect to allow these documents in as "business records" pursuant to FRE 803(6). *See, e.g., United States v. Frazier*, 53 F.3d 1105, 1110 (10th Cir. 1995) (admitting report prepared by independent contractor at direction of Department of Labor into evidence pursuant to FRE 803(6)).

### B. Certain Documents Are Ancient And Therefore Admissible Pursuant To FRE 803(16).

In addition to the bases for admissibility set forth above, six of the challenged documents, are independently admissible pursuant to the ancient documents rule of FRE 803(16). That rule allows into evidence "[s]tatements in a document in existence twenty

[8] Documents that have been published and are publicly available (PX15, 124, 125, 131, 151, 280 and 481); documents that have been published and prepared or presented for presentation at industry conferences (PX2, 121, 144, 165, 181 and 468).

years or more the authenticity of which is established." FRE 803(16). The twenty-year period is measured back from the date that the exhibit is offered into evidence. *See Columbia First Bank v. United States*, 58 Fed. Cl. 333 at 336 (2003) (rejecting argument that period be measured "from the creation of the document to the date the controversy arises"). Accordingly, PX064 (created March 12, 1984), PX066 (created March 28, 1984), PX067 (created March 30, 1984), PX073 (created July 23, 1984), PX088 (created April 1986), and PX468 (created March 1985), are admissible as ancient documents under FRE 803(16).

## VI. THE GOVERNMENT'S OBJECTIONS THAT SOME OF THE DOCUMENTS ARE DRAFTS GOES TO WEIGHT AND NOT ADMISSIBILITY.

The government objects that a number of documents are drafts. However, such an argument goes only to the weight of the evidence and not its admissibility. *Westfed Holdings*, 55 Fed. Cl. at 567. An objection that a document is a draft is not an independent basis for excluding a document otherwise admissible. *Id.*

## VII. A NUMBER OF DOCUMENTS OBJECTED TO BY THE GOVERNMENT AS CONTRACTOR DOCUMENTS ARE NOT CONTRACTOR DOCUMENTS.

Finally, among the documents objected to by the government are the following that are in no respect "contractor" documents:

| Exhibit | Description | Date |
| --- | --- | --- |
| 066/067 | DOE Memorandum on DOE letterhead, enclosing DOE draft of the DOE Mission Plan | 3/28/1984 |
| 073 | DOE letter on DOE letterhead enclosing comments of the DOE Richland Operations office on the Mission Plan | 7/23/1984 |
| 125 | November 1989 DOE Report to Congress on Reassessment of the Civilian Radioactive Waste Management Program | 11/1989 |
| 137 | DOE Memorandum on DOE letterhead regarding rates under the ACR | 9/17/1990 |

| Exhibit | Description | Date |
| --- | --- | --- |
| 179 | DOE Memorandum from Lake Barrett to the Secretary of Energy from Lake Barrett regarding implementation plan for acceptance of civilian spent nuclear fuel by the federal government in January, 1998 with attachment | 1/25/1993 |
| 220 | DOE Memorandum on DOE letterhead re Approval of Federal Register Notice Soliciting Stakeholder Input to the Strategy for Management and Disposal of Greater than Class C Low-Level Waste with attachments | 2/14/1995 |
| 231 | DOE Memorandum on DOE letterhead regarding review of statutory and regulatory provisions | 6/29/1995 |
| 502 | DOE letter on DOE letterhead regarding throughput study | 10/11/1991 |

The foregoing documents are DOE documents on their face.

## VIII. CONCLUSION.

For the foregoing reasons, the government's motion to exclude the contractor documents must be denied.

Dated: May 19, 2006

Respectfully submitted,

s/ Jerry Stock

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Ave, NW Ste 500
Washington, D.C. 20006
(202) 331-3173
(202) 261-4751 fax
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:
ROBERT L. SHAPIRO
Greenberg Traurig, LLP