# In the United States Court of Federal Claims

No. 04-74C
(into which has been consolidated No. 04-75C)

(E-Filed: May 20, 2006)

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

ORDER

Attached to this order is a proposed pretrial agenda. The parties will be invited to add items to the agenda at the beginning of the pretrial conference. Observations by the court in the proposed pretrial agenda regarding issues of law and fact are provided for the purpose of discussion and are not opinions of the court.

The parties are urged to seek ways to take advantage of the opportunities that trial preparation provides for fruitful settlement discussions. The court suggests that, among other steps, counsel promptly provide their clients with copies of their own and the other party's pretrial memorandums and such other pretrial filings as may assist in informing the principals of each party of the strengths and weaknesses of each party's case.

The parties are reminded to bring to the pretrial conference at least four copies of their proposed joint preliminary trial schedule or, if they cannot agree, separate trial schedules in the form attached to the court's Scheduling Order dated February 18, 2005.

The parties are invited to contact the court at any time when it appears that the involvement of the court may assist in securing "the just, speedy, and inexpensive determination of [this] action." RCFC 1.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

Pacific Gas & Electric Co. v. United States
No. 04-74C
(into which has been consolidated No. 04-75C)

PRETRIAL CONFERENCE
AGENDA
May 23, 2006 and Beyond As Needed

1. Progress Toward Fact Stipulations pursuant to RCFC Appendix A ¶ 17

   a. Report from Parties

2. Witnesses/Witness Lists/Deposition Designations

   a. Witness Lists
   b. Plaintiff's Deposition Designations
      i. Defendant's Response to Plaintiff's Deposition Designations
      ii. Plaintiff's Reply to Defendant's Response to Plaintiff's Deposition Designations
   c. Defendant's Deposition Designations
   d. Exclusion of Witnesses under Fed. R. Ev. 615

3. Exhibits/Exhibit Lists

   a. Exhibit Lists (DX, PX, JX)
   b. Use/Identification/Organization of Exhibits at Trial
   c. Four Copies of Exhibits at Trial (Pl., Def., Ct., Witness/Reporter)
   d. Technology Requirements
   e. The Parties' Objections to Exhibits
      i. Pl.'s Motion to Exclude Government Exhibits
      ii. Defendant's Objections to Plaintiff's "Will Use" Exhibits

4. Motions in Limine and Motions to Exclude

   a. Pl.'s Motion in Limine to Exclude Warren K. Brewer's Expert Testimony

      i. What, exactly, is the subject as to which Mr. Brewer is offered as an expert?

ii. How does Mr. Brewer's education or experience with nuclear power in the Navy over 25 years ago provide him with sufficient "knowledge, skill, experience, and training" to provide helpful opinions on storage, handling, and transport of SNF?

iii. Why isn't the determination of whether a cost is "incremental" to defendant's breach a mixed question of law and fact? How will plaintiff show which costs were incremental to the defendant's breach?

iv. How can Mr. Brewer opine about GTCC waste when he has no experience with it? How does his opinion aid the court?

b. Pl.'s Motion to Exclude Testimony From John R. McGrath

i. What, exactly, is the subject as to which Mr McGrath is offered as an expert?

ii. Is "Schedule and Delay Analysis" as to SNF storage construction a recognized area of expertise? What are the indicia of expertise?

iii. If Mr. McGrath cannot testify as to the reasonableness of delays in PG&E's scheduling, what is the relevance of his testimony? Why do we need an expert to compare initial, tentative plans with actual, carried-out plans when the legal focus of the inquiry is whether plaintiff's mitigation efforts were reasonable? See Robinson v. United States, 305 F.3d 1330, 1333 (Fed. Cir. 2002); Restatement (Second) of Contracts § 350 comment h. How does Mr. McGrath's testimony aid the court in determining the reasonableness of plaintiff's mitigation efforts?

iv. The reasonableness of PG&E's delays in construction is not primarily a legal issue within the exclusive province of the court. The court cannot determine reasonableness without factual testimony (e.g., comparable industry practices or an explanation of relevant factual circumstances of this case) indicating that an action or inaction leading to delay is or is not reasonable.

c. Def.'s Motion in Limine to Exclude Certain Expert Testimony at Trial

i. What, exactly, is the subject as to which Mr. Graves is offered as an expert?

ii. Why isn't Mr. Graves' exchange market model too speculative and doesn't it make too many entirely speculative assumptions for it to be helpful or relevant to the court at trial? See San Carlos Irrigation and Drainage Dist. v. United States, 111 F.3d 1557, 1563 (Fed. Cir. 1997). Query whether the main purpose of Mr. Graves' model is to

counteract defendant's assertion that the Standard Contract's "Oldest Fuel First" schedule would have been used? Is there direct evidence on this issue (e.g., a PG&E executive's testimony regarding his expectation to exchange acceptance dates and the bases therefor)?

iii. How is the court to address the fact that Roderick Knight, on whose estimates Mr. Graves relied in determining the figures to use in the exchange market model, is not testifying in this case? How does the court evaluate the reliability of Mr. Knight's figures?

iv. How can Mr. Graves provide a reliable opinion about rate acceptance if he doesn't have any experience or expertise in SNF management or disposal?

v. Can this case be distinguished from Energy Capital Corp v. United States, 302 F.3d 1314, 1329 (Fed. Cir. 2002), with respect to whether the "remote and speculative" nature of the approximations Mr. Graves makes in his exchange model should preclude his testimony?

vi. Plaintiff suggests that the Table on page 25 of defendant's Motion comes from "thin air." How does plaintiff account for discrepancies between Mr. Graves' model in Yankee and the model proffered here?

vii. Does plaintiff's theory of liability, in which all utilities exchanged approved DCSs under the Graves model, necessitate that DCSs be considered binding commitments? See Def.'s Memorandum of Contentions of Fact and Law at 56 n.29.

vii. The court is not inclined to allow for the exclusion, "as a protective matter," of the testimony of Brad Cornell, Ivan Stuart, and Michael Meisner.

d. Pl.'s Motion to Exclude Testimony of Jonathan A. Neuberger

i. What, exactly, is the subject as to which Mr. Neuberger is offered as an expert?

ii. Do we need Dr. Neuberger's testimony to understand the deficiencies in the Graves model? Why couldn't deficiencies be elicited on cross examination?

iii. Why should Dr. Neuberger need to develop an alternative to the Graves model?

iv. If Dr. Neuberger has no experience in the nuclear power industry beyond his experience in other cases, how can he opine on whether certain costs are incremental to the government's breach of the Standard Contract? It seems that Dr. Neuberger is only qualified to provide economic critiques or analyses.

v. If an employee's time is proven to be spent on a breach-related project, why should it not be included in plaintiff's damages? Shouldn't this end the analysis?

e. Pl.'s Motion in Limine to Exclude R. Larry Johnson's Expert Testimony

i. What, exactly, is the subject as to which Mr. Johnson is offered as an expert?

ii. If an employee's time is proven to be spent on a breach-related project, why should it not be included in plaintiff's damages? Shouldn't this end the analysis?

iii. If Mr. Johnson has no experience in the nuclear power industry beyond his experience in other cases, how can he opine on whether certain costs are incremental to the government's breach of the Standard Contract (e.g., industrial security costs)? It seems that Dr. Neuberger is only qualified to provide economic critiques or analyses.

iv. What does Mr. Johnson's testimony add to the defendant's case that Mr. Brewer or Mr. Neuberger's testimony does not?

f. Def.'s Mot. in Limine Regarding Testimony Concerning the Meaning of the Nuclear Waste Policy Act and the Standard Contract

i. Why should the court allow Messrs. Mills and Warner to testify about the intent of Congress in enacting the NWPA? Isn't this the province of the court, through recognized tools such as analysis of the language of the statute and, in appropriate cases, legislative history?

ii. If testimony is needed to explain or clarify the meaning of the contract or the parties' intent, the parol evidence rule does not operate to exclude such testimony, even if the contract is fully integrated. See Restatement (Second) of Contracts § 214(c); see also § 216(2)(b). Does Messrs. Mills' and Warner's testimony so function with respect to the Standard Contract? Or, is the testimony offered to supplement or contradict the terms of the Standard Contract?

iii. Commonwealth Edison and Roedler did not address the parol evidence rule. Plaintiff may not simply dismiss its potential application by asserting that those cases foreclose it.

iv. How can Mr. Warner testify reliably about the formation of the Standard Contract and the parties' intent with respect to it if he was not employed by PG&E until 1988? Does he have knowledge of the

parties' intent with regard to the Standard Contract in another capacity?

g. Def.'s Motion in Limine to Exclude from Trial Documents Prepared by Government Contractors and Protective Motion to Exclude All Documents Regarding the Standard Contract Upon Plaintiff's Exhibit List

i. Why is whether there is an agency relationship between the contractors at issue and DOE relevant with respect to the application of the public records and reports exception to hearsay, Fed. R. Ev. 803(8)?

ii. How can these documents be considered "third party documents incorporated into the business records of another entity[?]" Columbia First Bank, F.S.B. v. United States, 58 Fed. Cl. 333, 339 (2003). They seem more likely to be "public records and reports" that set forth "the activities of the office or agency." Fed. R. Ev. 803(8)(A). See Yankee Atomic Elec. Co. v. United States, No. 98-126 C, 2004 WL 2450874, at **7-8 (Fed. Cl. Sept. 17, 2004).

iii. If DOE disagrees with statements on the documents or does not adopt as policy determinations made by contractors contained in these documents, shouldn't this go to the weight the court affords the information in the documents, not the admissibility of the documents themselves?

iv. Were these contractors "authorized" to make statements concerning the subjects in the reports at issue? If so, why shouldn't such statements be admitted as non-hearsay admissions under Fed. R. Ev. 801(d)(2)(C)? Indeed, all that is required for a statement to be considered an "admission" under Fed. R. Ev. 801(d)(2) is that it is helpful to, and offered by, the party-opponent. See Stephen A. Saltzburg, Daniel J Capra, and Michael M. Martin, Commentary, Fed. R. Ev. 801(d)(2) ("The touchstone of admissibility [of an admission] is that the statement is beneficial to, and offered by, the party-opponent at the time of trial."). If DOE now disagrees with the statements or did not accept them as policy, why can't defendant simply elicit that fact through testimony to enable the court to evaluate the weight and the relevance of the statements?

v. Are these contractors "agents" or "servants" under Fed. R. Ev. 801(d)(2)(D)?

5. Trial Schedule

a. Review/Reconciliation of Parties' Proposed Schedule of Witnesses
b. Opening and Closing Arguments
c. Post-Trial Briefing
   i. Opening Briefs: June 30, 2006. 50 pages max. Simultaneous filing.
   ii. Response Briefs: July 7, 2006. 20 pages max. Simultaneous filing.

6. Identification/Discussion of Disputes Concerning Issues of Law in Pretrial Memoranda

a. Burden of Proof
   i. The court is of the opinion that the burden of proof rests with plaintiff to prove that its damages were caused by defendant's breach. Plaintiff must prove with "reasonable certainty" that defendant's breach was a "substantial causal factor" in its damages. Ind. Mich. Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005). Accordingly, plaintiff must prove that its damages would not have been incurred in the "but for," non-breach world. Therefore, plaintiff, not defendant, is responsible for establishing the but for world and which damages are "incremental" to the breach. See Glendale Fed. Bank v. United States, 239 F.3d 1374, 1380 (Fed. Cir. 2001) (for breach of contract claims seeking expectancy damages, "[t]he problems of proof attendant on the burden placed on the non-breaching party of establishing . . . what might have been[] are well recognized") (emphasis added). Only after plaintiff establishes this does the burden then shift to defendant to prove that plaintiff's mitigation efforts were unreasonable or that offsets are warranted and plaintiff's damages should be reduced. See BlueBonnet Savings Bank FSB v. United States, 67 Fed. Cl. 231, 236 (2005); Coast Fed. Bank, FSB v. United States, 48 Fed. Cl. 402, 430 n.25, 431 (2000).

b. Foreseeability of Damages
   i. In assessing foreseeability of damages, does the magnitude of damages need to be foreseeable, or just that damages will result?
   ii. Foreseeability of damages needs to be established at the time of the contracting. However, does the specific type of damages (e.g., "dual-purpose" dry storage) need to be foreseeable? If costly remedial measures creating damages are generally foreseeable and determined to be caused by defendant's breach (i.e., proven to be unnecessary or unanticipated in the "but for" world), doesn't the

burden simply switch to defendant to prove that such measures were unreasonable? If the court were to disallow damages for reasonable actions in mitigation merely because they were unknown at the time of the breach, would this not create a perverse incentive to use out-dated or inefficient methods of mitigation?

c. Parol Evidence

i. Is the contract unambiguous, ambiguous, or simply silent regarding rate of acceptance? Irrespective of the foregoing, does the parol evidence rule ever bar evidence from being admitted that explains or clarifies the meaning of the contract or the parties' intent, as opposed to evidence that supplements or contradicts its terms? See Restatement (Second) of Contracts § 214(c); see also § 216(2)(b).

d. Statute of Limitations

i. Does the Statute of Limitations bar damages caused by the anticipation of defendant's breach that were incurred before 1998, even though plaintiff's claim did not accrue until 1998?

e. Estoppel

i. Is plaintiff estopped from arguing that the acceptance rate provided for in the DCSs that it submitted (without complaint) to DOE for approval based on the 1991 ACR is not the rate at which DOE would have accepted PG&E's SNF had it begun performance of the Standard Contract in January of 1998? See Def.'s Memorandum of Fact and Law (Memo.) at 24, 55-56. In relation to that question, does plaintiff's theory of liability, in which all utilities exchanged approved DCSs under the Graves model, necessitate that DCSs be considered binding commitments? See id. at 56 n.29.

7. Brief Outline of Issues of Fact and/or Law Identified in Pretrial Memoranda

a. Liability: Plaintiff bears the burden of establishing that defendant breached the contract

b. Statute of Limitations

i. Whether the Statute of Limitations bars damages caused by the anticipation of defendant's breach that were incurred before 1998.

c. Damages: Plaintiff bears the burden of proving:

i. Whether its damages were reasonably foreseeable at the time of the contracting.
   A. Must plaintiff prove that specific types of damages were foreseeable at time of contracting?
   B. Must plaintiff prove that the magnitude of damages was foreseeable at the time of contracting?

ii. Whether defendant's breach is a substantial causal factor in its damages.
   A. Whether plaintiff can establish a reasonable rate of DOE's acceptance in the "but for" world under the Standard Contract.
      - Does the parol evidence rule act to bar evidence concerning the rate of acceptance under the Standard Contract?
      - Is plaintiff estopped from arguing that the acceptance rate provided for in the DCSs that it submitted (without complaint) to DOE for approval based on the 1991 ACR is not the rate at which DOE would have accepted PG&E's SNF had it begun performance of the Standard Contract in January of 1998?
   B. Whether plaintiff can establish a reasonable pick-up date for DOE's acceptance of its SNF at both its power plants.
   C. Whether plaintiff can establish that GTCC waste and/or failed fuel would have been accepted on the pick-up date of SNF under the Standard Contract or otherwise, and whether, in any event, this issue affects plaintiff's damages claim.
   D. Whether plaintiff can establish causation with respect to other costs incurred, e.g., ventilation stack removal, internal labor and overhead costs, exploration, and seismic research.

iii. Whether the damages are shown with reasonable certainty.
   A. Are damages calculations speculative or based on unsupported assumptions or are they reasonable approximations under the circumstances?

d. Mitigation: Defendant bears the burden of proving:
   i. Whether efforts undertaken by plaintiff because of defendant's breach in order to mitigate its damages were unreasonable.
      A. Whether defendant can establish that certain construction, labor, exploration, or delay costs were incurred unreasonably.

B. Whether, and how much, damages should be reduced as a result of plaintiff's unreasonable efforts to mitigate its damages.