# In the United States Court of Federal Claims

No. 04-74C
(into which has been consolidated No. 04-75C)

(E-Filed: June 4, 2006)

| | |
|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

ORDER

The court has before it PG&E's Notice of Filing of Trial Schedule (Pl.'s Sch. Not.), Defendant's Response to PG&E's Notice of Filing of Trial Schedule and Motion to Compel Based Upon a More Definite Statement (Def.'s Sch. Not. Resp. and Mot.), Defendant's Memorandum, in Response to Paragraph 10 of the Court's Order Dated May 25, 2006, Regarding the Admissibility of Documents Created by the Nuclear Regulatory Commission (Def.'s NRC Memo.), PG&E's Response to Defendant's Memorandum in Response to Paragraph 10 of the Court's Order Regarding the Admissibility of Documents Created by the Nuclear Regulatory Commission (Pl.'s NRC Memo. Resp.), and Defendant's Motion to Compel Discovery Concerning Document Produced by Plaintiff on May 24, 2006 (Def.'s Doc. Mot.). The court held a telephonic status conference on Friday, June 2, 2006 (TSC), in order to facilitate the resolution of the outstanding issues raised by the foregoing filings. Further to the TSC, the court proceeds now to rule on the foregoing filings and any remaining outstanding issues as follows:

I. Trial Schedule

Plaintiff, Pacific Gas & Electric Co. (PG&E), has withdrawn its disputed position with respect to the order in which Loring Mills and Christopher Warner will testify at

trial. Accordingly, plaintiff has filed with the court the final schedule to be used at trial, which represents that Mr. Warner will be the first witness to testify at trial and Mr. Mills will be the second witness to testify at trial. See Docket Entry No. 284.

II. Joint Notice of Deposition Designations

In the court's May 25, 2006 Order, the court ordered the parties to file, on or before the opening of trial, a "joint notice of deposition designations identifying each deposition designated, with an appendix attached thereto that clearly identifies the specific designations made by each party in deposition transcripts." 5/25/06 Order. In addition, the court ordered that "[a]ny exhibits identified in deposition testimony designated by the parties that are on the parties' exhibit lists in this case . . . and are not excluded by this Order from being admitted into evidence at trial shall be specifically identified and cross-referenced to the exhibit numbers used by the parties in this case." Id. Further to the TSC, the court orders the parties to file, at or before the opening of trial, together with above-described joint notice of deposition designations, a joint notice of exhibits discussed with a deponent within the deposition designations that the parties seek to be admitted into evidence in this case. The joint notice of exhibits shall clearly identify those exhibits for which plaintiff seeks admission and the deposition transcript page and line numbers in which each exhibit is discussed with a deponent, and, separately, those exhibits for which defendant seeks admission and the deposition transcript page and line numbers in which each exhibit is discussed with a deponent. The parties shall be prepared, at the close of witness testimony on Monday, June 5, 2006, to address any objections the parties may have to the admission of any of the exhibits contained in deposition designations filed in the parties' joint notice of deposition designations.

III. Defendant's Motion to Compel Based Upon a More Definite Statement

Defendant moves the court to "enter an order compelling the production of six documents listed upon PG&E's privilege log that were prepared by Mr. Warner in the approximate time period and/or concerning the same subject matter as his three letters to [the Department of Energy (DOE)] and that concern the Standard Contract [(the three DOE letters)]." Def.'s Sch. Not. Resp. and Mot. at 4. According to defendant, "PG&E asserted at the pretrial conference that Mr. Warner's testimony would be limited to three letters sent to DOE in the mid-to-late 1990s." Id. at 4. Defendant argues that, "[b]ecause Mr. Warner is being offered as a witness to testify upon the letters that were sent, any privilege that may have existed over analyses that he performed or in which he was involved in preparation for those letters have been waived." Id. at 5 (citing, inter alia, In re Echo Star Commc'ns Corp., Misc. Nos. 803, 805, 2006 WL 1149528 (Fed. Cir. May 1, 2006)). Accordingly, defendant moves the court to order the production of six documents

(the six related documents) that it believes "concern the subject matter of [Mr. Warner's] letters to DOE during that same time period." Id. at 6.

Defendant's motion to compel documents associated with the three DOE letters lists the six related documents from PG&E's Revised Privilege Log for which it seeks production as follows: Document Nos. 16, 57, 248, 558, 559 and 560. Id. at 4 n.3. Document Nos. 16, 57, 559 and 560 are claimed by plaintiff to be protected from discovery only by the attorney-client privilege. Id. Appendix (App.) (plaintiff's Revised Privilege Log) at 1, 2, 4. Document No. 248 is claimed by plaintiff to be protected from discovery by both the attorney-client privilege and the work product doctrine. Id. at 3. Document No. 558 is claimed by plaintiff to be protected from discovery only by the work product doctrine. Id. at 4.

As an initial matter, the court does not agree that the introduction into evidence through Mr. Warner of the three DOE letters, without more, requires the admission of the six related documents. The three DOE letters are business records as to which Mr. Warner, as an official of plaintiff, could be expected to have knowledge. A possible issue of waiver could arise, however, if, in testimony related to the three DOE letters, Mr. Warner were to testify selectively about communications made to him by PG&E employees and/or analyses or other materials prepared in connection with the drafting of the three DOE letters in a manner that could be viewed as "cherry picking" among communications and/or analyses or other materials on the same subject matter. Collectively, such communications and/or analyses or other materials are referred to as "cherry-picked" testimony.[1]

The United States Court of Appeals for the Federal Circuit has recently held that, "[o]nce a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived. The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." Echo Star, 2006 WL 1149528, at *3. This is because "selective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice. In such a case, the party uses the attorney-client privilege as both a sword and a shield." Id., at *4; see also id., at *7

---

[1]The United States Supreme Court and the Court of Appeals for the Federal Circuit have noted that testimonial evidence by an attorney can, in certain circumstances, effect a waiver of the privilege afforded by the work product doctrine and the attorney-client privilege. See United States v. Nobles, 422 U.S. 225, 239-240 (1975); In re Pioneer Hi-Bred Int'l, Inc., 238 F.3d 1370, 1376 (Fed. Cir. 2001).

("The overarching goal of waiver in such a case is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice."). Accordingly, "[t]o prevent such abuses, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter." Id., at *4.

It appears to the court that the rationale in Echo Star could also apply when a party attempts to support its position or its actions "by disclosing an attorney-client communication" where the communication is used as a testimonial source of factual information on a subject that would be favorable to the disclosing party. Id.; see also Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1349 (Fed. Cir. 2005) ("The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not.") (emphasis added); In re Pioneer Hi-Bred Int'l, Inc., 238 F.3d 1370, 1376 (Fed. Cir. 2001) ("Counsel is often a fact witness with respect to various events, and may testify on deposition by the opposing party as to such matters without waiver. A different result would obtain, of course, if counsel were offered to testify as to privileged or protected matters and might obtain if counsel were offered as a fact witness at trial by his client."). Accordingly, in such circumstances, the party "waives the attorney-client privilege as to all such communications regarding the same subject matter." Id. However, where a party supports its position only by relying on a witness's personal knowledge or his understanding of particular facts, even if the facts themselves were communicated to the witness in a protected attorney-client communication, the party does not waive the attorney-client privilege with respect to communications regarding the same subject matter. See Upjohn Co. v. United States, 449 U.S. 383, 395 (1981) ("The [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."); Pioneer, 238 F.3d at 1374 ("A party does not forego the attorney-client privilege with respect to merger negotiations by disclosing the existence of the merger, the negotiations between the parties concerning the merger, or the property rights of the respective parties, and a waiver occurs only when a party relies on or discloses advice of counsel or other privileged information in connection with the merger.").

A. Attorney-Client Privilege Documents: Nos. 16, 57, 248, 559 and 560

Document Nos. 16, 57, 248, 559 and 560 are all described on plaintiff's Revised Privilege Log as containing "communication[s]" or "correspondence" between PG&E counsel, Mr. Warner, and his "client," presumably consisting of PG&E employees,

regarding "legal analysis" or "litigation." See Def.'s Sch. Not. Resp. and Mot. App. at 1-4. To the extent that these representations are true, the documents are protected from discovery by the attorney-client privilege. See First Fed. Sav. Bank of Hegewisch v. United States, 55 Fed. Cl. 263, 266 (2003) (citing Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 484-85 (2000)). Simply offering into evidence the letters about which Mr. Warner will testify, or asking Mr. Warner to testify about his personal knowledge of the letters or his understanding of particular facts in or surrounding the letters (even if the facts themselves were communicated to Mr. Warner in a protected attorney-client communication), does not automatically waive the attorney-client privilege with respect to these documents that were allegedly "prepared by Mr. Warner in the approximate time period and/or concern[] the same subject matter as [the letters]." Def.'s Sch. Not. Resp. and Mot. at 4. Rather, Mr. Warner must provide "cherry-picked" testimony in order for plaintiff to waive the attorney-client privilege for all documents and/or communications with the same subject matter as the letters. See Echo Star, 2006 WL 1149528, at *3; Upjohn, 449 U.S. at 395; Pioneer, 238 F.3d at 1374, 1376. Under such circumstances, in addition to potential hearsay objections, plaintiff would be using such communications selectively as a sword, by waiving the privilege for favorable communications, and a shield, by asserting the privilege for unfavorable communications, a practice which the court will not permit. See id., at *4.

At the TSC, plaintiff's counsel indicated to the court that "Mr. Warner will not be testifying about conversations he had with PG&E employees." To the extent that this representation is and remains true throughout Mr. Warner's testimony and to the extent that Mr. Warner's testimony cannot be viewed as "cherry-picked" testimony as described in this Order, defendant's motion to compel Document Nos. 16, 57, 248, 559 and 560 is DENIED.

B. Work Product Doctrine Document: No. 248

While the above analysis also covers this document with respect to the attorney-client privilege, plaintiff has also listed Document No. 248 as being protected by the work product doctrine. See Def.'s Sch. Not. Resp. and Mot. App. (plaintiff's Revised Privilege Log) at 3. Based on its description in plaintiff's Revised Privilege Log, see id. ("E-mail chain regarding high level waste meeting - redacted portion containing communication from counsel (C. Warner) to client and counsel (R. Locke) regarding legal analysis of high level waste storage issues.") (capitalization omitted), this document appears to fall under the first category of work product described in Echo Star: "documents that embody a communication between the attorney and client concerning the subject matter of the case," 2006 WL 1149528, at *6. Under Echo Star, waiver of work product protection for this type of document can occur under the same circumstance that waiver of attorney-

client privilege protection occurs. See id. Accordingly, if Mr. Warner provides "cherry-picked" testimony with respect to the three DOE letters, plaintiff will have waived work product protection for this document. See United States v. Nobles, 422 U.S. 225, 239-240 ("Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination."). However, to the extent that Mr. Warner does not provide "cherry-picked" testimony, defendant's motion to compel Document No. 248 is DENIED.

C. Work Product Doctrine Document: No. 558

Document No. 558 is listed by plaintiff as protected only under the work product doctrine. See Def.'s Sch. Not. Resp. and Mot. App. (plaintiff's Revised Privilege Log) at 4. Based on its description in plaintiff's Revised Privilege Log, see id. ("Proposed agenda for nuclear waste issues meeting regarding spent fuel litigation. Contains marginal notes reflecting thoughts and impressions of counsel (Hogan & Hartson)) (capitalization omitted), this document appears to fall under the second category of work product documents described in Echostar: "documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client," 2006 WL 1149528, at *6. For this type of work product, "counsel's legal opinions and mental impressions that were not communicated do not acquire . . . factual characteristics [as to what was communicated] and are, therefore, not within the scope of the waiver." Id., at *7. Accordingly, based on the description in plaintiff's Revised Privilege Log, under no circumstances would this document be produced to defendant, and defendant's motion to compel Document No. 558 is DENIED.

IV. Defendant's Motion to Compel Discovery Concerning Document Produced by Plaintiff on May 24, 2006

Defendant describes the circumstances surrounding plaintiff's May 24, 2006 production of a previously withheld report prepared by David L. Duke. See Def.'s Doc. Mot. at 1-5. Defendant requests, "because of the inexplicably late production of this document," id. at 6, that the court issue an order that, inter alia, (1) compels PG&E to produce the cover letter from PG&E's counsel that accompanied references to the document in PG&E's privilege log, and (2) compels PG&E to produce Mr. Duke for a deposition, id. at 7. Further to the TSC, the court ORDERS plaintiff to produce the cover letter that accompanied the document at issue. Further to the discussion at the TSC, the parties shall attempt to contact Mr. Duke and arrange for a telephonic deposition of Mr. Duke at a date and time convenient to the parties and Mr. Duke at or before 8:00 p.m.

E.D.T. on Wednesday, June 14, 2006. The parties shall inform the court as to the progress, if any, they have made in this regard. The court will accept for filing deposition designations and counter-designations for Mr. Duke's deposition, if any, until the close of trial. The parties shall coordinate designations and counter-designations to assure compliance with the foregoing schedule.

V. Documents Created by the NRC

Defendant contends that certain of plaintiff exhibits created by the Nuclear Regulatory Commission (NRC) cannot constitute admissions as non-hearsay under Rule 801(d)(2)(D) of the Federal Rules of Evidence (FRE) and that therefore they should not be admissible at trial for the truth of their contents. See Def.'s NRC Memo. at 2. While defendant acknowledges that "the defendant in this case is the United States, rather than a particular agency of the United States," id., defendant states that the "ultimate dispute that gave rise to this litigation . . . is one that involves only DOE and the other parties to the Standard Contract," id. at 3. According to defendant, to allow NRC-created documents to be admissible for their truth as admissions of DOE would be tantamount to allowing "every document generated by every other Federal agency [to] constitute an 'admission' of the Government that somehow binds the particular agency in the dispute." Id. Defendant argues that "the results that would follow would be absurd." Id. at 5. In addition, defendant contends that, because "the only role for . . . NRC under the [Nuclear Waste Policy Act (NWPA)] is that of regulator," and because "NRC does not make . . . decisions for DOE" and is not in an agency relationship with DOE, a view that NRC's decisions "could constitute 'party admissions' against DOE is simply nonsensical." Id. at 6.

Plaintiff responds, "There is no requirement that the declarant be employed by the government agency involved in the litigation or that . . . he be related somehow to the 'contracting' agency." Pl.'s NRC Memo. Resp. at 3. Moreover, contends plaintiff, "the power of an official to bind an agency by contract[] ha[s] nothing to do with the admissibility of evidence." Id. at 3-4. According to plaintiff, when "DOE and NRC may not . . . see eye to eye," this "goes to weight, not admissibility." Id. at 5. Plaintiff argues that "[i]f the government contends that there is some reason that the [c]ourt should not lend credence to the documents generated by . . . NRC, that argument does not preclude their admission into evidence." Id.

The court agrees with plaintiff. As an initial matter, many of the exhibits identified by defendant are not documents created by NRC, but rather DOE, or are business records or public records. As stated by the court and for the reasons provided at the TSC, these documents, which consist of Plaintiff's Exhibit (PX) 25, 297, 297, 321,

326, 336, 322, 117, 338, 342, 354, 485, 537 and 611, are otherwise admissible at trial for the truth of their contents.[2]

With respect to the rest of the disputed documents that were created by officials at NRC, the court finds them admissible as non-hearsay under FRE 801(d)(2)(D) as admissions of the United States government, the defendant in this case. See Globe Sav. Bank, FSB v. United States, 61 Fed. Cl. 91, 97 (2004) (finding admissible as an admission of the government the statements of the head of the Policy Research Section of the Federal Deposit Insurance Corporation and noting that "[t]he Rule expressly concerns the declarant's relationship with the party-opponent, which in this case is the United States, not a particular agency."); Long Island Sav. Bank, FSB v. United States, 63 Fed. Cl. 157, 166 (2004) ("There is no requirement that the particular agency at which a deponent was employed at the time of the deposition match the subject matter of the admissions. The party-opponent is the United States, not a particular agency."); Transam. Corp. v. United States, 15 Cl. Ct. 420, 472 (1988) (finding a statement by the Librarian of Congress regarding the appraised value of a donation to be admission of the government in a tax case involving the Internal Revenue Service and noting that "[t]he defendant in this tax refund case is the United States. There is only one United States for purposes of the Tucker Act."); United States v. Am. Tel. & Tel. Co. (AT&T), 498 F. Supp. 353, 358 (D.D.C. 1980) (finding statements made by officials within the Department of Defense and other executive agencies admissible as admissions against the government and noting that "[t]he adversaries in this litigation are not the Department of Justice and the Legal Office of AT&T; they are the United States of America and the American Telephone and Telegraph Company, Western Electric Company, and Bell Telephone Laboratories.").

The court does not – nor need it – hold that "every document generated by every other Federal agency . . . constitute[s] an 'admission' of the Government that somehow binds the particular agency in the dispute." Def.'s NRC Memo. at 3; see also United States v. Van Griffen, 874 F.2d 634, 638 (9th Cir. 1989) (finding a publication from the National Highways Traffic Safety Administration to be an admission of the United States but stating that "[w]e do not say that every publication of every branch of government of the United States can be treated as a party admission by the United States under Fed. R. Evid. 801(d)(2)(D)."). However, in this circumstance, where the relevant agency is intimately associated with many issues involved in the litigation and directly engaged in many of the activities, requirements, and responsibilities of the United States in connection with the litigation, the court finds that statements made by the agency may constitute admissions of the United States under FRE 801(d)(2)(D). See Transam. Corp.,

[2]Plaintiff has withdrawn PX 576, see Pl.'s NRC Memo. Resp. at 6 n.3, and plaintiff states that PX 331 "is not being offered for the truth of the matter asserted," id. at 6.

15 Cl. Ct. at 472 ("[FRE 801(d)(2)(D)] "reflects the theory that admissibility of the statement in evidence is a result of the adversary system rather than satisfaction of the conditions of the hearsay rule. No guaranty of trustworthiness is required in the case of an admission." (citing FRE 801, advisory committee note)); AT&T, 498 F. Supp. at 357 (noting that "[t]he government . . . does not argue that the statements were made outside the scope of the employment of these officials[, but rather] that for purposes of the party-opponent admissions rule the 'plaintiff' in this case should not be deemed to encompass the Executive Branch in its entirety, but should be limited to the Department of Justice," and rejecting this argument because, inter alia, "[i]n the view of the Court, the concerns and activities of the government generally are implicated by this antitrust suit, not merely those of the Department of Justice").

Accordingly, to the extent that a PX created by a NRC official "concerns a matter within the scope of the agency" relationship with the United States and is created "during the existence of the relationship," FRE 801(d)(2)(D), the exhibit is admissible for the truth of its contents at trial. See United States v. Barile, 286 F.3d 749, 758 (4th Cir. 2002) ("If [defendant] can lay a foundation for the statements, they are admissible over any hearsay objection because [the declarant] made them in her capacity as a government official on matters within the scope of her employment, and as such, the statements are of a party-opponent and therefore not hearsay."); Myers Investigative and Sec. Servs., Inc. v. United States, 47 Fed. Cl. 288, 295 (2000) ("The court finds that [the declarant's] statements concern matters within the scope of his employment as [administrative contracting officer], and therefore constitute admissions." (citing Clark v. United States, 8 Cl. Ct. 649, 651 n.1 (1985) ("statements of United States government officials concerning a matter within the scope of their employment are not hearsay"))). The fact that the statements and views contained within such an exhibit are those of NRC, and not DOE, goes to the weight the court will afford the document – not its admissibility – at trial. Accord AT&T, 498 F. Supp. at 358 n.14 ("The rulings herein concern solely admissibility; they do not foreclose the opponent from attempting to refute the evidence being admitted notwithstanding the hearsay rule, nor do they assign any specific weight to such evidence. As concerns specifically the documents being admitted pursuant to Rule 801(d)(2)(D) against the government, the Court intends to assign weight thereto depending upon the character of the documents; the time when they were generated; and the status or rank of the official generating them, as well as his relationship to the issues being litigated in this case.").

## VI. Conclusion

Further to Parts III.A-C of this Order, plaintiff shall (1) provide in camera to the court at or before 8:00 a.m. E.D.T. on Monday, June 5, 2006 two copies of Document

Nos., 16, 57, 248, 559 and 560; (2) bring to trial four copies of each of Document Nos. 16, 57, 248, 559 and 560 in form suitable for admission into evidence at trial. The parties shall be prepared to begin trial at 9:00 am E.D.T. on Monday, June 5, 2006. The parties are invited to contact the court at any time when it appears that the involvement of the court may assist in securing "the just, speedy, and inexpensive determination of [this] action." RCFC 1.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge