# In the United States Court of Federal Claims

No. 04-74C
(into which has been consolidated No. 04-75C)

(E-Filed: April 27, 2006)
(Re-E-Filed: June 20, 2006)*

| | |
|---|---|
| PACIFIC GAS & ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Motion for Reconsideration of Order on Motion to Compel Documents Withheld Under the Deliberative Process Privilege; RCFC 59; RCFC 37(a)(2); Scope of Privilege; Procedural Requirements for Invocation of the Privilege; Failure to Meet Procedural Requirements for Invocation of Privilege; Cure of Failure by Provision to Court of Deliberative Process Documents and Affidavits for In Camera Review; Balance of Asserted Harm from Disclosure Against Need for Discovery |

Jerry Stouck, Washington, DC, for plaintiff. Robert L. Shapiro, Washington, DC, of counsel.

John C. Ekman, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Jane K. Taylor, Office of General Counsel, United States Department of Energy, Washington, DC, and Scott R. Damelin, Sharon A. Snyder, Joshua E. Gardner, and Todd J. Cochran, Civil Division, Department of Justice, Washington, DC, of counsel.

ORDER

---

*This Order is being reissued in response to Defendant's Motion for Publication filed on June 19, 2006, with three additions: 1) catchwords to the right of the case caption; 2) names of counsel for each party; and 3) name of judge.

HEWITT, Judge

Before the court are Defendant's Motion for Reconsideration of the Court's Order Dated March 14, 2006 (Recons. Mot. or Reconsideration Motion), PG&E's Opposition to Motion for Reconsideration (Pl.'s Resp. or Response), Defendant's Re[p]ly to Plaintiff's Response to Defendant's Motion for Reconsideration of the Court's Order Dated March 14, 2006 (Def.'s Reply or Reply), and PG&E's Surreply to Government's Motion for Reconsideration of Court's March 14, 2006 Order Regarding Deliberative Process Privilege (Pl.'s Surreply or Surreply). Pursuant to Rule 59 of the Rules of the Court of Federal Claims (RCFC), the Reconsideration Motion seeks reconsideration of the court's Order dated March 14, 2006 compelling production of documents for which defendant claimed protection under the deliberative process privilege (Order to Compel). See Recons. Mot. at 1.

In order to facilitate its reconsideration and to avoid possible sources of delay, the court ordered, while briefing on the Reconsideration Motion was pending, that defendant provide to the court for review in camera each document it continued to withhold under the deliberative process privilege. See Order of April 23, 2006.[1] In addition, the court ordered defendant to provide to the court for review in camera ex parte affidavits accompanying documents, written by the same government officials on whose affidavits defendant relied to invoke the deliberative process privilege. Id. The court ordered that these ex parte affidavits "describe with specificity the 'precise and certain reasons' for maintaining the confidentiality of each document that continues to be withheld," id., a

[1]The United States Supreme Court has stated that "in camera review is a highly appropriate and useful means of dealing with claims of governmental privilege." Kerr v. U.S. Dist. Court for the N. Dist. of Cal., 426 U.S. 394, 406 (1976); see also id. at 405-06 ("Petitioners' claims of privilege rest in large part on the notion that turning over the requested documents would result in substantial injury to the State's prison-parole system by unnecessarily chilling the free and uninhibited exchange of ideas between staff members within the system . . . . In light of the potential seriousness of these considerations and in light of the fact that the weight to be accorded them will inevitably vary with the nature of the specific documents in question, it would seem that an in camera review of the documents is a relatively costless and eminently worthwhile method to insure that the balance between petitioners'claims of irrelevance and privilege and plaintiffs' asserted need for the documents is correctly struck.") (footnotes omitted); United States v. Bd. of Educ. of Chicago, 610 F. Supp. 695, 699 (N.D. Ill. 1985) ("An in camera inspection may properly be used to decide whether a party's claim of litigative need outweighs the government's interest in confidentiality."); Scott Paper Co. v. United States, 943 F. Supp. 489, 498 n.8 (E.D. Pa. 1996) ("Several courts have held that given the strong competing interests to be balanced, th[e deliberative process] privilege usually requires examination of the documents in camera.").

requirement found to be unfulfilled by defendant in the court's Order to Compel, see Pac. Gas & Elec. Co. v. United States (PG&E), No. 04-74C, 2006 U.S. Claims LEXIS 63, at **43-44 (Fed. Cl. Mar. 14, 2006).

The court now has before it these documents and ex parte affidavits, submitted by defendant on April 11, 2006.[2] See Defendant's Notice of Submission of Documents and Ex Parte Affidavits for In Camera Review (Not. of Sub.) at 1. Plaintiff opposes the court's direction to submit these documents and ex parte affidavits for review in camera as inconsistent with the court's Order to Compel. See Pl.'s Resp. at 11. Alternatively, plaintiff asserts that, "to whatever extent the [c]ourt may consider the new affidavits, the [c]ourt should order them released to PG&E under the protective order (or at least to PG&E's outside counsel) so as to avoid unfairness and severe prejudice." Id. at 11 n.2. Plaintiff states that, "if the [c]ourt should reverse the conclusion reached in its published opinion and find that the deliberative process privilege has been properly asserted as to one or more documents, PG&E is entitled to know what harm the government claimed in its affidavits so PG&E can[,] in turn, argue that its need outweighs the assert[ed] harm proffered by the government." Pl.'s Surreply at 3.

The court now makes the following orders:

## I. The 92 Documents as to Which Defendant Asserts a Privilege in Addition to the Deliberative Process Privilege

---

[2]Specifically, the court has before it: (1) Declaration of Ronald A. Milner (Milner Decl. or Milner Declaration), consisting of an affidavit signed on March 31, 2006 by Ronald A. Milner, Chief Operating Officer, Office of Civilian Radioactive Waste Management (OCRWM), Department of Energy (DOE), and each corresponding document which he continues to believe to be protected from discovery by the deliberative process privilege; (2) Declaration of Martin J. Virgilio (Virgilio Decl. or Virgilio Declaration), consisting of an affidavit signed on April 11, 2006 by Martin J. Virgilio, Deputy Executive Director for Materials, Research, State and Compliance Programs, Nuclear Regulatory Commission (NRC), and each corresponding document which he continues to believe to be protected from discovery by the deliberative process privilege; (3) Declaration of Frank Marcinowski (Marcinowski Decl. or Marcinowski Declaration), consisting of an affidavit signed on April 11, 2006 by Frank Marcinowski, Deputy Assistant Secretary for Logistics & Waste Disposition Enhancements, Office of Environmental Management (OEM), DOE, and each corresponding document which he continues to believe to be protected from discovery by the deliberative process privilege; and (4) Declaration of Gregory H. Friedman (Friedman Decl. or Friedman Declaration), consisting of an affidavit signed on April 10, 2006 by Gregory H. Friedman, Inspector General, DOE, and each corresponding document which he continues to believe to be protected from discovery by the deliberative process privilege.

For the reasons stated in plaintiff's Response, see Pl.'s Resp. at 13, defendant shall not be required to produce any portion of the 92 documents as to which a privilege in addition to the deliberative process privilege, i.e., attorney-client privilege or work product protection, was asserted and not challenged, see Recons. Mot. at 27-28. However, to the extent that this Order – either directly or through its guidance – resolves in plaintiff's favor the question of whether defendant may continue to protect any of these 92 documents under the deliberative process privilege, defendant shall PRODUCE to plaintiff the documents with the attorney-client or work product material redacted.

II. The Documents Which Government Officials No Longer Believe to be Protected From Discovery by the Deliberative Process Privilege

Three of the four government officials upon whose affidavits defendant relies have withdrawn some of their previous assertions of protection of documents from discovery based on the deliberative process privilege. See Milner Decl. at 9; Virgilio Decl. at 4; Marcinowski Decl. at 5-6. Defendant states that, "[t]o the extent that no other privilege was asserted with regard to those documents, we expect to provide PG&E with copies of those documents." Not. of Sub. Attachment (Att.) at 2 (cover letter from defendant to the court regarding submission of ex parte affidavits and documents to the court for review in camera). To the extent that defendant has not already done so, defendant shall PRODUCE to plaintiff the documents previously withheld as to which a government official has withdrawn his claim of protection from discovery based on the deliberative process privilege.

III. The Documents Which Defendant Continues to Claim to be Protected From Discovery Under the Deliberative Process Privilege

Based on the briefing by the parties and the court's reconsideration of the issues, the court disagrees with arguments advanced by defendant for reconsideration of the court's Order to Compel. In particular, the court disagrees that, at the time the deliberative process privilege is asserted by the government, it need not obtain affidavits from appropriate government officials in support of its assertion. See Recons. Mot. at 6-16. First, the court did not, as defendant suggests, see id. at 6-7, find that the government waived the right to assert the deliberative process privilege by waiting until it responded to plaintiff's motion to compel to execute affidavits in support of its assertion of the privilege, see generally PG&E, 2006 U.S. Claims LEXIS 63, at **45-51. Rather, the court merely found such practice to be "procedurally deficient," thereby eroding the credibility of defendant's claim of the privilege. See id., at **50-51. Second, the court takes issue with defendant's argument that requiring affidavits in advance of a response to a motion to compel "would create an extraordinary – and completely unnecessary –

demand on the scarce time of public officials." Recons. Mot. at 13. As the court emphasized in its Order to Compel,

> [t]he rationale for requiring an agency head or official to whom authority has been carefully delegated, rather than government counsel, to "invoke[] the privilege during an exhaustive examination of the voluminous documents at issue," is to allow those "official[s] with expertise in the nature of the privilege claim and documents at issue," to determine whether the public interest in confidentiality outweighs the public interest in disclosure.

PG&E, 2006 U.S. Claims LEXIS 63, at **50-51 (quoting Marriott Int'l Resorts, L.P. v. United States, 437 F.3d 1302, 1304, 1308 (Fed. Cir. 2006)). In order to possess credibility and survive scrutiny, this determination should be made by a government official at the time the government asserts the deliberative process privilege. See id. Defendant's argument to the contrary belies the notion that government officials, rather than government counsel, made the decision to assert the deliberative process privilege in this case.

Moreover, it does not appear to the court that applying heightened scrutiny to the government's assertion of the deliberative process privilege where such an assertion is not supported by affidavits executed by government officials until after the government's opponent files a motion to compel is overly burdensome or prejudicial to the government. The parties' counsel can still, as defendant states, "resolve[ their disputes] consensually, without need for the [c]ourt's involvement," Recons. Mot. at 13, and without need to resort to obtaining a formal affidavit to support all preliminary assertions of the deliberative process privilege. As to those documents about which the parties are unable to agree, however, if the government wishes to continue (successfully) to assert that the deliberative process privilege protects them from discovery, the government should carefully support that assertion with an affidavit from an agency official at that time. See PG&E, 2006 U.S. Claims LEXIS 63, at **50-51. The court agrees with plaintiff that "the purported time demands on agency officials would exist whether affidavits are prepared before or after the privilege is claimed, so these 'time demands' do not support allowing the affidavits to be submitted later rather than sooner." Pl.'s Resp. at 7. Accordingly, the court declines to reconsider Part II.B.3 of its Order to Compel.[3]

---

[3]The court recognizes that there are authorities that have stated that the deliberative process privilege need not be formally invoked until after the opposing party files a motion to compel. See, e.g., In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997); Abramson v. United (continued...)

In addition, the court disagrees with defendant that all of the delegations of authority to assert the deliberative process privilege were "carefully undertaken," Marriott, 437 F.3d at 1308, in this case, see Recons. Mot. at 23-27. In its Order to Compel, the court provided numerous examples of delegations and redelegations relied on by defendant that "were extremely broad in scope and provided little, if any, 'criteria for invoking the privilege.'" PG&E, 2006 U.S. Claims LEXIS 63, at *30 (quoting Marriott, 437 F.3d at 1308). While the delegation from the Chairman of the NRC to Martin Virgilio, the Director of the Office of Nuclear Materials Safety and Safeguards, appears to the court to be sufficiently "carefully undertaken," see Recons. Mot. at 24-5, other delegations, as explained in the court's Order to Compel, are not nearly as detailed or specific. In any event, the court did not rely on its determination that defendant's delegations were not carefully undertaken in ruling on plaintiff's motion to compel. See PG&E, 2006 U.S. Claims LEXIS 63, at *32 ("[E]ven if the government's various delegations of authority . . . could be viewed as proper . . . [,] the government's invocation of privilege contains two further procedural deficiencies."). Accordingly, the court declines to reconsider Part II.B.1 of its Order to Compel.

Finally, the court disagrees with defendant that the affidavits upon which it relied in invoking the privilege "provided as much information as possible without actually disclosing the contents of the deliberations." Recons. Mot. at 18. As the court explained in its Order to Compel, each of the affidavits on which defendant relied "include[d] a very vague, general and conclusory statement as to why the confidentiality of the listed documents should be maintained." PG&E, 2006 U.S. Claims LEXIS 63, at *37. This was insufficient because "[t]he court believes that the deliberative process privilege can be invoked only if the proponent of the privilege explains with particularity how or why disclosures of the substance of the documents would harm an identified deliberative function." Id., at *33 n.11 (emphasis added); see also Walsky Constr. Co. v. United States, 20 Cl. Ct. 317, 320 (1990) (government must "supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested documents"). Such an explanation need not reveal the contents of the deliberations; rather, it must only identify, with respect to a specific document or type of documents, why that document should be protected from discovery and what specific harm will result from its disclosure.

---

[3](...continued)
States, 39 Fed. Cl. 290, 294 n.3 (1997). None of these authorities, however, state that a court may not consider the fact that the government did not formally invoke the privilege with supporting affidavits at the time the government asserted the privilege in determining whether the procedure used by the government for invoking the privilege supports a finding that the privilege claim is sufficient or credible.

Defendant failed to meet this requirement.[4] Accordingly, the court declines to reconsider Part II.B.2 of its Order to Compel.

However, after reviewing a number of the ex parte affidavits and documents provided to the court for review in camera, the court exercises its discretion in the circumstances of this case to afford defendant the opportunity properly to assert the deliberative process privilege over the documents it continues to withhold. For many of the documents that continue to be withheld by defendant under the deliberative process privilege, the ex parte affidavits make clear what the previously submitted affidavits executed in support of the government's assertion of the deliberative process privilege did not: that harm particular to the substance and contents of each document may be caused to defendant by disclosure of the document to plaintiff.

Accordingly, defendant shall, on or before Monday, May 1, 2006, provide to plaintiff each affidavit in substantially the form provided to the court in defendant's April 11, 2006 submission for the court's review in camera.[5] Plaintiff shall carefully consider

---

[4]The court notes that most, if not all, of the descriptions of harm to the deliberative function and the reasons for maintaining the confidentiality of each document provided in the ex parte affidavits that were supplied to the court on April 11, 2006, appear to the court to be sufficiently "precise and certain" to meet this requirement. Significantly, most, if not all, of these descriptions do not appear to the court to "disclos[e] the contents of the deliberations." Recons. Mot. at 18.

[5]The court uses the phrase "substantially the form provided" because defendant may redact, summarize or compress the few passages in these affidavits that are particularly revelatory of the contents of deliberations. For example, defendant may redact, summarize, or compress the specific "[e]xamples of some issues addressed in the deliberative process" provided on page 5 of the Virgilio Affidavit. However, the court notes by way of example that the remainder of the Virgilio Declaration, while sufficiently providing "precise and certain" reasons for maintaining the confidentiality of the described documents, does not appear to the court to reveal the contents of the described documents such that redaction, summarizing, or compression is necessary. Many of the descriptions of the documents are similar to those in defendant's original privilege log already provided to plaintiff. Compare Virgilio Decl. at 9 ("[Document 408] contains information outlining the NRC's legal position and the effects of various options relating to the NRC's response to Dr. Kadak's request that the NRC redefine GTCC as HLW.") with Pacific Gas & Electric Company's Motion to Compel Production of Documents Withheld Under the "Deliberative Process" Privilege (Pl.'s Mot. to Compel or PG&E's Motion to Compel) Appendix (App.) (Table of Challenges) at A34 (describing Document 408 as "[b]ackground information relating to [NRC]'s response to [D]r. Kadak's request that [NRC] redefine GTCC waste as HLW."); see also PG&E, 2006 U.S. Claims LEXIS 63, at *33 n.11 ("The court does not base its (continued...)

the affidavits and may, on or before Friday, May 5, 2006, move the court to compel production of any of the documents described in the affidavits, based on "'a showing of evidentiary need . . . that outweighs the harm that disclosure of such information may cause to the defendant.'" PG&E, 2006 U.S. Claims LEXIS 63, at *17 (quoting Alaska v. United States, 16 Cl. Ct. 5, 11 (1988)); see also Marriott, 437 F.3d at 1307 ("[A] showing of compelling need can overcome the qualified deliberative process privilege.").[6] Statements of need should be directly related to evidentiary issues in this case, such as the government's potential rate of acceptance of spent nuclear fuel (SNF) from nuclear utilities and the government's policy with respect to Greater-Than-Class C (GTCC) waste.

The court now provides brief analyses of various descriptions of documents provided in the ex parte affidavits submitted to the court on April 11, 2006 for the purpose of permitting the parties to analogize these examples to disputed documents not mentioned in this Order and thereby to resolve any further discovery disputes involving the deliberative process privilege that may arise. Before plaintiff files a motion to compel based on evidentiary need, the parties shall confer in an effort to resolve any such disputes using the guidance provided by this Order.

A. Examples of Documents Which Appear to the Court to be Particularly "Predecisional" and "Deliberative" Such that Plaintiff Must Make a Showing of Substantial Need in Order to Succeed in Compelling Production

---

[5](...continued)
conclusion here on an alleged failure by defendant to meet the more general procedural requirement that the information or documents sought to be shielded must be identified and described.") (quotation omitted).

[6]Factors that some courts have considered to balance plaintiff's need for disclosure against the harm that disclosure may cause to the government include:

> (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that is, would hinder frank and independent discussion about governmental policies and decisions.

See, e.g., Ferrell v. United States, 177 F.R.D. 425, 429 (N. D. Ill. 1998) (quotation omitted).

1. Documents Included in the Milner Declaration

Document No. 110[7] is described by Ronald A. Milner, Chief Operating Officer, Office of Civilian Radioactive Waste Management, DOE, as an intra-agency communication providing recommendations and opinions regarding "the methods through which the [DOE] would safeguard irradiated nuclear materials." Milner Decl. at 14. Mr. Milner states that, "[i]f this pre-decisional document were released, and [agency officials] subject to deposition regarding their input, [they] would be less likely to provide frank input in the future. It is critical that decision-makers receive unfettered advice from qualified individuals before finalizing this kind of policy decision." Id. at 14-15. This description, as well as an examination of the document itself, indicates to the court that Document No. 110 is the type of document that the deliberative process privilege is designed to protect. Moreover, it is not readily apparent to the court why plaintiff has a "compelling need" for the document, Marriott, 437 F.3d at 1307, that outweighs the harm that disclosure of the document may cause to defendant. Accordingly, if the parties are unable to come to an agreement regarding Document No. 110, plaintiff must make a showing of compelling need for production of the document in its motion to compel filed on or before May 5, 2006.

Document No. 112 and 166 are described by Mr. Milner as an inter-agency communication regarding "whether DOE would elect to store spent nuclear fuel in an interim storage facility, and this document reflects DOE's considerations and deliberations that relate to that decision." Milner Decl. at 17. Mr. Milner states that the

> [r]elease of the options being considered as part of this process would cause a barrage of criticism from outside parties, before the [Office of Management and Budget (OMB)] has even had the chance to analyze the suggestions. Such a reaction would overwhelm decision-makers and bring the process to a virtual halt. Further, DOE personnel would be less likely to offer the kind of creative ideas necessary to an informed decision if they are aware of the potential publication of their comments, and the ensuing difficulties.

Id. at 17-18. This description, as well as an examination of the documents themselves, indicates to the court that Document Nos. 112 and 166 are the type of documents that the deliberative process privilege is designed to protect. Moreover, it is not readily apparent to the court why plaintiff has a "compelling need" for the documents, Marriott, 437 F.3d

---

[7]All document numbers refer to those from the Table of Challenges in the Appendix to PG&E's Motion to Compel.

at 1307, that outweighs the harm that disclosure of the documents may cause to defendant. Accordingly, if the parties are unable to come to an agreement regarding Document Nos. 112 and 166, plaintiff must make a showing of compelling need for production of the documents in its motion to compel filed on or before May 5, 2006.

Document No. 377 is described by Mr. Milner as a draft memorandum for Under Secretary of Energy Robert Card that "reveals the deliberations within DOE regarding the identification of the rail corridor and contains a detailed explanation of why one corridor was recommended over others." Milner Decl. at 36. Mr. Milner explains that,

> [a]lthough seemingly irrelevant to th[is] litigation . . . , this decision is the subject of other litigation which could be impacted as the result of the release of this document. . . . If memoranda such as this one are subject to disclosure, the authors may be inclined to be less detailed in providing recommendations regarding the pending decision, which could result in decisions being made without the benefit of a full consideration of the issues.

Id. This description, as well as an examination of the document itself, indicates to the court that Document No. 377 is the type of document that the deliberative process privilege is designed to protect. Moreover, it is not readily apparent to the court why plaintiff has a "compelling need" for the document, Marriott, 437 F.3d at 1307, that outweighs the harm that disclosure of the document may cause to defendant. Accordingly, if the parties are unable to come to an agreement regarding Document No. 377, plaintiff must make a showing of compelling need for production of the document in its motion to compel filed on or before May 5, 2006.

Document Nos. 367 and 369 are described by Mr. Milner as containing a government official's "recommendations and opinions regarding the terms [of the Standard Contract] to be modified if modifications are undertaken." Milner Decl. at 37. Mr. Milner explains that

> DOE has not made a final decision that the Standard Contract should be modified and what terms should be modified. [This government official] would certainly expect to be questioned in further depositions about his opinions about these possible contract modifications . . . if this document is released, even though no decision . . . has been made. Such questioning likely will quell [his] willingness and the willingness of others to make similar recommendations in the future or participate in future deliberations regarding whether and how the Standard Contract should be modified.

Id. at 37-38. This description, as well as an examination of the documents themselves, indicates to the court that Document Nos. 367 and 369 are the type of documents that the deliberative process privilege is designed to protect. Moreover, it is not readily apparent to the court why plaintiff has a "compelling need" for the documents, Marriott, 437 F.3d at 1307, that outweighs the harm that disclosure of the documents may cause to defendant. Accordingly, if the parties are unable to come to an agreement regarding Document Nos. 112 and 166, plaintiff must make a showing of compelling need for production of the documents in its motion to compel filed on or before May 5, 2006.

Document Nos. 228, 231, and 257 are described by Mr. Milner as documents created by OCRWM personnel that present "possible activities that could be undertaken to reduce the cost and schedule for the construction of the repository and opinions as to the likelihood of successfully implementing each of the ideas." Milner Decl. at 46. Mr. Milner explains that,

> [i]f OCRWM personnel know that documents containing such ideas will be released and that they will be questioned about why certain cost reduction activities could or could not be undertaken, they will be unwilling to think creatively about how program costs can be reduced in the future.

Id. This description, as well as an examination of the documents themselves, indicates to the court that Document Nos. 228, 231 and 257 are the type of documents that the deliberative process privilege is designed to protect. Moreover, it is not readily apparent to the court why plaintiff has a "compelling need" for the documents, Marriott, 437 F.3d at 1307, that outweighs the harm that disclosure of the documents may cause to defendant. Accordingly, if the parties are unable to come to an agreement regarding Document Nos. 228, 231 and 257, plaintiff must make a showing of compelling need for production of the documents in its motion to compel filed on or before May 5, 2006.

2. Documents Included in the Friedman Declaration

Document Nos. 306 and 308 are described by Gregory H. Friedman, Inspector General, DOE, as "revised draft [Office of Inspector General (OIG)] audit report[s] to OCRWM regarding the review of Yucca Mountain's surface facilities." Virgilio Decl. at 6. Mr. Virgilio explains that "[b]oth of these documents differ from the final letter report issued in April 2002 and reflect the predecisional process of the OIG." Id. Mr. Virgilio concludes that,

> [i]f these draft documents were released, it would create a chilling effect on my staff and make them less likely to provide feedback to subordinates for

> fear that their opinions would be exposed to scrutiny. This would cause harm to the audit process because of our reliance on candid input and feedback from audit management when drafting audit reports. Without supervisory review of draft documents, the quality of our audit work would certainly decline and jeopardize audit quality control procedures as a result of this chilling effect.

Id. at 7. This description, as well as an examination of the documents themselves, indicates to the court that Document Nos. 306 and 308 are the type of documents that the deliberative process privilege is designed to protect. In addition, the fact that the Inspector General has stated his belief that disclosure of the documents "would create a chilling effect on my staff," id., adds credibility to the government's assertion of the deliberative process privilege over the documents. Finally, it is not readily apparent to the court why plaintiff has a "compelling need" for the documents, Marriott, 437 F.3d at 1307, that outweighs the harm that disclosure of the documents may cause to defendant. Accordingly, if the parties are unable to come to an agreement regarding Document Nos. 306 and 308, plaintiff must make a showing of compelling need for production of the documents in its motion to compel filed on or before May 5, 2006.

Document No. 309 is described by Mr. Friedman as "workpaper" that "contains data and questions submitted by an OIG auditor to OCRWM during the survey stage of the audit." Friedman Decl. at 7. Mr. Friedman states that disclosure of the document would potentially impede the audit process and that "any impediments would be detrimental to the ability of the OIG to conduct audits and [would] jeopardize its mission to prevent and detect waste, fraud, and abuse within DOE." Id. This description, as well as an examination of the document itself, indicates to the court that Document No. 309 is the type of document that the deliberative process privilege is designed to protect. In addition, the fact that the Inspector General has stated his belief that disclosure of the document "would create a chilling effect on my staff," id., adds credibility to the government's assertion of the deliberative process privilege over the document. Finally, it is not readily apparent to the court why plaintiff has a "compelling need" for the document, Marriott, 437 F.3d at 1307, that outweighs the harm that disclosure of the document may cause to defendant. Accordingly, if the parties are unable to come to an agreement regarding Document No. 309, plaintiff must make a showing of compelling need for production of the documents in its motion to compel filed on or before May 5, 2006.

3. Documents Included in the Virgilio and Marcinowski Declarations

The descriptions of documents provided in the Virgilio and Marcinowski Declarations, as well as an examination of a number of the documents themselves, indicate to the court that most, if not all, of the documents covered by the Virgilio and Marcinowski Declarations are the type of documents that the deliberative process privilege is designed to protect. However, it also appears to the court that these documents could be highly relevant to this litigation – potentially more so than the documents described in Parts III.A.1 and III.A.2 above – such that plaintiff may have a substantial evidentiary need for their disclosure that outweighs defendant's interest in their confidentiality. Many of the documents in the Virgilio Affidavit relate to the pre-decisional and deliberative process that preceded a decision by NRC as to whether to redefine GTCC waste as high-level radioactive waste (HLW). See Virgilio Decl. at 4-7. Many of the documents in the Marcinowksi Affidavit relate to the pre-decisional and deliberative process that precede a decision (not yet made) by DOE as to the steps to be taken to prepare and complete an Environmental Impact Statement (EIS) for GTCC waste. See Marcinowski Decl. at 2-4. Documents related to the government's storage and disposal of GTCC waste potentially are needed by plaintiff in this litigation for the reasons provided in PG&E's Motion to Compel, see Pl.'s Mot. to Compel at 22, and its Reply in Support of Motion to Compel "Deliberative Process" Documents (Pl.'s Reply to Mot. to Compel or Reply to Motion to Compel), see Pl.'s Reply to Mot. to Compel at 28. Plaintiff states that it has a compelling need for GTCC-related documents for the same reasons that were articulated by this court in Yankee Atomic Electric Co. v. United States, No. 98-126C:

> [D]efendant has indicated a litigation position that the continued presence of [GTCC waste] on a reactor site, requiring storage and security costs, would obviate or reduce damages, such as storage or security costs, that are claimed based on the failure of the government to commence removal of spent nuclear fuel by January 31, 19[9]8. Thus, the Government's plans with respect to its obligation . . . to dispose of GTCC, must be fully disclosed to enable the court to make a finding(s) on the validity of this defense defendant asserts. It appears there may only be inchoate plans, or recommended plans, but it is concluded that unless defendant abandons its GTCC defense against monetary claims in this matter, there exists a compelling necessity for the production of all documentation which can contribute to an evidentiary finding as to whether GTCC material will be left on a reactor site after [SNF] and/or [HLW] is removed.

Pl.'s Reply to Mot. to Compel App. at 3 (Order of August 25, 2003 in Yankee Atomic Electric Co. v. United States, No. 98-126C).

The court agrees that, if defendant takes a "litigation position" in this case that the continued storage of GTCC waste at PG&E's storage facilities after January 31, 1998 "would obviate or reduce damages" claimed by plaintiff, then plaintiff's evidentiary need for production of documents related to GTCC waste and described in the Virgilio Declaration, the Marcinowski Declaration, or any other declaration before the court, see, e.g., Milner Decl. at 29, would potentially outweigh defendant's interest in maintaining the confidentiality of these documents. However, as of the date of this Order, the court is not aware that defendant has indicated such a "litigation position" in this case. Defendant is to file its responsive Memorandum of Contentions of Fact and Law (Memorandum) on Monday, May 1, 2006, see Scheduling Order of March 24, 2006, the same day defendant is to provide to plaintiff each affidavit in substantially the form provided to the court in defendant's April 11, 2006 submission. Accordingly, if the parties are unable to come to an agreement regarding GTCC-related documents, and if defendant does indicate such a "litigation position" in its Memorandum, plaintiff may, based on defendant's "litigation position," make a showing of evidentiary need for documents related to GTCC waste that outweighs the government's interest in confidentiality of such documents in its motion to compel filed on or before May 5, 2006.[8]

B. Examples of Documents for Which Plaintiff's Evidentiary Need Outweighs the Harm that Disclosure May Cause to Defendant

With respect to a number of the documents before the court, the descriptions of the documents provided by the ex parte affidavits, as well as an examination of the documents themselves, indicate to the court that defendant's interest in maintaining the confidentiality of the documents – while described with sufficient particularity – is outweighed by plaintiff's evidentiary need for the documents.[9]

Document Nos. 114, 116, 120, 121, 126, 147, 148, 149, 194, 234, 239, 247, 250, 288, 339, 343 and 345 are described by Mr. Milner as "copies of slides addressing the

---

[8]Of course, plaintiff may articulate other reasons that its evidentiary need for documents related to GTCC waste outweighs the government's interest in the confidentiality of these documents.

[9]In weighing the parties' interests, the court keeps in mind that "any need the government might have for confidentiality . . . is diminished by the fact that the court has issued a Protective Order in this case stating that '[c]onfidential [m]aterial shall be used by the receiving party solely for the purpose of conducting litigation in the spent nuclear fuel cases pending in the United States Court of Federal Claims and not for any business or other purpose whatsoever.'" PG&E, 2006 U.S. Claims LEXIS 62, at *44 n.12 (quoting Order of April 21, 2005 at 2).

impact of high receipt rates on waste site inventories that were used for a graphic presentation for group discussion of options regarding the design and operation of a repository at Yucca Mountain and the effect of those options upon SNF inventories." Milner Decl. at 53. Mr. Milner explains that "[t]hese documents were produced in response to Under Secretary Card's request for an analysis of how DOE could accelerate the process of waste acceptance once the program began operations." Id. It appears to the court that these documents regarding the potential rate of acceptance by the government of SNF from nuclear utilities – which could be helpful in determining the rate of acceptance the government would have used had it began to perform the Standard Contract on January 31, 1998 – are highly relevant to this litigation and that there may be no other way for plaintiff to obtain evidence that serves the same purpose as these documents. See Ferrell, 177 F.R.D. at 429; First Heights Bank, FSB v. United States, 46 Fed. Cl. 312, 322 (2000). The court determines that plaintiff's evidentiary need for these documents outweighs the harm that their disclosure may cause to defendant. Accordingly, defendant shall PRODUCE to plaintiff Document Nos. 114, 116, 120, 121, 126, 147, 148, 149, 194, 234, 239, 247, 250, 288, 339, 343 and 345.

Document Nos. 117, 144 and 344 are described by Mr. Milner as "draft written answers to questions raised involving a presentation to Under Secretary Card regarding waste acceptance rates and system costs and OCRWM's plans for transportation." Milner Decl. at 54. It appears to the court that these documents regarding the potential rate of acceptance by the government of SNF from nuclear utilities – which could be helpful in determining the rate of acceptance the government would have used had it began to perform the Standard Contract on January 31, 2006 – are highly relevant to this litigation and that there may be no other way for plaintiff to obtain evidence that serves the same purpose as these documents. See Ferrell, 177 F.R.D. at 429; First Heights, 46 Fed. Cl. at 322. The court determines that plaintiff's evidentiary need for these documents outweighs the harm that their disclosure may cause to defendant. Accordingly, defendant shall PRODUCE to plaintiff Document Nos. 117, 144 and 344.

Document Nos. 128, 133, 134, 139, 142, 328, 330, 360 and 380 are described by Mr. Milner as "presentations titled 'Impacts of Accelerated Waste Acceptance' and similar documents provid[ing] information requested by Under Secretary Card in connection with policy decisions to be made within DOE regarding waste acceptance." Milner Decl. at 55. It appears to the court that these documents regarding the potential rate of acceptance by the government of SNF from nuclear utilities – which could be helpful in determining the rate of acceptance the government would have used had it began to perform the Standard Contract on January 31, 2006 – are highly relevant to this litigation and that there may be no other way for plaintiff to obtain evidence that serves the same purpose as these documents. See Ferrell, 177 F.R.D. at 429; First Heights, 46

Fed. Cl. at 322. The court determines that plaintiff's evidentiary need for these documents outweighs the harm that their disclosure may cause to defendant. Accordingly, defendant shall PRODUCE to plaintiff Document Nos. 128, 133, 134, 139, 142, 328, 330, 360 and 380.

## IV. Conclusion

To the extent described in the foregoing, the court's Order to Compel is MODIFIED and defendant's Reconsideration Motion is GRANTED-IN-PART and is otherwise DENIED.

Defendant is hereby ORDERED to produce to plaintiff (1) unredacted portions, if any, of any of the 92 documents described in Part I of this Order as to which defendant has asserted a privilege in addition to the deliberative process privilege; (2) all documents previously withheld as to which a government official has withdrawn his claim of protection from discovery based on the deliberative process privilege as described in Part II of this Order; (3) on or before Monday, May 1, 2006, each affidavit in "substantially the form provided," as defined in footnote 5 of this Order, to the court in defendant's April 11, 2006 submission for the court's review in camera; and (4) Document Nos. 114, 116, 120, 121, 126, 147, 148, 149, 194, 234, 239, 247, 250, 288, 339, 343, 345, 117, 144, 344, 128, 133, 134, 139, 142, 328, 330, 360 and 380.

The parties are hereby ORDERED to confer in an effort to resolve any remaining disputes, using the guidance provided by this Order.

To the extent that the parties are unable to come to an agreement with regard to any of the remaining documents withheld under the deliberative process privilege and described in the government's affidavits, plaintiff may, on or before Friday, May 5, 2006, move the court to compel production of any of these documents based on a showing of evidentiary need that outweighs the harm that disclosure of the documents may cause to defendant.

The parties are invited to contact the court at any time when it appears that the involvement of the court may assist in securing "the just, speedy, and inexpensive determination of [this] action." RCFC 1.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT

Judge