IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Filed Electronically on August 1, 2006

| | |
|---|---|
| PACIFIC GAS & ELECTRIC CO., Plaintiff, v. UNITED STATES OF AMERICA, Defendant. | No. 04-74C, into which has been consolidated 04-75C (Judge Hewitt) |

PG&E'S MOTION TO AMEND COMPLAINT[1]

PG&E moves pursuant to RCFC 15(a) for leave to file an amended complaint. The amendment conforms the complaint to the Court's March 30, 2006 opinion and order limiting the recent trial to damages through 2004, and also divides PG&E's claim for partial breach of contract damages into two parts: (1) for damages incurred through 2004, and (2) for subsequently incurred damages. PG&E seeks leave to file such an amended pleading in order to facilitate the Court's award now of the damages PG&E has incurred due to the government's partial breach of contract through 2004, while preserving PG&E's claim for damages incurred after 2004 in a subsequent round or rounds of litigation.

Specifically, PG&E seeks leave to divide Count I of its complaint into two parts. Count I currently contains five paragraphs. *See* Complaint in 04-74C ¶¶ 21-25.[2] All but

[1] This motion should be deemed applicable to the complaints in both 04-74C and 04-75C.

the last paragraph would remain unchanged. Count IA and Count IB as amended would each contain two paragraphs:

25A. As a result of DOE's partial breach of contract, PG&E has incurred additional costs associated with its extended storage of PG&E's HBPP-related SNF through 2004.

25AA. By reason of the foregoing, the government is liable to PG&E for damages for partial breach of contract.

25B. As a result of DOE's partial breach of contract, PG&E has incurred and will continue to incur additional costs associated with its extended storage of PG&E's SNF after 2004.

25BB. By reason of the foregoing, the government is liable to PG&E for damages for partial breach of contract.

Attached to this motion are copies of PG&E's proposed second amended complaints in Case Nos. 04-074C and 04-075C, which contain the above provisions. Upon obtaining leave of Court, PG&E will date and file those second amended complaints.

## DISCUSSION

1. PG&E's complaint, in addition to other claims, seeks damages for partial breach of contract stemming from DOE's failure to promptly dispose of PG&E's spent fuel. The complaint states it seeks damages resulting from DOE's partial breach through 2010, and notes that PG&E may join claims for subsequent damages should DOE's partial breach continue. Complaint ¶ 25. After filing the complaint, PG&E initially sought to litigate its damages through 2012. However, in its March 30 ruling, the Court limited damages at the recent trial to those incurred through 2004. The Court concluded

[2] The text discusses one of PG&E's two complaints, but the substance is also applicable to the complaint in No. 04-075C. Count I of that complaint contains six paragraphs, numbered 17-22.

that "[a]ny claims for damages after December 31, 2004 are deemed unripe and will not be considered by the court in the trial of this action." *Pacific Gas & Electric Co. v. United States*, 70 Fed. Cl. 758, 765 (2006).

In part, the present motion is aimed at ripening the post-2004 claims. With respect to damages through 2004, as PG&E explained in its initial post-trial brief the Court should exercise its authority under RCFC 54(b) to award damages to PG&E through 2004, and to enter judgment on that award, while allowing this case to continue so as to address post-2004 damages in subsequent proceedings. In part, the present motion is aimed at delineating the pre-2004 and post-2004 damages claims, thus allowing the former (PG&E's claim for pre-2004 damages) to be awarded and finalized pursuant to Rule 54(b) and the latter (PG&E's claim post-2004 damages) to remain pending for further proceedings.

2. Allowing this amendment is appropriate under applicable law and as a matter of sound case administration. Because post-2004 damages are in essence a continuation of damages and issues already litigated in this case, there is no reason to institute a new action and certainly no reason to undertake initial disclosures, basic discovery and other such matters that have already been completed in this case.

Ultimately there may be little practical difference between amending the complaint as PG&E suggests, on the one hand, and on the other hand ending this case and starting a new one to pursue post-2004 damages. If PG&E were to file a new action for post-2004 damages, it would qualify as a directly-related case under RCFC 40.2(a), because the new case would involve both the same parties and similar facts, *see* RCFC 40.2(a)(1)(A), and the same contract, *see* RCFC 40.2(a)(1)(B), as the present action.

Under Rule 40.2(a), the new case would thus be automatically assigned to the same Judge as this case. Proceeding as PG&E requests, through amendment of the complaint, award of judgment on damages through 2004 under Rule 54(b), and continuation of proceedings on post-2004 damages in this case, is a more direct and efficient ("speedy and inexpensive," *see* RCFC 1) procedural course.

It is also more just. There is one potentially serious and material difficulty with the alternative of filing a new action. An argument can be made that DOE's default involves one, continuing legal claim that arose when DOE first committed its "partial breach" in 1998. And if that "single claim" argument were to prevail, a new action filed now or in the future would be barred by the six-year statute of limitations.

3. PG&E acknowledges that language in *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1378 (Fed. Cir. 2005), cuts against the "single claim" argument: "In the case of the continuing contractual obligations owed after an initial suit for partial breach has been filed, subsequent claims for future damages are considered to accrue for the purposes of the statute of limitations at the time such damages are incurred." But that language could be read as mere *dicta* in *Indiana Michigan*, since the case did not involve any "subsequent claims for future damages." And because the statute of limitations is a jurisdictional matter in this Court, when the Federal Circuit is squarely presented with the question it undoubtedly will provide a clear answer – which at present does not exist, creating some risk to PG&E and other plaintiffs if their currently-pending suits are to terminate completely.

The procedural course PG&E proposes, in addition to its efficiency and other advantages, will eliminate this risk. Amending PG&E's complaint as requested will

clearly delineate PG&E's suit into two distinct claims: one for damages through 2004, and one for post-2004 damages. Use of Rule 54(b) to enter partial judgment on PG&E's claim for damages through 2004 will confirm the Federal Circuit's *dicta* in *Indiana Michigan* that claims for future damages in these spent fuel cases are, for statute of limitations purposes, distinct from claims for past damages. Rule 54(b), which is entitled "Judgment upon Multiple Claims or Involving Multiple Parties," provides in pertinent part that "[w]hen more than one claim for relief is presented in an action . . . . the court may direct entry of a final judgment as to one or more but fewer than all of the claims or parties only upon . . . an express direction for entry of judgment." Thus, by entering judgment under this Rule on PG&E's past damages claim, the Court will be making a determination – consistent with *Indiana Michigan* – that PG&E's past damages claim is distinct from its future damages claim. *See Houston Indus., Inc. v. United States*, 78 F.3d 564, 567 (Fed. Cir. 1996) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956) ("[A] judgment is final for Rule 54(b) purposes when it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'").

The impact of *Indiana Michigan* on "subsequent claims for future damages," and particularly on the operation of the statute of limitations on such claims, is not certain, because *Indiana Michigan* did not actually involve any such subsequent claim for future damages. Under PG&E's proposed amended complaint, this case will involve such a subsequent claim. Allowing the amendment and proceeding as PG&E proposes will therefore give the Court an opportunity to provide clear guidance on this issue, and to ameliorate any concern that a new complaint in a separate action after final judgment in this action would be barred by the statute of limitations. These are important issues for

all spent fuel litigants, given the obvious fact that "subsequent claims for future damages" are likely to be filed in most if not all spent fuel cases for an indefinite number of years into the future.

4. The text and policy behind RCFC 15(a) strongly favor allowing amendments except in limited circumstances, none of which appear here. As the Supreme Court has explained,

> [i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Forman v. Davis*, 371 U.S. 178, 182 (1962). Prejudice to the opposing party has been identified as the most important factor listed by *Forman. See* 6 Wright, Miller and Kane, *Federal Practice and Procedure, 2d Ed.* § 1487 at p. 613 (1990).

Here, there is every reason to allow the amendment PG&E proposes, and no reason to deny it. The amended complaint would not prejudice the government, since the government has long been on notice that PG&E has claims for damages both before and after 2004. PG&E has not unduly delayed seeking leave to amend its complaint, since the Court only resolved the issue of the timeframe for damages to be addressed at the recent trial on March 30. Prior to then PG&E did not need the requested amendment, and considering the intervening trial and attendant activities, this motion comes promptly after need for the requested amendment arose.

PG&E is mindful that in its March 30, 2006, Opinion and Order, the Court, in discussing amending the complaint to limit damages at the trial to those through 2004, mentioned RCFC 15(b) and 15(c) in addition to RCFC 15(a). *Pacific Gas & Electric*

*Co.*, 70 Fed. CL. At 765. Ultimately, the choice between which part of Rule 15 to invoke may not be significant. "Parties and courts occasionally confuse supplemental pleadings with amended pleadings and mislabeling is common. However, these misnomers are not of any significance and do not prevent the court from considering a motion to amend or supplement under the proper portion of Rule 15." 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1504 (1990) at 184. Nonetheless, it is PG&E's view that RCFC 15(a) is the correct rule to use in this context. Amended complaints provide the cleanest mechanism for dividing the partial breach of contract claims into multiple parts. Supplemental complaints, in contrast, typically add *new* claims. Indeed, the text of RCFC 15(d) refers to a pleading "setting forth the transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Here, there is no new claim to be added; PG&E is seeking simply to restructure its existing claims. Courts have ruled that that amended, rather than supplemental, complaints are the most appropriate rule to invoke in this context. *See United States v. IBM*, 66 F.R.D. 223, 228 (SDNY 1976) (stating that amended, rather than supplemental, complaint most appropriate where initial complaint alleged continuing violation and plaintiff seeks to add matters that constitute part of that continuing violation, even though the matters relate to occurrences taking place after the filing of the initial complaint); *accord PCB Piezotronics, Inc. v. Kistler Instrument Corp.*, 1999 WL 1067569 at *2 (W.D.N.Y.).[3]

[3] Of course, whether or not there is a "new" claim to be added for subsequent damages is at the heart of the statute of limitations issue PG&E is concerned about. PG&E believes the better view is that there is no new claim – the same partial breach DOE committed in 1998 continues today – but if that is so, then ending this action and starting a new one creates grave statute of limitations difficulties.

## CONCLUSION

For these reasons, the Court should grant PG&E leave to amend its complaint in the manner requested above.

Dated: August 1, 2006

Respectfully submitted,

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 phone
(202) 261-4751 fax
*Counsel for Plaintiff*
PACIFIC GAS & ELECTRIC
COMPANY

Of Counsel:

Robert L. Shapiro
GREENBERG TRAURIG, LLP

# APPENDIX A

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

ELECTRONICALLY FILED ON ________, 2006

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 04-75C<br>(Judge Hewitt) |

**<u>SECOND AMENDED COMPLAINT</u>**

Plaintiff, Pacific Gas and Electric Company ("PG&E"), alleges as follows:

**<u>SUMMARY OF PG&E'S CLAIMS</u>**

1. This case involves the United States Department of Energy's ("DOE") breach of the government's contractual obligation to implement and operate a program for the removal and ultimate disposal of spent nuclear fuel and high-level radioactive waste (collectively "SNF") from commercial nuclear power plants. Under the Nuclear Waste Policy Act of 1982 ("NWPA"), the government entered into a contract in 1983 with PG&E under which the government, in return for payment of substantial fees by PG&E, was obligated to remove PG&E's SNF beginning not later than January 31, 1998. Even though PG&E has paid all required fees, the government has failed to perform its spent fuel removal obligations under the contract. As a result, PG&E has suffered and continues to suffer substantial damages.

2. PG&E's contract with DOE involved the removal of SNF from two nuclear power plants, the Humboldt Bay Power Plant Unit 3 and the Diablo Canyon Power Plant ("DCPP"). This complaint relates to damages arising from DOE's failure to remove SNF from the DCPP.

**JURISDICTION**

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 491(a)(1).

**PARTIES**

4. Plaintiff PG&E is an electric utility company that provides electrical power to residents of California.

5. The defendant is the United States of America, acting by and through DOE.

**STATEMENT OF FACTS**

6. PG&E is the owner and operator of the Diablo Canyon Power Plant, located in San Luis Obisbo County, California. DCPP Unit 1 commenced operations in May 1985; its license is due to expire in September 2021. DCPP Unit 2 commenced operations in August 1985, its license is due to expire in April 2025. Both Units are currently in operation.

7. DCPP is fueled by enriched uranium contained in assemblies, otherwise known as nuclear fuel. Periodically, as the plant generates electricity, the nuclear fuel must be replaced with fresh nuclear fuel. The removed fuel is referred to as spent nuclear fuel.

8. In 1982, Congress enacted the NWPA, 42 U.S.C. §10222, which created a program for the removal and eventual disposal of SNF generated by commercial nuclear power plants. The NWPA codifies the government's responsibility for the removal and

eventual disposal of SNF. Under the NWPA, utilities are responsible for the costs of this program.

9. Consistent with the NWPA, PG&E entered into a contract with DOE on June 30, 1983. A copy of PG&E's contract with DOE is attached as Exhibit 1.

10. PG&E's contract provides that it would pay the government fees which, together with fees paid by other utilities pursuant to similar contracts under the NWPA, would be sufficient for DOE to implement and operate a program for the prompt removal of PG&E's SNF.

11. PG&E's contract provides that, in return for the payment of such fees, DOE would implement and operate a program for the prompt removal and eventual disposal of all SNF that PG&E would be ready to deliver. The contract requires DOE to commence removal of PG&E's SNF not later than January 31, 1998. The contract also requires DOE to provide transportation casks and all necessary transportation of SNF from DCPP to a DOE facility.

12. The mutual intent of the parties at the time of contract formation was that DOE would remove SNF from PG&E on a reasonable schedule, commencing no later than January 31, 1998. The parties intended that, after January 31, 1998, PG&E would not have to incur additional costs for on-site storage of SNF.

13. In accordance with the contract, PG&E has paid DOE all of the fees owed to date for the removal of SNF.

14. In the more than twenty years since the enactment of the NWPA, DOE failed to take actions to develop and implement the spent fuel removal and disposal program or to perform its obligation to remove PG&E's SNF.

15. The United States Court of Appeals for the Federal Circuit has held that the government's failure to commence the removal of SNF in 1998 constitutes a breach of the government's contractual obligations to the nuclear utilities that signed contracts with DOE pursuant to the NWPA. *Maine Yankee v. United States*, 225 F.3d 1336 (Fed. Cir. 2000).

16. DOE has informed PG&E that it will not begin to remove SNF from any utility until at least 2010, and will not commit to any dates upon which it will remove any of PG&E's SNF.

**COUNT I**

**(Damages for Breach of Contract)**

17. The 1983 contract between PG&E and DOE imposed an unconditional obligation on DOE to remove PG&E's SNF promptly according to a reasonable acceptance schedule beginning no later than January 31, 1998, in return for PG&E's payment of the specified fees.

18. PG&E has paid in full all of the fees required to date under the terms of the contract.

19. DOE has breached its contractual obligation to commence SNF removal by January 31, 1998 and to continue to remove PG&E's SNF on a reasonable schedule thereafter, indicating that it will not commence SNF removal under the contract until at least 2010.

20. As a result of DOE's actions and failure to act, PG&E has suffered and will continue to suffer damages resulting from the additional costs to design, construct, and operate facilities to store additional SNF until DOE complies with its contractual obligation to remove SNF, as well as other damages.

21. PG&E will continue to incur additional costs to augment and maintain its SNF storage capacity in the future in order to store additional SNF generated through DCPP's continued operation, as a result of the failure of DOE to remove SNF currently stored in PG&E's existing facilities. These additional costs would not be incurred had DOE performed its contractual obligations.

22A. As a result of DOE's partial breach of contract, PG&E has incurred additional costs associated with its extended storage of PG&E's DCPP-related SNF through 2004.

22AA. By reason of the foregoing, the government is liable to PG&E for damages for partial breach of contract.

22B. As a result of DOE's partial breach of contract, PG&E has incurred and will continue to incur additional costs associated with its extended storage of PG&E's SNF after 2004.

22BB. By reason of the foregoing, the government is liable to PG&E for damages for partial beach of contract.

**COUNT II**

**(Restitution for Breach of Contract)**

23. The 1983 contract between PG&E and DOE imposed an unconditional obligation on DOE to remove PG&E's SNF promptly according to a reasonable acceptance schedule beginning no later than January 31, 1998, in return for PG&E's payment of the specified fees.

24. PG&E has paid in full all of the fees required to date under the terms of the contract.

25. DOE's breach of its contractual obligation to commence removal of PG&E's SNF by January 31, 1998, and continue to remove PG&E's SNF on a reasonable schedule thereafter has materially impaired the value of the contract to PG&E.

26. Therefore, PG&E is entitled to restitution of all fees paid and payable by PG&E to the government under the contract.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff PG&E demands judgment against the United States:

On Count I, for damages as proven by PG&E at trial;

On Count II, for restitution of all sums paid or payable by PG&E to the government pursuant to the terms of the contract as proven by PG&E at trial;

On all Counts, for interest and for such costs, expenses, and attorneys' fees as are available under applicable law, and such other relief as this Court may deem necessary and proper.

Respectfully submitted,

Dated: ________, 2006

______________________________

JERRY STOUCK
Greenberg & Traurig
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006
(202) 331-3173
(202) 261-4751 (Fax)
*Counsel for Plaintiff*
PACIFIC GAS AND ELECTRIC COMPANY

Of Counsel:
Robert L. Shapiro
GREENBERG TRAURIG

# APPENDIX B

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

ELECTRONICALLY FILED ON _________, 2006

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 04-74C<br>(Judge Hewitt) |

**<u>SECOND AMENDED COMPLAINT</u>**

Plaintiff, Pacific Gas and Electric Company ("PG&E"), alleges as follows:

**<u>SUMMARY OF PG&E'S CLAIMS</u>**

1. This case involves the United States Department of Energy's ("DOE") breach of the government's contractual obligation to implement and operate a program for the removal and ultimate disposal of spent nuclear fuel and high-level radioactive waste (collectively "SNF") from commercial nuclear power plants. Under the Nuclear Waste Policy Act of 1982 ("NWPA"), the government entered into a contract in 1983 with PG&E under which the government, in return for payment of substantial fees by PG&E, was obligated to remove PG&E's SNF, beginning not later than January 31, 1998. Even though PG&E has paid all required fees, the government has failed to perform its spent fuel removal obligations under the contract. As a result, PG&E has suffered and continues to suffer substantial damages.

2. PG&E's contract with DOE involved the removal of SNF from two nuclear power plants, the Humboldt Bay Power Plant Unit 3 ("HBPP") and the Diablo Canyon Power Plant. This complaint relates to damages arising from DOE's failure to remove SNF from HBPP.

3. Because PG&E's decommissioning of HBPP is in progress, the government's failure to perform in effect converts PG&E property into a nuclear waste storage facility.

**JURISDICTION**

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1491(a)(1).

**PARTIES**

5. Plaintiff PG&E is an electric utility company that provides electrical power to residents of California.

6. The defendant is the United States of America, acting by and through DOE.

**STATEMENT OF FACTS**

**The Humbolt Power Plant Unit 3**

7. PG&E is the owner of HBPP, a nuclear power plant located in Humboldt County, California. That plant is permanently shutdown. PG&E now holds a possession-only license for the plant, which was issued by the Nuclear Regulatory Commission ("NRC"). HBPP began commercial operations in August 1963. HBPP operated for 13 years until it was shut down in 1976 for a planned refueling outage.

8. During the 1976 outage, NRC raised concerns regarding the impact of seismic activity at the plant site and imposed additional regulations on its continued operation. In light of those regulations and other factors, PG&E elected not to restart HBPP.

9. During its operation, HBPP was fueled by enriched uranium contained in assemblies, otherwise known as nuclear fuel. Periodically, as the plant generated electricity, the nuclear fuel was replaced with fresh nuclear fuel. The removed fuel is referred to as spent nuclear fuel.

10. In approximately 1984, PG&E implemented plans to place HBPP into a custodial SAFSTOR (or mothball mode) for a dormancy period of up to 30 years. In 1984, PG&E discharged all remaining fuel assemblies from the reactor core into its spent fuel pool. PG&E determined that it could not proceed with full decommissioning until the spent fuel was removed from the site.

**The Nuclear Waste Policy Act and PG&E's 1983 Contract**

11. In 1982, Congress enacted the NWPA, 42 U.S.C. §10222, which created a program for the removal and eventual disposal of SNF generated by commercial nuclear power plants. The NWPA codifies the government's responsibility for the removal and eventual disposal of SNF. Under the NWPA, utilities are responsible for the costs of this program.

12. Consistent with the NWPA, PG&E entered into a contract with DOE on June 30, 1983. A copy of PG&E's contract with DOE is attached as Exhibit 1.

13. PG&E's contract provides that it would pay the government fees, which, together with fees paid by other utilities pursuant to similar contracts under the NWPA, would be sufficient for DOE to implement and operate a program for the prompt removal of PG&E's SNF.

14. PG&E's contract provides that, in return for the payment of such fees, DOE would, in fact, implement and operate a program for the prompt removal of all SNF that PG&E would be ready to deliver. The contract requires DOE to commence removal of

PG&E's SNF not later than January 31, 1998. The contract also requires DOE to provide transportation casks and all necessary transportation of SNF from HBPP to a DOE facility.

15. The mutual intent of the parties at the time of contract formation was that DOE would remove SNF from PG&E on a reasonable schedule, commencing no later than January 31, 1998. The parties intended that, after January 31, 1998, PG&E would not have to incur additional costs for on-site storage of SNF.

16. PG&E's contract also provides, and the government specifically contemplated, that priority should be accorded to SNF from shut-down nuclear plants and that DOE would arrange for the removal of SNF promptly after shut-down. In addition, PG&E's contract provides that utilities could exchange preliminary delivery schedules, thereby further assuring prompt removal of SNF.

17. In accordance with the contract, PG&E has paid DOE all of the fees owed to date for the removal of SNF.

18. In the more than twenty years since the enactment of the NWPA, DOE failed to take actions to develop and implement the spent fuel removal and disposal program or to perform its obligation to remove PG&E's SNF.

19. The United States Court of Appeals for the Federal Circuit has held that the government's failure to commence the removal of SNF in 1998 constitutes a breach of the government's contractual obligations to the nuclear utilities that signed contracts with DOE pursuant to the NWPA. *Maine Yankee v. United States*, 225 F.3d 1336 (Fed. Cir. 2000).

20. DOE has informed PG&E that it will not begin to remove SNF from any utility until at least 2010, and will not commit to any dates upon which it will remove any of PG&E's SNF.

**COUNT I**

**(Damages for Breach of Contract)**

21. The 1983 contract between PG&E and DOE imposed an unconditional obligation on DOE to remove PG&E's SNF promptly according to a reasonable acceptance schedule beginning no later than January 31, 1998, in return for PG&E's payment of the specified fees.

22. PG&E has paid in full all of the fees required to date under the terms of the contract.

23. DOE has breached its contractual obligation to commence SNF removal by January 31, 1998 and to continue to remove PG&E's SNF on a reasonable schedule thereafter, indicating that it will not commence SNF removal under the contract until at least 2010.

24. As a result of DOE's actions and failure to act, PG&E has suffered and will continue to suffer damages resulting from the additional costs to design, construct, and operate facilities to store HBPP-related SNF for an extended period, until DOE complies with its contractual obligation to remove PG&E's HBPP-related SNF, as well as other damages. These additional costs would not be incurred had DOE performed its contractual obligations.

25A. As a result of DOE's partial breach of contract, PG&E has incurred additional costs associated with its extended storage of PG&E's HBPP-related SNF through 2004.

25AA. By reason of the foregoing, the government is liable to PG&E for damages for partial breach of contract.

25B. As a result of DOE's partial breach of contract, PG&E has incurred and will continue to incur additional costs associated with its extended storage of PG&E's SNF after 2004.

25BB. By reason of the foregoing, the government is liable to PG&E for damages for partial beach of contract

**COUNT II**

**(Restitution for Breach of Contract)**

25. The 1983 contract between PG&E and DOE imposed an unconditional obligation on DOE to remove PG&E's SNF promptly according to a reasonable acceptance schedule beginning no later than January 31, 1998, in return for PG&E's payment of the specified fees.

26. PG&E has paid in full all of the fees required to date under the terms of the contract.

27. DOE's breach of its contractual obligation to commence removal of PG&E's SNF no later than January 31, 1998 and to continue to remove PG&E's SNF on a reasonable schedule thereafter, has materially impaired the value of the contract to PG&E.

28. Therefore, PG&E is entitled to restitution of all fees paid and payable by PG&E to the government under the contract.

**COUNT III**

**(Uncompensated Taking)**

29. PG&E has been and will be deprived of the effective use and value of property on which the SNF from HBPP is located and must be stored for the foreseeable future, until DOE performs its obligation to remove PG&E's HBPP-related SNF. In fact,

the effect of DOE's failure to perform is to convert HBPP Unit 3 into a nuclear waste storage facility.

30. Therefore, the government has taken PG&E's property and is liable to PG&E for just compensation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff PG&E demands judgment against the United States:

On Count I, for damages as proven by PG&E at trial;

On Count II, for restitution of all sums paid or payable by PG&E to the government pursuant to the terms of the contract as proven by PG&E at trial;

On Count III, for just compensation in an amount to be proven by PG&E at trial;

On all Counts, for interest and for such costs, expenses, and attorneys' fees as are available under applicable law, and such other relief as this Court may deem necessary and proper.

Respectfully submitted,

Dated: _______, 2006

______________________________
JERRY STOUCK
Greenberg & Traurig
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006
(202) 331-3173
(202) 261-4751 (Fax)
*Counsel for Plaintiff*
PACIFIC GAS AND ELECTRIC
COMPANY

Of Counsel:
Robert L. Shapiro
GREENBERG & TRAURIG