# In the United States Court of Federal Claims

No. 04-74C
(into which has been consolidated No. 04-75C)

(E-Filed: December 22, 2006)

| | |
|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, Plaintiff, v. THE UNITED STATES, Defendant. | Motion for Reconsideration; Spent Nuclear Fuel Case; Nuclear Waste Policy Act of 1982, Pub. L. No. 97-425, 96 Stat. 2201; Calculation of Damages; Dry Storage; Reracking |

Jerry Stouck, Washington, DC, for plaintiff. Robert L. Shapiro, Washington, DC, of counsel.

John C. Ekman, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Jane K. Taylor, Office of General Counsel, United States Department of Energy, Washington, DC, and Scott R. Damelin, Joshua E. Gardner, Heide L. Herrmann, Alan J. Lo Re, Sharon A. Snyder, and Marian Sullivan, Civil Division, Department of Justice, Washington, DC, of counsel.

OPINION

HEWITT, Judge

On October 27, 2006, plaintiff submitted PG&E's Motion to Amend Findings and Judgment (Pl.'s Mot. or Motion) on Part II.B.2.a of the trial opinion issued on this case on October 13, 2006, see Pac. Gas & Elec. Co. v. United States (PG&E), No. 04-74, slip op. at 139-42 (Fed. Cl. Oct. 13, 2006) (Trial Opinion). Given the scope of plaintiff's Motion, the court deems it to be a Motion for Reconsideration and acts on it accordingly.

I. Briefing

Plaintiff "moves the [c]ourt, pursuant to Rules [of the United States Court of Federal Claims (RCFC)] 52(b) and . . . 59(a)(1), to amend its findings . . . and . . . the judgment" to reflect the argument that plaintiff would have used a reracking option at Diablo Canyon if the Department of Energy (DOE) had performed in 1998, rather than the dry storage or Independent Spent Fuel Storage Installation (ISFSI) option, as the court held in its Trial Opinion. Pl.'s Mot. at 1; see PG&E, slip op. at 139-42. The crux of plaintiff's argument is that neither party focused on which storage option plaintiff would have selected if it had actually been faced with an MRS pickup schedule, Pl.'s Mot. at 5-6 (citing Trial Transcript (Tr.) at 1183:12-19 (Womack)), and plaintiff's omission concerning this issue was due to the fact that such an argument would go against the position it was supporting, Reply in Support of PG&E's Motion to Amend Findings and Judgment (Pl.'s Reply) at 4. Plaintiff argues that, because parties are presumed to "have acted in an economically rational way," Pl.'s Mot. at 7, and because reracking would have cost approximately one-half of the cost of dry storage, it is reasonable to assume that plaintiff would have chosen reracking over dry storage, id. at 1. Plaintiff argues that the judgment should be amended accordingly, resulting in an $8,798,572 increase in the damages awarded to PG&E. Id. at 9.

Defendant responds that "the [c]ourt should deny PG&E's motion." Defendant's Response to Plaintiff's Motion to Amend Findings and Judgment (Def.'s Response) at 1. Defendant argues that plaintiff's "motion fails to meet the legal standard for reconsideration or amendment of the court's findings." Id. at 3 (capitals omitted). To meet this standard, plaintiff must show: "(1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice." Id. Defendant asserts that plaintiff failed to meet any of these standards. Id. at 4. Contrary to plaintiff's assertions, defendant avers that it argued at trial that plaintiff would have used the dry storage facility, assuming timely performance. Def.'s Response at 10 (quoting Tr. at 1177:21-25 (Womack)). Having failed to address this issue when it was first litigated, despite the court's directions, id. at 15,[1] defendant argues, plaintiff is precluded from urging its consideration by the court in its subsequent Motion. Id. at 9-10.

---

[1]The court ordered that "any portion of an exhibit the import of which with respect to one or more issues in the case is not specifically pointed out by a witness at trial may be disregarded by the court." Order of May 25, 2006 (Docket No. 267) ¶ 1; see generally Pac. Gas & Elec. Co. v. United States (PG&E), No. 04-74, slip op. at 151-72 app. (Fed. Cl. Oct. 13, 2006).

"Even if the court considers PX 185, PG&E's motion should be denied," argues defendant, Def.'s Response at 16 (capitals omitted), because the weight of the evidence does not support plaintiff's assertions, id. at 16-21, and because plaintiff's "economic rationality" definition is too narrow, id. at 18. Lastly, defendant argues that plaintiff's "new argument, if considered by the court, calls into question whether PG&E properly mitigated its damages." Id. at 22 (capitals omitted).

Plaintiff replies by reiterating most of its initial arguments, Pl.'s Reply at 1, and arguing the merits and interpretation of the evidence as presented by defendant, id. at 5-9. Plaintiff sees defendant's mitigation argument as a "far-fetched red herring" because it imposes breach-world standards on the non-breach world when "PG&E's motion to amend presents an entirely distinct issue that arises only in the non-breach world as determined by the [c]ourt." Id. at 9.

## II. Evidence at Trial

Which kind of storage would have been implemented at Diablo Canyon in the non-breach world as anticipated in 1993 was not the central issue at trial. However, the fact that some kind of option would have been chosen came up on defendant's initiative.

At trial, Mr. Lawrence F. Womack, a former PG&E employee, testified on cross-examination as follows:

| | |
|---|---|
| Question by Mr. Gardner, counsel to defendant: | And so if there was no acceptance at Diablo Canyon before 2006, [assuming DOE performance at an MRS,] PG&E would have had to have built dry storage, correct? |
| Answer by Mr. Womack: | I believe that's what I stated yesterday. |

Tr. at 1177:21-25 (Womack). This excerpt from Mr. Womack's testimony could be read as a definitive indication that plaintiff would have implemented dry storage in the non-breach world. Despite this testimony, there is evidence that Mr. Womack was not certain that dry storage specifically would have been implemented absent the breach. Later in Mr. Womack's testimony on cross-examination, the following exchange occurred:

| | |
|---|---|
| Question by Mr. Gardner, counsel to defendant: | How much fuel was DOE obligated to take from Diablo Canyon beginning in 1998? |

| | |
|---|---|
| Answer by Mr. Womack: | Enough . . . for PG&E to have avoided future unnecessary expense, for example, the necessity for an additional reracking or construction of a dry cask storage facility. |

Id. at 1183:12-19. This second excerpt from testimony suggests that, in the first excerpt, Mr. Womack had been acknowledging the necessity of implementing some type of storage at Diablo Canyon, rather than indicating a specific choice of dry storage. In this view, Mr. Womack used dry storage in the first excerpt merely as an example.

In its post-trial brief, defendant briefly touched upon this issue. In an attempt to show that "PG&E cannot establish the necessary causal link between its claimed storage costs and DOE's delay," Defendant's Post-Trial Brief at 24 (capitals omitted), defendant argued that "PG&E clearly had focused its efforts on expanding capacity at [Diablo Canyon] through the implementation of dry storage. PG&E's dry storage plans were made assuming timely DOE performance under the rate of acceptance set forth in the 1991 [annual capacity report]." Id. at 26 (citing DX 226 (August 25, 1992 PG&E memorandum)). To support this assertion, defendant cited evidence showing that "[t]he most feasible options for providing additional spent fuel storage space at [Diablo Canyon] presently appear to be modular dry storage or rod consolidation." DX 226 (August 25, 1992 PG&E memorandum) at 3.

As the foregoing makes clear, the issue of storage at Diablo Canyon in a non-breach world was addressed directly in post-trial briefing and – albeit in a cursory manner – in testimony at trial. Plaintiff had ample opportunity to examine Mr. Womack at trial and/or to address the issue in its post-trial reply. It did neither. See Tr. passim; PG&E's Reply to the Government's Post-Trial Brief (Pl.'s Post-Trial Reply) passim; See also Pacific Gas & Electric's Post Trial Brief (Pl.'s Brief) passim.[2]

---

[2]The parties address in detail in briefing on this Motion the merits and proper interpretations of various other pieces of evidence in addition to the evidence discussed in this Part II. Defendant's Response to Plaintiff's Motion to Amend Findings and Judgment (Def.'s Response) passim; Reply in Support of PG&E's Motion to Amend Findings and Judgment (Pl.'s Reply) passim. Plaintiff argues that the "evidence [adduced by defendant] is either from later time periods, after it was clear the MRS would not be available by 1998, and/or evidence from the 'breach world,' where PG&E obviously did implement dry storage." Pl.'s Reply at 2. The court agrees that the relevant world is "in 1993 when it was still envisioned that DOE could be performing the Standard Contract by 1998 using an MRS," as plaintiff asserts. PG&E, slip op. at 140; Pl.'s Reply at 9-10.

## III. Discussion

### A. Standard of Review for Motion for Reconsideration

A trial court has discretion when deciding whether to grant a motion for reconsideration. Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). RCFC 52(b) provides that "[o]n a party's motion . . . the court may amend its findings" and RCFC 59(a)(1) provides that "[a] . . . reconsideration may be granted . . . for any of the reasons established by the rules of common law." See Pl.'s Mot. at 3. These rules do not, however, suggest that the court should review the issues de novo without good reason. Plaintiff is correct in asserting that a motion for reconsideration "enables a trial court to address oversights" and gives the court an opportunity to amend a decision if it serves "the interests of justice." Pl.'s Reply at 4 (citations omitted). However, plaintiff fails to acknowledge or address defendant's position that "[t]o prevail upon a motion for reconsideration, 'the movant must point to a manifest (i.e., clearly apparent or obvious) error of law or mistake of fact.'" Def.'s Response at 3 (quoting Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002)). Indeed, the case that plaintiff cites to support its position directly supports defendant's argument that a motion "must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." Cane Tenn., Inc. v. United States, 62 Fed. Cl. 703, 705 (2004); see also Griswold v. United States, 61 Fed. Cl. 458, 460-61 (2004) (stating that a motion "must be based on a manifest error of law or mistake of fact and must show either: (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice") (citation omitted); Corrigan v. United States, 70 Fed. Cl. 665, 668 (2006); Seldovia Native Ass'n, Inc. v. United States, 36 Fed. Cl. 593, 594 (1996); Pl.'s Reply at 4; Def.'s Response at 3-4. Thus, while serving "the interests of justice" and "address[ing] oversights," Pl.'s Reply at 4 (citations omitted), are the conceptual purposes of a reconsideration, the standard of review for reconsideration follows the specific criteria outlined in this paragraph.

### B. Application of Standard of Review

#### 1. Plaintiff's Motion is not Based on New Evidence or a Change of Law

Plaintiff does not contend "that previously unavailable evidence is now available" or that "an intervening change in the controlling law has occurred." Griswold, 61 Fed. Cl. at 460-61 (citations omitted); Def.'s Response at 13. Therefore, the court decides this Motion by reviewing the parties' trial presentations based on the evidence available at the time. Plaintiff must meet the burden of showing that something went awry at trial, and

that what went wrong was "clearly apparent or obvious." Ammex, Inc., 52 Fed. Cl. at 557.

2. Plaintiff's Motion is an Attempt to Relitigate

Plaintiff asserts that "neither party focused on which storage option PG&E would have selected if faced with the MRS pickup schedule." Pl.'s Mot. at 5. Defendant contradicts this point and argues that "the [g]overnment repeatedly demonstrated that, assuming performance at an MRS, PG&E would have constructed the dry storage facility." Def.'s Response at 10. What is not in dispute is that plaintiff did not zealously advance a position concerning this issue at trial. See Pl.'s Mot. at 5; Def.'s Response at 12.

Factual determinations are within the sound discretion of a trial court based on the record it has before it. See, e.g., Elk Corp. v. GAF Bldg. Materials Corp., 168 F.3d 28, 30-31 (Fed. Cir. 1999) ("The district court's factual determinations . . . are subject to the clearly erroneous standard . . . ."). As plaintiff correctly points out, "[T]he fact that evidence on this issue was extremely sparse does not obviate the need to resolve the issue based on such evidence as does exist," Pl.'s Reply at 7, which is exactly what the court did when, based on the record before it, it made the determination that plaintiff would have used dry storage in a non-breach world. PG&E, slip op. at 139-42. The threshold issue is whether the court should reconsider this finding because of plaintiff's alleged lack of opportunity to present the issue differently at trial. Pl.'s Mot. at 5-6. The court agrees with defendant that the court should not reconsider this issue.

Plaintiff's argument that it "had no reason to advance evidence about any non-breach world storage costs – PG&E's position was that there would not have been any such costs – and . . . PG&E also had no prior notice that the [c]ourt would identify 1993 as the proper time for assessment of PG&E's non-breach world behavior," Pl.'s Reply at 4-5, is without merit.

If the court were to agree that defendant did, as defendant argues, "repeatedly demonstrate[] that, assuming performance at an MRS, PG&E would have constructed the dry storage facility," Def.'s Response at 10 (emphasis omitted), this circumstance would of course have given plaintiff sufficient "occasion . . . to establish which of the storage options evaluated in PX 185 . . . PG&E would have selected if faced with the MRS pickup schedule," See Pl.'s Mot. at 5-6.

However, even assuming, as plaintiff asserts, that "neither party focused on which storage option PG&E would have selected if faced with the MRS pickup schedule," id. at

5 (emphasis added), plaintiff still failed to meet its burden. Defendant may not have focused at trial on the non-breach world at Diablo Canyon as envisioned in 1993, but it did bring up the issue during testimony and it did take a position on the matter in its opening post-trial brief. See supra, Part II. Plaintiff nevertheless did not address this issue at trial or in its post-trial briefing, id., choosing instead to view "[t]he question at trial [as] whether the costs for dry storage implementation that PG&E has actually incurred at Diablo Canyon, in the breach world, would have been incurred had DOE performed." Pl.'s Reply at 4.

Plaintiff need not have confined itself to arguing its main position. Indeed, "[a] party may set forth two or more statements of a claim . . . alternatively or hypothetically . . . . regardless of consistency and whether based on legal or equitable grounds." RCFC 8(e)(2). Plaintiff's "excuse" for its omission is basically that its theory of the case assumed that it would prevail on its contract interpretation arguments, i.e., that the court would not find for the government on the central issue of the rate of acceptance. See Pl.'s Reply at 4-5 ("PG&E had no reason to advance evidence about any non-breach world storage costs – PG&E's position was that there would not have been any such costs . . . ."). Accordingly, plaintiff did not put on evidence on any other theory.

Plaintiff's strategy of all-eggs-in-one-basket was a strategy plaintiff was explicitly warned against by the court. When plaintiff attempted during the pretrial conference to rely on Commonwealth Edison Co. v. United States (Commonwealth Edison II), 56 Fed. Cl. 652, 665-66 (2003), as a definitive statement of law supporting its proposed acceptance rate of 3000 Metric Tons Uranium (MTU) per year, the court made it unequivocally clear that Commonwealth Edison II "is a ruling on summary judgment in which there is no motion by the utility . . . it's a ruling about what I didn't believe the government was putting forward, but it's . . . not a ruling of what I did believe the plaintiff was putting forward." Transcript of Pretrial Conference (Pretrial Tr.) at 131:10-15. The court went on to explain that "if we went to trial on [these issues], summary judgment [from Commonwealth Edison II] would be gone. . . . The summary judgment only says . . . there are genuine issues of material fact that prevent giving summary judgment to the United States . . . . It can't go any further than that, and it certainly can't bind the United States in another hearing." Pretrial Tr. at 133:24-134:9; see also PG&E, slip op. at 75-76 n.42 ("Plaintiff . . . appears to rely on Commonwealth Edison II . . . for the proposition that the court should insert a 'reasonable rate' of 3,000 MTU into the Standard Contract. . . . Reliance on the Commonwealth II opinion, which simply denied the government's motion for summary judgment regarding the rate of DOE's spent fuel acceptance, is inapt. In this case, having gone through trial, the court has conducted the necessary 'fact-specific inquiry' and determined that insertion of a 'reasonable rate' is not appropriate under the circumstances of this case.").

Additionally, this case was subject to an evidence management order that made clear the court's requirement that "any portion of an exhibit the import of which with respect to one or more issues in the case is not specifically pointed out by a witness at trial may be disregarded by the court." Order of May 25, 2006 (Docket No. 267) ¶ 1; see generally PG&E, slip op. at 151-72 app.

Defendant's treatment of the issue at trial and in post-trial briefing; the "possibility that the [c]ourt might find in the [g]overnment's favor upon the central issue of the rate of acceptance," Def.'s Response at 12; the court's repeated warnings that it would not rely on Commonwealth Edison II and that the issue of the rate of acceptance was not settled; and the court's evidence management order clearly delineating the necessary procedural steps for the court to consider evidence all put plaintiff on notice that it could have argued in the alternative, Def.'s Response at 12; see RCFC 8(e)(2), and it should have done so if it hoped to preserve the issue,[3] Order of May 25, 2006 (Docket No. 267) ¶ 1; see Def.'s Response at 15. "Because PG&E failed to raise this issue 'when it [was] first available to be litigated,' it therefore 'waive[d] consideration by the court of the issue on reconsideration.'" Def.'s Response at 12 (citing Corrigan, 70 Fed. Cl. at 668) (second alteration in original); Cane Tenn., Inc., 62 Fed. Cl. at 705 (holding that a motion for reconsideration "is not intended to give an unhappy litigant an additional chance to sway the court") (quotation omitted); Seldovia Native Ass'n, Inc., 36 Fed. Cl. at 598 ("Motions for reconsideration are not a vehicle for parties to present arguments that they should have made during the regular briefing.") (citation omitted). If there is a "clearly apparent or obvious" error, it is with plaintiff's litigation strategy and not the court's decision. See Ammex, Inc., 52 Fed. Cl. at 557.

3. Plaintiff Asserts No Manifest Mistake of Fact or Error of Law

For a court to reconsider a factual finding, a motion for reconsideration "must be based upon manifest . . . mistake of fact." Cane Tenn., Inc., 62 Fed. Cl. at 705. "PG&E disagrees with the [c]ourt's ultimate conclusion . . . ." Def.'s Response at 8. As defendant clearly demonstrates, however, "PG&E does not dispute any of the [c]ourt's predicate factual findings regarding dry storage at Diablo Canyon." Id. Plaintiff further acknowledges that "PX 185[, the only exhibit plaintiff uses to support its position,] states explicitly . . . all three storage expansion alternatives [dry storage, reracking, and rod

---

[3]The court reminds plaintiff that it gave both parties a final opportunity to tie any loose ends at the conclusion of the trial when it asked them whether they had "concluded [their] presentation of evidence and testimony." Trial Transcript at 3127:14-21. Except for deposition counterdesignations – a matter irrelevant to the issue in this Reconsideration – plaintiff responded in the affirmative. Id. at 3127:22-25.

consolidation] should be considered potentially viable at this time." Pl.'s Reply at 8 (quotation omitted) (second alteration in original). Given the undisputed basis of the court's determination and the lack of contradiction from the record evidence, there is nothing "clearly apparent or obvious[ly wrong]" about a factual conclusion which the court had broad discretion to reach. Ammex, Inc., 52 Fed. Cl. at 557; See Elk Corp., 168 F.3d at 30-31; Def.'s Response at 3.

Plaintiff implies that the court disregarded existing law governing how a court is to determine a party's behavior in a theoretical world. See Pl.'s Mot. at 7. Plaintiff insists that the possibility of dry storage was precluded based solely on the theory that parties are presumed to "have acted in an economically rational way to implement the more cost-effective . . . alternative." Pl.'s Mot. at 7 (citing Roseburg Lumber Co. v. Madigan, 978 F.2d 660, 668 (Fed. Cir. 1992); Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc., 773 F.2d 1506, 1511 (9th Cir. 1985); Murphy Tugboat Co. v. Crowley, 658 F.2d 1256, 1262 (9th Cir. 1981)). None of the cases plaintiff uses for support were cited by plaintiff in its post-trial briefing, which precludes their consideration. Order of May 25, 2006 (Docket No. 267) ¶ 1; Pl.'s Brief passim; Pl.'s Post-Trial Reply passim. Even if the court were to consider these cases, they are readily distinguishable from the issues involved here in that none of plaintiff's cited cases deal with the sensitive problem of spent nuclear fuel (SNF) disposal. See Roseburg Lumber Co., 978 F.2d at 661 (timber); Dolphin Tours, Inc., 773 F.2d at 1508 (Japanese language tours); Murphy Tugboat Co., 658 F.2d at 1257-58 (tugboats). As defendant points out, plaintiff's concept of economic rationality does not take into consideration the "technical, regulatory, licensing, and socio-political concerns" that would necessarily influence any decision concerning the disposal of SNF, a hazardous material that engages a high degree of environmental, political, and regulatory interests, among others. Def.'s Response at 17. With all of these considerations in mind, plaintiff "could select a more expensive technology and still be acting in an economically rational manner." Id. at 18. Plaintiff's argument that "such concerns . . . did not prevent PG&E from successfully completing a reracking of both Diablo Canyon spent fuel pools in the mid-1980's . . . and nothing in the trial record suggests that PG&E could not also overcome any such concerns again," Pl.'s Reply at 7-8, is unpersuasive. While these broader concerns did not prevent plaintiff from reracking Diablo Canyon in the 1980s, neither did they prevent it from implementing dry storage in the late 1990s. Id. at 11. Analogies to different time periods are of limited evidentiary weight. As plaintiff correctly points out, the relevant world is the non-breach world as envisioned in 1993, id. at 9-10, a time removed from what actually happened in either the late 1990s or the mid-1980s. Plaintiff's argument on reconsideration is that, within this relevant world, there is "nothing in the . . . record [to] suggest[] that PG&E could not . . . overcome any such concerns." Id. at 8. But a dearth of evidence to contradict plaintiff's post hoc argument cannot be transformed post hoc into evidence for plaintiff's position.

Given the standard of manifest error, the basic question arising from this motion for reconsideration is not "whether the [c]ourt's conclusion about the 'most favorable' storage option . . . was correct," as plaintiff contends, id. at 1, but rather whether the court's factual conclusion is clearly a result of mistakes. Defendant does not "contend[] that reconsideration of the [c]ourt's . . . finding is . . . legally precluded," as plaintiff asserts. Id. at 3. It simply argues – and the court agrees – that the "motion fails to meet the standards set by this [c]ourt for reconsideration." Def.'s Response at 4.

4. Manifest Injustice

Plaintiff touches only briefly upon the issue of manifest injustice, which it asserts "occurs when, as here, a mistaken finding would deny a plaintiff more than $8.7 million of the damages it is entitled to recover under a correct interpretation of the relevant evidence." Pl.'s Reply at 3.

Plaintiff is correct in stating that one of the standards for a successful motion for reconsideration is "to prevent manifest injustice." Griswold, 61 Fed. Cl. at 460-61. However, the definition of "manifest" is "[c]leary apparent to the sight or understanding; obvious." American Heritage Dictionary at 1064 (4th ed. 2000). Case law follows this definition. Ammex, Inc., 52 Fed. Cl. at 557 (defining "manifest" as "clearly apparent or obvious"). "Manifest injustice" thus refers to injustice that is apparent to the point of being almost indisputable. A difference of approximately $8.7 million between the damages found by the court and what plaintiff seeks by its Motion may be a large numeric difference, but the size of the number does not demonstrate an obvious injustice in this case. Plaintiff's argument for its so-called "correct interpretation," Pl.'s Reply at 3, is unavailing. Plaintiff has simply failed to meet its burden of showing anything that went obviously wrong when the court found that PG&E would have used the dry storage or ISFSI option at Diablo Canyon if DOE had performed in 1998.[4]

III. Conclusion

For the foregoing reasons, plaintiff's Motion is DENIED and the judgment entered on October 13, 2006, shall not be modified.

---

[4] Defendant also argues that "to the extent th[e C]ourt elects to consider PX 185, and PG&E's characterization of that exhibit, PG&E's newfound argument calls into question whether it successfully mitigated its damages in the face of DOE's partial breach." Def.'s Response at 22. Because the court has rejected plaintiff's characterization of PX 185, it is unnecessary for the court to consider the parties' positions on mitigation of damages.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge