No. 04-0074C,
into which has been consolidated No. 04-0075C
(Judge Hewitt)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO ENFORCE THE TERMS OF THE PROTECTIVE ORDER, AS AMENDED BY THE COURT'S ORDER DATED MAY 14, 2006

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 616-0478
Facsimile: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

SCOTT DAMELIN
SHARON SNYDER
JOSHUA E. GARDNER
MARIAN E. SULLIVAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

May 25, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

PAGE(S)

BACKGROUND .................................................................................................................. 1

SUMMARY OF ARGUMENT ........................................................................................... 8

ARGUMENT .................................................................................................................... 9

CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

CASES PAGE(S)

Eagle Comtronics, Inc. v. Arrow Communication Laboratories, Inc.,
305 F.3d 1303 (Fed. Cir. 2002) .......... 10

Lion Raisins, Inc. v. United States,
64 Fed. Cl. 536 (2005) .......... 10

Pacific Gas & Electric Co. v. United States,
71 Fed. Cl. 205 (2006) .......... 3

Public Citizen v. Liggett Group,
858 F.2d 775 (1st Cir. 1988) .......... 9

United Nuclear Corp. v. Cranford Insurance Co.,
905 F.2d 1424 (10th Cir. 1990) .......... 10

Zoltek Corp. v. United States,
71 Fed. Cl. 160 (2006) .......... 9

MISCELLANEOUS

Black's Law Dictionary (6th ed. 1990) .......... 11, 12

# INDEX TO APPENDIX AND ADDENDUM

DOCUMENT PAGE

Letter from Marian E. Sullivan, Department of Justice, to Jerry Stouck and Robert Robert L. Shapiro, Greenberg Traurig, LLP, dated April 2, 2007, regarding Dairyland Power Cooperative v. United States, No. 04-106C (Fed. Cl.), and Pacific Gas & Electric Co. v. United States, Nos. 04-74C & 75C (Fed. Cl.) .................... 1

Letter from Jerry Stouck to Marian E. Sullivan, dated April 4, 2007 .......................................... 4

Order in Pacific Gas & Electric Co. v. United States, Nos. 04-74C & -75C (Fed. Cl. May 14, 2006) ............................................................................................................ 7

Letter from Harold D. Lester, Jr., Department of Justice, to Jerry Stouck, Greenberg Traurig, LLP, dated May 10, 2006, in Pacific Gas & Electric Co. v. United States, Nos. 04-74C & -75C (Fed. Cl.) ........................................................................... 14

Pages from "Pacific Gas & Electric's Second Motion To Compel The Production Of Documents Withheld Under The 'Deliberative Process' Privilege, dated May 11, 2006 ............................................................. 23

Telecopy of draft protective order for Pacific Gas & Electric case from Robert L. Shapiro, counsel for Pacific Gas & Electric Company, dated March 22, 2005 ............................................................................... 25

Letter from Monica Freas, counsel for Pacific Gas & Electric Company, to John C. Ekman, Department of Justice, dated April 4, 2005 .......................................... 30

ADDENDUM DOCUMENTS

ADDENDUM A: "Defendant's Motion To Strike Portions Of Plaintiff's March 19, 2007 Reply Brief And Accompanying Appendix On 'Dairyland's Motion To Compel Documents Withheld Under The Deliberative Process And Attorney-Client Privileges,'" dated May 3, 2007, filed in Dairyland Power Cooperative v. United States, No. 04-106C (Fed. Cl.)

ADDENDUM B: "Dairyland's Response To The Government's Motion To Strike," dated May 9, 2007, filed in Dairyland Power Cooperative v. United States, No. 04-106C (Fed. Cl.)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0074C, into which has been |
| | ) | consolidated No. 04-0075C |
| THE UNITED STATES, | ) | (Judge Hewitt) |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO ENFORCE THE TERMS OF THE PROTECTIVE ORDER, AS AMENDED BY THE COURT'S ORDER DATED MAY 14, 2006

Pursuant to Rule 37(b) of the Rules of the Court of Federal Claims, defendant, the United States, respectfully requests that the Court enforce the terms of the protective order that the Court entered in this case on April 21, 2005, as amended by footnote 3 of its order dated May 14, 2006.[1]

BACKGROUND

On April 21, 2005, early in the discovery process in this case, the Court entered a protective order governing the disclosure of protected material. That protective order generally allowed plaintiffs in the various spent nuclear fuel ("SNF") cases to share protected and/or confidential documents that the United States produced in any individual SNF action. Before the Court issued that protective order, counsel for PG&E had provided the Government with a draft protective order that limited the use of confidential documents "by the receiving party solely for the purpose of conducting the above-entitled litigation and not for any business or other purpose

---

[1/] In addition to filing this motion, we have filed a motion in Dairyland Power Cooperative v. United States, No. 04-106C (Fed. Cl.), seeking to strike from the record of that case the protected documents that are the subject of this motion. For the Court's convenience, copies of that motion to strike and of the response of the plaintiff in that case are attached as an addendum to this motion.

whatsoever, except as provided in this agreement and order." App. 29 (emphasis added).[2] In response to our concern that Dairyland might produce confidential documents relevant to all of the SNF cases and that the Government would be precluded under PG&E's draft protective order from using those universally-relevant documents in other SNF cases, PG&E modified this language to limit use of such documents "for the purpose of conducting litigation in the spent nuclear fuel cases pending in the United States Court of Federal Claims and not for any business or other purpose whatsoever." App. 33 (emphasis added); see App. 30 ("we have addressed the government's concern that language pertaining to the use of confidential material in other SNF cases or by attorneys in other SNF cases was lacking and we have added such language at the outset and in paragraphs 4 and 5 to the proposed order"). Accordingly, counsel for PG&E clearly understood that the purpose of the protective order language was to allow the sharing and use of protected documents in all SNF cases in which protective orders had been issued.

Subsequently, during discovery in this case, PG&E filed a motion to compel the production of documents that the Government had withheld based upon assertions of deliberative process privilege by the Department of Energy ("DOE") and the Nuclear Regulatory Commission ("NRC"). After extensive briefing on the original motion and the Government's motion for reconsideration, the Court issued an order discussing some of the documents over which the Government had claimed privilege, using them as examples to identify the types of documents that the Government should produce because PG&E's need for the documents outweighed the Government's concerns about disclosure and, alternatively, the types of documents over which the Government's interest in protection outweighed PG&E's need for the

[2] "App. ___" refers to the appendix to this motion.

information. Order (Apr. 27, 2007) (Pacific Gas & Elec. Co. v. United States, 71 Fed. Cl. 205 (2006)). Specifically, the Court provided this guidance "for the purpose of permitting the parties to analogize these examples to disputed documents not mentioned in this Order and thereby to resolve any further discovery disputes involving the deliberative process privilege that may arise." Order, at 8. The Court ordered the Government to produce those documents discussed in its April 27, 2006 order about which the Court had found that PG&E's evidentiary need outweighed the Government's concerns regarding disclosure, and it denied PG&E's motion to compel with regard to those documents about which the Court found no such need. The Court then ordered that, "[t]o the extent that the parties are unable to come to an agreement with regard to any of the remaining documents withheld under the deliberative process privilege . . ., plaintiff may . . . move the court to compel production . . . based on a showing of evidentiary need that outweighs the harm that disclosure of the documents may cause to defendant." Order, at 16.

Subsequently, in light of the Court's April 27, 2006 order, the parties engaged in discussions to attempt to resolve disputes about the remaining documents over which the Government had invoked the deliberative process privilege. With regard to some of those documents, the Government agreed that the documents were of the same kind as those that, in its April 27, 2006 order, the Court had indicated PG&E's evidentiary need would outweigh the Government's concerns about disclosure. However, we informed counsel for PG&E that, "[b]ecause we do not want to create any opportunity for any SNF plaintiff, or any plaintiff in other current or future litigation with DOE, to have any grounds for arguing that the Government somehow waived any privilege claims relating to the rate of SNF acceptance, we request that you ask the Court for an order compelling the production of these documents." App. 15-16.

In response, PG&E filed a motion to compel on May 11, 2006, asking the Court to compel the Government to produce the documents that the Government agreed fell within the document production guidance in the Court's April 27, 2006 order, acknowledging the Government's concern about waiver of the privilege in other SNF cases as the basis for its request:

> That letter also states on pp. 2-3 (A51-A52): "[b]ecause we do not want to create any opportunity for any SNF plaintiff, or any plaintiff in other current of future litigation with DOE, to have any grounds for arguing that the Government somehow waived any privilege claims relating to the rate of SNF acceptance, we request that you ask the Court for an order compelling the production of these documents," subject to any appropriate other claims of privilege. Accordingly, PG&E hereby requests that the Court enter an order directing the release of the documents listed above, which are also listed on p. 2 of the government's attached second May 10 letter, subject to redactions for any proper claims of another privilege.

Pacific Gas & Electric's Second Motion To Compel The Production Of Documents Withheld Under The 'Deliberative Process' Privilege, at 3 (filed May 11, 2006). PG&E also requested that the Court order the Government to produce additional documents over which the Government had invoked the deliberative process privilege and that, in light of the Court's April 27, 2006 order, the Government believed should retain the privileged status given that PG&E had no overriding evidentiary need for them.

By order dated May 14, 2006, the Court granted PG&E's motion, in part, and issued an order compelling the Government to produce the documents that it agreed fell within the categories of documents to be produced pursuant to the Court's April 27, 2006 order. With regard to many of the other documents at issue over which the Government had invoked the deliberative process privilege, the Court found that the Government had established that they

were protected by the deliberative process privilege and that PG&E's evidentiary need did not outweigh the Government's interest in maintaining their confidentiality. Order, at 4-5 (May 14, 2006). With regard to other documents, although finding that the documents met the requirements of the deliberative process privilege, the Court found that PG&E had established that its evidentiary need for the documents outweighed the Government's interest in maintaining their confidentiality, and the Court ordered production of those documents. Order, at 3-5 (May 14, 2006).

However, in the May 14, 2006 order that required the production of these documents, and in response to the Government's concern that other spent nuclear fuel plaintiffs might not have the same evidentiary need for the otherwise privileged documents in other cases, the Court amended the pre-existing protective order entered in the case to limit distribution and use of the documents, as follows:

> Every document ordered to be produced by this Order shall be subject to the protective order issued by the Court on April 21, 2005. However, for the purposes of this Order, the Court AMENDS the Protective Order to limit the disclosure and/or use of all documents mentioned in this Order to the attorneys for the plaintiffs in this litigation only, rather than, as stated in the Protective Order, the "attorneys for plaintiffs in the spent nuclear fuel cases."

Id. at 2-3 n.3 (citing Protective Order, entered April 21, 2005) (emphasis in original). That is, although the prior protective order allowed SNF plaintiffs to share protected documents with other counsel and in other SNF cases in which protective orders had been issued, the Court imposed a more stringent limitation upon the disclosure and use of the documents that the Court, through its May 14, 2006 order, required the Government to produce to counsel for PG&E.

Pursuant to the Court's May 14, 2006 order, the Government produced 211 documents, all marked with a protective order legend that read as follows: "Restricted Distribution, Protected Material, With Non-Government Distribution Limited To Attorneys For PG&E, As Defined By Note 3 In the Court's Order Dated May 14, 2006 (PG&E v. US, 04-74) For Use Only In PG&E Case." Although PG&E added several of these documents to its exhibit list, it did not ultimately seek admission of any of them at trial. Subsequently, after the conclusion of trial in this case, the Court issued final judgment on October 13, 2006, and denied PG&E's motion for reconsideration on December 22, 2006. PG&E's appeal of this Court's judgment and the Government's cross-appeal are currently pending before the United States Court of Appeals for the Federal Circuit.

Counsel for PG&E in this case also serves as counsel for another plaintiff in a different spent nuclear fuel case, Dairyland Power Cooperative. On January 18, 2007, counsel for PG&E filed a motion to compel upon behalf of Dairyland in that case, Dairyland Power Cooperative v. United States, No. 04-106C (Fed. Cl.), seeking to compel the production of some of the same documents subject to the deliberative process privilege that the Court ordered produced in this case, as well as many of the privileged documents – both those subject to the deliberative process privilege and those subject to the attorney-client privilege or the attorney work product doctrine – that the Court considered in this case but did not order the Government to produce. The Government opposed the motion to compel, in part because Dairyland had not shown a "compelling need" for the documents, which was the basis for the Court's ordering their production in this case.

On March 19, 2007, in the Dairyland case, Dairyland filed, under seal, its reply to the Government's opposition to Dairyland's motion to compel. In the appendix to this reply,

Dairyland included 35 documents that the Court ordered the Government to produce in Pacific Gas pursuant to the restrictions of footnote 3 of the Court's May 14, 2006 order. Appendix to "Reply In Support Of Dairyland's Motion To Compel Documents Withheld Under The Deliberative Process And Attorney-Client Privileges" ("Dairyland Reply Brief"), at pages 9 to 433 (filed March 19, 2007).[3] All of these documents are endorsed with a protective order legend restricting their disclosure and use to the Pacific Gas case only. In the reply brief that it filed with those documents, Dairyland characterizes the content of many of these documents and urges the Court to review the documents. Dairyland Reply Brief, at 4-6 and 15-17 (filed March 19, 2007). Many of the documents that Dairyland attached to and described in its reply brief relate to issues surrounding Greater-Than-Class-C radioactive waste ("GTCC waste"), an issue about which Dairyland, in its motion to compel, represented that it was not seeking to compel production because "the government has not yet made GTCC waste an issue in [the Dairyland] case." Dairyland's Motion To Compel Of Documents Withheld Under The 'Deliberative Process' And Attorney-Client Privileges," at 9 (Jan. 18, 2007), filed in Dairyland Power Cooperative v. United States, No. 04-0106C (Fed. Cl.).

In response to Dairyland's filing, we notified counsel for Dairyland of our objection to Dairyland's submission to the Court in the Dairyland case copies of documents that were subject to the deliberative process privilege and requested that counsel for Dairyland, who is also

[3] Specifically, the following documents that Dairyland attached to its March 19, 2007 reply brief in Dairyland, all of which relate to Greater-Than-Class-C radioactive waste, were identified in the Court's May 14, 2006 order in this case as Document Nos. 2, 12, 13, 16, 56, 57, 58, 59, 132, 313, 402, 403, 408, 412, 419, 421, 432, 433, and 437. The following additional documents that Dairyland attached to its March 19, 2007 reply brief in Dairyland, which deal with issues other than Greater-Than-Class-C radioactive waste, were identified in this Court's May 14, 2006 order in this case as Document Nos. 119, 144, 196, 212, 220, 223, 249, 268, 287, 321, 334, 347, 361, and 363.

counsel for PG&E, withdraw those portions of its reply brief that discuss the content of protected documents and that it withdraw the protected documents themselves from the record of the Dairyland case. App. 1-3. We informed counsel for Dairyland that its submission of these documents and descriptions of their contents violated this Court's May 14, 2006 order. In response, counsel for Dairyland informed us that its submission to the Court in the Dairyland case did not constitute a "disclosure" of the documents or a "use" of the documents. App. 4-5. Accordingly, Dairyland declined to withdraw them from the record in the Dairyland case.

## SUMMARY OF ARGUMENT

Although final judgment has already issued in this case and the parties' appeals of that final judgment are pending before the United States Court of Appeals for the Federal Circuit, an issue has arisen in another spent nuclear fuel case relating to the protective order that this Court issued in this case on April 21, 2005, as amended by footnote 3 of this Court's May 14, 2006 order. In its May 14, 2006 order, this Court required the Government to produce certain documents that were otherwise protected by the deliberative process privilege to counsel for PG&E, based on PG&E's demonstration of evidentiary need, but it ordered that the "disclosure and use of all documents mentioned in th[at] Order" would be limited "to the attorneys for the plaintiffs in this litigation only, rather than, as stated in the [April 21, 2005] Protective Order, the 'attorneys for plaintiffs in the spent nuclear fuel cases.'"

Counsel for PG&E has violated the terms of the protective order that this Court entered on May 14, 2006. In an appendix to a reply brief that counsel for PG&E, who is now representing another SNF plaintiff in another SNF case, Dairyland Power Cooperative v. United States, No. 04-106C (Fed. Cl.), filed on March 19, 2007, in support of another client's motion to compel, counsel for PG&E filed more than 400 pages of documents that had been produced to

counsel for PG&E in this case subject to the limitations of the May 14, 2006 "disclosure and/or use" restriction. Although final judgment has been entered and the case is on appeal, the Court retains jurisdiction to enforce the terms of the protective order entered by the Court. Pursuant to this jurisdiction, defendant requests that the Court enforce the terms of the protective order and order that counsel for PG&E retrieve any copies of the protected documents that it has distributed outside of counsel's offices and remove from its reply brief in Dairyland any description of the contents of documents outside the context of the information contained in privilege logs. Defendant also requests that the Court order counsel to make a full disclosure of all individuals to whom these documents have been disclosed and to take any other action that it deems appropriate.

## ARGUMENT

This Court issued a protective order that barred counsel for PG&E from making any "disclosure" or "use" of the documents produced in response to the Court's May 14, 2006 order outside of this particular case. RCFC 26(c) provides that the Court may enter protective orders which require "that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place." RCFC 37(b) governs the Court's authority to enforce the protective orders that it issues pursuant to RCFC 26 and provides that, "if a party fails to obey an order to provide or permit discovery . . . the [C]ourt may make such orders in regard to the failure as are just." RCFC 37(b)(2); see Zoltek Corp. v. United States, 71 Fed. Cl. 160, 167 (2006).

Further, the Court issuing a protective order that limits the disclosure or use of documents retains jurisdiction and authority to enforce that order even after the final judgment in the underlying action in which the protective order was issued has issued. See Public Citizen v.

Liggett Group, 858 F.2d 775, 780-82 (1st Cir. 1988) (issuing court necessarily has power to enforce protective order that it issued at any point that it is in effect, even after final judgment); see also United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir. 1990) (as long as protective order remains in effect, issuing court retains jurisdiction to modify it, even if underlying suit has been dismissed).

Here, the Court's May 14, 2006 order expressly "limit[ed] the disclosure and/or use of all documents mentioned in this Order to the attorneys for the plaintiffs in this litigation only, rather than, as stated in the [original] Protective Order [in this case], the 'attorneys for plaintiffs in the spent nuclear fuel cases.'" Order, at 2-3 n.3 (May 14, 2006) (emphasis in original). Counsel for PG&E was clearly prohibited from distributing to any of his clients and from using in other SNF cases the documents that the Court ordered the Government to produce in its May 14, 2006 order. Because of this restriction on the use of these documents, the plaintiff in the Dairyland case, in which counsel for PG&E is representing Dairyland, filed a motion to compel the production of many of the documents that were covered by the Court's April 27 and May 14, 2006 orders. In its reply to the Government's response to its motion to compel, Dairyland attached more than 400 pages of documents that are covered by the restrictions on distribution identified in footnote 3 of the Court's May 14, 2006 order.

Dairyland's filing of the protected documents with the Court in another spent nuclear fuel case is a violation of that order. See Eagle Comtronics, Inc. v. Arrow Communication Laboratories, Inc., 305 F.3d 1303, 1314-1315 (Fed. Cir. 2002) (finding that the filing of documents in another forum violated express terms of protective order, which stated that any documents marked as subject to protective order could not "be used for any purpose other than for this action"); Lion Raisins, Inc. v. United States, 64 Fed. Cl. 536 (2005) (finding protective

order had been violated when Government counsel provided documents to agency that were subject to a protective order, which required the return of all documents to counsel for the producing party upon conclusion of the action). Further, it is unclear from the context of the submission of the documents whether they have been provided to Dairyland itself, which would constitute a further violation of this Court's May 14, 2006 order. To remedy this violation, this Court, at the very least, should order Dairyland immediately to retrieve all copies of documents subject to the May 14, 2006 order that have been distributed outside of counsel for PG&E's office, including withdrawing protected documents and information from the record in Dairyland.

Before filing this motion, we requested that Dairyland voluntarily withdraw the protected documents from the record in Dairyland and withdraw its discussion of the content of those documents from its reply brief. App. 1-3. Dairyland declined, informing us that it had not actually "used" the documents, since this Court, by referencing the word "use," meant "some substantive evidentiary or discovery use" rather than their submission in support of a discovery motion. App. 4. Yet, the word "use" is defined as follows: "Act of employing everything, or state of being employed. . . . The purpose served; a purpose, object or end for useful or advantageous nature. To put or bring into action or service; to employ for or apply to a given purpose. To avail oneself of; to employ; to utilize; to carry out a purpose or action by means of; to put into action or service, especially to attain an end." Black's Law Dictionary 1541 (6th ed. 1990).

Certainly, by submitting these documents to the Court in Dairyland in support of its motion to compel, counsel for PG&E "put [the documents] into action or service . . . to attain an end." That is, it submitted the documents to the Dairyland Court to attempt to persuade the

Court, through the Court's review of these documents and through Dairyland's discussion of their contents, to order the production of all of the other documents over which Government had invoked the deliberative process privilege, including those that this Court had declined to require the Government to produce in this action.

Counsel for Dairyland also asserted that it had not made any "disclosure" of the documents, as that term was used in the Court's May 14, 2006 order, because it filed the documents under seal in the Dairyland case. App. 5. However, the term "disclosure" means the following: "Act of disclosing. Revelation; the impartation of that which is secret or not fully understood." Black's Law Dictionary 464 (6th ed. 1990). Similarly, the term "disclose" means "[t]o bring into view by uncovering; to expose; to make known; to lay bare; to reveal to knowledge; to free from secrecy or ignorance, or make known." Id. Plainly, Dairyland has voluntarily "disclosed" the documents at issue to the Court in the Dairyland case, and they are now a part of the record in that case. Dairyland's assertions to the contrary are nonsensical.

Further, Dairyland informed us that, by submitting the documents to Chief Judge Damich, it "has done nothing more (or less) than request Judge Damich to review the documents *in camera* in the course of deciding the deliberative process privilege issues in [the Dairyland] case," which is "exactly . . . what the Court did, in PG&E." App. 5. However, Dairyland did not ask the Court to conduct an in camera review of these documents. Instead, it placed them in the appendix to its reply brief and discussed their contents in its reply brief, adding the protected documents to the record of the Dairyland case. Further, with regard to many of the protected documents that Dairyland attached to its reply brief, Dairyland is not actually seeking to compel their production. That is, most of the documents that it has attached to its reply are documents that were produced under the restrictive protective order in PG&E based upon PG&E's showing

of compelling need, but that Dairyland has not requested because they are irrelevant to Dairyland's case.

Specifically, the bulk of the more than 400 pages of protected documents that Dairyland has attached to its reply brief relate to issues surrounding the Government's acceptance of Greater-Than-Class-C ("GTCC") radioactive waste. In its motion to compel, Dairyland represented that its "motion thus does not yet seek those GTCC waste documents" because "the government has not yet made GTCC waste an issue in [the Dairyland] case." Dairyland's Motion To Compel Of Documents Withheld Under The 'Deliberative Process' And Attorney-Client Privileges," at 9 (Jan. 18, 2007), filed in Dairyland Power Cooperative v. United States, No. 04-0106C (Fed. Cl.). Accordingly, there would be no reason for Chief Judge Damich, in Dairyland, to review these protected and privileged documents in camera because they are not being sought in that case. Instead, Dairyland apparently submitted them to the Court to attempt to persuade the Court to order the production of the other documents withheld under the deliberative process privilege.

Dairyland's actions undermine the Court's orders and make it difficult for the Government to have any confidence that documents produced subject to protective orders will not be willfully produced outside the parameters of those protective orders. Although Dairyland recently represented to Chief Judge Damich that there is "ambiguity in the language" of the Court's order, see Dairyland's Response To The Government's Motion To Strike, at 1 (filed May 9, 2007, in Dairyland Power Cooperative v. United States, No. 04-106C (Fed. Cl.), a copy of which is contained in an addendum to this motion), the history of this case leading to the issuance of the Court's May 14, 2006 order renders this assertion unsupportable. To remedy the willful violation of this Court's order in this case, the Government requests that the Court order

counsel for PG&E immediately to withdraw those portions of its reply brief and accompanying appendix that discuss or contain documents that were subject to the Court's May 14, 2006 order. The Government also requests that the Court order counsel for PG&E to disclose the full extent of the disclosure of these documents, describing when these documents have been disclosed and to whom, and to take any other action that the Court deems appropriate.

CONCLUSION

For the foregoing reasons, defendant respectfully respects that the Court issue an order enforcing the terms of its May 14, 2006 order and to take any other action that it deems appropriate.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT DAMELIN
SHARON SNYDER
JOSHUA E. GARDNER
MARIAN E. SULLIVAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

May 25, 2007

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 616-0478
Fax: (202) 307-2503

Attorneys for Defendant

# APPENDIX

U.S. Department of Justice

Civil Division

PDK:JED:HDL:MESullivan
154-04-106

Telephone: (202) 307-0365
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

April 2, 2007

VIA FACSIMILE AND UNITED STATES MAIL

Jerry Stouck
Robert Shapiro
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

Re: *Pacific Gas & Electric Co. v. United States*, Nos. 04-74C & -75C (Fed. Cl.), and *Dairyland Power Cooperative v. United States*, No. 04-106C (Fed. Cl.)

Dear Messrs. Stouck and Shapiro:

I write concerning your violation of the terms of the protective order entered by the Court in Pacific Gas & Electric Co. v. United States, Nos. 04-74C & -75C (Fed. Cl.), as amended by the Court's order, dated May 14, 2006, with the filing of your reply brief to your motion to compel the production of documents withheld on the basis of deliberative process privilege in Dairyland Power Cooperative v. United States, No. 04-106C, on March 19, 2007. If you do not take action to remedy promptly this violation of the protective order, we plan to notify the Court in both cases of the violation and ask that the Court take any and all actions that are necessary and appropriate to remedy the violation.

As you know, as a result of your motion to compel the production of documents withheld on the basis of deliberative process privilege in Pacific Gas, the Court ordered the production of 211 documents, based upon the showing by plaintiff, Pacific Gas & Electric Co. ("PG&E"), of a "compelling need" for these documents. Pacific Gas & Electric Co. v. United States, Nos. 04-74C & -75C slip op. (Fed. Cl. May 14, 2006). However, in the order to produce these documents, the Court also ordered that,

> "[e]very document ordered to be produced by this Order shall be subject to the protective order issued by the Court on April 21, 2005. However, for the purposes of this Order, the Court

> AMENDS the Protective Order to limit the disclosure and/or use of all documents mentioned in this Order to the attorneys for the plaintiffs in this litigation only, rather than, as stated in the Protective Order, the 'attorneys for plaintiffs in the spent nuclear fuel cases.'"

Id., at 2-3 n.3 (citing Protective Order, entered April 21, 2005) (emphasis in the original). Pursuant to the Court's order in Pacific Gas, the Government produced 211 documents, all stamped with a protective order legend that read, "Restricted Distribution, Protected Material, With Non-Government Distribution Limited To Attorneys For PG&E, As Defined By Note 3 In the Court's Order Dated May 14, 2006 (PG&E v. US, 04-74) For Use Only In PG&E Case."

On March 19, 2007, you filed upon behalf of Dairyland the reply to the Government's response to Dairyland's motion to compel the production of documents withheld on the basis of the assertion of deliberative process privilege. The appendix to this reply contains 35 documents that the Court ordered the Government to produce in Pacific Gas, pursuant to the Court's May 14, 2006 order. Appendix at 9-433. All of these documents are endorsed with the protective order legend restricting their disclosure and use to the Pacific Gas case only. In the reply brief itself, you characterize the content of many of these documents and urge the Court to review the documents contained in the appendix. Reply at 4-6 and 15-17.

Clearly, the inclusion of the documents in the appendix to the reply brief violates the terms of the protective order, as amended by the May 14, 2006 order, which "limit[s] the disclosure and/or use of all documents mentioned in this Order to the attorneys for the plaintiffs in this litigation only . . .. " You clearly understood this fact with the filing of the original motion to compel in Dairyland, wherein you asked the Court to order the production of the documents that Judge Hewitt had ordered produced in Pacific Gas. Dairyland cannot use these documents absent the Court ordering that the documents be produced in its case. Given your understanding of this limitation, we cannot understand how you could then use the documents themselves to buttress your arguments for their production in your reply brief in Dairyland.

To remedy this violation of the protective order in Pacific Gas, we expect you to withdraw those portions of Dairyland's reply brief and the accompanying appendix that either contain or discuss documents that were subject to the terms of Judge Hewitt's May 14, 2007 order in Pacific Gas. Absent such action on your part, we will file a motion to strike those portions of Dairyland's reply brief in Dairyland and take any other appropriate action.

Please advise me by close of business on Wednesday, April 4, 2007, as to whether you will remedy your violation of the protective order in the manner outlined. You may contact me at (202) 307-0365 if you have any questions about this matter.

Sincerely,

MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch

Greenberg
Traurig

Jerry Stouck
Tel. 202.331.3100
Fax 202.331.3101
stouckj@gtlaw.com

April 4, 2007

VIA FACSIMILE, E-MAIL & U.S. MAIL

Marian E. Sullivan
U.S. Department of Justice
Civil Division
Commercial Litigation Branch 1100 L Street, N.W.
Washington, D.C. 20530

**Re: Dairyland Power Cooperative v. US, No. 04-106C**

Dear Marian:

This is in response to your letter of April 2 concerning plaintiff's motion in the Dairyland case, filed under seal, addressing the government's deliberative process privilege claims.

We are perplexed by your letter for several reasons, and object to this additional effort to multiply the complexity and burden of dealing with these privilege issues.

Apart from the ambiguity in the *PG&E* protective order noted in our motion in the Dairyland case, *see* Motion to compel filed electronically 1/18/07 at 7,[1] Dairyland's motion filed under seal in its case and attaching certain of the documents in question is in full compliance with Judge Hewitt's Order even under the government's alternative reading of that Order. As emphasized in your letter, "the terms of the [*PG&E*] protective order, as amended by the May 14, 2006 order, . . . 'limit[s] disclosure and/or use of all documents mentioned in this Order to the attorneys for the plaintiffs in this litigation only. . . .'" 4/2/07 letter Sullivan to Stouck/Shapiro at 2 (bold added in Sullivan letter). In the Dairyland case, the plaintiff by submitting the documents for *in camera* review is simply not "using" the documents in question. Fairly interpreted, the "use" Judge Hewitt had in mind is some substantive evidentiary or discovery use. Here, Dairyland *seeks* to use the documents in its

[1] As noted in that motion, given the ambiguity in the *PG&E* Order, Dairyland does not view any type of use here "in this litigation" by the undersigned attorneys (who also were "attorneys for plaintiffs") as being inconsistent with the Order. *See* Motion at 7. Of course, we also acknowledged in the motion the government's apparently differing view. *See id.*

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance

case, which is precisely why it filed the motion now pending before Judge Damich. Nor have the documents been "disclosed," given that Dairyland's motion was filed *under seal*. In short, Dairyland took care to comply with Judge Hewitt's Order, not to violate it as the government asserts.

More fundamentally, it was the government that suggested *in camera* review of these documents in *PG&E*, *see* Gov't motion for reconsideration filed electronically March 21, 2006 in *PG&E* at 22, and Judge Hewitt accepted that suggestion and agreed that *in camera* review of the documents was appropriate. *See* Order of March 23, 2006 in *PG&E* at 2, copy attached ("The court accepts the government's offer . . . and will conduct an *in camera* review of those documents over which defendant continues to assert the privilege."). The government's reversal of position on the appropriateness of *in camera* review is not merely self-serving. Having prevailed on its argument for *in camera* review in *PG&E*, principles of judicial estoppel *preclude* the government from advancing the opposite position here. *See* James Wm. Moore et al. § 134.30 at 134.64 (3d ed. 2006) (explaining that in *New Hampshire v. Maine*, 532 U.S. 742 (2001), the Supreme Court "generally described the [judicial estoppel] doctrine as follows: when a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, that party may not thereafter, simply because his or her interests have changed, assume a contrary position, especially if it is to the prejudice of another party.").

More fundamentally still, the government in its opposition to Dairyland's motion explicitly repeated its request that the Court (i.e., Chief Judge Damich) review the documents *in camera*. *See* Gov't response to Dairyland's motion to compel filed electronically 2/28/07 at 24 n.12 ("[P]rior to the Court ordering the production of any of these documents to Dairyland, the Government asks that the Court undertake the same *in camera* review that the Court performed in Pacific Gas.").[2]

Simply stated, Dairyland has done nothing more (or less) than request Judge Damich to review the documents *in camera* in the course deciding the deliberative process privilege issues in this case – which is exactly what the government requested, and the Court did, in *PG&E*, and exactly what the government has also requested in Dairyland's own case. For reasons stated above this does not violate the *PG&E* protective order, and the government cannot properly claim that it does. For the same reasons, Dairyland does not believe it was (or is) necessary to ask Judge Damich to order *in camera* review in Dairyland's case. However, to the extent the government believes that such an order is appropriate before the Court in Dairyland accepts the

[2] Dairyland's position is that comprehensive *in camera* review of all the documents is not only unnecessary to decide the deliberative process privilege issues, but is an inappropriate burden on the Court and Dairyland. *See* Reply on motion to compel filed electronically 3/19/07 at 7-8. But that position does not prevent Dairyland from agreeing with the government in part, *arguendo*, and submitting for *in camera* review certain documents which demonstrate on their face they are not subject to the privilege.

government's (and Dairyland's) request for *in camera* review of the documents Dairyland submitted under seal, we encourage you to file a motion requesting such an order. Dairyland will join that motion (though as stated we do not believe it is necessary).

If the government does file such a motion, or if the government carries out its threat to file a motion to strike or take other "appropriate" action that may involve one or more filings in court, please attach this letter to the government's filing(s) so that the Court will know Dairyland's response.

Very truly yours,

Jerry Stouck

JS/jd

# In the United States Court of Federal Claims

No. 04-74C
(into which has been consolidated No. 04-75C)

(E-Filed: May 14, 2006)

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

ORDER

Before the court is Pacific Gas & Electric's Second Motion to Compel the Production of Documents Withheld Under the "Deliberative Process" Privilege (Pl.'s Mot. or Motion). Pursuant to Rule 37(a)(2) of the Rules of the Court of Federal Claims (RCFC), plaintiff moves the court "to compel the government to produce 209 responsive documents that the government continues to withhold from disclosure due to its 'deliberative process' privilege claims." Pl.'s Mot. at 2. For the foregoing reasons, plaintiff's Motion is GRANTED-IN-PART and DENIED-IN-PART.

In the court's Order of April 27, 2006, the court provided brief analyses of various descriptions of documents provided in the ex parte affidavits submitted to the court on April 11, 2006 for the purpose of permitting the parties to analogize the examples to disputed documents not mentioned in the court's April 27, 2006 Order and thereby to resolve any further discovery disputes involving the deliberative process privilege that may have arisen. 4/27/06 Order at 8. The parties were also ordered to confer in an effort to resolve any such disputes using the guidance provided by the court's April 27, 2006 Order. Id. Nevertheless, despite the court's guidance, the parties were unable to come to an agreement with respect to 209 documents that plaintiff now seeks to be produced. The court now proceeds to address each of these documents as categorized in plaintiff's

Motion to determine whether plaintiff has made "'a showing of evidentiary need . . . that outweighs the harm that disclosure of such information may cause to the defendant.'"[1] Pac. Gas & Elec. Co. v. United States (PG&E), No. 04-74C, 2006 U.S. Claims LEXIS 63, at *17 (Fed. Cl. Mar. 14, 2006) (quoting Alaska v. United States, 16 Cl. Ct. 5, 11 (1988)); see also Marriott Int'l Resorts, L.P. v. United States, 437 F.3d 1302, 1304, 1307 (Fed. Cir. 2006) ("[A] showing of compelling need can overcome the qualified deliberative process privilege.").

I. Documents Which the Government has Agreed to Produce Based on the Court's April 27, 2006 Order

In a letter written to plaintiff on May 10, 2006, defendant states that it "will not contest" the production of a number of documents that it believes to "have a similar subject matter to those that the [c]ourt ordered [defendant] to produce in its April 27, 2006 [O]rder." Pl.'s Mot. Ex. D at 2. Defendant states that, "[b]ecause [it] do[es] not want to create any opportunity for any SNF plaintiff, or any plaintiff in other current or future litigation with [the Department of Energy (DOE)], to have any grounds for arguing that the [g]overnment somehow waived any privilege claims relating to the rate of acceptance, we request that [plaintiff] ask the [c]ourt for an order compelling the production of these documents." Id. at 2-3. Accordingly, plaintiff has requested the court to enter an order compelling the production of these documents. Pl.'s Mot. at 3. The court agrees to this request. Defendant is hereby ORDERED to PRODUCE to plaintiff Document Nos.[2] 118, 119, 122, 124, 125, 127, 135, 138, 140, 143, 145, 146, 188-89, 190-96, 202-03, 205, 207-08, 212-16, 220, 224, 226, 233, 236, 238, 240-46, 248-49, 54, 256, 262, 264, 266-70, 272, 274-84, 287, 290, 311, 313, 319, 322, 333-36, 341, 346, 348, 350, 361, 363–66 and 378.[3]

---

[1]The court has reviewed in camera the following documents and also has the government's responses to plaintiff's requests to produce the following documents in the form of letters written to plaintiff that post-date the court's April 27, 2006 Order. See Pl.'s Mot. Exhibit (Ex.) B, C, and D. Accordingly, the court does not require a response to plaintiff's Motion in order to make its final determinations with respect to the deliberative process privilege.

[2]All document numbers refer to those from the Table of Challenges in the Appendix to PG&E's Motion.

[3]Every document ordered to be produced by this Order shall be subject to the Protective Order issued by the court on April 21, 2005. However, for the purposes of this Order, the court AMENDS the Protective Order to limit the disclosure and/or use of all documents mentioned in this Order to the attorneys for the plaintiffs in this litigation only, rather than, as stated in the (continued...)

II. Documents Related to GTCC Waste

In the court's April 27, 2006 Order, the court stated that it agreed that:

> if defendant takes a "litigation position" in this case that the continued storage of GTCC waste at PG&E's storage facilities after January 31, 1998 "would obviate or reduce damages" claimed by plaintiff, then plaintiff's evidentiary need for production of documents related to GTCC waste and described in the Virgilio Declaration, the Marcinowski Declaration, or any other declaration before the court, see, e.g., Milner Decl. at 29, would potentially outweigh defendant's interest in maintaining the confidentiality of these documents. However, as of the date of this Order, the court is not aware that defendant has indicated such a "litigation position" in this case.

4/27/06 Order at 13. Defendant has since taken such a "litigation position." See Defendant's Memorandum of Contentions of Fact and Law at 66-67. Accordingly, and for the reasons stated in plaintiff's Motion, see Pl.'s Mot. at 7-14, the court agrees that plaintiff's evidentiary need for the production of documents related to GTCC waste outweighs defendant's interest in maintaining their confidentiality.[4] The court's examination in camera of these documents supports this finding. Defendant is hereby ORDERED to PRODUCE to plaintiff Document Nos. 2, 12-13, 16-18, 51-53, 55-59, 62-68, 71-77, 80-103, 186-187, 289, 300-301, 384-386, 391-392, 396, 400-434, 436-459, 462 and 464. Accord Order of August 25, 2003 in Yankee Atomic Electric Co. v. United States, No. 98-126C ("Thus, the Government's plans with respect to its obligation . . . to dispose of GTCC, must be fully disclosed to enable the court to make a finding(s) on the

---

[3](...continued)
Protective Order, the "attorneys for plaintiffs in the spent nuclear fuel cases," 4/21/05 Order ¶ 5.

[4]The court has noted defendant's letter to plaintiff that refers to these documents, see Pl.'s Mot. Ex. B at 2-4, and the court disagrees with the defendant's assessment of the potential relevance of the documents listed to this litigation. Although many of the documents are "deliberative" and "predecisional," almost all of them address various aspects of the government's plans for the handling of GTCC waste, information that is vital to making "an evidentiary finding as to whether GTCC material will be left on a reactor site after [SNF] and/or [HLW] is removed," Order of August 25, 2003 in Yankee Atomic Electric Co. v. United States, No. 98-126C, as well as making an evidentiary finding as to whether the Standard Contract covers GTCC waste, see Pl.'s Mot. at 7.

validity of this defense defendant asserts. It appears there may only be inchoate plans, or recommended plans, but it is concluded that unless defendant abandons its GTCC defense against monetary claims in this matter, there exists a compelling necessity for the production of all documentation which can contribute to an evidentiary finding as to whether GTCC material will be left on a reactor site after [SNF] and/or [HLW] is removed.") (emphasis added).

III. Documents Related to the Government's Rate of Acceptance

In the court's April 27, 2006 Order, the court stated that

> documents regarding the potential rate of acceptance by the government of SNF from nuclear utilities – which could be helpful in determining the rate of acceptance the government would have used had it began to perform the Standard Contract on January 31, 2006 – are highly relevant to this litigation and . . . there may be no other way for plaintiff to obtain evidence that serves the same purpose as these documents.

4/27/06 Order at 15. Accordingly, and for the reasons stated in plaintiff's Motion, see Pl.'s Mot. at 14-17, the court finds that all documents which relate to the potential rate of acceptance by the government of SNF from nuclear utilities should be produced. After examining in camera the 20 documents that plaintiff identifies as "clearly involv[ing] what the [c]ourt has termed the 'highly relevant' rate of acceptance issue," Pl.'s Mot. at 17, the court agrees that the plaintiff's evidentiary need for these documents, listed in footnote three of plaintiff's Motion, outweighs defendant's interest in maintaining their confidentiality. However, after examining in camera the 54 documents that plaintiff identifies as being potentially "'helpful in determining the rate of acceptance the government would have used had it began to perform,'" Pl.'s Mot. at 20 (quoting 4/27/06 Order at 14-15), the court does not find that plaintiff's evidentiary need for these documents, listed in footnote 4 of plaintiff's Motion, outweighs defendant's interest in maintaining their confidentiality. For the foregoing reasons, defendant is hereby ORDERED to PRODUCE to plaintiff Document Nos. 132, 167, 170, 223, 255, 285, 286, 320, 323-327, 330, 340, 347, 349, 362, 381 and 260.

IV. Documents Related to the DOE's Annual Capacity Report/Annual Priority Report and the Delivery Commitment Schedules Related Thereto

After examining in camera Document Nos. 387-390 and 368, which plaintiff describes as "highly relevant," Pl.'s Mot. at 22, the court finds that plaintiff's evidentiary need for these documents does not outweigh defendant's interest in maintaining the

confidentiality. The court agrees with defendant that "[t]hese documents are not relevant to this litigation." Pl.'s Mot. Ex. D at 9.

V. Documents Related to the DOE's Adoption of a "Market-Driven Acquisition Approach" for the Office of Civilian Radioactive Waste Management

After examining in camera Document Nos. 108 and 109, which plaintiff describes as "highly relevant to the rate and schedule issue," Pl.'s Mot. at 23, the court finds that plaintiff's evidentiary need for these documents does not outweigh defendant's interest in maintaining their confidentiality. The court agrees with defendant that these documents are not relevant to this litigation. See Pl.'s Mot. Ex. D at 6.

VI. Document Related to Spent Fuel Storage Costs

After examining in camera Document No. 123, which plaintiff describes as "address[ing] a key disputed issue in this case," Pl.'s Mot. at 24, the court agrees and finds that plaintiff's evidentiary need for this document outweighs defendant's interest in maintaining its confidentiality. Accordingly, defendant is hereby ORDERED to produce to plaintiff Document No. 123.

VII. Documents Related to DOE Proposals to Modify or Amend the Spent Fuel Contracts

After examining in camera Document Nos. 367 and 369, which plaintiff describes as highly relevant, see Pl.'s Mot. at 24, the court finds that plaintiff's evidentiary need for these documents does not outweigh defendant's interest in maintaining their confidentiality. The court agrees with defendant that these documents are "irrelevant to this litigation." Pl.'s Mot. Ex. D at 5.

VIII. Documents Over Which Defendant Asserts Attorney-Client Privilege Because They are "Under Legal Review"

Plaintiff requests the court to reject defendant's assertion of attorney-client privilege over documents not authored by a lawyer that defendant claims merely to be "under legal review." Pl.'s Mot. at 25. Plaintiff has previously chosen not to contest defendant's assertion of attorney-client privilege or work product protection over the 92 documents over which defendant has also claimed the deliberative process privilege. See PG&E's Opposition to Motion for Reconsideration at 13. Accordingly, the court has ruled that:

> defendant shall not be required to produce any portion of the 92 documents as to which a privilege in addition to the deliberative process privilege, i.e., attorney-client privilege or work product protection, was asserted and not challenged. However, to the extent that this Order – either directly or through its guidance – resolves in plaintiff's favor the question of whether defendant may continue to protect any of these 92 documents under the deliberative process privilege, defendant shall PRODUCE to plaintiff the documents with the attorney-client or work product material redacted.

4/27/06 Order (citations omitted). That Order remains in full force and effect. To the extent that the court has ordered any of these 92 documents to be produced in this Order, see supra Parts I-VI, defendant is entitled to produce these documents with the attorney-client or work product material redacted. The court declines to review in camera each and every document that defendant describes as "under legal review" to determine if it should be protected by the attorney-client privilege. Indeed, defendant has redacted small portions of some of the documents which plaintiff now challenges in its submission to the court for in camera review, see, e.g., Document No. 202, and therefore the court cannot ascertain whether the small amount of material redacted should in fact be privileged. When making these submissions, defendant stated that:

> because PG&E has represented that it does not intend to challenge the Government's assertions of [attorney-client] privilege, we have begun, but not completed, the process of attempting to redact privileged information from those 92 documents. To the extent that we have been able to redact particular documents from the list of 92 identified in our motion for reconsideration, we have done so before submitting the documents to the [c]ourt, both to minimize the time that the [c]ourt needs to expend reviewing particular documents and to reduce the amount of privileged material that we are presenting to the [c]ourt.

Attachment to Court Document No. 190, at 2. The court declines to revisit defendant's unchallenged assertions of the attorney-client privilege at this late date.

## IX. Conclusion

For the foregoing reasons, plaintiff's Motion is GRANTED-IN-PART and DENIED-IN-PART. Defendant is hereby ORDERED to produce to plaintiff, on or before Wednesday, May 17, Document Nos. 118, 119, 122, 124, 125, 127, 135, 138, 140, 143, 145, 146, 188-89, 190-96, 202-03, 205, 207-08, 212-16, 220, 224, 226, 233, 236, 238, 240-46, 248-49, 54, 256, 262, 264, 266-70, 272, 274-84, 287, 290, 311, 313, 319, 322,

333-36, 341, 346, 348, 350, 361, 363–66, 378, 2, 12-13, 16-18, 51-53, 55-59, 62-68, 71-77, 80-103, 186-187, 289, 300-301, 384-386, 391-392, 396, 400-434, 436-459, 462, 464, 132, 167, 170, 223, 255, 285, 286, 320, 323-327, 330, 340, 347, 349, 362, 381, 260 and 123.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

U.S. Department of Justice

Civil Division

PDK:DMC:HDL
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

Telephone: (202) 305-7562
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

May 10, 2006

VIA TELECOPY AND FIRST CLASS MAIL

Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

Re: *Pacific Gas & Electric Co. v. United States*, Nos. 04-0074C, 04-0075C (Fed. Cl.)

Dear Mr. Stouck:

This letter is our last of three letters responding to your letter dated May 5, 2006, which we apparently received at 6:26 p.m. on that date. As we explained in our letter dated May 9, 2006, because of the volume of documents that you have identified in your letter and our need to confirm with the various interested agencies and offices regarding production of these documents, we have addressed the documents identified in your May 5, 2006 letter separately, addressing documents over which the deliberative process privilege was invoked by Messrs. Friedman and Marcinowski in one letter dated May 9, 2006, and those over which the privilege was invoked by Mr. Virgilio in a second letter sent to you earlier today. In this letter, we address the documents identified in your May 5, 2006 letter that Mr. Milner originally identified as subject to the deliberative process privilege. Those documents are Document Nos. 108, 112, 115, 118, 119, 122 through 125, 127, 129 through 132, 135 through 138, 140, 141, 143, 145, 146, 150, 153, 154, 162, 167, 170, 171, 178, 185, 188 through 193, 195 through 233, 235 through 238, 240 through 246, 248, 249, 251 through 292, 299 through 301, 303, 308, 310 through 314, 319, 322, 331 through 336, 338, 340 through 342, 346 through 356, 361 through 367, 369 through 379, 381 through 383, and 387 through 390.[1]

[1] As we stated in our letter dated May 9, 2006, our review indicates that, of the documents that Mr. Milner originally identified as subject to the deliberative process privilege and that PG&E asked us to produce in its May 5, 2006 letter, Mr. Milner elected to withdraw his invocation of that privilege over the following documents, which were produced to you on April 18, 2006: Document Nos. 132, 221, 223, 286, and 332. After you review your records, please let us know



PAGE 2/10 * RCVD AT 5/10/2006 10:19:22 PM [Eastern Daylight Time] * SVR:WDC-PS1/3 * DNIS:5 * CSID: * DURATION (mm-ss):04-04

PG&E has requested production of the majority of documents over which the Government invoked the deliberative process privilege, and we have attempted to respond to PG&E's demands as quickly as possible. To the extent that we inadvertently fail to address below one or more of the requested documents over which Mr. Milner invoked the deliberative process privilege, please let us know, and we will attempt to address any omitted documents as quickly as we can.

Documents Similar To Those That The Court Has Ordered The Government To Produce

In the Court's order dated April 27, 2006, the Court ordered the Government to produce several documents for which Mr. Milner had invoked the deliberative process privilege, finding that "defendant's interest in maintaining the confidentiality of the documents – while described with sufficient particularity – is outweighed by plaintiff's evidentiary need for the documents." Order, at 14 (Apr. 27, 2006). With regard to each set of documents that the Court ordered the Government to produce, the Court found that "[i]t appears to the court that these documents regarding the potential rate of acceptance by the nuclear utilities – which could be helpful in determining the rate of acceptance the government would have used had it began to perform the Standard Contract on January 31, 1998 – are highly relevant to the litigation and that there may be no other way for plaintiff to obtain evidence that serves the same purpose as these documents." Id. We disagree that the documents that the Court ordered us to produce are relevant to this litigation, in part because (1) they have no effect upon defining the scope of DOE's contractual obligation to accept SNF under the Standard Contract and the extent to which DOE breached that specific contractual obligation and (2) they are unrelated to DOE's performance plan had it begun SNF acceptance in 1998.

Nevertheless, based upon the rationale that the Court identified for determining whether PG&E's need for particular documents outweighs the Government's harm, it appears that the following documents which PG&E asked us to produce in its May 5, 2006 letter have a similar subject matter to those that the Court ordered us to produce in its April 27, 2006 order, in that they either mention or discuss rate of SNF acceptance issues: Document Nos. 118, 119, 122, 124, 125, 127, 135, 138, 140, 143, 145, 146, 188, 189, 190, 191, 192, 193, 195, 196, 202, 203, 205, 208, 207, 212, 213, 214, 215, 216, 220, 224, 226, 233, 236, 238, 240, 241, 242, 243, 244, 245, 246, 248, 249, 251, 252, 253, 254, 256, 262, 264, 266, 267, 268, 269, 270, 272, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 287, 290, 311, 313, 319, 322, 333, 334, 335, 336, 341, 346, 348, 350, 361, 363, 364, 365, 366, and 378. Although, as previously stated, we disagree that all documents relating to the rate of SNF acceptance are relevant to or admissible in this litigation, we will not contest that these documents fall within that category for purposes of the Court's April 27, 2006 decision. Because we do not want to create any opportunity for any SNF plaintiff, or any plaintiff in other current or future litigation with DOE, to have any grounds

---

if you are missing any of these documents. Otherwise, we will assume that we need take no further action with regard to those documents.

for arguing that the Government somehow waived any privilege claims relating to the rate of SNF acceptance, we request that you ask the Court for an order compelling the production of these documents.[2]

Documents That The Government Should Not Have To Produce

Document No. 112, And Similar Documents

In your May 5, 2006 letter, you assert that, "[b]ased on the Court's 'guidance'" in its April 27, 2006 order on reconsideration, the Government must produce Document No. 112. Yet, in its April 27, 2006 order, the Court specifically addressed Document No. 112. See Order, at 9 (Apr. 27, 2006). The document, which is discussed in paragraph 10 of Mr. Milner's in camera declaration, relates to an options paper upon the question of interim storage of radioactive waste. See Milner Declaration ¶ 10. As Mr. Milner stated, "[t]he specific decision at issue was whether DOE would elect to store spent nuclear fuel in an interim storage facility, and this document reflects DOE's considerations and deliberations that relate to that decision." Id. After reviewing this description and, presumably, the document that had been submitted for in camera review, the Court found that the document was of the type "that the deliberative process privilege is designed to protect" and that "it is not readily apparent to the court why plaintiff has a 'compelling need' for the document[] . . that outweighs the harm that disclosure of the document[] may cause to defendant." Order, at 9 (Apr. 27, 2006). We agree with the Court, as we are unable to identify any reason that PG&E would need access to such policy deliberations – regardless of the ultimate decision that was made – to support or defend its damages claims in this case. Further, PG&E has offered us no explanation as to why it has a "compelling need" for the document, despite the analysis by the Court. Without any explanation of need, we have no basis to agree to produce this document over Mr. Milner's invocation of the deliberative process privilege.

Document Nos. 153, 154, 162, 167, 170, 171, and 178 are very similar to Document No. 112 and are described in paragraphs 11 through 14 of Mr. Milner's in camera declaration. For the same reasons that Document No. 112 is properly protected by the deliberative process privilege, these documents are properly protected. In addition, some of these documents discuss potential settlement options relating to the nuclear utilities involved in lawsuits against DOE, many of which are currently plaintiffs in the Court of Federal Claims. We see no reason that the utility plaintiffs should review DOE's past evaluation of possible settlement options when the utility plaintiffs have not produced similar information to the United States.

Finally, with regard to all of these documents, the Government invoked not only the deliberative process privilege, but also the presidential communications privilege. PG&E did not challenge that privilege claim, and PG&E previously informed the Court that it did not intend to challenge privilege claims other than the deliberative process privilege. We would object to any

[2] Any order requiring us to produce these documents should be subject to redactions relating to any other privilege claims that we have invoked with regard to any of these documents.

attempt by PG&E to raise a new challenge to the presidential communications privilege claim at this point in the litigation.

Document No. 377, And Similar Documents

You also assert in your May 5, 2006 letter that, based upon the Court's April 27, 2006 order, the Government must produce Document No. 377, which is discussed in paragraph 34 of Mr. Milner's declaration. That document "reveals the deliberations within DOE regarding the identification of the rail corridor and contains a detailed explanation as to why one corridor was recommended over the others." Milner Declaration ¶ 34. Contrary to your representation that the Court's order indicates that the Government must produce this document, the Court actually indicated in its order that, like Document No. 112, "it is not readily apparent to the court why plaintiff has a 'compelling need' for the document . . . that outweighs the harm that disclosure of the document may cause to defendant." Order, at 10 (Apr. 27, 2006). PG&E has provided no explanation to us regarding the reason that it has a "compelling need" for information about DOE's internal deliberations regarding rail corridors. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Like Document No. 377, Document Nos. 294 and 296 (discussed in paragraph 49 of the Milner declaration) relate to DOE deliberations regarding possible transportation alternatives for transporting SNF to the repository site, developed for use in preparing a budget submission to the Office of Management and Budget. Similarly, Document Nos. 131 and 379 are draft presentations "regarding transportation options for Yucca Mountain." Milner Declaration ¶ 67. For the same reasons identified in relation to Document No. 377, we do not understand the relevance of or "compelling need" for these documents to support PG&E's damages claims or to rebut the Government's defenses. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Document Nos. 367 and 369, And Similar Documents

You also assert in your May 5, 2006 letter that, based upon the Court's April 27, 2006 order, the Government must produce Document Nos. 367 and 369, which are discussed in paragraph 36 of Mr. Milner's declaration. Those draft presentations, titled "Proposed Approach for Initiating Modifications to Utility Disposal Contracts," represent one individual's preliminary views on the contract terms to be modified, with the agreement of the contract holders, if modifications are undertaken. Milner Declaration ¶ 36. Contrary to your representation that the Court's order indicates that the Government must produce these documents, the Court actually indicated that, like Document Nos. 112 and 377, "it is not readily apparent to the court why plaintiff has a 'compelling need' for the documents . . . that outweighs the harm that disclosure of the documents may cause to defendant." Order, at 10 (Apr. 27, 2006). PG&E has provided no explanation to us regarding the reason that it has a "compelling need" for information about DOE's internal deliberations regarding possible future modifications of the Standard Contract. To the contrary, unless and until parties propose and agree to contract modifications in the future, the existing lawsuits, including PG&E's, must proceed upon the basis of the contract as it

currently exists, as it is that document that defines the parties' rights and obligations. Accordingly, particularly since PG&E has not provided us with any information as to its "compelling need" for these documents, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Like Document Nos. 367 and 369, Document No. 353 identifies a suggestion, here by a contractor, regarding a possible contract change. Again, this suggestion, which has not been adopted by DOE, is irrelevant to this litigation, and we have identified no "compelling need" by PG&E for this document.

Document Nos. 228, 231, and 257, And Similar Documents

You also assert in your May 5, 2006 letter that, based upon the Court's April 27, 2006 order, the Government must produce Document Nos. 228, 231, and 257, which are discussed in paragraph 45 of Mr. Milner's declaration. These documents created by DOE personnel present "possible activities that could be undertaken to reduce the cost and schedule for the construction of the repository and opinions as to the likelihood of successfully implementing each of the ideas." Milner Declaration ¶ 45. Again, contrary to PG&E's representations that the Court's order indicates that the Government must produce this document, the Court actually indicated in its order that "it is not readily apparent . . . why plaintiff has a 'compelling need' for the document . . . that outweighs the harm that disclosure of the document may cause to defendant." Order, at 10 (Apr. 27, 2006). PG&E has provided no explanation to us regarding the reason that it has a "compelling need" for information about the costs of the development and construction of the repository at Yucca Mountain to present its damages claims here. To the extent that documents relating to DOE's schedule for constructing a repository in the future were ever relevant in this litigation, it is no longer even arguably relevant following the United States Court of Appeals for the Federal Circuit's decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), and this Court's order eliminating future damages from the trial of this matter. Accordingly, particularly without any explanation from PG&E regarding the relevance of these documents to this litigation or to its "compelling need" for the documents, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Like Document Nos. 228, 231, and 257, numerous other documents identified in Mr. Milner's declaration relate to proposed schedules for the repository development in the future, as well as the effect of budgetary issues upon the cost and schedule for the development of the repository and/or the submission of the License Application for the repository, unrelated to the rate at which DOE will accept, or "would have" accepted, nuclear utilities' SNF once SNF acceptance begins. Those documents are Document Nos. 113, 129, 130, 198, 199, 200, 201, 206, 210, 211, 217, 218, 219, 232, 259, 265, 292, 342, 356, 362, 370, 373, 374, 375, and 376 (discussed in paragraphs 35, 38, 39, 40, 41, 42, 43, 44, and 47 of the Milner declaration). Another document, Document No. 331 (paragraph 37 of the Milner declaration), relates to DOE's evaluation of the best manner in which to respond to criticisms from the Nuclear Waste Technical Review Board regarding the planned design and operation of the geologic repository at

Yucca Mountain. Document No. 115 (discussed in paragraph 28 of the Milner declaration) relates to the deferral of final waste package closure and emplacement. Other documents, including Document Nos. 293, 312, 314, 355, and 371 (discussed in paragraphs 33, 48, 75, and 81 of the Milner declaration), simply relate to budget issues, unrelated to the rate at which DOE will accept or would have accepted SNF once acceptance begins. Finally, Document Nos. 197, 204, 209, 222, 225, 227, 229, 230, 235, 237, 255, 258, 260, 270, 273, 291, and 354 (discussed in paragraphs 62 and 72 of the Milner declaration) deal with possible efforts to expedite the commencement of SNF acceptance in the future while attempting to reduce program costs, without any discussion of rates of SNF acceptance after that acceptance commences. We can identify no "compelling need" by PG&E for any of these documents in this litigation, and PG&E has not identified any need to us.

Remaining Documents

With regard to the remaining documents that PG&E has asked us to produce despite Mr. Milner's invocation of the deliberative process privilege, PG&E has not identified any compelling need for any of those documents, as discussed below:

> Document No. 108: Document No. 108, which is discussed in paragraph 27 of Mr. Milner's declaration, relates to a suggestion that DOE adopt a "market-driven acquisition approach" for contracting of support services when DOE began the acceptance and transport of SNF from nuclear utilities. We do not understand how the manner in which DOE will contract with third parties to assist it in its SNF acceptance and transportation obligations under the Standard Contract has any relevance to PG&E's damages claims. Further, PG&E has not identified any "compelling need" for this document. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.
>
> Document Nos. 136, 137, 141, 261, and 263: These documents, which are discussed in paragraph 31 of Mr. Milner's declaration, are drafts of a graphic presentation regarding repository design options (titled "Repository Design Evolution for License Application – Legal Weight Truck Options" and "Modular Construction System Evaluation"), along with a meeting agenda for Dr. Chu regarding potential repository design changes. These issues seem far removed from the damages claims that PG&E is making in this litigation, rendering these documents irrelevant to PG&E's case. PG&E has not identified any "compelling need" for these documents. Accordingly, we have no basis for withdrawing the privilege claim over these documents that Mr. Milner invoked.

Document No. 185: Document No. 185, which is discussed in paragraph 23 of Mr. Milner's declaration, relates to DOE's consideration of a request from General Atomics, a research reactor, to remove DOE-owned SNF and TRIGA fuel from General Atomics' site. PG&E is not a research reactor. We cannot understand the relevance of this document to PG&E's damages claims, and PG&E has not identified any "compelling need" for this document to assist it in its case. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Document No. 289: Document No. 289, which is discussed in paragraph 25 of Mr. Milner's declaration, relates to an internal policy evaluation regarding which office within DOE should be transferred responsibility for various responsibilities of DOE's Office of Environmental Management, including responsibility for Greater-Than-Class-C radioactive waste ("GTCC waste"). For the same reasons that we discussed in our letter dated May 9, 2006, we cannot understand either the relevance of or the "compelling need" for documents relating to consideration of which office within DOE will have responsibility for developing disposal options of GTCC waste. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Document No. 292: Document No. 292, which is discussed in paragraph 46 of Mr. Milner's declaration, is an e-mail and attached graph prepared by a contractor in response to a request for a summary of the utilities' estimates of at-reactor storage costs for SNF, prepared for use in developing a budget request. Milner Declaration ¶ 46. The document is not segregated by individual utility and provides no information other than a very general identification of at-reactor storage costs, as identified and claimed by the nuclear utilities. We can see no relevance to or "compelling need" for this information in this litigation. Accordingly, we have no basis for withdrawing the privilege that Mr. Milner invoked.

Document No. 299: We cannot identify any relevance of or "compelling need" for this document, which is discussed in paragraph 78 of the Milner declaration, in this litigation.

Document Nos. 300 and 301: Document Nos. 300 and 301, which are discussed at paragraph 73 of Mr. Milner's declaration, relate to DOE's deliberations regarding comments upon the NRC's proposed revisions to a rule in response to a petition for

rulemaking from Portland General Electric Company ("Portland"). We discussed that rulemaking in the letter that we sent you earlier today relating to Mr. Virgilio's declaration. For the same reasons discussed there, these two documents are irrelevant to this case and, further, PG&E has identified no "compelling need" for their production.

Document No. 303: This document, which is discussed in paragraph 74 of the Milner declaration, relate to the Fiscal Year 2001 budget. We can identify no relevance of this document to this litigation, particularly following the Indiana Michigan decision.

Document Nos. 307 and 310: In its April 27, 2006 order, the Court stated that it was unable to identify any "compelling need" by PG&E for Document Nos. 306, 308, and 309, which are documents relating to the Office of Inspector General. See Order, at 11-12. Document Nos. 307 and 310 are similar to Document Nos. 306, 308, and 309. For the reasons discussed by the Court, we have not identified any "compelling need" by PG&E for these documents.

Document No. 351: This document, which is discussed at paragraph 79 of the Milner declaration, relates to an exchange with the Governor of Nevada regarding the safe storage of SNF in dry storage facilities. This document is irrelevant to this litigation, as neither party has disputed safety issues, but it is a sensitive subject between DOE and Nevada. Accordingly, particularly in light of the lack of relevance of this document to this litigation, PG&E cannot have a compelling need for its production here.

Document No. 372: Document No. 372, which is discussed in paragraph 30 of Mr. Milner's declaration, forwards a working draft of an audit report on the "Licensing Support Network" ("LSN") for the Yucca Mountain repository. As you know, the LSN is a computerized database of documents relating to the license proceedings for Yucca Mountain, which DOE is required by statute to develop. We cannot identify any relevance of the LSN for Yucca Mountain to PG&E's damages claims or any "compelling need" that PG&E has for documents about the LSN for use in this litigation. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Document Nos. 381, 382, and 383: These documents, which Mr. Milner discusses in paragraph 32 of his declaration, relate to a briefing for Under Secretary Card regarding the potential design of the repository at Yucca Mountain. Under Secretary Card was provided with recommendations on matters such as how DOE should proceed with the license application for the repository. These documents do not discuss the rate at which DOE would accept nuclear utility SNF. Accordingly, based upon the Court's April 27, 2006 order, we cannot see either the relevance of or PG&E's "compelling need" for these documents. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Document Nos. 387, 388, and 390: These documents, which are discussed in paragraph 29 of the Milner declaration, relate to the Office of Civilian Radioactive Waste Management's initiation of the delivery commitment schedule submission process in 2004. These documents are not relevant to this litigation, given that they relate to DOE's effort to begin SNF acceptance in 2010 at a Federal repository and that they do not affect any activities in the "but for" world. Nevertheless, to the extent that we are required or agree to produce these documents, we have identified an error in our privilege log, which should have identified an attorney-client designation for a small portion of each of the three documents. We would seek to redact that information protected by the attorney-client privilege prior to any production of the documents.

We have been working diligently to respond to your letter dated May 5, 2006. To the extent that we identify any omissions in our discussion above or our other letters sent yesterday and earlier today, we will attempt to identify those omissions and respond accordingly. As we have previously stated, we are more than willing to discuss any remaining disagreements with you, at your convenience.

Very Truly Yours,

Harold D. Lester, Jr.

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Filed Electronically May 11, 2006

| | |
|---|---|
| PACIFIC GAS & ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 04-0074C,<br>into which has been consolidated No. 04-0075C<br>(Judge Hewitt) |

**PACIFIC GAS & ELECTRIC'S SECOND MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS WITHHELD UNDER THE "DELIBERATIVE PROCESS" PRIVILEGE**

Plaintiff Pacific Gas & Electric Company ("PG&E") moves this Court pursuant to RCFC 37(a)(2) to compel the government to produce 209 responsive documents that the government continues to withhold from disclosure due to its "deliberative process" privilege claims. The government's stance is inconsistent with the express directions and other "guidance" in the Court's April 27, 2006 Order as to how the parties should resolve this discovery dispute by determining where PG&E's "evidentiary need outweighs . . . the harm of disclosure . . . to the defendant." 4/27/06 Order at 7.

Pursuant to the Court's April 27 Order, the government has produced the 29 "example" documents "regarding the potential rate of acceptance by the government of SNF from nuclear utilities – which could be helpful in determining the rate of acceptance the government would have used had it begun to perform the parties' contract on January 31, 2006." *Id.* at 14, 15 (two places). The Court ordered these documents, which it characterized as "examples," produced because they are "highly relevant to this litigation and

at A50-A58). As noted above, in the first two letters the government refused to voluntarily release any documents described in any of its employee declarations other than Mr. Milner's, and specifically refused to release any GTCC waste-related documents. In its second May 10 letter, the government, while reiterating its disagreement with the Court's April 27 Order, did agree that based on the guidance in that Order, documents covered by Mr. Milner's declaration with the following "reference numbers" on PG&E's "Table of Challenges" accompanying its original motion to compel (a copy of the Table is attached as Exhibit A at A1-A39 for ease of reference) should be produced:

> 118, 119, 122, 124, 125, 127, 135, 138, 140, 143, 145, 146, 188-89, 190-96, 202-03, 205, 207-08, 212-16, 220, 224, 226, 233, 236, 238, 240-46, 248-49, 54, 256, 262, 264, 266-70, 272, 274-84, 287, 290, 311, 313, 319, 322, 333-36, 341, 346, 348, 350, 361, 363–66, 378.

Exh. D at A51.

That letter also states on pp. 2-3 (A51-A52): "[b]ecause we do not want to create any opportunity for any SNF plaintiff, or any plaintiff in other current of future litigation with DOE, to have any grounds for arguing that the Government somehow waived any privilege claims relating to the rate of SNF acceptance, we request that you ask the Court for an order compelling the production of these documents," subject to any appropriate other claims of privilege. Accordingly, PG&E hereby requests that the Court enter an order directing the release of the documents listed above, which are also listed on p. 2 of the government's attached second May 10 letter, subject to redactions for any proper claims of another privilege.

In its responsive letters, the government pointed out that certain of the documents requested in PG&E's May 5, 2006, letter had been previously produced by the government. In an effort to get the May 5 letter to the government before the weekend, it was drafted in

SPRIGGS & HOLLINGSWORTH
ATTORNEYS AND COUNSELORS
1350 I STREET, N.W., 9TH FLOOR, WASHINGTON, D.C. 20005-3305
OFFICE (202) 898-5800 TELECOPIER (202) 682-1639

# TELECOPY TRANSMISSION COVER SHEET

FROM: Robert L. Shapiro, Esq.

DATE: March 22, 2005

NUMBER OF PAGES: 11 (including Cover Sheet)

ACCOUNT NUMBER: 0419.0001 (six digit code)

TO THE FOLLOWING:

| NAME | FIRM/COMPANY | TELECOPIER NO. |
|---|---|---|
| Harold D. Lester, Jr., Assistant Director<br>John C. Ekman, Trial Attorney | Department of Justice<br>Commercial Litigation Branch<br>Civil Division – Classification Unit | 202/307-2503 |

For any problems or questions, please call (202) 898-5837 and ask for Tajwana Farley.

COMMENT/MESSAGE:

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THE COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

Draft as of 3/22/2005 5:47 PM 320090 v. 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY, Plaintiff, v. UNITED STATES OF AMERICA, Defendant. | Nos. 04-74C and 04-75C (unconsolidated) (Judge Hewitt) |

**JOINT MOTION FOR ENTRY OF AN ORDER GOVERNING CONFIDENTIAL AND PRIVILEGE OR PROTECTED MATERIALS**[1]

Pursuant to RCFC 7(b), Pacific Gas and Electric Company and the government submit this Joint Motion for Entry of an Order Governing Confidential and Privileged or Protected Materials. The parties agree that because discovery and other proceedings in this case may require the par ties to disclose confidential information and to withhold from discovery documents and information that are protected by various privileges or protections an order governing such material is required. The parties' have negotiated and agreed upon the terms in the proposed order attached as Exhibit 1, which the parties submit will clarify the respective obligations of each of the parties as to the treatment of confidential material and privileged or protected information in this case. The parties respectfully request that the Court enter the attached proposed order prior to April 22, 2005, the date the parties are

[1] This Joint Motion for Entry of an Order Governing Confidential and Privileged or Protected Materials is filed under Case No. 04-74C, but should also be deemed applicable to *Pacific Gas and Electric Co. v United States*, No. 04-75C.

scheduled to begin document production in this case in connection with the parties Initial Disclosures under RCFC 21(a)(1).

March ____, 2005

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

______________________
HAROLD D. LESTER, JR.
Assistant Director

______________________
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

______________________
JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (Fax)

Attorneys for Plaintiff
Pacific Gas and Electric Company

OF COUNSEL:
Robert L. Shapiro
Monica Freas
SPRIGGS & HOLLINGSWORTH

Draft as of 3/22/2005 5:47 PM 320090 v. 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Nos. 04-74C and 04-75C (unconsolidated)<br>(Judge Hewitt)<br><br>Filed March ___, 2005 |

**ORDER GOVERNING CONFIDENTIAL AND PRIVILEGE OR PROTECTED MATERIALS**

Discovery and other proceedings in this case may require the parties to disclose confidential information and to withhold from discovery other documents and information that are protected from disclosure by various privileges or protections. Accordingly, the parties agree to the following and it is hereby ORDERED:

Confidential Material

1. The term Confidential Material" shall refer to confidential, financial, trade secret, privileged, competitively-sensitive information, or records falling within the scope of the Privacy Act, 5 U.S.C. § 552a, disclosed in discovery or other proceedings in this case. Subject to the provisions of Paragraph 10 below, material shall be deemed Confidential Material when so designated in the manner described in Paragraph 2 below. After disclosure of any Confidential Material, all copies made of that material, and all notes made therefrom and all references made thereto, of any kind whatsoever, shall also constitute Confidential Material.

2. The designation of Confidential Material may be made by the disclosing party by placing or affixing on documents disclosed the word "confidential," or by stating in a letter to counsel for the receiving party or parties that all or any portion of the documents accompanying that letter are Confidential Material within the meaning of this agreement and order.

3. Each person receiving Confidential Material shall maintain such Confidential Material in his or her possession in a manner sufficient to protect such material against unauthorized disclosure.

4. Confidential Material shall be used by the receiving party solely for the purpose of conducting the above-entitled litigation and not for any business or other purpose whatsoever, except as provided in this agreement and order. Confidential Material shall be disclosed only to attorneys for plaintiff, attorneys for the United States, persons regularly employed in such attorneys' offices, or, subject to the provisions of Paragraph 5 below, other persons as reasonably necessary for the litigation of this action. Nothing contained in this agreement and order shall prevent or in any way limit or impair the right of counsel for the United States to disclose to any agency of the United States (including other divisions and branches of the Department of Justice) any document or information regarding any potential violation of law or regulation or, subject to procedures that maintain the confidentiality of Confidential Material consistent with this agreement and order, prevent or limit in any way the use of such documents and information by an agency in any proceeding regarding any potential violation of law or regulation.

5. With the exception of attorneys for plaintiff, attorneys for the United States, and persons regularly employed in such attorneys' offices, any person to whom Confidential Material is to be disclosed by the receiving party shall first be advised by an attorney for the

Spriggs & Hollingsworth

1350 I Street, NW
Washington, DC 20005

tel. 202.898.5800
fax 202.682.1639
www.spriggs.com

Monica A. Freas
202.898.5817
mfreas@spriggs.com

April 4, 2005

VIA FACSIMILE, ORIGINAL TO FOLLOW BY U.S. MAIL

John C. Ekman
Department of Justice
Commercial Litigation Branch
Civil Division -- Classification Unit
1100 L Street, NW, 8th Floor Mailroom
Washington, D.C. 20530

Re: *Pacific Gas & Electric Company v. U.S.*, Nos. 04-074C and 04-075C

Dear John:

I am writing as a follow-up to your letter dated March 30, 2005 and our discussion on Friday, April 1, regarding PG&E's proposed motion for an order governing confidential and privileged or protected materials. As Mr. Stouck and I indicated during our telephone conversation, the government's demand that PG&E agree to a protective order that is identical to orders recently entered by the Court in other SNF cases is not reasonable given that 1) your letter explicitly acknowledges that orders in existing cases are not uniform and 2) the government has failed to identify any reason why our proposed order should not be entered in the *PG&E* cases.

FILE COPY

Your letter mentions no specific provisions to which the government objects. However, the few issues you mentioned on the phone were, to our understanding, resolved by clarifying discussion (and/or reflected no disagreement, such that we would be amenable to clarifying language). For example, we have addressed the government's concern that language pertaining to the use of confidential material in other SNF cases or by attorneys in other SNF cases was lacking and we have added such language at the outset and in paragraphs 4 and 5 to the proposed order. Additionally, the government's concern that we had not allowed for the immediate return of inadvertently produced privileged material or for an unlimited clawback period was apparently the result of confusion on the government's part, as the order, as proposed, does provide for both.

Hollingsworth

John C. Ekman
April 4, 2005
Page 2

Should the government have any other specific concerns regarding the proposed order, which is modeled after the protective order recently entered and agreed to by the government in *Systems Fuels, et al. v. U.S.* (as to confidentiality issues) and, in substance, with the May 1999 order in the *Yankee Atomic v. U.S.* (as to privilege issues), we ask that you notify us promptly so that we can work to resolve any such concerns. In addition to the provisions drawn from those two orders, our proposed order sets-forth a time frame for delivery of privilege logs. You indicated no objection to this provision in view of the existing pre-trial schedule.

Absent identification of any further issues for discussion, we intend to proceed with filing our own motion by Tuesday evening, April 5, 2005, requesting that the attached proposed order governing confidential, privileged and other protected material be entered, so that this issue can be resolved sufficiently in advance of the April 22 due date for initial disclosures. It remains our preference to resolve any further issues by agreement, without the need for the Court's involvement, so I urge you to let us know if the government has specific concerns about any provisions of the enclosed proposed order.

Please call me should you have any questions.

Sincerely,

Monica A. Freas

Monica A. Freas

Enclosure

324474v1

04/04/2005 05:21 2027837552 SPRIGGS FAX-B PAGE 03/12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | Nos. 04-74C and 04-75C (unconsolidated)<br>(Judge Hewitt)<br><br>Filed April ___, 2005 |

**ORDER GOVERNING CONFIDENTIAL AND PRIVILEGE OR PROTECTED MATERIALS**

Discovery and other proceedings in this case and the other cases pending before the Court concerning the Standard Contract, 10 C.F.R. Part 961 (hereinafter referred to as the "Spent Nuclear Fuel cases" or "SNF cases") may require the parties to disclose confidential information and to withhold from discovery other documents and information that are protected from disclosure by various privileges or protections. Accordingly, the parties agree to the following and it is hereby ORDERED:

Confidential Material

1. The term Confidential Material" shall refer to confidential, financial, trade secret, privileged, competitively-sensitive information, or records falling within the scope of the Privacy Act, 5 U.S.C. § 552a, disclosed in discovery or other proceedings in this case. Subject to the provisions of Paragraph 10 below, material shall be deemed Confidential Material when so designated in the manner described in Paragraph 2 below. After disclosure of any Confidential Material, all copies made of that material, and all notes made

therefrom and all references made thereto, of any kind whatsoever, shall also constitute Confidential Material.

2. The designation of Confidential Material may be made by the disclosing party by placing or affixing on documents disclosed the word "confidential," or by stating in a letter to counsel for the receiving party or parties that all or any portion of the documents accompanying that letter are Confidential Material within the meaning of this agreement and order.

3. Each person receiving Confidential Material shall maintain such Confidential Material in his or her possession in a manner sufficient to protect such material against unauthorized disclosure.

4. Confidential Material shall be used by the receiving party solely for the purpose of conducting litigation in the spent nuclear fuel cases pending in the United States Court of Federal Claims and not for any business or other purpose whatsoever, except as provided in this agreement and order. Confidential Material shall be disclosed only to attorneys for plaintiff, attorneys for the United States, persons regularly employed in such attorneys' offices, or, subject to the provisions of Paragraph 5 below, other persons as reasonably necessary for the litigation of this action. Nothing contained in this agreement and order shall prevent or in any way limit or impair the right of counsel for the United States to disclose to any agency of the United States (including other divisions and branches of the Department of Justice) any document or information regarding any potential violation of law or regulation or, subject to procedures that maintain the confidentiality of Confidential Material consistent with this agreement and order, prevent or limit in any way the use of such documents and information by an agency in any proceeding regarding any potential violation of law or regulation.

5. With the exception of attorneys for plaintiffs in the spent nuclear fuel cases, attorneys for the United States, and persons regularly employed in such attorneys' offices, any person to whom Confidential Material is to be disclosed by the receiving party shall first be advised by an attorney for the receiving party or parties that pursuant to this agreement and protective order such person may not divulge any such Confidential Material to any other person not authorized under Paragraph 4 above to have access to such Confidential Material. The attorney shall secure from each person a declaration in the form attached hereto, stating that such person has read this agreement and order and agrees to be bound by it. Such declaration shall be maintained in the possession of the attorney securing the declaration until further order of the Court.

6. Subject to order of the Court, that portion of any pleading, motion, deposition transcript or other document submitted or presented to or filed with the Court containing Confidential Material shall be placed under seal and shall not be available to persons other than the Court and authorized employees of the Court, the attorneys of record for the parties to this action, and persons authorized by this agreement and order.

7. In the event that any Confidential Material is used in any deposition or Court proceeding herein, the parties shall attempt to further stipulate as to the procedures for use of Confidential Material in such proceedings.

8. If necessary, any dispute regarding the procedures for use of Confidential Material in deposition or Court proceedings shall be submitted to the Court for resolution. Any Confidential Material in question shall be treated as Confidential Material until resolution of the dispute by the Court and shall be treated thereafter in accordance with any Court order or direction resolving the matter.