IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, Plaintiff, | ) | |
| v. | ) | No. 04-0074C, into which has been consolidated No. 04-0075C (Judge Hewitt) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO ENFORCE THE TERMS OF THE PROTECTIVE ORDER, AS AMENDED BY THE COURT'S ORDER DATED MAY 14, 2006

Defendant, the United States, respectfully submits this reply to "PG&E's Response To The Government's May 25, 2007 Motion To Enforce Protective Order," which the plaintiff, Pacific Gas & Electric Company ("PG&E"), filed on June 5, 2007.

## DISCUSSION

### I. THE COURT'S MAY 14, 2006 ORDER IS NOT AMBIGUOUS

This Court's May 14, 2006 order provided that disclosure and/or use of the documents at issue, which the Court ordered produced to counsel for PG&E in this case, be limited "to the attorneys for the plaintiffs in this [*PG&E*] litigation only, rather than, as stated in the Protective Order, the 'attorneys for plaintiffs in the spent nuclear fuel cases.'" See Order, at 2-3 n.3 (May 14, 2006)). Even though many of these documents have now been filed in Dairyland Power Cooperative v. United States, No. 04-0106C (Fed. Cl.), albeit under seal, PG&E asserts that "there has been no violation of this Court's Orders." PG&E's Response, at 3 ¶ 4.[1] In the correspondence and prior briefing to which PG&E refers to support this assertion, counsel for

[1] "PG&E's Response, at ___" refers to PG&E's response to our motion to enforce the Court's May 14, 2006 order, which PG&E filed in this case on June 5, 2007. "Exhibit __ to PG&E's Response, at page __" refers to the exhibits to PG&E's June 5, 2007 response.

PG&E represented that this Court's May 14, 2006 order is ambiguous. See, e.g., Exhibit 2 to PG&E's Response, at page 1; Exhibit 3 to PG&E's Response, at page 1 ¶ 1.

As we established in our May 25, 2007 reply to the brief that Dairyland Power Cooperative ("Dairyland") filed in the Dairyland case in response to our motion to strike the privileged materials from the record in that case, a copy of which is attached to this reply for the Court's convenience, there is nothing ambiguous about the Court's May 14, 2006 order, particularly in light of the history of the events leading to its entry and in light of counsel for Dairyland's requests for similar language in a protective order in Dairyland. PG&E's assertions that it has not violated the Court's May 14, 2006 order by allowing Dairyland to file the materials in Dairyland are simply unfounded.

## II. THE GOVERNMENT'S MOTION TO ENFORCE SERVES A VALID PURPOSE

The main focus of PG&E's response appears to be that our motion "serves no purpose other than to attempt to cast mud in the direction of" counsel for the plaintiff. PG&E's Response, at 1 ¶ 2. Contrary to PG&E's assertion, our effort to enforce the protective order is intended not only to ensure compliance with this Court's orders, but also to ensure that we do not waive through inaction any privileges that have been invoked over the documents that counsel for PG&E has placed into the record of Dairyland Power Cooperative v. United States, No. 04-106C (Fed. Cl.).

## III. THE DOCUMENTS AT ISSUE WERE AFFIRMATIVELY FILED IN THE RECORD OF THE *DAIRYLAND* CASE AND WERE NOT MERELY SUBMITTED FOR *IN CAMERA* REVIEW

PG&E also insinuates that the Court should not view any activity in the Dairyland case to constitute a filing of the documents at issue into the record of that case, but, instead, should view counsel for PG&E's actions as a submission of the documents to the Dairyland Court "for *in*

*camera* review . . . ." PG&E's Response, at 2. However, as we explained in our May 25, 2007 reply to Dairyland's response to our motion to strike in that case, a copy of which is attached to this pleading, this assertion conflicts with Dairyland's actions. The term "in camera" means "[i]n chambers; in private." Black's Law Dictionary 760 (6th ed. 1990). Dairyland did not submit the documents for *in camera* review. Although Dairyland filed its reply brief under seal, it did not submit the privileged documents included in its appendix or discussed in its reply brief to the chambers of the judge assigned to this case for *in camera* review. Instead, it filed them with the Court in the record of this case. We cannot understand the basis of any representation that Dairyland's filing of privileged documents with the Clerk's office, along with its discussion of them in a brief filed in the record of the case, somehow constitute a submission of the privileged documents for *in camera* inspection.

Further, as we discussed in the motion to enforce that we filed in this case on May 25, 2007, many of the documents that Dairyland attached to and described in its reply brief relate to issues surrounding Greater-Than-Class-C radioactive waste ("GTCC waste"), an issue about which Dairyland, in its motion to compel, represented that it was not seeking to compel production because "the government has not yet made GTCC waste an issue in [the Dairyland] case." Dairyland's Motion To Compel Of Documents Withheld Under The 'Deliberative Process' And Attorney-Client Privileges," at 9 (Jan. 18, 2007), filed in Dairyland Power Cooperative v. United States, No. 04-0106C (Fed. Cl.). Accordingly, other than for the fact that counsel for PG&E filed the privileged GTCC documents in the record of the Dairyland case, there would be no reason for Chief Judge Damich, in Dairyland, to review these protected and privileged documents *in camera* because they are not being sought in that case. PG&E's assertion that counsel for PG&E was merely assisting in the "*in camera* review [that] the

government itself had requested in [the Dairyland] case," PG&E's Response, at 2 ¶ 2, is simply untrue.

IV. THE COURT HAS THE POWER TO ENFORCE ITS MAY 14, 2006 ORDER

PG&E also asserts that this Court lacks the power to take action to require counsel for PG&E to "withdraw" the privileged documents from the record of another case. Response, at 2 ¶ 3. However, this Court clearly has the authority to enforce its own protective orders. See, e.g., Lion Raisins, Inc. v. United States, 64 Fed. Cl. 536 (2005); Public Citizen v. Liggett Group, 858 F.2d 775, 780-82 (1st Cir. 1988); RCFC 37(b)(2). In fact, RCFC 37(b)(2)(C) expressly provides this Court with the authority to issue an "order striking out pleadings or parts thereof . . . ." Although counsel for PG&E filed the documents covered by the restrictions of this Court's May 14, 2006 order in another case that is being overseen by another judge of this Court, so that the Court in this case may not simply "strike" the documents from the docket of the Dairyland case, it can certainly order that counsel for PG&E request in Dairyland that the documents at issue and the discussion of those documents be stricken from the record of that case. Even PG&E acknowledges that Chief Judge Damich, in the Dairyland case, could withdraw the disputed documents and discussion from the record of the Dairyland case "in extraordinary circumstances." Response, at 2 ¶ 3 (quoting RCFC 77.3(b)). PG&E's assertion that its blatant violation of this Court's May 14, 2006 order is not an "extraordinary circumstance," see Response, at 2 ¶ 3, is remarkable.

V. WE ACCEPT COUNSEL FOR PG&E'S ASSERTION THAT HE DID NOT PROVIDE HIS CLIENT IN *DAIRYLAND* WITH COPIES OF THE PRIVILEGED DOCUMENTS THAT HE FILED ON DAIRYLAND'S BEHALF

PG&E also represents that, even though its counsel filed documents subject to the restrictions of this Court's May 14, 2006 order in the Dairyland case, its counsel did not actually

provide his client, Dairyland, with copies of the privileged documents that Dairyland attached to the reply brief at issue. PG&E's Response, at 1 ¶ 1; Exhibit 1 to PG&E's Response, at page 1 ¶ 2. We presume that, through this representation, counsel for PG&E also means that he did not share with Dairyland prior to or after its filing a copy of the reply brief to which those documents were attached. As the Court is aware, Dairyland discussed the contents of several of the privileged documents at issue in that brief. Accordingly, although it seems strange that Dairyland neither saw nor read a draft of that reply brief prior to its filing in its case, we accept counsel's apparent representation that he, in fact, did not share the pleading that he filed with Dairyland.

## CONCLUSION

For the foregoing reasons, and those discussed in our May 25, 2007 motion to enforce, we respectfully respect that the Court issue an order enforcing the terms of its May 14, 2006 order and to take any other action that it deems appropriate.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT DAMELIN
SHARON SNYDER
JOSHUA E. GARDNER
MARIAN E. SULLIVAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

May 25, 2007

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 616-0478
Fax: (202) 307-2503

Attorneys for Defendant

# ATTACHMENT

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANT'S MOTION FOR IMPOSITION OF
RECIPROCAL OBLIGATIONS UPON THE PARTIES

Defendant, the United States, respectfully submits this reply to the response that plaintiff, Dairyland Power Cooperative ("Dairyland"), filed on May 9, 2007, to our motion seeking to create reciprocal obligations upon the parties relating to document production.

## ARGUMENT

### I. DAIRYLAND'S REPRESENTATIONS THAT WE "THREATENED" IT ARE OUTRAGEOUS

As an initial matter, Dairyland's assertion that we "threatened" it, see Response, at 11,[1] is ludicrous. We acknowledge that we informed counsel for Dairyland that we intended to ask the Court to impose reciprocal obligations upon the parties in this litigation and that we would expect Dairyland to be willing to comply with whatever standard it believed the Government was obligated to satisfy. However, such an assertion is certainly not a "threat," but merely an acknowledgment that the parties, equally, must comply with the same discovery rules.

[1] "Response, at ___" refers to Dairyland's response to our motion seeking to impose reciprocal discovery obligations upon the parties in this case, filed May 4, 2007. "App. __" refers to the appendix to our April 20, 2007 motion for imposition of reciprocal obligations.

Dairyland's apparent belief that the Government, and only the Government, must satisfy extremely onerous and costly discovery obligations cannot be appropriate.

Similarly, Dairyland's allegation that we did not satisfy the meet-and-confer requirements with regard to our request that the Court impose the same obligations regarding document production upon Dairyland as it imposes upon the Government, Response, at 12 n.7, is unsupported. Pursuant to Rule 37(a)(2)(B), courts require a party moving to compel to conduct "a personal or telephonic consultation during which the parties engage in meaningful negotiations" in a "genuine effort to avoid judicial intervention." Shuttle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 171, 172 (D. Nev. 1996); see Powers v. CSX Transportation, Inc., No. 99-0326, 2001 WL 1190243, at *4 (S.D. Ala. July 16, 2001); Soto v. City of Concord, 162 F.R.D. 603, 623 (N.D. Cal. 1995). We discussed this matter by telephone with counsel for Dairyland, and, although counsel for Dairyland now views this discussion as some type of "threat," counsel was certainly aware of our position regarding this issue and indicated that Dairyland had no intention of performing the same work that the Government has been obligated to undertake.

## II. THE GOVERNMENT HAS NOT "WAIVED" ITS RIGHT TO SEEK RECIPROCAL DOCUMENT PRODUCTION OBLIGATIONS IN THIS CASE

In response to our motion seeking the imposition of reciprocal and equal obligations relating to document production in this litigation, Dairyland claims that we have waived our right to require both parties to comply with the same discovery rules, in the same manner. Response, at 12. Although it complains that we did not file our motion seeking reciprocal discovery obligations until eight months after we received Dairyland's document production to file our motion, Response, at 12, Dairyland had the bulk of our documents at the outset of this

litigation, long before it ever served any document production request. Yet, it waited a significant amount of time before filing its own motion to require the Government to modify its document production procedures. In any event, Dairyland cites no case law supporting a waiver of discovery rights, particularly when our motion was filed in response to the Court's ruling regarding Dairyland's demand for inconsistent discovery obligations.

Further, Dairyland complains that we do not need information about the contents of its documents, given that we were able to take depositions in this case of many of Dairyland's fact witnesses. Response, at 12. Yet, under that rationale, Dairyland, which has also taken its fact witness depositions in this case, did not need the information that it demanded through its motion to compel in order to do so. The fact that we took depositions with the information that we were able to extract from the documents in the manner those documents were provided to us does not mean that our knowledge of those documents was complete or our ability to organize them was easily achieved.

## III. DAIRYLAND'S REPRESENTATION THAT IT HAS PRODUCED DOCUMENTS AS KEPT IN THE ORDINARY COURSE OF BUSINESS EITHER IS IN ERROR OR IS CONSISTENT WITH THE MANNER IN WHICH THE GOVERNMENT PRODUCED ITS DOCUMENTS

Dairyland's main defense to our motion is that Dairyland, but not the Government, has produced documents "as they are kept in the ordinary course of business" and that, therefore, it has no obligation under RCFC 34 to tie its document productions to specific document production requests. It includes a declaration from an attorney at its counsel's office, Todd Monroe, who attests that documents responsive to the Government's document production requests "were collected under [his] supervision from relevant Dairyland employee files and central file archives maintained by the company." Monroe Declaration ¶ 7. Yet, from this

statement, it seems clear that Mr. Monroe and those assisting him made judgment calls about what documents in files were responsive to document production requests and that they extracted those documents from the files for production. Accordingly, his representation that the documents extracted "were scanned and produced in the order and format in which they appeared in the files, including preserving appropriate document boundaries regarding staples, binder clips and attachments," Monroe Declaration ¶ 7, does not mean that Dairyland produced to us its files as they are maintained "in the ordinary course of business." At best, it means that Dairyland produced selected documents from files that were kept in the ordinary course of business.

Interestingly, Dairyland does not cite to a single case supporting its position that a party can selectively identify documents from its files that are responsive to the other party's document production requests and then claim that they were produced as "kept in the ordinary course of business." As we explained in our motion seeking reciprocal obligations, documents are not produced "as kept in the usual course of business" where the "[p]laintiff has gathered these documents together from different entities and locations and has assembled the documents together in the boxes, which have now been imaged onto a computer database." Residential Constructors, LLC v. Ace Property & Caualty Ins. Co., No. 05-01318, 2006 WL 1582122 (D. Nev. June 5, 2006). "The purpose behind the 1980 Amendment that added the 'usual course of business' language to Rule 34(b) was to allow the discovering party access to business records in the manner documents were normally maintained by the producing party to prevent deliberate shifting of the materials from the sequence which they were ordinarily kept to somewhere else . . . .'" Id. (quoting In re Aldelphia Communications Corp., 338 B.R. 546 (S.D.N.Y. 2005))

(emphasis added). Here, it seems clear that Dairyland has not provided documents to us "in the manner [in which they] were normally maintained," but, instead, has provided us with its own selections of documents, which it then scanned onto CDs.

Further, to the extent that Dairyland continues to contend that its production somehow comports with the "as kept in the usual course of business" portion of RCFC 34, the Government's production similarly comports with it. As indicated in the accompanying declaration from Steve Salaj, we cannot see how the Government's production efforts differ in any way from Dairyland's description of its own efforts, except for the fact that the Government's efforts began well before Dairyland's as a result of the fact that other spent nuclear fuel plaintiffs (including other clients of counsel for Dairyland) sought documents well before Dairyland filed its complaint in this Court. Nevertheless, the documents that we produced were pulled from various files that were maintained in the usual course of business, and they were not reorganized or reordered in an effort to attempt to "conceal" information or to hide documentation. To the extent that the Court finds that Dairyland has no obligation to tie its document production to the Government's production requests, the Court will have imposed inequitable obligations on the parties, given that their production methods were substantially the same.

Dairyland claims that it should be excused from any obligation to tie documents to specific document production requests because it provided "custodian" information regarding approximately 33,000 of the 34,000 documents that it produced to us. First, we do not understand the reason that the identification of "custodian" information should excuse compliance with RCFC 34, particularly when the Government also previously provided

custodian information regarding its document production. Second, as identified in the declaration accompanying this brief, our records wholly conflict with Mr. Monroe's representation. Instead, we have been able to locate custodian information for less than half of the documents that Dairyland has produced. See Declaration of Steve Salaj, attached to this reply. That is, our records do not indicate the source or custodian of more than 19,000 documents that Dairyland produced to us. See, e.g., App. 57-87. Nevertheless, even with custodian information, we lack any information regarding which documents from each custodian relate to the specific topics in our document production requests. We have been required to devote significant manhours in an effort to attempt to identify what documents might be relevant to specific topics and issues. Dairyland has been of no assistance in that effort.

Dairyland's actions have imposed inequitable discovery obligations upon the parties, with the Government having expended substantial resources to attempt to create the identification of documents that Dairyland demanded but with Dairyland expending no such effort with regard to the documents that it produced. Under Dairyland's view, it is the Government, and only the Government, that must organize and categorize all documents in the case, both those that the Government produces and those that Dairyland produces. To eliminate this inequity, and to ensure that the parties are required equally and consistently to comply with their obligations under RCFC 34, we respectfully request that the Court, having ordered the Government to undertake certain efforts to identify documents from its production to Dairyland here, impose reciprocal obligations with regard to the identification of documents upon Dairyland in this case.

CONCLUSION

For the foregoing reasons, and those set forth in our motion dated April 20, 2007, we respectfully request that the Court order Dairyland to undertake the same level of effort to tie documents from its document production to the Government's document production requests that the Government is required to undertake.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

May 25, 2007

# ATTACHMENT

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DECLARATION OF STEVE SALAJ

I, Steve Salaj, hereby declare:

1. My name is Steven C. Salaj. I am a Project Manager employed by CACI, Inc., 1100 North Glebe Road, Arlington, Virginia. Under contract to the U.S. Department of Justice I managed the collection and processing of the document production to Dairyland Power Cooperative.

2. I have reviewed the declaration that Mr. Todd Monroe executed on May 4, 2007, and that Dairyland Power Cooperative attached to "Dairyland's Reply On Its Motion To Enforce February 5, 2007 Order And For Sanctions And Response To Defendant's Motion For Imposition Of Reciprocal Obligations Upon The Parties," dated May 4, 2007. Based upon my review of our records of Dairyland's document productions and the information that we obtained from Dairyland regarding the documents in those productions, I am able to offer the following information responding to those representations.

3. In paragraph 7 of his declaration, Mr. Todd Monroe states that the Dairyland documents produced to the Government "were scanned and produced in the order and format in which they appeared in the files, including preserving appropriate document boundaries regarding staples, binder clips and attachments." We have no way to verify Mr. Monroe's

statement. However, in comparison, the manner in which we have scanned and produced documents that the Government has produced to Dairyland, and those that the Government has produced to other spent nuclear fuel plaintiffs (including documents produced on our Production Website), is very similar to the method that Mr. Monroe describes. At the Department of Justice's direction, we have scanned documents that we received from the Department of Energy and the Nuclear Regulatory Commission in the order and format in which they appeared in the files provided to us, with the exception that privileged documents were separated out and scanned separately. Our scanning/eConversion process also preserved appropriate document boundaries regarding staples, binder clips, and attachments (with the one exception of attachments to e-mails received electronically – the attachment to an e-mail would be processed as a separate document immediately following the email). We also scanned the file folders and binders tabs received with paper documents.

4. In paragraph 8 of his declaration, Mr. Monroe states that '[o]ver 1,600 file folders and binder tabs have been produced" and that "[t]hese markers provide the government with the boundaries and subject matter of certain document collections and provide guidance on how the files were maintained by the various document custodians at Dairyland." Examples of the labels on the file folders that Dairyland produced are "WPI task 2," "WPI Phase I tasks 7 - 9 and 11," and "Task 15.5."

5. In comparison with Mr. Monroe's statement that Dairyland's file folders and binder tabs provide the Government with the boundaries and subject matter of certain document collections, our Production Website Index provides this same information to Dairyland and the other spent nuclear fuel plaintiffs. Our "containers" represent a distinct collection of documents

from one source: although there can be multiple containers from a particular custodian, all of the documents within a single container were produced by one source (as opposed to multiple sources).

6. In paragraph 11 of his declaration, Mr. Monroe states that Dairyland has "provided bibliographic coding for nearly all of its documents produced to the government," including, "for nearly every document, beginning and ending Bates number, document type (*i.e.*, file folder/binder tabs, letter, e-mail, etc.) document date, title, author, recipient, copyee and custodian." For the categories that Mr. Monroe identified, we received coding information as follows:

> Beginning and ending Bates number: This information is provided for nearly every document that was electronically produced.
>
> Document Type: We received this information for 32,752 of the 34,448 documents produced.
>
> Document Date: We received this information for all of the documents produced, although the date provided for 11,289 of the documents is "00/00/0000."
>
> Title: We received this information for 33,428 of the 34,448 documents produced.
>
> Author: We received this information for 33,323 of the 34,448 documents produced.
>
> Recipient: We received this information for 12,696 of the 34,448 documents produced.
>
> Copyee: We received this information for 5,447 of the 34,448 documents produced.
>
> Custodian: We received this information for 15,320 of the 34,448 documents produced.

7. In paragraph 12 of his declaration, Mr. Monroe asserts that "[l]ess than 1,000 of these 34,000 documents" produced to the Government in this case "do not have document custodian information." Our records, and the file information that we were provided by Dairyland, do not comport with this representation. With regard to the "Custodian" of each of the documents produced, we received that information for only 15,320 of the 34,448 documents produced. We did not receive "Custodian" information for 19,128 of the produced documents.

8. In our Concordance database, there are currently 34,448 documents that we received from Dairyland. Of those, 19,128 are without a custodian, or approximately 56 percent. Of the 14 productions loaded so far (PROD15 with about 2400 pages is not yet loaded), only PROD01, 02, and 13 have a custodian listed. Following are the custodians of record:

Adv. Committee/Board = Identified as Custodian for 191 documents

Central Files (or Filing) = Identified as Custodian for 2,243 documents

LACBWR Central Files = Identified as Custodian for 328 documents

Tech Library = Identified as Custodian for 2,234 documents

Mike Brasel = Identified as Custodian for 3,787 documents

Mike Johnson = Identified as Custodian for 6,097 documents

Lynne Goodman = Identified as Custodian for 209 documents

Seymour Raffety = Identified as Custodian for 231 documents

During the course of its productions, Dairyland provided bibliographic data to us in several different files, some of which included Custodian data, and some of which did not. The largest such file that it provided to us was on September 22, 2006, containing bibliographic data for over 33,000 records. In its transmittal letter for that disk, a copy of which is attached, Dairyland said

that it was providing us with the bibliographic coding data for all documents that Dairyland had produced to date. Attached is a copy of the first page from that data file. As evidenced by the first line of that page, the data fields that Dairyland included on that CD did not include "Custodian."

I declare under the penalty of perjury, this 25th day of May, 2007, that the foregoing is true and correct to the best of my knowledge and belief.

Steve Salaj

STEVE SALAJ

Greenberg
Traurig

Kevin E. Stern
Tel. 202.452.4878
Fax 202.261.0107
sternk@gtlaw.com

September 22, 2006

*VIA HAND DELIVERY*

Russell Shultis
Department of Justice
Commercial Litigation Branch
Civil Division – Classification Unit
8th Floor Mailroom
1100 L Street, NW
Washington, D.C. 20530

Re: *Dairyland Power Cooperative v. United States*

Dear Russ:

Please find enclosed one DVD labeled Bib Code Data containing the bibliographic coding for all documents Dairyland has produced to date.

Please let me know if you have any questions.

Sincerely,

Kevin E. Stern

Enclosure

BIBCODE

þBEGPRODNOþþENDPRODNOþþDOCTYPEþþDOCDATEþþTITLEþþAUTHORþþRECIPIENTþþCOPYEEþ
þPLAC0000001þþPLAC0000001þþFILE FOLDER/BINDER TABSþ00/00/0000þWPI TASK 2þþ[UNKNOWN]þþþþ
þPLAC0000002þþPLAC0000006þþHANDWRITTEN NOTESþ01/01/1988þCALC OF ACT PRODUCTS IN OTHER/RX COMPONENTS AS OF 1 JAN 88þþ[UNKNOWN]þþþþ
þPLAC0000007þþPLAC0000007þþMAP/DRAWING/DIAGRAM/PHOTOGRAPHþ00/00/0000þLACBWR STEAM SEPARATOR DWG NO 41-503-109 REV 0þþALLIS-CHALMERS MANUFACTURING COMPANYþþþþ
þPLAC0000008þþPLAC0000008þþE-MAILþ01/15/2003þNQA TASK 2-RESPONSE TO DPC COMMENTS DATED 1-13-03þþNELSON, LARRY LþþCHRISTIANS, ROGER E;COTA, RICH J;EGGE, DON G;JOHNSEN, MIKE N;RAFFETY, SEYMOUR J;RYBARIK, DAVID L;HART, DELENE A;BRASEL, MICHAEL AþþSANSCRAINTE, CHUCK Vþ
þPLAC0000009þþPLAC0000024þþBUSINESSþ01/13/2003þWPI RESPONSES TO DPC COMMENTS RELATIVE TO TASK 2 THE APPLICABLE COMMENTS WERE PROVIDED TO WPI VIA TRANSMITTALS NUMBER DPC-WPI-2002-1077 AND 1090 DATED 11/06/02 AND 12/4/2002þþWPIþþþþ
þPLAC0000025þþPLAC0000030þþMANUAL/TECHNICALþ01/14/2003þTABLE 3 RPV AND INSTALLED COMPONENTS ESTIMATED CURIE CONTENT IN ACTIVATED METAL AS OF JANUARY 2003 MANUAL CALCULATION REVISION 0þþWORLDWIDE PERFORMANCE AND INNOVATIONþþþþ
þPLAC0000031þþPLAC0000031þþE-MAILþ12/05/2002þNQA TASK 2 REPLY TO DRAFT RESPONSEþþJOHNSEN, MIKE NþþCHRISTIANS, ROGER E;RAFFETY, SEYMOUR J;EGGE, DON G;COTA, RICH J;HART, DELENE A;RYBARIK, DAVID L;BRASEL, MICHAEL A;MIRASOLA, DEB AþþNELSON, LARRY Lþ
þPLAC0000032þþPLAC0000034þþBUSINESSþ00/00/0000þ[UNTITLED]þþ[UNKNOWN]þþþþ
þPLAC0000035þþPLAC0000036þþMEETING/PRESENTATIONþ11/25/2002þWPI PROJECT TEAM MEETING MINUTES NOVEMBER 25 2002þþCHRISTIANS, ROGERþþBRASEL, MIKE;JOHNSEN, MIKE;NELSON, LARRY;RAFFETY, SEYMOUR;RYBARIK, DAVIDþþ
þPLAC0000037þþPLAC0000038þþE-MAILþ11/21/2002þNQA TASK 2-DRAFT WPI RESPONSES TO DPC COMMENTSþþJOHNSEN, MIKE NþþCHRISTIANS, ROGER E;RAFFETY, SEYMOUR J;EGGE, DON G;COTA, RICH J;HART, DELENE A;RYBARIK, DAVID L;BRASEL, MICHAEL A;MIRASOLA, DEB AþþSANSCRAINTE, CHUCK Vþ
þPLAC0000039þþPLAC0000054þþBUSINESSþ11/06/2002þDRAFT WPI RESPONSES TO DPC COMMENTS RELATIVE TO TASK 2 THE APPLICABLE COMMENTS WERE PROVIDED TO WPI VIA TRANSMITTAL NUMBER DPC-WPI-2002-1077 DATED 11/06/02þþ[UNKNOWN]þþþþ
þPLAC0000055þþPLAC0000055þþE-MAILþ11/06/2002þNQA TASK 2 COMMENTSþþJOHNSEN, MIKE NþþCHRISTIANS, ROGER E;RAFFETY, SEYMOUR J;EGGE, DON G;COTA, RICH J;HART, DELENE A;RYBARIK, DAVID L;BRASEL, MICHAEL A;MIRASOLA, DEB AþþSANSCRAINTE, CHUCK Vþ
þPLAC0000056þþPLAC0000063þþBUSINESSþ00/00/0000þTASK 2 COMPILED LACBWR COMMENTSþþ[UNKNOWN]þþþþ
þPLAC0000064þþPLAC0000067þþBUSINESSþ00/00/0000þDPC NEEDS RELATED TO WPI TASK 2 REPORTþþ[UNKNOWN]þþþþ
þPLAC0000068þþPLAC0000080þþBUSINESSþ10/17/2002þEXECUTIVE SUMMARY FILE DPC.0101.02.01 REVISION DþþWORLDWIDE PERFORMANCE AND INNOVATIONþþþþ
þPLAC0000081þþPLAC0000082þþMANUAL/TECHNICALþ10/17/2002þFILE DPC.0101.02.01 REVISION DþþWORLDWIDE PERFORMANCE AND INNOVATIONþþþþ
þPLAC0000083þþPLAC0000086þþHANDWRITTEN NOTESþ00/00/0000þ[UNTITLED]þþ[UNKNOWN]þþþþ
þPLAC0000087þþPLAC0000090þþMANUAL/TECHNICALþ05/00/1996þTHERMAL CROSS SECTIONSþþ[UNKNOWN]þþþþ
þPLAC0000091þþPLAC0000182þþMANUAL/TECHNICALþ08/00/2000þLOW-LEVEL RADIOACTIVE WASTE CLASSIFICATION CHARACTERIZATION AND ASSESSMENT WASTE STREAMS AND NEUTRON-ACTIVATED METALSþþROBERTSON, DE;THOMAS, CW;PRATT, SL;LEPEL, EA;THOMAS, VWþþDIVISION OF RISK ANALYSIS AND APPLICATIONS US NUCLEAR REGULATORY RESEARCHþþ
þPLAC0000183þþPLAC0000184þþBUSINESSþ08/00/2000þBIBLIOGRAPHIC DATA SHEET LOW-LEVEL RADIOACTIVE WASTE CLASSIFICATION CHARACTERIZATION AND ASSESSMENT WASTE STREAMS AND NEUTRON-ACTIVATED METALS REPORT NUMBER NUREG/CR-6567þþROBERTSON, DE;THOMAS, CW;PRATT, SL;LEPEL, EL;THOMAS, VWþþUS NUCLEAR REGULATORY COMMISSIONþþ
þPLAC0000185þþPLAC0000185þþBUSINESSþ08/00/2000þLOW-LEVEL RADIOACTIVE WASTE CLASSIFICATION CHARACTERIZATION AND ASSESSMENT WASTE STREAMS AND NEUTRON-ACTIVATED METALSþþ[UNKNOWN]þþþþ
þPLAC0000186þþPLAC0000187þþHANDWRITTEN NOTESþ00/00/0000þ[UNTITLED]þþ[UNKNOWN]þþþþ
þPLAC0000188þþPLAC0000188þþE-MAILþ10/18/2002þNQA TASK 2-DRAFT LACBWR RPV ACTIVATED MATERIALS REPORTþþJOHNSEN, MIKE NþþCHRISTIANS, ROGER E;RAFFETY, SEYMOUR

CERTIFICATE OF FILING

I hereby certify that on this 25th day of May 2007, a copy of foregoing "DEFENDANT'S DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR IMPOSITION OF RECIPROCAL OBLIGATIONS UPON THE PARTIES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.

CERTIFICATE OF FILING

I hereby certify that on this 18th day of June 2007, a copy of foregoing “DEFENDANT’S REPLY TO PLAINTIFF’S RESPONSE TO DEFENDANT’S MOTION TO ENFORCE THE TERMS OF THE PROTECTIVE ORDER, AS AMENDED BY THE COURT’S ORDER DATED MAY 14, 2006” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court’s electronic filing system. Parties may access this filing through the Court’s system.

s/ Harold D. Lester, Jr.