IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Filed electronically: January 23, 2008

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY, Plaintiff, | No. 04-0074C, into which has been consolidated No. 04-0075C |
| v. | (Judge Hewitt) |
| UNITED STATES OF AMERICA, Defendant. | |

RESPONSE TO GOVERNMENT'S JANUARY 9, 2008 BRIEF
REGARDING SANCTIONS OR REMEDIES
AS REQUESTED IN THE COURT'S DECEMBER 12, 2007 ORDER.

There is an appropriate remedy for the violation of this Court's amended protective order that has occurred. In fact, the government previously requested – and obtained – that appropriate relief. Six months ago, by Order dated June 29, 2007, Chief Judge Damich granted a parallel "motion to strike" that the government filed in the *Dairyland* spent fuel case. As requested by the government in that motion, Chief Judge Damich struck from the record of that case both the documents covered by this Court's order that Dairyland had filed under seal with a reply brief in *Dairyland* and the portions of that reply brief mentioning those documents.

In contrast to that appropriate remedy, the additional "sanctions" the government mentions for the first time in its latest filing here are not appropriate. Indeed, and very tellingly, although the government's supplemental brief suggests that the Court has authority to impose the sanctions that the government now mentions, the government

does not even purport to explain why it would be appropriate for the Court to impose any of those sanctions in this case. The government does not do so because it cannot. The additional sanctions the government mentions are not appropriate here. The few cases the government cites involved very different facts, and do not remotely support imposition in this case of the sanctions the government mentions in its supplement brief.

Make no mistake: undersigned counsel is not happy about the Court's conclusion that he violated the amended protective order. Counsel regrets that his zeal to represent Dairyland caused him, in hindsight, to adopt an overly aggressive reading of this Court's amended protective order. And the Court's published opinion stands as a permanent marker of the episode. *Cf. Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1353 (Fed. Cir. 2003) ("A lawyer's reputation is one of his most important professional assets."). But the question now before the Court is whether any additional remedy or sanction is appropriate to remedy the violation. The answer to that question is "no."

<u>DISCUSSION</u>

1. It is a basic tenet in our judicial system that punishment should fit the crime. Accordingly, absent the most egregious circumstances, relief for violations should be designed to ameliorate the harm, or forestall additional potential harm, that the violation may cause.

The government clearly understands this, because in its original motion to enforce this Court's amended protective order filed in this case, the government specifically requested two items of relief that could, and would, simply eliminate whatever potential harm might be caused by the violation of that order that the government alleged and this

Court has now found to have occurred. Specifically, the government sought the following relief:

> [T]he Government requests that the Court order counsel for PG&E immediately to withdraw those portions of its reply brief and accompanying appendix that discuss or contain documents that were subject to the Court's May 14, 2006 order. The Government also requests that the Court order counsel for PG&E to disclose the full extent of the disclosure of these documents, describing when these documents have been disclosed and to whom, and to take an other action that the Court deems appropriate.

05/25/07 Def.'s Motion to Enforce Protective Order at 13-14.

As noted above, and as the government explicitly acknowledges in its recent supplemental brief (at p. 2), the government fully obtained the first item of relief requested in the passage quoted above from Chief Judge Damich via his Order of June 29 2007 in the *Dairyland* case. And as the government acknowledges implicitly in its latest filing (by ignoring the matter), the second item of relief it requested in the passage quoted above is also moot. That is because, as set forth in the declaration of undersigned counsel filed with PG&E's June 5, 2007 response to the government's motion to enforce, there was no "other" disclosure of the documents than their submission under seal in the *Dairyland* case.

The government has not explained, and cannot explain, why the only relief it previously requested (and obtained) is not still the appropriate remedy. It is. Striking the protected documents from the *Dairyland* record fully remediated the harm threatened by counsel's violation of this Court's order.

2. Moreover, the government does not explain why any of the "sanctions" it now mentions should appropriately be applied in this case. We, however, can readily explain why those proposed sanctions are *not* appropriate.

a. First, there is no need for a further remedy or sanction to forestall further violations of this Court's order. Now that the Court has ruled that counsel violated the amended protective order, the Court can be sure – without any further remedy – that there will be no further violations. Happily the government does not argue to the contrary.

b. Second, there are good reasons not to impose the sanctions the government suggests, none of which sanctions are supported by the precedents the government cites. The three sanctions now suggested by the government are the following: 1) that the protected documents be returned to the government or destroyed, 2) that "PG&E be barred from utilizing any of the protected documents" on any remand in its current spent fuel case or in any future case, and 3) that the government "recover its attorneys' fees and costs" arising from the violation. *See* 05/25/07 Def.'s Motion to Enforce at 3-4.

The first option, to return or destroy the protected documents, has no real effect standing alone, and would only make sense if coupled with the second option – a prohibition on PG&E future use of the documents. Absent that prohibition, after returning or destroying the documents PG&E would be free to seek the documents again in future proceedings, and the Court presumably would order their release again for the same reasons it ordered release of the documents the first time.

The only case the government cites in support of the "return or destroy" option, *Kramer v. Boeing Co.*, 134 F.R.D. 256 (D. Minn. 1991), *see* 01/09/08 Def.'s Supplemental Brief at 3, does not support imposition of that sanction here. In *Kramer*, the order directing return of the documents merely enforced the terms of the protective order in that case, which explicitly required return of the documents upon completion of the case. Counsel had violated that order by deliberately refusing, after notice and an

opportunity to cure the violation, to return documents to the producing party upon conclusion (by settlement) of the case. *See* 134 F.R.D. at 258 ("By maintaining possession of the documents, Fitzgerald appears to violate the terms of the protective orders and settlement agreement."), 259 ("The court offered Mr. Fitzgerald a continuance to specifically address the contempt and sanctions issues. Mr. Fitzgerald declined."). It was to remedy that *continuing* violation that the Court simply enforced the terms of the protective order by directing Mr. Fitzgerald to return the documents to the producing party. *See id*. at 259. That remedy was designed to eliminate the continuing harm caused by Mr. Fitzgerald's ongoing violation of the order, and it did eliminate that harm. In the present case, by contrast, there is no continuing harm, because Chief Judge Damich's order last June eliminated the harm, or potential harm, from the violation here.[1]

The second sanction the government now suggests, that PG&E be prohibited from using the documents in any future proceedings, bears no relation to the underlying protective order violation. In addition to the lack of authority for such a sanction, discussed below, the government does not explain – because it cannot – why PG&E should be punished at all, much less in a manner that does not redress harm from the violation. Nor does the government explain, more fundamentally, why relevant and unprivileged evidence should be forever banished from the truth finding-process in future proceedings.

[1] The government's parenthetical accompanying its citation of *Kramer*, stating that case involved "ordering counsel to destroy all copies of documents at issue," *see* 01/09/08 Def.'s Supplemental Brief at 3, is also wrong. *See* 134 F.R.D. at 259. But that mistake is ultimately less consequential than the fact that, for the reasons stated in the text, the decision does not support the relief the government is now requesting in this case.

The government mis-cites *Coleman v. American Red Cross*, 979 F.2d 1135, 1141 (6th Cir. 1992), which is the only authority the government offers to support its request that "PG&E should be barred from utilizing any of the protected documents . . . in any future proceedings." *See* 01/09/08 Def.'s Supplemental Brief at 3. In a parenthetical accompanying its citation of *Coleman*, the government says that case was one "barring use of documents in the proceedings as [a] sanction for [a] protective order violation." *See id.* That characterization is backwards and wrong, because the Sixth Circuit held in *Coleman* that the information in question *could* be used in a new and separate lawsuit. Moreover, the court there reached that conclusion even though it was undisputed that the information had been obtained in violation of a protective order, which the court specifically held to be valid and otherwise binding. *See* 979 F.2d at 1139-41.

In the present case, to prohibit PG&E from using the documents in question would not only be inconsistent with the holding of the only authority the government cites, but unfair to PG&E and not calculated to address the harm caused by the violation of this Court's order. It would also be contrary to the search for truth, which ultimately is what motivated the Sixth Circuit's decision in *Coleman*.[2]

The government cites no case at all that supports its third request, that the government "recover its attorneys' fees and costs" associated with the violation of the

---

[2] The Sixth Circuit's dictum in *Coleman* that in other circumstances a court "may properly enjoin a party from using the fruits of a discovery violation in another proceeding," 979 F.2d at 1141, does not help the government either, because the documents at issue here are not "fruits" of the violation of a protective order. In that circumstance, perhaps future use of the documents could be barred, to *remedy* (or forestall) the *harm* caused by the violation. The present case is entirely different. PG&E obtained the documents in question not as "fruits" of any wrongful conduct, but pursuant to this Court's extensive rulings that the documents are relevant, probative and unprivileged. Barring future use of the documents here would remedy nothing.

protective order. *See* 01/09/08 Def.'s Supplemental Brief at 3-4. That should not be surprising, because the government's lawyers at the Department of Justice are dedicated attorneys' whose job it is to litigate such matters. Not only has the government failed to cite a case, but undersigned counsel is aware of none, in which the Department of Justice was allowed to "recover" non-existent attorneys' fees as a result of another parties' violation of a protective order.

c. Finally, and perhaps most fundamentally of all, the violation here is not so egregious as to warrant sanctions merely to punish counsel or PG&E, which is what the government is now suggesting. Such punishment – unrelated to remediating the harm from the violation – is reserved for cases of exceptional and egregious misconduct.

The case cited in this Court's December 12, 2007 Order, *Eagle Comtronics, Inc. v. Arrow Communication Laboratories, Inc.*, 305 F.3d 1303 (Fed. Cir. 2002), evidently was such a case: "The conduct in this case was indeed egregious and amounted to much more than Eagle providing the PTO with material that it already possessed." *Id.* at 1314. As the Federal Circuit explained:

> After Eagle copied Arcom's application and re-submitted it as its own, the PTO had a completely different application purporting to give rights to a completely different inventor. . . . The integrity of the patent system is maintained in part by inventors' understanding that their patent applications will remain secret . . . . Breaches of this secrecy undermine the integrity of the patent system.

*Id.*

The violation in *Eagle Comtronics* was "egregious" because it not only affected the patent rights of a third-party, but threatened to undermine the integrity of the patent system. Nothing remotely like that private or public harm resulted from the violation in the present case. In that regard, it is notable that the government has not suggested or

cited *Eagle Comtronics* as a precedent for sanctions here. Similarly, the conduct in *Kramer* was egregious in that there could have been no doubt that counsel there was deliberately defying a court order.

Here, there is no serious private or public harm as in *Eagle Comtronics.* Moreover, counsel took significant care in attempting (albeit unsuccessfully) *not* to violate the order and *not* to cause or threaten any harm. Counsel submitted the documents in question under seal, so that only the Court and no other person or party would see them. Counsel also had a good faith (though mistaken) belief that submitting the documents under seal, as opposed to offering them into evidence, did not constitute "use" of the documents. *See* Appendix to 05/25/07 Def.'s Motion to Enforce at 4-5 (April 4, 2007 letter from Mr. Stouck to Ms. Sullivan at DOJ).[3] And ultimately the Court in *Dairyland* promptly struck the documents from the record in that case, so that not even Chief Judge Damich would see or rely on them.

In these circumstances, and given that the harm or threatened harm from the violation has already been eliminated by Chief Judge Damich's order, no additional "sanction" is warranted. Certainly the government has not explained why an additional sanction should be imposed or cited precedent for imposing further punishment here.

[3] The government asserts without explanation that counsel's violation of this Court's order was "wilful," but that is plainly wrong. *See* 01/09/08 Def.'s Motion to Enforce Protective Order at 3. Although counsel intended to attach the documents to the reply brief in *Dairyland*, it is obvious (for reasons noted it the text) that counsel did not intend *to violate* this Court's order, which is the meaning of "wilful" that is applicable here. The government quotes, from *United States v. Murdock*, 290 U.S. 389, 394-95 (1933), one of a whole number of definitions the Court cited there of the word "wilful" in various contexts. *See* 01/09/07 Def.'s Motion to Enforce at 4. But the government ignores the definition that was applicable in the context of that case, which was that when a statute declares a"wilful failure" to be an element of a penal offense, "an evil motive is a constitutional element of the crime." 290 U.S. at 395. In the context of the case now before this Court, counsel's violation of the protective order was not "wilful."

3. The government has had three chances to demonstrate to the Court what an appropriate remedy would be for violation of this Court's amended protective order – once in its original motion to enforce filed in this case, once in its motion to strike filed in the *Dairyland* case, and once in its recent supplemental brief in this case. The first two times the government requested relief that was appropriate to the violation – in its *Dairyland* motion, striking the protected documents from the record of that case, and in its motion to enforce in this case, requiring that the protected documents be withdrawn or otherwise effectively stricken in *Dairyland*. By contrast, in its recent supplemental brief the government does not offer any valid or proper reason for the Court to impose any additional remedy or sanction. The Court therefore should consider this matter at an end. In particular, the government should not be permitted to compound the unfairness of pursuing inappropriate remedies by raising new issues or arguments in its reply brief.

Respectfully submitted,

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
(202) 331-3173 Phone
(202) 261-4751 Fax
Counsel for Plaintiff
Pacific Gas and Electric Company

Of Counsel:

Robert L. Shapiro
GREENBERG TRAURIG, LLP

January 23, 2008