# In the United States Court of Federal Claims

No. 04-74C
(into which has been consolidated No. 04-75C)
(E-Filed: June 27, 2008)

| | |
|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, Plaintiff, v. THE UNITED STATES, Defendant. | Spent Nuclear Fuel Case; Violation of Order Amending Protective Order dated May 14, 2006; Availability of Sanctions or Remedies; Government Entitled to Reasonable Expenses, Including Attorneys' Fees |

Jerry Stouck, Washington, DC, for plaintiff. Robert L. Shapiro, Washington, DC, of counsel.

Jeanne E. Davidson, Director, with whom were Peter D. Keisler, Assistant Attorney General, and Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Jane K. Taylor, Office of General Counsel, United States Department of Energy, Washington, DC, and Scott R. Damelin, Joshua E. Gardner, Sharon A. Snyder, and Marian E. Sullivan, Civil Division, Department of Justice, Washington, DC, of counsel.

ORDER

HEWITT, Judge

I. Background

This proceeding regarding sanctions or remedies arises from plaintiff's counsel's failure to comply with an order of this court. The court's order of May 14, 2006, Pacific Gas & Electric Co. v. United States, No. 04-74C, 2006 U.S. Claims LEXIS 418, at *1 (Fed. Cl. May 14, 2006) (Order Amending Protective Order), arose out of the substantive litigation in which plaintiff Pacific Gas & Electric Company (PG&E or plaintiff) filed two suits against the federal government (government or United States or defendant) for partial breach of contracts for the disposal of spent nuclear fuel (SNF) and/or high-level radioactive waste generated at plaintiff's nuclear electric utilities.[1] Case No. 04-74C, Plaintiff's Complaint, Jan. 22, 2004, 1 (Complaint or Compl.); Case No. 04-75C, Plaintiff's Complaint, Jan. 22, 2004, 1. The complaints in the two proceedings were substantially identical. Compare Case No. 04-74C, Plaintiff's Complaint with Case No. 04-75C, Plaintiff's Complaint. The cases were consolidated by court order on April 12, 2005. Order of Apr. 12, 2005, 1. References to the "Complaint" in this Order are to the complaint filed in case number 04-74C. The court granted defendant's motion for summary judgment with respect to two of the three counts that plaintiff had alleged in its Complaint. Pac. Gas & Elec. Co. v. United States (PG&E Summary Judgment Decision), 70 Fed. Cl. 766, 782 (2006). With respect to the remaining count, the court held a trial and issued its opinion on October 13, 2006. Pac. Gas & Elec. Co. v. United States (PG&E Trial Opinion), 73 Fed. Cl. 333 (2006). The court held that plaintiff was entitled to $42,765,453 in damages due to the government's partial breach of its contracts. Id. at 432.

On April 21, 2005, during discovery in this case, the court issued a protective order governing the disclosure of protected material. See Protective Order, Docket No. 31, Apr. 21, 2005 (Protective Order). The Protective Order allowed confidential material to be used "solely for the purpose of conducting litigation in the SNF cases pending in the United States Court of Federal Claims." Id. at 2. During discovery, plaintiff filed a motion to compel the production of documents that defendant had withheld based upon assertions of the deliberative process privilege by the Department of Energy and the Nuclear Regulatory Commission. Defendant's Motion to Enforce the Terms of the Protective Order, As Amended by the Court's Order Dated May 14, 2006 (Motion to

---

[1]The complaints of Pacific Gas & Electric Company (PG&E or Plaintiff) were two of approximately sixty-six filed by nuclear electric utilities seeking damages from the United States for breach of contract. PSEG Nuclear, L.L.C. v. United States, 465 F.3d 1343, 1345 (Fed. Cir. 2006).

Enforce or Def.'s Mot.) 2; see Pacific Gas & Electric Company's Motion to Compel Discovery and Request for Expedited Hearing, Docket No. 37, Aug. 25, 2005. After reviewing those documents in camera, the court ordered the government to produce certain documents because plaintiff's need for the documents outweighed defendant's concerns about disclosure. Pac. Gas & Elec. Co. v. United States (PG&E Order to Compel), 71 Fed. Cl. 205, 214-16 (2006). In that order, the court discussed some of the documents over which defendant had claimed privilege, using those documents as examples to identify the type of documents that defendant should produce. Id. at 211-16. The court provided this guidance "for the purpose of permitting the parties to analogize these examples to disputed documents not mentioned in this Order and thereby to resolve any further discovery disputes involving the deliberative process privilege that may arise." Id. at 210. To the extent that the parties could not agree with regard to any of the remaining documents withheld under that privilege, the court stated that "plaintiff . . . may . . . move the court to compel production of any of the documents described in the affidavits, based on 'a showing of evidentiary need . . . that outweighs the harm that disclosure of such information may cause to defendant.'" Id. (citation omitted).

On May 11, 2006, plaintiff filed a new motion to compel defendant to produce the documents over which defendant continued to assert the deliberative process privilege. Pacific Gas & Electric's Second Motion to Compel the Production of Documents Withheld Under the "Deliberative Process" Privilege (PG&E's Second Motion to Compel), Docket No. 231, May 11, 2006. After further review of documents in camera, the court granted plaintiff's motion in part, holding that defendant must produce some of the documents in question but that defendant had rightly asserted the deliberative process privilege over others. Order Amending Protective Order, U.S. Claims LEXIS 418, at *13-14. In its Order Amending Protective Order, the court amended the Protective Order entered in the case to limit distribution and use of the documents. Id. at *5 n.3. Specifically, the court stated:

> Every document ordered to be produced by this Order shall be subject to the protective order issued by the Court on April 21, 2005. However, for the purposes of this Order, the Court AMENDS the Protective Order to limit the disclosure and/or use of all documents mentioned in this Order to the attorneys for the plaintiffs in this litigation only, rather than, as stated in the Protective Order, the "attorneys for plaintiffs in the spent nuclear fuel cases."

Id. (emphasis in original). The Order Amending Protective Order therefore limited the use of the documents to "this litigation only," that is, the PG&E consolidated cases. Id. In response to this order, the government produced 211 documents. Def.'s Mot. 6. Plaintiff added some of those documents to its exhibit list, but it did not seek admission of

any of them at trial. Id. After the trial in this case concluded, the court issued its opinion and entered final judgment on October 13, 2006. PG&E Trial Opinion, 73 Fed. Cl. at 333. On December 22, 2006, the court denied plaintiff's motion for reconsideration. Pac. Gas & Elec. Co. v. United States (PG&E Denial of Reconsideration), 74 Fed. Cl. 779, 785 (2006). Plaintiff and defendant filed an appeal and cross-appeal, respectively, which are currently pending before the Court of Appeals for the Federal Circuit. Notice of Appeal, No. 04-74C (Fed. Cl. Jan. 18, 2007); Notice of Cross-Appeal, No. 04-74C (Feb. 20, 2007).

Plaintiff's counsel in this case also serves as counsel for Dairyland Power Cooperative (Dairyland), plaintiff in one of the approximately sixty-six other SNF cases, Dairyland Power Cooperative v. United States (Dairyland), No. 04-106C (Fed. Cl.). On January 18, 2007, plaintiff's counsel, acting as counsel to Dairyland, filed a motion to compel on behalf of Dairyland. Dairyland's Motion to Compel Documents Withheld Under the "Deliberative Process" and Attorney-Client Privileges, Dairyland, No. 04-106C (Fed. Cl. Jan. 18, 2007) (Dairyland's Motion). In Dairyland's Motion, plaintiff's counsel sought some of the same documents subject to the deliberative process privilege that this court had ordered produced in this case subject, however, to its Order Amending Protective Order. Compare Order Amending Protective Order with Dairyland's Motion. The government opposed Dairyland's Motion. See Defen[d]ant's Response to Plaintiff's Motion to Compel Discovery and Motion for a Protective Order, Dairyland, No. 04-106C (Fed. Cl. Jan. 18, 2007) (Dairyland Def.'s Resp.).

In his reply to the government's opposition, which was filed under seal, counsel for Dairyland attached an appendix that contained thirty-five documents that this court had ordered the government to produce in the PG&E case subject, however, to its Order Amending Protective Order which limited the use of the documents to use in the PG&E consolidated cases. Def.'s Mot. 6-7; see Reply in Support of Dairyland's Motion to Compel Documents Withheld Under the Deliberative Process and Attorney-Client Privileges (Dairyland Pl.'s Reply), Dairyland, No. 04-106C (Fed. Cl. Mar. 19, 2007). Defendant states that it "notified counsel for Dairyland of [its] objection to Dairyland's submission to the [c]ourt in the Dairyland case copies of documents that were subject to deliberative process privilege and requested that counsel for Dairyland, who is also counsel for PG&E, withdraw those portions of its reply brief that discuss the content of protected documents and that it withdraw the protected documents themselves from the record of the Dairyland case." Def.'s Mot. 7-8. However, "Dairyland declined to withdraw [the documents] from the record in the Dairyland case." Id. at 8.

On May 3, 2007, defendant filed a motion with the Dairyland court requesting that the court strike the disputed materials from the Dairlyand record. Defendant's Motion to Strike Portions of Plaintiff's March 19, 2007 Reply Brief and Accompanying Appendix

on "Dairyland's Motion to Compel Documents Withheld Under the Deliberative Process and Attorney-Client Privileges" (Motion to Strike), Dairyland, No. 04-106C (Fed. Cl. May 3, 2007). The Dairyland court granted the Motion to Strike on June 29, 2007. Response to Government's January 9, 2008 Brief Regarding Sanctions or Remedies as Requested in the Court's December 12, 2007 Order (Plaintiff's Response or Pl.'s Resp.) 1.

On May 25, 2007, defendant also filed its Motion to Enforce in this court. Def.'s Mot. 1. The court granted the motion, finding that counsel for PG&E violated the Order Amending Protective Order when he used thirty-five protected documents for purposes outside of the PG&E litigation. Pac. Gas & Elec. Co. v. United States (PG&E Violation Opinion), 79 Fed. Cl. 744, 748 (2007). Further, this court ordered briefing on the question of appropriate sanctions or remedies. Id. In response to this order, on January 9, 2008, the government filed Defendant's Response to the Court's Order, Dated December 12, 2007, Regarding Sanctions or Remedies for Plaintiff Counsel's Violation of the Court's May 14, 2006 Protective Order (Defendant's Brief or Def.'s Br.) 1. On January 23, 2008, counsel for PG&E filed Plaintiff's Response. Pl.'s Resp. 1. Finally, on January 30, 2008, the government filed Defendant's Reply to Plaintiff's Response to the Court's Order, dated December 12, 2007, Regarding Sanctions or Remedies for Plaintiff's Violation of the Court's May 14, 2006 Protective Order (Defendant's Reply or Def.'s Reply) 1.

## II. Authorities to Order Sanctions or Remedies

In this Order, the court decides whether sanctions or remedies are appropriate for plaintiff's counsel's failure to obey the Order Amending Protective Order and, if so, which sanctions or remedies are appropriate. Defendant's Brief requests that the court: 1) require plaintiff to return or destroy all protected documents, 2) bar plaintiff's future use of the protected documents in the current litigation, and 3) award all costs and expenses incurred due to plaintiff's counsel's failure to obey the order, including attorneys' fees. Def.'s Br. 3-4. Plaintiff's counsel responds that it is not appropriate for the court to impose any additional sanctions or remedies because the only remedies required by his violation have already occurred. Pl.'s Resp. 1-2. Specifically, plaintiff's counsel refers to the Dairyland court's granting of the government's motion to strike all the protected documents and mention of the documents from the record in Dairyland to support his view that all potential harm has been avoided, thus making any further sanctions or remedies inappropriate. Id. at 1. Plaintiff's counsel states, "There is an appropriate remedy for the violation of this Court's amended protective order . . . . In fact, the government previously requested - and obtained - that appropriate relief. . . . But the question now before the Court is whether any additional remedy or sanction is appropriate to remedy the violation. The answer . . . is 'no.'" Id. at 1-2.

There are several possible sources of authority for the imposition of sanctions or remedies for plaintiff's counsel's violation, including Rule 16 of the Rules of the United States Court of Federal Claims (RCFC) and the court's inherent authority to enforce its own orders.[2] After examining the requirements for these authorities to be invoked, their

---

[2]Although Rules 11 and 37 of the Rules of the United States Court of Federal Claims (RCFC) also grant authority to impose sanctions, the court does not believe these authorities to be appropriate to this case. RCFC 11 concerns an attorney's duty of candor and truthfulness in all dealings with the court. See RCFC 11. Here, counsel for PG&E violated the order of the court in Pacific Gas & Electric Co. v. United States, No. 04-74C, 2006 U.S. Claims LEXIS 418, at *1 (Fed. Cl. May 14, 2008) (Order Amending Protective Order) by using protected documents in a different case. Pac. Gas & Elec. Co. v. United States (PG&E Violation Opinion), 79 Fed. Cl. 744, 748 (2007). Although counsel did initially allege to this court in PG&E's Response to the Government's May 25, 2007 Motion to Enforce Protective Order (Plaintiff's Response to Motion to Enforce or Pl.'s Resp. to Mot. to Enf.), that he did not violate the Order Amending Protective Order, that argument was based on counsel's alleged good faith misunderstanding of what the order entailed. Response to Government's January 9, 2008 Brief Regarding Sanctions or Remedies as Requested in the Court's December 12, 2007 Order (Plaintiff's Response or Pl.'s Resp.) 8. Further, counsel did not contend that he did not file the protected documents. Pl.'s Resp. to Mot. to Enf. passim. Indeed, he provided a signed declaration that he had filed copies in the Dairyland case. Id. at Ex. 1, 1. Counsel relied only on his legal opinion that filing the protected documents in the Dairyland case was not a violation of the Order Amending Protective Order. Id. at Ex. 2, 1-2.

The Court of Appeals for the Federal Circuit has held that "being wrong in a choice of theory or miscalculation of facts necessary to sustain the theory does not necessarily equate with a breach of the duty of candor under RCFC 11." 1-10 Indus. Assocs., L.L.C. v. United States, 2008 U.S. App. LEXIS 10786, *29 (Fed. Cir. 2008) (quoting Motown Prods., Inc. v. Cacomm, Inc., 849 F.2d 781, 785 (2d Cir. 1998)). Because counsel never attempted to mislead the court nor acted with dishonesty towards the court in a pleading or filing, RCFC 11 is not an appropriate basis upon which to fashion sanctions or remedies in this case.

Likewise, RCFC 37 is not an appropriate basis for sanctions in these circumstances. RCFC 37(b) provides that "if a party . . . fails to obey an order to provide or permit discovery . . . the court may make such orders in regard to the failure as are just." RCFC 37(b)(2). RCFC 37(b)(2) identifies many options which may be appropriate as a remedy for a violation, including: prohibiting the party from introducing designated matters into evidence, striking out pleadings, refusing to allow the party to support designated claims or defenses, treating as contempt of court the failure to obey an order, dismissing the action, and requiring the party to pay reasonable expenses, including attorney's fees. Id.

(continued...)

applicability to this case, and the appropriateness of the requested remedies or sanctions thereunder, the court concludes that an award to defendant of expenses incurred due to plaintiff's counsel's noncompliance with the court order, including attorneys' fees, under RCFC 16 or, in the alternative, under this court's inherent authority, is the appropriate remedy for the harm to defendant and the court by plaintiff's counsel's failure to obey the Order Amending Protective Order.

A. RCFC 16

The court has explicit authority under RCFC 16 to impose sanctions or remedies in circumstances such as have arisen in this case. RCFC 16 affords a judge discretion to control pretrial proceedings. See RCFC 16. RCFC 16(a) provides that "[i]n any action, the court may in its discretion direct the attorneys for the parties . . . to appear before it for a conference or conferences before trial." RCFC 16(a). At any of these conferences, the court may take appropriate action regarding "the control and scheduling of discovery, including orders affecting disclosures and discovery pursuant to RCFC 26 and RCFC 29 through 37." RCFC 16(c)(6). RCFC 26(c)(2) states that the court may enter protective orders that require "that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place." RCFC 26(c)(2). In addition to its authority to control discovery pursuant to RCFC 16, the court may also take action with respect to the "disposition of pending motions," RCFC 16(c)(11), and any "other matters as may facilitate the just, speedy, and inexpensive disposition of the action," RCFC 16(c)(16). These actions are subsequently entered into an order, known as a pretrial order. RCFC 16(e).

The ability to schedule and control pretrial proceedings would mean very little if the court did not have the power to enforce its orders. The judge is therefore given this power pursuant to RCFC 16(f). The Advisory Committee Notes to the Federal Rules of

---

[2](...continued)
Although counsel for PG&E most assuredly violated the court's Order Amending Protective Order, this was an order limiting the use of discovered materials, not "an order to provide or permit discovery," as described in RCFC 37(b). As indicated by the text of the rule, particularly in the remedies it identifies, RCFC 37 is focused on violations during the discovery period itself, rather than the situation here - in which counsel violates a protective order after substantive litigation has terminated and judgment has been entered. See RCFC 37. In this situation, few - if any - of the remedies proposed in RCFC 37 would make sense. The court can no longer designate facts as being established, refuse to allow the party to support designated claims or defenses, strike out pleadings, or dismiss the action. See id. Therefore, based upon the text of RCFC 37, especially the focus of its remedies, it does not appear to the court to be an appropriate source of authority upon which to base any sanction or remedy in this case.

Civil Procedure (FRCP) 16, which rule is closely paralleled by the RCFC,[3] state that subsection (f) was added to reflect existing practice of enforcing the rule via appropriate measures and that it now "expressly provides for imposing sanctions on disobedient or recalcitrant parties, [or] their attorneys. . . ." Fed. R. Civ. P. 16 Notes of Advisory Committee on 1983 Amendments. RCFC 16(f) now states, "If a party or a party's attorney fails to obey a scheduling or pretrial order . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just. . . ." RCFC 16(f). Such orders may include any of the sanctions or remedies found in RCFC 37(b)(2)(B), (C), or (D). Id. In addition to the optional sanctions or remedies provided in RCFC 37, "the judge shall require the party or the attorney representing the party . . . to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees." RCFC 16(f) (emphasis added). Indeed, the award of expenses incurred is required "unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust." Id. (emphasis added).

B. Inherent Authority

As an alternative to RCFC 16, the court also has "inherent powers enabling [it] to manage [its] cases and courtroom effectively and to ensure obedience to [its] orders. . . ." Aloe Vera of America, Inc. v. United States (Aloe Vera), 376 F.3d 960, 964-65 (9th Cir. 2004). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Chambers v. NASCO, 501 U.S. 32, 43 (1991) (quoting Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962)). "Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers, 501 U.S. at 44-45 (internal citations omitted). An appropriate sanction is one that acts as a direct response to the harm that the attorney's conduct has caused. Barnes v. Dalton, 158 F.3d 1212, 1215 (11th Cir. 1998). An example of an appropriate sanction, provided by the Court in Chambers, is that "a court may assess attorney's fees as a sanction for the 'willful disobedience of a court order.'" Chambers, 501 U.S. at 45 (citations omitted).

[3]The RCFC are modeled after the Federal Rules of Civil Procedure (FRCP) and, except for "a limited number of changes . . . deemed necessary to accommodate procedural requirements particular to this court[,] . . . [the text of RCFC 16] fully conforms to the text of FRCP 16." RCFC 16 Rules Committee Note (2000). For this reason, the RCFC and the FRCP are often treated as being analogous. See Principal Life Ins. Co. v. United States, 70 Fed. Cl. 144, 157 (2006) (holding that FRCP 16 is "virtually identical" to RCFC 16 in the case of waiver for failure to file a pretrial motion and therefore applying standards developed under the Federal Rules).

Several cases elucidate what it means to act in "willful disobedience of a court order." In Aloe Vera, which defendant cites to in Defendant's Brief, Def.'s Br. 1-2, the district court issued an order on September 28, 2001, stipulating that certain third party documents were not to be disclosed to anyone other than the attorneys for the parties in the case before it, Aloe Vera, 376 F.3d at 962. In this order, the court requested the third party to submit a proposed protective order to that effect, and directed Aloe Vera to draft and sign a confidentiality agreement with the United States which would limit disclosure of the documents to the attorneys for the parties. Id. Plaintiff's counsel in Aloe Vera, however, objected to the third party's proposed protective order and submitted "an alternative protective order that would have allowed disclosure to a wide array of people, including current employees, officers, partners or directors, representatives and agents of the parties . . . ." Id. at 963. In addition, plaintiff's counsel in Aloe Vera threatened to disclose the protected documents to the government prior to any protective order or confidentiality agreement being in place. Id. The Ninth Circuit held that the district court, pursuant to its inherent power, had acted appropriately in imposing as a sanction attorneys' fees incurred as a result of counsel's conduct. Id. at 966. The district court had determined that counsel for Aloe Vera "willfully violated its September 28, 2001 . . . order by repeatedly attempting to disclose [the third party's] confidential information to a broader audience than the court had authorized." Id. at 965. The Court of Appeals agreed, stating, "In light of Aloe Vera's willful and repeated disobedience of the September 28 order, the district court did not abuse its discretion in imposing sanctions in the amount of [the third party's] attorneys' fees . . . incurred as a direct result of these violations." Id. at 966.

In explaining the basis for its conclusion that Aloe Vera's counsel had willfully disobeyed a court order, the Ninth Circuit reviewed the circumstances in which Aloe Vera's counsel acted. Id. at 965-66. The Ninth Circuit determined that the Aloe Vera attorney's claim that he did not understand the order due to ambiguity was unfounded. Id. The court noted the terms of the order, which prohibited the disclosure of the documents "to anyone who is not an attorney for a party to this case." Id. at 962 (emphasis in original). The Ninth Circuit found that the record supported the district court's statement that "[c]learly when a protective order is granted AGAINST a party, it should be obvious to that party that such a grant is not an opportunity to disclose the documents in question to whomever [it] chooses." Id. at 965-66 (emphasis in original).[4] Nor was the Ninth

---

[4]This fact pattern is clearly analogous to the present situation. Here, the Order Amending Protective Order was specifically addressed to the limitation that the documents were to be used "in this litigation only." Order Amending Protective Order, 2006 U.S. Claims LEXIS 418, at *5 n.3. This court found that the order provided a clear directive that PG&E's counsel ignored.

(continued...)

Circuit persuaded that good faith or good intentions were a justification for Aloe Vera's counsel's disobedience. In response to counsel's argument that it was not in violation because its proposed order contained safeguards to protect the third party's information, the Ninth Circuit responded, "Even if this were true, it would be beside the point. Aloe Vera was bound to follow the district court's directions, not some other course it considered to be just as good." Id. at 965.[5] The Aloe Vera court's decision makes clear that a "willful" violation of a court order is not one in which a party intends to violate the court order with an evil motive, but, rather, one in which a party voluntarily takes an action that he knew or, as in Aloe Vera and here, should have known, to be contrary to that order.

Sanctions for "willful disobedience of a court order" are often also applied in the context of civil contempt citations.[6] In Eagle Comtronics, Inc. v. Arrow Communication Laboratories (Eagle Comtronics), 305 F.3d 1303 (Fed. Cir. 2002), the Court of Appeals for the Federal Circuit issued an opinion regarding what type of conduct constituted a willful disobedience of a court order in this context. In Eagle Comtronics, the court held that plaintiff violated the district court's protective order when it knowingly used defendant's patent application, which had been sealed by protective order, for a use unrelated to the lawsuit between the two companies. Id. at 1314. Because the court determined that the protective order was clear and unambiguous on its face and that

---

[4](...continued)
PG&E Violation Opinion, 79 Fed. Cl. at 747.

[5]The analysis by the court in Aloe Vera of America, Inc. v. United States (Aloe Vera), 376 F.3d 960 (9th Cir. 2004), of the irrelevance of plaintiff's counsel's view of the harmlessness of his actions is also instructive for this case. Plaintiff's counsel here argues that sanctions are not appropriate because he made a good faith effort to ensure that the documents would not be seen by anyone other than Chief Judge Damich. See Response to Government's January 9, 2008 Brief Regarding Sanctions or Remedies as Requested in the Court's December 12, 2007 Order (Pl.'s Resp.) 8. Plaintiff's counsel's view of the harmlessness of disclosing the documents only to Chief Judge Damich notwithstanding, the fact is that this action was a violation of the Order Amending Protective Order, and plaintiff's counsel should have known it.

[6]Although penalties for contempt and sanctions under the court's inherent authority are not identical, most courts treat them similarly in determining what requirements are necessary to impose them. See F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1137 (9th Cir. 2001) (holding that "[a]lthough contempt and sanctions are not identical, the principles the Supreme Court articulated for cases of contempt in [International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821 (1994)], guide our determination of what procedural protections are necessary in imposing sanctions under a court's inherent powers").

Eagle's counsel indisputably acted in violation of that order, the Federal Circuit held that the district court abused its discretion by not imposing sanctions pursuant to its inherent power to enforce its orders. Id. The offending counsel's mental state was not relevant because he voluntarily acted in a manner that he should have known to be contrary to a court order. Id. Here, as in Eagle Comtronics, the court has determined that the Order Amending Protective Order was clear and unambiguous on its face and that plaintiff's counsel has acted in a manner contrary to that order. See PG&E Violation Opinion, 79 Fed. Cl. at 746-48.

In Lion Raisins, Inc. v. United States (Lion Raisins), 64 Fed. Cl. 536 (2005), the Court of Federal Claims found that attorneys for the United States, through the Department of Justice (DOJ), had willfully violated a Protective Order such that sanctions were appropriate. Lion Raisins, 64 Fed. Cl. at 544. The Lion Raisins Protective Order was issued in an Equal Access to Justice Act (EAJA) proceeding. Id. at 537. It "required the designation as 'confidential' and the filing under seal of all documents, including depositions, transcripts, and references to deposition testimony, produced by plaintiff to DOJ." Id. Further, the order provided that the termination of the pending litigation "did not 'relieve the parties from the obligations of maintaining the confidentiality of all documents, materials, and information deemed confidential and subject' thereto," id., and required that, upon termination of the proceeding, all those documents were to be returned to counsel for the producing party, id. The Lion Raisins EAJA litigation terminated on August 20, 2003. Id. at 538. The following year, Lion Raisins was involved in a debarment proceeding before the United States Department of Agriculture (USDA). Id. The DOJ successfully used information protected by the Lion Raisins Protective Order in this second proceeding to obtain the entry of a proposed suspension decision against Lion Raisins. Id. at 539. In discussing the importance of enforcing its protective order, the court stated,

> Enforcement of protective orders implicates the rule of law. If, for example, the Government were allowed to use what turns out to be a draft of a document in its possession that was under a protective order[,] . . . the door would be open to conduct that erodes and undermines the protections that a protective order puts in place.

Id. at 542. The government claimed several defenses, including that it had a different understanding of the Protective Order, that Lion Raisins had waived the protections of the Protective Order, and that it was ignorant of the stipulations of Protective Order when it used the documents. See id. at 542-44. The Court of Federal Claims found these defenses unavailing. "The Protective Order was clear and unambiguous . . . , and the record demonstrates clear and convincing evidence to support a finding that the United States . . . willfully violated the Protective Order by disclosing protected material . . . ."

Id. at 544. Again, when an order was clear and unambiguous and counsel acted in a manner that counsel knew or should have known to be in violation of that order, that action was determined to be in willful disobedience to a court order. Id.

III. Determination of Appropriate Sanctions or Remedies

Based upon the facts of this case, it appears that sanctions are appropriate pursuant to both RCFC 16(f) and the court's inherent authority to enforce its own orders.

A. RCFC 16

Plaintiff's counsel's violation falls within the scope of sanctionable activity under RCFC 16. Under that rule, a violation of a court's pretrial orders requires the court to award the injured party the reasonable expenses incurred as a result, including attorneys' fees. RCFC 16(f). The only exception to this requirement is if "the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Id.

The facts in this case are governed by this rule. Here, the court issued its Order Amending Protective Order on May 14, 2006, prior to and in preparation for trial. See Order Amending Protective Order, 2006 U.S. Claims LEXIS 418, at *1, *13-14. As a protective order issued pursuant to RCFC 26(c), the order falls within the scope of RCFC 16(c)(6) with respect to the entry of orders affecting disclosures and discovery pursuant to RCFC 26. See RCFC 16(c)(6), 26. The Order Amending Protective Order also falls within the scope of RCFC 16(c)(11), with respect to the disposition of pending motions in this case.[7] See RCFC 16(c)(11). Finally, the court had the authority to issue the Order Amending Protective Order pursuant to RCFC 16(c)(16) because it would "facilitate the just, speedy, and inexpensive disposition of the action."[8] Id. at 16(c)(16).

Because the court had authority to enter the Order Amending Protective Order pursuant to RCFC 16, it was a pretrial order protected by subsection (f) of that rule. See RCFC 16(f). It has already been determined that counsel for PG&E failed to obey the

---

[7]The Order Amending Protective Order was issued in response to Pacific Gas & Electric's Second Motion to Compel the Production of Documents Withheld Under the "Deliberative Process" Privilege (PG&E's Second Motion to Compel), Docket No. 231, May 11, 2006.

[8] The Order Amending Protective Order ensured that the government would not be prejudiced in other proceedings by having its confidential documents made readily available to SNF plaintiffs in other cases. Order Amending Protective Order, 2006 U.S. Claims LEXIS 418, at *11-12.

order when he submitted thirty-five of the documents protected by the Order Amending Protective Order to Chief Judge Damich in the Dairyland litigation. PG&E Violation Opinion, 79 Fed. Cl. at 748. For this reason, the court "may make such orders with regard [to counsel for PG&E's failure to obey the Order Amending Protective Order] as are just, and among others any of the orders provided in RCFC 37(b)(2)(B), (C), (D)." RCFC 16(f). In addition, the court is required to impose upon counsel for PG&E "the reasonable expenses incurred because of [counsel for PG&E's] noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust." Id.[9]

B. Inherent Authority

A court also has the inherent authority to sanction a party that willfully disobeys one of its orders. Chambers, 501 U.S. at 45. Willful disobedience of a court order occurs when a party acts in a way that it knew or should have known to be contrary to an express order. See Aloe Vera, 376 F.3d at 962-65. Here, the court entered an order limiting "the disclosure and/or use of all documents mentioned in this Order to the attorneys for the plaintiffs in this litigation only." Order Amending Protective Order, 2006 U.S. Claims LEXIS 418, at *5 n.3 (emphasis in original). Nevertheless, counsel for PG&E, while acting as counsel in the Dairyland case, submitted thirty-five of the protected documents as an appendix to a filing in that case and, in addition, submitted an argument based on the contents of the protected documents. Def.'s Mot. 6-7; see Reply in Support of Dairyland's Motion to Compel Documents Withheld Under the Deliberative Process and Attorney-Client Privilege, Dairyland, No. 04-106C (Fed. Cl. Mar. 19, 2007).

Because counsel for PG&E used these documents in a manner contrary to an express court order, he acted in willful disobedience to the Order Amending Protective Order, and it is appropriate to impose sanctions or remedies. Plaintiff states that sanctions are not appropriate because he "took significant care . . . not to violate the order and not to cause or threaten any harm" by submitting the documents under seal. Pl.'s Resp. 8 (emphasis in original). Further, he contends that sanctions are not appropriate because he "had a good faith (though mistaken) belief that submitting the documents under seal . . . did not constitute 'use' of the documents." Id. However, as Aloe Vera, Eagle Comtronics, and Lion Raisins make clear, the willfulness of disobedience in cases imposing civil sanctions is determined by an objective standard. See Aloe Vera, 376 F.3d at 966; Eagle Comtronics, 305 F.3d at 1313-14; Lion Raisins, 64 Fed. Cl. at 544. As in

[9]The court analyzes plaintiff's counsel's entitlement to rely on these exceptions below in Part III.C.2.

Aloe Vera, plaintiff's counsel's good intentions and misunderstandings do not justify his acting in direct contravention of this court's order.

This court has already concluded that the Order Amending Protective Order was sufficiently clear and unambiguous to support a finding of disobedience. PG&E Violation Opinion, 79 Fed. Cl. at 748. The order provided that the disclosure and use of the protected documents was limited to attorneys "in this litigation only." Order Amending Protective Order, 2006 U.S. Claims LEXIS 418, at *5 n.3 (emphasis in original). Because the terms of the Order Amending Protective Order were a clear departure from the previous Protective Order (which stated that the documents could be used by "attorneys for plaintiffs in the spent nuclear fuel cases," PG&E Violation Opinion, 79 Fed. Cl. at 747 (quoting Protective Order)), counsel should have known that submitting the documents in a case other than the PG&E case would violate the Order Amending Protective Order. Further, while counsel does not, in terms, concede that he knew or should have known that submitting the protected documents to the Dairyland court was a violation, his final briefing in this matter does not continue to contest the point. See Pl.'s Resp. passim.

It is also clear that counsel voluntarily filed the protected documents with the court in Dairyland. This is not a case in which one protected document was inadvertently submitted and counsel quickly withdrew it upon learning of his mistake. Here, counsel not only submitted thirty-five protected documents subject to the Order Amending Protective Order, he also refused to withdraw them after being notified by defendant that they were protected. PG&E Violation Opinion, 79 Fed. Cl. at 746. It therefore appears that counsel for PG&E intentionally and voluntarily performed an act which he should have known to be contrary to the court's Order Amending Protective Order. As in Aloe Vera, Eagle Comtronics, and Lion Raisins, regardless of plaintiff's counsel's subjective intentions or beliefs, he violated a clear and unambiguous court order. See Aloe Vera, 376 F.3d at 966; Eagle Comtronics, 305 F.3d at 1313-14; Lion Raisins, 64 Fed. Cl. at 544. Because plaintiff's counsel undisputably acted in violation of a clear and unambiguous court order when he used thirty-five documents protected by the Order Amending Protective Order in the Dairyland litigation, sanctions are also appropriate pursuant to the court's inherent power to enforce its own orders.

### C. Appropriate Remedies or Sanctions

1. Defendant's Requests for a Return of All Documents and Bar Against Their Future Use

Defendant has asked that the court impose three remedies or sanctions: 1) to require counsel for PG&E to return or certify the destruction of all protected documents, 2) to bar PG&E from using any of the protected documents in future proceedings in this case, and 3) to award recovery of all costs, including attorneys' fees, incurred due to PG&E's violation. Def.'s Br. 3-4. As authority for its first request, defendant cites Kramer v. Boeing Co., 134 F.R.D. 256, 258-59 (D. Minn. 1991) (holding that counsel for Kramer must return or destroy all documents disclosed under a protective order), and for its second request defendant cites Coleman v. American Red Cross, 979 F.2d 1135, 1141 (6th Cir. 1992) (holding that Coleman could use certain information to bring a new and separate suit, even though that information was discovered subsequent to a violation of the court's protective order). See Def.'s Br. 3. However, as plaintiff's counsel asserts in Plaintiff's Response, neither authority is sufficient to support defendant's requests. See Pl.'s Resp. 4-6. Kramer does not adequately support defendant's first request because, in that case, the terms of the protective order actually mandated a return or destruction of all protected documents following litigation. Kramer, 134 F.R.D. at 257. Here, the Order Amending Protective Order contains no such provision. See Order Amending Protective Order, 2006 U.S. Claims LEXIS 418, passim. Coleman fails to support defendant's second request, to bar the use of the documents in all subsequent litigation, because the issue in that case focused on information gained as a result of a violation. Coleman, 979 F.2d at 1136. Here, the documents in question were already available to plaintiff, albeit under protection of the Order Amending Protective Order. Further, although it stated in dicta that a court could bar the use of certain documents for the violation of a protective order, the Coleman court did not adopt such a measure itself. Id.[10]

RCFC 16(f) allows for remedies as provided by RCFC 37(b)(2), see RCFC 16(f), which includes prohibiting a party from introducing designated matters in evidence, RCFC 37(b)(2)(B). This authority would therefore expressly cover defendant's second request, to bar the use of the documents in future litigation, and implicitly allow for the first. If plaintiff is not allowed to use the documents in this case, and the protective order forbids him from using them elsewhere, plaintiff would no longer have a need to retain

[10]In Defendant's Reply to Plaintiff's Response to the Court's Order, Dated December 12, 2007, Regarding Sanctions or Remedies for Plaintiff's Violation of the Court's May 14, 2006 Protective Order (Def.'s Reply), defendant also relies upon the court's broad authority to enforce its orders as a basis for imposing the first two requested remedies. Def.'s Reply 3. It appears to the court that, while it does have the authority to impose either of these sanctions or remedies pursuant to RCFC 16 or its inherent power, the court believes it is most appropriate in this case to impose sanctions or remedies under RCFC 16 only.

the documents and their return or destruction would be proper to ensure no further misuse.

Likewise, in Chambers, the Court notes the broad discretion a court has in enforcing its orders pursuant to its inherent authority, stating, "outright dismissal of a lawsuit . . . is a particularly severe sanction, yet within the court's discretion. . . . Consequently, the 'less severe sanction' of an assessment of attorney's fees is undoubtedly within a court's inherent power as well." Chambers, 501 U.S. at 45 (internal citation omitted). If the court's inherent authority allows for the dismissal of a case, inherent authority would appear a fortiori to allow for an order to return documents covered by a protective order or an order barring the use of those documents in future litigation.

However, the fact that the court has the authority to invoke these sanctions or remedies does not mean that they are appropriate in this case. As counsel for PG&E points out in his Response, "there is no need for a further remedy or sanction to forestall further violations of this Court's order." Pl.'s Resp. 4 (emphasis added). This appears to be correct for several reasons. First, Chief Judge Damich has already granted the government's motion to strike the protected documents from the record in Dairyland. Id. at 1. Second, counsel for PG&E has assured the court that he will not use the documents for any purpose outside of this litigation. Id. at 4. For these reasons, the threat of the documents being used in other SNF litigation no longer exists. In addition, as counsel for PG&E points out, "[T]he first option . . . has no real effect standing alone . . . . PG&E would be free to seek the documents again in future proceedings, and the Court presumably would order their release again for the same reason it ordered the release of the documents the first time." Id. Therefore, it appears that defendant's first request seeking a return or destruction of all protected documents is both unnecessary and could possibly lead to future duplicative litigation. The court therefore declines to order the first requested remedy.

Defendant's second request, to bar the future use of the documents in the current litigation, also appears inappropriate in the circumstances of this case. The court has already determined that plaintiff had a substantial need for the protected documents. PG&E Order to Compel, 71 Fed. Cl. at 215. To bar the use of the documents in future proceedings in this case, should it return on remand, could prejudice PG&E. The court does not believe that the PG&E plaintiff should be punished for actions its counsel took while representing another client in another case. To bar the documents from future litigation in this case would do precisely that. For this reason, the court declines to order defendant's second requested remedy.

2. Defendant's Request for Expenses, Including Attorneys' Fees, Arising from Violation

While the court agrees with plaintiff's counsel that no remedies or sanctions are needed to forestall future violations, Pl.'s Resp. 4, the court believes that sanctions or remedies are required to redress the past violation. The court therefore finds defendant's third request, for recovery of expenses flowing from plaintiff's counsel's violation of the Order Amending Protective Order, including attorneys' fees, see Def.'s Br. 3-5, appropriate in this case. RCFC 16(f) mandates that the court require counsel for PG&E to pay the reasonable expenses incurred due to his noncompliance, including attorneys' fees, unless that noncompliance was substantially justified or other circumstances would make that award unjust. See RCFC 16(f). While not directed specifically at RCFC 16, counsel for PG&E argues that these exceptions should, in fact, apply. See Pl.'s Resp. 7-8. Counsel for PG&E asserts that he had a good faith belief that submitting the documents under seal was not "use" and therefore not a violation. Id. at 8. Further, counsel asserts that he took significant care not to cause any harm and states that no serious public or private harm was caused. Id. The court examines these arguments in turn.

First, plaintiff's counsel contends that he was substantially justified in disobeying the court order because of his mistaken belief that his actions did not constitute a "use," and were therefore not a violation. Id. However, the court has already determined that the Order Amending Protective Order was clear and unambiguous and that counsel should have known that using the documents in any manner other than as counsel for PG&E in this litigation would be a violation. PG&E Violation Opinion, 79 Fed. Cl. at 747. While counsel "is not happy about the Court's conclusion," Pl.'s Resp. 2, he does not put forward any argument that might show why his misunderstanding was justified other than the one already disposed of in this court's previous decision, see PG&E Violation Opinion, 79 Fed. Cl. at 747-48. In In re Baker, 744 F.2d 1438 (10th Cir. 1984), the Tenth Circuit stated: "It is clear from the language and the context in which this amendment to [FRCP 16(f)] was enacted that neither contumacious attitude nor chronic failure is a necessary threshold to the imposition of sanctions. The intent is to impose the sanction where the fault lies." Id. at 1440.[11] Accordingly, the fact that plaintiff's counsel may not have acted with an improper intent is not a substantial justification for his violation of the Order Amending Protective Order. Because plaintiff's counsel should have known that his actions violated the Order Amending Protective Order, and he has not put forward any justifications for his actions other than those disposed of in the previous decision, plaintiff's counsel was not substantially justified in his noncompliance for the purposes of RCFC 16(f).

---

[11]Although In re Baker, 744 F.2d 1438 (10th Cir. 1984) is focused on FRCP 16 rather than RCFC 16, the two rules are virtually identical in relevant part. The court therefore relies on persuasive authority interpreting FRCP 16. See supra Part II.A. n.3.

Counsel's second argument is that an award of sanctions would be unjust because no serious public or private harm was caused by his violation. Pl.'s Resp. 8. However, there was harm done, both to the court and to defendant. The first harm was the harm done to the court. Any time a court's order is violated and the court does not redress that violation, its authority is undermined and its ability to enforce its orders weakened. To avoid that result, the court is given several tools to remedy violations of its orders, including RCFC 11, 16(f), and 37. And, if these tools do not reach the violation, the court may rely on its inherent power. This is necessary "so as to achieve the orderly and expeditious disposition of cases." Chambers, 501 U.S. at 43 (quoting Link, 370 U.S. at 630-631). In addition, judicial resources have been wasted in proceedings to enforce the Order Amending Protective Order. Such a waste of judicial resources is precisely what RCFC 16 sought to alleviate. See In re Baker, 744 F.2d at 1441 (stating that RCFC 16 is meant to deal with "the matter most critical to the court itself: management of its docket and avoidance of unnecessary burdens on the tax-supported courts, opposing parties or both.").

There has also been harm to defendant. Counsel for PG&E states that "the harm or threatened harm from the violation has already been eliminated by Chief Judge Damich's order, [so] no additional 'sanction' is warranted." Pl.'s Resp. 8. It is true that the Chief Judge's order avoided certain harm which could have been visited on defendant in the Dairyland litigation. However, defendant was forced to file motions in both the Dairyland case and in this case to ensure that such harm was avoided and to vindicate its proper reliance on this court's order. See Def.'s Mot. passim. In filing and supporting these motions, defendant incurred costs and expenses, including attorneys' fees. Def.'s Br. 3-4. Because none of these expenses would have been necessary had counsel for PG&E complied with the Order Amending Protective Order, these expenses are harms suffered by defendant as a result of plaintiff's counsel's violation. Because harm was inflicted upon both the court and defendant, it is not unjust to impose sanctions for plaintiff's counsel's noncompliance with the court's Order Amending Protective Order. Therefore, because counsel's actions were not substantially justified and it would not be unjust to award sanctions, the court is required under RCFC 16(f) to impose sanctions in the amount of the reasonable expenses incurred due to plaintiff's counsel's noncompliance, including attorneys' fees. In the alternative, an award to defendant of attorneys' fees incurred as a result of plaintiff's counsel's violation of the Order Amending Protective Order is appropriate pursuant to the court's inherent power to enforce its own orders. Because plaintiff's counsel's actions fall within the category of cases in which a court can impose attorneys' fees pursuant to its inherent power, defendant's third request appears appropriate. However, shortly after authorizing the use of inherent powers in Chambers, the court warned, "[b]ecause of their very potency, inherent powers must be exercised with restraint and caution." 501 U.S. at 44. For this reason, "when . . . conduct . . . could be adequately sanctioned under the Rules, the court

ordinarily should rely on the Rules rather than the inherent power." Id. at 50. The court therefore relies on RCFC 16, because RCFC 16, by its terms, governs the facts of this case.

3. Department of Justice (DOJ) is a Proper Recipient of Attorneys' Fees

Plaintiff's counsel also argues that the award of attorneys' fees would not be proper in this case because it is the role of the DOJ to litigate such matters, and that DOJ therefore fails to incur attorneys' fees. Pl.'s Resp. 7. Counsel for PG&E states, "Not only has the government failed to cite a case, but undersigned counsel is aware of none, in which the [DOJ] was allowed to 'recover' non-existent attorneys' fees as a result of another parties' [sic] violation of a protective order." Id. While counsel may be correct that there is no precedent for the DOJ's recovery of attorneys' fees specifically for another party's violation of a protective order, there are numerous examples of cases in which the United States has recovered attorneys' fees incurred due to an opponent's failure to follow court orders. See, e.g., United States v. City of Jackson, 359 F.3d 727, 732-34 (5th Cir. 2004) (award of attorneys' fees to United States following opposing party's civil contempt citation); United States v. Big D Enters., Inc., 184 F.3d 924, 935-36 (8th Cir. 1999) (award of attorneys' fees to United States for opposing party's FRCP 37 violation). For example, in Alaska Pulp Corp. v. United States, 41 Fed. Cl. 611 (1998), the Court of Federal Claims awarded the United States its reasonable expenses, including attorneys' fees, incurred on account of plaintiff's failure to produce a deponent according to a discovery order. Id. at 616-17.

## IV. Conclusion

Plaintiff contends that "[i]t is a basic tenet of our judicial system that punishment should fit the crime." Pl.'s Resp. 2. The court agrees. But the contention is irrelevant to this case. There is no "crime" here and therefore no "punishment." There has been, however, a problem created by a voluntary violation of a protective order. RCFC 16 is designed to address precisely the type of problem created by plaintiff's counsel. In the circumstances of this case, the court is required to impose the sanctions it mandates. Pursuant to the court's authority under RCFC 16(f), counsel for PG&E is ordered to pay the reasonable expenses incurred by the United States, including attorneys' fees, because of the failure of counsel for PG&E to comply with the Order Amending Protective Order.[12] The value of the attorneys' fees will be measured by the reasonable number of

---

[12]Because counsel for PG&E committed the violation in his capacity as counsel for (continued...)

hours worked multiplied by the prevailing market rate, that is "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984).

Plaintiff's counsel and defendant shall endeavor to stipulate to those costs, expenses, and attorneys' fees and, if they so agree, shall file a joint statement listing the amount of such items with the court no later than July 25, 2008. Should plaintiff's counsel and defendant be unable to agree, defendant shall file with the court a bill of its costs, expenses, and attorneys' fees, together with any necessary explanation or supporting documentation thereof,[13] on or before August 8, 2008. Plaintiff's counsel shall then file his response no later than August 25, 2008. Following a determination of such costs and fees, an appropriate order will be entered in this matter.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

[12](...continued)
another client, these sanctions are not to be passed on to PG&E, but paid by counsel himself. RCFC 16(f) allows this arrangement, stating that "the judge shall require the party or the attorney representing the party . . . to pay the reasonable expenses incurred . . . ." RCFC 16(f) (emphasis added). It would not be appropriate in this situation to require PG&E to pay costs resulting from a violation of an order of this court that its attorney committed while in the service of another client.

[13]Such documentation, which will most likely consist of typical billing records, must "be in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and the need for the service, and the reasonable fee to be allowed." Martin v. United States, 12 Cl. Ct. 223, 227 (1987).